IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162 )   MDL No. 2591
CORN LITIGATION )
) Case No. 14-md-2591-JWL
This Document Relates To All Cases )
)
_____)

# MEMORANDUM AND ORDER

In this multi-district litigation ("MDL"), Co-Lead-Counsel ("CLC") for plaintiffs have submitted to the Court a proposed order concerning common benefit work, to which defendant Syngenta and other plaintiffs' counsel objected. For the reasons set forth below, Syngenta's remaining objection (Doc. # 301) is **sustained**; and objections submitted by the Byrd Objectors (Doc. ## 307, 376) and attorney Brandon Wise (by letter of April 22, 2015) are **overruled**. In addition, the Court **denies** CLC's motion for approval of certain agreements (Doc. # 331), and it **denies** the Byrd Objectors' motion to unseal CLC's motion for approval (Doc. # 336).

## I. Background

On February 20, 2015, CLC submitted to the Court, in accordance with Paragraph 5.b of the Court's Scheduling Order No. 1, a proposed Order Establishing Protocols for Common Benefit Work and Expenses and Establishing the Common Benefit Fee and Expense Funds. By order of March 6, 2015, the Court set a telephone hearing to discuss the proposed order, set a deadline for the filing of any objections to the proposed order,

and ordered CLC to respond to certain questions from the Court concerning the proposed order. On March 20, 2015, CLC filed their response to the Court's questions (Doc. # 302). On March 20, 2015, Syngenta filed its objections (Doc. # 301), and CLC responded to those objections on March 31, 2015 (Doc. # 325). On March 25, 2015, a group of plaintiffs' attorneys designated the Byrd Objectors or the Byrd Group filed their objections to the proposed order (Doc. # 307), to which CLC responded on March 31, 2015 (Doc. # 324).

Prior to the scheduled telephone hearing, and after conferring with Syngenta, CLC submitted a revised proposed common benefit order that included amendments resolving two of Syngenta's three objections. Also prior to the hearing, CLC filed under seal a motion (Doc. # 331) seeking the Court's approval of two side agreements reached with other groups of plaintiffs' counsel (denominated the Phipps Group and the Watts Group), which agreements included terms setting common benefit assessment percentages for those attorneys' cases. The Byrd Objectors subsequently moved to unseal that motion (Doc. # 336).

The Court conducted the telephone hearing on April 8, 2015. Syngenta confirmed that two of its objections had been resolved by the revision to the proposed order, and thus the Court deems those objections withdrawn by Syngenta. The Court heard argument from Syngenta and CLC concerning Syngenta's remaining objection. Following the Court's suggestion, CLC agreed to submit a further revision of the proposed order to incorporate the common benefit terms from the two side agreements.

2

The parties then agreed that they would address the Byrd Group's objections at a subsequent hearing after submission of the new revision.

CLC submitted their latest version of the proposed common benefit order on April 15, 2015, and the Byrd Objectors filed a renewed set of objections on April 22, 2015 (Doc. # 376). Also on April 22, the Court received a letter from attorney Brandon Wise, who presently has no cases within the MDL, asserting various objections to the proposed order. On April 27, 2015, the Court conducted an in-person hearing at which it heard arguments on the Byrd Group's objections and also heard from CLC concerning Mr. Wise's objections.

## II.    **Objections to Proposed Common Benefit Order**

### A.    *Syngenta's Objection*

CLC's proposed common benefit order assigns different assessment percentages to three categories of attorneys: "MDL Counsel," which is defined to include all attorneys representing any plaintiff in any case in the MDL (as well as attorneys appointed to leadership roles in the MDL and attorneys who perform common benefit work); "Participating Counsel," which is defined to include attorneys who are not MDL Counsel but who execute a participation agreement (attached to the proposed order) that binds them to the Court's common benefit order and gives them access to common benefit work; and "Non-Participating Counsel," which is defined to include attorneys who are not MDL Counsel and do not execute a participation agreement. MDL counsel

3

would be assessed at 8 percent of recoveries for attorney fees and 3 percent for expenses for producer clients, and at 7 percent and 2 percent for non-producer clients. Participating Counsel who sign a participation agreement within a certain time frame would be assessed at 4 percent for fees and 3 percent for expenses for producer clients, and at 3.5 percent and 2 percent for non-producer clients, with the percentages increasing if the attorney delays in signing. Non-Participating Counsel who have utilized or intentionally accessed common benefit work would be assessed at 10 percent and 3 percent for producer clients, and at 9.5 percent and 2 percent for non-producer clients. The proposed order would require Syngenta to hold back and submit to the common benefit fund the appropriate percentage (after being advised by CLC of the applicable attorney category) of any settlement or judgment paid by Syngenta.

Syngenta objects to the requirement of a holdback in cases outside the MDL (essentially, those in state court and those that have not been filed in any court) in which the claimant's attorney has not executed a participation agreement agreeing to be bound by the Court's common benefit order. Syngenta argues that the Court has no jurisdiction or authority to bind parties who are not before the Court in the MDL and who have not agreed to be bound voluntarily. Syngenta further argues that such a holdback requirement could subject it to conflicting obligations—for instance, a state court might require Syngenta to pay the full amount of a judgment to a plaintiff despite this Court's order requiring it to withhold a portion of that judgment. The Court agrees that it lacks jurisdiction to subject such parties to the obligations of a common benefit order, and it

therefore sustains this objection.

The only circuit courts of appeal to have addressed this issue have held that a district court does not have such jurisdiction to subject parties not before it to common benefit assessments. *See In re Showa Denko K.K. L-Tryptophan Prods. Liability Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992); *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873-74 (8th Cir. 2014). In *Showa Denko*, the Fourth Circuit addressed an MDL common benefit order that "compel[led] contributions from plaintiffs in state or federal litigation who are not before the court and by claimants who have chosen not to litigate but to compromise their claims outside of the court." *See Showa Denko*, 953 F.2d at 166. The court noted that the MDL mechanism did not expand the transferee court's jurisdiction beyond cases and controversies between parties to the transferred cases, and it stated that "any attempt without service of process to reach others who are unrelated [was] beyond the court's powers." *See id.* at 165-66 (citing *Hartland v. Alaska Airlines*, 544 F.2d 992, 1002 (9th Cir. 1976)). In rejecting the common benefit order as too broad, the Fourth Circuit concluded as follows:

> Claimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order to them.

*See id.* at 166.

In the *Rice* litigation, District Court Judge Perry followed *Showa Denko* in concluding that the court lacked jurisdiction to require the defendant, pursuant to an

MDL common benefit order, to hold back percentages of settlements and judgments obtained outside the MDL. *See In re Genetically Modified Rice Litig.*, 2010 WL 716190, at *4-5 (E.D. Mo. Feb. 24, 2010) (noting that "[m]ost cases considering this issue have reached the same conclusion"). The Eighth Circuit affirmed, holding that the district court "did not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries," as the "state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL." *See Rice*, 764 F.3d at 873-74 (citing *Showa Denko*, 953 F.2d at 165).

CLC attempt to distinguish *Showa Denko* on the basis that the proposed order in this litigation does not impose an obligation directly on the claimants, but rather requires holdbacks by Syngenta, which is subject to the Court's jurisdiction in the MDL. CLC further argue that, with respect to MDL Counsel's non-MDL clients, this Court may exercise jurisdiction over the attorneys (from whose shares the assessments are taken) because those attorneys have cases in this Court. The *Rice* case also involved holdbacks, however, and the Eighth Circuit rejected a similar argument concerning jurisdiction over attorneys with cases in the MDL as follows: "Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the defendant]." *See Rice*, 764 F.3d at 874 (emphasis in original).

The Court agrees with the Eighth Circuit that this Court's jurisdiction over the defendant and some attorneys with respect to cases in the MDL does not grant it

jurisdiction to issue orders requiring assessments in cases not before this Court. CLC argue that their order imposes assessments on attorneys and not their clients, but the Court is not persuaded that that distinction holds up. As Syngenta points out, the effect of a holdback may be to interfere with a state-court plaintiff's total recovery, which belongs to the plaintiff and not to its attorney. Moreover, the assessment only of the attorney's share, as CLC describes the assessment, could exceed the attorney's own fees paid by his client (for instance, because the attorney agreed to a lower percentage fee or was paid by the hour). Thus, by extending the assessments to cases outside the MDL, the Court would effectively be exerting its authority over parties in cases not before it, and CLC have offered no basis or authority for such an exercise of jurisdiction.

CLC insist that beneficiaries of a common benefit order need not be parties to the lawsuits before this Court, citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393 (1970) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939)). The cited cases, however, involved only awards of fees from the defendants before those courts; they did not sanction in any way imposing monetary obligations on parties not within a court's jurisdiction. CLC also argue that other MDL courts have issued common benefit orders that include assessments over non-parties, but CLC have not relied on any case in which the court has addressed and rejected the jurisdictional argument raised here.

Accordingly, the Court concludes that the scope of CLC's proposed common benefit order would require the Court to exceed its jurisdiction and is therefore impermissibly broad, and the Court therefore sustains Syngenta's objection. CLC shall

7

submit, on or before May 15, 2015, a revised order that does not provide for assessments in cases not within the MDL. Thus, for instance, CLC would need to delete provisions establishing or referring to the Non-Participating Counsel category. Similarly, provisions relating to MDL Counsel must be revised to apply only to cases within the MDL and not to an MDL Counsel's other cases or clients (although such counsel would be free to execute a participation agreement relating to their cases outside the MDL). The Court notes as well that cases within the MDL that may be reached by the common benefit order should not include cases remanded from federal court back to state court, as such plaintiffs will not receive the same benefits from common benefit work that plaintiffs remaining in the MDL will receive, and this Court should never have been able to assert jurisdiction over such plaintiffs that originally brought their actions in state court. Indeed, CLC's proposed order accepts that principle, as it excluded from the MDL Counsel category any attorney left with no cases within the MDL after remand. Thus, CLC's revised proposed order must distinguish by case, limited only to those cases within the MDL, and not distinguish solely by attorney.

### *B.  Byrd Group's Objections*

The Byrd Group has raised a number of objections to the proposed common benefit order (other than Syngenta's objection addressed above). First, they argue that the Court should not set the assessment percentages at this time. They note that the percentages were set much later in the *Rice* litigation, and they argue that the appropriate percentages could be determined more accurately in the future. The Court agrees with

CLC, however, that there is a benefit to the establishment of the percentages at an early juncture. In particular, many cases are presently pending in state courts, and many more will be remanded to state courts in the near future, and an early determination from this Court may promote uniformity and guide state courts in setting their own common benefit assessment percentages. That goal is especially important in light of the Court's ruling that the order in this case will not apply to cases outside the MDL (unless the attorney has signed the participation agreement). Moreover, there is no reason why some settlements could not occur in the immediate future, and it would be more difficult to collect an assessment in those cases if the applicable percentage has not been determined. Finally, the Court notes that these percentages set in the Court's ultimate order may be modified as necessary in the future, and any funds remaining after distributions have been approved by the Court will be refunded. Therefore, the Court concludes that the benefits to setting the assessment percentages at this time outweigh any potential harm, and the Court overrules this objection.

Second, the Byrd Objectors argue that the percentages set in CLC's proposed order (8 percent and 3 percent for fees and expenses for MDL producer cases, 7 percent and 2 percent for MDL non-producer cases) are too high, and they propose assessments of 2 percent for fees and 1 percent for expenses for all cases. They argue that such high assessment percentages could result in an unearned windfall for attorneys performing common benefit work and that the percentages can be adjusted upward if they prove too low. They also point to the 2014 *MDL Best Practices Manual* from the Duke Law

Center for Judicial Studies, which stated that courts typically establish a common benefit percentage that ranges from 3 to 6 percent; a 2009 study by Professor William Rubenstein that found an assessment range of 4 to 6 percent; and various cases in which the assessment fell within those ranges.

The Court concludes that the percentages proposed by CLC are reasonable and appropriate. As CLC notes, assessments of 8 and 3 percent were ordered in the *Rice* litigation, which is perhaps the most analogous MDL case with respect to the issues presented. It is clear that Professor Rubinstein was acting as an advocate for lower assessments, and the Duke *Manual* (which does not purport to be based on an exhaustive survey of cases) provides that "[t]he appropriate percentage depends on the circumstances of the case" and that the 3 to 6 percent range "should not be considered exclusive." The 8 percent figure falls easily within the range of awards in cases with large recoveries. *See, e.g.*, *In re Diet Drugs Prods. Liability Litig.*, 553 F. Supp. 2d 442, 479-80 (E.D. Pa. 2008) (noting awards in similar large cases ranging from 4.8 to 15 percent), *aff'd* 582 F.3d 524 (3d Cir. 2009). The Court also agrees with CLC that it is better for the percentages ultimately to prove too high than to prove too low, as it would be easier to refund excess funds than it would be to attempt to collect additional funds in the future.[1] The Court also does not agree that these percentages will necessarily

---

[1] The Court believes that the proposed order could more clearly express that these assessments do not represent the amount of any award to attorneys performing common benefit work and that any excess funds collected after distribution of any such awards
(continued...)

10

discourage the filing of similar suits in federal court. State courts will likely determine their own percentages, and there is no guarantee that plaintiffs will get a better percentage in state court, as the Court has concluded that these percentages are reasonable. This objection is therefore overruled.

Third, the Byrd Group objects to the different percentages for different categories of cases and attorneys set forth in the proposed order, and they argue that the percentages should be the same across the board. The Court will address each such instance of categorization in turn.

The Byrd Group objects to having different percentages for cases brought by producer plaintiffs and those brought by non-producer plaintiffs. In response to this objection, CLC has explained that it chose a lower percentage for non-producers because those plaintiffs will likely need to develop different expert damage testimony and thus will not benefit as much from the common benefit work. The Byrd Group did not take issue with this explanation in their renewed objections, and the Court concludes that this differentiation and CLC's explanation are reasonable. This objection is therefore overruled.

The Byrd Group objects to having different percentages for MDL Counsel and for Participating Counsel, and they suggest that a state-court plaintiff will need to shop

---

[1](...continued)
will be refunded on a *pro rata* basis to parties contributing to the fund. Thus, CLC is directed to make such revision in submitting a revised proposed order in accordance with this opinion.

for an attorney that has no MDL cases in order to avoid the higher percentage. The Court has ruled above, however, that state-court cases will not be subject to the MDL Counsel percentage even if the attorney also has cases within the MDL, so no such shopping will be necessary for a state-court plaintiff. Moreover, the Court agrees with CLC that the lower percentage for cases outside the MDL is warranted to encourage participation in the common benefit scheme and to offset the risk that such cases might otherwise not be subject to *any* common benefit assessment—particularly in light of the Court's ruling that this order will not apply to cases outside of the MDL. The Court overrules this objection.

The Byrd Group objects to the different percentages for Participating Counsel based on when such counsel sign a participation agreement. The Court overrules this objection, as it concludes that there is a benefit to encouraging early participation in the common benefit scheme.

The Byrd Group objects to the provisions in the proposed order that afford special treatment to Cargill, ADM, and others who have entered into side agreements with CLC. The Court agrees with CLC, however, that Cargill and ADM are unlike the other, smaller plaintiffs in these cases, and that CLC thus acted reasonably in negotiating a special assessment percentage (equal to that for Participating Counsel) for them. In fact, the Court has now remanded those plaintiffs' cases to state court; thus, Cargill and ADM will not receive any special treatment by receiving same assessment percentage as other parties who sign a participation agreement. Similarly, unique considerations justify

CLC's execution of side agreements with the Watts Group and the Phipps Group of plaintiffs' counsel that contain preferential assessment percentages (one-half of the MDL Counsel percentages for their state-court cases, including those remanded from federal court). Again, securing the agreement of those groups with large numbers of cases—given the risk that those cases might not be subject to *any* assessment—benefits the litigation of the MDL, and CLC reasonably negotiated particular terms to achieve those groups' participation in the common benefit scheme. The Court also notes that, in light of the Court's remand opinion, these groups will likely pay the same 4 percent assessment that is available to Participating Counsel (although they would still pay a smaller percentage for expenses). The Byrd Objectors have not provided any authority to suggest that such side agreements are not permitted, and the Court has concluded after review of these side agreements *in camera* that the different percentages afforded to these groups is not unreasonable or inappropriate.

Accordingly, all of these objections asserted by the Byrd Group (beyond Syngenta's objection) are overruled.

### C. *Wise Objections*

Plaintiff's attorney Brandon Wise has objected to certain terms of CLC's proposed common benefit order. Although Mr. Wise would not necessarily have standing to have such objections heard, as he is not counsel of record in any case before this Court, the Court must ultimately approve all of the terms in the order, and it therefore will briefly address Mr. Wise's concerns.

With respect to attorneys who have not filed a related case in any court, CLC's proposed order provides for certain assessment percentages if they sign the participation agreement within 45 after they are retained as counsel by a potential claimant or within 120 days of the date the order is issued, whichever is later; and for certain higher percentages if they sign after that date. Mr. Wise argues that an attorney's 45 days should run not from the date of retention as counsel but from the date suit is filed by that attorney. He notes that *American Pipe* tolling is intended to discourage the unnecessary filing of cases if a class action has already been filed (as has occurred in this case), and he argues that the trigger for the higher rate proposed by CLC undermines that policy by encouraging the filing of unnecessary suits. Mr. Wise argues that attorneys signing the agreement "are essentially paying for access to common benefit work, and, accordingly would only recognize the benefit of this bargain by filing cases such that they would receive notices in the case." The fact that Mr. Wise is most concerned with access to case filings is underscored by his argument in the alternative that CLC should be required to "forward all notices, pleadings, and orders to all Participating Counsel who have not filed cases, and therefore, do not otherwise receive ECF notices." Mr. Wise argues that such a requirement would allow participants to receive access to common benefit work without having to file unnecessary actions.

The Court overrules this objection because it is not persuaded that using the date of retention as counsel as the trigger instead of the date suit is filed will cause attorneys to file lawsuits unnecessarily. The receipt of filings in this MDL through ECF does not

14

depend on whether an attorney has filed any suits anywhere; rather, only attorneys with suits within the MDL will receive such notices. Moreover, any attorney has access to filings in the MDL, as such filings are a matter of public record. In addition, participating attorneys should not need to file suit to obtain the benefit of signing the agreement because that agreement gives those attorneys access to all common benefit work. Finally, the Court has already agreed with CLC that there is a benefit to plaintiffs as whole if early participation in the common benefit scheme is encouraged.

The Court also declines Mr. Wise's alternative request to impose a notice requirement on CLC. CLC will be obligated to provide common benefit work to attorneys who sign the agreement, and this Court will not dictate the manner in which CLC fulfill that contractual obligation.

Mr. Wise also argues that all attorneys should be subject to the same assessment percentages, but the Court has already rejected such an objection asserted by the Byrd Group. Accordingly, the Court overrules Mr. Wise's objections in their entirety.

### D. *Summary*

In summary, the Court has overruled all objections to CLC's latest proposed common benefit order other than Syngenta's objection to the application of the order to cases outside the MDL (including after remands to state court) where the plaintiff's counsel has not agreed to be bound to the order. The Court finds that other terms in the proposed order to which no objection was lodged are reasonable and appropriate. CLC are therefore directed to submit, by May 15, 2015, another revised proposed order that

conforms to the Court's rulings contained herein. Specifically, CLC must remove the "Non-Paticipating Counsel" category; revise the "MDL Counsel" category to exclude cases outside the MDL, including cases that are remanded to state court; and revise the "Participating Counsel" category to provide for execution of the agreement by attorneys with respect to their non-MDL cases (even if they also have cases within the MDL). Moreover, as set forth above, CLC shall add language to make clear that to the extent that funds collected from assessments exceed the amounts approved by the Court for distribution to attorneys performing common benefit work, that excess shall be refunded to those who have paid assessments on a *pro rata* basis.

### III.     Approval of Side Agreements and Motion to Unseal

CLC filed a motion to approve two agreements with groups of plaintiffs' counsel. After a telephone hearing with the Court, CLC revised their proposed common benefit order to include the assessment percentages contained in those two agreements, and by this order, the Court has approved those particular percentages. As the Court has previously indicated in the two recent hearings, however, in the absence of a claim for breach or any other controversy properly brought before the Court, there is no basis for the Court to interject itself at this time into private contractual relationships by ruling on the validity or reasonableness of any other term. That is true regardless of whether the agreements require Court approval for their efficacy. Accordingly, the Court denies CLC's motion for approval of the agreements.

16

The two agreements are confidential, and that fact was the basis on which the Court originally granted leave for the motion for approval to be filed under seal. The Byrd Objectors have moved to unseal that motion, arguing that the Court must make sure that CLC are representing all plaintiffs fairly. The Court has reviewed the agreements *in camera*, however (as the Byrd Objectors originally urged before filing their motion to unseal), and although it has not approved any terms other than the common benefit assessment percentages, the Court is satisfied that the agreements do not provide a basis to conclude that CLC are not adequately representing all plaintiffs. Nor do the undisclosed terms of those agreements affect the Court's decision on issuing a common benefit order. Therefore, the Court denies the motion to unseal.

IT IS THEREFORE ORDERED BY THE COURT THAT Syngenta's remaining objection (Doc. # 301) to Co-Lead-Counsel's proposed common benefit order is **sustained**; and objections to the proposed order submitted by the Byrd Objectors (Doc. ## 307, 376) and attorney Brandon Wise (by letter of April 22, 2015) are **overruled**. Co-Lead-Counsel for plaintiffs shall submit a revised proposed order in accordance with this order on or before **May 15, 2015**.

IT IS FURTHER ORDERED BY THE COURT THAT Co-Lead-Counsel's motion for approval of certain agreements (Doc. # 331) is hereby **denied**, and the Byrd Objectors' motion to unseal the motion for approval (Doc. # 336) is hereby **denied**.

IT IS SO ORDERED.

Dated this 8th day of May, 2015, in Kansas City, Kansas.

                                        s/ John W. Lungstrum
                                        _____
                                        John W. Lungstrum
                                        United States District Judge