IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162          )          MDL No. 2591
CORN LITIGATION                     )
                                    )          Case No. 14-md-2591-JWL
This Document Relates To All Cases  )
                                    )
_____)

## MEMORANDUM AND ORDER

In this multi-district litigation ("MDL"), Co-Lead-Counsel ("CLC") for plaintiffs have filed a motion (Doc. # 854) asking the Court to issue a proposed common benefit order ("CBO"). For the reasons set forth below, the Court sustains the objection by Phipps Anderson Deacon LLP ("Phipps"), and the Court therefore will not make reference to Phipps in its forthcoming CBO. Thus, CLC's motion for entry of the proposed CBO is **granted in part and denied in part**.

## I.     Background

On February 20, 2015, CLC submitted to the Court, in accordance with Paragraph 5.b of the Court's Scheduling Order No. 1, a proposed CBO. Defendant Syngenta and some plaintiffs' attorneys asserted objections, and after hearing argument, the Court ruled on those objections by Memorandum and Order of May 8, 2015. In that same order, the Court denied CLC's motion to approve Joint Prosecution Agreements ("JPAs") with two groups of plaintiffs' attorneys, the Phipps group and the Watts group. The Court ordered CLC to submit a revised CBO, and CLC did so. The Phipps and

Watts groups then filed a motion for leave to file under seal a motion seeking to remove specific provisions concerning them from the CBO, which motion would be based on the JPAs' provision requiring Court approval for their efficacy.  The Court then ordered CLC to consider the issue and to submit another proposed CBO.

On June 19, 2015, CLC filed the instant motion seeking entry of a revised proposed CBO.  CLC indicate that they reached agreement on an amended JPA with the Watts group (now designated the Remele/Sieben group), and that group has filed a response indicating that it does not object to CLC's proposed CBO that includes specific provisions relating to it.  CLC report, however, that they were not able to reach a similar agreement with Phipps.  Nonetheless, CLC argue that the CBO should still contain provisions relating to Phipps based on the JPA executed by CLC and Phipps.  In response to the motion, Phipps argues that because the Court did not approve the JPA, the JPA is not effective, and that therefore the CBO should not refer to Phipps specifically.

## II.   Analysis

The effectiveness of the JPA between CLC and Phipps is subject to a condition precedent in the agreement.  The JPA provides that the term of the agreement begins on the "Effective Date," which in turn is defined to mean the date on which this Court "approves this Agreement."  Phipps argues that this condition to make the JPA effective has not been satisfied because the Court declined to approve the JPA upon motion by

2

CLC.  CLC do not argue in their present motion that this condition should be interpreted in any way other than as requiring Court approval of the entire JPA.  Rather, CLC argue that the JPA was effectively modified, or that Phipps waived the condition or should be estopped from enforcing it, to the effect that the JPA becomes effective on the satisfaction of the limited condition that the Court approve the four terms in the JPA directly relating to the CBO (i.e., terms governing Phipps's use of common benefit work, the assessment percentages for Phipps's MDL and other cases, and the ability of Phipps and CLC to seek common benefit payments under the CBO and any similar state court order respectively).[1]

CLC's argument for modification, waiver, or estoppel is based entirely on Phipps's agreement to certain language to be included in the revised proposed CBO to be submitted to the Court after its initial ruling on objections, after CLC had raised with Phipps the issue that the Court may decide not to approve the JPAs.  The parties agree on the following chronology:  In a telephone status conference on April 8, 2015, the

---

[1]CLC argue that, under Kansas's choice-of-law rules, these issues of contract law should be governed by the law of either Missouri or Texas, although CLC maintain that the applicable law is the same in each state.  Phipps does not address the choice-of-law issue but cites Kansas cases.  The Court agrees with CLC that the issue whether Missouri or Texas law governs the JPA need not be decided at this time, as that decision does not affect the Court's ruling.  The Court notes in that regard that under either state's law, the JPA's provision requiring modification only by a signed writing does not prevent the parties from waiving that provision and agreeing in some other form to modify the JPA. *See Madera Prod. Co. v. Atlantic Richfield Co.*, 1998 WL 292872, at *4 n.2 (N.D. Tex. June 1, 1998); *Doss v. Syntex Agribusiness, Inc.*, 901 S.W. 2d 293, 299 (Mo. Ct. App. 1995).

Court wondered why it should approve the JPAs (CLC had filed its motion for approval), and it suggested that any agreed terms relating to common benefit assessments could simply be included in the eventual CBO (thereby possibly avoiding disclosure of the entire JPAs to other parties).  By e-mail of April 13, 2015, CLC asked Messrs. Phipps and Watts whether they objected to certain revisions to the proposed CBO that would disclose terms of the JPAs relating to the CBO.  On April 14, 2015, CLC e-mailed Messrs. Watts and Phipps as follows:

> One additional issue for you to consider.  The Court last week did not seem inclined to want to approve the entire JPA with each of you, but did seem inclined to be willing to consider approving the non-strategic provisions that related to the common benefit order.  I have incorporated those in the revised CBO that I sent you yesterday.  But I also included a provision in the revised CBO stating that the Court approves the JPA's.  I did so because our JPA's require Court approval to become effective.

> Would you guys be willing to modify the JPA's to make them effective upon Court approval of the provisions relating to the assessments, rather than upon Court approval of the entire JPA's?  If so, we should modify the language in the revised CBO I sent you yesterday on this point before we submit it to the Judge tomorrow.

On April 15, 2015, CLC sent an e-mail to Messrs. Phipps and Watts that included the following:

> [A]ttached are a slightly revised CBO and modifications to the JPA's to make them effective also upon the Court's recognition that separate agreements with each of you govern common benefit assessments.  As you know, the current JPA's require court approval to become effective.  Based upon the last telephone conference with the Court, it appears that the court is unlikely to approve the entire JPA's, but may approve those provisions relating to common benefit assessments.  The revisions to the CBO's reflect that anticipation.

4

Attached to that e-mail were draft edits to the CBO and draft amendments to the JPAs. Later that evening, after Mr. Watts had consented to the CBO edits, Mr. Phipps consented to CLC's proposed revisions to the CBO to be submitted to the Court, e-mailing "We have an agreement on the Modified CMO [*sic*]."  Later that night on April 15, 2015, CLC submitted a revised proposed CBO to the Court by e-mail.  On April 16, 2015, CLC sent draft JPA amendments attached to the following e-mail to Messrs. Phipps and Watts:

> [T]hanks for your cooperation in reaching agreement on the revisions to the CBO.
>
> Based on the Court's statements at the last hearing, it does not appear that the Court will approve the JPA's in total, but may approve the portions related to the common benefit assessments.  As a result, we need to modify the effective date provisions of the JPA's.  Attached is our proposal on that issue.
>
> Does this work for the two of you?  If not, let's discuss what will work.
>
> Just let me know.

The proposed JPA amendment would have redefined "Effective Date" to mean the date on which this Court approves the JPA or otherwise enters a CBO recognizing the existence of an agreement with CLC governing common benefit assessments.

The parties agree that Phipps did not execute a written amendment to the JPA. In making its argument for modification, waiver, or estoppel, CLC does not point to or rely on any statement by Phipps concerning the JPA or any other statement other than Mr. Phipps's statement of an agreement on the language of the revised CBO to be

submitted to the Court. CLC state in their brief that they conducted negotiations with the Watts and Phipps attorneys during the day on April 15, 2015, but they have not provided any evidence or details of those negotiations other than the e-mails described above.

CLC argue that Phipps effectively agreed to a modification of the JPA to limit the condition to Court approval only of the common benefit terms—or effected waiver or estoppel—by agreeing to the relevant language in the proposed CBO to be submitted to the Court after CLC had raised the issue of the Court's possible refusal to approve the entire JPA. The Court is not persuaded, however, that Phipps's single act in agreeing to certain CBO revisions is sufficient to have the effect urged by CLC here.

The key is the actual language to which Phipps agreed. In the proposed CBO submitted to the Court on April 15, 2015 (to which Watts and Phipps agreed), the section concerning Watts and Phipps noted the existence of separate agreements between those groups and CLC; summarized the four terms in the JPAs material to the CBO; stated that Watts and Phipps were "uniquely situated in this litigation;" and described various agreements Watts and Phipps had made to help coordination between this MDL and any state-court proceedings in related cases. This section of the proposed CBO concluded as follows:

> Given these and other undertakings to which Watts and Phipps have agreed with MDL Co-Lead Counsel, as reflected in joint prosecution agreements submitted *in camera* to the Court, the Court finds that treating Watts and Phipps separately is in the best interests of all plaintiffs, and that the provisions of these agreements with Watts and Phipps, submitted

6

to the Court *in camera*, relevant to this Order and thus requiring review
and approval by this Court are approved.

Thus, Phipps agreed to language by which the Court would describe and approve the

JPAs' common-benefit terms, which approval was required because those terms were

relevant to the CBO.  That language did *not* indicate that Court approval of only those

terms would make the JPAs effective.  Thus, Phipps did not agree to any language

inconsistent with the position that Court approval of the entire JPA was required.  Phipps

could certainly have intended to consent to certain language to be included in the CBO

about the JPAs (to address the Court's suggestion that such terms be included to obviate

the need for disclosure of the JPAs in their entirety to other parties) to cover the

possibility that the Court would grant CLC's then-pending motion for approval of the

JPAs—without intending to waive any argument in the event that the Court denied that

motion.  Thus, the Court cannot conclude that Phipps agreed to a modification of the JPA

or otherwise acted in a manner that would give rise to waiver or estoppel.[2]

Evidence of CLC's own understanding of Phipps's act in consenting to the CBO

revisions supports Phipps's position here.  CLC argues that Phipps effectively agreed to

---

[2]In the Texas case cited by CLC concerning the ineffectiveness of a contractual
provision requiring only written modifications, the court noted that a party's silence
could not support modification, waiver, or estoppel in the absence of an affirmative duty
to speak.  *See Madera*, 1998 WL 292872, at *4.  In this case, Phipps did not make any
statements concerning an amendment to the JPA or the JPA's condition requiring
approval, and CLC have not pointed to any fiduciary or special relationship between the
parties or provided some other basis that would require Phipps affirmatively to reject
modification of the JPA's condition.

modification of the JPA by that consent to the CBO language on April 15, 2015.  That argument, however, is undermined by the fact that CLC sent Phipps an express request for amendment of the JPA the next day.  CLC argue that Phipps had agreed to modify the JPA on April 15, and that CLC was merely trying to memorialize that modification formally on April 16.  CLC did not put it that way in its April 16 e-mail, however; rather, CLC stated that because the Court may not approve the JPAs in their entirety, "we need to modify" the JPAs.  Thus, the evidence indicates that CLC did *not* consider Phipps to have agreed to any modification (or taken any position on the JPA's condition) by agreeing to the CBO language on April 15, and that CLC still believed the next day that modification of the JPA was necessary.  Thus, the Court rejects CLC's arguments based on modification, waiver, and estoppel, and it concludes that approval  of the entire JPA by this Court would be required to satisfy the condition for its efficacy.[3]

Finally, the Court declines CLC's alternative request for the Court to approve the JPA in its entirety (despite its prior denial of CLC's motion for approval).  Whether enforcement of the JPA would be good for all of the plaintiffs or for the MDL (as CLC argue) is irrelevant, as there is still no basis for the Court's approval of all of the terms of the JPA.  As the Court noted in originally denying CLC's motion for approval, the

---

[3]The Court is also not persuaded that CLC has shown reasonable reliance to their detriment on Phipps's agreement to the CBO revisions, as Phipps's failure to agree to the requested amendment to the JPA (in the absence of any statements by Phipps concerning that amendment) should have provided sufficient notice to CLC of the possible need to take any action to protect itself from adverse consequences flowing from that failure.

Court has no reason to consider the reasonableness of those terms in the absence of any claim of breach or genuine controversy requiring such a consideration,[4] whether or not the JPA requires approval of the Court.  CLC has not demonstrated any requirement or proper reason for the Court to approve a side agreement reached by CLC.  Although CLC argue that it would be good policy for one such agreement to be enforced, the Court would effectively be rewriting the parties' contract if it granted the necessary approval without a valid reason simply to achieve policy goals.[5]  Forcing Phipps to honor the contract in violation of its terms would also have the effect of improperly circumventing the Court's ruling that it otherwise lacks jurisdiction to include cases outside the MDL within the scope of the CBO.  The Court therefore reaffirms its prior denial of CLC's motion for approval.

Accordingly, because Phipps is not subject to an effective JPA, there is no basis to include specific provisions relating to Phipps in the Court's forthcoming CBO, and CLC's motion for entry of its proposed CBO is denied to that extent.

---

[4]CLC suggests that a controversy has now arisen, but the fact that Phipps has apparently decided not to honor the JPA does not create any genuine controversy that would require the Court to bless or weigh the reasonableness of the JPA's terms as a whole.  Thus, any comment by the court on the reasonableness of the terms would constitute an improper advisory opinion.

[5]CLC's request for approval of this particular agreement also seems oddly selective in light of the fact that agreement among the CLC members themselves and with committee members have not been subject to Court scrutiny.

### III.    Other Provisions

In its prior order, the Court requested that CLC submit a revised CBO that accounts for the rulings made in that order, and by the present motion, CLC seeks entry of its revised proposed CBO.  Only Phipps asserted an objection to the latest revisions, and that objection has been sustained as set forth above; thus, in issuing its CBO, the Court has used the version submitted by CLC that does not include any reference to Phipps.  The Court has made a modification to the language in Section I.C of the proposed CBO, but its CBO, which will be issued forthwith, and it modified the otherwise adopts the language of CLC's proposed order.  Accordingly, CLC's present motion is granted to the extent that the Court's CBO tracks CLC's proposed order.

IT IS THEREFORE ORDERED BY THE COURT THAT Co-Lead-Counsel's motion (Doc. # 854) for entry of a proposed common benefit order is **granted in part and denied in part**, as shown by the Court's forthcoming common benefit order.  The motion is specifically denied with respect to the proposed language regarding Phipps Anderson Deacon LLP.

IT IS SO ORDERED.

Dated this 27th day of July, 2015, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

10