IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162            )        MDL No. 2591
CORN LITIGATION                       )
                                      )        Case No. 14-md-2591-JWL
This Document Relates To All Cases    )
                                      )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on the joint motion to dismiss defendants' counterclaims and third-party complaints filed by Archer Daniels Midland Company ("ADM"), Cargill, Incorporated ("Cargill"), and Rail Transfer, Inc. ("Rail Transfer") (collectively, "movants") (Doc. # 1434)[1]; and Rail Transfer's additional motion to dismiss (Doc. # 1436). The Court heard oral argument on these motions on March 30, 2016. For the reasons set forth below, the Court **grants** the joint motion, and the third-party claims and counterclaims asserted against movants in this MDL are hereby dismissed. In light of that ruling, Rail Transfer's additional motion to dismiss is denied as moot.

## I.   Background

In hundreds of cases in this MDL, producer and non-producer plaintiffs have

_____

[1]This motion was also filed on behalf of Express Grain Terminal LLC, but the claims, counterclaims, and third-party claims between that party and defendants have since been settled and dismissed. The motion was not filed on behalf of third-party defendant Cargill International SA, which had not yet been served.

brought negligence and other claims against defendants (collectively, "Syngenta") relating to Syngenta's commercialization of a genetically-modified corn seed known as Viptera. One such case was brought by non-producer Rail Transfer. Exporters ADM and Cargill also brought cases against Syngenta, although those cases have been remanded to state court and thus are no longer part of the MDL. Syngenta has asserted counterclaims against Rail Transfer, and in all of the cases in the MDL in which the plaintiff has conformed its complaint to master complaints filed in this Court, Syngenta has asserted third-party claims against movants ADM, Cargill, and Rail Transfer. The counterclaims and third-party claims seek contribution or indemnity under state law, based on allegations of movants' negligence to plaintiffs. Specifically, Syngenta alleges that movants were negligent in handling and commingling corn containing the Viptera trait and in selling or shipping such corn to China.

In seeking dismissal of these counterclaims and third-party claims, movants argue that the claims are preempted under two federal statutes, that movants do not owe a legal duty to plaintiffs as alleged by Syngenta, and that the claims do not satisfy various states' requirements for contribution and indemnity. Movants further argue that personal jurisdiction over Rail Transfer is lacking in all cases originally filed outside of Minnesota. Finally, Rail Transfer asserts by separate motion that Syngenta has failed to state a plausible claim against it under the requisite pleading standards.

## II.     Lack of Personal Jurisdiction over Rail Transfer

As an initial matter, the Court addresses Rail Transfer's jurisdictional argument. Rail Transfer, a Minnesota company, has submitted an affidavit in support of its argument that it is subject to personal jurisdiction only in Minnesota with respect to these claims by Syngenta.[2] Syngenta concedes, based on the affidavit, that there is no personal jurisdiction over Rail Transfer in cases originating in other states.   Accordingly, the Court dismisses for lack of personal jurisdiction Syngenta's third-party claims against Rail Transfer in all cases in the MDL other than those cases transferred to the MDL from the District of Minnesota.

## III.     Preemption

Movants argue that Syngenta's claims against them are preempted by the United States Grain Standards Act (GSA), 7 U.S.C. §§ 71-87k.  They further argue that any claims against ADM and Cargill (licensed warehouses) relating to the handling of grain are preempted by the United States Warehouse Act, 7 U.S.C. §§ 241-56.  The parties agree that the possible scope of preemption here under the Warehouse Act does not extend beyond claims that Syngenta concedes are preempted by the GSA; thus, the Court need not address whether the Warehouse Act preempts claims in this case, and it will confine its discussion to preemption under the GSA.

---

[2]Rail Transfer originally filed its action against Syngenta in Minnesota, and that case was eventually transferred into the MDL.

The GSA contains the following express preemption provision:

> No State or subdivision thereof may require the inspection or description in accordance with any standards of kind, class, quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce, or require any license for, or impose any other restrictions upon the performance of any official inspection or weighing function under this chapter by official inspection personnel. Otherwise nothing in this chapter shall invalidate any law or other provision of any State or subdivision thereof in the absence of a conflict with this chapter.

*See* 7 U.S.C. § 87g(a).  The parties agree that one "characteristic" of corn under this provision is whether it contains the trait found in Viptera.  Syngenta therefore concedes that movants "cannot be subject to a state tort law duty to inspect for and segregate Viptera corn," and that the GSA "precludes the imposition of any state tort law duty that would require [movants] to inspect, test, or describe corn according to the 'characteristic' of whether or not it contains Viptera," which "necessarily precludes any duty on anyone to segregate or channel Viptera."[3]  Thus, Syngenta concedes that its claims based on movants' handling of corn are preempted.[4]

Syngenta argues, however, that its claims against movants survive in part because it has also alleged that movants breached a duty of reasonable care by selling and

---

[3]Syngenta does not dispute that the preemption applies to state common law claims.  *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties.").

[4]Syngenta further argues that any claim by plaintiffs that Syngenta should have forced anyone in the industry to segregate corn should also be preempted.  Syngenta has not sought dismissal of any claims on this basis by proper motion, however, and the Court therefore does not consider any potential effect of its ruling on plaintiffs' claims.

shipping to China corn known to contain Viptera. Thus, the issue for the Court is whether the GSA's preemption provision also reaches Syngenta's shipping claims.

In determining the scope of a preemption provision, "[t]he question, at bottom, is one of statutory intent," and a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (internal quotation omitted). In relevant part, the GSA's preemption provision states that "[n]o State . . . may require the inspection or description in accordance with any standards of . . . quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce." *See* 7 U.S.C. § 87g(a).[5] The Court concludes that allowing liability for a breach of the duty asserted by Syngenta—a duty not to ship or sell to China corn that is known to include the Viptera trait—would impose, as a condition of shipment or sale, a requirement of inspection or description in accordance with a standard concerning a characteristic of the corn. As movants note, imposing such a duty would require either that the shipped or sold corn be tested for the presence of the Viptera trait or that the corn be effectively described as Viptera-free. The only alternative would be a complete ban on the sale of any corn to China because of the possibility of the presence of the Viptera trait, and such a ban imposed by state law would run afoul of Congress's unmistakable intent to reserve

---

[5] The Court has not located and has not been directed to any reported case citing the GSA's preemption provision.

5

to the federal government any such regulation on interstate or foreign commerce in grain based on characteristics of the grain.  Thus, under the plain language of Section 87g(a), Syngenta's claims are preempted.

This conclusion is further supported by a reading of the entire GSA, which contains numerous provisions demonstrating Congress's intent to regulate foreign commerce in grain.  The Act begins with Congress's declaration that "[g]rain is an essential source of the world's total supply of human food and animal feed and is merchandised in interstate and foreign commerce," and that the Act's regulation of grain and transactions in grain "is necessary to prevent or eliminate burdens on such [interstate or foreign] commerce and to regulate effectively such commerce."  *See id.* § 74(a).  Various substantive provisions in the GSA implement that stated purpose of facilitating foreign commerce in trade.  *See id.* §§ 76(d) (if foreign country requests that moisture content remain a criterion in the official grade designations of grain, such criterion shall be included in the official designation of grain shipped to that country), 77(a)(1) (requiring weighing, inspection, and official certificate for shipment of grain outside the United States), 77(c) (requiring corn exported from the United States to be tested for acceptable levels of aflatoxin contamination), 78(a) (in any sale involving shipment in interstate or foreign commerce, prohibiting use in advertising of description of grade with respect to standards regulated under the Act), 78(b) (in any sale involving shipment outside the United States, prohibiting false or misleading descriptions of grain), 87b(d) ("to ensure the quality of grain marketed in or exported from the United States,"

6

prohibiting addition or recombining of certain material with grain), 87e(c) (authorizing Secretary of Agriculture to monitor in foreign nations the importing of grain from the United States), 87e(k) (authorizing Secretary to extend appropriate courtesies to representatives of foreign countries to maintain relationships to carry out the policy stated in Section 74), 87f-1 (requiring registration of persons in the business of buying, handling, weighing, or transporting grain for sale in foreign commerce).

The liability asserted by Syngenta here would impose a burden on foreign commerce in grain and thus implicates Congress's stated purpose to eliminate such burdens. That policy supports the Court's conclusion that Syngenta's claims fall within the scope of the GSA's preemption provision.

Despite the concession and argument in its response brief, Syngenta argued at oral argument that movants' position depends on their mischaracterization of the alleged duty as a duty not to ship to China, when in fact Syngenta is merely alleging a broader duty to act reasonably. The Court must determine, however, whether the imposition of such a duty in the circumstances of this case (as set forth in the pleadings) would fall within the scope of the GSA's preemption provision. In this case, the imposition of liability on movants would amount to a condition on the shipment or sale of corn based on the presence of the Viptera trait, compliance with which would require testing or description of the corn as Viptera-free. Thus, enforcement of the state-law duty asserted by Syngenta is preempted under the GSA.

Syngenta also argues that movants could meet the duty of reasonable care by

7

declining to ship corn known to be contaminated without having to "describe" the corn in any way.  Again, however, enforcement of such a duty would equate to the imposition of a condition on sales based on the presence of a characteristic of the corn (the presence of the Viptera trait), as movants would effectively be required, in making a shipment, to represent to the best of their knowledge that the shipment was Viptera-free.

Thus, all of Syngenta's claims against movants are preempted by the GSA.  Accordingly, the Court grants movants' motion to dismiss those claims in all cases in the MDL.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT the joint motion to dismiss defendants' counterclaims and third-party complaints filed by ADM, Cargill, and Rail Transfer (Doc. # 1434) is **granted**, and the third-party claims and counterclaims asserted against those parties in this MDL are hereby dismissed.

IT IS FURTHER ORDERED BY THE COURT THAT Rail Transfer's additional motion to dismiss (Doc. # 1436) is hereby **denied as moot**.

IT IS SO ORDERED.

---

[6]In light of its ruling that Syngenta's claims against movants are preempted, the Court does not address movants' additional arguments for dismissal.  Thus, the Court denies as moot Rail Transfer's additional motion to dismiss for failure to state a claim.

8

Dated this 4th day of April, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge