IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162          )          MDL No. 2591
CORN LITIGATION                     )
                                    )          Case No. 14-md-2591-JWL
This Document Relates To Specific Cases:    )
                                    )
*McDonald AG Inc., et al. v. Syngenta AG, et al.,* )
      No. 15-9592-JWL               )
*Koeller, et al. v. Syngenta AG, et al.,*   )
      No. 15-9593-JWL               )
*Wright, et al. v. Syngenta AG, et al.,*    )
      No.15-9597-JWL                 )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion (Doc. # 1763) by defendants (hereafter "Syngenta") for reconsideration of the Court's Memorandum and Order of March 11, 2016, by which the Court denied Syngenta's motion to dismiss the claims by the 24 non-Kansas plaintiffs in the above-captioned three cases for lack of personal jurisdiction and for lack of venue (Doc. # 1367). In that order, the Court ruled that at least one defendant consented to personal jurisdiction by registering to do business in Kansas pursuant to Kansas statute; that such jurisdiction did not violate the unconditional conditions doctrine or the Dormant Commerce Clause; that jurisdiction was proper with respect to the other defendants by virtue of plaintiffs' alter ego allegations; and that venue was proper based on personal jurisdiction over defendants. *See In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1047996 (D. Kan. Mar. 11, 2016). Upon reconsideration, the Court agrees with Syngenta that jurisdiction in this case based on

consent by registration would violate the Dormant Commerce Clause.  Accordingly, the Court **grants in part** the motion for reconsideration.  The Court also rejects plaintiffs' alternative arguments based on waiver and specific jurisdiction.  Therefore, the claims by non-Kansas plaintiffs in these cases are subject to dismissal for lack of personal jurisdiction and lack of venue, and the Court grants in part Syngenta's underlying motion to dismiss (Doc. # 1367).  The Court orders, upon agreement by the parties, that these particular plaintiffs' claims be transferred to the districts in which they reside.

### I.    Consent by Registration

#### A.    *Consideration of* Brown

A motion seeking reconsideration of a non-dispositive order "must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."  D. Kan. Rule 7.3(b). Whether to grant or deny a motion for reconsideration is committed to the district court's discretion.  *See Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc*., 259 F.3d 1226, 1235 (10th Cir. 2001).  In moving for reconsideration, it is not appropriate for a party to revisit issues already addressed or advance arguments that could have been raised in prior briefing.  *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

In its prior order, the Court rejected Syngenta's argument that jurisdiction over it based on compliance with Kansas's registration statute, which the Kansas Supreme

Court has interpreted to require consent to general jurisdiction in Kansas, would violate due process. *See In re Syngenta*, 2016 WL 1047996, at *1-3. Syngenta argued that rejection of consent by registration was effectively mandated by *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), in which the United States Supreme Court seemingly narrowed the previous standard for general jurisdiction by confirming that an entity is subject to general jurisdiction only where contacts are so continuous and systematic as to render the entity essentially at home there—which standard ordinarily is not satisfied by mere sales in the state. *See id.* In its prior order, this Court reasoned that certain Supreme Court cases, beginning with *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 96 (1917), sanctioned jurisdiction through consent by registration; that the Supreme Court has not overruled those cases; that Supreme Court cases decided since *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), suggest the continuing viability of jurisdiction through consent; that various federal circuit courts have endorsed the concept of consent by registration since *International Shoe*; that the Supreme Court in *Daimler* did not implicitly overrule *Pennsylvania Fire* and in fact distinguished cases involving consent; and that this Court was persuaded by courts that had rejected similar arguments based on *Daimler*. *See In re Syngenta*, 2016 WL 1047996, at *1-3.

In seeking reconsideration of this ruling, Syngenta argues that the Court did not sufficiently consider the reasoning of *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), which Syngenta had cited in support of its motion to dismiss. Of course,

3

this is not normally a proper basis for reconsideration; and reconsideration of this ruling is not necessary to correct clear error or prevent manifest injustice, as the Court remains unpersuaded that consent by registration is unconstitutional.  The Court did address *Brown* in its order, distinguishing it as a case in which the Second Circuit declined to decide whether jurisdiction based on consent through registration was permissible, but instead interpreted the particular registration statute not to require consent to general jurisdiction.  *See In re Syngenta*, 2016 WL 1047996, at *3 n.2.  Syngenta essentially argues that the Court erred in failing to follow the Second Circuit's apparent conclusion in *Brown* that reliance on *Pennsylvania Fire* is not appropriate after *Daimler*.  The Court was correct in noting, however, that *Brown* did not actually decide the question at issue here.  In declining to resolve that issue, and instead merely interpreting the Connecticut statute at issue not to require consent to general jurisdiction, the Second Circuit stated: "Were the Connecticut statute drafted such that it could be fairly construed as requiring foreign corporations to consent to general jurisdiction, we would be confronted with a more difficult constitutional question about the validity of such consent after *Daimler*." *See Brown*, 814 F.3d at 640.  After noting that other states' registration statutes more explicitly confer general jurisdiction and that other circuit courts have sanctioned consent to jurisdiction by registration, the Second Circuit stated: "From these sources, it could be concluded that a carefully drawn state statute that expressly required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, might well be constitutional." *See id.*

at 640-41.

In the cases at issue here, the Court is not charged with interpreting the Kansas registration statute; the Kansas Supreme Court has already interpreted the statute to require consent to general jurisdiction. *See Merriman v. Compton Corp.*, 282 Kan. 433, 443-45 (2006). This Court must accept that interpretation, *see In re Syngenta*, 2016 WL 1047996, at *1 (citing *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215-16 (1921)), and thus the issue here is no different than if the Court were faced with a statute that explicitly requires consent. The Second Circuit in *Brown* expressly declined to resolve such a case, and in fact suggested that such a statute "might well be constitutional." *See Brown*, 814 F.3d 640-41. Moreover, contrary to the contention made by Syngenta in its motion to reconsider, the Court did set forth its reasons for rejecting the argument that *Daimler* effectively overruled *Pennsylvania Fire*, as noted above. Accordingly, the Court did not clearly err in failing to be persuaded by one portion of the reasoning of a court whose precedent is not binding on this Court.

In its reply brief in support of its motion for reconsideration, Syngenta cites the Delaware Supreme Court's recent opinion in *Genuine Parts Co. v. Cepec*, __ A.3d __, 2016 WL 1569077 (Del. Apr. 18, 2016), in which the court overruled its prior precedent and interpreted the Delaware registration statute not to require consent to general jurisdiction. *See id.* Like the Second Circuit, however, that court merely interpreted the relevant statute, and was not charged with determining the constitutionality of jurisdiction based on a statute that does require such consent. *See id.* Moreover, like the

5

dissenter in *Cepec*, *see id.* at *18 & n. 130 (Vaughn, J., dissenting) (citing cases, including *In re Syngenta*), this Court remains unpersuaded that *Daimler* effectively overruled *Pennsylvania Fire*.[1]

As the Court noted in its prior order, it "is not prepared to ignore such Supreme Court precedent based on speculation about how the Court might view jurisdiction in contexts other than that discussed in *Daimler*." *See In re Syngenta*, 2016 WL 1047996, at *3. Syngenta's latest arguments have not altered that view. Thus, the Court denies Syngenta's motion for reconsideration of this ruling from its prior order.

### B.   *Unconstitutional Conditions Doctrine*

Syngenta also asks the Court to reconsider its rejection of Syngenta's argument concerning the unconstitutional conditions doctrine. In a single paragraph of its reply brief in support of the motion to dismiss, Syngenta argued that jurisdiction based on consent given as a condition to do business would violate the doctrine because the registering company was required to give up the constitutional right to be free from

---

[1]After this Court issued its prior opinion, the Federal Circuit issued its opinion in *Acorda Therapeutics Inc. v. Mylan Pharmaceuticals Inc.*, 817 F.3d 755 (Fed. Cir. 2016), which it decided under Delaware law prior to *Cepec*. Although the district courts in the two cases in *Acorda* had split on the question of the constitutionality of consent by registration, the Federal Circuit declined to reach the issue, deciding the cases instead on the issue of specific jurisdiction. *See id.* In a concurring opinion, however, one judge stated that he would have addressed the consent issue and that he was persuaded that *International Shoe* and *Daimler* did not effectively overrule *Pennsylvania Fire*. *See id.* at 764-70 (O'Malley, J., concurring). The judge commented that although the Supreme Court may choose to overrule *Pennsylvania Fire*, that was solely the prerogative of the Supreme Court. *See id.* at 770.

general jurisdiction if the usual requirements for such jurisdiction (as most recently defined in *Daimler*) are not satisfied. Syngenta relied on two cases from the Supreme Court for its argument. In rejecting this argument, the Court noted that in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939), a successor case to *Pennsylvania Fire*, the Supreme Court had distinguished one of those cases on the basis that the statute in the other case sought to deny access to federal courts. *See In re Syngenta*, 2016 WL 1047996, at *3-4.

Syngenta now argues that the Court, in noting that the present case also does not involve a denial of access to federal courts, improperly limited the doctrine to such instances. Syngenta has mischaracterized the Court's ruling, however. The Court did not interpret the doctrine as applying only to certain constitutional rights; rather, the Court relied on the fact that in *Neirbo*, a case involving consent by registration, the Supreme Court rejected an argument based on the same case on which Syngenta relies now. As previously concluded, and as reaffirmed above, *Neirbo* has not been effectively overruled and therefore remains good law. *See Acorda*, 817 F.3d at 770 n.1 (O'Malley, J., concurring) (in rejecting argument under the unconstitutional conditions doctrine, citing *Neirbo* and noting that the Supreme Court has upheld consent by registration numerous times since the development of the doctrine).

Syngenta argues that the Court should not rely on *Neirbo*'s distinguishing of the prior Supreme Court cases because the right at issue here—to be free of general jurisdiction unless certain requirements are satisfied—was not defined until *Daimler* was

decided many years later.  The right to due process in limiting jurisdiction was certainly recognized at the time of *Neirbo*, however, and the Supreme Court in that case effectively concluded that consent by registration did not violate this doctrine.  The Court is bound to follow that ruling.

Syngenta also points to the *Cepec* court's recent statement (and citation to a Supreme Court case applying this doctrine) that "a foreign corporation's consent to personal jurisdiction cannot be coerced or conditioned on the corporation waiving its right not to be subject to all-purpose jurisdiction in all but a few places where it has sufficient contacts."  *See Cepec*, 2016 WL 1569077, at *17 & n.125.  As noted above, however, the *Cepec* court did not decide this issue, but instead merely interpreted the registration statute.  Nor did that court consider *Neirbo* in this context.  As explained above, the Court disagrees with *Cepec*'s conclusion that *Pennsylvania Fire* and *Neirbo* no longer remain good law; thus, given *Neirbo*'s apparent rejection of this argument, the Court also disagrees with *Cepec*'s suggestion that consent by registration violates this doctrine.

The Court remains unpersuaded that jurisdiction in this case would violate the unconstitutional conditions doctrine.  Thus, the Court did not clearly err in rejecting that argument by Syngenta in support of its motion to dismiss, and the Court denies Syngenta's motion for reconsideration of its ruling on this issue.

C.      *Dormant Commerce Clause*

Finally, Syngenta seeks reconsideration of its argument, raised in a single

paragraph of its reply brief in support of the underlying motion to dismiss, that giving effect to the consent would violate the Dormant Commerce Clause. In support of that argument, Syngenta relied solely on *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988). In rejecting that argument, the Court concluded that *Bendix* did not compel a finding of a violation of the Commerce Clause in these cases because, unlike *Bendix*, they involve a statute that does not treat foreign corporations differently from instate corporations. *See In re Syngenta*, 2016 WL 1047996, at *4. The Court concluded that in the absence of any caselaw to support invalidating consent jurisdiction under the Dormant Commerce Clause, and in light of the Supreme Court cases sanctioning such jurisdiction, the Court would not refuse to give effect to Syngenta's consent in these cases. *See id.*

Syngenta has now presented a much more thorough analysis of the application of the Commerce Clause, relying on different authority. Such analysis and authority were available to Syngenta when it briefed its motion to dismiss, and as noted above, motions for reconsideration are not properly based on arguments that could have been made previously. Thus, the Court could deny reconsideration of this ruling on that basis alone. Nevertheless, because it believes that the issue is sufficiently important and because it is persuaded by the authority now cited by Syngenta, the Court will reconsider its prior rejection of Syngenta's argument based on the Dormant Commerce Clause.

Syngenta now relies on the Supreme Court's opinion in *Davis v. Farmers' Co-operative Equity Co.*, 262 U.S. 312 (1923). In *Davis*, a Kansas plaintiff brought suit in

9

Minnesota against a Kansas defendant. *See id.* at 314. The claim did not relate in any way to activities in Minnesota, but the defendant had registered an agent in Minnesota pursuant to a statute that Minnesota's highest court had construed to require submission to general jurisdiction in Minnesota. *See id.* The Supreme Court held that the Minnesota registration statute, so construed and applied in that case, violated the Commerce Clause because the condition of requiring submission to general jurisdiction imposed on interstate commerce "a serious and unreasonable burden." *See id.* at 315-18. The Court took judicial notice of the facts (which were matters of common knowledge) that claims against interstate carriers such as the defendant were numerous and involved large sums; that "litigation in states and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations;" and that such absences impaired the efficiency of carriers' operations and caused heavy expense. *See id.* at 315. Those facts indicated to the Court that "the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one," and that "the resulting obstruction to commerce must be serious." *See id.* at 315-16. The Court noted that the statute might be valid if the transaction had arisen in that state or the plaintiff had been a resident there, but it declined to address those situations. *See id.* at 316-17. The Court concluded that "orderly effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside." *See id.*

at 317.  The Court further concluded:

> Avoidance of waste, in interstate transportation, as well as maintenance of
> service, have become a direct concern of the public.  With these ends the
> Minnesota statute, as here applied, unduly interferes.  By requiring from
> interstate carriers general submission to suit, it unreasonably obstructs,
> and unduly burdens, interstate commerce.

*See id.*

In *International Milling Co. v. Columbia Transportation Co.*, 292 U.S. 511
(1934), the Supreme Court discussed its holding in *Davis* and its limitations of that
holding in subsequent cases.  The Court noted that it had reached a different result from
*Davis* in cases in which the plaintiff was a resident of the state in which suit was brought
and the defendant either had a railroad that ran through the state or the tort may have
taken place in the state.  *See id.* at 518-19.  In *International Milling*, as in the previous
cases distinguishing *Davis*, the plaintiff was effectively a resident of the forum state.  *See
id.* at 519.  The Court stated that, although a plaintiff's residence in the forum state is not
controlling, it is a "fact of high significance," to be considered with the nature of the
activities of the defendant in the state.  *See id.* at 519-20.  Thus, the Court did not limit
the importance and application of *Davis* to a situation in which the plaintiff is not a
resident of the forum state.

*Davis* has not been overruled by the Supreme Court, and this Court has not been
directed to any authority suggesting that *Davis* should not govern the present case.[2]

---

[2]At least two courts have suggested that requiring consent to general jurisdiction
(continued...)

11

Indeed, plaintiffs failed to address *Davis* at all in their response to the motion for reconsideration. The Supreme Court did not distinguish *Davis* or address the Commerce Clause in *Pennsylvania Fire* or its progeny; thus, the basis for the Court's rejection of the argument based on the unconstitutional conditions doctrine does not apply here.

Plaintiffs' only argument on this issue is essentially that Syngenta has failed to provide evidence to show either that it is burdened in having to defend these cases in this Court or that interstate commerce is burdened when corporations must defend cases outside of their home jurisdictions. In *Davis*, however, the Supreme Court took judicial notice of facts establishing the burden on interstate commerce, including the fact that having to litigate in a remote location can effect business operations. Similarly, it is a matter of "common knowledge" (as the Court put it in *Davis*, *see* 262 U.S. at 315) that if corporations are subject to general jurisdiction in every state in which they register to do business (and not only in their home states), the costs of defending suits will increase, and corporations may be deterred from registering and doing business in every state. Indeed, as Syngenta points out (and plaintiffs do not dispute), the Supreme Court

---

[2](...continued)
in order to conduct business in a state could violate the Commerce Clause. *See Cepec*, 2016 WL 1569077, at *14 & n.108 (in interpreting a registration statute, noting that "exacting such a disproportionate toll on commerce [as would occur if the statute required consent to general jurisdiction] is itself constitutionally problematic" in light of the Commerce Clause); *Viko v. World Vision, Inc.*, 2009 WL 2230919, at *10 n. 17 (D. Vt. July 24, 2009) (citing *Davis* in noting that "placing this condition on foreign corporations engaged in interstate commerce may exceed states' authority under the Dormant Commerce Clause").

implicitly recognized such a burden when it held in *Daimler* that basing general jurisdiction only on sales in a particular state violates due process. Thus, the Court follows *Davis* and concludes that the Kansas registration statute, as applied in these cases to claims by the non-resident plaintiffs, discriminates against interstate commerce in practical effect, and thus is invalid under the Commerce Clause. *See Oregon Waste Sys., Inc. v. Department of Envir. Quality*, 511 U.S. 93, 99 (1994) ("If a restriction on commerce is discriminatory, it is virtually *per se* invalid."); *American Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1254 (10th Cir. 2000) (discrimination against interstate commerce in violation of the Commerce Clause may be facial or in practical effect).[3]

In addition, plaintiffs have not identified any legitimate state interest in requiring consent to general jurisdiction as a condition of registering to do business in that state. Certainly, it may be argued that a state has an interest in allowing a corporation to be sued locally on claims arising out of the corporation's activities there (specific jurisdiction), or in providing a forum for claims by its residents; but a state has no legitimate interest in hosting litigation between two out-of-state parties that does not arise from either parties' activities in the state. *See Davis*, 262 U.S. at 317 (effective

---

[3]Just as the Supreme Court in *Davis* considered the burden as applied generally to carriers, the Court considers this issue of the burden placed on interstate commerce more in the abstract, as applied to non-resident corporations generally. Thus, the Court does not consider the fact that these cases' inclusion within the MDL would lessen any burden on Syngenta in litigating them here.

13

administration of justice does not require the exercise of general jurisdiction if the plaintiff does not reside in the state). Thus, even if the Kansas statute requiring consent to general jurisdiction were not deemed improperly discriminatory, it would nonetheless fail to pass muster under the applicable balancing test. *See American Target*, 199 F.3d at 1254 (act must be upheld if legitimate public interest outweighs incidental burden on interstate commerce) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Accordingly, plaintiffs may not rely on consent by registration to establish personal jurisdiction over Syngenta in this case. Therefore, the Court must consider plaintiff's alternative arguments in opposition to Syngenta's motion to dismiss, which arguments the Court did not address in its previous order.

## II. <u>Waiver</u>

Plaintiffs argue that Syngenta waived any objection to personal jurisdiction or venue by failing to raise those issues in its initial motion to dismiss the master complaints in this MDL. Plaintiffs argue that these defenses were "available" to Syngenta for purposes of the applicable rule, *see* Fed. R. Civ. P. 12(g)(2), because, under the procedures adopted in the MDL, the Court's ruling on the initial motion to dismiss applied to all cases, past and future, in which plaintiffs filed notices to conform their pleadings to the master complaints.

The Court rejects this argument for waiver. Plaintiffs have not provided any authority to suggest—and the Court therefore declines to rule—that a defendant may

waive a defense in one case under Rule 12(g)(2) by failing to assert it in another case, at least in the absence of a court order requiring the defense's assertion in the other case. Moreover, the Court does not agree with plaintiffs that the Court's orders permitting consolidated proceedings support waiver here.  In its Scheduling Order No. 1, issued February 4, 2015, the Court provided for the filing of consolidated amended complaints "[s]olely as an MDL administrative and procedural tool," and it set a deadline for motions to dismiss that were "anticipated to be mainly confined to arguments that plaintiffs' [consolidated amended complaints] . . . fail to state a claim upon which relief may be granted."  On March 10, 2015, the Court issued its Order Relating to Consolidated Pleadings to clarify the scheduling order's provisions relating to consolidated complaints.  That order noted specifically the scheduling order's contemplation of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in response to consolidated complaints.  The Order stated that "[o]rders resulting from motion practice directed at the Master Complaint shall be deemed to apply to the Parties in any case where a Notice to Conform has been filed."  No provision in the Order, however, stated or even suggested that Syngenta would waive, in the individual cases, any objections to personal jurisdiction or venue not raised in a motion addressed to a consolidated complaint.  To the contrary, multiple provisions of the Order explicitly preserved objections to venue and rights under *Lexecon*.  Those provisions, along with the references to Rule 12(b)(6), evidence an intention by the Court—confirmed by the Court at this time—that Syngenta would not waive procedural defenses unrelated to the

15

substantive merits of plaintiffs' claims by failing to assert them in a motion addressed to a consolidated complaint.

Accordingly, there is no basis here for an exception to the general rule that defendant does not waive a defense in one case by failing to assert in another. The Court thus concludes that Syngenta is entitled to assert the defenses of a lack of personal jurisdiction and a lack of venue in these cases.

### III.   Specific Jurisdiction

Plaintiffs also argue that the Court may exercise specific jurisdiction over one defendant who marketed and sold seeds in Kansas (and thus over the other defendants by virtue of the alter ego allegations). This due process analysis essentially has three steps. In order to show that the defendant has such minimum contacts with the forum state that it should reasonably anticipate being haled into court there, the plaintiff must show that "(1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state; and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *See Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (internal citations omitted). If such minimum contacts are present, a court must then determine (3) "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *See id.* at 1160.

Syngenta argues that plaintiff cannot satisfy the second (causation-related) prong

16

of this test for minimum contacts.  The Tenth Circuit has explained the relevant analysis

as follows:

> We must also determine whether a nexus exists between the Defendant's forum-related contacts and the Plaintiff's cause of action. When analyzing this issue, courts generally follow one of three approaches: (1) proximate cause; (2) "but-for" causation; or (3) substantial connection.  Although we have rejected the [least restrictive] substantial-connection approach outright, we have not expressly picked sides (i.e., exclusively made an election) between the proximate-cause and the but-for-causation approaches.  Proximate case is the most restrictive approach and requires courts to analyze whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.  "But-for" causation is less restrictive and supports the exercise of personal jurisdiction based on any event in the causal chain leading to the plaintiff's injury.

*See id.* at 1160-61 (footnotes and internal citations omitted).  Syngenta does not argue

for application of the more restrictive proximate-cause standard in these cases; thus, the

Court need not predict whether the Tenth Circuit would adopt that standard.  Syngenta

instead seeks dismissal on the basis that plaintiffs cannot satisfy the less restrictive "but-

for" standard here.

Plaintiffs argue that Syngenta's activities in Kansas—sales and marketing of

Viptera and Duracade—need not be the sole cause in order to provide the necessary

causal nexus.  They further argue that Syngenta's sales in Kansas were not insignificant,

and that such sales therefore increased the risk of the eventual contamination of the corn

crop and disruption of the market on which their claims are based.[4]  Plaintiffs' theory of

---

[4]According to data provided by plaintiffs with their opposition to the motion to
(continued...)

17

the case, however, is that the contamination of the corn supply in the United States caused China to reject corn shipments, which in turn caused corn prices to drop. Syngenta's activities in this state, then, cannot have been a but-for cause of the alleged harm, as it cannot be inferred reasonably from the alleged facts that plaintiffs' economic harm would not have occurred *but for* the additional sales in Kansas.  According to plaintiffs, the commercialization of Syngenta's products affected the market generally, and over 90 percent of those sales occurred elsewhere; by that theory, plaintiffs' claims did not arise from Syngenta's Kansas activities under the but-for test for causation.

Accordingly, plaintiffs cannot establish specific jurisdiction, and their claims are subject to dismissal for lack of personal jurisdiction over Syngenta.[5]

### IV.   Venue

The parties have agreed that, with respect to these plaintiffs' claim, the question of venue turns on the issue of personal jurisdiction.  *See* 28 U.S.C. § 1391 (providing for venue in any district in which all defendants are subject to personal jurisdiction).

---

[4](...continued)
dismiss, between five and eight percent of Syngenta's sales of Viptera were to Kansas residents during the relevant years.

[5]Syngenta also argues that dismissal is appropriate because the exercise of specific jurisdiction in this case would offend traditional notions of fair play and substantial justice.  Although the relevant factors seem to weigh in Syngenta's favor, *see Employers Mutual Cas. Co.*, 618 F.3d at 1161, the Court need not decide the issue in light of its ruling that plaintiffs cannot satisfy the nexus requirement.

18

Accordingly, because personal jurisdiction is lacking here, these plaintiffs' claims are also subject to dismissal for lack of venue, and the underlying motion to dismiss is granted on that basis as well.

### V.   <u>Transfer</u>

In their response to the motion to dismiss, plaintiffs argued that if personal jurisdiction and venue were lacking with respect to the claims of these non-Kansas plaintiffs, the cases should not simply be dismissed, but should instead be transferred to their home districts, in light of the discovery that has already been conducted and in light of some plaintiffs' inclusion in the initial bellwether pool.  *See* 28 U.S.C. §§ 1406(a) (transfer in case filed in the wrong venue), 1631 (transfer in case with lack of jurisdiction).  Syngenta agreed to such transfer in its reply in support of the motion to dismiss.  Accordingly, the Court will order that the claims of the non-Kansas plaintiffs in these cases be transferred.  After consultation with Syngenta, plaintiffs shall submit, on or before **May 25, 2016**, a proposed order setting forth the appropriate district for each plaintiff.

IT IS THEREFORE ORDERED BY THE COURT THAT Syngenta's motion (Doc. # 1763) for reconsideration of the Court's Memorandum and Order of March 11, 2016, is hereby **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED BY THE COURT THAT Syngenta's motion to dismiss for lack of personal jurisdiction and lack of venue (Doc. # 1367) is hereby **granted in part**.  By further order, the claims brought in these cases by non-Kansas plaintiffs shall be transferred to the districts in which they reside.

IT IS SO ORDERED.

Dated this 17th day of May, 2016, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge