1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
2

3     In Re:

4     Syngenta AG MIR 162        Case No. 14-md-2591-JWL-JPO
      Corn Litigation
5

6
                                Kansas City, Kansas
7                               Date:  05/25/2016
      . . . . . . . . . . . . . . . . . . . . . .
8

9                        TRANSCRIPT OF

10                     STATUS CONFERENCE

11                         BEFORE

12     HONORABLE JOHN W. LUNGSTRUM, SENIOR DISTRICT JUDGE

13      HONORABLE JAMES P. O'HARA, CHIEF MAGISTRATE JUDGE

14
      APPEARANCES FOR THE PLAINTIFFS:
15
      Patrick J. Stueve           Don M. Downing
16    Stueve Siegel               Gray, Ritter & Graham, PC
        Hanson, LLP               701 Market Street
17    460 Nichols Road            Suite 800
      Suite 200                   St. Louis, MO 63101
18    Kansas City, MO 64112

19    William B. Chaney
      Gray Reed & McCraw, PC
20    1601 Elm Street
      Suite 4600
21    Dallas, TX 75201

22

23    _____

              Kelli Stewart, RPR, CRR, RMR
24             Official Court Reporter
               259 U.S. Courthouse
25              500 State Avenue
             Kansas City, Kansas 66101

1                              APPEARANCES

2                              (Continued)

3     APPEARING FOR THE SYNGENTA DEFENDANTS:

4     Edwin John U              Mr. Thomas P. Schult
      Ragan Naresh              Berkowitz Oliver, LLP
5     Michael D. Jones          2600 Grand Boulevard
      Kirkland & Ellis          Suite 1200
6     655 15th Street, NW       Kansas City, MO 64108
      Suite 1200
7     Washington, D.C. 20005

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (10:39 p.m., hearing commenced.)

2              JUDGE LUNGSTRUM:  Please take your seats.  I

3     intended this to be informal, that's why I don't have my

4     robe on today.  And I'm glad to see you all here because

5     there are so many of you that I'm glad to see here

6     today.  We had to move this into the courtroom I see,

7     so-- but I do want to keep this sort of an informal

8     aspect of it.  And so welcome.  I am going to sit up

9     here, just-- so we can sit down.  And Judge O'Hara is

10    going to sit with me.

11             Of course I've already violated the first

12    rule that I'm going to announce; and that is, I wasn't

13    speaking into the microphone.  So anybody who's

14    listening in may not have an idea of what I just said.

15    What I just said basically was hello, so we'll go from

16    there.

17             We are here this morning in a status

18    conference in Case No. 14-2591.  In Re: Syngenta AG MIR

19    162 Corn Litigation.  And I will call for formal

20    appearances from co-lead counsel and from Syngenta.  So

21    first for the lead counsel for the plaintiffs.

22             MR. DOWNING:  Don Downing for the

23    plaintiffs, Your Honor.

24             MR. STUEVE:  Patrick Stueve here on behalf

25    of plaintiffs, Your Honor.

 1          MR. CHANEY:  William Chaney on behalf of the

 2   plaintiffs, Your Honor.

 3          JUDGE LUNGSTRUM:  All right.

 4          MR. DOWNING:  One other thing, Your Honor.

 5   Scott Powell wishes he could be here, but he's in a

 6   deposition in Minnesota in this case.  So he sends his

 7   regrets.

 8          JUDGE LUNGSTRUM:  Well, I-- I had gotten

 9   that information earlier that Mr. Powell was otherwise

10   occupied, but it appears like he was doing something

11   worthwhile so we're glad to have him doing that.

12          All right.  And for Syngenta.

13          MR. U:  Yes, Your Honor.  Good morning.

14   Edwin U for Syngenta.

15          MR. NARESH:  Good morning, Your Honor.

16   Ragan Naresh for Syngenta.

17          MR. JONES:  Good morning, Your Honors.  Mike

18   Jones for Syngenta.

19          MR. SCHULT:  Tom Schult for Syngenta.

20          JUDGE LUNGSTRUM:  All right.  Formally, I'll

21   welcome all of you who have just made your appearances,

22   as well as less informally everybody else.  As I

23   indicated, again, before I took to the microphone,

24   Magistrate Judge Jim O'Hara is seated with me up here at

25   the bench, because many of the items on the proposed

1    agenda from counsel are probably more in his wheelhouse

2    than mine, so I'll turn it over to him to talk to you

3    about.

4              Ellen Reisman is also here with us today

5    observing.  I understand that you all are going to be

6    visiting with Ms. Reisman later in the day.  And, of

7    course, I sincerely wish you all much success and

8    progress in your visits with Ms. Reisman and her

9    partners and associates who have come with her to visit

10   with you all today.  But that's-- that's for later.  For

11   now, let's talk about what we've got.

12             First of all, in that status conference

13   agenda that I put out, I indicated my intention to set

14   September 13th for the class certification motion

15   hearing.  And that is predicated on the idea that the

16   schedule that we put in place for the filing of and

17   getting at issue class certification motions was set in

18   stone, which in my opinion it is.  But I at least wanted

19   to give somebody an opportunity to speak before I issued

20   a final pronouncement on that.

21             MR. DOWNING:  Your Honor, we have no reason

22   to believe that it shouldn't be followed the way you've

23   ordered it.  The only question that we had is the nature

24   of the hearing, whether it would-- the Court envisions

25   oral argument on the legal issues presented or an

1    evidentiary-type hearing.

2            JUDGE LUNGSTRUM:  Typically in my experience

3    in class cert proceedings, the evidentiary information

4    is presented by form of declarations or affidavits or

5    deposition excerpts or however you might choose to

6    present it, and we conduct only oral argument in the--

7    in the classes cert hearing itself.  I am open to

8    something different if counsel believes that's necessary

9    or appropriate in a given case, but it would not be my

10   expectation unless that's, as I indicate, something that

11   you all believe ought to occur.

12           MR. DOWNING:  We will certainly meet and

13   confer with Syngenta before proposing anything in that

14   regard.

15           JUDGE LUNGSTRUM:  And Mr. Rempel reminds me

16   to remind you about the microphones.  So why don't you

17   pull them up and make them more accessible.

18           Mr. U.

19           MR. U:  Yes, Your Honor.  Edwin U for

20   Syngenta.  I was actually going to raise the same point,

21   which is as follows:  September 13th does work for our

22   side in terms of calendaring, but I think we would be

23   inclined to ask for an evidentiary hearing once the

24   class certification briefing is in and we see it on both

25   sides.

1          You know, there are cases both before but

2     especially after *Comcast* that emphasize that, for

3     example, the battle between competing experts offered

4     for and against class certification requires resolving

5     the credibility disputes between the two and the like.

6     And it's for just that reason the courts increasingly

7     have used their discretion to have evidentiary hearings.

8     So I wanted to note the point, just as Mr. Downing has.

9          JUDGE LUNGSTRUM:  Well, as I've indicated,

10    I'm open to that.  But, Mr. U, I may or may not agree

11    with you as to what the law might dictate or require,

12    but I'm open to consideration of that.  But I would want

13    a particularized showing of why it would be important as

14    to any particular experts, as opposed to simply having

15    us engage in a multi-day preview of what experts may

16    testify about someday.

17         I would want to have it focused, I would

18    want to have it aimed at what issues are truly

19    troublesome to the parties, understanding that each side

20    is-- probably doesn't agree with the other side's

21    experts, but there may be aspects that are more

22    troublesome there than others to deal with.  But I would

23    not intend to set aside the week to hear from every

24    expert that folks would like to bring someday in the

25    case.

1            MR. U:  Absolutely, Your Honor.  And so our

2    plan would've been to confer with Mr. Downing, just as

3    he indicated, again once the class cert briefs are in

4    and the declarations are in, so that we have something

5    concrete to talk about, but then to raise the issue at

6    that point with the Court for its discretion.  But I

7    wanted to note it now so that it wasn't a surprise.

8            JUDGE LUNGSTRUM:  That's perfectly fine.

9    And I'm glad you've raised that on both sides now so

10   that we can be thinking about that as we go.  I'm going

11   to set the class certification motion hearing then for

12   9:00 on the 13th of September.  And I believe that Judge

13   Sipkins has indicated his intention to come down and sit

14   in on that hearing, from Minnesota.

15           All right.  The next item on the agenda is

16   my desire to inquire about the procedural ramifications

17   of my memorandum and order concerning jurisdiction in

18   certain cases that were identified as bellwethers where

19   the plaintiffs were not from Kansas.

20           First of all, just on a most pure mechanical

21   level, we asked for an order that would be submitted by

22   the parties showing what-- to what districts these cases

23   need to be transferred.  What's the status of that?

24           MR. U:  So, Your Honor, plaintiffs reached

25   out to us yesterday with some ideas on that score and

1     then sent us a draft order this morning.  We would

2     jointly request on both sides to have until Tuesday to

3     submit that order.  And here's the reason why, Your

4     Honor.  Both sides understand that in light of Your

5     Honor's ruling, the cases filed in the District of

6     Kansas by non-Kansas plaintiffs would, as a technical

7     matter, be cases that should've been filed in other

8     district courts, for example, where those plaintiffs

9     reside.

10          Both sides have also talked about the fact

11     that transferring the cases to those home districts and

12     then tagging them and then sending them here for

13     pretrial proceedings and then sending them back would be

14     the ordinary process.  We are discussing whether it

15     would be procedurally proper for the two sides to

16     stipulate that the cases remain in this MDL solely for

17     pretrial proceedings in order to then be sent back to

18     those home districts at the end.

19          What I am working out in my own mind

20     candidly is whether the parties have the power to

21     propose that, given that we wouldn't want a situation

22     for anyone in which those home districts express

23     surprise later about a case they were thus far not aware

24     of, unlike in the usual JPML process where the case

25     started there.

1          JUDGE LUNGSTRUM:  Well, I would, you know,

2    in all candor, I would hope you could work out something

3    like that because, as you remember several status

4    conferences back, I said I hoped you could figure out a

5    way to do that to avoid the necessity of going through

6    the whole personal jurisdiction briefing because, again,

7    in all candor, I would not have included in a bellwether

8    selection those cases anyway, because I don't think they

9    ought to be here.  Even if I had personal jurisdiction

10   over them, I don't think they would be-- would have been

11   satisfactory bellwether cases because of the nature of

12   the plaintiffs not being from this jurisdiction.

13          But we've gone through all that, we've

14   briefed it, we've briefed it again, we ruled on it,

15   we've ruled on it again.  But any way we can do to save

16   you the time, money, and effort of going through red

17   tape, I-- I think is great.  But I don't know

18   technically where that is.  Perhaps what we should do to

19   help you would be to contact Jeff Luthi at the Panel--

20   or the clerk essentially at the Panel and see if there's

21   a way that we can help you expedite that.

22          Would that be helpful, do you think?

23          MR. U:  Your Honor, we're certainly open to

24   that.  And again, it's not a matter of trying to create

25   red tape, we want to cut through it, but we also don't

1   want the back-end surprise.

2           JUDGE LUNGSTRUM:  I know.  I totally

3   understand.  When I say-- and when I say red tape,

4   sometimes that red tape happens to be there for good

5   reason.  And in the end, it may well be we have to

6   follow the process to be able to vest those courts with

7   the power and expectation that someday those cases will

8   be back in their laps.  Perhaps, but maybe not.  Who

9   knows where we go from there.

10          So-- and that really covered my-- my second

11  question about that.  And that was the aspect of

12  expediting this somehow to get centralization expedited

13  in some particular way.  If they do have to go back, I

14  assume nobody is going to object to their being

15  transferred back to this MDL for pretrial purposes.  But

16  that's something we-- we really need to do.  The--

17          MR. U:  Your Honor, if I may on that topic.

18          JUDGE LUNGSTRUM:  Yeah.

19          MR. U:  We agree.  Those cases would be part

20  of this MDL for pretrial proceedings.  And, of course,

21  regardless of that process with the JPML, these are

22  cases for which both sides conducted bellwether

23  discovery.

24          JUDGE LUNGSTRUM:  Right.

25          MR. U:  Because of the telephonic hearing

1    the Court had some months ago where we raised the

2    objection about the plaintiffs' selection of these folks

3    as bellwethers, the Court gave its guidance that as long

4    as this pool was representative in terms of where folks

5    were farming, then they could be included because

6    bellwethers were not necessarily bellwethers to be tried

7    here as opposed to cases to be sent back.  So we've

8    worked that out.

9            JUDGE LUNGSTRUM:  And if to that extent then

10    those cases-- that now leads to my next question.  Do

11    those-- can those cases remain in the bellwether pool,

12    understanding that they would not be tried in Kansas,

13    they would be tried, if at all, if selected for the

14    bellwether pool, to be tried in the jurisdictions in

15    which they should have been brought to begin with, or do

16    we have to do something different to adjust that

17    bellwether pool?

18            MR. U:  So, Your Honor, we very much believe

19    that those cases can and should remain part of the

20    bellwether pool because it's the election that the

21    plaintiffs made knowing that there was this objection

22    and this concern we had expressed about the lexicon

23    process.  We heard at this telephonic hearing the

24    plaintiffs make the representation that they believe

25    these bellwethers were representative, that they were

1   from different states and that other plaintiffs in the

2   bellwether pool would be remanded anyway to their home

3   districts.  Quite apart from these ones at issue that

4   we're speaking about now.

5               So we very much believe that we've all

6   forged ahead together.  We've done the bellwether

7   discovery, and so we would not be amenable to a do-over

8   at this point, given the path we've been made to go

9   down.

10              JUDGE LUNGSTRUM:  Mr. Stueve.

11              MR. STUEVE:  Your Honor, we don't disagree

12  with that.  As you recall, our position was we wanted

13  the bellwether discovery process to go forward.  And

14  then at the end, the Court would exercise its discretion

15  as to where those trials would occur.  So as Mr. U

16  indicated, we actually submitted to them a proposed

17  stipulation.  They are reviewing that now and we will be

18  back with the Court.

19              JUDGE LUNGSTRUM:  All right.

20              MR. STUEVE:  Edwin, I don't recall when you

21  all thought you'd get back with us with respect to the

22  stipulation.

23              MR. U:  Yeah, I think what both sides

24  discussed is we could submit something on Tuesday.  That

25  would give us time to work out the language.

 1              JUDGE LUNGSTRUM:  Okay.  And we'll-- in the

 2    meantime, we'll check with the Panel to see if there's

 3    anything we might add to that discussion.  I will assume

 4    that the bellwether pool is not changed by this, it is

 5    simply that whatever district these cases would have

 6    been remanded to if we remanded them, or however you

 7    want to put it, that they're-- they're in the pool

 8    still.  And that-- that's where we go.

 9              All right.  And my third question about this

10    then, or fourth, which I've lost track, is I've

11    received, of course, Syngenta's response to the notice

12    of related case in our OSC concerning *Barker*, indicating

13    that *Barker* was again a case that should not have been

14    filed in the District of Kansas because they're

15    non-Kansas plaintiffs.  And I wanted to figure out a way

16    to expedite that and/or any other related matters that

17    we needed to deal with.

18              Mr. U, have you had discussions with co-lead

19    counsel about that subject?

20              MR. U:  We have not, Your Honor.  Once we

21    saw that related case show cause request, we put in the

22    response.

23              JUDGE LUNGSTRUM:  Yeah.

24              MR. U:  Our proposal would be that both

25    sides agree to treat that case the same way as the other

1    cases already addressed by Your Honor's ruling.

2            JUDGE LUNGSTRUM:  And are there any other

3    floating around out other than *Barker* that you know of

4    that need to be addressed?

5            MR. U:  We're not aware of any, Your Honor.

6            JUDGE LUNGSTRUM:  Okay.  And Mr. Stueve, is

7    there any reason why *Barker* can't be included in

8    whatever you're going to do here to deal with that

9    subject?

10           MR. STUEVE:  Not that we're aware of, Your

11   Honor.

12           JUDGE LUNGSTRUM:  Okay.  Then we'll-- we'll

13   leave-- we will leave *Barker* as it is for right now.  It

14   has not been included in the MDL.  So one thing I could

15   do is include it in the MDL and then, of course, I could

16   remand it, or do whatever else you wanted.  Maybe that

17   would be better to include it in the MDL, and that would

18   be more clear about what we're dealing with.

19           Would you object if we did that, Mr. U?

20           MR. U:  No, Your Honor.  So it would be

21   included in the MDL for pretrial proceedings, just so

22   that it's in the same basket as the other cases by

23   non-Kansas--

24           JUDGE LUNGSTRUM:  Yeah.  Subject-- subject

25   to the fact that the Court believes it doesn't have

1    personal jurisdiction over those individuals and can do

2    something with them here.  But at least for the purpose

3    of ironing the personal jurisdiction subject out, I

4    think what I will do then is order that the *Barker* case

5    be included in the MDL at this time for pretrial

6    purposes.  Okay.  That's-- I think that is the cleanest

7    way to do that.

8              I then-- I wanted to talk a little bit about

9    some of the activity that's occurred in some of the

10   other courts.  Not because I care, per se, about what

11   those other courts are doing with their own cases and

12   with their own jurisdiction to-- to exercise but,

13   rather, to the extent that they impacted in any way our

14   proceedings here.  And that's where the Minnesota issue,

15   which I put on the agenda here, came to mind.

16             Is there something happening with regard to

17   the Minnesota cases that have apparently been removed

18   from state court to federal court?  Is this presaging

19   something that I should be interested in or the clerk's

20   office should be interested in in terms of impact on our

21   cases here?

22             MR. NARESH:  Your Honor, Ragan Naresh for

23   Syngenta.  So there's actually two buckets of cases that

24   have been removed fairly recently from Minnesota.  One

25   is the *Funk Seeds* case, which Your Honor knows about,

1    and that's proceeding with a motion to dismiss practice.

2    And I'm-- I understand your question to be about the

3    other bucket, which is three cases that were removed,

4    tagged for transfer, and are on their way.

5              JUDGE LUNGSTRUM:  Yes.  I want to talk-- by

6    the way, put a-- put a bookmark there, as Mr. U likes to

7    say.  I'd like to talk about *Funk* at some point because

8    that's-- I do need a little more information about where

9    that sort of fits in.  But my specific question was

10   the-- the more newly-removed Minnesota cases.

11             MR. NARESH:  Sure.  And if Your Honor

12   allows, let me give you a bit more of the procedural

13   back and forth so that you know where it is in the

14   pipeline.

15             JUDGE LUNGSTRUM:  Yeah.

16             MR. NARESH:  So we removed it on-- in early

17   May, tagged it for MDL transfer.  There was initially an

18   objection to the-- to the transfer.  That objection has

19   been withdrawn, so it is on its way-- it's three cases.

20   They're on-- on their way to Your Honor.

21             The plaintiffs in those cases have indicated

22   that they intend to seek remand of those cases.  And so

23   that would be teed up as the initial step before Your

24   Honor, to decide that remand motion.  If Your Honor

25   remands it, then, of course, it goes-- it goes away.  If

1   Your Honor denies the remand motion, it would stay here.

2   And our belief would be that it would be treated just

3   like any other plaintiff who is not selected as a

4   bellwether.

5           JUDGE LUNGSTRUM:  And is this the beginning

6   of a-- an additional number of cases that may be

7   removed, these three, or are they somehow unique?

8           MR. NARESH:  There aren't additional cases

9   in the pipeline, these were late-filed cases fairly

10  recently and they were removable cases when--

11          JUDGE LUNGSTRUM:  These are cases that were

12  filed after there was a change in the corporate

13  structure somehow of-- I'm not putting it the right way

14  perhaps, but of Syngenta.  Is that--

15          MR. NARESH:  Yes, Your Honor.

16          JUDGE LUNGSTRUM:  All right.

17          MR. NARESH:  Yes, Your Honor.  There's not

18  a-- there's not a tranche in the pipeline on its way

19  that we're aware of.

20          JUDGE LUNGSTRUM:  Okay.  All right.  That

21  was the real interest I think I had was are we-- are we

22  going to see suddenly a flood of-- of stuff coming.

23          MR. NARESH:  Depends, of course, on what

24  gets filed and how it gets filed.  We're not aware of

25  what's in the pipeline for being filed.  But as of what

1   has been filed, there's not a deluge coming your way,

2   Your Honor.

3            JUDGE LUNGSTRUM:  Any comment by co-lead

4   counsel for the plaintiffs?

5            MR. DOWNING:  (Shakes head from side to

6   side).

7            JUDGE LUNGSTRUM:  The other-- the other

8   interest I have, of course, is in the Southern District

9   of Illinois cases.  Judge Herndon and I have talked

10  frequently about these matters, as I've talked with the

11  other judges.  I understand you had a lively session

12  with Judge Herndon fairly recently.

13           Again, my concern is not about whatever

14  issues may be there in those cases, but is there

15  anything going on in those cases that impacts the way

16  we're processing matters here?  Anyone want to speak to

17  that?

18           MR. NARESH:  Your Honor, Ragan Naresh again.

19  There is a lot of activity in those cases.  There have

20  been hearings in those cases.  As of right now, we don't

21  think that will impact Your Honor's schedule.  And if

22  something happens that might impact that, we would bring

23  it to your attention.

24           MR. STUEVE:  Your Honor, Patrick Stueve

25  here.  We also noted this in the joint status report.

1    The-- and we've reached out to Syngenta's counsel on

2    this issue.  We don't know yet the coordinated discovery

3    that may or may not be permitted there.  At that point

4    in time, once those issues are resolved, we've agreed

5    that we'll meet and confer.  There may be some issues

6    related to the use of that discovery in the bellwether

7    cases, but no need to address that at this point until

8    there's further clarification on the coordination

9    orders.

10           JUDGE LUNGSTRUM:  Okay.  Thanks.  Let me go

11   back to *Funk* again.  And could you give me a little

12   reminder about how *Funk* came to be where it is and its

13   individualized position in all of this?

14           MR. NARESH:  Sure, Your Honor.  It has-- it

15   has different issues, but there's also overlap between

16   the issues that are presented in the bulk of the cases.

17   Those will be teed up in a motion to dismiss that we'll

18   be filing this week, Your Honor.  I believe it's due on

19   Friday.  But it is-- it is a-- the plaintiff and

20   Syngenta in that case have a different relationship than

21   the farmers or the non-producer plaintiffs in all the

22   other actions.

23           JUDGE LUNGSTRUM:  All right.  And that's--

24   and that was the-- did they actually have a contractual

25   relationship with Syngenta?

 1              MR. NARESH:  Contractual, Your Honor.

 2              JUDGE LUNGSTRUM:  Okay.  I knew there was

 3    something unique about *Funk*.  But frankly, I did not

 4    take the time to go back before today and try to sort

 5    that out.  And I thought, you know, the easiest thing

 6    would be to ask you, and so I did.

 7              MR. NARESH:  Yes.  It's a contractual

 8    relationship that's different than the rest of them.

 9              JUDGE LUNGSTRUM:  Okay.  Thanks.  Thanks, I

10    appreciate that.

11              Now I'm going to pass the torch to Judge

12    O'Hara here.  There is I think maybe one or two of these

13    items that I might want to inquire about, but mainly

14    I'll let Judge O'Hara take it.

15              JUDGE O'HARA:  Counsel, referencing

16    Paragraph 5 in Judge Lungstrum's order of May 18, which

17    convened today's conference, let me inquire first about

18    the *Elijah Farms* case and specifically whether service

19    has been obtained on the foreign defendants in that case

20    as of this point.

21              MR. CHANEY:  Yes, Your Honor.  William

22    Chaney.  We have been in touch with and helping

23    coordinate that service with the counsel who filed--

24    filed that case.  My understanding is service was

25    completed.  I believe the date may have been May 3.

1    Counsel in Iowa has had some technical difficulty

2    getting the return filed using PACER as of yesterday

3    afternoon and we're working with him to try to get that

4    sorted out.  But my understanding is service has been

5    completed.

6                JUDGE O'HARA:  Is that consistent with

7    Syngenta's understanding as well?

8                MR. NARESH:  That is, Your Honor.

9                JUDGE O'HARA:  Okay.  What do you have

10   calendared, counsel, for the response date?

11               MR. CHANEY:  Your Honor, the *Elijah Farms*

12   case, as well as nine or ten others, are similarly--

13   similarly class cases brought in state court, removed to

14   federal court, and transferred to this MDL.

15               Those cases, I have been working with Mr.

16   Naresh on a stipulation.  Likely to stay those cases

17   pending the current bellwether process.  And we just

18   have some fine points in the negotiation of that

19   stipulation to work out.

20               JUDGE O'HARA:  Thank you.  Okay.  Let's turn

21   to the-- the status report that's attached to Judge

22   Lungstrum's order.  There's an extended discussion in

23   Section 1A about numerous depositions that the parties

24   by agreement are continuing to take and-- and schedule

25   beyond the May 2nd discovery cutoff.  It's my

1    understanding that-- that the bottom line is that the

2    parties agree that the ongoing depositions would have no

3    impact at all on the parties being in a position to

4    timely file and brief the class certification motions.

5              MR. DOWNING:  That's correct, Your Honor.

6              MR. NARESH:  That's correct, Your Honor.  We

7    do have some-- some updates, some developments since the

8    status report was filed that may impact the timing of

9    some of those in a way that could push those out a bit

10   further.  We don't think that would impact it.

11             We've learned on Friday afternoon that ADM

12   did not intend to make certain witnesses that they

13   identified on their initial disclosures available for

14   deposition.  And so we'll need to take that up.  And

15   judicial assistance may be necessary for that, and that

16   could push those out.

17             And similarly, we have a-- a dispute with

18   Cargill about certain depositions, whether we can or

19   can't take certain executives, which may push those out

20   to the extent judicial assistance is needed.

21             And similarly, there was some depositions

22   for which we were discussing June dates with Cargill,

23   which we learned on Friday would actually need to

24   proceed in July, which we'll work with them on those

25   dates.  But those may be out a bit further than I think

1    we had anticipated when we submitted this report on last

2    Wednesday.

3              JUDGE O'HARA:  Okay.  Well, I would, of

4    course, remain available to provide, as you say,

5    judicial assistance if that becomes necessary.  But so

6    we're clear about this, unless and until otherwise

7    ordered, the class certification briefing deadlines

8    remain in effect unchanged, regardless of whatever

9    problems you may have with Cargill and ADM.

10             MR. NARESH:  Yes.  And we don't anticipate

11   those depositions would impact the class certification

12   deadline.

13             JUDGE O'HARA:  All right.  Okay.  With the

14   parties' agreement then, Section 1A of the report is

15   approved with that understanding.

16             The same as relates to Section 1B.  As I

17   understand it, we've extended-- I've lost count how many

18   different orders we've entered that would extend the

19   meet and confer deadlines and the deadlines for the

20   parties to bring discovery motions to my attention.

21   Here again, it's my understanding that-- that even if

22   those disputes do come back to me at some point in the

23   future, it's not anticipated that would have any effect

24   on the class cert briefing.

25             MR. NARESH:  From our perspective, they

 1   would not.

 2              JUDGE O'HARA:  Mr. Stueve, is your

 3   perspective the same?

 4              MR. STUEVE:  Yes, Your Honor.

 5              JUDGE O'HARA:  Okay.  And I do want to

 6   commend counsel, notwithstanding the-- the number of

 7   those motions, but I do commend the efforts to try to

 8   work meaningfully on those problems.

 9              Okay.  Turning to the more significant

10   issue.  In Section 1C, we talked about discovery in the

11   coordinated actions.  And, Mr. Naresh, I think you

12   touched upon this a moment ago in the *Funk Seeds* case,

13   but I guess Judge Lungstrum and I both would like to

14   hear a little bit more from each side of the aisle as to

15   what is contemplated by this section of the report and

16   exactly what it is you're asking us to decide, if

17   anything, today.

18              MR. NARESH:  Yes, Your Honor.  I don't

19   believe we're asking Your Honors to decide anything.

20   This, I think, is what Mr. Stueve was alluding to

21   earlier when he referenced that we would have ongoing

22   discussions as the discovery in those cases unfolds.  In

23   *Funk Seeds*, there's a motion to dismiss coming this

24   week.  There's no discovery that's currently pending in

25   that case.

1            In the *Pospisil* case, we have served

2    discovery, we have shared the discovery that Syngenta

3    had previously produced.  In that case, the deposition

4    deadline in that case is I believe July 15th.  And I-- I

5    believe what Mr. Stueve was alluding to is that once

6    those-- that discovery proceeds, we would discuss

7    whether or not that discovery should be available for

8    use in the MDL.  And if there's a dispute about that, we

9    would present it to Your Honors.

10            The one wrinkle on the *Funk Seed*-- on the

11    *Pospisil* case is that it also will likely involve

12    discovery of the U.S. Government, which may-- which is

13    sometimes difficult to predict as to how long that will

14    take and--

15            JUDGE O'HARA:  Generally longer than what

16    everyone would expect.

17            MR. NARESH:  Without commenting on that,

18    Your Honor, we will-- that's the reason I think that Mr.

19    Stueve was alluding to, we'll cross that bridge when we

20    get there.  But if it looks like that will impact the

21    schedule in any way, I think we'd bring it to Your

22    Honors' attention as soon as we can.

23            JUDGE O'HARA:  And, Mr. Naresh, from

24    Syngenta's side of things, assuming discovery conducted

25    after our bellwether discovery cutoff is conducted in

1    a-- in a coordinated case, and provided that the

2    discovery in the coordinated case is admissible under

3    the rules of evidence, why would it not be usable, just

4    as a general proposition?

5           MR. NARESH:  As a general proposition, I

6    don't think that we would-- we would fight that, Your

7    Honor.  I think part of it is the practicalities of it.

8    At a certain point, discovery should not be ongoing as

9    trials are proceeding, et cetera.  For the most part,

10   this is discovery not of Syngenta but of plaintiffs.

11   For example, in the-- in the *Pospisil* case, the

12   discovery that's been promulgated to date is of the

13   plaintiff-- well, of the relator.

14          And so, you know, from our perspective, that

15   would likely be evidence that-- that could come in if

16   it's relevant and we feel there are criteria under the

17   F.R.E.  But we don't have kind of a blanket objection to

18   that, it's more of a practical consequence.

19          JUDGE O'HARA:  Okay.  And I appreciate the

20   practical considerations of trying to stabilize the

21   amount of information one has to get a command of before

22   you start interrogating witnesses.

23          But, Mr. Stueve or Mr. Downing, on the

24   plaintiffs' side of things, as a general proposition,

25   assuming evidence that's discovered in a coordinated

 1    case is admissible under the Federal Rules of Evidence,

 2    why would it not be available for use in this case, even

 3    though it's after the discovery cutoff in the bellwether

 4    pool?

 5              MR. STUEVE:  We agree with the-- the general

 6    proposition.  And as-- as Mr. Naresh suggested, there

 7    may be some practical considerations that both sides may

 8    want to talk through.  One being, you know, if-- and our

 9    reference to these coordinated actions wasn't just

10    limited to the two cases that are referenced there, but,

11    for example, in the Southern District of Illinois or the

12    state court in Illinois, the-- the question is, what

13    extent of additional discovery are we talking about?

14              We would want to be there for that discovery

15    at the same time we're advancing our case through class

16    certification, we have experts that we're producing, et

17    cetera.  So there are some practical considerations that

18    we would want to be able to evaluate, depending on the

19    extent of the coordinated discovery we're talking about.

20              JUDGE O'HARA:  So is this, fair to say, just

21    kind of a flag, a potential problem that might hit us

22    later on?

23              MR. STUEVE:  Might or might not--

24              MR. NARESH:  Yes, Honor.

25              MR. STUEVE:  -- be an issue down the road.

1          JUDGE O'HARA:  An expert in management.

2    Okay.  Well, I appreciate your alerting the captain of

3    the Titanic, at least the first officer.

4          MR. STUEVE:  Trying to manage expectations.

5          MR. U:  Let's not call it the Titanic, Your

6    Honor.

7          JUDGE O'HARA:  You never know.  Okay.  Let's

8    turn to the second section of your report.  Here again,

9    it's my understanding you want to move out, by

10   agreement, the supplementation deadline to June 20.  Is

11   that-- mindful that a little bit of time has been passed

12   since this report was submitted, is that still a good,

13   hard deadline that's been proposed?

14         MR. NARESH:  Yes, Your Honor.  We discussed

15   this with Mr. Downing the idea-- the previous date had

16   been tied to the May 2nd date.  The idea being let's

17   have a couple weeks after the-- the formal close to-- to

18   put those lists together, since it looked like some of

19   that was moving on and-- and some of the depositions, in

20   particular ADM and Cargill, were just getting underway,

21   we agreed that that should be moved by about 30 days to

22   June 20th.

23         In light of the developments late last week,

24   we may seek to extend that a few more weeks to allow

25   more of those depositions to-- to be completed, so that

1  we don't amend multiple times.  But that would be

2  something we would be happy to discuss with Mr. Downing

3  in say two-- two or three weeks, once we're a little

4  closer to that date.

5          JUDGE O'HARA:  Okay.

6          MR. DOWNING:  Yes, Your Honor, the-- when

7  you use the word "hard," it made me want to stand up and

8  say there are still some document productions that

9  Syngenta is making to us.  And so you can put several

10  caveats on the-- on the use of the word "hard."  But to

11  the extent that there are additional witnesses that we

12  learn about that we don't know about now in those

13  additional document productions, we may agree with Mr.

14  Naresh to jointly approach the Court for an additional

15  few weeks.

16          JUDGE O'HARA:  Okay.  And I guess my

17  question was really whether June 20 was a realistic

18  deadline that's being proposed in light of what's

19  happened since this report was submitted.

20          MR. NARESH:  I think that it is maybe less

21  realistic now than it was a week ago, but I-- I do think

22  that's our current anticipation.  That's what we're

23  moving towards, that's what we have in mind.  And I

24  think that in early June, in the first week or two in

25  June, we'll have a much more concrete sense of where we

```
 1    are with-- with the discovery at that point.

 2                JUDGE O'HARA:  Do you agree, Mr. Downing?

 3                MR. DOWNING:  Yes.  Yes, Your Honor, we do.

 4                JUDGE O'HARA:  Okay.  The June 20 requested

 5    deadline is granted and approved.  Turning to Item 3 on

 6    the top of Page 5 of your status report that's attached

 7    to Judge Lungstrum's order.  From the plaintiffs' side,

 8    tell me a little bit more about what is anticipated in

 9    terms of these motions to amend.

10                MR. CHANEY:  Yes, Your Honor.  We're

11    currently evaluating the-- the information learned in

12    depositions and discovery to date.  We have specifically

13    identified that the claims asserted under the Lanham Act

14    may be worthy of some amendment.  And we're working on a

15    potential amendment at the present time.  There are--

16    may be a few other areas, again, to update the

17    allegations in light of what we have learned in

18    discovery.

19                The process-- hopefully we would be in a

20    position very soon to-- if we choose to file an

21    amendment, to file it in advance of the briefing

22    schedule on June 15 on the class certification.  But

23    presently, as I said, the focus is on some amendments to

24    the Lanham Act.

25                JUDGE O'HARA:  Mr. Chaney, what do you
```

1    believe to be the operative deadline for moving to amend

2    the pleadings as opposed to just unilaterally filing

3    them?

4              MR. CHANEY:  Well, when I say file an

5    amendment, it would be file a motion for leave to amend.

6    And we would confer with Syngenta to see whether they

7    would oppose.  If not, then it would be filing a motion

8    for leave to amend under the Federal Rules.

9              JUDGE O'HARA:  I mean, was the deadline that

10   was set in Scheduling Order No. 2 extended?

11             MR. CHANEY:  Not to my knowledge, Your

12   Honor.  When Judge Lungstrum issued his order on the

13   motion to dismiss, there were certain specific

14   allegations made with regard to the Lanham Act that he

15   sustained and some that he said did not bear muster but

16   gave us the opportunity-- the opportunity to amend.  At

17   the time we did not have the information in order to do

18   that.  In a couple of instances, we may have gotten some

19   of that information necessary now that we would build

20   into a motion for leave to amend.

21             Additionally, there had been other aspects

22   of Syngenta's conduct that give rise to claims under the

23   Lanham Act that we may expand or elaborate on in the

24   Lanham Act allegations.

25             JUDGE O'HARA:  From Syngenta's side of the

1    aisle, what do you believe to be the operative deadline

2    for the plaintiffs to move to amend, given Scheduling

3    Order No. 2 and Judge Lungstrum's rulings on the motions

4    to dismiss?

5              MR. U:  So, Your Honor, in our discussions

6    with plaintiffs' counsel, our view has been primarily we

7    want to see what the proposed amendments are and whether

8    they are or aren't significant or important, or whatever

9    word one would like to use.  We do think that, depending

10   on the scope of the proposed amendments, they could be

11   untimely to the extent that they, for example, would

12   require us to seek discovery relevant to those new

13   allegations or new claims.

14             But again, in the meantime, we would like to

15   see what the proposed amendments are in the hopes of

16   avoiding any disputes.  Two quick points just to--

17             JUDGE O'HARA:  Before we move on, Mr. U, my

18   question is a little bit narrower.  Aside from whether

19   the proposed amendments would be meritorious or timely

20   in a general sense, what do you believe to be the

21   operative deadline in terms of a date for the plaintiffs

22   to move to amend, given Scheduling Order No. 2 and the

23   date on which Judge Lungstrum ruled the motions to

24   dismiss?

25             MR. U:  Your Honor, I think that time may

1    have well passed, but I would want to look back at that

2    question.

3                    JUDGE O'HARA:  Okay.

4                    JUDGE LUNGSTRUM:  I'm very concerned myself

5    as we butt up against the class certification motion

6    deadline and would certainly take a dim view of

7    expanding allegations that would prompt legitimate

8    requests for additional discovery.  Technical amendments

9    or amendments that simply can form the thing, I don't

10    know, if you all agree on them, of course we're not

11    going to have a problem.  But it-- to me, it's pretty

12    darn late to be changing theories that would affect

13    anything else that we have in our schedule.

14                    So I-- I just want to-- I'm not pre-judging

15    anything.  But for your guidance as you think about

16    this, especially if you've sat on some of this

17    information for a while that you gleaned earlier, as

18    opposed to something you may have just learned yesterday

19    that you had no reason to think of that you were going

20    to ever learn, I would look very askance at amending at

21    this time in that-- in that way.

22                    MR. CHANEY:  I understand, Your Honor.  And

23    to be sure, what we would be presenting to the Court is

24    information learned in recent weeks and-- and, in fact,

25    within the past month or six weeks in-- not only from

1    documents that have been produced by Syngenta, but then

2    in depositions of the witnesses who could speak to those

3    documents.

4          And in terms of additional discovery, this

5    is all information learned from Syngenta, not-- not from

6    third-party sources.  But I appreciate the Court's

7    guidance and we will take that into consideration.

8          JUDGE O'HARA:  And I think Mr. Stueve is

9    probably already aware of this, and his partners, but

10   with respect to any motions to amend that might be

11   filed, in addition to the practical overarching concerns

12   that have been articulated by Judge Lungstrum, I would

13   respectfully remind everybody that in the District of

14   Kansas, if there's a motion to amend that's filed after

15   the deadline that's been set for filing such motions,

16   it's going to be the-- the movant's obligation to

17   basically clear the hurdle of Rule 16 in terms of

18   modification of the scheduling order before we even get

19   involved in a Rule 15 analysis.

20         Now, Mr. Chaney, you touched upon what you

21   believe to be a good reason for not moving to amend

22   earlier.  And I understand that.  But that way it can be

23   fleshed out in-- in very precise detail before we even

24   get into the issue of whether the claims should be

25   expanded under Rule 15.

1           MR. CHANEY:  Understood, Your Honor.

2           JUDGE O'HARA:  Okay.

3           MR. U:  So Your Honor, if I could address

4    those two housekeeping points I was going to note

5    earlier.  First, it is our understanding from plaintiffs

6    that they are not going to be seeking to present

7    proposed class representatives who are Viptera or

8    Duracade growers.  That was the issue the Court

9    addressed on the previous motion to amend by the

10   plaintiffs.  That deadline has clearly come and passed.

11          Second, on Judge O'Hara's point, you're

12   absolutely right.  With respect to Lanham Act issues,

13   for example, we've asked each of the producer plaintiffs

14   during bellwether discovery:  Did you look at this

15   alleged representation?  Did you look at that alleged

16   representation?  So to the extent that the claims are

17   now different, that would potentially impact discovery

18   in a way that would be dealt with on a disputed basis.

19          Third, one last housekeeping point, Your

20   Honor.  We jointly, with the plaintiffs, agreed that we

21   should not have to answer what I believe was the second

22   or third producer amended complaint, because at first in

23   April they were figuring out whether they would put

24   forward a Viptera grower as a class representative.  And

25   now they're thinking about these other amendments.

 1          So the idea, with the Court's permission,

 2   would be that we figure out whether they are or aren't

 3   amending and settle on whatever complaint it is before

 4   we would then file any answer to that revised complaint.

 5          MR. CHANEY:  My understanding, Your Honor,

 6   is he's correct on the Viptera purchaser issue.  And

 7   procedurally on the answer, I don't think we have a

 8   problem.

 9          JUDGE O'HARA:  Okay.  That covers the items

10   about which I was concerned in the status report, so I'm

11   going to turn it back to Judge Lungstrum at this point.

12          JUDGE LUNGSTRUM:  All right.  And we-- we

13   talked about one of the areas that I wanted to weigh in

14   already, and that was the use of the later discovery at

15   trial.  And I note that you simply gave us a heads-up

16   that there may be something to think about later.

17          Your meeting with the special master again

18   I've touched upon, that you're-- you're going to be

19   doing that.

20          I wanted to ask you in connection with

21   Item 5, the motion for partial judgment on the

22   pleadings.  We're also anticipating some other motion

23   practice that has not yet occurred.  My question really

24   is:  Are any of the Grain Standards Act issues likely to

25   arise in any of the other anticipated motion practice?

1    I'm talking about motion to dismiss practice.

2              MR. U:  So, Your Honor, I believe you may be

3    referring to what I'll call the Clayton Clark/Martin

4    Phipps cases.

5              JUDGE LUNGSTRUM:  Correct.

6              MR. U:  That included grain trade defendants

7    along with Syngenta, they are part of this MDL.

8              JUDGE LUNGSTRUM:  Correct.

9              MR. U:  And so we certainly have counsel

10   here for ADM and Cargill and the like, I'll let them

11   speak to that issue.  But I imagine it would come up in

12   the dispositive motions on both sides.

13             MR. URSU:  Thank you.  John Ursu for

14   Cargill.  Absolutely.  And so we have a briefing

15   schedule that's now in front of the Court.  I believe

16   the briefing will be fully submitted by July 15th on

17   that, and it will heavily feature the Grain Standards

18   Act.

19             JUDGE LUNGSTRUM:  All right.

20             MR. CLARK:  Your Honor, if I may.  Clayton

21   Clark.

22             JUDGE LUNGSTRUM:  Do you-- will you give Mr.

23   Clark permission to be heard here, counsel?

24             MR. DOWNING:  Yes, Your Honor.

25             JUDGE LUNGSTRUM:  All right.  Mr. Clark.

1          MR. CLARK:  Approach?

2          JUDGE LUNGSTRUM:  You may.

3          MR. CLARK:  Your Honor, Clayton Clark.  And

4    I'm here both on behalf of the class actions that have

5    been removed and-- and-- to your court, as well as being

6    lead counsel of the consolidated action in the state of

7    Illinois, which is in Marion, Illinois.

8          I-- our concern with regard to the motions

9    that are being briefed right now, where your briefing

10   schedule with regard to this case is about a month ahead

11   of ours with regard to those class actions that involve

12   the ABCD defendants, is that there are a number of those

13   issues that will not be necessarily briefed and that we

14   are not necessarily aligned with leadership on.  Where

15   there is overlap, they will be addressed.

16         But because our brief is going to be roughly

17   a month behind the one that will be heard first here, we

18   would ask for the Court's consideration to either move

19   our dates to a place where we are able to present our

20   responses, and the result from that would be that

21   everyone's allegations and all the facts and legal

22   arguments would be addressed by the Court at one time as

23   opposed to a scenario where a very-- a more narrow set

24   of facts would be addressed and-- but we-- but my

25   clients would be affected by that ruling.

1        JUDGE LUNGSTRUM:  Yeah, I think I understand

2   what you're saying, but-- but let me just see if we can

3   track that.  Are you telling me that in the Illinois

4   cases, your briefing schedule is-- will make those

5   brief-- motions at issue later in time than they would

6   be here; is that correct?

7        MR. CLARK:  That is partially what I'm

8   saying.  I think with regard to Judge Bleyer in

9   Illinois, there is an intent to wait until you rule and

10  defer to the MDL court with regard to be able to review

11  what you've actually decided before that is done.  But

12  what I was bringing up to you was that--

13        JUDGE LUNGSTRUM:  Go ahead.

14        MR. CLARK:  No, I was-- I was talking with

15  regard to the class actions that are now in front of

16  you.  That briefing schedule is the one that is a month

17  later.  And so these cases are in your court, it's just

18  that those very same issues are to be briefed-- their

19  motions to dismiss, our reply, our response, and the

20  reply is roughly a month behind the one that you're

21  hearing right now.

22        JUDGE LUNGSTRUM:  Right.  Well, again, now I

23  am confused.  When you're talking-- when we're talking

24  about the motion that Syngenta is filing, are you

25  talking about the motion that we were just referring to

1    where Syngenta is asking for partial judgment on the

2    pleadings based on the Grain Standards Act?  And that

3    that is pre-- is moving ahead of what the ABCD schedule

4    is?

5              MR. CLARK:  Yes, the--

6              JUDGE LUNGSTRUM:  Okay.  I've got that.  And

7    that's--

8              MR. CLARK:  The motions generally.

9              JUDGE LUNGSTRUM:  Yeah.  That's why I asked

10   the question about whether the Grain Standards Act

11   issues were going to come up in connection-- I assumed

12   they would, but in connection with the ABCD defendants,

13   because I really would like to get both of those motions

14   at issue at the same time as opposed to piecemealing

15   that where there is at least some crossover about the

16   legal theory.

17              Is that the concern that you were wanting to

18   bring to my attention, Mr. Clark?

19              MR. CLARK:  Specifically, Your Honor, yes.

20              JUDGE LUNGSTRUM:  Okay.  Well, that's what

21   I-- that's what I will intend to do then; that is, I

22   will-- in the ordinary course of things, I would have

23   decided Syngenta's motion more promptly than now I will.

24   And I will wait until both of those motions are at issue

25   so that I can evaluate those together, both Syngenta's

1    motion for partial judgment on the pleadings and what I

2    anticipate to be the ABCD defendants' motions to

3    dismiss, so that I'll have all of that in front of me.

4          Now, that does raise the question for lead

5    counsel with regard to responding to the ABCD

6    defendants' motions to dismiss.  I-- understanding the

7    relationship of Cargill and ADM here, who is going to

8    oppose that motion?  Are you delegating that to somebody

9    else or how is that all going to work, Mr. Downing?

10         MR. DOWNING:  Yeah, we-- I've spoken, as a

11   matter of fact, this morning with Mr. Clark about that

12   and we're going to work through that.  We haven't

13   reached any final views on that, but we're working

14   together to address that very issue.

15         JUDGE LUNGSTRUM:  But there will be a-- just

16   to be clear for the record then, there will be a

17   good-faith response to that motion, irrespective of the

18   fact that initially here, and clear to this very day,

19   lead counsel do not believe there is a claim to be made

20   against ABCD?  Nonetheless, carrying out your

21   administrative and managerial functions, you will be

22   sure that the position of those plaintiffs who have been

23   included in the MDL who disagree with you will be heard

24   in connection with that motion; is that right?

25         MR. DOWNING:  We absolutely will, Your

1    Honor.

2           JUDGE LUNGSTRUM:  All right.  So, Mr. Clark,

3    I believe we're on a-- I hope we're on the same

4    wavelength here about what ought to happen.

5           MR. CLARK:  I think so.  And just one

6    additional note to add, is that you did establish

7    separate cause numbers.  I don't know what the effect of

8    that is as it relates to our ability to respond.  We're

9    going to try to work that out regardless and get you an

10   answer that hopefully will work.

11          JUDGE LUNGSTRUM:  Yeah.  The way-- the way

12   the MDL-- the way this MDL process works or-- or the way

13   I'm having it work, at this juncture really in a

14   technical sense for the MDL, it's-- it has to go through

15   lead counsel.  But I recognize clearly that there is a--

16   shall we say a division in thought about how this case

17   ought to be processed among people on the plaintiffs'

18   side who are in this MDL.

19          And however you do it, I want to work it out

20   so that I get a response to the ABCD motions that's

21   filed in the MDL.  And if that's authored by or even

22   attributed to people who are not part of the leadership

23   team, so be it, as long as the leadership team for

24   technical purposes says, yes, we understand this is

25   what's going on.

1           So you will-- at least initially, Mr. Clark,

2   I want you to work through that leadership team so that

3   we're kind of following the procedure.  If at some point

4   you believe that you're not getting the opportunity to

5   defend this motion the way you should, of course you

6   have the right to call that to my attention.  But I-- I

7   have Mr. Downing's solemn word here that he will

8   facilitate that to happen.  And I think that-- I-- I

9   have no reason not to think that's what's going to

10  occur.

11          MR. CLARK:  And-- and they've reached out,

12  we've reached out to one another and we're on the same

13  page as far as attempting at that point.

14          JUDGE LUNGSTRUM:  Great.

15          MR. CLARK:  Thank you.

16          JUDGE LUNGSTRUM:  Okay.  Thank you, Mr.

17  Clark.  And thank you, Mr. Ursu.

18          All right.  That clarified what I wanted to

19  know about that.  At this juncture, I'm not prepared to

20  set some oral argument date on those motions, but I

21  reserve the right to decide I should.  So we'll put that

22  as a bookmark on the-- on that subject as well.

23          All right.  That-- that concludes things

24  from my perspective.  Lead counsel, anything else we

25  ought to talk about here today?

1          MR. DOWNING:  No, Your Honor.

2          JUDGE LUNGSTRUM:  Mr. U?

3          MR. U:  Nothing for Syngenta, Your Honor.

4          JUDGE LUNGSTRUM:  All right.  Well, thank

5  you all for your appearances.  And it's good to see all

6  of you who have joined us here today.  I wish you well

7  with Ms. Riesman, and I wish you well with the

8  litigation.  We are in recess.

9          (11:31 a.m., proceedings recessed).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4        I, Kelli Stewart, a Certified Shorthand Reporter and

5    the regularly appointed, qualified and acting official

6    reporter of the United States District Court for the

7    District of Kansas, do hereby certify that as such

8    official reporter, I was present at and reported in

9    machine shorthand the above and foregoing proceedings.

10       I further certify that the foregoing transcript,

11   consisting of 45 pages, is a full, true, and correct

12   reproduction of my shorthand notes as reflected by this

13   transcript.

14       SIGNED May 31, 2016.

15

16

17

18        /s/ Kelli Stewart_____

19        Kelli Stewart, CSR, RPR, CCR, RMR

20

21

22

23

24

25
```