**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| In re: Syngenta AG MIR 162 Corn | ) | MDL No. 2591 |
| Litigation | ) | |
| | ) | Case No. 2:14-md-2591-JWL-JPO |
| | ) | |
| This Document Relates to: Producer | ) | |
| Plaintiffs' and Non-Producer Plaintiffs' | ) | |
| Master Complaints | ) | |

**PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER NO. 2 AND FOR LEAVE
TO FILE PRODUCER PLAINTIFFS' THIRD AMENDED CLASS ACTION
MASTER COMPLAINT AND NON-PRODUCER PLAINTIFFS'
THIRD AMENDED MASTER COMPLAINT**

Discovery in this multi-forum, coordinated MDL litigation has been document and deposition intensive. Syngenta, ADM, Cargill and the subpoenaed third parties have produced more than 600,000 documents, totaling nearly 2.5 million pages, which does not include the millions of additional pages produced by the Producer and Non-Producer Plaintiffs. Plaintiffs so far have taken more than 80 calendar days of depositions since January 19, 2016.[1] The review and analysis of the voluminous document productions and information learned in the depositions revealed additional, new examples of what Plaintiffs have alleged since the beginning of this litigation: Syngenta took a multitude of intentional steps to misrepresent to its stakeholders and other industry participants the status of its efforts to secure Chinese approval for MIR162 and the importance of China as a key export market, misrepresentations that enhanced Syngenta's sales to U.S. corn farmers.

Pursuant to Federal Rule of Civil Procedure 16, Plaintiffs seek to amend Scheduling Order No. 2's deadline for the filing of amended complaints and further seek leave under Rule

---

[1] Counsel for Plaintiffs additionally have produced approximately 90 Producer and Non-Producer Plaintiffs for depositions during these same months.

15(a)(2) to amend the Producer Plaintiffs' Second Amended Class Action Master Complaint, ECF No. 1377, and the Non-Producer Plaintiffs' Second Amended Master Class Action Complaint, ECF No. 1064, to include these previously unknown and additional instances of advertising and promotion by Syngenta in violation of the Lanham Act. Additionally, Plaintiffs seek leave to include non-substantive changes to update the corporate organization of, service upon and the appearances by each of the Syngenta Defendants and modifications to paragraphs to reflect minor changes to the names of certain Plaintiffs. Non-Producer Plaintiffs only also seek leave to omit the current class action allegations.

As required by Local Rule 15.1, attached as Exhibits 1 and 2 are the proposed Producer Third Amended Complaint and the Non-Producer Third Amended Complaint, which reflect in redline format the changes from the previous Second Amended Complaints.

Under these circumstances, "good cause" exists under Rule 16 to permit extension of the December 15, 2015 amendment deadline in Scheduling Order No. 2, ECF No. 1098. Once that deadline is extended, Rule 15 requires that the Court freely grant leave to amend if justice so requires. Plaintiffs' proposed amended complaints satisfy Rule 15 because: (i) the amendments are not futile, but rather are consistent with allegations previously sustained by the Court in its denial of Syngenta's motion to dismiss; (ii) Plaintiffs have not unduly delayed seeking leave or acted in bad faith; and (iii) Syngenta will not be unduly prejudiced by granting leave because the amended allegations are based upon facts and documents produced in recent months largely by Syngenta and from deposition testimony of Syngenta's witnesses and/or depositions in which Syngenta participated.

Plaintiffs respectfully request leave to file these two amended complaints.

## FACTUAL AND PROCEDURAL BACKGROUND

Since the beginning of this litigation, Plaintiffs have alleged a Lanham Act cause of action based upon Syngenta's misrepresentations "regarding MIR162, the timing of its approval by China, its impact on export markets for U.S. corn, including China, the ability to channel MIR162 away from export markets which have not approved MIR162, and corn prices."  ECF No. 297 (Producer Plaintiffs' Class Action Master Complaint) at 81, ¶ 277; *see also* ECF No. 296 (Non-Producer Plaintiffs' Master Class Action Complaint) at 79, ¶ 264.

On September 11, 2015, the Court granted in part and denied in part Syngenta's motion to dismiss Plaintiffs' Lanham Act claims, holding that Plaintiffs had sufficiently alleged standing under Article III and under the "zone of interest" test established by the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377 (2014), and that Syngenta's false advertising and promotion in violation of the Lanham Act proximately caused Plaintiffs' damages.  ECF No. 1016 (Memorandum and Order) at 75-81.[2]  The Court sustained the viability of claims asserted by Plaintiffs under the "Plant with Confidence Fact Sheet" distributed by Syngenta and letters sent to growers and resellers by Syngenta's Chuck Lee, each of which Plaintiffs contend falsely advertised and promoted Viptera and Duracade in violation of Section 43(a) of the Lanham Act.

On October 21, 2015, the Court entered Scheduling Order No. 2, which required motions to amend to be filed on or before December 15, 2015.  *See* ECF No. 1098 at 8.  Prior to this

---

[2]     Specifically, the Court rejected Syngenta's Article III standing and proximate cause challenges and stated that "Plaintiffs have at least alleged a plausible claim that Syngenta's false and misleading statements caused sales of Viptera and Duracade, which in turn caused contamination.  Accordingly, for the same reasons cited above, *see supra* Part II, including because proximate cause ordinarily presents a question of fact, the Court cannot conclude as a matter of law at this stage that plaintiffs' injuries were not fairly traceable to or proximately caused by Syngenta's conduct that is alleged to violate the Lanham Act."  ECF No. 1016 at 77.

order, on October 5, 2015, Plaintiffs filed the Non-Producer Plaintiffs' Second Amended Master Class Action Complaint.  ECF No. 1064.  On December 15, 2015, Producer Plaintiffs filed a motion for leave to file their Second Amended Producer Complaint, which the Court subsequently granted, ECF No. 1375.  The Producer Plaintiffs' Second Amended Class Action Master Complaint was filed on January 11, 2016.  ECF No. 1377.

As of December 15, 2015, Plaintiffs had yet to take a single deposition of one of Syngenta's witnesses.  Plaintiffs took their first deposition of a Syngenta witness on January 19, 2016.  Since January 19, 2016, Plaintiffs have taken more than 80 calendar days of deposition testimony, with additional depositions continuing nearly every day through the end of July. None of these depositions occurred locally and instead canvassed three foreign sovereignties (Hong Kong, Australia and England) and cities across the United States, including Washington D.C., Chicago and Minneapolis.  Pursuant to the jointly negotiated arrangement with the court reporting service, *see, e.g.,* ECF No. 1454, Plaintiffs do not receive final copies of the deposition transcripts and marked deposition exhibits for 10 business days after the deposition.

Simultaneously with these depositions, Syngenta, subpoenaed third parties, ADM and Cargill have continuously produced documents, productions which again continue through today. To date:

- Syngenta has produced more than 338,000 documents, totaling nearly 1.4 million pages;

- Subpoenaed parties have produced nearly 62,000 documents, totaling nearly 285,000 pages.  Fewer than 16,000 of those documents were produced in 2015, with all other documents produced on or after March 29, 2016; and

- ADM and Cargill, whose documents are being reviewed by MDL leadership counsel, have collectively produced in excess of 203,000 documents, totaling more than 800,000 pages.  Cargill began producing documents on or about February 26, 2016 and ADM began producing documents on or about March 11, 2016.

Again, these productions total more than 600,000 documents, with nearly 2.5 million pages.

The review of this volume of material is not instantaneous.  Document reviewers from coordinated law firms across the country have worked diligently since productions began.  Key documents initially identified by these reviewers were then flagged for secondary review by additional attorneys, who are working with partners at the coordinated law firms to prepare for depositions scattered across the country and the world.

From these documents and the deposition testimony explaining these documents, Plaintiffs learned new facts that further demonstrate that Syngenta intentionally misrepresented the anticipated approval of Viptera by China and support Plaintiffs' false advertising claims for relief asserted under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[3]  These facts include:

---

[3]     Section 43(a) of the Lanham Act provides:

(a)    Civil action
(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
    (A)is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

- Syngenta's misrepresentations to the grain trade and other stakeholders regarding the timing of Chinese approval, knowing that these stakeholders would rely on these misrepresentations to Syngenta's financial gain and disseminate these misrepresentations to others (Ex. 1 at ¶¶ 371-80, 387-99, 401-17);

- Syngenta's misrepresentations to farmers and other stakeholders regarding the importance of China as a key export market for whole corn and DDGS (Ex. 1 at ¶¶ 390, 396-402, 409);

- Syngenta's knowledge of the falsity of its representations regarding its applications for and anticipated timing of Chinese approval and Syngenta's responsibility for the delay in approval (Ex. 1 at ¶¶ 373-80, 388, 390, 393, 403, 407-16);

- Syngenta's knowledge of the falsity of its representations that China is not a key export market and that it had secured all key export market approvals prior to commercialization (Ex. 1 at ¶¶ 398, 400-02, 409);

- Syngenta's misrepresentations in the wake of Chinese rejection of corn exports from the United States (Ex. 1 at ¶ 411);

- Syngenta's misrepresentations regarding its efforts to seek not only import approval but also cultivation approval in China for Viptera (Ex. 1 at ¶¶ 411-16); and

---

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

- Syngenta's intent to increase Viptera sales by making all of these misrepresentations (Ex. 1 at ¶¶ 375, 377, 380-81, 386-87, 389, 416-17).

The remaining changes Plaintiffs seek to make to the complaints are ministerial in nature or, in the case of the Non-Producers, deletions of the class claims.[4]  Prior to filing this Motion, Plaintiffs met and conferred with Defendants.  Plaintiffs understand that Defendants do not oppose these ministerial changes, but do oppose leave to substantively amend the complaints.

Plaintiffs respectfully request leave not to add new causes of action, but merely to incorporate these newly-learned facts into their existing causes of action.

## ARGUMENT AND AUTHORITIES

Since Plaintiffs seek to amend their complaints after the scheduling order deadline, Courts in this District analyze this request in a "two-step" approach.  *Stottlemyre v. Sunflower Elec. Power Corp.*, No. 12-2443-CM-JPO, 2014 WL 7272524, at *2 (D. Kan. Dec. 18, 2014).  First, Plaintiffs must satisfy the standard for amending the scheduling order under Rule 16(b)(4), which requires a showing of "good cause."  *See id.*  Second, the Court will "determine if the more liberal Rule 15(a) standard has been satisfied."  *See id.*

Here, by seeking only to include facts learned in discovery after the previous scheduling order deadline, Plaintiffs satisfy both standards.

---

[4]  Plaintiffs made ministerial amendments to reflect some changes to Defendants' corporate organizations, which recently changed, to reflect service of process on all Defendants, and to reflect changes to the names of certain Plaintiffs.  Ex. 1 at ¶¶ 34-35 and 73-78.  The amendment also reflects changes to Paragraphs 36 and 51 to correspond with the Court's March 18, 2016 Stipulation and Order Amending Producer Plaintiffs' Second Amended Complaint by Interlineation, ECF No. 1728.  Paragraph 11 is also changed to reflect the interlineation and additional changes to the names of certain Plaintiffs.  Non-Producer Plaintiffs additionally eliminated their class claims.  *See* edits to Ex. 2 following ¶ 403.  Non-Producer Plaintiffs also deleted all other references to the class claims or proposed classes for uniformity in the proposed amended complaint.  Finally, Plaintiffs deleted all references to Express Grain Terminal, LLC, which filed a stipulation of dismissal after the Non-Producer Plaintiffs' Second Amended Complaint was filed.  ECF No. 1596.

**I.      Good cause exists to permit extension of the amendment deadline.**

To establish good cause under Rule 16(b)(4), Plaintiffs "must show that they could not have met the [December 15, 2015] scheduling order deadline for amending their [pleadings] even if they had acted with due diligence." *Stottlemyre*, 2014 WL 7272524, at *3. Plaintiffs meet that standard here.

From the beginning of the litigation, Plaintiffs' complaints have consistently alleged that Syngenta misrepresented the timing of Viptera and Duracade approval from China and the importance of China as a key export market for U.S. corn farmers. During discovery in this litigation, Plaintiffs learned additional ways Syngenta made these misrepresentations from Syngenta's own documents, as well as testimony of its employees and other stakeholders. These central allegations of misconduct have been the subject of voluminous discovery from the beginning of the lawsuit.

Deposition and written discovery was largely stayed in this litigation throughout 2015. ECF No. 123 at 7 (staying deposition discovery and allowing only "basic document production, initial disclosures under Fed. R. Civ. P. 26(a)(1), and some other highly targeted discovery"). The discovery stay was not lifted until October 21, 2015, less than two months before the December 15, 2015 amendment deadline. ECF No. 1098 (Scheduling Order No. 2) at 2.

After the stay was lifted, Plaintiffs served their: Second Requests for Production on November 19, 2015; Third Requests for Production on November 24, 2015; Fourth Requests for Production on December 4, 2015; and Fifth Requests for Production on March 15, 2016. Syngenta continues today to produce documents responsive to these requests on a rolling basis.

Plaintiffs worked cooperatively with Syngenta to schedule depositions of Syngenta's witnesses on mutually-agreeable dates and after Syngenta had started their rolling production of

custodial documents for these witnesses. Plaintiffs took their first deposition on January 19, 2016, a 30(b)(6) deposition, and depositions of Syngenta's employees continue through today.

What makes this litigation unusual, however, is that MDL Plaintiffs are not only deposing Syngenta's current and former employees, but questioning witnesses from coordinated actions as well. Co-Lead and Executive Committee firms have actively participated in depositions of ADM and Cargill's witnesses, which just began on May 16, 2016. In addition, Co-Lead and Executive Committee firms have attended depositions of and questioned witnesses from the subpoenaed third parties.

The new facts Plaintiffs seek to include in their Third Amended Complaints all come from discovery taken after Scheduling Order No. 2's December 15, 2015 deadline. Some of the facts Plaintiffs seek to add originate from a deposition taken just five days ago – the June 10, 2016 deposition of Randy Giroux, one of Cargill's 30(b)(6) representatives. Additional new evidence comes from the depositions of: Chuck Lee, who was deposed on March 8-10, 2016; Yongsheng Zhang, who was deposed on March 21-23, 2016; and Paul Minehart, who was deposed on April 18-19, 2016.

As for the documents cited for the first time in the proposed amendments, all of these documents were marked as deposition exhibits since January 28, 2016, with the majority marked as deposition exhibits since April 18, 2016:

| Documents supporting new paragraphs in Exhibit 1 | Citations to new paragraphs in Exhibit 1[5] | Bates number of the supporting document | Date document was first produced | Date marked as deposition exhibit |
|---|---|---|---|---|
| DEPEX_69 | 393 | SYNG_00354250 | 9/30/2015 | 1/28/16 |
| DEPEX_74 | 393 | SYNG_00355839 | 9/30/2015 | 1/28/16 |
| DEPEX_75 | 393 | SYT00145021 | 3/27/2015 | 1/28/16 |
| DEPEX_78 | 393 | SYT00154444 | 3/27/2015 | 1/28/16 |
| DEPEX_85 | 409 | SYNG_00369418 | 9/30/2015 | 1/28/16 |
| DEPEX_86 | 414 | SYNG_00277742 | 9/30/2015 | 1/28/16 |
| DEPEX_88 | 409 | SYNG_00352232 | 9/30/2015 | 1/28/16 |
| DEPEX_114 | 414 | SYNG_00587543 | 10/23/2015 | 1/28/16 |
| DEPEX_735 | 403 | SYNG_00455961 | 10/16/2015 | 3/22/16 |
| DEPEX_740 | 407 | SYNG_00457006 | 10/16/2015 | 3/23/16 |
| DEPEX_752 | 393 | SYNG_00448993 | 10/16/2015 | 3/24/16 |
| DEPEX_931 | 377 | SYNG_00273594 | 9/30/2015 | 3/23/16 |
| DEPEX_958 | 374, 386 | SYNG_00352203 | 9/30/2015 | 3/23/16 |
| DEPEX_1080 | 387 | CARGILL000012154 | 2/26/2016 | 4/5/16 |
| DEPEX_1224 | 379, 388 | SYNG_00378573 | 9/30/2015 | 4/13/16 |
| DEPEX_1453 | 390 | SYNG_00842579 | 3/12/2016 | 4/18/16 |
| DEPEX_1454 | 395 | SYNG_00842687 | 3/12/2016 | 4/18/16 |
| DEPEX_1455 | 395 | SYNG_00400370 | 10/16/2015 | 4/18/16 |
| DEPEX_1457 | 394 | SYNG_00697435 | 2/5/2016 | 4/18/16 |
| DEPEX_1458 | 397 | SYNG_00697515 | 2/5/2016 | 4/18/16 |
| DEPEX_1460 | 392 | SYNG_00690837 | 2/5/2016 | 4/18/16 |
| DEPEX_1461 | 396 | SYNG_00842713 | 3/12/2016 | 4/18/16 |
| DEPEX_1463 | 398 | SYNG_00697565 | 2/5/2016 | 4/18/16 |
| DEPEX_1462 | 398 | SYNG_00697549 | 2/5/2016 | 4/18/16 |
| DEPEX_1464 | 400 | SYNG_00842829 | 3/12/2016 | 4/18/16 |
| DEPEX_1470 | 401 | SYNG_00842945 | 3/12/2016 | 4/18/16 |
| DEPEX_1475 | 402 | SYNG_00675491 | 2/5/2016 | 4/18/16 |
| DEPEX_1476 | 404 | SYT00159667 | 3/27/2015 | 4/18/16 |
| DEPEX_1477 | 405 | SYT00161484 | 3/27/2015 | 4/18/16 |
| DEPEX_1478 | 406 | SYNG_00843044 | 3/12/2016 | 4/18/16 |
| DEPEX_1515 | 412 | SYNG_00704861 | 2/5/2016 | 4/19/16 |
| DEPEX_1530 | 391 | SYNG_00724766 | 2/12/2016 | 4/20/16 |
| DEPEX_1531 | 391 | SYNG_00707274 | 2/5/2016 | 4/20/16 |
| DEPEX_1557 | 411 | SYNG_00393717 | 10/16/2015 | 4/21/16 |
| DEPEX_1582 | 376 | SYNG_00273579 | 9/30/2015 | 4/26/16 |
| DEPEX_1776 | 409 | SYNG_00984851 | 4/23/2016 | 4/27/16 |
| DEPEX_79_Giroux (based on rough transcript) | 371 | CARGILL000003042 | 2/26/2016 | 6/9/16 |

---

[5]     Corresponding paragraphs were added to Exhibit 2 as well.

| Documents supporting new paragraphs in Exhibit 1 | Citations to new paragraphs in Exhibit 1 | Bates number of the supporting document | Date document was first produced | Date marked as deposition exhibit |
|---|---|---|---|---|
| DEPEX_106_Giroux | 372, 382 | CARGILL000004903 | 2/26/2016 | 5/16/16 |
| DEPEX_129_Giroux | 375 | CARGILL000068797 | 3/7/2016 | 5/17/16 |
| DEPEX_131_Giroux | 382 | CARGILL000072428 | 3/14/2016 | 5/17/16 |

Once these produced documents were reviewed and Plaintiffs received and had the opportunity to analyze the deposition transcripts, Plaintiffs began to evaluate whether, out of an abundance of caution, the complaints needed to be amended to include these newly-discovered and additional examples of Syngenta's misconduct.  There was no undue delay on Plaintiffs' part in filing this motion seeking leave to amend the scheduling order.  Plaintiffs' conduct is consistent with and satisfies Rule 16(b)(4)'s good cause standard.  *See Stottlemyre*, 2014 WL 7272524, at *3 (finding Rule 16(b)(4) satisfied when a party could not have met the scheduling-order deadline had they acted with due diligence, noting that the non-movant had already defended against the proposed amendment from the "get-go" of the litigation).

Plaintiffs have shown good cause for this requested amendment to the pleading amendment deadline in Scheduling Order No. 2, which satisfies Rule 16(b)(4).  *See Boone v. TFI Family Servs., Inc.*, No. 2:14-cv-02548-JTM, ECF No. 256, at 6 (D. Kan. June 9, 2016) (reversing the Report and Recommendation to deny a motion to amend a complaint after the scheduling order deadline because "the record indicates that the extensive and complex nature of discovery contributed to plaintiff's delay in seeking to amend").  Plaintiffs respectfully request that the Court grant this motion to amend Scheduling Order No. 2 to allow for the filing of these amended complaints.

**II.      Justice requires freely granting Plaintiffs' motion for leave to amend.**

Rule 15(a)(2) expressly directs the Court to "freely give leave [to amend] when justice so requires."  "The intent of Rule 15 is to allow parties the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Kendall State Bank v. Archway Ins. Servs., LLC*, No. 10-CV-2617-KHV-DJW, 2012 WL 5907388, at *2 (D. Kan. Nov. 26, 2012) (internal quotation marks omitted).  "Although the granting of a motion to amend is within the court's discretion, the United States Supreme Court has indicated that Rule 15's directive to freely give leave is a 'mandate ... to be heeded.'  A district court should refuse leave to amend only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Walker v. Axalta Coating Sys., LLC*, No. 14-2105-JAR-JPO, 2015 WL 685834, at *1 (D. Kan. Feb. 18, 2015) (internal footnotes and some quotation marks omitted).  In this instance, all of these factors weigh in favor of granting Plaintiffs the requested leave to amend.

**A.      Plaintiffs' Third Amended Complaints state valid Lanham Act claims.**

Syngenta bears the burden of establishing that Plaintiffs' amendments are futile, meaning that they would not withstand a motion to dismiss.  *Walker*, 2015 WL 685834, at *2.  This Court already denied in part Syngenta's motion to dismiss Plaintiffs' Lanham Act claims.  Plaintiffs' new factual allegations are consistent with the guidance provided in the Court's motion to dismiss order and are merely additional examples of the conduct previously alleged with regard to the Lanham Act claim.

The new allegations qualify as commercial advertising or promotion because they were made by Syngenta "for the purpose of influencing customers to buy defendant's good or services[]" and were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  ECF No. 1016 at 82.

While the Court's motion to dismiss order only considered five specific statements as bases for Plaintiffs' Lanham Act claims, *id.* at 81, the previously-filed Complaints alleged that Syngenta misled its stakeholders, including grain handlers and farmers, into believing Syngenta would have import approval from China by the time of harvest in 2011 and then by first quarter 2012.[6]  Plaintiffs alleged that Syngenta further misled farmers regarding the importance of China as a key export market for their corn and DDGS.  Syngenta, in its November 5, 2015 Answer to the then-existing Producer Complaint, denied these allegations.[7]

Discovery has contradicted these denials to fully reveal Syngenta's actions to protect Viptera sales by deliberately misleading its stakeholders.  In the lead up to the 2011 planting season, Syngenta told growers and the grain trade that it expected China to approve Viptera for import by the 2011 fall harvest.  *See* Ex. 1 at ¶¶ 371-72 ("Syngenta's initial fall 2011 and, later, Q1 2012, expected approval dates were 'shared across the membership by NAEGA several times.'").  Yet Syngenta knew at the time that it could not expect approval by "harvest 2011." *Id.* at ¶ 373.  Syngenta had not even started two in-country tests required for Chinese approval and did not intend to submit its full application until November 1, 2011, well after the harvest date for most U.S. corn farmers.  *Id.*  The goal of this deception was to stop the grain trade from warning growers that planting Viptera before Chinese approval could cause a trade disruption. *Id.* at ¶¶ 374-79.  Syngenta knew that such warnings would have a devastating effect on Viptera sales and Syngenta's profits.  *Id.* at ¶ 375.  The deception worked: based on Syngenta's false and public representations, the grain trade did not warn growers against planting Viptera, and growers planted Viptera on over 1.8 million acres of farm land throughout the United States in 2011.  *Id.* at ¶ 380.

---

[6]     *See, e.g.*, ECF No. 427, Ex. A at ¶ 240, and ECF No. 1377, at ¶ 249.
[7]     *See, e.g.,* ECF No. 1203, at ¶ 240.

Syngenta also told the grain trade that Viptera would be planted on a maximum of only 50,000 acres in 2011.  *Id.* at ¶¶ 381-82.  This was important to the grain trade because a 50,000-acre planting would have been small enough for Syngenta to "channel" Viptera corn away from key export markets so as to avoid contaminating the entire U.S. corn crop with the unapproved MIR162 trait.  *Id.* at ¶ 383.  Syngenta knew that this representation was false—again, Viptera was planted on 1.8 million acres of land in 2011, and it takes nearly two years of planning to produce enough seed for planting on almost two million acres.  *Id.* at ¶¶ 384-85.  Had the grain trade known the true scope of planting when Syngenta launched sales of Viptera, it could have warned growers against purchasing and planting Viptera.  *Id.* at ¶ 386.

In the summer of 2011, long past when the grain trade could have warned growers not to plant Viptera in 2011, Syngenta began to move the goalposts on its expected approval date, again in an effort to protect Viptera sales.  *Id.* at ¶ 387.  Specifically, Syngenta started to claim that it expected China to approve Viptera by the end of the first quarter of 2012.  *Id.*  Syngenta repeated this approval date in frequent public communications throughout the summer, fall, and winter of 2011.  *Id.* at ¶¶ 387, 390-99, 401-05 (deliberate misrepresentations in Q&As, news articles, letters to growers and the grain trade, and press releases).  Yet Syngenta had no reasonable basis to expect approval by the end of the first quarter of 2012.  *Id.* at ¶ 388.  Unknown to the public, Syngenta did not even intend to submit its full approval application until November 1, 2011.  *Id.*  Even if it succeeded in submitting its application on time, Chinese regulations allow the Ministry of Agriculture ("MOA") up to nine months to respond to a submission, and Syngenta knew that the MOA routinely asked post-submission follow-up questions, which would cause further delays.  *Id.*  Moreover, due to internal delays in completing the two required in-country studies on time, Syngenta did not submit its full application until November 10, 2011.  *Id.* at ¶ 403.  The

reason for this deception was simple: to convince the grain trade not to warn growers against planting Viptera, something which Syngenta estimated could cost it up to $810 million in damages. *Id.* at ¶ 389.

When March 2012 came and went without approval, Syngenta began to claim that approval was imminent and that Syngenta was simply waiting on an "administrative signature" from the MOA. *Id.* at ¶ 408. In truth, the MOA rejected Syngenta's initial submission, raising two "technical" questions related to the safety of Viptera. *Id.* at ¶ 409. Syngenta understood that because of these technical concerns, it had to resubmit its application for Viptera, which gave the MOA another 270 days to respond to the submission and possibly pose additional questions that could further delay approval. *Id.* Yet Syngenta did not publicly disclose this rejection, or two subsequent rejections, until December 2013. *Id.* at ¶¶ 410-11.

Syngenta also made frequent and public misrepresentations that China was not a major export market for U.S. corn and that Syngenta had secured all key import market approvals before commercializing Viptera. *Id.* at ¶¶ 390, 396-402, 409 (deliberate misrepresentations in Q&As, news articles, letters to growers and the grain trade, and press releases). But internally, Syngenta considered China to be a major import market long before 2011, *id.* at ¶¶ 152-54, and understood that Chinese demand for U.S. corn would only continue to accelerate. *Id.* at ¶¶ 162, 164-74. Thus, Syngenta's claims that China was not a major import market and that it had received approvals from all key markets before commercializing Viptera were false.

Finally, Syngenta repeatedly and falsely claimed that it had not sought cultivation approval for Viptera in China. *Id.* at ¶ 412, 416 (deliberate misrepresentations to the grain trade). In fact, Syngenta first applied for cultivation approval in July 2010, yet it publicly maintained until 2014 that it had not done so. *Id.* at ¶¶ 412, 414-15. Syngenta hid this fact because it knew

that cultivation approval would delay import approval and that the grain trade would have responded to this news by warning growers against purchasing and growing Viptera. *Id.* at ¶ 416. Again, Syngenta's overriding goal and purpose in making all of its misrepresentations—including about cultivation—was to facilitate the sale of Viptera seed and to ensure that seed which was ordered was in fact planted and could not be returned by growers. *Id.* at ¶ 417. If the grain trade and the growers who purchased Viptera had been told the truth by Syngenta or if Syngenta had not engaged in its campaign of confusion, the trade disruption could have been avoided. *Id.*

> **B.** **Plaintiffs have pursued their claims expeditiously—without undue delay and in good faith.**

The standard for "good cause" under Rule 16(b) and the Tenth Circuit's "undue delay" analysis under Rule 15 are similar. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196 n.4 (10th Cir. 2006). "Lateness does not of itself justify the denial of an amendment. Rather, the Tenth Circuit has directed that the court's focus should be on 'the reasons for the delay.' The court may refuse leave to amend 'when the party filing the motion has no adequate explanation for the delay.'" *Stottlemyre*, 2014 WL 7272524, at *4 (quoting *Minter*, 451 F.3d at 1205, 1206). "There is no undue delay in seeking leave to amend if plaintiffs acquire knowledge of the facts behind the new claim only through recent discovery and after conducting a reasonable investigation of that information." *Koch v. Koch Indus.,* 127 F.R.D. 206, 211 (D. Kan. 1989) (citing *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir. 1987)).

As discussed above, Plaintiffs diligently pursued their claims throughout a compressed discovery timeframe to uncover additional evidence supporting the causes of action already alleged. The depositions of Syngenta's representatives, and more recently of industry stakeholders including Cargill and the trade groups, provided the appropriate context to

understand the voluminous documentary evidence produced by the parties in this MDL litigation and to understand the full scope of Syngenta's intentional efforts to mislead consumers into purchasing Viptera.  Plaintiffs now seek leave to amend to include these additional factual allegations uncovered through discovery.

There is no credible claim that Plaintiffs acted in bad faith in seeking these amendments. *See, e.g., Minter*, 451 F.3d at 1206 (discussing the rare instances in which an amendment is denied on the basis of bad faith, including intentional delays until the eve of trial).  Instead, the record shows diligent efforts by Plaintiffs to review millions of pages of documents, to depose scores of witnesses across the globe and to incorporate these newly-learned facts into their complaints so that this litigation can be fairly decided on its merits.

### C.        Syngenta is not prejudiced by these amendments.

Syngenta bears the burden of showing "some specific way in which it will be prejudiced" by these amendments.  *Stottlemyre*, 2014 WL 7272524, at *4.  "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.  This most often occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.* (internal footnotes and quotation marks omitted); *see also Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (describing prejudice under Rule 15 as "undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the other party").

Syngenta cannot meet this standard on the basis of these narrow factual amendments. Syngenta has defended against a Lanham Act claim since the beginning of this litigation and vigorously defended their representations regarding Chinese approval and the importance of China as a key export market for U.S. corn and DDGS.  The requested amendments are

consistent with Plaintiffs' allegations, which Syngenta expressly denied, and are based on communications that Syngenta itself made as revealed in its own documents and the deposition testimony of its witnesses.   Courts in this District have repeatedly found that these types of amendments do not create prejudice that overcomes Rule 15's requirement that leave be freely granted.   *See Boone v. TFI Family Servs., Inc.*, No. 2:14-cv-02548-JTM, ECF No. 256, at 6 (D. Kan. June 9, 2016) ("The fact that defendants will have to respond to the allegations of the amended complaint is not the sort of prejudice that would warrant a denial under such circumstances.   Plaintiff credibly contends that the allegations have been known to TFI all along - an assertion which TFI does not deny - and that the amendment will have little or no impact on discovery."); *Stottlemyre*, 2014 WL 7272524, at *4 (finding a lack of prejudice when "plaintiff admits that discovery has already been taken on this issue and the parties have defended the lawsuit on this basis from the beginning" and that the amendment "simply clarif[ied] an affirmative defense already asserted in the original answers"); *Kendall State Bank*, 2012 WL 5907388, at *3 (holding that bank's claim of surprise regarding the proposed amended allegations was fatally undermined by the fact that the communications were all communications from the bank itself).   Here, like the bank's unsuccessful claim of prejudice in *Kendall State Bank*, Syngenta cannot be surprised by these amendments because they are Syngenta's own communications.

Additionally, Syngenta cannot be prejudiced by the addition of factual allegations that merely support an existing claim and existing allegations.   Plaintiffs' Lanham Act claim has been part of this suit since its inception.   While counsel for Syngenta reflexively indicated at the May 25, 2016 status conference that any amendment to the Lanham Act claims would necessarily create a need for additional discovery, it is hard to see how since these new allegations are

consistent with allegations already contained in the Complaint and upon which all parties have taken discovery.

Finally, this case is a year from its first bellwether trial setting.  The requested amendments would not delay the final disposition of the action in any way.  The lack of any delay of the final disposition of the case again weighs heavily in favor of granting leave to amend.

## CONCLUSION

Plaintiffs have satisfied both Rule 15 and Rule 16 and respectfully request that the Court grant them leave to file clean versions of the amended complaints, attached in redline form as Exhibits 1 and 2.

Date: June 15, 2016

Respectfully submitted,

/s/ Patrick J. Stueve

**STUEVE SIEGEL HANSON LLP**
Patrick J. Stueve KS Bar #13847
460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816-714-7100
Facsimile:  816-714-7101
stueve@stuevesiegel.com

**GRAY, RITTER & GRAHAM, P.C.**
Don M. Downing #30405 MO
701 Market Street, Suite 800
St. Louis, MO  63101
Telephone:  816-714-7101
ddowning@grgpc.com
ggarrison@grgpc.com
jsapp@grgpc.com

**GRAY REED & MCGRAW, P.C.**
William B. Chaney #04108500 TX
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  214-954-4135
Facsimile:  214-953-1332
wchaney@grayreed.com

**HARE WYNN NEWELL & NEWTON, LLP**
Scott A. Powell #ASB-7523-L60S
2025 3rd Ave. North, Suite 800
Birmingham, AL  35203
Telephone:  205- 328-5330
Facsimile:  205-324-2165
scott@hwnn.com

***Plaintiffs' Co-Lead Counsel***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Patrick J. Stueve
Co-Lead Counsel for Plaintiffs