# EXHIBIT "7"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: Syngenta AG MIR162<br>Corn Litigation<br><br>This Document Relates to:<br>  Producer Plaintiffs' Second<br>  Amended Class Action Master Complaint<br>  (ECF NO. 1377) | )<br>) MDL No: 2591<br>)<br>) Case No. 14-md-2591-JWL-JPO<br>)<br>)<br>)<br>) |

**<u>DECLARATION OF DR. COLIN A. CARTER IN SUPPORT OF PLAINTIFFS'<br>MOTION FOR CLASS CERTIFICATION</u>**

I, Dr. Colin A. Carter, under penalty of perjury, hereby declare:

1. I have personal knowledge of the facts set forth below, and, if called upon as a witness, I could and would testify competently to them.

2. I respectfully submit this Declaration in support of Producer Plaintiffs' Reply in support of their Motion for Class Certification. This Declaration specifically addresses the Joint Expert Report submitted by the Phipps/Clark Plaintiffs as part of their Opposition to Plaintiffs' Motion for Class Certification.

3. I am an agricultural economist and a Distinguished Professor of Agricultural and Resource Economics at the University of California, Davis. I have been retained by Plaintiffs to determine if, among other things, there exists an appropriate method to determine common, class-wide damages to corn growers in the above-captioned litigation.

4. I previously provided an export report in this matter, including my CV, a list of materials relied upon, a list of prior publications, and a list of prior expert matters in which I have testified. Those materials remain current. I am not changing any of my

1

opinions, nor am I adding any additional opinions. In this declaration I am solely responding to criticisms levied against my expert report by the Phipps/Clark Plaintiffs.

5. In this rebuttal, I respond to criticisms made by James Richardson, Stephen Ford, Alan Ker, Jeffrey Dorfman, and Scott Shonkwiler (hereinafter referred to collectively as "RFKDS") in the joint report prepared on behalf of the Phipps/Clark Plaintiffs and dated July 25, 2016. Interestingly, RFKDS agree with much of my report. We are in agreement that the disruption of Chinese imports due to MIR 162 was very costly to U.S. corn farmers.

6. However, two views expressed by RFKDS are in stark contradiction with my report. They claim that I grossly understate damages (by 75%), and they disagree that the damages had a common impact. In order to criticize my report, RFKDS manipulate the methods and data in a way that deviates substantially from standard economic approaches in order to reach their two key conclusions.

7. In (¶14), RFKDS claim that the Babcock and Carter reports grossly understate actual damages sustained by the U.S. farmer. Indeed, RFKDS suggest the damages exceed 42¢ per bushel with no decline over time. The 42¢ per bushel is simply not credible given what is known about the corn market supply and demand elasticities (in the literature), production, supply and trade volumes. Their additional argument that damages would not decline over time is not credible either.

8. If we assume for the moment that the U.S. corn acreage supply elasticity is approximately 0.3 and the demand elasticity is equal to -0.3, then using standard economic theory I conclude that U.S. farmers would have to lose 33% of their corn exports in order to suffer damages of approximately 42¢ per bushel.

2

9. In (¶21), RFKDS report results (Table 2, p.12) of a GARCH model event study they conducted, covering 6 different daily events they claim measure the damages to U.S. corn farmers. A fundamental principal of an event study is that the author(s) must control for the expected change in the price in the absence of the event. RFKDS have failed to do this. As shown in the table below, wheat prices (a feeding substitute) also changed on the 6 days identified by RFKDS. If the corn price changes were adjusted to account for the wheat price changes, most of the RFKDS purported damages would disappear. I conclude that this so-called event study is invalid for a number of reasons. These include:

- Their model purports to measure the effects on regional cash price of 6 different daily events related to China's rejection of U.S. corn between November 18, 2013 and March 17, 2015. Events are double counted and are poorly matched against significant MIR 162 developments in the China import market.
- Their GARCH model does not control for the movement of the overall grain market on the 6 days chosen for the study, and therefore it is not really an event study.
- Using regional cash prices to measure the price impact of these multiple events confounds local basis changes with centralized futures price changes. In other words, their model fails to distinguish between localized changes in the basis and centralized futures price changes, which are independent.
- Events 1 (November 18, 2013: Rejection Announcement) and 2 (December 13, 2013: Increased scrutiny) are duplicative. RFKDS are attempting to measure the same event, the original rejection.
- Events 3 (December 26, 2013: Rejection of DDGS) and 4 (June 9, 2014) are duplicative. They are attempting to measure the same event, the rejection of DDGS, which did not happen until late summer of 2014.
- Event 5 (December 17, 2014: China approves MIR 162) did not lead to new import purchases from the U.S. and a *Wall Street Journal* article that was published that day indicated the approval was unlikely to spark new deals for U.S. corn.
- Event 6 (March 17, 2015: Announcement that China is buying Ukraine corn) was old news by that date. Ukraine corn was unloaded in China in 2013.
- Although inadequately described in the RFKDS report, their GARCH model implicitly assumes day-to-day regional cash price changes average zero. As the

3

experts point out, their price series are non-stationary, which means the best prediction for the current price is yesterday's price. In other words, the best forecast of a price change is zero.

- RFKDS then identify 6 questionable dates when MIR 162 was mentioned in the newspaper and they essentially attribute the entire cash price change that day to the rejection, because they assume the price change would have been zero in the "but for" world. This is an extremely naïve and misleading approach.

- I have chosen Indiana, one of the local cash price locations reported in Table 2 of RFKDS. Using the RFKDS data for Indiana, the figure below plots the daily corn price changes for this location. On average, the price change is zero, as we would expect. This is shown by the solid horizontal line in the Figure below. We see from the Figure that there are many days when the local price change is not zero, illustrated by each of the gray dots. The RFKDS GARCH model then essentially takes 6 days when MIR 162 was mentioned in the newspaper for that day they treat the daily local price change as damages. The RFKDS 6 "events" are show by the red dots in the Figure below.



Difference in Evansville Daily Prices

4

| RFKDS Event No. | Event Date | Description | Price Change Corn Futures ($/bu) | Price Change Wheat Futures ($/bu) |
|---|---|---|---|---|
| 1 | Nov 18 2013 | MIR 162 announcement | -$0.1000 | -$0.0225 |
| 2 | Dec 13 2013 | Increased scrutiny | -$0.0875 | -$0.0500 |
| 3 | Dec 26 2013 | DDGS | -$0.0825 | -$0.0025 |
| 4 | June 9 2014 | DDGS | -$0.0800 | -$0.0575 |
| 5 | Dec 17 2014 | MIR 162 approval | $0.0250 | $0.2525 |
| 6 | March 17 2015 | Ukraine announcement | -$0.0800 | -$0.1050 |

- Their GARCH model runs the following regression:

$$dp_t = \alpha + \sum_{1}^{6} \beta_i e_i + \mu_t$$

where the dependent variable is the change in the local cash price and the 6 dummy variables are on the right hand side. This model accounts for a single-lag structure and time-dependence in the error, $\mu_t$.

- The coefficients on the experts' "events" are simply a measure of the contemporaneous price difference, as shown in the table below for one of their price series from Indiana.

**RFKDS Indiana GARCH Results**

| RFKDS Event | Actual Price change | RFKDS Estimated Damage coefficient | RFKDS Estimated Damage (Table 2 in RFKDS) |
|---|---|---|---|
| e1 | -0.055 | -0.057 | -0.06 |
| e2 | -0.080 | -0.082 | -0.08 |
| e3 | -0.060 | -0.062 | -0.06 |
| e4 | -0.055 | -0.057 | -0.06 |
| e5 | 0.020 | 0.020 | 0.02 |
| e6 | -0.075 | -0.077 | -0.08 |

10. The points made by RKFDS in (¶22-25) are summarized by them in (¶26-29) where they argue "it is almost certain that there are differences in market shock impacts across locations." RKFDS incorrectly base this argument on their finding that

5

cash prices vary across regions. The bottom line with the discussion in (¶22-29) is that RFKDS show only that the basis varies from region to region. Dr. Babcock and I both explained this very point in our respective reports, and it is a fundamental component of how the corn market works. Namely, the basis varies from location to location based on localized factors. As Professor Thomas Hieronymus explained in his famous textbook,[1] the price of corn "should be thought of as one price; the parts of which vary only with time and place of delivery. The system of price differences is intricate but simple in concept. There is one central price of corn; the multitudinous individual prices over time, space, quality, and state of processing fall into place about the central price. The principle of one price within one market, is which the market is construed as the area of economic intercourse, applies to commodities traded in futures markets more than in any other area of the economic system." p. 152.

11.   RFKDS fail to appreciate the fundamental point that the impact of the MIR 162 market shock was first reflected in the Chicago futures price and then it is immediately transmitted to local cash prices. The price impact of the shock cannot be measured using local cash prices unless any change in the basis is first netted out. Once an adjustment is made for any change in basis, then the market shock is evident in the local cash price and it equals the change in the futures price.

12.   In (¶47) RFKDS agree with my report that in September 2013 there was a structural break in the long-term relationship between corn and sorghum prices. But they go on to argue that "the only possible reason that damages would begin in September would be if U.S. traders knew that corn was likely to be rejected and they began lining up

---

[1] Hieronymus, Thomas A. "Economics of futures trading for commercial and personal profit." 2nd Ed. (1977). Commodity Research Bureau, Inc.

6

sorghum supplies to replace corn." Here they misreport what I wrote. In my report (¶72 of Carter report) I explained that Chinese traders likely knew in advance. RFKDS changed "Chinese traders" to "U.S. traders". Syngenta's expert Fischel relied on a December 17, 2014 Reuters report which indicated the China's grain purchasers, including COFCO, are sometimes tipped off regarding trade on information relating to GMO approvals before there is any public announcement. In (¶47) RFKDS ignore the evidence in the StarLink case and they ignore the fact that a fundamental aspect of informationally efficient markets is that these markets anticipate forthcoming events. The corn futures market is inarguably informationally efficient. In my report, I demonstrated that corn prices approximately follow a random walk, consistent with informational efficiency. Finally, although RFKDS agree there was a structural break in the long-term relationship between corn and sorghum in September 2013, they fail to offer any competing plausible explanation as to why China would suddenly shift from corn to sorghum imports and pay a price premium for sorghum, an inferior feed product.

13. In (¶55) RFKDS make a very weak attempt to explain the structural break when they write "One possible reason that Dr. Carter determined there was a structural break in September is that the August 12, 2013 World Agricultural Supply and Demand Estimates Report ("WASDE) included a significant yield reduction for sorghum that resulted in sorghum prices increasing faster than corn. This was reversed in the subsequent WASDE report of September" What they fail to disclose is the footnote on page 13 of the August 12, 2013 WASDE indicating that the July yield projection was based on the 1990-2012 yield and the August projected yield was not based on the historical average. In other words the "August yield reduction" that RFKDS identify was

7

not a reduction from a previous survey. The methodologies for projecting sorghum yield in the August versus July WASDE's were dramatically different, so RFKDS are comparing apples with oranges when they indicate there was a yield reduction. In any case, even if there was a yield reduction this does not begin to explain why sorghum prices went from a discount to a premium over corn, upsetting a long historical price relationship. Furthermore the WASDE projected sorghum yield in September was 65.1 bushels per acre compared to 59.0 bushels in August. It is therefore obvious that RFKDS offer an unconvincing explanation for the structural break that lasted until 2016.

14. In (¶55) RFKDS suggest that I should have used the S&P Goldman Sachs Commodity Index (GSCI) in order to obtain a higher damage estimate. There are serious problems with this recommendation, because RFKDS are essentially suggesting that I should have estimated a mis-specified and econometrically unsound model. First, the GSCI index contains corn and soybeans. In my July report I explained why it is statistically unsound to include corn and soybeans in the index because regression parameter estimates would be invalid due to bias and inconsistency. Second, the GSCI is comprised of 79% energy products, 6% industrial metals and 2% precious metals. These economic variables are not as highly correlated with corn returns, unlike the index I constructed for the purposes of my report.

15. In reference to the market index in my report, in (¶55) RFKDS surprisingly write: "Two of the index components have very low correlations with corn, and we question their inclusion in the index." Here they are contradicting themselves. On the one hand they question the inclusion of crude oil in my index because it has a low correlation with corn. On the other hand, they argue I should have used the GSCI index,

8

which has a 79% weight on energy products (including a 55% weight on oil and a 23% weight on oil products). I used an index comprised of wheat, hogs and crude oil. By volume, wheat is the second largest cereal grain fed to animals, hogs account for a large share of corn fed to animals, and crude oil captures the relationship between the energy markets and corn due to U.S. ethanol mandates.

16. In (¶57) RFKDS report in their Table 6 results from what they call "an improvement" on my event study approach. They indicate that their data runs from May 23, 2011 to June 30, 2015 without explanation for this time period. This is not the same time period as in my model. In addition, the RFKDS data appear to begin in May of 2011, not November as they report, although they removed the dates from the data file before they produced it. Furthermore, RFKDS use end-of-week data, instead of weekly data as in my model. The model results shown in their Table 6 are based on the use of four dummy variables, instead of one for the month of September. The problem with their modified use of dummy variables is further discussed below.

17. In (¶57) RFKDS suggest there is an error in my weekly average wheat price for the month of September 2013. They do not explain how they come up with an error in the wheat price and I checked my data file and could not find any error.

18. In (¶57) RFKDS go on to argue that "A greater problem is that Dr. Carter uses continuous corn futures data that roll from the September futures contract to December during the last part of September. A significant portion of the damage estimated in his models is due to this roll." When conducting an event study using futures prices, it is necessary to roll from one maturity month to another because all futures contract expire. RFKDS do not explain how an event study could be conducted without a

9

continuous futures price series. Perhaps they are suggesting the use of local cash prices as in their GARCH model. As explained above this confounds any estimate of damage because the local cash prices include the futures price plus the basis.

19. In (¶58) RFKDS argue: "It is extremely odd that Dr. Carter included a dummy variable including every week in September instead of a separate dummy variable for each week. If he had used dummy variables for each of the four weeks, his damage estimate would have totaled over nine percent or $0.42 per bu., 2.8 times his original damage estimate." There is a problem with this suggestion. First, the MIR 162 rejection in China was a single event, not four different events. It was an event that unfolded during the month of September as it was becoming obvious that Chinese buyers were dramatically switching away from U.S. corn imports towards imports of U.S. sorghum. So based on rational analysis, the four weeks in September were not separate events. Second, their suggestion gives rise to statistical problems because the four separate dummy variables are inter-related and it is therefore difficult to precisely identify the separate damage values of each of the four parameters. My approach is much more conservative and theoretically sound than the approach suggested by RFKDS.

20. In (¶59) RFKDS make the following claim: "Dr. Carter finds a shock of -3% for every week in September. However, this results in a shock for each week of equal magnitude (a result of his dummy variable specification) and a total shock across all four weeks of -3% compounded four times, or approximately -11.5% in total. This results in a total shock of -$0.56 per bushel." First of all, I did not find a shock of -3% for every week in September. Instead, I found an average weekly shock of -3% for the month of September. So there was no reason to multiply my damage estimate by a factor of four

times. As explained above, RFKDS would like to attribute the entire model residual in each week in September to damages and add them up. Above, I have addressed the statistical and theoretical problems with their suggested approach.

21. In (¶62) RFKDS criticize the fact that I estimate that damages will dissipate over time as the market adjusts. They write, "he must concede that the negative price shock is still in effect today, and the 15-cent per bushel loss will be suffered in perpetuity." In my July report I refer to the 2000 publication by Cashin, Liang and McDermott who find that a "persistent" shock to the corn market typically lasts 5-8 years (see Table 3 in Cashin et. al.)  In (¶62) RFKDS demonstrate a complete lack of knowledge of this literature. Persistent commodity market shocks do not last an infinite number of years. RFKDS would like the court to believe otherwise.

Dated: August 17, 2016

Davis, California

_____
Dr. Colin A. Carter

11