IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION | ) ) ) MDL No. 2591 |
| This Document Relates To: | ) Case No. 14-md-2591-JWL ) ) |
| *Terway, et al. v. Syngenta Seeds, Inc., LLC, et al.*, No. 16-2582 | ) ) ) |
| *Alderman, et al. v. Syngenta Corp., et al.*, No. 16-2329 | ) ) ) |
| *D & C Thornton Farms, et al. v. Syngenta Corp., et al.*, No. 16-2330 | ) ) ) |
| *McLendon Farms, Inc., et al. v. Syngenta Corp., et al.*, No. 16-2331 | ) ) ) ) ) |
| _____ | ) |

## MEMORANDUM AND ORDER

In this multi-district litigation ("MDL"), various plaintiffs assert claims against various entities related to Swiss company Syngenta AG (collectively "Syngenta").  In four cases in the MDL, plaintiffs have filed motions to remand their cases back to state court (Doc. # 13, docketed in Case No. 16-2582; Doc. # 2093, docketed in Case No. 14-2591).  For the reasons set forth below, the Court concludes that the federal courts' diversity jurisdiction was properly invoked by Syngenta, and the Court therefore **denies** the motions for remand.

I.      **Background**

The case of *Terway, et al. v. Syngenta Seeds, Inc., LLC, et al.* was filed on June 10, 2016, in Nevada state court by five sets of plaintiffs (the "Nevada plaintiffs") against various Syngenta entities.  On July 5, 2016, Syngenta removed the case to the United States District Court for the District of Nevada, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  The Nevada plaintiffs filed a motion for remand, and the parties fully briefed that motion, but the case was then transferred into the MDL (Case No. 16-2582).

On April 4, 2016, three actions were filed in Minnesota state court against various Syngenta entities: *Alderman, et al. v. Syngenta Corp., et al.*, on behalf of 16 sets of plaintiffs; *D & C Thornton Farms, et al. v. Syngenta Corp., et al.*, on behalf of 15 plaintiffs; and *McLendon Farms, Inc., et al. v. Syngenta Corp., et al.*, on behalf of 10 sets of plaintiffs (collectively, the "Minnesota plaintiffs").  On April 27, 2016, Syngenta removed the cases to the United States District Court for the District of Minnesota.  The cases were transferred into the MDL (Case Nos. 16-2329, 16-2330, and 16-2331, respectively), and on May 27, 2016, the Minnesota plaintiffs filed a motion for remand.

II.     **Diversity of Citizenship**

Both the Nevada plaintiffs and the Minnesota plaintiffs named the following United States entities as defendants, while alleging the following facts relevant to citizenship:  (1) Syngenta Corporation, alleged to be a Delaware corporation with its

2

principal place of business in Delaware; (2) Syngenta Biotechnology, Inc., alleged to be a Delaware corporation with its principal place of business in North Carolina; (3) Syngenta Crop Protection, LLC, a Delaware limited liability company (LLC) with its principal place of business in North Carolina; and (4) Syngenta Seeds, Inc., a Delaware corporation with its principal place of business in Minnesota. The Nevada plaintiffs also named (5) Syngenta Seeds, LLC, an entity to which Syngenta Seeds, Inc. was converted on December 31, 2015.

The Nevada plaintiffs allege that they are residents of Minnesota, Nevada, Illinois, and Indiana; and the Minnesota plaintiffs allege that they are residents of Mississippi. Syngenta argues that there is complete diversity here because the named defendants are citizens of Delaware for purposes of diversity jurisdiction, as follows: First, Syngenta Corporation is a Delaware citizen because it is Delaware corporation with its principal place of business in Delaware. *See* 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of the states of its incorporation and its principal place of business). Second, Syngenta Crop Protection, LLC, is an LLC with Syngenta Corporation as its sole member, and thus is a citizen of Delaware. *See Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (noting and declining to alter its "oft-repeated rule that diversity jurisdiction in a suit by or against [an unincorporated] entity depends on the citizenship of all its members") (internal quotation and citations omitted); *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1046-47 (10th Cir. 2016) (citing *Americold* in applying rule that citizenship of an LLC depnds on the citizenship

of its members).[1]  Third, Syngenta Seeds, LLC, is an LLC with Syngenta Corporation as its sole member, and thus is a citizen of Delaware.  Fourth, on December 31, 2014, Syngenta Biotechnology, Inc. was merged into Syngenta Crop Protection, LLC, and thus it is a nominal party whose former citizenship is not considered.[2]  Fifth, on December 31, 2015, Syngenta Seeds, Inc. was converted under Delaware law into Syngenta Seeds, LLC (a citizen of Delaware), and thus it is a nominal party whose former citizenship is not considered.

The Nevada plaintiffs and the Minnesota plaintiffs argue that the citizenship of Syngenta Seeds, Inc., whose principal place of business was in Minnesota, should be

---

[1]The Court has already ruled in this case that, with respect to questions of federal law, an MDL transferee court applies the law of the circuit in which it sits.  *See* Memorandum and Order of May 5, 2015, at 4 n.2 (citing *In re Urethane Antitrust Litig.*, 2013 WL 65988, at *1 (D. Kan. Jan. 4, 2013)).  That ruling is consistent with the rule followed by a number of circuit courts that have considered the question.  *See Murphy v. FDIC*, 208 F.3d 959, 965-66 (11th Cir. 2000) (citing cases from the D.C., Second, Eighth, and Ninth Circuits); *In re United States Dept. of Defense and U.S. Envir. Protection Agency Rule*, 817 F.3d 261, 272 (6th Cir. 2016) (citing *Murphy* and following the other circuits).  In arguing in their reply brief that the Court should apply the law of the Eighth Circuit (even though they cited mostly Fifth Circuit cases in their initial remand brief), the Minnesota plaintiffs cite *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996).  In that case, however, the court merely noted that a transferee court must follow the *choice of law rules* of the transferor court in the case of a forum transfer *pursuant to 28 U.S.C. § 1404(a).  See id.* at 1032.  Thus, *Trierweiler* does not suggest that an MDL transferee court should apply the law of the transferor circuit.  Accordingly, with respect to questions of federal law arising in this MDL, the Court will follow the law of the Tenth Circuit.

[2]Plaintiffs alleged that Syngenta Biotechnology, Inc. was a Delaware corporation with its principal place of business in North Carolina.  Thus, even if this defendant's citizenship were considered, there would be no effect on the diversity of citizenship in these cases.

considered here.  Based on that argument, the Nevada plaintiffs argue that remand is required because the requirement of complete diversity cannot be satisfied here, as some Nevada plaintiffs are residents of Minnesota.  Based on that same argument, the Minnesota plaintiffs argue that remand is appropriate because an action may not be removed on the basis of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See* 28 U.S.C. § 1441(b)(2).[3]

The Supreme Court has ruled that the "citizens" on whose diversity jurisdiction rests must be "real and substantial," and that a federal court must therefore "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). Syngenta argues that Syngenta Seeds, Inc. is only a nominal party because the entity ceased to exist when it was converted to an LLC under Delaware law.

The Minnesota plaintiffs rely on Del. Code Ann. tit. 8, § 278, which provides that "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for a term of 3 years . . . for the purpose of prosecuting and defending suits . . . and of enabling them gradually to . . . discharge their

---

[3]The Minnesota plaintiffs first raised this argument in their reply brief, but the parties were granted leave to file sur-reply and sur-sur-reply briefs to address the issue.

5

liabilities." *See id.*[4]  Section 278, however, applies only to corporations that have expired or have been dissolved.  *See id.*  Syngenta has provided evidence, and it is undisputed, that Syngenta Seeds, Inc. converted to an LLC under Delaware law pursuant to Del. Code Ann. tit. 6, § 18-214 (allowing certain entities to convert to an LLC) and Del. Code Ann. tit. 8, § 266 (allowing corporations to convert to other entities).  Both of those statutes state explicitly that such a conversion shall not constitute a dissolution of the former entity.  *See id.* tit. 6, § 18-214(g); *id.* tit. 8, § 266(f).  Thus, Section 278 does not apply in this case.

Under Delaware law, if a corporation is converted into an LLC, the corporation's liabilities remain as liabilities of the LLC.  *See id.* tit. 6, § 18-214(f); *id.* tit. 8, § 266(h).  The Nevada plaintiffs argue that the Delaware conversion statutes do not state explicitly that the former entity ceases to exist.  Those statutes do state, however, that, in the event of a conversion from corporation to LLC, the LLC is deemed to be the same entity as the corporation.  *See id.* tit. 8, § 266(h).  Only one entity remains after the conversion, and that entity is the LLC; accordingly, in essence, the corporation does cease to exist.  Therefore, the surviving LLC, which assumed any liability of the corporation to plaintiffs here, is the real party to the controversy; and the Court thus concludes that Syngenta Seeds, Inc. is only a nominal party, whose former citizenship is therefore

---

[4]In their briefs, the Nevada plaintiffs did not rely on Section 278, and they conceded that no dissolution occurred here.  In their complaint, however, the Nevada plaintiffs cited Section 278 as their basis for naming Syngenta Seeds, Inc. as a defendant.

irrelevant to the question of diversity jurisdiction. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358-59 (3d Cir. 2013) (Pennsylvania corporation that converted to a Delaware corporation and then to a Delaware LLC was a nominal party for diversity purposes, as only the surviving LLC had an actual interest in the outcome of the litigation).

The Nevada plaintiffs also rely on 28 U.S.C. § 1359, which provides as follows: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." *See id.* The Nevada plaintiffs argue that Syngenta Seeds, Inc. was converted to an LLC improperly to create diversity jurisdiction in cases involving Minnesota plaintiffs.

The Court rejects this argument. First, it is not clear that this statute applies in this situation. The Tenth Circuit has stated that Section 1359 means, in other words, that "a person may not create diversity jurisdiction by collusively assigning his interests in an action." *See National Fitness Holdings, Inc. v. Grand View Corporate Centre, LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014) (internal quotation omitted) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014)). "One of the statute's principal goals is to prevent manufacturing federal jurisdiction via assignment." *See id.* (citation omitted). The Tenth Circuit listed various factors to be considered in evaluating an argument under Section 1359, including whether the assignee lacked a prior connection to the matter, whether the assignor selected and paid the assignee's attorney,

7

whether the assignor retained control of the litigation, whether the assignee agreed to pay the assignor a portion of the recovery, and whether there was meaningful consideration for the assignment. *See id.* The present case, however, does not involve the assignment of some interest so that another party could be added to the suit. Rather, a corporation converted to an LLC, with the LLC deemed to be the same entity, with the same liabilities. Plaintiffs have not cited to any cases in which Section 1359 was invoked in the context of such a conversion.

Moreover, there is no basis to conclude that the conversion was effected for purposes of manufacturing diversity jurisdiction in later-filed cases. Plaintiffs argue that Syngenta engineered the conversion in response to the Court's ruling that federal question jurisdiction did not exist in some cases based on the federal common law of foreign relations. *See* Memorandum and Order of May 5, 2015. The conversion did not take place, however, for another eight months, at year-end (when legitimate corporate reorganizations would be expected to occur), and it followed a 2014 year-end merger of another Syngenta corporation into an LLC. Thus, the timing does not create a reasonable inference of an intent to manipulate federal jurisdictional requirements. In addition, at the time of the conversion, Syngenta already faced thousands of actions in Minnesota state court (which had been consolidated into an MDL-like proceeding), and thus it is unlikely that Syngenta would change its entity's corporate form for the sole reason of being able to get later-filed state-court cases into the federal MDL. The Court therefore

will not decline federal jurisdiction based on an application of Section 1359 in this case.[5]

The Nevada plaintiffs also argue that Syngenta Corporation (and thus, Syngenta Seeds, LLC) should be considered a citizen of Minnesota based on Syngenta's response to the Judicial Panel on Multidistrict Litigation (JPML) on October 29, 2014, in opposition to the creation of this MDL, in which Syngenta (referring to Syngenta Corporation, Syngenta Crop Protection LLC, and Syngenta Seeds, Inc.) stated that its U.S. headquarters "for the relevant business" was located in Minnesota. Plaintiffs argue that Syngenta should be judicially estopped from taking the position that Syngenta Corporation has its principal place of business in Delaware. The Court rejects this argument. First, judicial estoppel is not appropriate because the present position is not clearly inconsistent with the prior statement to the JPML. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (positions must be clearly inconsistent for judicial estoppel). In the response to the JPML, three Syngenta entities stated that the headquarters for "the relevant business" was in Minnesota. That does not mean

---

[5]The Minnesota plaintiffs did not cite Section 1359, but they did argue that Syngenta improperly manipulated the jurisdictional facts by the conversion to an LLC. The cases cited by plaintiffs, which do not involve a conversion from a corporation to an LLC, are not applicable here. *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), cited by plaintiffs, dealt with a specific issue not present here, as the Supreme Court stated that its interest in preventing the manipulation of jurisdiction "to insulate a favorable decision from review" weighed against a finding of mootness. *See id.* at 288. The other cases cited by plaintiffs involved the use of assignments not to create jurisdiction (the subject of Section 1359), but to destroy it. At any rate, the Court rejects any argument based on manipulation of jurisdiction for the same reasons cited above with respect to Section 1359.

9

necessarily that one of the three entities, Syngenta Corporation, had its headquarters in Minnesota, especially since it is undisputed that Syngenta Seeds, Inc. had its headquarters in that state. Moreover, the statement to the JMPL refers only to the headquarters at that time in 2014, while Syngenta's present argument turns on the location of Syngenta Corporation's headquarters at the time these suits were filed in 2016; thus, because a corporation's headquarters could move, the two positions are not necessarily inconsistent.

The Nevada plaintiffs also argue that Syngenta has failed to present evidence on this question, but Syngenta reasonably cited instead the Nevada plaintiffs' and the Minnesota plaintiffs' *own allegations* (for which plaintiffs must have had a good-faith basis) that Syngenta Corporation had its principal place of business in Delaware.[6] Because the statement to the JMPL did not refer to Syngenta Corporation specifically, there is no basis to conclude that that entity's principal place of business was not in Delaware, as alleged by plaintiffs, when these suits were filed and removed.

Finally, in noting that their complaints were conformed to master complaints filed in the MDL by co-lead counsel for all plaintiffs, the Minnesota plaintiffs appear to argue that the pre-conversion citizenship of Syngenta Seeds, Inc. should be considered, as the MDL had already begun at the time of the conversion. Plaintiffs filed their suits, thereby

---

[6]Thus, if judicial estoppel should be applied here, it would preclude plaintiffs from now asserting that Syngenta Corporation's principal place of business is not in Delaware.

initiating actions against particular defendants, in 2016 after the conversion, however, and plaintiffs have not provided any authority suggesting that they should be deemed to have filed suit earlier for this purpose.

Accordingly, the Court rejects the arguments for remand by the Nevada plaintiffs and the Minnesota plaintiffs based on the citizenship of the defendants.

### III.   Amount in Controversy

Federal diversity jurisdiction may be invoked only when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a). In its notice of removal based on diversity jurisdiction, the defendant need only plausibly allege that the amount in controversy exceeds $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Evidence is required only if that allegation is contested. *See id.* A removing defendant must establish the jurisdictional fact—that the amount in controversy exceeds $75,000—by a preponderance of the evidence. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). There can still be uncertainty, however, whether the plaintiff can actually prove its claim and recover that amount. *See id.* Thus, the defendant need show only that the case "may involve" more than $75,000, and dismissal or remand is appropriate "[o]nly if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor." *See id.* (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536,

11

543 (7th Cir. 2006)).

A.   *Minnesota Plaintiffs' Claims*

The Minnesota plaintiffs argue that Syngenta cannot show that requisite amount in controversy.   In their (virtually identical) complaints, these plaintiffs seek compensatory damages; attorney fees; "preliminary and permanent injunctions providing that Syngenta will be enjoined from selling, marketing, distributing Duracade corn until such time as Duracade has been approved for import to China;" and an order requiring Syngenta "to take affirmative steps to remediate the contamination that it has already caused."

The Court concludes that these plaintiffs' claims may involve over $75,000.  First, with respect to plaintiffs' claims for an injunction, Syngenta has provided evidence that it had $9,000,000 in sales of Duracade in 2015, and that a injunction against further sales, even for a short time, would cost Syngenta more than $75,000.  That evidence is sufficient to satisfy the jurisdictional standard because, under the "either viewpoint" rule adopted in the Tenth Circuit, either the value to the plaintiff or the cost to the defendant of injunctive relief may be considered for purposes of meeting the amount-in-controversy requirement.  *See Lovell v. State Farm Mutual Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).[7]  It is true, as plaintiffs note, that the amount-in-controversy

_____

[7]Plaintiffs argue for application of a rule under Eighth Circuit law requiring consideration only of the value of the injunction to the plaintiff, but as noted above, the Court follows the law of the Tenth Circuit with respect to questions of federal law.  *See* (continued...)

requirement must nonetheless be satisfied for each plaintiff in a multiple-plaintiff case. *See id.*  There is no problem of aggregation in this case, however—since each plaintiff requests that future sales of Duracade be enjoined, Syngenta's cost to comply with the injunction required by each plaintiff is the same, and easily exceeds $75,000.

Moreover, the Minnesota plaintiffs seek compensatory damages, based on "losses to U.S. corn farmers, including Plaintiffs," that have been "staggering".[8]  Plaintiffs also seek attorney fees, which could be available if they prevail on their claim for violations of the Minnesota consumer protection statutes.  *See* Minn. Stat. § 325D.45, subd. 2 (allowing for fees for willful conduct); *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (potential award of statutory attorney fees should be considered in determining whether the jurisdictional amount has been satisfied).  Therefore, the Court can easily say that these plaintiffs' claims may involve over $75,000.  Accordingly, the Court denies the Minnesota plaintiffs' motion for remand.

### B.     *Nevada Plaintiffs' Claims*

By their complaint, the Nevada plaintiffs seek compensatory damages for market

---

[7](...continued)
*supra* note 1.

[8]In support of their argument that they are small farmers, plaintiffs attached to their brief a "partial" list of some plaintiffs' acreages, most of which is listed as ranges (such as 500-1800 acres).  Those figures, however, are not supported by affidavit or other evidence.

13

losses and for property damage; punitive damages; and statutory attorney fees. *See* Nev. Rev. Stat. § 41.600 (prevailing party in a consumer fraud action may recover reasonable attorney fees). The claims for attorney fees and punitive damages are included for purposes of the determination of the amount in controversy. *See Woodmen*, 342 F.3d at 1218.

In its notice of removal, Syngenta plausibly alleged an amount in controversy for each plaintiff exceeding $75,000. Relying on the per-bushel estimate of damages by Bruce Babcock, an expert for plaintiffs who has submitted an expert damages report in the MDL proceedings, Syngenta calculated estimated market losses for lower-than-average-sized farms in the states in which the Nevada plaintiffs farmed, then added amounts for attorney fees (at a rate of 30 percent of compensatory damages) and for punitive damages (at a 7-to-1 ratio to compensatory damages, based on the amount received in the *Rice* litigation).

Plaintiffs state that those calculations contain flaws, but they do not identify the flaws. They also argue that the 7-to-1 ratio from the *Rice* case is too high because in *Rice*, unlike this case, the genetic trait had not been approved in the United States. As Syngenta points out, however, the calculations in its notice of removal were actually conservative for a number of reasons: Syngenta used lower-than-average-sized farms, while use of the average size would yield higher damage figures; Mr. Babcock actually estimated damages through 2023, while Syngenta stopped at 2017; Syngenta did not include any amounts for the claims for property damage; and any attorney fee award may

14

not be limited to some percentage of compensatory damages, and thus could surpass Syngenta's estimates considerably. Thus, the Court agrees with Syngenta that, based on average farm sizes, these plaintiffs' claims may involve more than $75,000, even using a much lower ratio for punitive damages.

Plaintiffs argue specifically about the calculations as applied to the Kemna plaintiffs and to plaintiff Small, based on evidence of those plaintiffs' actual acreages.[9] Based on those actual acreages, Syngenta has calculated those plaintiffs' alleged market losses, using Mr. Babcock's formula through 2023, to be $8,860.01 and $11,001.10, respectively. If those amounts are combined with potential recoveries for property damage, attorney fees, and punitive damages, the total damages recovered by each set of plaintiffs may exceed $75,000—the Court cannot say that there is a legal certainty that the damages will not exceed that amount.[9] Accordingly, the Court concludes that the amount-in-controversy requirement has been satisfied for the Nevada plaintiffs, and the Court denies those plaintiffs' motion for remand.

IT IS THEREFORE ORDERED BY THE COURT THAT in Case No. 16-2582 plaintiffs' motion to remand (Doc. # 13, docketed in Case No. 16-2582) is hereby

---

[9]Because plaintiffs presented this argument only with respect to these two sets of farmers, the Court assumes that the other plaintiffs' farms are big enough that they were not disadvantaged by Syngenta's use of acreage estimates.

[9]These plaintiffs have not offered to stipulate that their recoveries will not exceed $75,000.

15

**denied**.

IT IS FURTHER ORDERED BY THE COURT THAT in Case Nos. 16-2329, 16-2330, and 16-2331, plaintiffs' motion to remand (Doc. # 2093, docketed in Case No. 14-2591) is hereby **denied**.

IT IS SO ORDERED.

Dated this 29th day of September, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16