IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *United States ex rel. Pospisil v. Syngenta AG,* | ) | |
| *et al.*, No. 15-9637 | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

In this *qui tam* action, which has been included in the multi-district litigation ("MDL") proceedings in this Court involving similar cases, relator John Pospisil brings this action against various defendants related to Syngenta AG (collectively, "Syngenta"), by which he alleges that Syngenta violated the federal False Claims Act (FCA), 31 U.S.C. § 3729.  The case presently comes before the Court on Syngenta's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 24, docketed in Case No. 15-9637).  For the reasons set forth below, the Court **grants** the motion, and this case is hereby dismissed.[1]

_____

[1]In its notice of election to decline intervention in this case, the Government cited 31 U.S.C. § 3730(b)(1) in requesting that, if either relator or Syngenta proposed dismissal of this action, the Court "solicit the written consent of the United States before ruling or granting its approval."  That statute provides that a civil FCA action brought in the name of the Government "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  *See id.*  A number of circuit courts, however, including the Tenth Circuit in an unpublished opinion, have ruled that this provision applies only to voluntary dismissals by the relator.  *See Brown v. Sherrod*, 284 F. App'x 542, 543 (10th Cir. 2008) (unpub. op.); *Minotti v.*
(continued...)

I.    **Background**

Beginning in September 2014, tens of thousands of corn farmers filed similar suits against Syngenta. Hundreds of those suits have been transferred into this MDL, and thousands more have been combined in an MDL-like proceeding in Minnesota state court. The suits generally relate to Syngenta's commercialization of genetically-modified corn seed products known as Viptera and Duracade (containing the trait MIR 162) without approval of such corn by China, an export market. The plaintiffs, who did not use Syngenta's products, allege that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected imports of all corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that corn farmers were harmed by that market effect.

Relator filed the present action in this Court on November 20, 2015. On March 22, 2016, the United States Government elected not to intervene to pursue the case, and the complaint was subsequently served on Syngenta. In asserting a claim under the

---

[1](...continued)

*Lensink*, 895 F.2d 100, 103-04 (2d Cir. 1990); *United States ex rel. Health Possibilities, P.S.C.*, 207 F.3d 335, 344 (6th Cir. 2000); *United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932, 934 (8th Cir. 2001); *Jallali v. Nova Southeastern Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012) (unpub. op.). The Court is persuaded by the reasoning of the Second Circuit on this issue, *see Minotti*, 895 F.2d at 103-04, and it therefore follows the interpretation of the Tenth Circuit in *Brown*. Accordingly, the Court has not sought the consent of the Government before issuing this ruling dismissing the action.

FCA, relator alleges that the Government lost millions of dollars relating to crop insurance claims made by farmers who lost money in the depressed corn market.

## II.      Governing Standards

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555.  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.      Public Disclosure Bar

Syngenta first argues that the Court should dismiss relator's FCA claim pursuant to the FCA's public disclosure bar.  Section 3730(e)(4) of the FCA provides as follows:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> >
> > (iii) from the new media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)[(A)] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or [(ii)] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*See* 31 U.S.C. § 3730(e)(4).  "The public disclosure bar is . . . chiefly designed to separate the opportunistic relator from the relator who has genuine, useful information that the government lacks."  *See In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 961 (10th Cir. 2009); *see also United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1285 n.3 (10th Cir. 2010) (FCA's public disclosure bar is "designed to prevent parasitic suits brought by relators with little or no direct knowledge of the alleged fraud").  The Tenth Circuit has employed a four-step analysis in applying the

public disclosure bar, by which the court addresses the following questions: (1) whether the public disclosure contains allegations from one of the listed sources; (2) whether the disclosure has been made public; (3) whether substantially the same allegations from the public disclosures are made in the relator's complaint; and (4) whether the relator qualifies as an "original source." *See United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004) (applying a similar test tracking language of predecessor statute to Section 3730(e)(4)) (citing *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1042 (10th Cir. 2004)).

Relator Pospisil concedes that this four-step inquiry is the appropriate test under the public disclosure bar and that the first three steps are satisfied here. As Syngenta points out, prior to November 2015 thousands of plaintiffs sued Syngenta based on the same allegations of a depressed corn market caused by Syngenta's commercialization of its products without Chinese approval, and those allegations were reported in the news media. Thus, the only issue is whether relator qualifies as an "original source" in this case. Relator does not argue that he disclosed information to the Government before the public disclosures, although he does allege that he provided his information to the Government before filing this action, and Syngenta does not take issue with that allegation. Thus, the viability of this action turns on whether relator "has knowledge that is independent and materially adds to the publicly disclosed allegations." *See* 31 U.S.C. § 3730(e)(4)(B).

The only knowledge asserted by relator that is independent of the publicly

5

disclosed allegations relates to two meetings relator had with Syngenta personnel. Relator has alleged as follows: Syngenta hired relator as a consultant, and in 2004 relator participated with other large-acreage corn farmers in two "round-table discussions" with Syngenta personnel concerning Syngenta's pending release of a genetically-modified corn seed. At the second meeting, in November 2004, Syngenta stated that the product would only be released in certain locations where it could be contained and isolated, and that the corn would be used only by the dairy industry and would not be exported. Syngenta wanted input concerning possible effects of the release of the seed that contained a trait not approved in all other countries that imported U.S. corn. Relator told Syngenta that the isolation plan was a fraud that would never work; that even if the farmers promised to isolate the product, it would be almost impossible to do so for a variety of reasons; that it would be impossible to prevent cross-pollination of the seed with corn in neighboring fields; and that the corn would be commingled in grain elevators and then exported. The other consultants agreed that isolation of the seed would not work. Relator was not told the name of the product discussed at that meeting, but he believes that the product was one containing the trait MIR 604, which Syngenta released in 2007 without approval from most export markets.[2] Relator argues that this evidence "materially adds" to the publicly-disclosed information because it helps establish that Syngenta knew that its products could not be isolated and thus that its

---

[2]These allegations are also supported by relator's affidavit in which he describes this November 2004 meeting with Syngenta.

release of Viptera and Duracade without approval from China, an export market, would

have a disastrous effect on the domestic corn market.

The Tenth Circuit has not considered the meaning of the "materially adds"

standard, which was added to the "original source" definition in the public disclosure bar

in Section 3730 in 2010.  The First Circuit recently did so, however, as follows:

> At its most abecedarian level, an addition is material if it is "[o]f such a
> nature that knowledge of the item would affect a person's decision-
> making," or if it is "significant," or if it is "essential."  This dictionary
> definition comports with the common law understanding of "material,"
> which focuses the relevant inquiry on whether a piece of information is
> sufficiently important to influence the behavior of the recipient.  As such,
> our task is to ascertain whether the relators' allegedly new information is
> sufficiently significant or essential so as to fall into the narrow category
> of information that materially adds to what has already been revealed
> through public disclosures.  As the level of detail in public disclosures
> increases, the universe of potentially material additions shrinks.

See United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 211 (1st Cir.

2016) (quoting Black's Law Dictionary 1124 (10th ed. 2014)) (additional citations

omitted).   The Court concludes that the First Circuit's interpretation of the term

"materially" in a manner consistent with its ordinary meaning is appropriate in this case

as well.

By the time relator filed this action in November 2015, litigation involving the

same theory of harm to the corn market had been pursued against Syngenta for over a

year by thousands of plaintiffs in numerous courts, and thus a wide universe of

allegations had been publicly disclosed—which fact shrinks the universe of potentially

material additions.  Relator argues that his evidence helps to show that Syngenta knew

7

the consequences of its release of its products without approval in all export markets. The Court concludes, however, that relator's evidence concerning his one meeting with Syngenta does not materially add to the publicly-disclosed allegations for purposes of Section 3730(e)(4). As Syngenta notes, the value of relator's evidence with respect to Syngenta's knowledge about the consequences of commercializing Viptera and Duracade is lessened by the fact that relator was discussing a different product with Syngenta in 2004. Moreover, relator himself alleges in his complaint that at the time of the 2004 meeting "the financial disaster and repercussions of a premature release of a genetically modified trait without approval from export markets was self-evident." Relator proceeds in the complaint to cite the StarLink modified corn release from the 1990s, which resulted in commingling, refusal of exports by other countries, a drop in the price of corn, and a disastrous end result for farmers and the overall farm economy. In this MDL, plaintiffs alleged that cross-pollination and commingling were essentially inevitable and that Syngenta had been warned about the possible effects on the corn market if it released its products without approval from all key export markets—indeed, in ruling on Syngenta's motion to dismiss in September 2015 (prior to the filing of this action by relator), this Court noted that plaintiffs had alleged facts to state a plausible claim that the effect on the market was not only foreseeable but was actually foreseen by Syngenta. *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1193 (D. Kan. 2015) (Lungstrum, J.). Finally, although relator has not alleged that he discussed with Syngenta the effect of a product release by Syngenta on crop insurance

8

claims, at least one plaintiff's attorney included information on his public website concerning a possible recovery by farmers who had collected crop insurance proceeds.

In his reply brief, relator did not address these points raised by Syngenta concerning the public allegations of Syngenta's knowledge of consequences to the market and relator's own allegation that the consequences were "self-evident." Thus, relator has not explained how his own experience with Syngenta relating to a different product adds to the publicly disclosed allegations of Syngenta's knowledge, other than by providing one additional piece of evidence to show something that was "self-evident." In *Winkelman*, the First Circuit concluded that a similar addition was not material in that case, as follows:

> We do not rule out the possibility that furnishing information that a particular defendant is acting "knowingly" (as opposed to negligently) sometimes may suffice as a material addition to information already publicly disclosed. Here, however, the public disclosures made it pellucid that CVS was acting deliberately, and that its course of conduct was studied (not merely careless). Accordingly, the allegations gleaned from Martinsen's experience add nothing significant about CVS's knowledge: every indication from the public disclosures was that CVS was fully aware that [it was engaging in certain conduct].

> Martinsen's additional information merely confirms this state of affairs. At most, her allegations add detail about the precise manner in which CVS operated the HSP program, and a relator who merely adds detail or color to previously disclosed elements of an alleged scheme is not materially adding to the public disclosures.

*See Winkelman*, 827 F.3d at 213 (citations omitted).

Similarly, relator's additional evidence concerning Syngenta's knowledge merely adds detail or color to the significant publicly-disclosed allegations concerning the same

element, and thus relator's information does not materially add to the public disclosures. Accordingly, the Court concludes that relator is not an "original source" for purposes of the public disclosure bar, and it therefore dismisses this action pursuant to 31 U.S.C. § 3730(e)(4). Syngenta's motion is granted on that basis.

## IV.    Failure to State a Claim Under the False Claims Act

Dismissal is also appropriate because relator has failed to state a cognizable claim under the FCA, for a number of reasons. Relator asserts a claim pursuant to 31 U.S.C. § 3729, which contains a number of bases for liability. The provisions that may have applicability in this case impose liability if a person does the following:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

See id. § 3729(a)(1). As used in this statute, the term "claim" means any request or demand for money or property that is presented to an agent of the United States or that is made for funds under a Government program. See id. § 3729(b)(2).

The heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires that

fraud be pleaded with particularity, apply to actions under the FCA.  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud, and [the plaintiff] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *See id.* at 726-27 (citations and internal quotations omitted).

### A.   *Claim Under Section 3729(a)(1)(G)*

As a preliminary matter, the Court disposes of any claim under Section 3729(a)(1)(G), the so-called "reverse false claims" provision.  *See United States ex rel. Bahrani v. ConAgra, Inc.*, 465 F.3d 1189, 1195 (10th Cir. 2006).  At one place in his complaint, relator cites and quotes Section 3729(a)(1)(G) in alleging that false statements by Syngenta were "material to an obligation to pay or transmit money to the Government."  Relator then alleges that by fraudulently concealing the consequences of its actions, Syngenta "forced corn farmers to take out crop insurance with incomplete information," which insurance was underwritten by the Government with incomplete information.

In its motion, Syngenta argues that any claim under this provision should be dismissed on the basis that relator has not adequately explained with any particularity (in accordance with Rule 9(b)) how any false statement by Syngenta affected any obligation to pay money to the Government.  Relator has not addressed this argument in

11

his response brief.  In addition, in his brief, in stating the elements for a claim under the FCA, relator tracks the language of Section 3729(a)(1)(A), thereby suggesting a claim only under that liability prong.  Accordingly, the Court deems that relator has abandoned any claim under Section 3729(a)(1)(G), and it therefore grants the motion with respect to any such claim asserted in the complaint.

### B.   *False or Fraudulent Claim*

As noted, in his brief relator states the elements for a claim under Section 3729(a)(1)(A), but the complaint alleges misrepresentations and omissions by Syngenta, which might implicate a claim under Section 3729(a)(1)(B).  Either basis for liability, however, requires a false or fraudulent claim.  *See* 31 U.S.C. § 3729(a)(1)(A), (B). Syngenta argues that relator's action must be dismissed because he has failed sufficiently to allege a false or fraudulent claim made by someone for money under a federal program.  The Court agrees, and it dismisses relator's action on this basis as well.

Relator bases his FCA claim on the allegation that the Government lost "hundreds of millions of dollars" in crop insurance payments under a federal program.  Relator alleges that although private insurers sell the crop insurance policies to farmers, the USDA acts as reinsurer.  As Syngenta argues, however, relator has not alleged (or explained in his brief) how any crop insurance claim, whether submitted by a farmer to an insurer or by an insurer to the Government for reimbursement, was false.  Relator alleges that the policies "protect farmers against loss of revenue associated with unexpectedly lower-than-market prices."  Because lower prices did occur (as alleged by

12

relator), any resulting crop-insurance claim would seem to be valid.  In his brief, relator repeatedly refers to "artificially-inflated" insurance claims, but he has not identified any particular false statement associated with the submission of an insurance claim.  Relator alleges that Syngenta made misrepresentations and material omissions regarding the status of Chinese approval and the effect on the market of commercializing the products without such approval, but those misrepresentations and omissions do not relate to any crop insurance claim.

Accordingly, the Court concludes that relator has not alleged facts to support an inference that false or fraudulent crop insurance claims were submitted—let alone, done so with particularity as required under Rule 9(b).  In his complaint, relator states that he alleges fraud by Syngenta with particularity, and he purports to identify the "who", "what", "when", "where", and "how" of that fraud relating to Syngenta's commercialization of its products.  Relator has not alleged any such particulars about any false or fraudulent insurance claim, however.  Moreover, even if Rule 9(b) did not apply to the false-claim requirement, the complaint would nonetheless be subject to dismissal because relator has not alleged plausibly (under the *Twombly* standard) that any false or fraudulent crop insurance claim was submitted, in light of the reasonable inference that any such claim would be valid and in light of the absence of any facts establishing how such claims were false.[3]

---

[3]The Tenth Circuit has explained that "[t]he FCA recognizes two types of
(continued...)

Relator does allege in his complaint that farmers were forced to purchase crop insurance and that the Government was forced to underwrite such policies with "incomplete information." Thus, relator could arguably be pursuing a theory based on false applications for crop insurance. Relator has not alleged any facts with particularity to support such a theory, however. For instance, relator has not alleged any specific information included in such applications. Nor has relator alleged a plausible claim that farmer applicants knew (and failed to disclose) material information that the insurers and the Government did not. Moreover, to the extent that relator relies on omissions, he has failed to allege facts to support the existence of a duty in the farmers to the insurers or the Government.[4]

In its brief, relator notes that a fraudulent act may be defined to mean conduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude. Relator has only alleged such conduct by Syngenta, however, and not with respect to the submission of

---

[3](...continued)
actionable claims—factually false claims and legally false claims." *See United States ex rel. Conner v. Salina Reg. Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008). Factually false claims generally involve an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided; while legally false claims generally involve a false certification of compliance with a statute or regulation as a condition to government payment. *See id.* Relator has not alleged facts that would establish either type of false claim in this case.

[4]In *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989 (2016), the Supreme Court recently held that FCA liability could be based on a failure to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement if that omission made representations in the submitted claim misleading. *See id.* at 1995. Relator has not alleged any such omission in this case, however.

a claim for Government funds.  Relator has not provided any authority to support the position that a FCA plaintiff need not allege and prove a false or fraudulent *claim*, but may instead only allege and prove a claim for funds resulting from fraudulent behavior. Such an interpretation would read the "false or fraudulent claim" requirement out of the statute.

Relator has not alleged facts to support a plausible allegation that any false or fraudulent crop insurance claims were submitted.  Accordingly, any claim by relator under Section 3729(a)(1)(A) or (B) is subject to dismissal.

### C.   *Causation Under Section 3729(a)(1)(A)*

Any claim by relator under Section 3729(a)(1)(A) is subject to dismissal for another reason.  Relator has not alleged that Syngenta presented any false crop insurance claim; thus, under this prong of the FCA, relator must allege and prove that Syngenta "cause[d] to be presented" a false or fraudulent claim for payment.  *See* 31 U.S.C. § 3729(a)(1)(A). Relator appears to allege Syngenta caused farmers (or insurers) to submit crop insurance (or reinsurance) claims.

Syngenta argues that relator has not sufficiently alleged facts to support this element of causation.  Relator has not responded to this argument in his brief.  Thus, Syngenta's motion to dismiss any claim under this prong of the FCA could be granted as unopposed.

Moreover, the Court agrees that relator has not pleaded a plausible claim of causation here.  In *Sikkenga*, the Tenth Circuit held that mere knowledge of the

15

submission of false claims is not sufficient under the FCA; that more than "but for" causation is required; and that the FCA requires a showing of proximate causation, establishing "a sufficient nexus between the conduct of the party and the ultimate presentation of the false claim." *See Sikkenga*, 472 F.3d at 714.  In the words of the Tenth Circuit, "[s]uch a test separates the wheat from the chaff, allowing FCA claims to proceed against parties who can fairly be said to have caused a claim to be presented to the government, while winnowing out those claims with only attenuated links between the defendants' specific actions and the presentation of the false claim." *See id.*  Thus, more than passive acquiescence is required, and liability only attaches for "affirmative acts" that cause or assist the presentation of a fraudulent claim. *See id.* at 714-15.  The Tenth Circuit concluded that this standard was met in *Sikkenga* based on allegations that the defendant engaged in certain actions to assist in the submission of allegedly false claims. *See id.* at 715.

In this case, relator seems to allege generally that Syngenta's acts caused farmers to obtain crop insurance and submit crop insurance claims.  Relator, however, has not alleged any affirmative acts by Syngenta relating to the actual submission of crop insurance claims.  Thus, under the facts alleged by relator, causation is too attenuated under the standard set out by the Tenth Circuit in *Sikkenga*.  Accordingly, relator has failed to plead a plausible and cognizable claim under Section 3729(a)(1)(A) for this reason as well.

### D.   *False Record or Statement Under Section 3729(a)(1)(B)*

16

Finally, to the extent that relator has attempted to assert a claim under Section 3729(a)(1)(B), such claim is subject to dismissal for an additional reason. Liability based on that prong requires a "false record or statement" material to a false or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1)(B). Syngenta argues that relator has not alleged any such false statement with the requisite particularity. Relator has not responded to this argument, and thus Syngenta's motion to dismiss any claim under this prong could be granted as unopposed.

Moreover, the Court agrees that relator has not sufficiently alleged such a false statement by Syngenta under Rule 9(b). As noted above, relator's complaint purports to set out the who, what, when, where, and how of Syngenta's fraudulent scheme. In so doing, however, relator has not identified any particular misrepresentations by Syngenta (including by content, specific date, or location). In one place in the complaint, relator alleges that Syngenta misrepresented the status of Chinese approval in a December 2014 press release; but relator has failed to allege with particularity how such a misrepresentation could have caused the alleged drop in market prices, since by that time China had already been rejecting corn shipments from the United States for over a year. Relator has not identified any other specific misrepresentation by Syngenta in the complaint. Relator alleges omissions by Syngenta, but relator has failed to allege any source of a duty to farmers who may submit crop insurance claims. Relator has also failed to respond to Syngenta's argument that any representation or omission regarding the likely effect on the corn market would be speculative and thus would not involve an

17

objective fact. Accordingly, the Court concludes that relator has not alleged with particularity a false record or statement by Syngenta material to false or fraudulent crop insurance claims, as required for liability under Section 3729(a)(1)(B).

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss is **granted**, and this case is hereby dismissed.

IT IS SO ORDERED.

Dated this 6th day of October, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

18