```
 1                  UNITED STATES DISTRICT COURT
                       DISTRICT OF KANSAS
 2

 3   In Re:

 4   Syngenta AG MIR 162          Case No. 14-md-2591-JWL-JPO
     Corn Litigation
 5

 6                                Kansas City, Kansas
                                  Date:  10/31/2016
 7   ..........................

 8

 9                       TRANSCRIPT OF
                       STATUS CONFERENCE
10                         BEFORE
         HONORABLE JAMES P. O'HARA, CHIEF MAGISTRATE JUDGE
11

12
     APPEARING TELEPHONICALLY FOR THE PLAINTIFFS:
13
     Don M. Downing
14   Gray, Ritter & Graham, P.C.
     701 Market Street
15   Suite 800
     St. Louis, MO 63101
16
     APPEARING TELEPHONICALLY FOR THE SYNGENTA DEFENDANTS:
17
     Bridget K. O'Connor
18   Kirkland & Ellis
     655 Fifteenth Street, N.W.
19   Washington, D.C. 20005

20

21

22

23

24

25
```

1                (Court called to order.)
2                THE COURT:  Good morning, everybody.  This
3    is Judge O'Hara and we're convened today in *In Re:*
4    *Syngenta AG MIR 162, Corn Litigation*, which is MDL
5    No. 2591, corresponding to District of Kansas Case
6    No. 14-MD-2591.  Today is a telephone status conference
7    with respect to the parties' joint Motion to Defer
8    Service of Additional Damage Reports and Depositions of
9    Experts to Prepare Those Reports, that motion being ECF
10   Document 2625 filed on October 24, 2016.  Who will be in
11   the lead this morning for the plaintiffs?
12               MR. DOWNING:  Your Honor, this is Don
13   Downing.  I'll be taking the lead for the plaintiffs.
14               THE COURT:  Okay.  And who will be in the
15   lead for Syngenta?
16               MS. O'CONNOR:  Your Honor, this is Bridget
17   O'Connor.
18               THE COURT:  Okay.  I understand from my
19   staff that there are numerous other people who have
20   called in to participate in or listen on the conference,
21   but is there anybody else on behalf of the plaintiffs
22   who would like to note their appearance for the record?
23          (No response.)
24          Okay.  Anybody else on behalf of Syngenta who
25   would like to formally note their appearance?

1           (No response.)

2           Very well.  Counsel, the motion that's been filed
3  is, I guess, a bit unclear, and I mean that not as a
4  criticism, more an observation.  And I'd appreciate some
5  clarification as to what was intended.  To frame this
6  better, I direct your attention to paragraphs 2 and 3 of
7  the motion.  In paragraph No. 2 it indicates that, "One
8  of the reports produced by the plaintiffs on October 10
9  was the report of Eric Frye."  And it goes on to say,
10 "Mr. Frye's report addressed the individual damages of
11 the four bellwether trial plaintiffs."

12         Mr. Downing, am I correct that that relates to
13 the four bellwether cases that the parties have
14 suggested to Judge Lungstrum in Kansas, Iowa, South
15 Dakota and Arkansas?

16              MR. DOWNING:  That's correct, Your Honor.

17              THE COURT:  And am I correct that Frye's
18 report does not extend to the individual damage claims
19 of other plaintiffs who have filed cases in those four
20 states who may have been part of the bellwether
21 discovery pool?

22              MR. DOWNING:  That's correct.

23              THE COURT:  And assuming that the case were
24 to go forward not on the certified class claims but
25 rather on the individual bellwether claims, am I correct

1    then inferring that Frye would be the only expert whom
2    the plaintiffs would propose to use to shore up the
3    individual damage claims in those four cases?
4            MR. DOWNING:  Your Honor, partly that's
5    correct.  Mr. Frye's report relies on the analysis of
6    Dr. Babcock and Dr. Carter for the market loss damages.
7    And what Mr. Frye does is apply those market losses to
8    the specific bushels sold by each of the individual
9    bellwether plaintiffs to calculate individual damage
10   figures.
11       So it's correct that he would be the only
12   individual damage expert, but Dr. Carter and
13   Dr. Babcock, who also submitted reports on October 10th,
14   would also be damage experts as well.  They would just
15   not be calculating the individual damages for each of
16   the four bellwether plaintiffs.
17            THE COURT:  But, in any event, if I'm
18   reading this motion the way I think it was intended, as
19   far as the plaintiffs are concerned, if the cases
20   proceed on the individual damage claims in -- in the
21   four designated bellwether trial cases, you fully
22   disclosed your experts at this point; is that correct?
23            MR. DOWNING:  That is correct.  That's
24   correct.
25            THE COURT:  Ms. O'Connor, is your

1  understanding of -- of how the experts line up in those
2  four bellwether cases the same as what Mr. Downing has
3  just indicated?
4              MS. O'CONNOR:  Yes, Your Honor.  Our
5  understanding is the same as what Mr. Downing just
6  described.
7              THE COURT:  Okay.  In paragraph 3 toward the
8  end of that paragraph within the motion it indicates
9  that basically if the Tenth Circuit were to reverse
10 Judge Lungstrum on class certification, it may be
11 necessary at some point for the plaintiffs to serve
12 expert reports addressing individual damages of the
13 named plaintiffs in the eight bellwether states.
14      Mr. Downing, am I correct that the reference to
15 the eight bellwether states would be the eight states
16 from whom plaintiffs were selected by -- by the parties
17 for the bellwether discovery pool?
18             MR. DOWNING:  Correct, Your Honor.
19             THE COURT:  And when you refer to the named
20 plaintiffs, is that in any way different than just
21 plaintiffs?
22             MR. DOWNING:  What we're referring to there,
23 Your Honor, are the named plaintiffs in the master
24 complaint, the third amended master complaint, in
25 essence the main plaintiffs in the master class

1  complaint.  There are 30-plus, 31-32 or so named
2  plaintiffs in that complaint from the eight bellwether
3  states.
4            THE COURT:  Are those all proposed as class
5  reps, too?
6            MR. DOWNING:  They are.  They are, Your
7  Honor.
8            THE COURT:  Well, let me ask this,
9  assuming -- well, first of all, Ms. O'Connor, is your
10 understanding with respect to paragraph 3 of the motion
11 the same as what Mr. Downing just indicated?
12           MS. O'CONNOR:  Yes.  Yes, Your Honor.
13           THE COURT:  Okay.  So to wind this up a
14 little bit, mindful that I think the original scheduling
15 order maybe at least frames these issues, I think
16 Scheduling Order 2 says that the bellwether trial pool
17 will be based on selections by the parties but subject
18 to the approval of the court.  Would the issues that are
19 bound up in this motion, as a practical matter, be moot
20 if Judge Lungstrum were to enter an order at this point
21 approving the parties' selections with respect to the
22 bellwether trial cases in Arkansas, South Dakota, Iowa
23 and Kansas?
24           MR. DOWNING:  Your Honor, it would not
25 really make, at least from our perspective, the

1  intention that we had in working with Syngenta to file
2  this motion.  And let me explain why and I think I can
3  see the court's questioning about this because it wasn't
4  as clear as it could have been.
5       We had had discussions with Syngenta's lawyers
6  earlier about various hypothetical situations on what if
7  Judge Lungstrum's ruling certifying the class were
8  reversed by the -- by the Tenth Circuit or if the
9  Rule 23(f) petition was granted.  And we wanted to
10 reserve the option on behalf of the plaintiffs if there
11 was not going to be -- you know, for example, if class
12 certification ultimately was denied by the Tenth
13 Circuit, we wanted to reserve the option of being able
14 to use some of the named plaintiffs in our master class
15 complaint as bellwether trial plaintiffs in individual
16 trials.
17      And we had not reached agreement with Syngenta's
18 lawyers on that but we simply wanted to preserve that
19 option.  And that's why we had some question in our mind
20 about whether we needed to file individual damage
21 reports for those 30 plus-plus plaintiffs in the master
22 complaint.  In -- in this same time period of October
23 the 24th, they are named plaintiffs in the class
24 complaint.  But if the class trial goes forward, we do
25 not intend to use Mr. Frye as an individual damage

1  expert because we'll be seeking aggregate class damages.
2  So we were -- we were just trying to protect all of our
3  bases and that's why we had phrased this the way we did.
4         Another objective for this motion, and
5  Ms. O'Connor can speak to this part of our discussions,
6  were that if experts were not necessary, should we spend
7  the time and resources to prepare to take these -- an
8  expert and have rebuttal reports for those experts?  So
9  in lieu of us filing an expert report on behalf of
10 Mr. Frye for some 30 different plaintiffs, which would
11 be a very expensive expert report, the parties had hoped
12 to do and planned to do, obviously subject to the
13 court's approval, was wait and see whether the
14 Rule 23(f) motion was granted or not.
15        If it's not granted, then I think everything
16 we're prepared to move forward just as is with no
17 further report.  If the Rule 23 application is granted,
18 the parties agree to meet and confer to discuss the
19 extent to which we would file additional individual
20 damage reports for some of the named plaintiffs for
21 possible use in individual bellwether trials.  But we
22 had not reached agreement on that, that's why we said
23 the parties would meet and confer on that subject.
24        So I hope I've made it a little clearer.  Maybe
25 I've made it more cloudy, but that's -- I think that's

1  the gist of what we were trying to accomplish here.
2              THE COURT:  Well, before I weigh in on
3  whether you've muddied things up or made them better,
4  let me ask, Ms. O'Connor, is your understanding of I
5  guess the objective of this motion the same as what
6  Mr. Downing has indicated?
7              MS. O'CONNOR:  Yes.  Yes, Your Honor, that
8  is -- that is our understanding as well.
9              THE COURT:  Well, I guess let me ask this, I
10 mean, this kind of goes back to the status conference
11 that Judge Lungstrum conducted recently that it's my
12 understanding that his intention is to proceed next June
13 with the trial of the certified claims nationally under
14 the Lanham Act and also the Kansas state claims, state
15 tort claims that is, on a combined basis unless the
16 Tenth Circuit either reverses him outright or stays the
17 case in some way on that side of things.
18     And that even if the Tenth Circuit were to alter
19 any of Judge Lungstrum's rulings on class certification,
20 his intent would be to move forward in June with the
21 state law claims in the designated Kansas bellwether
22 case, again still in June, and with the understanding
23 that Judge Sipkins would be proceeding perhaps as early
24 as May of next year in the Minnesota cases with a
25 bellwether case.  And Judge Lungstrum finally would want

1  to have the selective bellwether trial cases in
2  Arkansas, Iowa, and South Dakota in a position for
3  remand so that they can be tried in short order
4  following the Kansas case.
5          I mean, first of all, did -- Mr. Downing, did you
6  leave the -- that status conference with the same
7  understanding?
8              MR. DOWNING:  Yes, Your Honor, I did.
9              THE COURT:  And, Ms. O'Connor, did you?
10             MS. O'CONNOR:  Yes, Your Honor.  I believe
11 the only other issue is that there is briefing as to
12 whether or not the case can proceed on a nationwide
13 basis, but with that -- that was discussed at the
14 conference, and so with -- that is the only clarifying
15 point, that that is what we understood.
16             THE COURT:  Right.  And you've submitted
17 additional authority that Judge Lungstrum is presently
18 considering, at least that's my understanding.
19             MS. O'CONNOR:  That's right, Your Honor.
20             THE COURT:  But, I mean, as a practical
21 matter, counsel, it seems to me that -- and maybe this
22 was bound up in the motion in the first place, but I
23 just want to make sure we're all on the same page here.
24 I mean, it seems to me whether this case is certified on
25 class claims or not, everybody, including Judge Sipkins,

1  Judge Lungstrum, and both sides are going to have their
2  hands very full trying, at least by my count, five
3  individual cases perhaps all in the middle to the latter
4  part of 2017.  Would you agree, Mr. Downing?
5          MR. DOWNING:  Yes, Your Honor.  And I did --
6  and I think where you may be going, the issue we were
7  trying to preserve is that if for some reason the trial
8  in June of next year is not a class trial and it's one
9  of the individual bellwether trials, we have some
10 additional named plaintiffs that are Kansas residents in
11 the master complaint who we wanted to be able to
12 consider at least for a potential bellwether trial
13 before Judge Lungstrum.
14         And so that's what we were trying to accomplish
15 here is preserve the option that if the class trial does
16 not go, we could promptly submit individual damage
17 reports from Mr. Frye and be in a position, should
18 Judge Lungstrum determine that, to have one of the named
19 plaintiffs in the master complaint also be considered as
20 a bellwether trial plaintiff because they've gone
21 through all the discovery just like the bellwether --
22 the individual bellwether plaintiffs have.
23         THE COURT:  What do you think about that,
24 Ms. O'Connor?
25         MS. O'CONNOR:  Your Honor, I know I

1  understand that the concept Mr. Downing just described
2  in terms of they're potentially identifying another case
3  in place of the June identified bellwether has been
4  raised, but those discussions had not progressed in
5  terms of whether that was going to be feasible or agreed
6  to.  I think the parties had planned to meet and confer
7  further on that, and so I think that's just a concept at
8  this point.
9          But putting that to the side, I think the rest of
10 the structure and the status quo in terms of what is
11 planned for June is consistent with our understanding
12 and it would be up to the parties to navigate the
13 proposal Mr. Downing just described.
14             THE COURT:  Mr. Downing, I mean, I can
15 understand why you might want to keep your options open,
16 but tell me a little bit more about why another
17 plaintiff who was named in the master class action
18 complaint would be a better or different bellwether
19 trial plaintiff than the Harshberger plaintiff who's
20 been presently designated by the parties jointly.
21             MR. DOWNING:  Judge, we're not suggesting
22 that they would be better, but we are suggesting that
23 the court might want to consider trying more than one
24 Kansas individual bellwether plaintiff in the same
25 trial.  We did that in the *Rice* litigation and we found

1  that it was workable and manageable to do that.  So we
2  would like the court to at least be able to consider the
3  option of whether trying more than one Kansas bellwether
4  plaintiff in an individual bellwether trial is something
5  the court thinks would be efficient and appropriate.
6              THE COURT:  I guess by which point or which
7  date, Mr. Downing, do you think it would be necessary to
8  know which plaintiff or plaintiffs, at least in the
9  Kansas litigation, would be going forward for purposes
10 of trial?
11             MR. DOWNING:  Your Honor, I certainly cannot
12 predict what the Tenth Circuit -- the timing of the
13 Tenth Circuit's ruling would be.  But what we had
14 discussed with Syngenta what would be to promptly --
15 after that ruling if, for example, the Tenth Circuit
16 decides to grant the Rule 23 application, that the
17 parties would promptly meet and confer and propose a
18 schedule to the court on getting the -- any additional
19 bellwether plaintiffs that we think it would be
20 appropriate to provide the court an option for to try in
21 the initial bellwether trials, to get those damage
22 reports out as soon as possible right after the
23 Rule 23(f) ruling.
24          And then provide that option of the parties -- as
25 Ms. O'Connor said, the parties have not agreed that the

1  court should consider additional bellwether plaintiff
2  options.  And that's something we were going to meet and
3  confer about promptly after the ruling on the Rule 23(f)
4  motion.
5          But I realize that leaves some indefinite time
6  period there.  So if the court is concerned about that,
7  we certainly would be willing to set an outside date
8  certain upon which we would serve individual damage
9  reports even if the Tenth Circuit did not rule very
10 quickly on the Rule 26 -- Rule 23 application.
11              THE COURT:  Mr. Downing, given the deadlines
12 that are set out in Judge Lungstrum's order relative to
13 the August -- excuse me, the October 4 status
14 conference, what do you think would be the appropriate
15 outside deadline for the submission of the plaintiffs'
16 individual damage reports?
17              MR. DOWNING:  Your Honor, we have not
18 discussed that with Syngenta.  My personal view is
19 sometime within the next three or four weeks would be an
20 appropriate outside deadline.  If we don't have a ruling
21 from the Tenth Circuit by then, we would -- we certainly
22 would have no problem going forward and producing
23 individual damage reports for any individual bellwether
24 trial plaintiffs that we would want to propose the court
25 consider.

1            THE COURT:  I mean, the reason I asked is --
2    and it sounds like that might still work, is at least as
3    I'm reading Scheduling Order 3 that was filed on August
4    1st and then Judge Lungstrum's October 4 status
5    conference order, we have summary judgment and *Daubert*
6    motions due in these cases February 6 of next year.
7    Does that square with your notes, Mr. Downing?
8            MR. DOWNING:  I don't have that order in
9    front of me, judge, but that sounds in the range right
10   where I -- I remember it being.
11           THE COURT:  And we would have I think the
12   parties' proposed pretrial order due January 10 leading
13   up to the final pretrial conferences on January 31.  So,
14   I mean, to allow time for Syngenta to counter designate
15   and for any rebuttal experts by the plaintiff
16   thereafter, three to four weeks may be cutting it kind
17   of tight, don't you think?
18           MR. DOWNING:  Well, I understand the concern
19   and we could prepare individual damage expert reports
20   before that.  One of the concerns that we discussed -- I
21   discussed with Ms. O'Connor, is filing an individual
22   damage report for over 30-plus plaintiffs and then them
23   having to prepare and depose that expert, Mr. Frye, on
24   many plaintiffs who would never be relevant to the
25   individual bellwether trials that would occur in Kansas

1  and whether it would be a waste of resources to go ahead
2  and do that.  But that's part of what we were going to
3  meet and confer about upon the ruling.
4       But bottom line is, Your Honor, if you think
5  three to four weeks is too long, we could get an
6  individual report out in the next couple weeks.
7  Whatever Your Honor says, we'll do.
8            THE COURT:  Well, let me ask you this,
9  Mr. Downing, is there any reason the parties couldn't
10 have, as relates to this issue, a meet and confer
11 presently?  In other words, the parameters, which would
12 be assuming that the Tenth Circuit reverses or stays on
13 class certification, which plaintiffs would you want to
14 go forward with, is there any reason we couldn't get
15 that ball rolling presently?  Granted it might be moot.
16           MR. DOWNING:  No.  If I understand, Your
17 Honor, correctly, you would like us to consider meeting
18 and conferring on the hypothetical situation that the
19 Tenth Circuit would grant a Rule 23 application, and I
20 don't see any problem from our perspective in having
21 that meet and confer within the next day or so.
22           THE COURT:  Ms. O'Connor, is there any
23 reason Syngenta wouldn't be prepared to do likewise?
24           MS. O'CONNOR:  No, Your Honor.  And given
25 the discussions of the timing of the deadlines and the

1  relationships of the June trial date, I think it would
2  be beneficial to both sides to get that figured out on
3  the front end.  Because while we do -- you know, we were
4  interested and willing to work with plaintiff in terms
5  of avoiding the broad base report on 30-some plaintiffs
6  that may not be necessary at least in the near term.
7  Certainly to the extent that one or more of those were
8  identified for a report, you know, theoretically tying
9  to the June -- to the June trial date, we would want to
10 make sure that sufficient time is built in on the back
11 side of that for Syngenta to be able to issue its
12 responsive report, take deposition of the plaintiffs'
13 expert, et cetera, again tying to the deadlines that are
14 already in place for that pretrial process.
15             THE COURT:  Okay.  Well, I do think it makes
16 sense to get that ball rolling.  I grant you it may be
17 moot if the Tenth Circuit affirms in respects what
18 Judge Lungstrum has done.  But I am concerned about the
19 slippage of time and whether we're going to still have
20 these cases in a posture to have the draft pretrial
21 orders take into account all the expert discovery on
22 these bellwether cases that might be indicated.
23          Counsel, what I'm going to do then I think is
24 with -- as relates to the present joint motion, is to
25 deny it without prejudice to being refiled after you

1  have this meet and confer.  And not only for the
2  purposes of the record on appeal if this should ever
3  become germane but also for Judge Lungstrum's benefit
4  when you refile the motion after this additional meet
5  and confer on the -- the additional plaintiffs, if you
6  would flesh out more precisely the rationale on what's
7  bound up in this I think it would be helpful.  So if you
8  would get that done.
9       I'd ask that the motion be refiled by Thursday of
10 this week, which I would think would give you enough
11 time to do the meet and confer.  But if that's going to
12 jam people or prevent a realistic and practical and
13 meaningful meet and confer, please let me know.
14          MR. DOWNING:  I think that's doable on our
15 end, Your Honor.
16          THE COURT:  Ms. O'Connor, how about you?
17          MS. O'CONNOR:  Yes, Your Honor, we'll be
18 available to meet and confer promptly on this.
19          THE COURT:  Great.  Okay.  Counsel, I do
20 appreciate your efforts to work through this.  I know
21 it's difficult but just I'm sure you all got the message
22 with Judge Lungstrum that we're going to be -- we want
23 to be in a posture to try multiple cases in the middle
24 part of next year and I think getting on this sooner
25 than later is necessary to preserve that -- that option.

1       Mr. Downing, is there anything else that you
2   think we need to take up today?
3           MR. DOWNING:  Not from our perspective, Your
4   Honor, and thank you for your thoughtful consideration
5   of this.
6           THE COURT:  No problem.
7       Ms. O'Connor, anything else that Syngenta wishes
8   to address today?
9           MS. O'CONNOR:  No, Your Honor, nothing from
10  us today and we also thank you for your thoughts on this
11  and we'll be meeting and conferring and get back to you
12  on this.  Thank you.
13          THE COURT:  All right.  Thank you all, we're
14  adjourned.
15          (Proceedings adjourned.)
16
17                  CERTIFICATE
18      I certify that the foregoing is a correct
19  transcript from the record of proceedings in the
20  above-entitled matter.
21      DATE:  October 31, 2016
22
23          /s/Kimberly R. Greiner
            KIMBERLY R. GREINER, CSR, RMR, CRR
            United States Court Reporter
24
25