1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
2

3    In Re:

4    Syngenta AG MIR 162        Case No. 14-md-2591-JWL-JPO
     Corn Litigation
5
                                Kansas City, Kansas
6                               Date:  12/2/2016
     ........................
7
                     TRANSCRIPT OF STATUS HEARING
8
                                BEFORE
9
                    HONORABLE JOHN W. LUNGSTRUM
10        SENIOR UNITED STATES DISTRICT COURT JUDGE

11
     APPEARANCES FOR THE PLAINTIFFS:
12
     William B. Chaney          Don M. Downing
13   Gray Reed & McGraw         Gray, Ritter & Graham, P.C.
     1601 Elm Street            701 Market Street
14   Suite 4600                 Suite 800
     Houston, TX 75201          St. Louis, MO 63101
15
     Patrick J. Stueve          Scott A. Powell
16   Rachel Schwartz            Hare Wynn Newell & Newton
     Bradley T. Wilders         2025 Third Avenue
17   Stueve Siegel              Suite 800
        Hanson, LLP             Birmingham, AL 35203
18   460 Nichols Road
     Suite 200
19   Kansas City, MO 64112

20   APPEARING FOR SYNGENTA DEFENDANTS:

21   Edwin John U               Thomas P. Schult
     Ragan Naresh               Jennifer B. Wieland
22   Kirkland & Ellis           Berkowitz Oliver Williams
     655 15th Street, NW          Shaw & Eisenbrandt, LLP
23   Suite 1200                 2600 Grand Boulevard
     Washington, D.C. 20005     Suite 1200
24                              Kansas City, MO 64108

25

```
 1                   (Court called to order.)

 2              JUDGE LUNGSTRUM:  First of all, let me

 3    apologize.  I have a cold and so I sound a little bit

 4    croaky this morning, and I do apologize for that.

 5         I also want to remind everyone that we do have

 6    phone lines.  I don't know whether we've attracted much

 7    of an audience today or not, but just in case, please be

 8    sure and speak into the microphones.

 9         We are here today in Case No. 14-MD-2591, In re:

10    Syngenta AG MIR 162, Corn Litigation.  Will the parties

11    please state their appearances beginning with counsel --

12    plaintiffs' co-lead counsel.

13              MR. DOWNING:  Don Downing for the

14    plaintiffs, Your Honor.

15              MR. STUEVE:  Patrick Stueve here on behalf

16    of plaintiffs.  Good morning.

17              MR. POWELL:  Scott Powell for plaintiffs.

18              MR. CHANEY:  William Chaney for the

19    plaintiffs, Your Honor.

20              JUDGE LUNGSTRUM:  Thank you and welcome to

21    all of you.

22         And for Syngenta.

23              MR. U:  Good morning, Your Honors.  Edwin U

24    for Syngenta.

25              MR. NARESH:  Good morning.  Ragan Naresh,
```

1   Syngenta.

2            MS. WIELAND:  Jennifer Wieland, Syngenta.

3            MR. SCHULT:  Tom Schult for Syngenta.

4            JUDGE LUNGSTRUM:  Thanks and welcome to all

5   of you as well.

6        I appreciate you're making yourselves available

7   on relatively short notice for this particular

8   conference.  I thought that the issues that were pending

9   at this time really would be dealt with most effectively

10  by getting us together and talking about some of the

11  ramifications and so forth.  So that's why I wanted to

12  have this conference.

13       In the agenda that I put out for this conference,

14  in Item No. 2, the first substantive item, I indicated

15  that I wanted to talk about any unresolved matters

16  concerning the class notice.  I don't know that there

17  are any.  I see actually that there are -- that there

18  may be but I didn't have anything in mind at the time.

19  I simply wanted to make sure that we tied up any loose

20  ends about the notice.

21       Mr. Downing?

22            MR. DOWNING:  Yes, Your Honor.  We just saw

23  the court granted the motion that we filed yesterday,

24  the unopposed motion.  So, as far as we're concerned,

25  there are no unresolved issues regarding the class

 1   notice.

 2                 JUDGE LUNGSTRUM:  Actually, what I granted

 3   was the motion to file under seal.

 4                 MR. DOWNING:  Oh, I apologize.

 5                 JUDGE LUNGSTRUM:  I'm going to address the

 6   other later but, you know, that's -- that's fine.

 7        What I -- what I was most interested in, in that

 8   respect, was whether we needed any more direction to the

 9   administrator.  If I had anything in mind at all, is

10   whether we needed any more direction to the

11   administrator than what we gave in our memorandum and

12   order.  I gave that fairly short shrift, just sort of

13   lifting from the plaintiffs' motion at the end, and I

14   thought, well, you know, there may be some things here

15   that ought to be spelled out more that nobody really

16   called to my attention because those weren't a matter of

17   controversy.

18                 MR. DOWNING:  Your Honor, we've -- we've

19   been in discussion obviously with the administer --

20                 JUDGE LUNGSTRUM:  I can't hear you, I'm

21   sorry.

22                 MR. DOWNING:  We have been in --

23                 JUDGE LUNGSTRUM:  And you may stay seated;

24   it will be easier for everybody.

25                 MR. DOWNING:  We have been in discussions

1   with the administrator and no such issues have arisen so

2   far.  But obviously if things happen between now and the

3   time that notice actually is going out, we will approach

4   Syngenta and Your Honor with any of those.

5              MR. U:  So, Your Honor, we have a couple of

6   housekeeping points on that, if I may.

7              JUDGE LUNGSTRUM:  Sure, please go ahead.

8              MR. U:  So --

9              JUDGE LUNGSTRUM:  And you may -- both sides

10   please remain -- I -- if you're more comfortable rising,

11   do so, but, if so, come up to the lectern so that you're

12   speaking --

13              MR. U:  Happy to do it seated, Your Honor.

14        So, Your Honor, as the plaintiffs speak with the

15   administrator, we would like the opportunity to review

16   what the administrator prepares.

17        Here's an example that comes up in class actions.

18   If an administrator creates a class notice website that

19   looks as though it's a company website when it's not the

20   company's website, we have a say in that.  And so things

21   like that are issues that I'm sure the two sides would

22   work out if we get a chance to review it in advance.

23        And I mention this in part because of something

24   that happened in the way that the class notice came out,

25   Your Honor.  And I mention this purely for housekeeping

1    and that's this:  We were shown a version of the

2    proposed class notice from the MDL leadership.  We told

3    them that with some changes they accepted we were fine

4    with it, while leaving to them to work out their

5    disputes with the other plaintiffs' factions.  And we

6    were a little surprised because later then we were not

7    apprised by the plaintiffs that the version they

8    brokered with the special master had other changes,

9    including to the definition of the exclusions, to which

10   we were not apprised.  The first time we heard about it,

11   in terms of the notice, was in the court's November 23rd

12   ruling on class notice and when the plaintiffs told us

13   that they were thinking about filing a motion to amend

14   the class definition at some point.  And so, again, I

15   think it's just a process matter that we can work out

16   going forward but I wanted to note that because it was a

17   surprise to us.

18               JUDGE LUNGSTRUM:  Sure.

19          Mr. Downing, any difficulties with working with

20   Mr. U on the, for example, the website?

21               MR. DOWNING:  Not at all, Your Honor, and I

22   think there were miscommunications.  I think the right

23   hand probably thought the left hand was doing something

24   that wasn't going on.  So there's no intention to try to

25   exclude Syngenta from the communications.

7

1          JUDGE LUNGSTRUM:  Well, and I freely admit,

2    and I apologize about this, Mr. U, that it did not even

3    occur to me that the compromised version, so to speak,

4    was not one that you had necessarily said was okay.

5    Yeah, I recognize that you had said the original version

6    Syngenta had no objections, and it didn't even cross my

7    mind to ask you again and I apologize.  I should have

8    thought of that, if nobody else.

9          MR. U:  No need, Your Honor.  Again, it's

10   just a housekeeping thing that we wanted to mention.

11         JUDGE LUNGSTRUM:  Okay.  I think we're

12   probably on the same wavelength there.

13      Now, what do you -- when do you anticipate the

14   notice being able to be sent out?  I realize there are

15   some loose ends here, but what is your thinking in that

16   regard?

17         MR. DOWNING:  Certainly before January 1st

18   and probably before Christmas, Your Honor, we think we

19   can do everything that needs to be done with the

20   administrator and get the notices out.

21         JUDGE LUNGSTRUM:  I think it's -- I think

22   the sooner the better is really important.  It's

23   important in -- for a number of reasons but I think in

24   part because of the compromise opt-out time period which

25   the -- the plaintiffs' factions, as Mr. U describes it,

 1   agreed to is longer than it was originally proposed, I'd

 2   like to get that notice out soon.

 3            MR. DOWNING:  Okay.

 4            JUDGE LUNGSTRUM:  And I think before

 5   Christmas is a better goal than before the end of the

 6   year.  So let's -- let's have that firmly in mind.

 7            MR. DOWNING:  Will do, Your Honor.

 8            JUDGE LUNGSTRUM:  Okay.  Now, I want to deal

 9   with the issue of the Lanham Act class.  And previously

10   I had indicated that I was inclined to try the Lanham

11   Act -- the nationwide Lanham Act class action in

12   conjunction with the trial of the Kansas class action in

13   June of 2016.  The Syngenta defendants timely filed

14   their objection, Document 2606, raising *Lexecon*,

15   personal jurisdiction and unfair prejudice concerns.

16   The producer plaintiffs have responded and both sides

17   have filed replies.  I've considered the submissions and

18   I'm ready to rule.

19            I'm not persuaded by the objections and they are

20   hereby overruled.  I do intend to try the nationwide

21   Lanham Act class claims as a part of the trial of the

22   Kansas class action scheduled for June 5th, 2016,

23   assuming they survive summary judgment.

24            The *Lexecon* objections could easily be dealt with

25   by amending to remove the non-Kansas resident class

1    representatives.  Syngenta seems to recognize this, but

2    any suggestions to the contrary by Syngenta would be

3    without merit.  However, we really don't even need to go

4    that far.  I find that the defendants waived the

5    defenses of lack of personal jurisdiction and improper

6    venue as to plaintiffs who filed suit in federal court

7    in Kansas before the MDL was created or who first filed

8    suit in the District of Kansas in an iteration of a

9    master complaint.  Deadlines were established by the

10   court for filing motions to dismiss under Federal Rule

11   of Civil Procedure 12(b) as to these cases and no

12   exception or carve-out was made concerning motions

13   premised on the lack of personal jurisdiction or

14   improper venue.

15        Federal Rule of Civil Procedure 12(h) provides,

16   in essence, that failure to raise these defenses by a

17   motion under Rule 12 when such a motion is otherwise

18   made waives those defenses.  When the defendants filed

19   their motions to dismiss, they did not raise lack of

20   personal jurisdiction or improper venue as to the

21   plaintiffs named in the master complaint who had either

22   filed in this court before the MDL was created or who

23   first filed by means of the master complaint.  Thus,

24   Syngenta waived those defenses against those plaintiffs.

25        Moreover, in response to the second amended

1   master complaint, the defendants filed only a motion

2   under Rule 12(f) to strike expanded class allegations,

3   omitting any assertion of a defense of lack of personal

4   jurisdiction or improper venue.  Accordingly, those

5   defenses were waived as to any plaintiffs who first

6   filed their cases in the District of Kansas by means of

7   that second amended master complaint.

8          Nothing in the court's order of March 10th, 2015,

9   Document No. 287, or its memorandum and order of May

10  17th, 2016, Document 1620, is to the contrary.  While

11  the March order, Document 287, specifically provides

12  that the order itself does not constitute a ruling on

13  appropriate venue, it also does not excuse defendants

14  from raising venue, or personal jurisdiction, in the

15  motion to dismiss they filed thereafter.

16         Moreover, the holding of the May ruling,

17  Document 1620, the court's memorandum and order

18  dismissing for lack of personal jurisdiction certain

19  cases filed in this district in November of 2015,

20  applied only to defendants' non-waiver in those later

21  filed individual cases by not having raised

22  jurisdictional or venue defenses in motions filed

23  against consolidated complaints months before the

24  November cases were filed.  But because I was acutely

25  aware of Syngenta's desire to preserve its *Lexecon*

1  rights to have cases transferred into the MDL return to

2  their original districts, I also wanted to clarify that

3  this order would also apply to individual cases which

4  were transferred in.

5       The M&O clearly stated at page 15, "No provision

6  in the order," referring to Document 287, "however,

7  stated or even suggested that Syngenta would waive, in

8  the individual cases, any objections to personal

9  jurisdiction or venue not raised in a motion addressed

10 to a consolidated complaint."  It is that which the

11 court meant to confirm, the effect on individual cases

12 transferred into the MDL or filed after the dismissal

13 motion, by stating that Document 287 would not cause

14 Syngenta to waive procedural defenses unrelated to the

15 merits by not raising them in a motion to dismiss a

16 consolidated complaint.  That memorandum and order

17 simply did not apply to cases first filed in the

18 District of Kansas before the rounds of motions to

19 dismiss.

20      The fact of the matter is that the record is

21 clear that Syngenta made a strategic choice not to

22 challenge personal jurisdiction and venue when

23 defendants filed their motions to dismiss and to strike

24 aimed at the master complaints.  Nowhere, in their

25 submissions filed in support of their motions concerning

1    personal jurisdiction arising out of the November 2015

2    filed complaints, did Syngenta contend that anything in

3    Document 287 misled them or caused them not to include

4    personal jurisdiction or venue attacks in their earlier

5    motions.  Indeed in a reply filed February 26th, 2016,

6    Document 1620, Syngenta stated at page 16, "But the mere

7    fact that similar legal arguments about jurisdiction

8    about other plaintiffs in other cases could have been

9    raised in June can in no way mean that a decision not to

10   raise those arguments waives due process rights in a

11   subsequent case brought by different plaintiffs."

12        On page 17 of that submission Syngenta drove the

13   point home, "A decision whether to contest personal

14   jurisdiction of a given case necessarily involves

15   determinations about the importance of the

16   jurisdictional issue given the particular posture of the

17   litigation.  By not contesting personal jurisdiction in

18   the set of cases that have been filed as of June 19th,

19   2015, the Syngenta defendants in no way abandoned their

20   ability to assert their due process rights when

21   different plaintiffs brought claims in different

22   circumstances presenting different implications for the

23   litigation," specifically referring to things arising in

24   the middle of the bellwether process.  Syngenta's

25   decision not to contest personal jurisdiction as to that

1    set of cases was, as I have found, a knowing waiver of

2    its ability to raise that defense later.

3          I also reject Syngenta's unfair prejudice

4    argument.  As plaintiffs point out, the argument would

5    apply equally to individual cases which contain both

6    Lanham Act and negligence claims.  It is, in fact,

7    commonplace to try claims arising out of the same

8    nucleus of facts together even if some evidence is

9    relevant only to some claims but not others.  There is

10   no difference for class actions.  I have done so in them

11   in the past, for example, in the Universal Service Fund

12   MDL.

13         Of course, plaintiffs argued that the

14   misrepresentation evidence is relevant to their

15   negligence claims, but I will reserve ruling on that

16   question until closer to trial.  But even if I were to

17   find that it is not relevant, I would admit it if

18   otherwise admissible for the limited purpose of

19   consideration of the Lanham Act claims and would give an

20   appropriate limiting instruction.  That would be

21   adequate to protect Syngenta against any unfair

22   prejudice.

23         Thus, any of the plaintiffs who fall into the

24   categories of Kansas residents, or plaintiffs who filed

25   their individual cases in the District of Kansas before

1    the MDL was created, or plaintiffs who first filed their

2    cases in the District of Kansas by means of an iteration

3    of a master complaint would all be available as class

4    representatives for the Kansas Lanham Act trial.

5         Now, I would like the parties to meet and confer

6    and report back to the court by December 9th, 2016 as to

7    which plaintiffs then should be the class

8    representatives for the nationwide Lanham Act trial

9    consistent with this ruling and to propose whatever

10   mechanics may be required to effect that by means of

11   amendment or otherwise.

12        Late yesterday afternoon, as Mr. Downing

13   observed, producer plaintiffs filed an unopposed motion

14   to amend and to modify the, in essence -- in essence,

15   remove certain Minnesota plaintiffs and a corrected

16   version, those are Documents 2718 and 2720, along those

17   same lines dealing with the nationwide Lanham Act class.

18   I can grant those motions now and use those as the

19   starting point for your discussions if there is no

20   objections.  Do I hear any objections?

21        MR. NARESH:  Your Honor, the only thing to

22   bookmark is that we have ongoing objection to the class

23   certification as reflected by the 23 --

24        JUDGE LUNGSTRUM:  Certainly but you have no

25   objection to the -- at least the motion styled itself as

 1   being unopposed to modify the class definition; correct?

 2          MR. NARESH:  Correct, on the merits of that

 3   specific motion just wanted to --

 4          JUDGE LUNGSTRUM:  Very well.  So the -- both

 5   the original motion and the corrective motion are

 6   granted -- hereby granted.  So that should be your

 7   starting point then for discussions.  And I'm happy to

 8   tentatively schedule a follow-up status conference by

 9   telephone to resolve any issues that you all may have

10   about the Lanham Act plaintiffs.

11          I would also recognize that this ruling may also

12   have implications for the place of trial in the other

13   state class actions.  And I want the parties to meet and

14   confer on that topic and report back by December 9th,

15   2016 as to what your positions are consistent with this

16   ruling.

17          Now, so what I've left you with is some things to

18   get back to me about a week from today, both about the

19   named plaintiffs for the Kansas -- pardon me, the

20   nationwide Lanham Act claim to be tried in Kansas.  That

21   should be mechanics, I assume.  That should be a matter

22   of working things through and hopefully not having any

23   disagreements, as I say again, applying my ruling,

24   whether one agrees with it or not.

25          The second part is a little more open-ended

1   because that issue was not directly brought to the court

2   but has ramifications from the court's ruling.  So there

3   there may be a little less harmony.

4         Pardon me.  I should have brought some lozenges

5   or something.  Fortunately, I'm going to stop talking so

6   that will help me.

7         All right.  Are there any questions about my

8   ruling or what I've asked you to do?  Counsel for the

9   plaintiffs.

10              MR. DOWNING:  Not from our side, Your Honor.

11              JUDGE LUNGSTRUM:  For Syngenta?

12              MR. NARESH:  Your Honor, there are probably

13  a few things that we need to add to the meet and confer

14  with -- with the plaintiffs like, for example, there may

15  be plaintiffs, in light of Your Honor's ruling, have not

16  been the subject of discovery that need to go through

17  discovery from whom we haven't received fact sheets, et

18  cetera, depositions.

19        I will also need to discuss with them issues

20  related to multiple trials with kind of this set of

21  facts -- arising out of this same set of facts and how

22  that would affect Syngenta's rights.

23              JUDGE LUNGSTRUM:  Do you think it would be

24  helpful to go ahead today and tentatively schedule a

25  follow-up status conference by phone or in person?

1          MR. NARESH:  I think that we probably ought

2    to meet and confer and then decide whether or not it's

3    necessary.  There may be areas where we can reach

4    agreement.  There may be areas where we can't.  If Your

5    Honor would prefer to have one on the books, we're

6    certainly not opposed to it.

7          JUDGE LUNGSTRUM:  Well, my -- I can make my

8    schedule flexible fairly easily compared to you all who

9    have to make travel arrangements and so forth.  So my

10   thinking was, if we put something on the calendar, we

11   could always get rid of it.  But if we have it on the

12   calendar, for your planning purposes, it might be

13   helpful.

14         MR. DOWNING:  Makes sense for us.

15         JUDGE LUNGSTRUM:  Would -- would the 15th of

16   December be a reasonable time?

17         MR. DOWNING:  A moment, Your Honor.  I think

18   it would be fine for us for a telephone conference, Your

19   Honor.

20         MR. NARESH:  Your Honor, if we could do the

21   16th or the 14th.

22         JUDGE LUNGSTRUM:  16th I could do it.  Yes,

23   I could do it on the 16th.  And would telephone work?

24         MR. NARESH:  Yes, Your Honor.

25         MR. U:  Yes, Your Honor.

14-md-2591 In Re: Syngenta     12.2.16                          18

1              JUDGE LUNGSTRUM:  So how about 9:30 on the

2      16th?

3              MR. DOWNING:  Yes.  Yes.

4              JUDGE LUNGSTRUM:  Now, I'm due to preside

5      over a naturalization at 10:30.  Nothing should take

6      more than an hour, I would hope.  If it does, we'll

7      simply recess the call until the afternoon, but we'll

8      start up at 9:30.  That's our time, of course.

9          Okay.  Let me move then to the next numbered item

10     on the agenda which is the matter of, in the event that

11     we cannot proceed with a class action, we're then trying

12     individual cases.  I indicated earlier that I would want

13     to try individual Kansas cases in -- beginning in

14     September.  And the parties made a submission that

15     indicated you'd talked about this a little bit had some

16     ideas about which cases might go and so forth.  And then

17     the issue that the parties had a little more difficulty

18     with was whether or not there should be consolidated

19     trials of plaintiffs in Kansas cases.

20          Well, my inclination would be, if we can find

21     similarly situated plaintiffs, ones that wouldn't sort

22     of skew things somehow, in terms of how the trial might

23     go, I would look favorably on consolidating.  It just

24     seems to me the fewer number of trials, fewer number of

25     days juries have to spend, the fewer number of days

1    lawyers and clients have to deal with this the better as

2    long as it doesn't unfairly tip the scales somehow in

3    the course of the trial.

4         So what I would ask you to do is to -- and

5    there's not great urgency on this, in terms of the time

6    frame for getting back next week, but I'd like you to

7    take a look then at those Kansas cases and see whether

8    there are logical cases that might be ripe for

9    consolidation.  And I suspect there probably are because

10   it only seems to me that the individual issues in these

11   cases are very limited.

12        And I think trying individual issues of one

13   unrelated group of farmers and another together would

14   not pose great obstacles as long as you don't have a

15   situation in which those individual issues would somehow

16   just dwarf that other guy's case somehow.  For -- and I

17   don't even know what that is, like the size of -- the

18   size of the production of one being greatly in excess to

19   the other, maybe that would affect things, or I don't

20   know what it is, but some farmer who's a particularly

21   appealing plaintiff and somebody who's not.  I don't

22   know.

23        I could think of a lot of ways that could be

24   proper.  But I'd like you all to think about that with

25   Rule 1 firmly in mind about how we might proceed.  But

1    I'm not prepared to rule today on anything specific

2    about that.  Any questions?

3              MR. STUEVE:  Judge, Pat Stueve here.  One of

4    the issues that we -- that were raised in the

5    submissions is the possibility, if the court were going

6    to allow potentially consolidation, expanding the

7    bellwether Kansas plaintiffs through additional

8    depositions.  For example, Syngenta identified some

9    Kansas cases --

10             JUDGE LUNGSTRUM:  Well, let me -- let me

11   stop you right here.  As to June, if we go forward with

12   bellwether rather than class, we're going to go with the

13   bellwether that's already identified unless the parties

14   agree to the contrary.  If the parties agree, then I --

15   then I've got no problem.

16             MR. STUEVE:  Right.

17             JUDGE LUNGSTRUM:  But otherwise we're going

18   to go forward with the bellwether process.  The only

19   reason I want to proceed with the Kansas cases while the

20   bellwether process is already going on is that I can

21   because I would have the ability to try those cases.

22   And I really can't see any virtue in waiting to try

23   those cases because I suspect that when the cases are

24   remanded to their original jurisdictions they're not

25   just going to get those babies on trial schedules in a

 1   very quick order and I just see no reason to sit around

 2   and wait.  So I'm going -- I'm going to try Kansas cases

 3   but I don't want to tinker with the bellwether cases

 4   themselves.  Okay.

 5            MR. U:  Your Honor, on the Syngenta side of

 6   the house, we recognize the court isn't ruling on the

 7   consolidation question.  We do think that it's

 8   appropriate that, if the plaintiffs are proposing

 9   consolidation, they ought to actually submit a motion

10   that identifies those who are the subject of the

11   consolidation request so that we can address the issue

12   concretely rather than briefing it in the abstract.

13            JUDGE LUNGSTRUM:  Yeah.  Listen, I -- first

14   of all, I haven't ruled anything on the consolidation.

15   All I've said is I'm open to that.  I think it's a good

16   idea if we can find the right pairings, but I have not

17   ruled anything.

18        So it's -- it's an open issue but it's one -- I

19   wanted to let you know where I was coming from because

20   -- because if my view were, like the bellwether trial

21   firmly set, that, no, I don't want to do that, might as

22   well tell you now and let you know.  But that isn't my

23   view.  I agree with you that in the end, to make the

24   record perfectly clear, unless there's some agreement

25   arrived at, the parties just sitting there visiting

1    about it, it ought to be a formal process.

2         But the starting point, I would think, is for you

3    to visit about it because it may be that it's easier to

4    come to some resolution or it may not be.  And if it's

5    easy, then we don't need to have a bunch of pleadings

6    filed.  And if it's not, well, my job is to referee

7    disputes and you present them to me formally.

8         And I think you're right that -- Mr. U, that the

9    plaintiffs should file a motion to consolidate in

10   this -- in that environment.

11              MR. U:  Yes, Your Honor.  And then in the

12   same vain, and what Mr. Stueve mentioned, even with

13   respect to September Kansas trials, there would be a

14   question between the two sides as to if class

15   certification is reversed by the Tenth Circuit, which is

16   the premise of this discussion --

17              JUDGE LUNGSTRUM:  Right.

18              MR. U:  -- there would be a discussion

19   between the two sides as to plaintiffs' suggestion that

20   the previous class representatives could then be folded

21   in into individual Kansas pool.

22        And, again, just to preview the issues for the

23   court, there would be questions we'd have as to why

24   those folks jump into the line or why they become part

25   of the plaintiffs' ability to stack the deck, so to

1    speak, with folks of their choosing rather than in some

2    alternating process.  Those are the kinds of things

3    we'll address down the road.

4                 JUDGE LUNGSTRUM:  No, yes, good, and I'm

5    happy to talk about that a little bit here.  Because I

6    -- I actually believe that if -- if there -- if there is

7    not a class action and if, in fact, bellwethers are

8    going to play some role in causing the parties to

9    evaluate the case and arrive at a settlement, in fact,

10   the better result is to have trials in courts other than

11   ours, which is one reason I really haven't really cared

12   that Syngenta doesn't want to waive its *Lexecon* rights

13   because I think theoretically that's a better process.

14   Because if I'm sitting there on one side or the other

15   and I get results out of one judge in one jurisdiction,

16   that may cause me to wonder whether that's just somehow

17   anomalous based upon that judge in that jurisdiction.

18   So I'm really fine with this whole notion of the

19   bellwether cases floating out.

20                On the other hand, I don't view the Kansas cases

21   as -- once we get past that original bellwether, as

22   being a part of the bellwether process so much.  I view

23   that as my hat on as a Kansas trial judge wanting to

24   process the claims of plaintiffs -- Kansas plaintiffs,

25   and I see no reason not to do that.

 1          Now, I'm flexible on what the order is.  If the

 2     parties think, yeah, it might help us in the overall

 3     scheme of things if we try this one ahead of that one,

 4     so and so, we can work that out and we can deal with

 5     that.  But I don't have quite the same view of that as I

 6     do the bellwether -- the preexisting bellwether process

 7     itself.  I don't know if I'm getting across that

 8     distinction or not.

 9               MR. U:  You are, Your Honor, and that's

10     helpful to calibrate our thoughts about the issue.

11          I mean, so, for example, again as part of this

12     discussion for down the road, you know, the *Bayer-Rice*

13     cases actually started with individual trials and it was

14     only after a number of individual tests, so to speak,

15     that there was consolidation.

16          The Minnesota case before Judge Sipkins is

17     similarly starting with an individual producer and an

18     individual non-producer before there's going to be a

19     combination of two over our objection.  And so again

20     these are the kinds of issues for which we appreciate

21     the court musing, recognizing that you're not ruling.

22               JUDGE LUNGSTRUM:  Yeah, thank you, because

23     that is -- that is -- and I'm totally open to just sit

24     down and visit about it as we get to a situation where

25     we need a more concrete ruling.

1           MR. DOWNING:  Your Honor, I just -- I want

2    to make sure the record's clear.  Each one of the *Rice*

3    bellwether trials had more than one plaintiff in them.

4    From the beginning it started that way, so I wanted to

5    make sure the record was clear on that.

6           And I think we understand what Your Honor is

7    saying that it considers the first -- the June trial, if

8    it's a bellwether trial, to be the bellwether, and then

9    after that we will have, assuming, as -- as the premise

10   of this discussion is there's no class, then we would

11   have then three Kansas class reps who would be through

12   the full discovery process available to try their cases

13   individually in Kansas.  We would have, I believe,

14   four --

15           MR. STUEVE:  Well, no, four class reps,

16   three individual --

17           MR. DOWNING:  Four class reps, assuming no

18   class, and then three additional bellwether plaintiffs

19   from Kansas who have gone through the discovery process.

20   So that would be, in our view, I think, in terms of the

21   trials in the fall, it would be a good pool to pick

22   from.  And depending on how many plaintiffs in each

23   trial, there may well be a need, as Mr. Stueve

24   suggested, for additional plaintiffs to go through

25   discovery at some point.  So that's all subject to our

1    discussion.

2           JUDGE LUNGSTRUM:  And I guess the question I

3    would have for all of you is when do you think we need

4    to actually make a decision about that?  I'm running

5    through my mind such things as milestone points as the

6    final pretrial conference.  It doesn't seem to me that

7    we necessarily need to have made this decision by then,

8    that's the end of January as I recall, or some time in

9    January -- end of January I believe.  But that would be

10   a wonderful time if we could have that issue resolved by

11   then and be able to fold it into the trial order.  We

12   don't necessarily have to because it's still a long time

13   until September and dispositive motions will not have

14   been resolved.  Do you think that getting it somehow

15   resolved by the time of the final pretrial conference

16   though would be a good idea?

17          MR. DOWNING:  Your Honor, it would be.  And

18   another milestone might be when the Tenth Circuit rules

19   on the Rule 23(f) petition.

20          JUDGE LUNGSTRUM:  Well, right, and I -- of

21   course, who knows how long that's going to last -- going

22   to be.  I mean, I -- you know, they march to their own

23   drum and that's perfectly fine.  So I don't know how

24   long they're going to take.

25          MR. DOWNING:  I think -- I do think that if

1   by -- I think our pretrial conference is on --

2            JUDGE LUNGSTRUM:  Let's put it this way, I

3   don't want to wait on -- on the Circuit because it may

4   well be they take six months and then say, well, no

5   class action.  I don't want to have wasted our time in

6   the meanwhile, so...

7            MR. DOWNING:  I think our pretrial

8   conference is on January 30th.

9            JUDGE LUNGSTRUM:  Yeah.

10           MR. DOWNING:  And so I think we would be

11  perfectly fine if by then having -- it would probably be

12  very helpful for us to have a -- at least a penciled in

13  trial date in September and then we could work -- the

14  parties could work backward on the schedule getting

15  whatever cases ready for those trials and how many trial

16  dates the court would have available on its docket to

17  try more than one trial if that is possible.

18           JUDGE LUNGSTRUM:  What's your thought about,

19  first of all, just -- just confining it to the issue of

20  trying to get things ironed out by the time of the final

21  pretrial conference?

22           MR. U:  So, Your Honor, our difficulty would

23  be if that means that the plaintiffs filed a

24  consolidation motion that we then have to respond to it

25  and they reply, in order to resolve that by the time of

1    the pretrial conference, in part because we're faced

2    with, candidly, our merits expert reports due on

3    September 22nd and then the expert depositions and the

4    like.

5           But I think the concept of what Mr. Downing

6    noted, which is the parties should certainly confer

7    actively over the course of December and January, to try

8    to figure out what the areas of agreement or

9    disagreement are makes sense.  We could identify those

10   to the court at the end of January, the previously

11   scheduled hearing, and then go from there.

12          Second point, just to make the record clear, we

13   do not agree necessarily with Mr. Downing that it's just

14   the four class reps and the three bellwether plaintiffs.

15   Because if we're talking again about no class action and

16   we're talking about the Kansas plaintiffs, so to speak,

17   there are others we identified -- and this is on page 6

18   out of 6 of Document 2700-3 -- who are also in that

19   category.  They have not yet been subjected to

20   discovery.  And if we're trying to figure out who's in

21   the mix, they potentially ought to be in the mix.

22              JUDGE LUNGSTRUM:  Well, honestly, the way I

23   would look at it as I -- again, this is not -- I'm not

24   ruling on anything.  This is entirely just me letting

25   you know what I'm thinking as I sit here today.  Based

```
 1    upon my thought that those trials would not be

 2    bellwether-ish, I would want to take the trial ready

 3    cases in whatever logical order or order in which they

 4    were filed and move forward on them before the cases

 5    that weren't trial ready.

 6           So I would be receptive to the notion that if a

 7    certain set of plaintiffs were trial ready by virtue of

 8    discovery, whether they were class reps or however else

 9    one wants to describe it, I'd be very amenable to trying

10    their cases when they're ready.  And I don't see any

11    magic, again the way I look at it, of whether we try a

12    case that Syngenta thinks is a good case or the

13    plaintiffs think is a good case first because I'm not

14    really trying it for that purpose.  I'm trying it for

15    who's got a case ready to try in the District of Kansas

16    come September.  So that's my thinking about all of

17    that.

18           Now, I agree with you that the consolidation

19    issue is -- is a slightly different matter.  But as to

20    who goes first and when, in the end, if you all can't

21    agree, I'm just going to tell you.  And I'm going to

22    tell you based upon the criteria I just applied:  Is it

23    ready for trial and where was the filing in comparison

24    to somebody else's case.  And I'm not going to try to

25    weigh any other aspects of it because that's just not
```

14-md-2591 In Re: Syngenta    12.2.16                    30

1    how I see it.

2             MR. U:  Yes, Your Honor.  And so one of the

3    things we would discuss with the plaintiffs is that for

4    those who are not trial ready, so to speak, that's 9-10

5    months from now, and so if it's a matter of getting a

6    particular plaintiff's documents and a deposition,

7    that's something for which the parties potentially ought

8    to be able to do the work.

9             JUDGE LUNGSTRUM:  One would think.

10            MR. U:  So that's -- that's the kind of

11   thing we'd like to discuss with plaintiffs.

12            JUDGE LUNGSTRUM:  There are -- there are

13   lots of lawyers here looking for things to do and so

14   have at it as far as I'm concerned.  And any -- any

15   difficulties you have with the actual scheduling,

16   Judge O'Hara will be here to help you get it done.

17            MR. U:  Right.  And again just for context,

18   this total list of active Kansas plaintiffs who filed in

19   the District of Kansas amounts to 14 people.  We're not

20   talking about hundreds and hundreds.

21            JUDGE LUNGSTRUM:  Yeah.

22            MR. U:  So...

23            JUDGE LUNGSTRUM:  Yeah, no, I -- it's --

24   it's a doable group.  I mean, we'll see where it goes.

25   Okay.  Anything else on that particular issue?  Okay.

1          Now, I put on, as the agenda Item No. 5,

2     discussing any discovery scheduling issues that you

3     might race to the court by November 30.  And that rather

4     weird language was just based upon an e-mail that I

5     received from the parties indicating that you were

6     discussing some matters and that you'd let me know by

7     November 30 if you had anything to be resolved.

8          I didn't receive anything indicating you do have

9     anything to be resolved.  I also understand that issues

10    involving Syngenta and Cargill were worked out.  So I'm

11    unaware of any issues that fall under that category.

12    But if the parties are aware of any, please let me know.

13               MR. STUEVE:  None, Your Honor, from the

14    plaintiffs.

15               MR. NARESH:  Yes, Your Honor, the Cargill

16    issue was -- was resolved.  Yesterday the -- we had had

17    an issue with regard to some admonishments given to one

18    of the expert witnesses, Dr. Carter, during his

19    deposition about whether he should answer certain

20    questions subject to an order of the court.  We were

21    able to work that out with the plaintiffs in their

22    producing -- reproducing Dr. Carter for a deposition.

23    So that seems to be resolved at this point.  If it's not

24    resolved, we will bring it to Your Honor's attention and

25    Judge O'Hara's attention.

```
 1          But the other, I think, small housekeeping issue,
 2    Your Honor, Judge O'Hara, you may recall, we had a
 3    discussion about Dr. Frye, or Mr. Frye, and whether his
 4    expert report should be deferred.  We had some briefing
 5    related to that.  And we ultimately agreed with
 6    Mr. Downing on a date for Mr. Frye's deposition and a
 7    rebuttal report.  I think we probably need to file a
 8    consent motion to that effect because it is --
 9    technically the dates are a little bit different than
10    the schedule for -- for expert discovery.  But it won't
11    affect any of the summary judgment or *Daubert* deadlines.
12    So we'll get a consent -- we'll work out a consent
13    motion with Mr. Downing and get that on file as well.
14              MR. DOWNING:  Correct.  Won't affect summary
15    judgment or *Daubert* or anything about the pretrial
16    order, won't affect any of those.
17              JUDGE LUNGSTRUM:  I'm sorry what?
18              MR. DOWNING:  It won't affect summary
19    judgment or *Daubert* motions or anything related to the
20    pretrial.  So we've got it worked out.  We just need to
21    advise the court.
22              JUDGE LUNGSTRUM:  Excellent.  Thank you.
23          All right.  Then the final, the catchall category
24    at the end, anything else that you all have thought of
25    in the meantime that we ought to talk about today?
```

1          MR. STUEVE:   Judge, Pat Stueve.   We thought

2     it would be helpful just to make sure that Judge O'Hara

3     and you were aware of some of the remaining discovery

4     that still needs to be completed.   We have subpoenaed

5     Gavilon as one of the third parties.   They've been

6     producing documents.   I think they're getting close to

7     completing that.   We will then be working with Syngenta

8     and coordinated counsel to determine what depositions

9     would be needed.

10          Similarly with Bunge, we subpoenaed documents

11     from them.   They're still producing.   But the hope is

12     that they're getting close to being done.   And so we

13     would be meeting and conferring with them as long as --

14     as well as coordinated counsel and Syngenta to set

15     depositions for Bunge.

16          There are other third parties; CHS, American

17     Soybean Association and Louis Dreyfus, that there is

18     additional ongoing discovery.   So I wanted to make sure

19     that the court was aware we don't have any issue with

20     respect to those but it is still ongoing and we hope to

21     bring that to the close as soon as possible.   But I want

22     to make sure the court -- both courts were aware of

23     that.

24          Judge O'Hara is aware of the privilege log.

25     We've been reporting to you on that and that's an

 1   ongoing process.  I think our next report is due on

 2   January 6th on that.

 3        And then the other issue related to kind of

 4   ongoing discovery is the business records qualification

 5   process where we are working with Syngenta consistent

 6   with the court's order back in March.  And obviously if

 7   it ultimately turns out that we need additional

 8   discovery as contemplated by that order, we'll obviously

 9   notify the court of that as well.

10              JUDGE LUNGSTRUM:  All right.  Excellent.

11              MR. NARESH:  Yes, Your Honor, and --

12              JUDGE LUNGSTRUM:  Judge O'Hara, do you have

13   any --

14              JUDGE O'HARA:  Well, that's all fine.  One

15   thing I want to make sure --

16              JUDGE LUNGSTRUM:  Jim, would you just come

17   up and use the microphone here, if you would please.

18              JUDGE O'HARA:  Mr. Stueve, the discovery

19   that you outlined from the non-parties, would the

20   conduct of that in any way impact on the framing of the

21   pretrial order that's due January 10?

22              MR. STUEVE:  No.  I think -- I think the

23   principal area that it's impacting is obviously the

24   preliminary witness and exhibit list.  And we've been

25   working with Syngenta and the idea would be that, when

1    we ultimately report to the court on -- on that, that we

2    would have some carve-outs related to any third-party

3    discovery that has not yet been completed.  But from the

4    plaintiffs' perspective, we do not believe it is going

5    to impact our ability to complete and submit a pretrial

6    order that would be satisfactory to the court.

7              JUDGE O'HARA:  Mr. U and Mr. Naresh, do you

8    agree with Mr. Stueve on that point?

9              MR. NARESH:  Yeah, I think that's generally

10   consistent with our understanding.  I think there are

11   some -- just as there are some ongoing discussions on

12   the Syngenta side, privilege log and what not, there are

13   also some ongoing discussions with the plaintiffs about

14   some of their discovery responses.

15        And we agree with the general summary of the

16   third parties.  There are some of these third-party

17   issues and both sides have been given subpoenas but

18   don't really expect those to impact the pretrial timing.

19   The issue is the supplementation of the disclosures

20   where there may be that carve-out.

21             JUDGE O'HARA:  One housekeeping matter,

22   there has been discussion I think Mr. Downing indicated

23   that the pretrial was on January 30.  Just to make sure

24   everyone is here on the right day, I believe it's

25   January 31st.

1                MR. DOWNING:  Okay.  I apologize, I didn't

2     have my calendar in front of me.

3                JUDGE O'HARA:  That's all.

4                JUDGE LUNGSTRUM:  31st at 9:00 a.m.,

5     according to my calendar.  Is that right, Jim?

6                JUDGE O'HARA:  Yes.

7                JUDGE LUNGSTRUM:  You were right.

8           However, about something else, Mr. Downing.

9     Ms. Scheurer passed up to me I should clear up the

10    record that she inadvertently granted the wrong motion

11    this morning.  So when you looked at it, you saw that

12    motion that you thought had been granted was granted

13    when I actually asked her to grant a different motion,

14    that is the motion to file under seal.

15          In Ms. Scheurer's defense, of course she was

16    shuttling back and forth from the courtroom and she

17    didn't necessarily need to try to get that done before

18    we started.  But because she is a type-super-A

19    personality, she was carrying the entire world on her

20    shoulders and did that.  But my direction to her

21    probably wasn't clear enough to guide her right, so I'll

22    take the -- I'll take the hit on that.

23          All right.  Anything else from Syngenta side of

24    the things?

25                MR. U:  No, Your Honor.  Thank you very

1    much.

2              JUDGE LUNGSTRUM:  All right.  Well, thank

3    you all for your appearances and I've got that telephone

4    status conference on my calendar.  It probably won't

5    hurt to do it almost regardless.  I mean, you know, if

6    you got anything you want to talk about, that's great,

7    keep in touch kind of thing.  But if not, obviously I

8    can find other things to do with my time.

9         So thank you again for your appearances and we'll

10   talk to you soon.  We're out -- we're in recess.

11              (Proceedings adjourned.)

12

13

14                      CERTIFICATE

15        I certify that the foregoing is a correct

16   transcript from the record of proceedings in the

17   above-entitled matter.

18      DATE:  December 5, 2016

19

20                 /s/Kimberly R. Greiner
                   KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
21                 United States Court Reporter

22

23

24

25