IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE SYNGENTA AG MIR 162 CORN LITIGATION, | ) | MDL No: 2591 |
| (This Document Relates to All Cases) | ) | Case No. 14-md-2591-JWL |

**DISCOVERY ORDER**

Non-Party Monsanto Company ("Monsanto"), who has been granted leave to intervene in this case for the purpose of protecting its interests related to a subpoena plaintiffs served on J. Thomas Carrato,[1] has filed a motion to quash (or modify) the subpoena pursuant to Fed. R. Civ. P. 45(d)(3) (ECF No. 2834). Specifically, Monsanto seeks to quash the subpoena insofar as compliance with its command would require Mr. Carrato to produce privileged and/or confidential documents that came into Mr. Carrato's possession in the course of his work as an in-house attorney and, later, consultant for Monsanto.[2] As discussed below, the motion must be denied because it has been filed in the wrong court. However, Monsanto may be entitled to some protection under Fed. R. Civ. P. 26(c)(1), the standards of which are set forth herein.

[1]ECF No. 2819. Mr. Carrato was designated by Syngenta as an expert.

[2]The motion also cursorily mentions preventing Mr. Carrato from "disclos[ing] via testimony, Monsanto's privileged or confidential information," but makes no argument in this regard. In any event, the court has already set forth a procedure by which the court will rule on Monsanto's objections to Mr. Carrato's testimony as the court presides over the deposition of Mr. Carrato on January 28–29, 2017. *See* ECF No. 2819.

## I. Quashing the Subpoena

As recognized by Monsanto in the motion, Rule 45(d)(3) directs that, "the court *for the district where compliance is required*," upon motion, must quash a subpoena requiring disclosure of privileged information and may quash a subpoena requiring disclosure of a trade secret or other confidential research, development, or commercial information.[3] Here, the subpoena served on Mr. Carrato required compliance in San Francisco, California.[4] Because compliance is not required in the District of Kansas, this court cannot quash the subpoena or otherwise provide the relief requested by Monsanto. Although it is true, as Monsanto points out, that a motion to quash a subpoena may, in exceptional circumstances, be transferred to the court from which the subpoena was issued, only "the court where compliance is required" may determine whether such circumstances exists and make the transfer.[5] Because this court is without power to quash the subpoena or transfer the motion to itself, the motion is denied without prejudice to refiling in the Northern District of California. Should Monsanto re-file its motion in that court, and further, should that court transfer the motion to this court, the following briefing deadlines will apply: any response to the motion shall be filed **within two days** of the entry of the order of transfer; any reply shall be filed **within one day** of the response.

---

[3]Rule 45(d)(3)(A)&(B).

[4]ECF No. 2834-2.

[5]Fed. R. Civ. P. 45(f).

## II. Rule 26 Standards

Given that the production of Mr. Carrato's documents—at least those having come into his possession from his work with Monsanto—is in flux, the court would not expect Mr. Carrato to produce any such documents at his deposition scheduled for this weekend. But, should that situation arise, Monsanto may seek protection under Rule 26(c)(1). In response to Monsanto's earlier motion seeking a Rule 26(c)(1) protective order (ECF No. 2813), the court granted counsel for Monsanto leave to attend the deposition of Mr. Carrato and to make objections and/or advise Mr. Carrato not to answer certain questions based on Monsanto's assertions of confidentiality or privilege (ECF No. 2819). The court set forth a process whereby the undersigned would preside over the deposition and rule on any objections asserted by Monsanto. As agreed to by Monsanto and the parties, should Monsanto object to certain testimony by Mr. Carrato as potentially revealing Monsanto's confidential and/or privileged information, the undersigned will hear testimony *in camera* from Monsanto's corporate representative addressing the nature of the Monsanto information at issue. Following the *in camera* audience, the parties will be given an opportunity to provide the court additional information they believe to be inconsistent with the objection. This process can easily be used to cover Monsanto's objections to document production as well.

In ruling on objections asserted under this process, the undersigned will apply the following standards:

### A. <u>Trade Secrets/Commercial Information</u>

It is well established that "[t]here is no absolute privilege for trade secrets or similar confidential information."[6] A court, however, may issue a protective order when necessary to limit the disclosure of trade secrets and other confidential research, development and commercial information under Rule 26(c)(1)(G). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."[7] Upon a showing of good cause, the court "may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."[8] The party[9] seeking a protective order has the burden to show good cause for it.[10]

The party seeking a protective order must first establish that the information sought is indeed a trade secret or other confidential research, development, or commercial

---

[6]*Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979); *see also MGP Ingredients, Inv. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007).

[7]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[8]Fed. R. Civ. P. 26(c)(1)(G).

[9]The term "party" is used loosely. In *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981), the Tenth Circuit applied the term and the Rule 26(c) legal standards to a non-party witness who opposed disclosing trade secrets.

[10]*Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

information.[11] The party must then show that the disclosure of this information might be harmful.[12] To do this, the movant must demonstrate that disclosure would "result in a clearly defined and very serious injury,"[13] such as showing the competitive harm that would befall it by virtue of the disclosure of the trade secrets or other highly-confidential proprietary information.[14] To establish such an injury under the good-cause standard, the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[15]

If these requirements are met, the burden then shifts to the party seeking disclosure to establish that such disclosure is relevant and necessary to the action.[16] "The district court must balance the need for the trade secrets against the claim of injury resulting from

---

[11]*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (citing *Centurion Indus.,* 665 F.2d at 325).

[12]*Id.*

[13]*Rajala v. McGuire Woods, LLP*, No. 08-2638-CM-DJW, 2010 WL 4683979, at *11 (D. Kan. Nov. 12, 2010); *Flint Hills Sci., LLC v. Davidchack*, No. 00-2334-KHV-DJW, 2001 WL 1718276, at *9 (D. Kan. Nov. 14, 2001) ("In determining whether good cause exists to issue a protective order . . . the initial inquiry is whether the moving party has shown that disclosure of the information will result in a clearly defined and very serious injury." (internal quotations and citations omitted)).

[14]*Layne Christensen*, 271 F.R.D. at 249.

[15]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also Rajala*, 2010 WL 4683879, at *11 ("To establish such an injury, the moving party must make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.").

[16]*In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190.

disclosure."[17] "If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing."[18] "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion."[19]

Two case examples applying these standards may be useful to the parties. First, the Tenth Circuit applied these standards to a non-party in *Centurion Industries*, a patent infringement action. There, non-party witness Cybernetic was served a Rule 30(b)(6) deposition subpoena. Cybernetic filed a Rule 45(d) objection, and the Circuit considered the scope of examination permitted under Rule 26, including the protective-order provisions of Rule 26(c). Performing the balancing test, the Circuit held that the information was relevant because Centurion, the party seeking discovery, demonstrated that the information was "needed to provide a basis for Centurion's experts to adequately form an opinion of

---

[17]*Centurion Indus.*, 665 F.2d at 325.

[18]*Id.* at 325–26 (internal citations omitted).

[19]*Id.* at 326.

infringement and to rebut any assertions of noninfringement in the action."[20] The Circuit concluded that the need for the information outweighed possible injury to Cybernetic and that the protective order entered by the district court would guard against improper disclosure of the secrets. The protective order included the following provisions:

> "The attendance at the . . . deposition shall be limited to the deponent, court reporter, counsel for plaintiffs, and counsel for Cybernetic Systems, Inc.
>
> "Disclosure of the information obtained shall be limited to United States Federal Courts, plaintiffs' counsel and, (sic) plaintiffs' experts employed to testify in the action, provided Cybernetic Systems, Inc. be notified in writing by plaintiffs' counsel at least twenty (20) days prior to such disclosure of the names and addresses of such experts, and the date and place of such disclosure.
>
> "The transcript of the deposition shall remain sealed.
>
> "Cybernetic Systems, Inc. shall be notified by plaintiffs in writing at least twenty (20) days prior to plaintiffs (sic) tender of any of the materials obtained pursuant to this Order, into evidence, other than in closed session of a United States Federal Court."[21]

In a second case, *Western Resources Inc. v. Union Pacific R. Co.*, this court denied an intervenor's motion for a protective order to protect its confidential commercial information. The court held, "Intervenors have failed to demonstrate that disclosure pursuant to the terms of the protective order currently in place between the parties will result in a

---

[20] *Id.*

[21] *Id.* at n.7.

'clearly defined and very serious injury.'"[22] Under the protective order in place, any producing party could designate discovery "highly confidential," such that the information would only be disclosed to outside counsel and thereby eliminate any claimed harm based on competitive advantage.[23]

Monsanto's motions—the instant motion to quash and the earlier motion for a protective order—also suggest that Monsanto may assert attorney-client privilege and/or work-product protection over documents and information. Should Monsanto object on one of those bases, the court will apply the standards that follow.

B. Attorney-Client Privilege

Fed. R. Civ. P. 26(b)(1) limits discovery to "nonprivileged matters." Because this litigation arises out of a federal statutory scheme, federal law governs the application of the attorney-client privilege.[24] Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection

---

[22] *Western Resources, Inc. v. Union Pacific R. Co.*, No. 00-2043, 2001 WL 1718370, at *5 (D. Kan. Sept. 12, 2001).

[23] *Id* at *6.

[24] Fed. R. Evid. 501; *New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009).

is waived.[25] Although this description suggests that the privilege only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[26] The party asserting the privilege bears the burden of establishing that the elements are met.[27]

Caselaw in this district provides a wealth of guidance as to what is—and is not—protected by the attorney-client privilege. First, it is important to note that "personal, confidential, [or] private information" is not necessarily privileged.[28] "As this Court has held repeatedly, 'confidential' does not equate to 'nondiscoverable' or privileged."[29] Second, it

---

[25]*New Jersey v. Sprint Corp.*, 258 F.R.D. at 425.

[26]*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (rejecting narrower view that only communications that reveal confidences from the client are protected); *see also id.* (holding that the Tenth Circuit's view "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice"); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[27]*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001).

[28]*AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[29]*Id.* (quoting *Williams v. Evogen, Inc.*, No. 12–2620, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013)).

is clear that "[u]nderlying facts are not protected by the privilege."[30] "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.'"[31] Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[32] Thus, for example, this court has held that the subject matters of an in-house attorney's discussions with company executives are not privileged.[33]

Finally, it bears mentioning that under the eighth element, absence of waiver, the party claiming the privilege must demonstrate that "the substance of an otherwise privileged communication" is not revealed to a third party.[34] The burden of showing that the privilege

---

[30]*Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[31]*Id.* at *6 (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)).

[32]*Id.* (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

[33]*See, e.g., id.* at *8 (holding that revelation of in-house counsel's discussion with company executives about possible infringement by competitors did not reveal privileged information); *New Jersey v. Sprint Corp.*, 258 F.R.D. at 426–28 (holding that testimony stating that company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

[34]*In re Quest Commc'ns Int'l Inc*., 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

has not been waived remains with the party claiming the privilege.[35] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[36]

C. Work-Product Protection

Like the attorney-client privilege, federal law governs the applicability of the work-product doctrine in this case.[37] The work product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*,[38] is governed by the uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

For documents to be protected under this doctrine, the party claiming the protection must demonstrate that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by

---

[35] *New Jersey v. Sprint Corp.,* 258 F.R.D. at 426; *Lewis*, 203 F.R.D. at 621.

[36] *In re Quest Commc'ns Int'l Inc*., 450 F.3d at 1186 (quoting *Ryans*, 903 F.2d at 741).

[37] *See Western Res., Inc. v. Union Pacific R.R. Co.*, No. 00-2043, 2002 WL 181494, at *4 n.4 (D. Kan. Jan. 31, 2002) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 139 (D. Kan. 1996)).

[38] 329 U.S. 495, 510–11 (1947).

or for a party or a representative of that party."[39] The purpose of the doctrine is to allow attorneys to prepare for litigation with a "'certain degree of privacy,'" and without undue interference or fear of exploitation of one's work by an adversary.[40] This court has explained that "the doctrine is not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the real and imminent threat of litigation or trial."[41] Finally, applicability of the doctrine "'requires more than a mere possibility of litigation.'"[42]

IT IS SO ORDERED.

Dated January 27, 2017, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[39] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)).

[40] *Id.* at 657 (quoting *Hickman*, 329 U.S. at 510–11).

[41] *Id.*

[42] *AKH Co., Inc.*, 2014 WL 2760860, at *2 (quoting *McNabb v. City of Overland Park*, No. 12–2331, 2014 WL 1152958, at *8 (D. Kan. March 21, 2014)).