# EXHIBIT 2

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF KANSAS

 3

 4   IN RE: SYNGENTA AG        ) Master File No.

 5   MIR162 CORN LITIGATION    ) 2:14-MD-02591-JWL-JPO

 6                             )

 7                             ) MDL No. 2591

 8                    ***CONFIDENTIAL***

 9            VIDEOTAPED EXPERT DEPOSITION OF

10         HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

11      TAKEN ON BEHALF OF PLAINTIFFS AND DEFENDANTS

12

13                    Washington, D.C.

14              Wednesday, February 1, 2017

15                       9:02 a.m.

16

17   Reported by:  Donna A. Peterson

18

19

20

21

22

23

24

25
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              The videotaped Deposition of HONGJUN
 3      ZHANG, Ph.D., ATTORNEY at LAW, taken at the law
 4      offices of:
 5
 6                      KIRKLAND & ELLIS, LLP
 7                      12th Floor
 8                      655 15th Street, N.W.
 9                      Washington, D.C.  20005-5793
10
11
12
13              Pursuant to Notice, before Donna Ann
14      Peterson, Notary Public in and for the District of
15      Columbia.
16
17
18
19
20
21
22
23
24
25
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2                 A P P E A R A N C E S
 3
 4         ON BEHALF OF THE PLAINTIFFS IN THE KANSAS CITY
 5            MDL LITIGATION:
 6                 WILLIAM B. CHANEY, ATTORNEY at LAW
 7                 DREW YORK, ATTORNEY at LAW
 8                 GRAY, REED & McGRAW, P.C.
 9                 Suite 4600
10                 1601 Elm Street
11                 Dallas, Texas  75201
12                 Telephone:  (214) 954-4135
13                 wchaney@grayreed.com
14                 dyork@grayreed.com
15
16
17         ON BEHALF OF DEFENDANT SYNGENTA:
18                 DEVIN A. DeBACKER, ATTORNEY at LAW
19                 PATRICK HANEY, ATTORNEY at LAW
20                 KIRKLAND & ELLIS, LLP
21                 655 15th Street, N.W.
22                 Washington, D.C.  20005-5793
23                 Telephone:  (202) 879-5000
24                 patrick.haney@kirkland.com
25                 devin.debacker@kirkland.com
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2         A P P E A R A N C E S    C O N T I N U E D
 3
 4         ON BEHALF OF PLAINTIFF CARGILL IN LOUISIANA
 5           LITIGATION:
 6                X. KEVIN ZHAO, ATTORNEY at LAW
 7                DAVID J. WALLACE-JACKSON, ATTORNEY at LAW
 8                GREENE ESPEL, PLLP
 9                Suite 2200, 222 South Ninth Street
10                Minneapolis, Minnesota  55402
11                Telephone:  (612) 373-0830
12                kzhao@greeneespel.com
13                dwallace-jackson@greeneespel.com
14
15         ON BEHALF OF THE PLAINTIFFS IN THE MINNESOTA
16           CONSOLIDATED LITIGATION:
17                MIKAL C. WATTS, ATTORNEY at LAW
18                PAIGE N. BOLDT, ATTORNEY at LAW
19                WATTS GUERRA, LLP
20                Suite 100, Building 3
21                4 Dominion Drive
22                San Antonio, Texas  78257
23                Telephone:  (210) 447-0500
24                mcwatts@wattsguerra.com
25                pboldt@wattsguerra.com
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2

 3       A P P E A R A N C E S   C O N T I N U E D

 4

 5     ON BEHALF OF THE PLAINTIFFS IN THE LOUISIANA

 6       LITIGATION:

 7            FRANK J. FAVIA, JR., ATTORNEY at LAW

 8            SIDLEY AUSTIN, LLP

 9            One South Dearborn

10            Chicago, Illinois  60603

11            Telephone:  (312) 853-0326

12            ffavia@sidley.com

13

14     VIDEOGRAPHER:  Steven Jones -

15                 Midwest Litigation Services

16

17   Court Reporter:

18   Donna Peterson

19   In association with Midwest Litigation Services

20   1301 Oak Street

21   Suite B

22   Kansas City, Missouri  64106

23   816.221.1160

24

25
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2                     C O N T E N T S
 3     EXAMINATION OF HONGJUN ZHANG,                    PAGE
 4       Ph.D., ATTORNEY at LAW
 5         Examination by Mr. Chaney               20
 6         Examination by Mr. Watts               183
 7                     E X H I B I T S
 8             (Attached to the transcript.)
 9     EXHIBIT     DESCRIPTION                        PAGE
10     Exhibit 1  Expert Report of Dr. Hongjun Zhang    19
11     Exhibit 2  COFCO Agri - Regional Trading and     37
12                Asset offices web page
13     Exhibit 3  Spreadsheets, CHS0000001-7            74
14     Exhibit 4  Declaration Of William J. Honan       80
15     Exhibit 5  Q16. Is genetically modified (GM)    110
16                technology a force for good?
17                w/certified translation certificate
18     Exhibit 6  "100 Questions and Answers concerning 111
19                Agricultural GMO's," Chinese-language
20                document
21     Exhibit 7  Regulations for Import Safety         124
22                Administration of Agricultural
23                Genetically Modified Organisms,
24                Transgene concerns of authority,
25                Chapters 1-4
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL***  2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2          E X H I B I T S    C O N T I N U E D
 3      EXHIBIT    DESCRIPTION                          PAGE
 4      Exhibit 8  Administrative Measures for Safety    124
 5                 Control in the Import of Agricultural
 6                 GMOs, Chinese-language version of
 7                 Exhibit 7
 8      Exhibit 9  Safety Administration Registration    142
 9                 Form of Agriculture GMO Import, For
10                 Materials for Processing,
11                 Chinese-language version document,
12                 ADM-00136953
13      Exhibit 10 E-mail, Zhe-qianw, 8-22-12,           153
14                 CARGILL000616273-616791
15      Exhibit 11 Photograph, 1335 I Street, N.W.,      185
16                 Washington, District of Columbia,
17                 Oct. 2016, Google Maps
18      Exhibit 12 Map, Washington, D.C., Google Maps    186
19      Exhibit 13 Photograph, 801 17th Street, N.W.,    206
20                 Washington, District of Columbia,
21                 Nov. 2016, Google Maps
22      Exhibit 14 Map, Washington, D.C., Google Maps    207
23      Exhibit 15 Article, Environmental Groups Ask EPA 197
24                 to Uphold Reduced-Risk Policy, Cancel
25                 Older Herbicide, Daily Environment,
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2         E X H I B I T S   C O N T I N U E D
 3     EXHIBIT    DESCRIPTION                           PAGE
 4              No. 40, Thursday, February 28, 2002,
 5     Exhibit 16  202 F.Supp.2d 437, U.S. District      197
 6              Court, M.D. North Carolina, Syngenta
 7              Crop Protection, Inc., v. United
 8              States Environmental Protection
 9              Agency, et al, No. 1:02CV00171,
10              April 11, 2002, Westlaw 2017
11     Exhibit 17 222 F.R.D. 271, U.S. District Court,   198
12              M.D. North Carolina, Syngenta Crop
13              Protection, Inc., v. United States
14              Environmental Protection Agency,
15              et al., No. 1:02 CV 334, July 12,
16              2004, Westlaw 2017
17     Exhibit 18 355 F.Supp.2d 373, U.S. District       198
18              Court, District of Columbia, SRM
19              Chemical LTD., Co., v. Federal
20              Mediation and Conciliation Service,
21              et al., No. CIV.A.04-1419 ESH,
22              Jan. 21, 2005, Westlaw 2017
23     Exhibit 19 2006 WL 6654882, U.S. District Court,  199
24              M.D. North Carolina, Syngenta Crop
25              Protection, Inc., v. United States
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2            E X H I B I T S   C O N T I N U E D
 3     EXHIBIT     DESCRIPTION                          PAGE
 4                 Environmental Protection Agency, etc.,
 5                 et al., No. 1:02CV334, March 30, 2006,
 6                 Westlaw 2017
 7     Exhibit 20 444F.Supp.2d 435, U.S. District Court,  200
 8                 M.D. North Carolina, Syngenta Crop
 9                 Protection, Inc., v. United States
10                 Environmental Protection Agency, etc.,
11                 et al., No. 1:02CV334, Aug. 8, 2006,
12                 Westlaw 2017
13     Exhibit 21 Article, Beveridge & Diamond Sues U.S.  201
14                 For Atrazine Docs, Samuel Howard, Law
15                 360
16     Exhibit 22 2011 WL 3472635, U.S. District Court,   201
17                 M.D. North Carolina, Syngenta Crop
18                 Protection, Inc., v. United States
19                 Environmental Protection Agency, etc.,
20                 et al., No. 1:02CV00334, Aug. 9, 2011
21     Exhibit 23 2015 WL 3660079, U.S. District Court,   202
22                 N.D. California, Steve Ellis, et al.,
23                 v. Jack Housenger, et al., etc.,
24                 N. C-13-1266MMC, Signed 06/12/2015,
25                 Westlaw 2015
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL***  2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2          E X H I B I T S   C O N T I N U E D
 3     EXHIBIT    DESCRIPTION                              PAGE
 4     Exhibit 24 2016 WL7428925 (N.D. Cal.), U.S.          203
 5                District Court, N.D. California, Steve
 6                Ellis, et al., v. Jack Housenger,
 7                et al., etc., No. 3:13-cv-01266-MMC,
 8                June 20, 2016, Westlaw 2016
 9     Exhibit 25 Photograph, 623 15th Street, N.W.,        209
10                Washington, District of Columbia,
11                Oct. 2016, Google Maps
12     Exhibit 26 Map, Washington, D.C., Google Maps        209
13     Exhibit 27 Map, Washington, D.C., Google Maps        210
14     Exhibit 28 Article, China & "RoHS 2" and             219
15                Implications for the electrical and
16                Electronic Products Industry, Hongjun
17                Zhang, Ph.D., Holland & Knight,
18                August 5, 2010
19     Exhibit 29 Article, China Releases Final Version     219
20                of Amended New Chemical Notification
21                Regulations, Hongjun Zhang, Ph.D.,
22                Holland & Knight, February 19, 2010
23     Exhibit 30 Article, Alert to Industry:  China        220
24                Releases Draft of Amended New Chemical
25                Notification Regulations, Hongjun Zhang,
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL***  2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2             E X H I B I T S   C O N T I N U E D
 3     EXHIBIT   DESCRIPTION                            PAGE
 4               Ph.D., Holland & Knight, June 17, 2009
 5     Exhibit 31 Article, China's Proposed Regulation    220
 6               Would Mandate Recall Procedures,
 7               Holland & Knight, Hongjun Zhang, Ph.D.,
 8               May 18, 2009
 9     Exhibit 32 Article, Domain Name Registration in    220
10               China, Hongjun Zhang, Ph.D.,
11               Holland & Knight, June 2008
12     Exhibit 33 Article, Key Developments in the        220
13               China Government Affairs and Regulatory
14               Sectors, Hongjun Zhang, Ph.D.,
15               Holland & Knight, January 2008
16     Exhibit 34 Article, China's Unique Approach to     221
17               Substance Restrictions Affecting the
18               Import, Manufacture, Design and Sale of
19               "Electronic Information Products,"
20               Hongjun Zhang, Ph.D., Second Quarter
21               2006
22     Exhibit 35 Seminar Article, Achieving and          221
23               Maintaining Global RoHS Compliance,
24               Hongjun Zhang, Ph.D., Holland & Knight
25     Exhibit 36 Seminar Article, China RoHS Status:     223
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL***  2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              E X H I B I T S   C O N T I N U E D
 3    EXHIBIT      DESCRIPTION                           PAGE
 4                 Why it is Relevant to the Medical Device
 5                 Industry, Hongjun Zhang, Ph.D.,
 6                 Holland & Knight
 7    Exhibit 37 Article, China's evolving RoHS legal    223
 8                 regime:  The new law goes into effect
 9                 March 1, 2007 (maybe), and could be
10                 even broader than Europe's version
11    Exhibit 38 China's Environment and the Challenge   224
12                 Of Sustainable Development, Kristen A.
13                 Day, Columbia University, 2005
14    Exhibit 39 Journal Article, Draft Rules Would      224
15                 Tighten Waste Controls; Could Establish
16                 Liability for Contamination,
17                 International Environment Reporter,
18                 Vol. 28, No. 2, 1/26/2005
19    Exhibit 40 ALI-ABA Course of Study Materials,      225
20                 International Environmental Law,
21                 Course No. SG056, Richard J. Ferris,
22                 Jr., and Hongjun Zhang, Ph.D.
23    Exhibit 41 Article, China - Law Firms; Accessing   225
24                 and Understanding The Government:  A
25                 Must For Doing Business In China,
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              E X H I B I T S   C O N T I N U E D
 3     EXHIBIT     DESCRIPTION                          PAGE
 4                 Richard Ferris, Jr. and Hongjun Zhang,
 5                 Ph.D., The Metropolitan Corporate
 6                 Counsel, December 2005, Northeast
 7                 Edition
 8     Exhibit 42 Article, Reaching Out To The Rule Of    227
 9                 Law:  China's Continuing Efforts To
10                 Develop An Effective Environmental Law
11                 Regime, 11 Wm. & Mary Bill of Rts.
12                 J. 569, Richard J. Ferris, Jr.,
13                 February 2003
14     Exhibit 43 Article, The Challenges of Reforming    228
15                 an Environmental Legal Culture:
16                 Assessing the Status Quo and Looking
17                 at Post-WTO Admission Challenges for
18                 the People's Republic of China, Richard
19                 J. Ferris, Jr., Hongjun Zhang, Ph.D.,
20                 Georgetown International Environmental
21                 Law Review, 2002, 14 Geo. Int'l Envtl.
22                 L. Rev. 429
23     Exhibit 44 Article, The Development Of The Rule    228
24                 Of Law In China:  Observations On The
25                 Environmental Lawmaking Process,
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL***  2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2                E X H I B I T S   C O N T I N U E D
 3    EXHIBIT     DESCRIPTION                          PAGE
 4                Richard J. Ferris, Jr., Hongjun Zhang,
 5                Ph.D., The Metropolitan Corporate
 6                Counsel, Oct. 2000, Mid-Atlantic
 7                Edition
 8    Exhibit 45 Journal Article, Shaping an            229
 9                Environmental Protection Regime for the
10                New Century:  Environmental Law and
11                Policy in the People's Republic of
12                China1 Zhang Hongjun and Richard J.
13                Ferris Jr., Asian Journal of
14                Environmental Management, Special
15                Issue:  Environmental Law in Asia,
16                Vol. 6, No. 1, May 1998
17    Exhibit 46 Article, The Environmental Regulatory   229
18                Regime of the People's Republic of
19                China:  A Primer Addressing Practical
20                Concerns of Foreign Investors, Hongjun
21                Zhang and Richard J. Ferris, Jr.,
22                27 ELR 102288, May 1997
23    Exhibit 47 "100 Questions Regarding Agricultural   232
24                Genetically Modified Organisms, State
25                Committee for the Safety of
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              E X H I B I T S   C O N T I N U E D
 3   EXHIBIT     DESCRIPTION                          PAGE
 4               Agricultural Transgenic Living things,
 5               China Association for Science and
 6               Technology, Department of Science
 7               Popularization, China Agriculture
 8               Press
 9   Exhibit 48 Chinese language:  Quarantine Law,      233
10               Feed Regulations, GMO Regulations,
11               Import Measures, Regulation
12               Implementation Notification, Attachment
13               3, Agricultural GMO Label Examination
14               and Approval Process, Commodities
15               Law, Feed Import Measures, Customs
16               Regulations, Inspection Measure,
17               Contract Law
18   Exhibit 49 English language:  Quarantine Law,      235
19               Feed Regulations, GMO Regulations,
20               Import Measures, Regulation
21               Implementation Notification, Attachment
22               3, Agricultural GMO Label Examination
23               and Approval Process, Commodities Law,
24               Feed Import Measures, Customs
25               Regulations, Inspection Measure,
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2         E X H I B I T S   C O N T I N U E D
 3   EXHIBIT    DESCRIPTION                          PAGE
 4             Contract Law
 5   Exhibit 50 Chinese language, how to apply for    250
 6             GMO safety certificate, first time
 7             Import, Ministry of Agriculture of the
 8             People's Republic of China
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2  name, but is it Dr. "Jong"?

 3      A.    It's "Zhaung."

 4      Q.    "Zaung."

 5      A.    It's "Zhaung," yeah.

 6      Q.    And you are a native speaker in Mandarin,

 7  is that correct?

 8      A.    That's correct..

 9      Q.    But you are fluent in English?

10      A.    That's correct.

11      Q.    When did you begin learning the English

12  language?

13      A.    I begin to learn my English language from

14  my middle school.

15      Q.    And that was in China?

16      A.    That was in China.

17      Q.    Where in China?

18      A.    In my hometown, where it now is part of

19  China.  The city name is called Bai cheng and the

20  province name is Jilin.

21      Q.    You are a lawyer, is that correct?

22      A.    Yes, I'm a lawyer.

23      Q.    And you are a partner at a law firm by the

24  name of Holland & Knight, is that correct?

25      A.    That's correct.
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    part in the very end.  I -- I'm board of director of
 3    Institute of Industry Product -- Productivity.  That
 4    institute, the organization, is in the process of
 5    being dissolved.
 6           Q.     Have you ever testified as a witness in a
 7    case?
 8           A.     No.
 9           Q.     Have you ever served as an expert witness
10    in a lawsuit?
11           A.     No.
12           Q.     Has your practice of law in the United
13    States required you to attend depositions?
14           A.     Can you repeat what you mean?
15           Q.     You're a lawyer.
16           A.     Yes.
17           Q.     In the United States.
18           A.     Uh-huh.
19           Q.     You're licensed by the bar of the State of
20    New York, is that correct?
21           A.     That's correct.
22           Q.     Not by the bar of the District of
23    Columbia.
24           A.     That's correct.
25           Q.     And during your time as a lawyer in the
```

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2         Q.    Do you know what a pleading is in a
 3     lawsuit?
 4         A.    What's -- pleading?
 5         Q.    Pleading.
 6               Do you know what a pleading is in a
 7     lawsuit?
 8         A.    I don't know.
 9         Q.    Do you know what a complaint is in a
10     lawsuit?
11         A.    Complaint?
12         Q.    Complaint.
13         A.    Complaint.
14         Q.    Do you know what that is?
15         A.    You know, it's some -- some term I do, I
16     do learn in law school, but I'm not litigation
17     lawyer, I cannot give you a concrete definition.
18         Q.    Did you, to your knowledge, did you read
19     any of the complaints, any of the answers, any of the
20     pleadings filed in the Kansas City proceedings in
21     this litigation?
22         A.    No, I did not read any of these.
23         Q.    Did you read any of the petitions,
24     complaints, answers or other pleadings that have been
25     filed in the Minnesota state court proceedings in
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    this litigation?
 3         A.    No, I did not read any of those.
 4         Q.    Are there any documents that after
 5    reviewing your report dated December 22, 2016, that
 6    you need to add or change to this list, Exhibit C?
 7         A.    Sorry, can you repeat your question?
 8         Q.    Are there any documents -- scratch that.
 9               Are there any changes to Exhibit C that
10    you need to note for us today?
11         A.    No, no.
12         Q.    Now, in your report in a number of
13    locations -- and in particular, I direct you to
14    paragraph 22, you used the terms "foreign exporters"
15    or "foreign traders."
16               I need to make certain, are -- do you use
17    those terms interchangeably?  Do they mean the same
18    thing?
19         A.    In the paragraph 22, the first and the
20    second line, right?
21         Q.    Yes.
22         A.    Yeah, in this report, I use these terms
23    interchangeably, yes.
24         Q.    And the two terms that are interchangeable
25    are "foreign exporters" and "foreign traders,"
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   certificate is a precondition that of trader
 3   certificate.
 4   BY MR. CHANEY:
 5        Q.     You did not investigate, in preparation
 6   for this report, whether any specific foreign
 7   exporter violated Chinese law in any manner, did you?
 8        A.     When you say "investigate," what do you --
 9   what do you mean?
10        Q.     Did you look at any facts, documents, did
11   you undertake to analyze whether any specific foreign
12   exporter violated Chinese law in any manner?
13        A.     I review the discovery information listed
14   in the Exhibit C.  That's the only document or
15   research I did in preparing this report.
16        Q.     And you're not offering any opinion in
17   this report that any particular foreign exporter
18   violated Chinese law in any manner, are you?
19        A.     I did not intend to apply any information
20   in my report that relate to a particular case or
21   whatever.  My report is on the legal requirement of
22   Chinese law.
23             MR. CHANEY:  We can take a short break.
24             THE VIDEOGRAPHER:  Going off the record,
25   the time is 1:12 p.m.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   bottom, 33.7?
 3        A.    Oh, 33 -- oh, here, right, 33.7, okay.
 4        Q.    And under 2013, customer amount, 46.2?
 5        A.    Okay.  I found number, yes.
 6        Q.    Got it.
 7              Now, that 33.7 million bushels of U.S.
 8   corn, I'll represent to you that that's more than
 9   850,000 metric tons.
10              Were you aware that CHS accounted for
11   almost 20 percent of the 4.3 million metric tons of
12   U.S. corn exported to China in 2012?
13        A.    Yeah.  Yeah, I have no knowledge regarding
14   the information you just described.
15        Q.    Similarly, based upon those statistics
16   that we just noted, were you aware that CHS accounted
17   for element one-third of the 3.6 million metric tons
18   of U.S. corn exported to China in 2013?
19        A.    I have no knowledge regarding what you
20   just describe.
21        Q.    If any of those bushels of corn that CHS
22   shipped to China in 2012 and '13 failed to disclose
23   the presence of MIR 162, but, in fact, did have MIR
24   162, is it your opinion that CHS would have violated
25   Chinese law?
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              MR. DeBACKER:  Objection, form.
 3              THE WITNESS:  Yeah, so I think we discuss
 4      this a few times already.  CHS, as a foreign exporter
 5      or foreign trader or whatever company as a foreign
 6      trader or foreign exporter, if they export unapproved
 7      GMO trait into China, that CHS or whatever foreign
 8      trader or foreign exporter would be in violation of
 9      Chinese law for exporting unapproved GMO trait
10      contained in the product into China.
11              MR. DeBACKER:  Mr. Chaney, I don't mean to
12      interrupt your questions.  If you want to put your
13      mic on, just to make sure the sound gets picked up.
14              MR. CHANEY:  Videographer, were you able
15      to pick up his testimony?
16              THE VIDEOGRAPHER:  (Nods.)  Yeah.
17              MR. DeBACKER:  Didn't want to have to redo
18      it.
19              MR. CHANEY:  Nor did I.
20              THE WITNESS:  Yeah.
21      BY MR. CHANEY:
22         Q.    Back to the relationship between Holland
23      and Knight, you, your testimony and Syngenta.
24              Did you or someone else at Holland and
25      Knight sign an engagement letter in connection with
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

2  your services as an expert in this litigation?

3       A.   We signed some document.  I am not very

4  sure that is called the engagement letter or

5  something.  This is not a typical client-attorney

6  engagement situation, so I believe my ethical

7  department have some communication that regarding

8  this particular matter.  I do -- I do know there were

9  some discussion and then there were some documents

10  signed.

11       Q.   Do you know what those dis -- those

12  discussions with or involving your ethics department

13  dealt with, what the subject matter was?

14       A.   This is regarding the discussion that this

15  representation, my service on this matter, should not

16  be something that a typical client-attorney

17  relationship.  Would be something, I serve as expert

18  on the matter.

19       Q.   Are you aware that CHS is currently a

20  client of Holland and Knight?

21       A.   I was not aware.  Indeed, I -- you know,

22  I -- we have a conflict system.  We have to check

23  conflict system, in order to know whether a

24  particular company is a client of Holland Knight or

25  not.

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2         Q.    Did you, in -- in the setting up the
 3    initial engagement in this matter, review the
 4    conflicts report or procedures by which conflicts
 5    were checked by Holland and Knight?
 6         A.    Yeah, I would -- we did review the
 7    conflict check.
 8         Q.    Now, I believe in your report, at
 9    paragraph three, if you turn to that, you say that
10    your practice -- I'm going to read this and ask if
11    it's correct:  "My practice includes counseling
12    clients on product import and export, GMO laws,
13    biotechnology and related issues."
14         A.    Yeah, that's correct.  That what I --
15         Q.    And that's correct.
16         A.    That's what I said.
17         Q.    And I gather, based on your testimony,
18    though, that you have never counseled CHS, a client
19    of Holland and Knight, on its export of products to
20    China.
21         A.    Yeah.  I -- I don't know CHS, I never work
22    for them.  I don't know the company at all.
23         Q.    Do you know if anyone else at Holland and
24    Knight advised CHS, between 2011 and '14, regarding
25    Chinese laws regarding exporting of U.S. corn to
```

1  DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
2  expert opinion under Chinese law.
3      Q.    Are you aware that Syngenta in this
4  litigation alleges that foreign exporters such as CHS
5  violated Chinese law?
6      A.    No, I was not aware.
7      Q.    Given that your firm's current and ongoing
8  representation of CHS, are you comfortable in
9  maintaining the opinions that you've provided
10  regarding --
11          MR. DeBACKER:  Object.
12          MR. CHANEY:  -- foreign exporters such as
13  CHS?
14          MR. DeBACKER:  Objection to form.
15          THE WITNESS:  Again, my opinion, it's
16  offered regarding the legal requirement under Chinese
17  law.  I'm not applying such legal requirement to a
18  particular company.
19  BY MR. CHANEY:
20      Q.    But you understand that your opinions
21  could have consequences even upon Holland and
22  Knight's existing client CHS, correct?
23      A.    You know, I -- I -- you know, you
24  mentioned some information regarding CHS.  Again, I
25  cannot confirm the information and I'm, as I

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2           MR. DeBACKER:  Objection, form, calls for
 3      legal conclusion.
 4           THE WITNESS:  You know, I'm not expert of
 5      legal ethics.  Certainly I follow, I strictly follow
 6      the ethic rule of -- of New York bar, but I cannot
 7      judge what you just described as expert of -- of
 8      ethic attorney.
 9      BY MR. CHANEY:
10         Q.    Through your work on this case, have you
11      become aware that China began rejecting shipments of
12      U.S. corn in November 2013, due to the presence of
13      MIR 162?
14         A.    From reading the discovery materials,
15      which I list in the Exhibit C, that is my
16      understanding, China begin to reject certain GMO
17      product from exporting into China.
18         Q.    Let me show you what was marked in an
19      earlier deposition as Exhibit 558, deposition taken
20      on March 9, 2016.  The document bears production
21      number SYNG 355899 and it was marked as Exhibit, as I
22      said, 558.
23           It is an e-mail from Chuck Lee, of
24      Syngenta, to Mr. Berreth, Mr. Morgan, Mr. Pisk,
25      Mr. Pickering and Ms. Hull.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1       DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2            A.    Who they are?
 3            Q.    And you don't know who any of those are,
 4       but I'll direct your attention to the last bullet
 5       point under the heading Overall Discussion.
 6            A.    Last -- last bullet point, okay.
 7            Q.    It says at the end, "Rick Ducic, VP grain
 8       marketing North America, asks if we would compensate
 9       CHS for losses.  Our response was no."
10                 Were you aware of that meeting or that
11       conversation in rendering your opinions today?
12            A.    I was not aware of this conversation at
13       all.  And just one single point here, just -- I just
14       don't have any idea.
15            Q.    And doesn't that point demonstrate that
16       CHS and Syngenta have differing interests on the
17       issues on which you've been asked to opine?
18                 MR. DeBACKER:  Objection, form, calls for
19       a legal conclusion, asked and answered.
20                 THE WITNESS:  Again, from just one single
21       sentence, I have no idea regarding how was the
22       discussion, what the conversation is, what discussion
23       was at all, so I cannot make any judgment.
24       BY MR. CHANEY:
25            Q.    Do these matters regarding Holland and
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   Knight's representation of CHS, its role as a foreign
 3   exporter and the potential application of your
 4   opinions to its conduct as an exporter of corn to
 5   China raise in your mind any need to discuss with
 6   Holland and Knight, your firm Office of General
 7   Counsel or ethics people, whether you should be
 8   rendering these opinions?
 9        A.    This -- your -- you provide very long
10   sentence.  Can you --
11        Q.    Does any of this cause you any concern
12   that you should contact your firm regarding the
13   opinions you're expressing today?
14        A.    You know, as -- as I mentioned, I don't
15   know whether there were -- there were different
16   interests.  You ask me whether there were different
17   interests.  I don't know.  And I -- CHS is first time
18   that a company that I got aware of and, again, I'm
19   not testifying about ethical role, I'm not testifying
20   about a particular foreign company.
21             I attached the Chinese legal requirement
22   that define in my report.  Other than that, I will
23   not testifying anything beyond that what I describe
24   in the report.
25        Q.    You think you should make any inquiries
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   regarding these matters?
 3                MR. DeBACKER:  Objection, form.
 4                THE WITNESS:  I -- I -- I -- I don't know.
 5   Certainly I think I should generally talk with my
 6   ethics people, say I was in a deposition this morning
 7   and a company called CHS was mentioned and the
 8   counsel from Plaintiff side mentioned this company,
 9   ask whether I should make inquiry within Holland
10   Knight.  I would have told my ethics people this
11   conversation and that they, I believe, will make a
12   determination.
13       Q.     Okay.  I'm told that the videotape is
14   about ready to expire, so we'll take a break.  And
15   are you going to make that call during the break?
16       A.     No, no.
17                THE VIDEOGRAPHER:  This ends disk number
18   one.  Going off the video record, the time is now
19   11:16 a.m.
20                (A break was taken.)
21                THE VIDEOGRAPHER:  This begins disk number
22   two.  We are back on the record, the time is now
23   11:38 a.m.
24   BY MR. CHANEY:
25       Q.     Dr. Zhang, who first contacted you
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2          A.    December 10 of 2016.
 3          Q.    So --
 4          A.    But, again, this is not accurate.   I
 5      cannot make sure that is accurate time.   I need to
 6      check record.   Should be around.
 7          Q.    But apparently within a couple of weeks of
 8      your December 22 report?
 9          A.    That should be within, yeah, a couple
10      weeks, maybe two or three weeks.   I cannot make sure
11      the concrete time.
12          Q.    Yeah, and I understand the concrete time.
13      I just want to make certain that we're talking a
14      matter of weeks and not months or years.
15          A.    Yes, weeks, not months or years.
16          Q.    And I just want to make certain, you do
17      not have a -- I think you, when I asked you about the
18      relationship with Syngenta, you said no other current
19      relationship.
20                Have you had any professional or personal
21      relationship with Syngenta historically, you know, in
22      the past?
23          A.    That's correct.   I -- when I work in a
24      previous law firm, I assist a partner of a law firm
25      working on Syngenta matter.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   corn to China?
 3       A.    You know, that is some time ago, about a
 4   month ago.  I cannot recall the concrete language,
 5   but I do recall the general idea that he said that
 6   some GMO trait approval is not required.  I recall
 7   that general idea, and I disagree with that general
 8   idea.
 9            MR. CHANEY:  I'll object as nonresponsive.
10            MR. DeBACKER:  I'll disagree.
11            MR. CHANEY:  I'm going to show you --
12   counsel, may I -- and I only have one copy.  Well,
13   here.  Counsel, here's a copy of Mr. Reed's depo.
14            MR. DeBACKER:  Thank you.
15            MR. CHANEY:  And, counsel, if you don't
16   mind because it is a little cumbersome, do you mind
17   if I approach the witness?
18            MR. DeBACKER:  I don't mind.
19   BY MR. CHANEY:
20       Q.    Dr. Zhang, I'm going to show you a
21   transcript of the deposition of Mr. Reed, taken as a
22   corporate representative of ADM on October 14, 2016,
23   and I'm going to show you testimony on page 163.
24   I'll direct your attention to line seven.
25       A.    Okay, I'm here.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2        Q.     And the question asked of Mr. Reed by
 3    Mr. Naresh was, beginning at line seven:  "Right.
 4    And so my question is, if ADM is bearing the risk of
 5    it being rejected, does ADM do anything special to
 6    that shipment like, for example, test that shipment
 7    for the presence of events that aren't in the
 8    Biosafety Certificate?"
 9            Do you see that question?
10        A.     Yeah, I saw that question.
11        Q.     Okay.  And then Mr. Read answered,
12    beginning at line 13, "So there is no requirement to
13    do any testing for ships.  There is no legal
14    requirement on ADM to do any testing.  It's not a
15    requirement for the Biosafety Certificate to be part
16    of what's in a specific shipment.  So there is no
17    requirement that states that we do this.  This is
18    merely an allocation of risk among the buyer and the
19    seller, should an incident occur."
20            You see that answer?
21        A.     Yeah, I saw that answer.
22        Q.     And did you -- do you recall reviewing
23    that testimony or taking that testimony into
24    consideration in rendering your opinions?
25        A.     Yeah, I do recall I -- I read the
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   paragraphs.
 3        Q.    And when Mr. Reed refers to "biosafety
 4   certificate" -- well, let's see.  Well, Mr. Naresh
 5   referred to "biosafety certificate" in his question.
 6             Do you have an understanding of what the
 7   biosafety certificate is?
 8        A.    When I -- when I read the paragraph, I
 9   have understood that the biosafety certificate refer
10   in this question/answer as the trader certificate
11   that mentioned in my report.
12        Q.    And that's the trader certificate that
13   we've discussed earlier today.
14        A.    That's correct.
15        Q.    Do you agree with Mr. Reed that there is
16   no legal requirement to test for the presence of
17   GMO's in order to obtain a trader certificate?
18        A.    You know, as I mentioned earlier, I --
19   and, also, I believe I would like to show you in my
20   report that in paragraph 37, at page 15, that I
21   disagree what Mr. -- Mr. Reed indicated in this
22   paragraph.
23        Q.    So you believe that testing would be
24   required.
25        A.    I believe that testing is required.
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   need to look, look more thoroughly and then to say,
 3   to determine whether I have expressively make
 4   statement in my report.
 5          But, again, if the paragraph, or the
 6   paragraph you show me, it's my opinion that Mr. Reed
 7   opinion is not correct.  I will be happy to review
 8   the report more thoroughly to say whether there were
 9   any discussion regarding this particular issue.
10        Q.    We'll come back to that.  I don't want to
11   take any time on the record, but I will want to
12   confirm with you before the end of this deposition
13   that nowhere in this report did you express your
14   opinion that testing would be required.  But we'll
15   come back to that.
16        A.    I will be happy to review the -- my report
17   more thoroughly and confirm.
18        Q.    Are you able to point to any specific law
19   or regulation of China that you have cited in your
20   report that expressly requires a foreign exporter to
21   test for the presence of unapproved GM -- genetically
22   modified organisms in order to apply for and obtain a
23   trader certificate?
24        A.    You know, as -- as I mentioned, when I
25   prepared the report, I focus on the issues that I
```

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    believe are the most important, so I put my -- the
 3    three major one in the paragraph 37.  For this
 4    particular point regarding testing for shipment, I
 5    will be happy to review the law more -- more
 6    carefully, more thoroughly, to figure out the
 7    particular provision that make the statement.  But
 8    since when I prepared the report this is not the
 9    may -- the most important three issue I identified,
10    so I cannot, you know, point the law immediately that
11    you have this citation.  This is not a memory test.
12         Q.    Understood.
13               Are you aware of any interpretive guidance
14    cited in your report that states that a foreign
15    exporter must test for the presence of unapproved
16    GM's in order to obtain and apply for a trader's
17    certificate?
18         A.    You mean interpretation documents?
19         Q.    Yeah.  I believe -- well, we'll go back to
20    my question, but let's -- let's get to the term
21    "interpretive guidance."
22               Take a look at paragraph 26 of your
23    report.  The very first line of paragraph 26 says,
24    "The MOA --" that's Ministry of Agriculture, right?
25         A.    That's correct.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              MR. CHANEY:  Correct?
 3              THE WITNESS:  That -- no.  That in Chinese
 4      law require testing of GMO traits contained in the
 5      product.  Put in this way, how would you know a trait
 6      is contained, a GMO trait, is contained in a product
 7      or not without testing?
 8              MR. CHANEY:  Okay.
 9              THE WITNESS:  For me, it is not only a
10      legal requirement, it's also should be common sense.
11      BY MR. CHANEY:
12          Q.    If you would, turn to paragraph 51.  And
13      at the end of paragraph 51, you provide the Mandarin
14      characters and language, as well as your English
15      translation, of a document known as Article 3 of
16      Number 349 Notice of the MOA.
17              Do you see that?
18          A.    Yeah, I saw that.
19          Q.    Can you point to anything in that
20      document, as quoted by you in paragraph 51, that
21      requires testing?
22          A.    For this particular paragraph, they did
23      not talk about testing.  In the one I prepare,
24      paragraph 51, I put the Chinese language here, was
25      not purpose to discuss testing issue.  And the
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    purpose of 51 paragraph when I prepare the report and
 3    still my opinion today, it's on the paragraph 51
 4    itself, which is -- if you want me read, I can read:
 5    "Both foreign GM trait developer and the foreign
 6    exporter seeking to import GMO need to apply for
 7    separate kind of import certificate.  Foreign GMO
 8    trait developer must follow the part agreement of
 9    Article 33 of GMO Regulation and the Article 12 of
10    Import Measures.  When a foreign exporters
11    subsequently need to obtain the trader's certificate,
12    it must provide the following document," that I show
13    in both Chinese and in English.  So again, the
14    paragraph here was not talk about testing
15    requirement.
16              MR. CHANEY:  Let's go off the record one
17    second.
18              THE VIDEOGRAPHER:  Going off the record,
19    the time is 12:03 p.m.
20              (Thereupon, a lunch break was taken at
21    12:03 p.m. until 1:02 p.m., after which the following
22    proceedings were held.)
23              (Mr. Haney re-joined the deposition.)
24              THE VIDEOGRAPHER:  We are back on the
25    video record, the time is now 1:02 p.m.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    fundamental requirement that a foreign trading,
 3    exporter should apply ways.  So I cannot second-guess
 4    why --
 5         Q.    You just don't know, right?
 6         A.    I'm -- I'm -- I'm not the drafter for
 7    either document, so I don't know whether -- yes, I
 8    don't know why they write the document differently.
 9    But one thing I do know that for any document, any
10    requirement provide by any Chinese law, that must be
11    complied with in order to import agriculture GMO
12    product into China.  Violation of any items, it's a
13    violation.
14         Q.    Have you counseled any clients as to how
15    to comply with the requirements to obtain a trader
16    certificate?
17         A.    I counsel client on general GMO regulation
18    of China.  I did not counsel any company particularly
19    in applying or obtaining trader certificate.
20         Q.    What would you advise your current client,
21    CHS, to do in order to ensure that no unapproved GM
22    traits are present in a shipment of U.S. corn that
23    they're exporting to China?
24              MR. DeBACKER:  Objection, form, assumes
25    facts not in evidence.
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2            THE WITNESS:  Mr. Chaney, I think I
 3     mentioned in the beginning, CHS is not a company I
 4     even aware of.  You impose me that is my client.  I
 5     don't think that's fair, and I don't think that's
 6     appropriate.
 7     BY MR. CHANEY:
 8        Q.    They are a client of your firm, right?
 9        A.    I don't know.
10        Q.    Well, if they are a client of your firm,
11     they're a client of yours, right?
12            MR. DeBACKER:  Objection, calls for a
13     legal conclusion.
14            THE WITNESS:  No, this is legal, this is
15     legal ethic issue is not something I want to testify.
16     And CHS, do you represent a client that you don't
17     know, Mr. Chaney?
18     BY MR. CHANEY:
19        Q.    Would you advise any current client, what
20     would you advise any current client to do in order to
21     ensure that no unapproved GM traits are present in a
22     shipment of U.S. corn to China?
23            MR. DeBACKER:  Objection, form.
24            THE WITNESS:  If I -- I represent, I
25     advise a client, I will tell them for any Chinese
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   legal provision, they should comply all ways.  So any
 3   Chinese regulation --
 4              MR. CHANEY:  I'm sorry, say what?  I did
 5   not understand that last point.
 6              THE WITNESS:  If I represent or I advise
 7   any client, I will advise them to comply with all
 8   Chinese legal requirement under all Chinese law.
 9   BY MR. CHANEY:
10       Q.    And you said the Chinese regulations
11   required foreign exporters to list all GM traits,
12   right?
13       A.    Yeah, I said that.  A foreign exporter
14   need to list and get approved for all foreign -- all
15   GMO trait that they contend in the product they
16   export into China.
17       Q.    And you cite Article 13 and 14 in support
18   of that obligation, right?
19              MR. DeBACKER:  Objection, asked and
20   answered.
21              THE WITNESS:  I -- I cite Article 13, 14,
22   and also I believe I asserted -- I asserted the
23   trader certificate issued by MOA.  We can look at --
24   we can look at the -- I can -- we can look at
25   paragraph 35, item B.  I cite, "I agree that the
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

Page 145

```
 1   DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   event is a GMO event, it's a trader's obligation to
 3   fill in the GMO event information into this form.  At
 4   least you can identify, you can prove the event is
 5   not GMO at all.
 6       Q.    I just want to confirm, you did not review
 7   the application process for obtaining a trader's
 8   certificate, correct?
 9           MR. DeBACKER:  Objection, asked and
10   answered.
11           THE WITNESS:  You -- you ask me whether I
12   review the process of obtaining the GO -- GMO trader
13   certificate.  I will say, I -- I do review as general
14   items, for example, the second part of Article 68 of
15   the Q&A document, so I do review this in general
16   terms.  I did not review the technical detail, say
17   what the information -- what event should be
18   constitute as a GMO or what a particular name of a
19   GMO or such detail.
20           I do review the general procedure that
21   provide in the second part of Article 68.  I do
22   review the general requirement which identified in
23   Article 13.  I did review the requirement under item
24   three of MOA document 3 -- 347 -- 349.
25       Q.    And you've never been personally involved
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2   in making an application for a trader's certificate,

 3   correct?

 4      A.     Yeah.  I did not fill trader certificate

 5   by my own.

 6      Q.     What do you mean by your own?

 7      A.     I did not, I did not fill in the form, I

 8   did not submit document, I did not involve any

 9   particular application.

10      Q.     And you've never advised a client on how

11   to go through that process, have you?

12      A.     I -- I advise clients on GMO requirement

13   and the way have a lot of detailed discussion

14   regarding the responsibility of different parties and

15   what's the legal obligation falls in each parties.

16   So the clients would have clear understanding about

17   the legal requirement of Chinese GMO law, so that

18   they can fulfill their legal obligation to comply

19   with Chinese law.

20      Q.     Have you ever specifically advised a

21   foreign exporter regarding the requirements of

22   Article 13?

23      A.     For foreign exporter, no, I did not advise

24   any foreign exporter on Article 13.

25      Q.     Isn't it true that all that you have done
```

Case 2:14-md-02591-JWL   Document 2883-2   Filed 02/07/17   Page 45 of 68

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              MR. DeBACKER:  Objection, asked and
 3    answered.
 4              THE WITNESS:  Yes.  As I mentioned, I do
 5    advise clients on agriculture, on product
 6    import/export issue and also GMO issue, including
 7    import/export of GMO product.
 8    BY MR. CHANEY:
 9        Q.    Just to make clear, your work as a Chinese
10    regulator did not involve agriculture or GMO issues,
11    correct?
12        A.    When I work in the Chinese government as a
13    regulator, I -- as indicated in my résumé, I work
14    on -- I work in the Environmental Protection Agency,
15    and I work on Environmental and Natural Resource
16    Committee of National People's Congress, which is
17    legislature of China.
18              In that capacity, National People's
19    Congress have nine committee, nine committees,
20    Agriculture Committee is one.  The committee I work,
21    the Environmental and Natural Resource Committee, is
22    another one among other committees, as well.  So in
23    my capacity as a regulator, the different committee,
24    when they have laws and the regulations to draft,
25    they call other committees staff member expert to
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   participate in discussion.  So when agricultural
 3   committee organize agricultural-related regulation, I
 4   did attend this meetings and the discussions quite
 5   frequently.
 6        Q.    We'll get into that in a little bit.
 7   Let's go back to your opinion that all GM traits in a
 8   shipment must be listed on a trader's certificate.
 9        A.    That's my statement.
10        Q.    Right.  I'm just focusing you on that.
11              Do you understand that the presence of
12   even one grain of unapproved GMO trait could result
13   in a positive test?
14        A.    What's one grain mean?
15        Q.    One kernel.
16        A.    What that mean?  I still don't understand.
17        Q.    A kernel of corn, it only takes one kernel
18   of corn to generate a positive test, do you
19   understand that?
20        A.    What your question, if I understand if
21   even a small portion of the product, if only small,
22   for -- for example, a corn, like a corn, only a small
23   portion of the corn, of one corn, have the GMO trait,
24   then that can be tested, right, can be test all,
25   right?
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   samples?
 3              MR. DeBACKER:  Objection, asked and
 4   answered.
 5              THE WITNESS:  Yeah, again, I'm not
 6   technical expert.  I don't know how the testing would
 7   be conducted, and I don't know whether in the testing
 8   that whatever will be -- you use the word "destruct."
 9   I don't really understand what's the destruct is.
10   But, again, I want to state that I'm not technical
11   expert, but I do, from legal expert, every, all, any
12   GMO trait contained in a product into China must be
13   approved by the Chinese government.
14   BY MR. CHANEY:
15       Q.   So is it your belief that in counseling a
16   client, a foreign exporter, that that foreign
17   exporter should test all, every portion of the
18   shipment, in order to determine whether it has an
19   unapproved trait?
20       A.   First of all, as I mentioned, I did not
21   represent the foreign traders, number one.  Number
22   two, my advice to client is they need to follow all
23   the GMO laws and to make sure that all, every, any
24   single GMO, GMO event, should be approved by the
25   Chinese government in order to export the product
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2   into China.

 3              How they achieve that is -- it's not my

 4   technical -- it's not my -- my -- it's beyond my --

 5   my expertise.  I don't want to being -- I cannot be a

 6   technical expert.

 7      Q.      And I understand that.

 8              But what you're saying is they need to

 9   make certain that every portion of every shipment

10   does not contain an unapproved GMO trait, right?

11              MR. DeBACKER:  Objection, asked and

12   answered.

13              THE WITNESS:  Yes.  It -- it is a legal

14   obligation of a foreign trader or foreign exporter to

15   make sure every shipment of agriculture product

16   containing GMO -- GMO should be -- they -- they

17   should be get approved.  All the GMO trait need to be

18   approved.

19              MR. CHANEY:  I'm told the tape is about

20   ready to expire, so this is time for another break.

21              THE VIDEOGRAPHER:  This ends disk number

22   two.  Going off the record, the time is now 2:52 p.m.

23              (A break was taken.)

24              (Zhang deposition Exhibit Number 10 was

25   marked for identification and attached to the
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    obtained the GMO event, they apply for the Chinese
 3    government.  As I mentioned a number of time that a
 4    trader certificate is a result, rather than the
 5    trader certificate said legal norm.
 6              MR. CHANEY:  I'll again object to
 7    nonresponsive, but I'll move on.
 8              MR. DeBACKER:  Respectfully disagree.
 9    BY MR. CHANEY:
10        Q.    I just want to make clear, you're not
11    rendering any opinion that any foreign exporter
12    intentionally concealed important facts regarding or
13    relating to the conclusion of a contract or provided
14    any false information, are you?
15        A.    You're -- you have long sentence.  Can you
16    refer to which, which opinion I offer?  I offer
17    all --
18        Q.    I --
19        A.    I offer all my opinion clearly in my
20    report.  I don't -- I did not offer other opinion
21    beyond my report.
22        Q.    And in your -- I just want to make clear,
23    in your report, you do not express an opinion that
24    any foreign exporter intentionally concealed
25    important facts from either an importer or the
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   Chinese government.
 3                 MR. DeBACKER:  Objection, form.
 4                 THE WITNESS:  I still don't -- don't
 5   understand your question.  Your question seems
 6   doesn't really focus anything relate to I relate to
 7   my report.
 8      Q.    If it's beyond your report, I just want
 9   you to confirm it.
10                 You are not rendering any opinion that any
11   specific foreign exporter intentionally concealed
12   facts from either an importer or the Chinese
13   government.
14      A.    So your question is, you want me confirm
15   whether will be a violation of a foreign export to
16   intentionally conceal GMO information to the Chinese
17   government and to the China -- the importer in China,
18   whether that situation will be a violation of Chinese
19   law, is that right?
20      Q.    I'm not asking if it will be a violation.
21                 Have you concluded that any violation did
22   occur?
23      A.    I don't understand your second part.  What
24   did occur?
25      Q.    Are you giving us an opinion that any
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

2      specific exporter --

3          A.      I did not -- again, I did not provide

4      opinion for any specific support -- export.  I

5      provide opinion of Chinese law that any violation,

6      any import or conceal information to the Chinese

7      government will be -- would be a violation of Chinese

8      law.

9          Q.      But you're not giving an opinion that it,

10     in fact, occurred.

11              MR. DOWNING:  Objection, asked and

12     answered.

13              THE WITNESS:  What you mean "occur"?

14     BY MR. CHANEY:

15         Q.      That the violation that you say could

16     occur, you are not expressing an opinion that it did,

17     in fact, occur with regard to any specific

18     transaction, any specific shipment or any specific

19     exporter.

20              MR. DeBACKER:  Objection, form, asked and

21     answered.

22              THE WITNESS:  I -- as I mentioned earlier,

23     my report talk about all -- all situation which as

24     long as they conceal THE information or not report

25     GMO information to importers or to Chinese

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   government, that is a violation, no matter that
 3   happened yet or is happening or will happen.  So as
 4   long as they conceal GMO information to the Chinese
 5   government, that's a violation, so timing is not
 6   relevant.
 7   BY MR. CHANEY:
 8        Q.    And I'm not speaking as to timing.  I just
 9   want to confirm that you are not saying that that, in
10   fact, has occurred.
11        A.    In my report, I can look at more detail.
12   I do not say, recall I talk about any actual event.
13   However, if any event happen, or any event is being
14   happen, is happening, or any event such event will
15   happen, as long as a foreign trader conceal GMO event
16   information to the Chinese government, that is a
17   clear violation of Chinese law.
18        Q.    Directing your attention to paragraph 54
19   of your report.  Paragraph 54, I believe, addresses
20   Article 19 of the Import Measures.
21        A.    That's correct.
22        Q.    And you state in the last sentence, "A
23   foreign exporter bringing goods from abroad to China
24   shall first secure MOI -- MOA's approval before it
25   signs an export agreement with the Chinese importer
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   answered.
 3              THE WITNESS:  Yeah, as I mentioned, I did
 4   not advise foreign traders to apply for the trader
 5   certificate for GMO.
 6   BY MR. CHANEY:
 7       Q.    So if I understand your testimony, if a
 8   shipment of corn of 60,000 metric tons is being
 9   planned, the foreign exporter would have to apply for
10   a trader's certificate for all GM traits in that
11   60,000 metric ton shipment before signing the
12   contract, right?
13              MR. DeBACKER:  Objection, asked and
14   answered.
15              THE WITNESS:  You mentioned number six,
16   six or -- whatever amount.
17              MR. CHANEY:  I'm just asking you to assume
18   60,000 metric ton shipment.
19              THE WITNESS:  Amount is not relevant.  No
20   matter what amount, a foreign trader plan to export
21   into China, before the contract is signed or execute
22   or conclude, whatever term you prefer, that before
23   that happen, a trader certificate must be obtained by
24   the foreign trader.
25   BY MR. CHANEY:
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

Page 185

```
1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
2      A.     Currently I'm still in the green card
3   status -- status.
4      Q.     So you have physically lived in the United
5   States continuously since 1999?
6      A.     Yeah, correctly, generally true.  But
7   certainly I travel back and forth a lot consistently.
8      Q.     Where do you make your residence here in
9   the United States?
10     A.     You mean here or you mean currently or --
11     Q.     Sure.
12     A.     -- in a different --
13     Q.     Where do you live now?
14     A.     I live in Fairfax, Virginia.
15     Q.     Okay.  You've lived in the United States
16  continuously since 1999, right?
17     A.     Yes, I live in the state, United States
18  since then, even though I travel frequently back to
19  China.
20     Q.     Now, between 2000 and 2004, you worked a
21  couple of blocks away from here at your first law
22  firm, is that right?
23     A.     That's correct.  That show in my résumé, a
24  law firm called Beveridge and Diamond.
25            (Deposition Exhibit Number 11 was marked
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   right?
 3       A.     Before I pass the New York bar, I work as
 4   -- they gave me a title called consultant.  And after
 5   I pass the New York bar, swearing in the New York
 6   bar, they give me the title of counsel.
 7       Q.     Now, you were asked a question about some
 8   of the people you have worked with, and you mentioned
 9   that you have done some legal work in the past for
10   Syngenta, right?
11       A.     In my time period in Beveridge Diamond,
12   correctly I assist a partner of law firm Beveridge
13   Diamond in some work for Syngenta.
14       Q.     And her name, you said, was Kathy and her
15   last name began with "S" but you couldn't remember
16   how to spell it.
17       A.     I will be happy --
18              MR. DeBACKER:  Objection, asked and
19   answered.
20              MR. WATTS:  Go ahead, sir.
21              THE WITNESS:  That's correct, her first
22   name is Kathy.  Last name is very long, very long
23   name.  I seem to remember it start by "S."  Should be
24   something Skolowitch, some very long last name.
25       Q.     Szmuszkovicz?
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2          Q.     The physical distance between Kirkland &
 3     Ellis and Beveridge and Diamond is a few blocks away,
 4     right?
 5          A.     Yeah.  The physical distance between
 6     Kirkland and Beveridge Diamond is few block away,
 7     agree.
 8          Q.     And the physical distance between Holland
 9     and Knight and Kirkland and Ellis is walking distance
10     away, across Lafayette Park, right?
11          A.     Yes, the physical distance between Holland
12     Knight and Kirkland is in walking distance.
13          Q.     Now, you made it very clear that you did
14     not have technical expertise to answer some of
15     counsel's questions, right?
16          A.     For -- yeah, for the technical question,
17     some of them, right, I did indicated I'm not
18     technical expert.
19          Q.     Yep.
20          A.     I'm not intend to address technical
21     questions.
22          Q.     Now, what I want to do, you have your
23     report in front of you, sir?
24          A.     Yes, I do.
25          Q.     Okay.  And you started to say this.  I
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    just want to give you a chance to fully say it.
 3              If you go to page 15, opinion number one,
 4    that is not an opinion based on technical expertise,
 5    right?  That's more of a legal conclusion, right?
 6              MR. DeBACKER:  Objection, form, calls for
 7    a legal conclusion.
 8              THE WITNESS:  Yeah, opinion one is based
 9    on legal analyze, rather than based on any technical.
10    BY MR. WATTS:
11         Q.   So it's not a technical conclusion, it's a
12    legal conclusion.
13         A.   It's a legal conclusion.
14              MR. DeBACKER:  Same objection.
15    BY MR. WATTS:
16         Q.   Okay.  Let's go to the next opinion, which
17    is opinion number two on page 17.
18              Again, that's not a technical opinion,
19    that's a legal conclusion, right?
20              MR. DeBACKER:  Same objection.
21              THE WITNESS:  Yep, that is legal opinion,
22    is not technical opinion.
23    BY MR. WATTS:
24         Q.   Okay.  And so that is an opinion that
25    makes a legal conclusion, having nothing to do with
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2    technical expertise, do you agree?

 3                MR. DeBACKER:  Objection, asked and

 4    answered.

 5                THE WITNESS:  Yeah, that's correct.

 6                MR. WATTS:  Okay.

 7                THE WITNESS:  That's the analyze of the

 8    Chinese law and the conclusion is a legal conclusion,

 9    rather than technical conclusion.

10    BY MR. WATTS:

11        Q.    Now, where I think you got cut off in your

12    discussion with Mr. Chaney was on opinion number

13    three and your point was, hey, I've got five sub

14    opinions inside of opinion number three, right?

15                MR. DeBACKER:  Objection, asked and

16    answered.

17                THE WITNESS:  Yeah, in the opinion three,

18    yes, there were five sub opinions.

19    BY MR. WATTS:

20        Q.    Now, let's go through those just real

21    briefly.

22                Opinion 3.1 on page 18, that is not based

23    on technical expertise, that's a legal conclusion,

24    correct?

25        A.    Opinion 3.1 is -- is illegal for foreign
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2    exporters to export genetically modified agricultural
 3    product into China without appropriate approval from
 4    the Chinese government.  That is legal opinion, not a
 5    technical opinion.
 6         Q.    Okay.  That's a legal conclusion, not a
 7    technically-based opinion, agree?
 8              MR. DeBACKER:  Objection, asked and
 9    answered.
10              THE WITNESS:  Yes, that's a legal
11    conclusion, legal opinion, not a technical opinion.
12    BY MR. WATTS:
13         Q.    Let's go to page 23, if we could.  And,
14    again, I want to go through each of these because
15    this is where you got cut off.
16              Opinion 3.2, "The legal obligation for
17    foreign exporters to obtain appropriate approval from
18    the Chinese government for exporting genetically
19    modified agricultural products into China cannot be
20    shifted to Chinese importers."
21              Is that based on technical expertise or is
22    that a legal conclusion?
23         A.    It's -- it's a legal conclusion.
24         Q.    Fair enough.
25              The next page, page 24, Opinion 3.3, "The
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2     appropriate approval from the Chinese government for
 3     exporting GM agricultural products into China must be
 4     obtained before any export contract is signed."
 5              Is that based on technical expertise or is
 6     that a legal conclusion?
 7        A.    Is a legal conclusion.
 8        Q.    Same page, paragraph -- or Opinion 3.4,
 9     "Chinese GMO laws provide clear provisions on the
10     consequences of exporting GM agricultural products
11     from abroad into China prior to obtaining the
12     appropriate approval from the Chinese government."
13              Again, that's a legal conclusion, not
14     based on technical expertise, agree?
15        A.    I agree.
16              MR. DeBACKER:  Objection, form.
17              MR. WATTS:  Paragraph --
18              THE WITNESS:  I agree that is a legal
19     conclusion.
20     BY MR. WATTS:
21        Q.    Opinion 3.5, on page 26, "An exporter of
22     products with GMO traits that fall within the scope
23     of Chinese GMO labeling requirements violates China's
24     GMO labeling rules if it fails to obtain proper
25     approval for its GMO labeling."
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2              Again, a legal conclusion, agreed?
 3      A.      Agreed, that's a legal conclusion.
 4      Q.      Now, Opinion Four, this is not based on
 5  technical background or expertise, it's a legal
 6  conclusion, as well.
 7      A.      Opinion Four, stating providing false or
 8  misleading information about the GMO trait in --
 9      Q.      Yeah.
10      A.      -- agricultural product related to
11  Chinese -- antifraud rule in the Chinese contract
12  law, it is a legal conclusion, is not a technical
13  opinion.
14      Q.      Fair enough.
15              Page 28, Opinion Number Five, "A
16  reasonably sophisticated exporter should have been
17  familiar with and complied with the above Chinese GMO
18  laws."
19              Again, not based on technical expertise,
20  that's a legal conclusion, right?
21              MR. DeBACKER:  Same objection.
22              MR. WATTS:  Go ahead, sir.
23              THE WITNESS:  Yes, that is a legal
24  conclusion, not technical opinion.
25  BY MR. WATTS:
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2          Q.     Now, page 29, Opinion Number Six, "The
 3      fact that some shipments of GM agricultural products
 4      went through Chinese customs without being inspected
 5      or stopped would not legitimatize the violation of
 6      exporting GM agricultural products into China without
 7      appropriate approval from the Chinese government."
 8              Again, that's a legal conclusion, not
 9      based on technical background.
10              MR. DeBACKER:  Same objection.
11              THE WITNESS:  That's correct.  That's a
12      legal conclusion, that's not technical opinion.
13      BY MR. WATTS:
14          Q.     Fair enough.
15              Now, let me see if we can go about it this
16      way.  I've got a box of documents here that I want to
17      take you through just very briefly and get you to
18      identify them because some of them are publications
19      that you wrote that are not listed in your -- in your
20      curriculum vitae, okay?  So let me hand them to you
21      one by one and we'll go through it, okay?
22          A.     Okay.
23          Q.     All right.  Now, you have your report in
24      front of you that's got your curriculum vitae in the
25      back of it, right, Exhibit Number 1?
```

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   good faith in exercising rights and fulfilling
 3   obligations effective of 1999, right?
 4       A.    Yeah, that's correct.
 5       Q.    Okay.  Now, I want to take you into 2001.
 6   If you could go to page 5, paragraph 12 of your
 7   report.
 8       A.    Which paragraph?  12, right?
 9       Q.    Yes, sir.
10             And here, you talk about the import and
11   export of commodities and you reference an import and
12   export commodity inspection law, is that right?
13       A.    That's correct.
14       Q.    That happened in 2000 -- as far back as
15   1989, is that right?
16             MR. DeBACKER:  Objection to form.
17             THE WITNESS:  I indicated that first
18   promulgated at that time and then later on were
19   amended.
20   BY MR. WATTS:
21       Q.    Okay.  Now, if you go back to the hundred
22   questions answered in number 58.
23             This document, right after the reference
24   to the implementing rules, says, "In 2001, the State
25   Council promulgated the Regulations on Administration
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1    DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   of Agricultural Genetically Modified Organisms of
 3   Safety," is that right?
 4        A.    Yeah, I saw the sentence.
 5        Q.    Okay.  Now, did you participate in the
 6   promulgation of the Regulations on the Administration
 7   of Agricultural Genetically Modified Organisms of
 8   Safety in 2001?
 9              MR. DeBACKER:  Objection, form.
10              THE WITNESS:  So what's your question, did
11   I participate?
12              MR. WATTS:  Sure.
13              THE WITNESS:  The drafting?
14   BY MR. WATTS:
15        Q.    Yeah.  You were already over here in the
16   United States, right?
17        A.    In 2001, I was here already.
18        Q.    Okay.  So the answer to my question is you
19   did not participate in the drafting of those
20   regulations on GMO organism safety, right?
21        A.    For the regulation you mentioned in,
22   indicated in this paper in the question 58, in 2001,
23   the State Council regulation, I did not participate
24   in the drafting.
25        Q.    Now, if you would, go to page 26,
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1     DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2   paragraph 69.  And the second part of that paragraph,
 3   about four lines down, you quote a Nongye -- I don't
 4   even know how to pronounce all that, Administrative
 5   Measures on Labeling of Agricultural GMO's,
 6   promulgated by the Ministry of Agriculture on January
 7   5th, 2002, and amended in July 1 of 2004.
 8             Do you see that, sir?
 9     A.    Yeah, I saw that.
10     Q.    You were not involved in either the
11   initial promulgation of the administrative measures
12   on labeling or the amendments in 2004, right?
13     A.    No, I did not involve this regulation
14   drafting.
15     Q.    All right.  Now, further in 2002 -- if you
16   could find Exhibit 42 for me that we've already
17   marked.  This is a paper by you and Mr. Ferris in
18   February of 2003.
19     A.    Yeah, I saw the paper.
20     Q.    And if you would go to page four.
21     A.    Uh-huh.
22     Q.    And starting at page three, you say,
23   "Recent examples of environmental pollution and
24   natural resource degradation issues typically faced
25   by regulators, investors and members of the public in
```

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW

 2     procedures for imports of GMO's and related Chinese

 3     concerns over the management of GMO's in China," and

 4     that could be found at 2002 West Law 10273382,

 5     correct?

 6         A.    Yeah, the citation is written in this way,

 7     yes, that's correct.  But this is something back to

 8     15 years ago.  That is something you cannot expect

 9     that I remember everything.

10         Q.    Okay.  But the bottom line is, is that

11     China's issued rules concerning safety certification

12     procedures for imports of GMO's, that was not rules

13     that you participated in drafting, correct?

14         A.    Correct.  I did not participate in the

15     drafting of the GMO rule cited in the article.

16         Q.    All right.  And then if we could, go to

17     page 11 of your report, paragraph 26.

18               And you reference the Q&A again, is that

19     right?

20         A.    Yeah, I referred to "A" in the paragraph

21     26 of my report.

22         Q.    Now, as we look at the answer to question

23     58 on the document that I gave you, it says, "After

24     this regulation was promulgated and signed, the

25     Ministry of Agriculture --"
```

HONGJUN ZHANG, Ph.D. ***CONFIDENTIAL*** 2/1/2017

```
 1      DEPOSITION OF HONGJUN ZHANG, Ph.D., ATTORNEY at LAW
 2      A.      Sorry, where you are reading?
 3      Q.      In the middle of the page.
 4              "After the regulation was promulgated and
 5      signed, the Ministry of Agriculture and the General
 6      Administration of Quality Supervision, Inspection and
 7      Quarantine developed five sets of regulations
 8      respectively, released a genetically modified
 9      organism labeling catalog system and established the
10      management system for the research, testing,
11      production, processing, operating, import and export
12      in this field."
13              Did I read that correctly?
14      A.      Yeah, you read that --
15      Q.      You played no role in the development of
16      those five sets of regulations, true?
17      A.      Yeah, I did not participate in the
18      drafting of these rules.
19              MR. WATTS:  Let's take a break for the
20      camera.
21              THE VIDEOGRAPHER:  This ends disk number
22      two.  Going off the video record, the time is now
23      5:23 p.m.
24              (Off the record.)
25              THE VIDEOGRAPHER:  This begins disk number
```

```
 1      CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC
 2           I, Donna Ann Peterson, the officer before
 3   whom the foregoing proceedings were taken, do hereby
 4   certify that the foregoing transcript is a true and
 5   correct record of the proceedings; that said
 6   proceedings were taken by me stenographically and
 7   therefore reduced to typewriting under my
 8   supervision; and that I am neither counsel for,
 9   related to nor employed by any of the parties to this
10   case and have no interest, financial or otherwise, in
11   its outcome.
12           IN WITNESS WHEREOF, I have hereunto set my
13   hand and affixed my notarial seal this 6th day of
14   February, 2017.
15
16   My commission expires:  April 14, 2019
17
18
19   _____
20   NOTARY PUBLIC IN AND FOR THE
21   DISTRICT OF COLUMBIA
22
23
24
25
```