IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE SYNGENTA AG MIR 162 CORN LITIGATION<br><br>THIS DOCUMENT RELATES TO:†<br><br>    Nationwide Lanham Act Class Action<br><br>    Kansas State Class Action | Master File No. 2:14-MD-02591-JWL-JPO<br><br>MDL No. 2591 |

**SYNGENTA'S REPLY
IN SUPPORT OF ITS MOTION TO EXCLUDE
EXPERT TESTIMONY AND OPINIONS OF RANDAL GIROUX**

**FILED UNDER SEAL:
CONTAINS DISCOVERY MATERIAL
MARKED HIGHLY CONFIDENTIAL/CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER**

---

†   Pursuant to the Court's January 10, 2017 Order, Dkt. 2789, the underlying Motion to Exclude applies in the cases brought by the Kansas State Class and Nationwide Lanham Act Class.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     Mr. Giroux Is Not Qualified To Opine On The Industry Standard, He Cannot Articulate How Any Standard Would Be Applied In Practice, And Plaintiffs Admit That He Doesn't Actually Describe An Industry Standard. .................................. 2

II.    Mr. Giroux Should Not Be Permitted To Testify About What Syngenta Or Other Biotech Companies "Knew" Or "Recognized." .................................................................. 5

III.   Mr. Giroux Is Not An Expert On The Chinese Regulatory System. .................................. 7

CONCLUSION ................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Motor Fuel Temperature Sales Practices Litigation*,
 No. 07-1840-KHV, 2012 WL 380159 (Feb. 6, 2012 D. Kan.)...................................................5

*Ocasio v. C.R. Bard, Inc.*,
 No. 8:13-CV-1962-T-36AEP, 2015 WL 2062611 (M.D. Fla. May 4, 2015)............................5

*In re Trasylol Prods. Liab. Litig.*,
 709 F. Supp. 2d 1323 (S.D. Fla. 2010) .......................................................................................6

**Rules**

Fed. R. Evid. 702 ............................................................................................................................7

# INTRODUCTION

Plaintiffs point to Mr. Giroux's lobbying experience for the *grain trade* as the reason to qualify him as an expert, but that is precisely why his opinions should be rejected. This is especially so given the broad scope of the issues for which he seeks to offer opinions, ranging from the biotechnology industry generally to Chinese regulatory policy, and from the BIO policy to the internal positions and operational details of biotech companies where he has never worked.

There is no doubt that Mr. Giroux has carried the flag *for Cargill and other grain traders'* preferred practices for the commercialization of new biotechnology traits. But this makes him an advocate, not an expert. Indeed, the grain trade has long sought to prohibit the launch of new genetically modified seed traits unless they suit the grain trade's economic self-interest. Yet that point of view does nothing to establish that Mr. Giroux's opinions follow an accepted methodology or are based on reliable results, as opposed to simply conveying advocacy on behalf of a company that likewise is suing Syngenta. Indeed, though not acknowledged in Plaintiffs' Opposition, there are myriad examples of the grain trade advocating for positions that industry organizations with broader constituencies such as BIO, NCGA, the USGC and others actually rejected. *See e.g.*, Ex. D (2012 BIO policy rejecting NAEGA's advocacy for adding China and the Philippines to the minimum countries under BIO policy.). Moreover, Mr. Giroux even seeks to opine on Syngenta's supposed *internal* considerations, which are an improper subject for any expert, much less a Cargill employee.

Plaintiffs' concession that Mr. Giroux's *suggested* "three-legged stool" standard was not "actually adopted as an industry standard" is reason enough to exclude the testimony. Opp. 7. So, too, is Mr. Giroux's failure to explain what a reasonable risk management plan would entail. Ex. B, (11/16/16 R. Giroux Dep. Tr. 48:23-50:14). Having spent his entire career employed by a grain trader, Mr. Giroux has never actually designed the type of risk management plan he now

1

proposes.  As such, he lacks the basic experience necessary to speak with any authority in this area, and his advocacy of a theoretical standard not accepted by the industry would pollute the jury without assisting their determination of the issues in this case.

Nor should Mr. Giroux's opinions about Syngenta's subjective beliefs be allowed.  Further, his "planned testimony" that Syngenta is an "outlier" in the industry is not based on any measurable methodology and reflects only Mr. Giroux's speculation.

Finally, Mr. Giroux is not qualified to render opinions regarding the BIO policy or the Chinese regulatory system.  Plaintiffs argue that Mr. Giroux was "familiar with" the BIO launch policy and how *other biotech companies* "viewed their responsibilities" under BIO, Opp. 12, but vague "familiarity" and second-hand knowledge about other actors' supposed interpretations of the policy are insufficient to demonstrate Mr. Giroux's expertise.  Similarly, Mr. Giroux has no experience with the Chinese regulatory system as it relates to approval of new biotechnology traits.  Ex. C, (06/09/16 R. Giroux Dep. Tr. 13:4-7 ("Q. …Have you ever been involved in any application for a safety certificate in China? A. No, I have not.")).  Rather than acknowledge this flaw, Plaintiffs rests Mr. Giroux's opinion about the Chinese regulatory system on his "characterize[ation]" of a single study of fleas and his suggestion that this lone study may have served as a "canary in a coal mine" in signaling broader issues in the minds of the Chinese authorities.  Opp. 13.  Plaintiffs' own description highlights the extraordinarily speculative nature of Mr. Giroux's testimony.

## ARGUMENT

I. **Mr. Giroux Is Not Qualified To Opine On The Industry Standard, He Cannot Articulate How Any Standard Would Be Applied In Practice, And Plaintiffs Admit That He Doesn't Actually Describe An Industry Standard.**

Mr. Giroux's years advocating for a standard that the grain trade would *prefer* do not qualify him to opine on what the standard *actually is*.

2

*First*, Mr. Giroux concedes (and Plaintiffs acknowledge) that his "three-legged stool" approach has not been "actually adopted as an industry standard." Opp. 7; *see* Ex. B (11/16/16 R. Giroux Dep. Tr. 57:18-58:9) ("Q. [D]oes the three-legged stool construct create an industry standard? A. [I]t had the potential to be broadly recognized.…[W]hether [the biotech companies] chose… to adopt it…I prefer not to speculate."). His proposed "three-legged stool" for commercialization is simply that: a proposal. Mr. Giroux should not be permitted to present the grain trade's *proposal* and mischaracterize it as an industry *standard*.[1]

It is beyond any debate that Mr. Giroux is simply an advocate. *See* Opp. 2 ("Giroux has been the strategy leader in biotechnology at Cargill for his entire employment."). His experience with the commercialization of new biotechnology traits is limited to his work with the grain trade. He has no firsthand experience launching new biotechnology traits or working within the biotechnology companies that develop and launch such products. And while Mr. Giroux may have "observed how different commercialization strategies by biotechnology companies impact the market," *id.* at 3, such "observations" are no substitute for Mr. Giroux's failure to have actually developed or launched a new biotechnology trait.

*Second,* Mr. Giroux emphasized that he could not or would not describe a reasonable risk management plan (the second "leg" of the stool). *See, e.g.*, Ex. B (11/16/16 R. Giroux Dep. Tr. 48:23-49: 9) ("You're making a decision to commercialize. You understand your business better

---

[1] Plaintiffs erroneously assert that Syngenta did "not challenge Dr. Giroux's foundation to opine on the standard of care, and the argument therefore is waived." Opp. 16. In fact, Syngenta explained *at length* that Mr. Giroux had no experience working in the biotechnology industry, was simply advocating on behalf of the grain trade's self-interest, and that he was unable or unwilling to offer any guidance as to what reasonable risk management looked like under his "three-legged stool" standard. *See* Syn. Mot. 1 ("[Giroux] has advocated the grain trade's position as to what the requirements should be for commercialization of new biotechnology traits. He has never been employed by a biotechnology company and stated at his deposition that he could not speculate on the standards for commercialization of a new biotechnology trait by biotechnology companies."); *id.* at 6 (explaining that Giroux should not be permitted to opine on his three-legged stool in part because "Giroux repeatedly declined to identify what a reasonable risk management plan would look like.…").

3

than I do."). [2] Mr. Giroux's expert disclosure similarly states that he will testify that a biotechnology company should "take steps to manage the risks" of commercialization, Ex. A (10/10/16 R. Giroux Expert Disclosure at 4), but Mr. Giroux fails to explain how these risks should be managed.  Ex. B (11/16/16 R. Giroux Dep. Tr. 48:23-49: 12) ("It's not my plan, it's your plan…You're going to have to assess the risk….").  For example, Mr. Giroux testified that the geographic scope of a limited launch in a reasonable risk management program would be "up to that technology owner" and "based on the outcome."  *Id.* at 50:20-51: 25.  And Mr. Giroux's prescription for minimizing cross-pollination and commingling in a reasonable risk management plan is similarly bereft of any real guidance: "a reasonable risk management plan is one that does what it's supposed to do."  *Id*. at 52:2-16.  Mr. Giroux cannot provide any guidance on what a reasonable risk management plan would look like because "it's not [his] plan."  *Id*. at 48:23-49: 7.[3]

*Third,* Mr. Giroux's three-legged stool advocacy should be excluded because, given the concession that it does not constitute an industry standard (which experts can testify to), it would amount to an impermissible opinion about what the standard of care should be (which experts cannot).  And despite Plaintiffs' effort to soften Mr. Giroux's testimony, the standard he actually describes would automatically impose an obligation on a biotech company like Syngenta to pay for all economic consequences of a trade disruption, *without regard* to the reasonableness of the steps the biotech company took in weighing and deciding whether to launch a new trait.  Mr. Giroux emphasized that his proposed standard of care is "***not about the plan*** and it's not about

---

[2]   *See also id.* at 48:15-22 ("Q. [D]o you have any expert opinions as to what a reasonable risk management plan looks like?  A. I think a reasonable risk management plan is a plan where the outcome is managing the risks that they're identified as part of that risk.").

[3]   Although Plaintiffs seek to deflect these deficiencies by proffering additional questions that Mr. Giroux may have been able to answer differently, his testimony demonstrates that he lacks the experience necessary to opine on the application of the standard he advocates.

the size of the launch; *it's about the outcome.*" *Id*. at 46:18-20 (emphasis added). When asked to describe a "reasonable risk management plan," he responded that "a reasonable risk management plan is a plan where *the outcome* is managing the risks that [the biotech company has] identified as part of that risk assessment." *Id.* at 48:15-22) (emphasis added).[4] Plaintiffs cannot offer an advocate for the grain trade to argue in favor of a strict liability standard simply by dressing up his views as supposed expert testimony.[5]

## II. Mr. Giroux Should Not Be Permitted To Testify About What Syngenta Or Other Biotech Companies "Knew" Or "Recognized."

*First*, Mr. Giroux lacks any foundation to testify as to what Syngenta or other biotech companies "knew" or "recognized." *See, e.g.*, *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 2062611, at *4 (M.D. Fla. May 4, 2015) (expert "may not testify as to [defendant's] knowledge, intent, or state of mind because such testimony invades the province of a jury, which is capable of deciding such matters without an expert's help"). Plaintiffs' reliance on *In re Motor Fuel Temperature Sales Practices Litigation*, No. 07-1840-KHV, 2012 WL 380159, at *7 (Feb. 6, 2012 D. Kan.) is misplaced. In *In re Motor Fuel*, the plaintiffs proffered an expert on certain policies within the petroleum industry, including testimony regarding the industry's motivation to pursue certain policies. Here, Plaintiffs offer Mr. Giroux's testimony on *Syngenta's*—and other biotech companies'—view. A jury can determine, based on the evidence, what Syngenta knew or believed. Mr. Giroux's supposed "extensive experience with Syngenta," Opp. 23, was *as an outsider*. Such contacts give Mr. Giroux no more insight into Syngenta's knowledge or beliefs than the jury. Mr. Giroux's testimony on how *other* biotech companies

---

[4] *See also* Ex. B (11/16/16 R. Giroux Dep. Tr. 48:23-49:6 ("I would say you manage the *outcome*) (emphasis added); *id.* at 50:11-14 ("[I]f you choose to launch and you fail to manage the outcome, we would expect you to take responsibility. That is responsible commercialization.")); *id.* at 51:20-25 ("it's really based on the outcome").

[5] Plaintiffs argue that Mr. Giroux's "testimony on risk responsibility is consistent with what biotech companies, including Syngenta, have done in the past." Opp'n 22. This is irrelevant to the point that Mr. Giroux proffers a strict liability standard under the guise of expert testimony.

"viewed their responsibilities" based on "consultations with those companies," Opp. 12, does not assist the jury because there is nothing that Mr. Giroux adds that the jury cannot determine.

*Second*, Giroux should not be permitted to describe Syngenta as an "outlier" relative to when and how other biotech companies commercialized new biotechnology traits. Plaintiffs state that Mr. Giroux will testify that Syngenta was an outlier because, among other reasons, "it took the position that Syngenta's responsibility for its GM crops ended at the sale of seed." *Id.* at 24. To the extent that evidence is actually presented, a jury can determine whether Syngenta took this position and how that position compared to that of other biotechnology companies. An expert cannot act as a mouthpiece for Plaintiffs' selective recitation of the record. "[A] pure factual narrative…can be presented to the jury directly." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1347 (S.D. Fla. 2010) (excluding expert testimony because "expertise is not required to present the factual narrative to the jury"). Nor does the fact that an expert may rely on hearsay allow him to present otherwise inadmissible hearsay.

Plaintiffs argue that Mr. Giroux's proffered testimony will help the jury understand "the significance of the ways in which Syngenta differed from its competitors." Opp. 24. If there is evidence on this point, the jury can form its own conclusions. Plaintiffs' brief confirms the problems with Mr. Giroux's opinions, by admitting that he seeks to testify that Syngenta "irresponsibly commercialized Agrisure RW; it took the position that Syngenta's responsibility for its GM crops ended at the sale of seed; and it commercialized Viptera, and then Duracade, even after recognizing the significant problem caused by commercializing corn traits that were unapproved in China." *Id.* Plaintiffs suggest that the "average juror" cannot evaluate "these facts," and that Mr. Giroux will help "her understand" their significance. *Id.* Yet this is what any jury is called upon to do in weighing the evidence, and Mr. Giroux's testimony would usurp that role by presenting him as Plaintiffs' own advocate dressed up as an expert.

### III. Mr. Giroux Is Not An Expert On The Chinese Regulatory System.

Mr. Giroux's work in the grain trade does not qualify him to opine on the Chinese regulatory system, or the issues faced by a biotechnology company seeking approval within that system. Mr. Giroux's limited exposure to the Chinese regulatory system is as a grain trader. Mr. Giroux's responsibilities at Cargill do not include Chinese regulatory issues. Ex. E (06/09/16 R. Giroux Dep. Tr. 41:12-18) ("Q. Does Cargill have other personnel who are engaged in regulatory discussions with governments around the world? A. Yes, our government affairs organization. Q. And that's a separate groups from what you do? A. Separate functions, that's correct."). Nor does Mr. Giroux have experience with the Chinese regulatory system in accepting, reviewing, and approving applications of biotechnology traits. Ex. C, (06/09/16 R. Giroux Dep. Tr. 131:4-6 ("Q. …Have you ever been involved in any application for a safety certificate in China? A. No, I have not.")).[6] Nor has Mr. Giroux ever even reviewed an application seeking import approval for a new biotech event in China. *Id*. at 132:8-10. Plaintiffs point to Mr. Giroux's "characterize[ations]" of a single daphnia study as a "canary in a coal mine-type study" that would have caused concerns to Chinese regulators. Opp. 13. But this reference highlights precisely why Mr. Giroux should not be permitted to offer opinions in this area: he lacks the experience and frame of reference, and his testimony is entirely speculative.

### CONCLUSION

For the foregoing reasons, Syngenta respectfully asks that the Court grant its motion to exclude the expert testimony of Randal Giroux under Federal Rule of Evidence 702.

---

[6]  As a grain trader, Cargill does not submit applications for approval of biotechnology traits for import to China. *Id.* at 131:8-132:7).

7


Dated: March 14, 2017                    Respectfully submitted,

/s/ Thomas P. Schult

Thomas P. Schult (tschult@berkowitzoliver.com)
Jennifer B. Wieland (jwieland@berkowitzoliver.com)
**BERKOWITZ OLIVER LLP**
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
Telephone (816) 561-7007
Fax: (816) 561-1888

*Liaison Counsel for Syngenta Defendants*


Michael D. Jones (mjones@kirkland.com)
Edwin John U (edwin.u@kirkland.com)
Patrick F. Philbin (patrick.philbin@kirkland.com)
Bridget K. O'Connor (bridget.oconnor@kirkland.com)
Ragan Naresh (ragan.naresh@kirkland.com)
Patrick Haney (patrick.haney@kirkland.com)
**KIRKLAND & ELLIS LLP**
655 15th Street N.W., Suite 1200
Washington, D.C.  20005
Telephone:  (202) 879-5000
Fax:   (202) 879-5200

*Lead Counsel for Syngenta Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 14, 2017, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

*/s/ Thomas P. Schult*
Thomas P. Schult