IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE SYNGENTA AG MIR 162
CORN LITIGATION,

(This Document Relates to All Cases)

MDL No: 2591
Case No. 14-md-2591-JWL

---

STATE OF MINNESOTA
COUNTY OF HENNEPIN

In re: Syngenta Litigation

This Document Relates to ALL ACTIONS

DISTRICT COURT
FOURTH JUDICIAL DISTRICT

File No. 27-cv-15-3785
Hon. Thomas M. Sipkins
Other Civil

---

JOINT DISCOVERY ORDER REGARDING DOCUMENTS
<u>POSSESSED BY J. THOMAS CARRATO</u>

*Jointly Issued by:*

U.S. Magistrate Judge James P. O'Hara and
Minnesota Special Master John B. Van de North

1

In both of these actions, intervenor Monsanto Company has filed a motion to quash (in part) the subpoena plaintiffs served on J. Thomas Carrato, one of Syngenta's designated experts, who was employed by Monsanto as an in-house attorney and, later, a consultant.[1] Monsanto seeks to quash each subpoena insofar as compliance with its commands would require Mr. Carrato to produce privileged and/or confidential documents that came into Mr. Carrato's possession in the course of his work for Monsanto. Plaintiffs have filed in each action a cross-motion to compel Mr. Carrato to produce documents responsive to each subpoena.[2] Plaintiffs seek production of documents from Mr. Carrato's personal files that plaintiffs allege will enable them to assess and challenge the bases for the opinions Mr. Carrato seeks to offer in these actions. As discussed below, the motions to quash are granted in part and denied in part, and the motions to compel are granted in part and denied in part.

## I.   Background

Prior to his involvement in this litigation, Mr. Carrato was employed by Monsanto as Associate General Counsel for over 21 years, retiring in January 2014. During that time, he

---

[1]ECF No. 2849 (all citations in this order to "ECF No." are references to the MDL docket). Pursuant to Fed. R. Civ. P. 45(d)(3), and at Judge O'Hara's directive (ECF No. 2835), Monsanto filed the motion related to the MDL in the "district where compliance is required" by the subpoena, i.e., the United States District Court for the Northern District of California. On January 30, 2017, U.S. District Judge Elizabeth D. Laporte of that court transferred the motion to quash to the District of Kansas—the court that issued the subpoena—under Fed. R. Civ. P. 45(f). *See also* Non-Party Monsanto Company's Mot. to Quash, in part, Subpoena Directed to J. Thomas Carrato, *In re: Syngenta Litig.*, No. 27-cv-15-3785 (Minn. Dist. Ct. filed on Jan 27, 2017).

[2]ECF No. 2903; Pls' Mot. to Compel Materials from Def.'s Expert J. Thomas Carrato, *In re: Syngenta Litig.*, No. 27-cv-15-3785 (Minn. Dist. Ct. filed on Feb. 16, 2017).

held a number of business positions within Monsanto, in addition to working as an attorney, including chairing Monsanto's Executive Product Stewardship and Product Stewardship Teams.  He also represented Monsanto in outside trade organizations and industry groups, such as the Biotechnology Industry Organization ("BIO").  After retiring from Monsanto, Mr. Carrato formed a consulting firm called Creative Biotech Solutions LLC, and served as a consultant to Monsanto until 2016.

In his capacities as both an attorney and consultant for Monsanto, Mr. Carrato executed confidentiality agreements, which included requirements that upon his termination he return all documents containing Monsanto's proprietary or confidential information to Monsanto, without retaining any copies.  This apparently was not done.  In the course of the past few months, Mr. Carrato has identified hundreds of documents that he obtained during the course of his employment with Monsanto, which were not returned or destroyed upon his separation from Monsanto.

Syngenta retained Mr. Carrato as an expert witness in these actions.  In that role, Mr. Carrato prepared a written report pursuant to Fed. R. Civ. P. 26(a)(2)(B) and Minn. R. Civ. P. 26.01(b)(2), discussing the industry standards for commercialization of new genetically-modified ("GM") crops and opining Syngenta acted in a manner consistent with those standards.[3]  On January 6, 2017, the MDL plaintiffs filed a notice of issuance of a subpoena

---

[3]ECF No. 2874-2.

duces tecum to Mr. Carrato pursuant to Fed. R. Civ. P. 45 ("federal subpoena").[4]   The

federal subpoena sought the production of documents falling into 19 designated categories

that the MDL plaintiffs say will enable them to challenge the bases of Mr. Carrato's opinions.

On January 9, 2017, the Minnesota plaintiffs filed a Minn. R. Civ. P. 45 subpoena, similarly

seeking Mr. Carrato's deposition and production of documents in his possession ("Minnesota

subpoena").[5]   The Minnesota subpoena was the same in all material respects as the federal

subpoena, except that it contained 11 additional document requests.   According to Mr.

Carrato, "[m]ost of the documents" responsive to the subpoenas "came into [his] possession

while he was employed at Monsanto."[6]   Upon learning of the subpoenas, Monsanto moved

to, and was granted leave to, intervene in both actions.[7]

On January 20, 2017, Mr. Carrato produced to plaintiffs copies of some (but not all)

of the responsive documents.[8]   After identifying additional responsive documents, Mr.

---

[4]ECF No. 2782.

[5]*See* Minnesota Plaintiffs' Subpoena to Carrato Requesting Documents, attached as Ex. 1 to the Feb. 16, 2017 Robert K. Shelquist Aff.

[6]ECF No. 2905 at 2.

[7]Judge O'Hara issued an order on January 19, 2017, granting Monsanto leave to intervene in the MDL for the limited purpose of protecting its interests related to the federal subpoena.  ECF No. 2819.  At Mr. Carrato's January 28, 2017 deposition, Special Master Van de North granted Monsanto leave to intervene in the Minnesota case for the limited purpose of protecting its interests related to the Minnesota subpoena.

[8]Monsanto was given access to this document production and has not sought to claw back any produced documents.

Carrato produced a second round of documents on January 28, 2017.

On January 28 and 29, 2017, Mr. Carrato sat for a deposition in the coordinated actions, presided over by the undersigned judicial officials, U.S. Magistrate Judge James P. O'Hara and Special Master John B. Van de North, which Monsanto was permitted to (and did) attend. Counsel for both the MDL and Minnesota plaintiffs questioned Mr. Carrato, and counsel for Syngenta and Monsanto lodged objections, which were ruled upon live by the undersigned.

Mr. Carrato served plaintiffs his responses and objections to the federal subpoena on January 31, 2017, and to the Minnesota subpoena on February 2, 2017. On February 6, 2017, he gave plaintiffs a privilege log listing 175 responsive documents not produced on the grounds of attorney-client privilege and/or confidentiality.[9] Finally, Mr. Carrato identified 12 additional responsive documents, but withheld them all (thereby rasing the number of withheld documents to 187) and produced a supplemental privilege log listing the documents as confidential.[10]

After receiving briefing on the instant motions, the undersigned ordered Mr. Carrato to submit documents withheld on the basis of attorney-client privilege for *in camera*

---

[9]ECF No. 2903-5. Mr. Carrato states he withheld documents "subject to confidentiality agreements restricting their disclosure." ECF No. 2920 at 3. In this regard, some entries on the log simply state "confidential," while other entries add the more specific terms "proprietary" and/or "trade secret."

[10]ECF No. 2939-1.

review.[11]   Although there was some indication in Mr. Carrato's brief that Monsanto was given access to withheld documents and participated in drafting Mr. Carrato's privilege log,[12] Monsanto's brief vehemently rejected the notion that the privilege log was joint work product, asserting that "the drafting and production of the log was controlled by Carrato's counsel," who "disregarded" some of Monsanto's recommendations.[13]   Thus, to proceed on a clear record of Monsanto's privilege assertions, the undersigned ordered Monsanto to submit its own privilege log.   On its log, Monsanto asserted protection over 184 documents.

Today, about 155 documents remain at issue.   Plaintiffs have withdrawn their motion to compel as it relates to privilege log entries 83, 85, 122, and 131-32.[14]   Mr. Carrato produced the documents listed as privilege log entries 84 and 86, and the parties state those documents are no longer at issue.[15]   Finally, on March 10, 2017, at the courts' directive,[16] the parties met in person to discuss the remaining withheld documents, which resulted in

---

[11]ECF Nos. 2938 & 2948.

[12]ECF No. 2920 at 4-5.

[13]ECF No. 2921 at 3–5.

[14]ECF No. 2939 at 7 n.6; ECF No. 2995 at 2-3.   Documents corresponding to log entries 83 and 85 were authored by an outside law firm, and Mr. Carrato is directed not to produce these documents.   Documents corresponding to log entries 122 and 131-32 were originally withheld by Mr. Carrato on behalf of a third-party, Simplot Co., but after Simplot was notified and given an opportunity to intervene (which it declined), Mr. Carrato produced redacted versions of the documents.

[15]ECF doc. 2995 at 2.

[16]ECF No. 2979 (Joint Discovery Order).

plaintiffs withdrawing their motion to compel as to privilege log entries 1-5, 22-23, 79, 82, 87, 111-13, 140, and 147-55.[17]

## II.    Rule 45 Legal Standards

Fed. R. Civ. P. 45 and Minn. R. Civ. P. 45.01-45.06 govern subpoenas issued to non-parties, such as Mr. Carrato.  When a subpoena affects the interests of a second non-party, like Monsanto, the non-party whose interests are implicated has standing to challenge the subpoena.[18] Federal Rule 45(d)(3)(A) outlines circumstances under which a court *must* quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[19]  Under Fed. R. Civ. P. 45(d)(3)(B), the court *may* quash or modify a subpoena if it requires the disclosure of a "trade secret or other confidential

---

[17]ECF No. 2995.  In addition, Monsanto agreed to redact privileged portions of 15 documents, privilege log entries 61-63, 121, 141-42, 161, 167 and 169-75, but stands by its confidentiality objections for these documents.  Monsanto provided the redacted documents to the undersigned on March 16, 2017.  *See* ECF No. 3016.  Plaintiffs have reserved the right to object to Monsanto's redactions for attorney-client privilege if and when those documents are produced to plaintiffs.  Below, the undersigned reject Monsanto's confidentiality objection as to privilege log entries 141-42.  These documents shall be produced as redacted.

[18]*Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena."). *See also Floorgraphics, Inc. v. News Am. Marketing In-Store Servs., Inc.*, No. 07-27 (PJS/RLE), 2007 WL 1544572, at *3 (D. Minn. May 23, 2007) (holding a party has standing to challenge a subpoena if the objecting party has a personal right or privilege regarding the subject matter of the subpoena).

[19]*See also* Minn. R. Civ. P. 45.03(c).

research, development, or commercial information."[20]

The flip side of a motion to quash a subpoena is a motion to compel compliance with the subpoena filed by the party that issued the subpoena, here plaintiffs. Under Fed. R. Civ. P. 45(d)(2)(B) and Minn. R. Civ. P. 45.03(b)(2), if a person commanded to produce documents serves written objections to production, the serving party may move the court for an order compelling production of the documents.

As mentioned above, Monsanto and plaintiffs have filed cross-motions to quash/compel in these cases. Five main questions arise from the motions and accompanying briefs: (1) Are documents responsive to the subpoena protected by the attorney-client privilege?; (2) Do documents responsive to the subpoena contain Monsanto's confidential commercial information and, if so, would disclosure of the information result in harm to Monsanto that outweighs the benefit to plaintiffs?; (3) Should a confidentiality agreement Mr. Carrato entered with Monsanto and/or the attorney-client relationship between Mr. Carrato and Monsanto bar production of the documents?; (4) Should Mr. Carrato's subpoena objections based on relevancy and undue burden be upheld?; and (5) Did Mr. Carrato properly limit the scope of his responses on certain requests to documents relating only to No. 2 yellow corn? The undersigned address each of these questions in turn.[21]

---

[20]Fed. R. Civ. P. 45(d)(3)(B)(i). *See also* Minn. R. Civ. P. 45.03(c)(2)(A).

[21]Judge O'Hara declines Monsanto's suggestion to defer ruling the motions until after the court rules plaintiffs' motion to strike Mr. Carrato's testimony on *Daubert* grounds. The first trial in this MDL is fast approaching, and plaintiffs are entitled to timely receive any documents deemed improperly withheld so that they may prepare for trial and/or seek to

## III.     Attorney-Client Privilege

Ninety  documents continue to be withheld by Mr. Carrato on grounds that they are

protected by Monsanto's attorney-client privilege—specifically,  privilege log entries 7-8,

12-15, 17-18, 26, 28-29, 32-46, 51-64, 69-73, 80-81, 90-108, 114, 117-21, 123-30, 133, 137,

144, 156-57, 159-60, 162, and 168.  Before specifically addressing these documents, the

undersigned will address plaintiffs' argument that Monsanto has waived any privilege

protection by submitting an inadequate privilege log.

### A.     Privilege Log

Although Fed. R. Civ. P. 26(b)(5)(A) doesn't expressly require a privilege log, a party

withholding information on privilege grounds generally satisfies the tenets of that rule by

---

supplement their *Daubert* submissions.

Judge O'Hara also rejects Monsanto's argument that plaintiffs' motion to compel should be denied or deferred until plaintiffs' counsel properly meet and confer with counsel for Monsanto and Mr. Carrato.  As plaintiffs note, neither Fed. R. Civ. P. 45 nor D. Kan. Rule 37.2 technically imposed a meet-and-confer requirement before plaintiffs filed their motion to compel under Rule 45(d).  Although the spirit of the rules might impose a conference requirement, the court exercises its discretion to adjudicate this dispute now.  *See CCPS Transp., LLC v. Sloan*, No. 12-2602, 2013 WL 2405545, at *1 (D. Kan. May 31, 2013) (stating that although the court can deny a motion on procedural grounds for failing to meet and confer, the court is within its discretion to address the merits of the argument); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc*., No. 07-2319, 2009 WL 722056, at *2 (D. Kan. March 18, 2009) (waiving non-compliance with duty to confer to avoid further delay of resolution of the matter); *Strasburg-Jarvis, Inc. v. Radiant Sys., Inc.*, No. 06-2552, 2009 WL 129361, at *2 (D. Kan. Jan. 20, 2009) (electing to address the merits of discovery dispute despite failure to confer).  Special Master Van de North joins in this analysis and these determinations based on applicable precedent and the Minn. R. Civ. P. relating to alleged foundational inadequacies and with respect to meet-and-confer requirements.

providing a privilege log.[22]  The level of detail required in a privilege log is determined on a case-by-case basis,[23] but courts in the District of Kansas have stated that a privilege log generally should contain the following:

1.  A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2.  The date upon which the document was prepared;

3.  The date of the document (if different from # 2);

4.  The identity of the person(s) who prepared the document;

5.  The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6.  The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

---

[22]*See Kannaday v. Ball*, 292 F.R.D. 640, 647 (D. Kan. 2013) (describing the basic threshold requirements for a privilege claim); *see also Farha v. Idbeis*, No. 09-1059, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010).

[23]*See Helget v. City of Hays*, No. 13-2228, 2014 WL 1308890, at *3 (D. Kan. Mar. 28, 2014) (stating that a privilege log must provide sufficient information to allow the other party to assess the claimed privilege"); *see also H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, No. 12-2713, 2013 WL 5774844, at *7 (D. Kan. Oct. 25, 2013); *Sprint Commc'n Co. v. Big River Tel. Co.*, No. 08-2046, 2009 WL 2878446, at *2 (D. Kan. Sept. 2, 2009).

7.      The number of pages of the document;

8.      The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9.      Any other pertinent information necessary to establish the elements of each asserted privilege.[24]

At the very least, a privilege log should contain sufficient information so that the opposing party and the court can evaluate the claimed privilege.[25]  If a party fails to carry its burden of establishing that any documents withheld are subject to privilege, the court may conclude that the privilege is waived.[26]

The undersigned are cognizant of the fact that much time and resources were no doubt spent by both Monsanto and Mr. Carrato in reviewing the documents at issue and in creating their respective privilege logs.  Unfortunately, however, the privilege logs, in large part, lack the detail necessary for the undersigned to reach a finding of privilege. The very sparse

---

[24]*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448–49 (D. Kan. 2009) (citing cases).

[25]*Farha*, 2010 WL 3168146, at *4; *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) (describing basic threshold requirements for an acceptable privilege log and an accompanying explanatory affidavit from counsel, setting forth facts establishing that communication in question meets the requirements for a privileged communication).

[26]*New Jersey*, 258 F.R.D. at 448; *Kannaday*, 292 F.R.D. at 646 ("It is well settled that if a party fails to make the required showing under Fed. R. Civ. P. 26(b)(5)(A) by not producing a privilege log or by producing an inadequate one, courts may deem the privilege waived.");  *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2014 WL 12597432, at *14 (D. Minn. May 7, 2014) (observing that "dearth of evidence [to support attorney-client privilege assertions] alone could have resulted in the wholesale rejection of Ameriprise's assertion of privilege for many documents included within the *in camera* review"), *aff'd, Krueger v. Ameriprise Fin. Inc.*, No. 11-2781, 2015 WL 224705, at *7 (D. Minn. Jan. 15, 2015).

information included leaves the undersigned only to guess whether the documents withheld actually contain privileged information.

For example, with very few exceptions, Monsanto's privilege log lists the recipients of the various documents as simply "Monsanto Company," without delineating the individual recipients (or their corresponding professional titles or job positions). By this description, Monsanto has chosen to leave the undersigned in the dark as to whether the documents were shared only with key Monsanto managers needing legal advice, or whether they also were shared widely with lower-level employees.[27] In other words, the undersigned have no way of determining whether the multitudes of persons who were sent particular documents were attorneys or business persons, and with respect to the latter category, whether they had a need to know the contents of those documents.

Similarly, in the "purpose" field of the log, Monsanto sometimes states a document reflects *Mr. Carrato's* legal advice, but in many other instances states simply that it contained legal advice, which, when compared to the more specific descriptions, implies that the document reflects legal advice of an unnamed person other than Mr. Carrato.[28]

Additionally, beyond the conclusory statements set forth in the privilege logs

---

[27]Although disclosure to the latter would not alone waive the attorney-client privilege, Monsanto would need to demonstrate that the confidential nature of the documents was adequately communicated and respected by such employees. *See Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981).

[28]*Compare, e.g.,* privilege log entries 1-5, 46, and 51-52 with entries 32-45.

themselves, Mr. Carrato's February 20, 2017[29] and February 23, 2017 declarations, and Monsanto's March 16, 2017 Notice of Submission of Redacted Documents,[30] no evidence was submitted to defend Monsanto's claim that its in-house lawyer and the purported author of the documents in question, Mr. Carrato, was acting in his capacity as a lawyer rather than a business advisor in drafting the documents.  It is undisputed that Mr. Carrato held a variety of business positions at Monsanto, in addition to working as legal counsel, and that he also held several external industry roles.  Mr. Carrato's deposition testimony confirms that with respect to stewardship issues in particular, he was often acting in a business capacity rather than in his legal capacity as Monsanto's in-house attorney.[31]  The undersigned often cannot glean from the cursory document descriptions on Monsanto's privilege log whether Mr. Carrato was providing legal, as opposed to business, advice.

In the end, although one could review the privilege logs and speculate about what types of communications were happening, the fact remains that it was Monsanto's burden to clearly establish that the withheld documents are subject to the attorney-client privilege. With few exceptions, Monsanto has failed to satisfy its burden.  Thus, although the undersigned likely could find waiver of privilege based on Monsanto's inadequate privilege log, they nonetheless have reviewed the withheld documents *in camera* and base their rulings

---

[29]ECF No. 2920-1.

[30]ECF No. 3016.

[31]*See, generally,* 01-28-2017 Carrato Dep. Tr., Vol. 1, at 298-310.

below on their conclusions resulting from that review.  However, where the content of a document and the description on Monsanto's privilege log, along with our review, provide no basis from which the undersigned could conclude that legal advice was sought or given, or that the purpose of the document was not predominantly business-related, or that the persons receiving the document were within the circle of those persons entitled to receive attorney-client communications, the privilege is rejected and the document is ordered produced.

### B.    Privilege Standards and Analysis

The legal standards applicable to the attorney-client privilege are well established and do not vary significantly between federal law and Minnesota state law.  Many of these standards were set out in Judge O'Hara's January 27, 2017 order first addressing the subpoena to Mr. Carrato in the MDL[32] but will be repeated here for the parties' convenience.

Fed. R. Civ. P. 26(b)(1) limits discovery to "nonprivileged matters."  Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[33]  Although this description suggests that the privilege

---

[32]ECF No. 2835 at 8–11.

[33]*New Jersey*, 258 F.R.D. at 425.  These elements are the same under Minnesota law. *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998); *Ewald v. Royal Norwegian*

only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[34]   The party asserting the privilege bears the burden of establishing that the elements are met.[35]

Caselaw provides a wealth of guidance as to what is—and is not—protected by the attorney-client privilege.  First, it is important to note that "personal, confidential, [or] private information" is not necessarily privileged.[36]   "As this Court has held repeatedly, 'confidential' does not equate to 'nondiscoverable' or privileged."[37]  Second, it is clear that

---

*Embassy*, No. 11-2116, 2014 WL 1309095, at *6 (D. Minn. Apr. 1, 2014) (discussing attorney-client privilege under both federal and Minnesota law).

[34]*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (rejecting narrower view that only communications that reveal confidences from the client are protected); *see also id.* (holding that the Tenth Circuit's view "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice"); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[35]*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001); *Kobluk*, 574 N.W.2d at 440; *Triple Five*, 212 F.R.D. at 527-28.

[36]*AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[37]*Id.* (quoting *Williams v. Evogen, Inc*., No. 12–2620, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013)).  *See also Kobluk,* 574 N.W.2d at 441 ("[A] document is not cloaked with the privilege merely because it bears the label 'privileged' or 'confidential.'") (citations omitted).

"[u]nderlying facts are not protected by the privilege."[38]  "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.'"[39]  Third, neither the "general topics of attorney-client discussions" nor ultimate "legal conclusions" of counsel are protected.[40]  Thus, for example, the subject matters of an in-house attorney's discussions with company executives are not privileged.[41]  Fourth, where a communication contains both legal advice and business advice, attorney-client protection only applies if the legal advice predominates over the business

---

[38]*Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)); *Kobluk*, 574 N.W.2d at 443; *Ewald*, 2014 WL 1309095, at *6 (holding attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

[39]*Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* 2014 WL 545544, at *6 (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)); *see also Ewald*, 2014 WL 1309095, at *6 ("Whether an attorney-client privilege exists, and for what purpose, is not considered privileged under either federal common law or Minnesota law.").

[40]*Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* 2014 WL 545544, at *6 (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

[41]*See, e.g., id.* at *8 (holding that revelation of in-house counsel's discussion with company executives about possible infringement by competitors did not reveal privileged information); *New Jersey*, 258 F.R.D. at 426–28 (holding testimony stating that company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

advice; the privilege does not apply where legal advice is merely incidental to business advice.[42]  Fifth, "[d]rafts of documents to be submitted to third parties, although prepared by counsel, are not generally privileged.  Submission of the document to the third party removes any cloak of privilege."[43]  On the other hand, drafts of memorandum prepared for a client are protected.[44]  Sixth, the attorney-client privilege does not attach to simple editing or "word-smithing" by counsel.[45]

---

[42]*See New Jersey*, 258 F.R.D. at 444; *Heartland Surgical Specialty Hosp.*, 2007 WL 2192885, at *9 ("If Vallarino was seeking mainly business advice from the attorneys, then the communications would not be privileged.");  *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 ("Legal advice must predominate for the communication to be protected.  The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted); *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D. Kan.1997) ("A distinction is made between a lawyer providing business or technical advice rather than legal advice.  Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted); *Krueger*, 2014 WL 12597432, at *10 ("For the attorney-client privilege to apply, the legal advice must predominate over the business advice, and not be merely incidental."); *Johnson v. Bd. of Pensions of Evangelical Lutheran Church in Am.*, No. 11-23, 2012 WL 5985600, at *4 (D. Minn. Sept. 5, 2012) ("Because in-house counsel may play a dual role of legal advisor and business advisor, the privilege will apply only if the communication's primary purpose is to gain or provide legal advice." (internal citation omitted)); *Peterson v. Seagate U.S. LLC*, No. 07-2502, 2009 WL 3430150, at *4 (D. Minn. Oct. 19, 2009) (holding that "communications with an attorney about business decisions do not fall within the protection of attorney client privilege").

[43]*Burton*, 170 F.R.D. at 485; *see also id.* at 489 ("While drafts prepared for a client with the purpose of obtaining legal advice may be protected by attorney-client privilege, drafts of documents to be submitted to third parties are not so protected.").

[44]*Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir. 1995).

[45]*Krueger*, 2014 WL 12597432, at *10 (holding the attorney-client privilege does not attach where there is no legal advice or request for legal advice apparent on the face of document and the contribution by counsel is strictly editorial word-smithing).

Finally, it bears mentioning that under the eighth element, absence of waiver, the party claiming the privilege must demonstrate that "the substance of an otherwise privileged communication" is not revealed to a third party.[46] The burden of showing that the privilege has not been waived remains with the party claiming the privilege.[47] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[48]

The undersigned have jointly reviewed all 90 at-issue documents and carefully applied the above legal standards. Set out below are the specific documents that the undersigned are ordering Mr. Carrato to produce and the rationale for rejecting Monsanto's withholding of those documents based on its assertion of attorney-client privilege. As for documents not specifically listed or discussed, the undersigned determined, based on their review, that they are privileged and shall not be produced.

Doc. Nos. 12-13: Monsanto claims that these documents describe legal goals and law-team results that contain the legal advice of Mr. Carrato regarding regulatory actions in various countries and the development of strategies to achieve business goals and successful litigation results. Based on the content and the context of these documents, there is no

---

[46]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)); *see also Ewald*, 2014 WL 1309095, at *7 ("Waiver of privilege occurs when the communication is voluntarily disclosed to a third party.") (citations omitted).

[47]*New Jersey,* 258 F.R.D. at 426; *Lewis*, 203 F.R.D. at 621.

[48]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d at 1186 (quoting *Ryans*, 903 F.2d at 741).

evidence of legal advice within the documents or that legal advice was sought or given. The undersigned find that these documents deal predominantly with business information and legal goals and results, and therefore, are not privileged.

Doc. No. 17: Monsanto claims that this document is a draft presentation regarding Roundup Ready Corn that contains the legal advice of Mr. Carrato concerning an action plan for detection of a trait. Based on the content and the context of this document, there is no evidence of legal advice within the document or that legal advice was sought or given. This document predominantly contains business information and advice, and therefore, is not privileged.

Doc. No. 18: Monsanto claims that this document is a draft document regarding Identity Preserved Production and Pollen Movement that contains legal comments and revisions by Mr. Carrato regarding status of approvals and how to deal with identity preserved crop. With the exception of pages 1-6, which shall be redacted, the balance of the document (pages 7-9) shall be produced on the basis that it predominantly concerns non-privileged business information concerning cross-pollination, along with Mr. Carrato's editorial redlines. The attorney-client privilege does not attach to simple editing or "word-smithing" by counsel.

Doc. Nos. 57-58: Monsanto claims that these documents concern, respectively, a draft memo and a memo regarding the status of biotech approvals in China that contain Mr. Carrato's legal comments and revisions about the Chinese regulatory process and approval

status.  With the exception of paragraphs 3-4 on page 2 of the documents, which shall be redacted, the balance of the documents shall be produced on the basis that they predominantly concern business advice and not legal matters, and therefore are not privileged.

Doc. Nos. 59-60: Monsanto claims that these documents are draft communication plans that contain Mr. Carrato's legal comments and revisions regarding a grain-channeling communication plan in the event of a channeling issue.  On balance, the documents are not privileged.  With the exception of paragraph 3 on page 4 of each document, which shall be redacted, the balance of the documents shall be produced on the basis that they predominantly concern business information and advice, not legal matters.

Doc. Nos. 103-08: Monsanto claims that these documents are internal Monsanto stewardship-policy presentations regarding the commercialization of biotechnology-derived plant products in commodity crops.  Monsanto further asserts that these documents contain legal advice regarding liability risks associated with commercialization of new traits.  For the following reasons, the undersigned find that Monsanto has not met its burden to demonstrate that the attorney-client privilege applies to these documents.

First, while the privilege log lists Mr. Carrato as the author of these documents, in contrast to other entries on the log, the log's "purpose" column does not identify Mr. Carrato as the person providing the legal advice allegedly provided in these documents regarding liability risks associated with commercialization of new traits.  A related concern is that, on

their face, Doc. Nos. 103-04 identify a second author who is not identified on Monsanto's privilege log and whose affiliation, job title, and position is not provided.

Second, as with nearly every other entry on its privilege log, Monsanto lists the recipients of these documents as simply "Monsanto Company." Therefore, the undersigned have no way of determining whether the persons receiving these documents were within the circle of those persons entitled to receive attorney-client communications.

Third, even assuming that Mr. Carrato was, in fact, the author of all of the information contained in these documents, and that all of the recipients were within the circle of persons entitled to receive attorney-client communications, there does not appear to be legal advice provided in these documents. Rather, these documents appear to concern non-privileged business information and advice.

Fourth, the undersigned cannot conclude based on the face of these documents that Mr. Carrato was acting in his capacity as a lawyer, rather than a business advisor, in drafting said documents. To the contrary, Mr. Carrato confirmed during his January 28-29, 2017 deposition that much of the stewardship information and advice that he provided to and discussed with Monsanto was not in the nature of legal advice.[49]

---

[49]*See, e.g.*, 01-28-2017 Carrato Dep. Tr., Vol. 1, at 298-311 (testifying that (1) he distinguished "between legal advice and discussions and stewardship activities around launching products" and (2) in performing his stewardship activities, he was "[n]ot providing legal advice" and "there were a number of issues that we reviewed and discussed within the confines of the stewardship organization that were neither legal nor of origin within the law department").

Based on the foregoing, Monsanto has not met its burden to demonstrate that these documents are privileged and, as a result, Mr. Carrato is ordered to produce these documents to plaintiffs.

Doc. No. 117: Monsanto claims that this document is a draft internal document regarding Genuity Products approval status in key export markets, and contains Mr. Carrato's legal comments and revisions.  Monsanto further states that the document is marked "FOR INTERNAL INFORMATION ONLY - NOT FOR EXTERNAL DISTRIBUTION." However, as we have observed above, personal, confidential, or private information is not necessarily privileged, and does not automatically equate to "nondiscoverable."  Based on the content and the context of this document, there is no evidence of legal advice within the document or that legal advice was sought or given.  The undersigned find that this document provides a regulatory update containing factual and business information, rather than legal advice, and therefore, it is not privileged.  Mr. Carrato's deposition testimony supports this finding.[50]

Doc. Nos. 123-26 and 128-30: Monsanto claims that these documents concern the "Monsanto Pledge" and stewardship of product launches.  Privilege log entries 123-25 and 128-30 identify Mr. Carrato as both the author and the lawyer providing the alleged legal

---

[50]*See, generally,* 01-28-2017 Carrato Dep. Tr., Vol. 1, at 304-10 (testifying that although discussions concerning market and trade assessments, whether China was a key import market, and the appropriateness of a product launch would constitute Monsanto's confidential information, these issues did not always involve the provision of legal advice protected by attorney-client privilege).

advice contained therein.  In contrast, privilege log entry 126 identifies Mr. Carrato as the author of the document but not necessarily the author of the legal advice allegedly contained therein.  The privilege log does not provide any information to explain the discrepancy.  In any event, these documents appear to be predominantly business-related and contain edits that reflect mere word-smithing as opposed to the provision of legal advice.  As such, they are not privileged.

Doc. No. 127:  Monsanto claims that this document is a draft pledge stewardship summary that contains legal comments and revisions relating to Monsanto stewardship efforts and the status of the European Union regulatory system.   While the privilege log identifies Mr. Carrato as the document's author, it does not identify Mr. Carrato as the person providing the legal comments and revisions.  Based on the content and the context of this document, there is no evidence of legal advice within the document or that legal advice was sought or given.  The undersigned find that this document provides business information that is factual in nature concerning Monsanto stewardship efforts, and does not reference legal principles or provide legal advice.  The undersigned further note that although Monsanto's privilege log specifically states that this document "contains legal comments/revisions relating to … status of EU regulatory system," the document only refers to the EU system in passing and does not reflect any legal analysis or provide legal advice.  Accordingly, the document is not privileged.

Doc. No. 133:  Monsanto claims that this is a draft document regarding "product

launch stewardship policy (Biotechnology Industry Organization, Food and Agriculture Section)" that contains Mr. Carrato's legal comments and revisions.  On its face, the document appears to have been prepared for a third-party industry group rather than Monsanto, and Monsanto's privilege log does not state otherwise or provide any information to the contrary.  The document does not appear to reflect legal advice from an attorney (Mr. Carrato) to his client (Monsanto), nor does it evidence a request for legal advice by Monsanto.  In fact, the document only refers to BIO's policies and objectives and does not refer to Monsanto whatsoever.  Accordingly, the undersigned conclude that Monsanto has not met its burden with regard to establishing that this document is privileged.

Doc. No. 144: Monsanto claims that this document is a draft document regarding Roundup RReady2Yield soybeans that contains Mr. Carrato's legal revisions concerning stewardship of the product and analysis of functioning regulatory systems.  Based on the content and the context of this document, and with Mr. Carrato's deposition testimony in mind,[51] the undersigned find that this document predominantly concerns business information that is factual in nature, as well as business advice concerning Monsanto stewardship efforts, and it is therefore, not privileged.

Doc. Nos. 159-60: Monsanto claims that these documents are draft updates regarding YieldGard Plus and YieldGard Plus with Roundup Ready Corn 2 that contain Mr. Carrato's legal edits concerning regulatory approvals for traits.  Based on the content and the context

---

[51]*See generally* 01-28-2017 Carrato Dep. Tr., Vol. 1, at 298-310.

of this document, and with Mr. Carrato's deposition testimony in mind,[52] the undersigned find that these documents predominantly concern business information that is factual in nature.  There is no active communication of legal advice in these documents, nor is there any evidence that legal advice was sought by Monsanto. Mr. Carrato's redlines are simple editorial changes.  Accordingly, these documents are not privileged.

Doc. No. 162: Monsanto claims this document is a draft document regarding the product benefits of Roundup RReady2Yield soybeans that contains Mr. Carrato's legal comments and revisions concerning yield potential, stewardship, and approval status.  Based on the content and the context of this document, and with Mr. Carrato's deposition testimony in mind,[53] the undersigned find that this document predominantly concerns business information that is factual in nature, as well as business advice concerning Monsanto stewardship efforts, and it is therefore, not privileged.

For the reasons described, the undersigned find the attorney-client privilege does not protect, and Mr. Carrato shall produce to plaintiffs, the documents specifically addressed above.

## IV.   Confidential or Trade Secret Information

Monsanto asserts that a number of documents responsive to the subpoenas contain Monsanto's confidential trade secret or commercial information, and should therefore be

---

[52] *See id.*

[53] *See id.*

quashed under Fed. R. Civ. P. 45(d)(3)(B)(i)[54] and Minn. R. Civ. P. 45.03(c)(2)(A).  Like the standards for attorney-client privilege, Judge O'Hara set forth the legal standards applicable to assertions of confidentiality in the January 27, 2017 order.  The undersigned mention this fact to note that, prior to the majority of their briefing on the instant motions, Monsanto and Mr. Carrato were on notice of the burden they face of demonstrating that "a clearly defined and very serious injury" would come from disclosure of the documents.[55]  As discussed below, Monsanto and Mr. Carrato have failed to meet this burden.

For convenience, the applicable legal standards are repeated here.  The Tenth Circuit applies the standards for a protective order under Fed. R. Civ. P. 26(c) in determining whether to quash a subpoena on the basis of trade secret/confidential information.[56]  It is well established that "[t]here is no absolute privilege for trade secrets or similar confidential information."[57]  However, Rule 26(c) "confers broad discretion on the trial court to decide

---

[54]ECF No. 2849 at 17.

[55]Indeed, Monsanto set forth this standard in its motion to quash.  ECF No. 2849 at 17.

[56]*Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).  *See also Datcard Sys., Inc. v. PacsGear, Inc.*, No. 11mc25, 2011 WL 2491366, at *1-2 (D. Minn. June 23, 2011) (applying Rule 26 standards in determining whether to quash third-party subpoena on the basis of trade secret/confidential and proprietary information).

[57]*Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979); *see also MGP Ingredients, Inv. v. Mars, Inc*., 245 F.R.D. 497, 500 (D. Kan. 2007); *Baskerville v. Baskerville*, 246 Minn. 496, 509 (1956) ("There usually is no absolute protection against disclosure of trade secrets and practices on the ground that their revelation might result in giving information to a competitor when, if the evidence is not admitted, the issues cannot be fairly tried.")

when a protective order is appropriate and what degree of protection is required."[58]   Upon a showing of good cause, the court "may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."[59]   The person seeking protection over the information has the burden to show good cause for such protection.[60]

The person seeking protection must first establish that the information sought is indeed a trade secret or other confidential research, development, or commercial information.[61]   Next, the person seeking protection must show that disclosure of the information could be harmful.[62]   To do this, it must demonstrate that disclosure would "result in a clearly defined and very serious injury,"[63] such as showing the competitive harm that

---

[58]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[59]Fed. R. Civ. P. 26(c)(1)(G).  *See also* Minn. R. Civ. P. 26.03.

[60]*Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[61]*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (citing *Centurion Indus.,* 665 F.2d at 325); *In re Remington Arms Co., Inc*., 952 F.2d 1029, 1032 (8th Cir. 1991).

[62]*In re Cooper Tire,* 568 F.3d at 1190;  *In re Remington*, 952 F.2d at 1032.

[63]*Rajala v. McGuire Woods, LLP*, No. 08-2638-CM-DJW, 2010 WL 4683979, at *11 (D. Kan. Nov. 12, 2010); *Flint Hills Sci., LLC v. Davidchack*, No. 00-2334-KHV-DJW, 2001 WL 1718276, at *9 (D. Kan. Nov. 14,  2001) ("In determining whether good cause exists to issue a protective order . . . the initial inquiry is whether the moving party has shown that disclosure of the information will result in a clearly defined and very serious injury." (internal quotations and citations omitted)).

would befall it by virtue of the disclosure.[64] To establish such an injury under the good-cause standard, the person seeking protection must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[65]

Only if these requirements are met does the burden then shift to the party seeking disclosure to establish that such disclosure is relevant and necessary to the action.[66] "The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure."[67] "If proof of relevancy or need is not established, discovery should be denied.  On the other hand, if relevancy and need are shown, the trade secrets should be

---

[64]*Layne Christensen*, 271 F.R.D. at 249; *see also Transcor*, 212 F.R.D. at 592 (defining "commercial information" as "information, which, if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained").

[65]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also Rajala*, 2010 WL 4683879, at *11 ("To establish such an injury, the moving party must make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."); *Transcor*, 212 F.R.D. at 592 ("The claim must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim.") (internal quotations and citation omitted); *Krueger*, 2015 WL 224705, at *7; *cf. In re: Rahr Malting Co.*, 632 N.W.2d 572, 576 (Minn. 2001) ("Conclusory allegations of harm do not support a finding that data constitutes a trade secret"; holding tax court did not err in refusing taxpayer's request to close the trial to the public and seal certain court records, where taxpayer made only conclusory allegations of possible harm and failed to explain how the information it sought to protect qualified as trade secrets).

[66]*In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190.

[67]*Centurion Indus.*, 665 F.2d at 325; *see also Datcard Sys.*, 2011 WL 2491366, at *2 (concluding the evidentiary value of the confidential information outweighed potential damage to subpoenaed third-party, and an order to quash was therefore not warranted).

disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing."[68]  "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion."[69]

Monsanto makes the general assertion that disclosure of its confidential documents to Syngenta, one of its direct competitors, would cause it to suffer "substantial economic harm."[70]  This unspecific, conclusory statement is insufficient to meet Monsanto's burden of showing that such disclosure would result in a clearly defined, serious injury.  It appears that most of the documents were drafted several years ago,[71] and Monsanto does not explain in any detail how their disclosure today could cause Monsanto competitive harm.

Through the declarations of Stacey L. Slater, Monsanto Associate General Counsel, Regulatory Law & Policy, Monsanto presents only slightly more-specific arguments against

---

[68]*Centurion Indus.*, 665 F.2d at 325-26 (internal citations omitted).

[69]*Id.* at 326.  *See also Erickson v. MacArthur,* 414 N.W.2d 406, 409 (Minn. 1987) (A district court has broad discretion under Minn. R. Civ. P. 26.03 "to fashion protective orders and to order discovery only on specified terms and conditions."); *Baskerville*, 246 Minn. at 509 n.21 (recognizing that court may impose special protective conditions to govern disclosure of trade secrets).

[70]ECF No. 2921-7 at 3.

[71]According to Mr. Carrato, of the 187 logged documents, 159 were created before 2010.  ECF No. 2920 at 1.

disclosure of specifically identified documents.[72]  To the extent those documents have not been deemed properly withheld on the basis of attorney-client privilege and still remain at issue, we will address them here.

Doc. Nos. 57-58, 88, and 117: Monsanto identifies privilege log entries 57-58, 88, and 117, as documents that "include discussions of genetically modified ('GM') product launch strategies and market trade assessments."[73]  It asserts that disclosure of these documents would "have long-term implications on Monsanto's competitive position in the market"[74] because its "competitors would be able to copy Monsanto's policies, thereby reducing or eliminating Monsanto's competitive advantage in certain respects," and could "review Monsanto's internal policies and procedures to be able to better predict Monsanto's future actions and decisions."[75]  First, the undersigned note our confusion about how product-launch strategies and market assessments would reveal Monsanto's "policies."  We have reviewed the documents logged as entries 57-58 and 117, and find they do nothing of the sort.  In any

---

[72]Ms. Slater's original declaration, ECF No. 2921-7, submitted with Monsanto's response to plaintiffs' motion to compel and Monsanto's reply in support of its motion to quash, only directly addressed 13 privilege log entries.  Ms. Slater submitted a second declaration, ECF No. 2982-2, as an exhibit to Monsanto's "notice" regarding its privilege log.  The second declaration, perhaps unfairly, provides additional assertions of harm and addresses many additional privilege log entries.  Plaintiffs, however, have not objected to this second bite at the apple, so the undersigned will consider it.

[73]ECF No. 2921-7 at 3.

[74]Id.

[75]ECF No. 2982-2 at 2.

event, Monsanto's conclusory statements against disclosure do not establish very serious injury under the above standards such that Monsanto has satisfied its burden of demonstrating the subpoena must be quashed on this basis.

Doc. Nos. 30-31, 57-58, 74-78, 88, 103-08, 123-30, and 141-43: Monsanto asserts privilege log entries 30-31, 57-58, 74-78, 88, 103-08, 123-30, and 141-43 "evidence Monsanto's evaluation of regulatory approvals prior to the launch of GM traits," "include Monsanto's policies and practices for risk assessments in launching and stewarding new GM traits," and "reveal Monsanto's approach to channeling GM traits."[76]  Monsanto's only allegation of harm coming from disclosure of these documents is purely a conclusory statement: "Disclosure of these documents to Syngenta, one of Monsanto's direct competitors, would cause Monsanto particularly serious economic harm."[77]  Monsanto has not met its burden of showing a particularized harm that would befall Monsanto by the disclosure of these documents.

Doc. Nos. 20, 117, 138-39, and 158: Monsanto states that the documents identified in privilege log entries 20, 117, and 138-39 "include explicit directives that they are not to be distributed or are to be used for discussion purposes only."[78]  But this statement does not attempt to show Monsanto has good cause to protect their disclosure.  Likewise, as to

---

[76]*Id.*

[77]*Id.*

[78]*Id.* at 3.

privilege log entry 158, which Monsanto describes as a draft "three-way multi-event corn cross-license agreement" between Monsanto and one or more other competitors of Syngenta, Monsanto notes that it contains a confidentiality provision prohibiting its disclosure. Again, this general statement does not explain how Monsanto would be harmed if such agreement is disclosed.

Because Monsanto has not sufficiently established a "clearly defined" and "very serious" injury that would result from the production of the documents, the undersigned find that documents withheld on confidentiality grounds (including designations of "trade secret" or "proprietary") must be produced if they have not been deemed properly withheld on attorney-client privilege grounds. Monsanto has requested that such production, if deemed required, be subject to a limitation that the documents be viewed only by outside counsel.[79] During the March 17, 2017 hearing before Judge Thomas M. Sipkins in the Minnesota action, Syngenta stated it had no objection to production of the documents with an "outside counsel eyes only" designation. Plaintiffs state they have no objection to designation of the documents as "Highly Confidential" under the MDL protective order (ECF No. 294), which would generally limit access to counsel (outside and in-house) and prohibit access by the parties (such as Syngenta's officers, directors, or employees), and that they "are willing to discuss with Monsanto the appropriate limitations put on any documents the Court requires

---

[79]ECF No. 2849 at 23.

Carrato to disclose."[80]

To alleviate any concern by Monsanto that disclosure of the documents to Syngenta's in-house counsel could put Monsanto at a competitive disadvantage, we follow the approach taken in *Western Resources Inc. v. Union Pacific R. Co.*[81] (a case plaintiffs themselves describe as "very similar") and limit disclosure of the documents to outside counsel and other individuals that have a need to know (such as mediators and copy-service personnel).[82] With this additional protection that will prohibit access to the documents by Syngenta, its employees, and its in-house counsel, Monsanto's "claims of harm—i.e., [plaintiffs'] potential competitive advantage—have no basis or foundation in fact."[83]

## V. The Monsanto-Carrato Relationship as a Basis for Quashing the Subpoenas

Mr. Carrato and Monsanto assert that Mr. Carrato should not be required to produce documents subject to the confidentiality agreements between them. Mr. Carrato cites

---

[80]ECF No. 2903 at 12 n.5.

[81]No. 00-2043, 2001 WL 1718370, at *6 (D. Kan. Sept. 12, 2001).

[82]The undersigned interpret this designation as permitting access to persons identified in the protective order as having access to information designated "highly confidential," with the exception of in-house counsel and other employees of Syngenta. *See* ECF No. 294 at 9–11.

[83]*Western Resources*, 2001 WL 1718370, at *6. *See also Taiyo Int'l, Inc. v. Phyto Tech. Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) ("Where the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant."); *Datcard Sys.*, 2011 WL 2491366, at *2 (concluding protective order's "outside counsel only" designation sufficiently protected confidential and proprietary information).

*Snowden v. Connaught Labs., Inc.,* in which the court held that the defendants were not required to produce documents in violation of a confidentiality agreement with a third party.[84] The undersigned respectfully decline to follow the *Snowden* result, which is not supported in the opinion by any reasoning or caselaw.

Monsanto also asserts that "Mr. Carrato has an ongoing professional obligation to Monsanto to maintain [documents] in confidence pursuant to the Rules of Professional Conduct of each of the three states in which Mr. Carrato was practiced [sic] law while employed as an attorney for Monsanto."[85]  Monsanto states the general rule that a lawyer's ethical duty of confidentiality extends beyond matters protected by the attorney-client privilege.[86]  However, Monsanto has not cited a case, and the undersigned know of none, in which a motion to quash a subpoena was granted on the basis that complying with the subpoena would violate this ethical duty.  Rather, the caselaw indicates that a client seeking to prevent disclosure of confidential information by his attorney (or former attorney) typically brings a separate injunctive action.[87]  Additionally, courts occasionally disqualify former counsel from serving as expert witnesses if their expert testimony relies on information

[84]136 F.R.D. 694, 699–700 (D. Kan. 1991).

[85]ECF doc. 2849 at 18–19.

[86]*Id.* at 20.

[87]*See Fundamental Admin. Servs., LLC v. Anderson*, No. JKB-13-1708, 2013 WL 5595933 (D. Md. Oct. 9, 2013) (cited by Monsanto in ECF No. 2849 at 20–21); *The Prudential Ins. Co. of Am. v. Massaro*, No. Civ. A. 97-2022, 2000 WL 1176541 (D. N.J. Aug. 11, 2000) (cited by Monsanto in ECF No. 2849 at 21).

gained in confidence in their role as counsel,[88] but that matter is the subject of separate motions to strike filed in these cases.[89]

In the end, Mr. Carrato's duties to Monsanto—arising either out of the confidentiality agreements or ethical rules—are not properly before the undersigned on the instant motions. Mr. Carrato ultimately may need to choose between complying with his obligations to Monsanto or withdrawing (or being stricken) as Syngenta's expert,[90] but the undersigned make no ruling on that question here.

## VI.    Mr. Carrato's Additional Objections to Production

Separate from his assertions of privilege and confidentiality, Mr. Carrato's responses to the subpoenas asserted objections based on relevancy and undue burden.  Plaintiffs move the courts to overrule these objections and compel production of the responsive documents. Mr. Carrato, as the objecting respondent, bears the burden of supporting his objections.[91]

---

[88]*See, e.g., Ross v. Am. Red Cross*, No. 2:09-cv-905, 2012 WL 2090511, at *1–3 (S.D. Ohio Jan. 11, 2012).

[89]ECF No. 2874 at 29-31;  Pls.' Mot. to Strike Testimony of J. Thomas Carrato, In re: Syngenta Litig., No. 27-CV-15-3785 (Minn. Dist. Ct. filed on Feb. 7, 2017).

[90]*See, e.g., Luminara Worldwide, LLC v. Liown Elec. Co. Ltd*., No. 14-3103, 2016 WL 6871374, at *3 (D. Minn. Oct. 10, 2016) ("If Luminara wishes to proceed with Patton as an expert it must produce the documents and information [requested] …. Alternatively, Luminara may withdraw Patton's designation as a non-reporting expert …."). Mr. Carrato testified at his deposition that he would not testify as to ethically or contractually confidential information.  *See* ECF doc. 2905-1 at ¶ 14.

[91]*See Slattery v. Mishra*, No. 13-1058, 2014 WL 1309070, at *5 (D. Kan. March 31, 2014).

A.    Relevancy

First, Mr. Carrato argues that none of the documents requested in the subpoena are relevant because he "did not look at or review any Monsanto documents in his possession in developing his expert opinions."[92]  He further notes that some of the documents predate the 2007 BIO Policy and argues that "Monsanto's past practices in the commercialization of other crops, at other times, has nothing to do [sic] Mr. Carrato's opinion as to Syngenta's commercialization of Viptera corn for the 2011 growing season."[93]  Monsanto, in support, argues that information about how Monsanto generally commercialized new GM traits and products must not be relevant to this action because if it were, plaintiffs would "have sought comparable discovery of other members of BIO in order to compare Syngenta's commercialization practices relative to other industry members."[94]

The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26.[95]  Thus, the relevancy standards set forth in Rule 26(b) apply here.[96]  At

---

[92]ECF No. 2905 at 1.

[93]ECf No. 2920 at 11.

[94]ECF No. 2921 at 14.  Monsanto raises this relevancy argument in the section of its brief arguing that it met its burden of demonstrating that a substantial harm would befall it if its confidential documents are released, such that the burden shifts to plaintiffs to demonstrate relevance and necessity.  Although, having found Monsanto did not establish harm, the undersigned did not go on to address the burden shifting relevant to that analysis, the relevancy finding here would further support denial of Monsanto's motion to quash the subpoena as to Monsanto's confidential documents.

[95]*Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014).  *See also Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D.

the discovery stage, relevance is broadly construed.[97] "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant.[98]

The undersigned have little trouble finding that the subpoenas request relevant information. Plaintiffs state the requested documents are necessary to effectively cross-examine Mr. Carrato, who has opined that Syngenta acted in accordance with the BIO Policy, which, according to him, is the industry standard. Plaintiffs state that the requested documents could show that Monsanto exceeded what Mr. Carrato states is required by the

---

443, 444 (D. Minn. 1997) ("Rule 45 Subpoenas are a method of 'discovery' under Rule 26.").

[96]*Transcor,* 212 F.R.D. at 591; *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013) (holding "subpoenas issued under Rule 45 are subject to the same 'constraints that apply to all of the other methods of formal discovery'" under Rule 26). *See also Marvin Lumber*, 177 F.R.D. at 443 (applying the time limits of Fed. R. Civ.P. 26(a)(5) to subpoenas issued under Rule 45).

[97]*See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc.*, No. 16-mc-212-JWL-GEB, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016); *State v. Deal*, 740 N.W.2d 755, 763 (Minn. 2007) ("[W]e have consistently construed the discovery rules in favor of broad discovery." (quoting *Larson v. Indep. Sch. Dist. No. 314*, 233 N.W.2d 744, 747 (Minn. 1975)).

[98]*Rowan v. Sunflower Electric Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and ruling the *Oppenheimer* standard still relevant after the 2015 Amendment to Rule 26(b)(1)). *See also Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action.") (internal quotations and citation omitted).

BIO Policy, and thereby "undermine Carrato's opinion that he has accurately stated the 'industry standard.' . . . If it turns out . . . that Monsanto was significantly more cautious in commercializing new GM traits than Syngenta, that would directly contradict Carrato's opinion."[99]  Plaintiffs have demonstrated that the documents bear on issues in these actions. It is of no matter that Mr. Carrato did not consider the documents in formulating his expert opinions—this simply has no bearing on the relevancy analysis.[100]   Moreover, the undersigned flatly reject Mr. Carrato's suggestion that only documents near in time to the 2011 growing season are relevant.  Mr. Carrato testified as his deposition that at least as early as 2006 Monsanto was "having discussions around the China regulatory system."[101]  And the BIO Policy itself, published in 2007, suggests specifically that member companies meet the applicable regulatory requirements in China.[102]   Thus, documents generated before 2010/2011 are unquestionably relevant to matters in these actions.  Mr. Carrato's relevancy objections are overruled.

### B.    Undue Burden

---

[99]ECF No. 2903 at 13.

[100]*See* Stip. and Order Regarding Expert Disclosure Protocol at ¶ 3, In re: Syngenta Litig., No. 27-CV-15-3785 (Minn. Dist. Ct. June 16, 2016) (specifically permitting experts to be "presented …with documents, testimony or other materials not contained in his or her expert report and questioned about whether the Expert saw or considered such … materials, the reasons why the Expert did or did not consider or rely on such … materials in formulating his or her opinions ….").

[101]ECF No. 2903-6 at 45.

[102]ECF No. 2903-12 at 4.

Second, in his response to plaintiffs' motion to compel, Mr. Carrato re-asserts his objection that producing withheld documents would be unduly burdensome, particularly considering his status as a non-party.[103]  As noted above, Fed. R. Civ. P. 45 and Minn. R. Civ. P. 45.01-45.06 govern the issuance of subpoenas to non-parties.  Federal Rule 45(c)(3)(A)(iv) states that a court "must quash or modify" a subpoena if it "subjects a person to undue burden."  Minnesota Rule 45.03 is in accord.  Non-parties responding to a Rule 45 subpoena are generally offered heightened protection from discovery abuse.[104]  "Whether a subpoena imposes an undue burden upon a [non-party] is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[105]  "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."[106]

---

[103]ECF No. 2920 at 5.

[104]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007) (citing Fed. R. Civ. P. 45(c)(1) (requiring a party serving a subpoena to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and imposing mandatory sanctions if this directive is not followed) and *Hefley v. Textron, Inc*., 713 F.2d 1487, 1497 n.2 (10th Cir. 1983) (recognizing, in dicta, that "discovery from non-parties is often more inconvenient and expensive than it is from parties")).

[105]*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citations omitted).

[106]*Id.* at 662–63.  *See also Datcard Sys.*, 2011 WL 2491366, at *2.

Here, Mr. Carrato does not argue the document requests are overbroad or vague. He simply asserts that he has *already* "engaged in a time-consuming and labor-intensive effort to respond to Plaintiffs' subpoenas,"[107] and submits a declaration detailing the steps he took and time he spent responding to the subpoenas.[108] Significantly, Mr. Carrato does not discuss in his brief or declaration the burden that will accompany any production of documents required by this order. Given that the documents have already been gathered and copies submitted to the courts, it is difficult to envision that producing specific documents to plaintiffs would take more than an hour or so. As discussed above, plaintiffs have demonstrated the requested documents are relevant, cover an appropriate time period, and are necessary to effectively cross-examine Mr. Carrato. In balancing the interests, we find plaintiffs' need for the documents outweigh Mr. Carrato's vague and unquantified burden of producing the documents. Mr. Carrato's undue-burden objections are overruled.

## VII.   Scope of Document Requests

In responding to five document requests,[109] Mr. Carrato limited his search and

---

[107]ECF No. 2920 at 5.

[108]ECF No. 2920-1.

[109]Request Nos. 3, 4, and 17 in the federal subpoena and Request Nos. 25 and 28 in the Minnesota subpoena. Mr. Carrato also limited his response to Request No. 13 in the federal subpoena, but plaintiffs do not object to Mr. Carrato's response to that request. *See* ECF No. 2939 at 11 n.8. Minnesota plaintiffs' motion to compel also concerned Mr. Carrato's response to Request No. 27 in the Minnesota subpoena. However, neither Request No. 27, nor Mr. Carrato's response, was limited to No. 2 yellow field corn so this Request is no longer in dispute.

resulting production to documents concerning No. 2 yellow field corn, the type of corn involved in these actions.  Plaintiffs move the courts to order Mr. Carrato to respond to the requests as written, i.e., as pertaining to all GM traits and extending to other products. Plaintiffs' motions are granted in this respect.

Request Nos. 3, 4, and 17 in the federal subpoena sought documents discussing or mentioning "channeling" or any instance in which a biotech company delayed commercialization of a new biotech trait until it had approval from another country.  Request Nos. 25 and 28 in the Minnesota subpoena sought documents supporting, refuting or discussing two opinions Mr. Carrato intends to proffer at trial: that (1) "Corn growers are fully aware of and routinely manage the inherent characteristics of their corn crop, including the open and cross-pollinating nature of corn" (Carrato Rep.  26); and (2) it is the "responsibility of growers and the rest of the grain channels to meet their obligations with regard to export" (Carrato Rep.  43).  Mr. Carrato objects that, as written to apply to all biotech traits, the requests are not relevant[110] and unduly burdensome.  The courts disagree.

First, as set forth above, the standard for relevance at the discovery stage is very broad and encompasses any information that could have a bearing on an issue in these actions.

_____

[110]Mr. Carrato also mentions that these requests are "patently overbroad," but it appears he is using this phrase interchangeably with "relevant."  An objection based on overbreadth typically asserts that a request's use of an omnibus term makes it very difficult to determine the scope of the request.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006).  If Mr. Carrato truly does mean to re-assert an overbreadth objection in his response to the motion to compel, it is overruled—the undersigned find the scope of the requests to be clear and reasonably limited.

Although the litigation arises out of a GM corn trait, Mr. Carrato's report indicates that he intends to testify about his view that the BIO Policy is the industry standards for the commercialization of new GM crop traits (not limited to corn) and apply these standards to Syngenta's commercialization of a corn trait.[111]  Because the BIO Policy, which encourages biotech companies to manage a product's introduction in the market so that choice of markets for that crop "are available and preserved," is not limited to corn traits,[112] the undersigned find relevant information in Mr. Carrato's possession indicating that a biotech company managed product introduction by channeling or delaying commercialization of the product, regardless of the specific GM trait in the product.[113]

Second, Mr. Carrato fails to carry his burden of showing that complying with these five document requests as written would have imposed on him an undue burden.  Mr. Carrato's declaration details the steps he took and time he spent responding to the document requests as limited, but does not address the effort, expense, or time that would have been required to  respond to the requests as written.

Accordingly, Mr. Carrato's objections to Request Nos. 3, 4, and 17 in the federal subpoena are overruled.  Mr. Carrato is ordered to respond to these document requests as they are written and supplement his document production with any new documents identified

---

[111]ECF No. 2874-2 at 14.

[112]ECF No. 2903-12 at 3.

[113]The scope of the MDL preservation order (ECF No. 368) is not pertinent to the relevance analysis, despite Mr. Carrato's argument to the contrary.

as a result.

The findings above apply with equal force to Request Nos. 25 and 28 in the Minnesota subpoena. The following additional findings further support the conclusion that Mr. Carrato has not met his burden to show that these requests are irrelevant or that requiring him to respond without limitation will impose an undue burden.

Request No. 25 requests "any Documents supporting, refuting, or discussing [Carrato's] assertion that 'corn growers are fully aware of and routinely manage the inherent characteristics of their corn crop, including the open and cross-pollinating nature of corn' as discussed in Paragraph 26 of your Report." Although this request might be read as limited to corn growers and their corn crops, the specific paragraph of Mr. Carrato's expert report specifically referenced in the request is not so limited. Rather, Paragraph 26 of Mr. Carrato's report states in full:

> Growers who purchase seed corn from technology provider seed companies are independent and sophisticated customers who purchase corn seed as one of many inputs to crops grown for their livelihood. Corn growers are fully aware of and routinely manage the inherent characteristics of their corn crop, including the open and cross-pollinating nature of corn.

Mr. Carrato states that his limitation of the scope of his response to Request No. 25 to No. 2 yellow field corn was reasonable because his opinion in Paragraph 26 of his report "is addressed to and only concerns No. 2 yellow field corn because Viptera corn seed

produces No. 2 yellow field corn."[114]  The undersigned disagree.  When discussing industry standards and practices in his expert report, Mr. Carrato did not state that any opinion (much less the opinion set forth in Paragraph 26) was limited to No. 2 yellow field corn.  Moreover, Mr. Carrato's opinion in Paragraph 26 extends to growers' "many" other crops—beyond just corn, let alone No. 2 yellow field corn—"grown for their livelihood."  Under the broad and liberal approach to discovery taken by Minnesota courts, Special Master Van de North finds that Mr. Carrato's relevancy objection as it relates to Request No. 25 is not well taken, and is therefore overruled.  Mr. Carrato is ordered to respond to this document request as it is written and supplement his document production with any new documents identified as a result.

With respect to Request No. 28, Mr. Carrato submitted an affidavit in opposition to the Minnesota plaintiffs' motion to compel stating that he did not limit his search for responsive documents to No. 2 yellow field corn, conceding that the "nature" of the request "do[es] not require that limitation."[115]  However, his written response to this request does, in fact, set forth an objection based on this limitation to No. 2 yellow field corn. Based on his assertion that he looked for all documents relevant to Request No. 28, Mr. Carrato is hereby ordered to amend his responses by removing this now irrelevant objection, and to supplement his document production with any new documents identified as a result of the

---

[114]Non-Party J. Thomas Carrato's Opp'n to Pls.' Mot. to Compel, at 4, *In re: Syngenta Litig.* (Minn. Dist. Ct. filed on Feb. 23, 2017).

[115]*Id.*

elimination of the No. 2 yellow corn limitation.

IT IS THEREFORE ORDERED that the motions to quash are granted in part and denied in part, and the motions to compel are granted in part and denied in part.  Mr. Carrato shall produce documents to plaintiffs as ordered herein by **March 27, 2017**.  Mr. Carrato shall supplement his responses to Request Nos. 3, 4, and 17 in the federal subpoena and Request Nos. 25 and 28 in the Minnesota subpoena by **March 31, 2017.**

Dated March 24, 2017.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

 s/ John B. Van de North
Hon. John B. Van de North (Ret.)
Special Master