IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162          )          MDL No. 2591
CORN LITIGATION                     )
                                    )          Case No. 14-md-2591-JWL
This Document Relates To:           )
                                    )
    The Nationwide and Kansas Classes )
    Certified by the Court          )
_____)

## MEMORANDUM AND ORDER

In this multi-district litigation (MDL), plaintiffs assert various claims against

defendants (collectively "Syngenta") relating to Syngenta's commercialization of corn

seed products known as Viptera and Duracade, containing a genetic trait known as MIR

162, without approval of MIR 162 corn by China, an export market.  Plaintiffs, who did

not use Syngenta's products, allege that Syngenta's commercialization of its products

caused corn containing MIR 162 to be commingled throughout the corn supply in the

United States; that China rejected imports of all corn from the United States because of

the presence of MIR 162; that such rejection caused corn prices to drop in the United

States; and that plaintiffs were harmed by that market effect.  Plaintiffs assert claims

under the federal Lanham Act and various state-law claims.  By prior order, the Court

certified a nationwide Lanham Act class and state-wide classes for claims under the law

of Arkansas, Illinois, Iowa, Kansas, Missouri, Nebraska, Ohio, and South Dakota.  *See*

*In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856 (D. Kan. Sept. 26, 2016).

The Court has first set for trial the claims of the Lanham Act class and the Kansas state

class (which asserts only a claim of negligence), and the Court has entered a pretrial order to govern that trial. By prior order, the Court ruled that these summary judgment motions would cover only issues relevant to those claims.

This matter presently come before the Court on Syngenta's motion for summary judgment on various claims (Doc. # 2860) and plaintiffs' motion for summary judgment on various defenses (Doc. # 2858). For the reasons set forth below, the Court **grants in part and denies in part** both motions. The Court grants Syngenta's motion with respect to all claims under the Lanham Act. The Court also grants Syngenta's motion with respect to any claim of negligence in which liability is based on any alleged misrepresentation, a voluntary undertaking, a failure to warn, or a duty to recall. The Court grants plaintiffs' motion with respect to Syngenta's defenses of intervening cause (as applied to Cargill and ADM and as applied to some acts of China), assumption of the risk, mitigation, business and economic justification, antitrust preemption, and comparative fault. The parties' motions are otherwise denied.[1]

I.      **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a

---

[1]The parties' *Daubert* motions remain pending. If either side believes that these summary judgment rulings affect or moot part or all of any such motion (for instance, because that witness is no longer expected to testify), it should file a notice to that effect by April 7, 2017.

matter of law." Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J.*

*Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II.     Lanham Act Claims

Plaintiffs have asserted claims under the false advertising provision of the federal Lanham Act, which provides for liability of one who makes false or misleading representations in commercial advertising or promotion. *See* 15 U.S.C. § 1125(a)(1)(B). Plaintiffs' Lanham Act claims are now based solely on representations by Syngenta employee Chuck Lee in an August 17, 2011, letter to all Syngenta purchasers (the "Grower Letter").[2]  In particular, plaintiffs rely on the statement from the Grower Letter that Syngenta expected import approval from China for Viptera in late March 2012.[3]

------

[2]In its summary judgment response brief, plaintiffs withdrew a Plant with Confidence Fact Sheet as a basis for Lanham Act liability.  Claims based on other documents were dismissed previously.

[3]In its motion, Syngenta argued that other statements in the Grower Letter—that Chinese orders for United States corn had increased and that China had not previously represented a substantial portion of the U.S. corn expert market—were not false and thus are not actionable.  Plaintiffs addressed those representations only in a footnote, arguing that such statements were misleading because they did not fully describe the increase in demand from China.  In light of the Court's ruling on causation, however, the Court need not decide whether plaintiffs have sufficiently preserved a claim based on these
(continued...)

Syngenta argues as a matter of law that plaintiffs cannot prove causation as required for this claim. Although plaintiffs do not explicitly dispute that causation must be shown, they suggest that the Tenth Circuit has not expressly required causation in listing the elements of this claim. It is clear, however, that plaintiffs must prove that their injuries were caused by the alleged misrepresentations. The statute itself provides for a claim by a person "damaged *by* such act" of deception, *see id.* (emphasis added), and the Supreme Court has held that a plaintiff asserting a claim under this statute must prove injury proximately caused by the misrepresentation, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). *See also University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2524-25 (2013) (causation in fact is a standard requirement of any tort claim, including certain federal statutory claims). Moreover, the Tenth Circuit, in listing the required elements, has referred to false or misleading representations "that are . . . likely to cause confusion . . . and injure the plaintiff," and causation is thus required because the representation must injure the plaintiff. *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002) (quoting *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999)); *cf. Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000) (presumption of causation arises only "when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented product").

---

[3](...continued)
additional representations in the Grower Letter.

Plaintiffs do not take issue with Syngenta's premise that, in order to prove causation in fact here, plaintiff must show both that farmers read and were influenced by the Grower Letter and that the impact of the letter was great enough to cause the embargo that allegedly caused the price drop in this country. In arguing that plaintiffs cannot produce such evidence, Syngenta notes that of the more than 100 farmers deposed in this MDL and the related Minnesota litigation, only one testified that he had seen the Grower Letter, and none testified that he purchased Viptera or Duracade because of that letter. Syngenta further notes that plaintiffs did not conduct any relevant survey of farmers. Nor have plaintiffs offered any expert opinion that sales attributable to the Grower Letter were such that plaintiffs' injuries would not have occurred otherwise. In their cursory response to this argument, plaintiffs cite only evidence that the Grower Letter was intended by Syngenta to provide assurance to potential purchasers of Viptera and that sales of the product did increase from 2011 to 2012. Plaintiffs have provided no evidence, however, that the increased sales may be traced to the Grower Letter (let alone to the particular statements in that document at issue here). Plaintiffs also argue, without citation to evidence, that the Grower Letter "prolonged and increased the risk of a trade disruption with China." Plaintiffs have not provided any evidence, however, that their injuries would not have occurred but for increased sales traced to the letter.

Plaintiffs have not addressed at all Syngenta's argument based on the fact that, by the time of the Grower Letter in August 2011, Syngenta had been selling Viptera for many months and planting for the 2011 season had been completed. Thus, under

plaintiffs' own theory of liability here (under which contamination of the entire corn supply through cross-pollination and commingling was inevitable without additional safeguards), there was already more than enough corn containing MIR 162 in the system to cause the alleged trade disruption. Thus, there is no evidence that sales occurring after the Grower Letter affected the fact or duration of plaintiffs' economic injuries. That lack of evidence, along with the lack of evidence that the alleged misrepresentations caused any increase in sales, means that plaintiffs have failed to provide the necessary evidence of causation. Syngenta is therefore entitled to summary judgment on plaintiffs' Lanham Act claims.[4]

### III.   Negligence Claims

#### A.   *Liability Based on Alleged Misrepresentations*

Syngenta seeks summary judgment on plaintiffs' negligence claims to the extent they are based on alleged misrepresentations made in Syngenta's deregulation petition or in the course of Syngenta's suit against Bunge. Syngenta argues that such representations are protected by the Constitution's Petition Clause. Syngenta also seeks summary judgment more broadly on any claim based on an alleged misrepresentation, for the reason that plaintiffs have not pleaded or preserved a claim for negligent misrepresentation. In its order dismissing certain negligence claims as preempted, the

---

[4]In light of that ruling, the Court declines to address Syngenta's other arguments relating to the Lanham Act claims.

Court ruled as follows:

> [P]laintiffs argue that they have alleged various false and misleading representations by Syngenta and that such claims should not be preempted. The Court agrees with Syngenta, however, that plaintiff by these complaints have not asserted any claim for negligent misrepresentation. Thus, there is no basis for Syngenta's liability based on false representations or omissions of fact in communications with plaintiffs.

*See In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 4382772, at *9 (D. Kan. Aug. 17, 2016) (footnote omitted).

In response, plaintiffs insist that they are not asserting any negligent misrepresentation claims. Instead, they argue, the alleged misrepresentations are part of the totality of Syngenta's conduct regarding the commercialization of Viptera that was allegedly unreasonable. In that regard, they note various experts' opinions that the applicable standard of care includes transparency in communications.

The Court rejects this argument by plaintiffs. The law sets forth certain requirements for liability based on negligence with respect to representations, and plaintiffs may not circumvent those requirements by basing an ordinary negligence claim on alleged misrepresentations. *See Rodriguez v. ECRI Shared Servs.*, 984 F. Supp. 1363, 1368 (D. Kan. 1997) (plaintiff could not base negligence claim on statements to a third party; "to hold otherwise would allow plaintiff to circumvent the more stringent requirements of the torts of defamation, negligent misrepresentation, and tortious interference"). Plaintiffs cannot avoid that result by alleging that additional conduct was also negligent, as any liability would then improperly be based, at least in part, on

8

alleged misrepresentations, without plaintiffs' having satisfied the requirements for the applicable tort. Thus, the Court rules that alleged misrepresentations cannot be part of the conduct the reasonableness of which the jury determines. Accordingly, Syngenta is awarded summary judgment on any claims of negligence based in whole or in part on any alleged misrepresentation, including any misrepresentation made in the deregulation petition or the *Bunge* suit.

Plaintiffs also argue that Syngenta's alleged misrepresentations may have other evidentiary value, including with respect to the issue of punitive damages. Evidentiary issues are not before the Court in these motions, however, and the Court thus makes clear that by this order it does not rule on the admissibility of any particular evidence.

### B.    *Voluntary Undertaking*

Plaintiffs assert, as an alternative basis for a duty, that Syngenta owes a duty to them under the voluntary undertaking doctrine as recognized in *McGee ex rel. McGee v. Chalfant*, 248 Kan. 434 (1991). In *McGee*, the Kansas Supreme Court held that, even in the absence of a special relationship, "the actor may still be liable to third persons when he negligently performs an undertaking to render services to another which he should recognize as necessary for the protection of third persons," as set forth in Section 324A of the Restatement. *See McGee*, 248 Kan. at 438 (citing Restatement (Second) of Torts § 324A). Plaintiffs argue that Syngenta voluntarily undertook compliance with the BIO Policy concerning the commercialization of new GM products.

The Court agrees with Syngenta, however, that Section 324A cannot apply here

because plaintiffs have not sought to recover for physical harm in this case. The Restatement section provides for liability "for physical harm resulting from [the actor's] failure to exercise reasonable care to protect his undertaking," *see* Restatement (Second) of Torts § 324A, and the Kansas Supreme Court has specifically held that Section 324A "has application only in cases involving physical harm." *See Barber v. Williams*, 244 Kan. 318, 324 (1989); *see also Geiger-Schorr v. Todd*, 21 Kan. App. 2d 1, 8-9 (1995) (in rejecting application of the similar Section 323 to a claim for economic harm, noting that "Kansas courts have not applied § 323 to hold an actor liable for non-physical harm to persons or things"). Plaintiffs argue that courts in other jurisdictions have applied Section 324A to claims for economic harm, but Kansas courts have specifically limited the application of Section 324A to its explicit terms and thus to claims for physical harm, and this Court must abide by that law as set forth by the Kansas Supreme Court.

Plaintiffs also argue that Syngenta's actions increased the *risk* of physical harm to farmers' property. The Restatement, however, provides only for *liability* for physical harm, and plaintiffs seek only to recover for economic injuries in this case. Accordingly, Syngenta is awarded summary judgment on any negligence claim based on this theory of duty.

C.      *Failure to Warn*

This Court previously dismissed, on the basis of FIFRA preemption, "any claim based on an alleged failure to warn to the extent that such claim is based on a lack of warnings in materials accompanying the products." *See In re Syngenta AG MIR 162*

10

*Corn Litig.*, 131 F. Supp. 3d 1177, 1208 (D. Kan. 2015).  Syngenta now seeks summary judgment on any other failure-to-warn claim asserted by plaintiffs.  Plaintiffs respond that they are not asserting a failure to warn as a separate basis for liability (as might be asserted in a product liability case).  Thus, the Court awards Syngenta summary judgment on any claim based solely on a failure to warn.

Plaintiffs argue that they may allege a failure to warn as part of the totality of conduct by Syngenta that was negligent.  Syngenta responds that it is entitled to seek summary judgment with respect to part of plaintiffs' claim.  The particular conduct making up the alleged negligence may not so easily be segregated, however, as the reasonableness of Syngenta's conduct must be judged based upon the totality of the circumstances, and the Court thus declines to prohibit plaintiffs' reliance on an alleged failure of Syngenta to warn or instruct farmers.[5]  Similarly, as noted above, the Court by this order makes no ruling concerning the admissibility of particular evidence at trial.

>    D.    *Duracade*

Syngenta seeks summary judgment to the extent that plaintiffs' claims are based on the commercialization by Syngenta of the Duracade product, which, like Viptera,

---

[5]This issue is distinguishable from the issue regarding misrepresentations addressed above, as Syngenta has not identified any element of proof that plaintiffs may be circumventing by their assertion of an ordinary negligence claim.  It is also distinguishable from Syngenta's request for summary judgment on plaintiffs' negligence claims to the extent based on a duty to conduct a limited launch of the products; as discussed below, that theory is appropriately adjudicated at summary judgment because it is in the alternative to the theory based on a duty not to commercialize at all.

contained the MIR 162 trait.  Plaintiffs argue that they are alleging not that they suffered a separate injury from the release of Duracade, but rather that the release prolonged the period of harm, and that Syngenta therefore should not be permitted to seek summary judgment on this basis.  The Court rejects this argument, however, as Syngenta is certainly entitled to seek summary judgment with respect to a portion of the damages period extending beyond the time of Viptera's approval in China in 2014.

Syngenta argues that plaintiffs lack the required evidence that Duracade had any impact on corn prices.  Syngenta acknowledges that plaintiffs' experts did offer such an opinion, but it argues that those experts improperly relied only on speculative evidence. The Court rejects this argument.  Both experts relied on testimony by a Cargill employee that Cargill "could be" going through the same situation with Duracade that it had experienced with Viptera.  Syngenta paints that testimony as speculative.  The employee testified, however, that Cargill did not export corn to China after Viptera had been approved there because Duracade had been released and had not been approved.  That testimony is not impermissibly speculative, and plaintiffs' experts were entitled to rely on that evidence in opining that the release of Duracade did have a causative effect. Thus, plaintiffs have offered evidence on this issue, and the Court cannot conclude that no reasonable jury could award damages based on Syngenta's actions concerning Duracade.  The Court therefore denies Syngenta's motion as it relates to this issue.

## E.   *Liability Based on a Duty to Conduct a Limited Launch*

Syngenta seeks summary judgment on plaintiffs' negligence claims to the extent

12

that such claims are based on a duty to conduct only a limited launch of Syngenta's products.  Syngenta argues as a matter of law that plaintiffs cannot show the requisite causation under such a theory.

As a preliminary matter, the Court rejects plaintiffs' argument that Syngenta may not seek summary judgment on this portion of plaintiffs' negligence claims.  The applicable rule allows for summary judgment with respect to part of a claim, *see* Fed. R. Civ. P. 56(a), and as Syngenta points out, plaintiffs' theory based on a duty to conduct a limited launch is discrete from its alternative theory that Syngenta had a duty not to commercialize the products at all until they had been approved in China.

Syngenta argues that *any* launch would have resulted in the presence of MIR 162 in the general corn supply through inevitable cross-pollination and commingling; that such presence would have resulted in the same trade disruption and embargo in light of China's policy of zero tolerance for corn with the MIR 162 trait; and that therefore Syngenta's failure to limit or safeguard its launch cannot have caused plaintiffs' economic injuries because there would have been the same effect on the market with *any* launch.  The Court agrees with Syngenta that in order to prove causation under this theory, plaintiffs must show that its is more likely than not that a limited launch would not have caused the same trade disruption with China that allegedly occurred because of Syngenta's unlimited launch of Viptera.  The Court does *not* agree with Syngenta, however, that, in light of China's zero-tolerance policy, plaintiffs effectively must show that no kernel of corn with the MIR 162 trait would have reached China under a limited

launch.  Plaintiffs have provided evidence that China tested only a small percentage of kernels sent to its shores, and plaintiffs can satisfy their burden by showing merely that it is more likely than not that no trade embargo would have occurred.

Syngenta argues that expert testimony is required on this question of causation and that plaintiffs cannot point to any such admissible evidence.  In *Moore v. Associated Material and Supply Co., Inc.*, 263 Kan. 226 (1997), the defendant argued that "where the existence of proximate cause is not apparent to the average layman from common knowledge, expert testimony is required to establish causation."  *See id.* at 234.  The Kansas Supreme Court concluded that its prior caselaw did not support such a broad statement, that those cases only required expert testimony to establish negligence based on the departure from the reasonable standard of care in a particular profession, and that "[h]oldings of an expert testimony requirement outside the area of professional liability, where breach of a standard of care must be proven, are not easily found."  *See id.* at 234-35.  The court quoted with approval from a legal encyclopedia as follows:

> While the testimony of witnesses having specialized education and training, or special experience and knowledge, is often admitted into evidence on the ground of necessity, a party is not necessarily required to resort to expert opinion testimony merely because the case involves matters of science, special skill, special learning, knowledge, or experience which may be difficult for jurors to comprehend.

*See id.* at 236 (quoting 31A Am. Jur. 2d, *Expert and Opinion Evidence* § 40 at 49).  The court held that expert testimony was not required in its case involving flood damage and that non-expert evidence from the defendant's own employees and other witnesses was

14

sufficient to create an issue for the jury. *See id.* at 242. The present case does not involve professional liability, and thus expert testimony is not necessarily required, and the Court therefore examines all of the evidence (in the light most favorable to plaintiffs) to determine whether a fact question exists.

To begin with, plaintiffs have provided expert evidence on this question, as its designated expert, Cargill employee Randy Giroux, stated in a declaration his opinion that it is more likely than not that exporters could have serviced Chinese demand for U.S. corn if Syngenta had taken certain precautions in launching Viptera. Syngenta does not dispute that such evidence would ordinarily be sufficient to create a question of fact on this issue of causation. Syngenta argues instead that Mr. Giroux's statement should be disregarded because it conflicts with his earlier deposition testimony. Under Tenth Circuit law, an affidavit may not be disregarded simply because it conflicts with the affiant's prior sworn statements, but a court may disregard the affidavit if it concludes that it constitutes an attempt to create a sham issue of fact. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). The Court is not persuaded that Mr. Giroux's declaration should be disregarded here, as it does not agree that the prior testimony is necessarily contradictory. In the deposition, Mr. Giroux testified that it was unlikely that Syngenta could have managed "to zero tolerance under a limited launch;" that "zero tolerance is impossible as a standard to meet;" and that he did not think that one could find anyone in the grain or seed industry "who says they can contain pollen to 100 percent." In the

15

light most favorable to plaintiffs, that testimony merely means that, in Mr. Giroux's opinion, a limited launch could not result in keeping *all* MIR 162 corn out of exported corn.  That is not necessarily the same as an opinion that a limited launch could, more probably than not, avoid the embargo.  As noted above, plaintiffs need not prove that no MIR 162 kernel would reach China, but they must only prove a likelihood that China would not have turned back U.S. corn.  Thus, the prior testimony and the declaration are not necessarily irreconcilable, and the Court therefore will not disregard the declaration. That declaration provides evidence sufficient to create a question of fact on causation.[6]

Moreover, plaintiffs have provided other evidence, which, when viewed in the light most favorable to plaintiffs, suggests that a limited launch could have avoided a trade disruption.  For instance, in agreeing to abide by the BIO policy, Syngenta agreed to manage launches of new products to avoid trade disruption in key export markets; thus, there is evidence that Syngenta believed that limited launches could be successful in avoiding trade disruptions.  Syngenta's expert conceded that a limited launch would have at least reduced the possibility of MIR 162 corn reaching China.  Limited launches of other products, including by Syngenta, have been successful. Finally, Syngenta stated in its deregulation petition that it would require the diversion of MIR 162 corn away

---

[6]Plaintiffs state that they were not obliged to produce an expert report for Mr. Giroux because he was not a retained expert.  Plaintiffs have not explained why that is the case under the applicable rule, although Syngenta has not challenged that designation.  Nevertheless, in light of this new declaration and given the absence of an expert report, the Court will permit Syngenta to depose Mr. Giroux again, out of time, if it so desires, with questioning limited to the subjects of the declaration.

from export markets where the trait was not yet approved and that such ability to channel corn was not merely hypothetical. Syngenta argues that none of those pieces of evidence proves that a limited launch could have been successful in keeping MIR 162 corn out of China. This evidence, however, taken with Mr. Giroux's declaration, is sufficient to create question of fact for the jury. The Court thus denies Syngenta's motion for summary judgment with respect to liability based on a duty to conduct a limited launch.

Syngenta also seeks summary judgment on any theory of liability based on a duty to recall seeds already sold, based on Kansas law that a manufacturer has no duty to recall upon learning of a potential danger incident to the use of its products after sale. *See Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 744-45 (1993) (answering certified question on the existence of such a duty in the negative). Plaintiffs respond to this argument by noting that such law would not relieve Syngenta of a duty to stop or limit future sales after learning of a potential risk of harm. Thus, plaintiffs have not defended a duty to recall here, and the Court therefore awards summary judgment to Syngenta on plaintiffs' negligence claims to the extent based on such a duty.

### F.   *Punitive Damages*

Syngenta also seeks summary judgment on plaintiffs' claims for punitive damages under Kansas law. Syngenta argues that this issue may be decided at this stage as a matter of law for three reasons, which the Court addresses in turn.

#### 1.   NOVELTY

Syngenta argues that due process and public policy prohibit an award of punitive

17

damages in this case as a matter of law because of the novelty of plaintiffs' theory of liability for negligence. Due process requires fair notice of the severity of the penalty that may be imposed by a state for particular conduct. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). In *Murphy v. City of Topeka-Shawnee County Department of Labor Services*, 6 Kan. App. 2d 488 (1981), in which a Kansas appellate court first recognized a cause of action for retaliatory discharge, the court stated that the allowance of punitive damages in that case would be unjust because it was not known to employers before that opinion that a retaliatory discharge could give rise to an action for damages. *See id.* at 497. Syngenta argues that there is no precedent for the imposition of a legal duty in these circumstances, and that such novelty of the theory of liability thus precludes an award of punitive damages.

This Court rejected that same argument in *Patton v. TIC United Corp.*, 859 F. Supp. 509 (D. Kan. 1994) (Lungstrum, J.). The Court first noted that in a subsequent case to *Murphy*, the Tenth Circuit had held that punitive damages could be imposed in a retaliatory discharge case involving union employees because the defendant had sufficient notice of the potential for punitive damages from *Murphy*, even though *Murphy* had involved non-union employees. *See id.* at 511-12 (citing *Southwest Forest Indus., Inc. v. Sutton*, 868 F.2d 352, 356 (10th Cir. 1989)). The Court in *Patton* then concluded that the case before it was more like *Southwest* than *Murphy*. *See id.* at 512. The Court reasoned that *Murphy* represented a clear reversal of Kansas law, in the sense that the specific conduct had been legal before that decision, while its own case involved

18

"a logical extension of the general common law of Kansas, which had long required a manufacturer to exercise reasonable care, to a specific factual situation which had not previously been considered by the Kansas Supreme Court." *See id.*

As in *Patton*, the Court concludes that the present case is more analogous to *Southwest* than to *Murphy* and that Syngenta had sufficient notice of the potential for liability here. Syngenta argues that no courts had previously recognized a duty under these circumstances in which a seed manufacturer launched a product after receiving approval from U.S. authorities. This is not a case, however, in which conduct that was clearly legal before has now become a basis for liability. The common law of Kansas has long required the exercise of reasonable care to prevent causing harm to others, and the duty asserted in this case arises from that basic principle. *See In re Syngenta*, 131 F. Supp. 3d at 1188-93 (relying on general tort principles in denying Syngenta's motion to dismiss plaintiffs' negligence claims for lack of a legal duty). Therefore, the Court rejects this basis for precluding punitive damages as a matter of law.

## 2.   PUBLIC POLICY

Syngenta also argues that an award of punitive damages here would be contrary to public policy and would exceed the liability necessary to punish or deter Syngenta for its conduct. *See Folks v. Kansas Power & Light Co.*, 243 Kan. 57, 78 (1988) ("The circumstances of each case determine whether the award of punitive damages is excessive and contrary to public policy."). Specifically, Syngenta argues that an award of punitive damages would not be in the public interest because Syngenta's

commercialization of Viptera was authorized by the United States; the allegedly negligent conduct did not result in physical injury or harm to property or the environment; and Syngenta's conduct did not result in a net social harm, as any resulting drop in prices provided a *benefit* to consumers of corn.

The Court rejects this argument as a basis for judgment as a matter of law. Syngenta has not cited any authority suggesting that the net harm to society should be considered with respect to punitive damages.[7] Moreover, whether there was a net benefit to society from Syngenta's actions (Syngenta has not cited any evidence in support of its claim that there was) is best determined by the jury upon consideration of the totality of the evidence. Syngenta has not discussed the evidence supporting an award of punitive damages, nor has Syngenta argued that the evidence (viewed in the light most favorable to plaintiffs) is not sufficient as a matter of law. Syngenta has certainly not persuaded the Court that punitive damages would not be appropriate on any facts here. For instance, if the evidence at trial showed that Syngenta wantonly released Viptera while knowing that the lack of approval in China would cause a serious trade disruption and a significant decrease in demand and prices in the United States, a reasonably jury could decide to award punitive damages. Therefore, summary judgment is not appropriate on this claim.

---

[7]The applicable Kansas statute does not include any such consideration in its list of factors that may be relevant to a determination of the amount of punitive damages to be awarded. *See* K.S.A. § 60-3702.

3.      DOCTRINE OF UNCLEAN HANDS

Syngenta argues that any award should be barred by the doctrine of unclean hands. Specifically, Syngenta argues that because some plaintiffs testified that they used other seeds unapproved by China or did not determine whether their seeds were approved in key export markets, plaintiffs should be deemed not to have handled "their GMO corn with the level of care they would impose on Syngenta." The Court rejects this argument for a number of reasons.

First, the Court agrees with plaintiffs that Syngenta has waived this defense by failing to include it in the pretrial order. Syngenta cites Kansas state-court cases in arguing that the doctrine of unclean hands is intended for courts' own protection and thus is not in the nature of a defense that must be pleaded. Matters of pleading, however, are governed by federal law, and the Tenth Circuit has referred to this doctrine as an affirmative defense. *See, e.g.*, *American Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992).

Second, Syngenta has not provided any authority under Kansas law for such an application of this doctrine. Syngenta notes that in *Smith v. Printup*, 254 Kan. 315 (1993), the court stated that "punitive damages may be regarded as equitable in nature," but the court made that statement in the context of concluding that a right to a jury trial did not exist for such a claim. *See id.* at 325. Syngenta has not cited any case applying the doctrine of unclean hands to a claim for punitive damages under Kansas law.

Third, in *Watco Companies, Inc. v. Campbell*, 52 Kan. App. 2d 602 (2016), on

which Syngenta relies, the court stated that "[t]he clean hands doctrine should only be applied to bar relief where a party has acted fraudulently, illegally, or unconscionably." *See id.* at 616.  Thus, Syngenta's reliance on plaintiffs' allegedly "parallel" conduct is not sufficient because mere negligence by a plaintiff is not enough to support application of the unclean hands doctrine.

Fourth, the court in *Watco* also noted that "application of the doctrine is only appropriate where the misconduct bears an immediate relation to the subject-matter of the suit and in some measure affects the equitable relations subsisting between the parties to the litigation arising out of the transaction." *See id.* (internal quotation omitted) (quoting *Green v. Higgins*, 217 Kan. 217, 221 (1975)).  The inequitable conduct by some plaintiffs alleged by Syngenta does not relate to these products at issue and thus does not bear an "immediate relation" to the subject matter of this suit. *See also Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004) ("[T]he 'unclean hands' doctrine does not empower a court of equity to deny relief for any and all inequitable conduct on the part of the plaintiff.  Instead, the inequitable conduct must be related to the plaintiff's cause of action.").

Finally, the Court would not apply an equitable doctrine before weighing all of the evidence in the case, and the doctrine therefore does not provide a basis for ruling against plaintiffs as a matter of law at this stage.  Accordingly, the Court denies Syngenta's motion as it relates to such damages.

22

IV.     **Defenses to Negligence Claims**

    A.     *Superseding Cause*

Syngenta seeks summary judgment on plaintiffs' negligence claims on the basis of its defense that the decision of two exporters, Cargill and ADM, to ship corn containing MIR 162 to China acted as a superseding cause that precludes proof of proximate cause and thus precludes liability. In support of that defense, Syngenta argues that Cargill and ADM decided not to ship corn to China because of Syngenta's sales of Viptera; that they then changed course and decided to ship corn to China, whether or not it contained MIR 162 corn; that Cargill tested corn and knew that it was sending MIR 162 corn to China; that those shipments violated Chinese law, contracts with Chinese buyers, and their own policies; and that it was China's rejection of those exporters' shipments that led to plaintiffs' damages. Plaintiffs also seek summary judgment on that defense as asserted by Syngenta. Plaintiffs further seek summary judgment on Syngenta's contention that China's rejection of U.S. corn also acted as a superseding cause of plaintiffs' economic injuries.[8]

Syngenta argues that plaintiffs bear the burden of proving an absence of superseding causes, as part of their obligation to establish proximate cause. The cases cited by Syngenta, however, do not discuss the burden of proof with respect to

---

[8]In response to plaintiffs' motion for summary judgment on any superseding cause defense, Syngenta has asserted only acts by Cargill and ADM and by China as superseding causes. Syngenta states that it does not assert that the acts of Viptera growers are superseding causes.

superseding cause.  The Tenth Circuit, in applying Kansas law, has held that "[w]hether a party's intervening cause produced the injury in question is a defense for which the defendant bears the burden of proof."  *See Roberts v. Printup*, 595 F.3d 1181, 1189-90 (10th Cir. 2010) (citing *Worden v. Union Gas Sys., Inc.*, 182 Kan. 775 (1958)).  Thus, Syngenta bears the burden of proving a superseding cause of plaintiffs' injuries.[9]

The Kansas Supreme Court has discussed proximate and intervening cause as follows:

> Kansas appellate courts have consistently defined "proximate cause" as that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

> This traditional statement of proximate cause incorporates concepts that fall into two categories: causation in fact and legal causation.  To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.  To prove legal causation, the plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable.  The concept of "intervening cause" relates to legal causation and does not come into play until after causation in fact has been established.

> An intervening cause is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.  An intervening cause absolves a defendant of liability only if it supersedes the defendant's negligence.  In other words, the superseding and intervening cause component breaks the connection between the

---

[9]Shifting the burden of proof would not alter the Court's conclusions in this order.

> initial negligent act and the harm caused. But, one more factor—foreseeability—must be considered. If the intervening cause is foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause.

*See Puckett v. Mt. Carmel Reg. Med. Ctr.*, 290 Kan. 406, 420-21 (2010) (citations and internal quotations omitted). In addition, in *Puckett* the Kansas Supreme Court endorsed the Kansas pattern instruction on superseding cause. *See id.* at 421-22 (citing PIK Civ. 4th § 104.03). That instruction provides as follows:

> When an injury is caused by unrelated acts occurring at different times, you must consider whether the last act alone would have caused the injury. If so, the person committing the first act is not at fault, unless the last act could have reasonably been foreseen by the person responsible for the first act.

*See* PIK Civ. 4th § 104.03.

Thus, as a requirement of the defense, the superseding cause must have been unrelated to and independent from the negligence of the defendant. *See id.*; *McDermott v. Midland Mgmt., Inc.*, 997 F.2d 768, 770 (10th Cir. 1993) ("Generally, there is no proximate cause where the chain of events is broken by the intervention of a *new, separate, wholly independent*, and efficient intervening cause.") (emphasis added) (internal quotations omitted) (quoting *Finkbiner v. Clay County*, 238 Kan. 856 (1986)); *Citizens State Bank v. Martin*, 227 Kan. 580, 588 (1980) ("This court has recognized that one person's negligence is not the proximate or direct cause of an injury where there is a *new, separate, wholly independent*, and efficient intervening cause of the injury and the loss.") (emphasis added); *Sly v. Board of Educ. of Kansas City*, 213 Kan. 415, 425

(1973) ("Defendant's negligence is too remote to constitute the proximate cause where an *independent* illegal, willful, malicious or criminal act of a third person, which could not reasonably have been foreseen, and without which such injury would not have been sustained, intervenes.") (emphasis added); *George v. Breising*, 206 Kan. 221, 227 (1970) ("When negligence appears merely to have brought about a condition or affairs or a situation in which another and *entirely independent* and efficient agency intervenes to cause the injury, the latter is deemed to be the direct and proximate cause and the former only the indirect or remote cause.") (emphasis added) (quoted in *Edwards ex rel. Fryover v. Anderson Eng'g, Inc.*, 45 Kan. App. 2d 735, 740-41 (2011)).

The Court first addresses Syngenta's contention that the decisions to ship corn to China by Cargill and ADM acted as intervening causes. Syngenta states rather conclusorily that those acts were independent of its own alleged negligence. On that point, Syngenta appears to argue only that when Cargill and ADM reversed course and decided to ship corn to China again, they were deciding to ship regardless of any traits present in the corn. The Court concludes as a matter of law, however, that the shipment of corn to China by Cargill and ADM was not unrelated to or independent from Syngenta's own negligence. Under plaintiffs' theory of liability, Syngenta acted negligently because it commercialized Viptera despite the lack of approval in China, which decision resulted in the presence of MIR 162 in corn shipped to China, with the resulting rejection of U.S. corn by China causing a drop in corn prices in the United States. That theory directly involves the shipment of corn to China, as under plaintiffs'

theory, shipments would not have triggered the rejection if Viptera had not been present. Thus, no reasonable jury could find that the shipment of corn to China by Cargill and ADM was an unrelated and independent intervening act.

Summary judgment is appropriate with respect to the assertion of Cargill and ADM as intervening actors for an additional reason. As noted above, the defendant must show that the intervening act alone would have caused the plaintiff's injury. *See* PIK Civ. 4th § 104.03; *Sly*, 213 Kan. at 425. Syngenta argues that China first rejected shipments by Cargill and ADM, and thus those specific shipments caused plaintiff's injuries. Syngenta does not dispute, however, that there were other exporters shipping corn to China in that period and that China rejected other shipments containing MIR 162 corn as well. Syngenta has not explained—or provided evidence to show—why, given the fact that others shipped corn to China, the same injuries to plaintiffs would not have occurred if Cargill and ADM had not shipped to China.[10] Nor has Syngenta cited any evidence to suggest that it did not expect that *anyone* would ship corn to China after the commercialization of Viptera. Therefore, the shipments by Cargill and ADM cannot qualify as superseding causes for that reason as well. Plaintiffs' motion for summary judgment is granted with respect to that alleged superseding cause, and Syngenta's motion for summary judgment is denied with respect to this issue.

---

[10]In addition, as plaintiffs note, if all exporters had chosen not to ship any corn to China, then the same loss of the China market would have occurred, and Syngenta has failed to explain how that would not have been the case.

27

In response to plaintiffs' motion, Syngenta also contends that China's delay in approving Viptera and its decision to ban the importing of U.S. corn serve as superseding causes. Any action by China concerning approval of Viptera or the rejection of MIR 162 corn, however, was not unrelated to or independent of the alleged negligence by Syngenta. Again, plaintiffs' theory of negligence involves the lack of approval by China and potential rejection by China of corn with unapproved traits, and the allegedly superseding acts by China therefore directly relate to Syngenta's own alleged negligence.

The only possible exception is Syngenta's contention that China actually decided to reject all U.S. corn for political reasons or for other reasons unrelated to the presence of any particular trait in the corn. A jury could reasonably find that such a rejection was unrelated to Syngenta's acts that allegedly led to the presence of a particular trait in corn shipped to China. In addition, the Court rejects plaintiffs' argument that any such rejection was foreseeable by Syngenta as a matter of law. The fact that Syngenta sought official approval from China for Viptera provides at least some evidence that Syngenta believed that approval might be granted, which in turn provides evidence that a ban on all U.S. corn for other reasons was not reasonably foreseeable to Syngenta. Thus, the Court concludes that an issue of fact remains for trial concerning this superseding cause as asserted by Syngenta. Summary judgment is awarded to plaintiffs, however, on all other superseding causes alleged by Syngenta.

## B.   *Assumption of the Risk*

In the pretrial order, Syngenta asserts, as a defense, "the doctrine[] of primary

28

and/or secondary assumption of the risk." In response to plaintiffs' motion for summary judgment, however, Syngenta concedes that Kansas no longer recognizes assumption of the risk as a defense in light of the statutory scheme of comparative fault. *See Simmons v. Porter*, 298 Kan. 299, 313 (2013). Accordingly, the Court grants summary judgment in favor of plaintiffs on any defense of assumption of the risk.

C.     *Mitigation*

Plaintiffs seeks summary judgment on Syngenta's affirmative defense that plaintiffs failed to mitigate their damages. *See Rockey v. Bacon*, 205 Kan. 578, 583 (1970) (under Kansas law, mitigation of damages is an affirmative defense on which the defendant bears the burden of proof). The parties agree that the applicable standard is whether the injured party acted reasonably. *See Steele v. J.I. Case Co.*, 197 Kan. 554, 565 (1966) ("The duty to mitigate damages is not an unlimited one; an injured party is bound only to exert reasonable efforts to avoid damage; his duty is limited by the rules of common sense."); *see also York v. InTrust Bank, N.A.*, 265 Kan. 271, 305 (1998) (rejecting mitigation defense where plaintiffs acted reasonably).

Syngenta argues that plaintiffs should have mitigated any damages caused by a drop in the price of corn by switching to different crops and reducing (or eliminating) their reliance on corn, or by storing corn for later sale, or by using corn only as feed. In support of its defense, Syngenta has cited only the following evidence: four deposed farmers did plant less or no corn because of the drop in price; various Kansas plaintiffs did not reduce their crop acreage but instead planted the same amount or increased their

29

corn plantings; one plaintiff testified that he did not plant less corn because prices dropped for other crops as well; and the effect of the loss of China as an export market dissipated over time.

The Court concludes that such evidence is insufficient as a matter of law. Syngenta has provided evidence indicating that farmers could have and did switch crops and that various plaintiffs did not do so, but it has not provided evidence concerning the particular circumstances facing any plaintiff. For instance, Syngenta has not provided evidence that any plaintiff would actually have made more money selling other crops, or had livestock to feed, or had the capacity to store corn. Thus, Syngenta's evidence does not create a reasonable inference that any particular plaintiff acted unreasonably. Rather, the jury would be left only with impermissible speculation with respect to the reasonableness of any plaintiff's actions, as well as with respect to the amount by which any plaintiff's damages should be reduced. *See Jackson v. City of Kansas City*, 263 Kan. 143, 148-49 (1997) (district court properly refused to give mitigation instruction where there was only speculation that plaintiff could have improved his condition without evidence to that effect); *see also Turner & Boisseau, Chtd. v. Marshall Adjusting Corp.*, 775 F. Supp. 372, 382 (D. Kan. 1991) (rejecting mitigation defense and awarding plaintiff summary judgment on its claim where defendants failed to provide any evidence indicating the amount by which damages would have been reduced). Accordingly, because Syngenta has failed to demonstrate an issue of fact on its mitigation defense, the Court awards plaintiffs summary judgment on that defense.

D.      *Business and Economic Justification / Antitrust Preemption*

In the pretrial order, Syngenta asserts the following defense: "Plaintiffs' claims are barred because Syngenta's conduct was reasonable and based on independent, legitimate business and economic justifications."  Plaintiffs seek summary judgment to the extent that Syngenta seeks to pursue such a defense as an affirmative defense (that is, not merely as an argument that its conduct was reasonable and not negligent), on the basis that Kansas has not recognized any such affirmative defense.

Syngenta responds that, by that defense, it seeks to address any contention by plaintiffs that Syngenta should have acted in coordination or otherwise entered into agreements with others in the industry.  Specifically, Syngenta argues that such a duty would violate and be preempted by federal and state antitrust statutes.

The Court agrees with plaintiffs that Syngenta has failed to preserve any such defense in the pretrial order.  A reference to reasonableness and legitimate business and economic justifications does not provide fair notice of an intent to assert a defense based on preemption and antitrust statutes (and Syngenta has made no attempt to explain how it does).  Syngenta has not pointed to authority recognizing any affirmative defense under Kansas law based on business and economic justifications, and the Court therefore awards plaintiffs summary judgment on such affirmative defense as asserted by Syngenta in the pretrial order.

The Court also rules that Syngenta has waived any defense based on antitrust

31

statutes, as the pretrial order makes no reference any such defense.[11]  Syngenta has not

sought to amend the pretrial order to assert such a defense; nor has Syngenta provided

good cause for any such amendment at this late date.  Accordingly, Syngenta will not be

permitted to assert at trial a defense based on federal or state antitrust statutes.

E.    _Comparative Fault_

Plaintiffs seek summary judgment on Syngenta's defense by which it seeks to

compare the fault of others who have allegedly contributed to plaintiffs' injuries,

pursuant to K.S.A. § 60-258a.  In this action, Syngenta seeks to compare the fault of

non-producers Cargill and ADM; the producer plaintiffs; and China.[12]

1.    CARGILL AND ADM

Syngenta argues that Cargill and ADM were at fault in shipping corn with MIR

162 to China.  Plaintiffs argue that Syngenta cannot show the causation required to

compare the fault of Cargill and ADM.  _See Reynolds v. Kansas Dept. of Transportation_,

273 Kan. 261, 269 (2002) (for purposes of comparative fault, "a party is at fault when

---

[11]In the pretrial order, Syngenta preserved a general preemption defense, but it marked that defense with an asterisk (*) to indicate that the defense was one that the Court had already addressed in rulings, which Syngenta therefore asserted only to preserve the defense for appeal.  The Court previously ruled only on preemption under the Grain Standards Act with respect to claims against Syngenta; thus, Syngenta preserved in the pretrial order only a defense of preemption under that statute.

[12]Syngenta made clear in its brief that it does not seek to compare the fault of non-party Viptera growers.  The Court rejects plaintiffs' argument that Syngenta waived its comparative fault contentions by failing to describe the fault sufficiently in its comparative fault disclosure and in the pretrial order.

he or she is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which claim is made"). As they did with respect to the issue of superseding cause, plaintiffs argue that their damages would have been the same even if Cargill and ADM had not shipped to China because of other exporters and because the China market would still have been lost if exporters had never shipped there.

In opposing summary judgment on this basis, Syngenta has cited only opinions by its experts that the loss of China as a market for U.S. corn would not necessarily have resulted in a decrease in worldwide demand (such decrease caused the drop in U.S. prices, according to plaintiffs' experts). As plaintiffs note, however, there were other exporters, and Syngenta's experts have not offered any causation opinion that addresses specifically the shipments by Cargill and ADM. Syngenta has not explained or offered evidence to show how the same embargo would not have occurred if only Cargill and ADM had decided not to ship to China. Moreover, if Syngenta is correct and the loss of China as a market for U.S. corn did not actually affect U.S. corn prices, then plaintiffs will not prevail and the jury will not reach the issue of comparative fault. If comparative fault does become an issue, it means that the jury agreed with plaintiffs that the loss of China as a market did affect U.S. prices. In that scenario, Syngenta has offered no evidence that the analysis would be affected at all by whether Cargill and ADM did or did not ship to China, or by whether the loss of China as a market was due to shipments that triggered a ban or to a refusal by exporters to ship to China at all.

Thus, Syngenta has not offered evidence to create a question of fact concerning whether shipments by Cargill and ADM to China caused plaintiffs' injuries. Accordingly, the Court awards summary judgment to plaintiffs on Syngenta's defense seeking to compare the fault of Cargill and ADM.[13]

### 2.   PRODUCER PLAINTIFFS

Syngenta also seeks to compare the fault of the producer plaintiffs themselves. Syngenta argues that plaintiffs should have taken some action at their farms to prevent the cross-pollination and commingling that allegedly led to China's refusal to accept U.S. corn.

First, the Court concludes that the federal Grain Standards Act (GSA) preempts the imposition of a legal duty on plaintiffs to channel or segregate corn.  The Court previously ruled that the Grain Standards Act preempts such duties.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1312519 (D. Kan. Apr. 4, 2016); *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 4382772, at *2-4, 8-11 (D. Kan. Aug. 17, 2016).  In response, Syngenta merely incorporates its response to the same preemption argument raised with respect to a comparison of the fault of Cargill and ADM.  In that latter response, Syngenta argued that recognizing a non-party's legal duty for purposes of comparative fault is not the same as *imposing* a legal duty for purposes of preemption of claims against that non-party, as nothing is imposed on the non-party if its fault is

---

[13]In light of this ruling, the Court does not address plaintiffs' arguments based on preemption and a lack of negligence.

34

merely compared in a suit involving others.  The Court was not required to rule on that argument (for which Syngenta offered no direct authority) with respect to Cargill and ADM.  The Court can say, however, that that reasoning cannot apply to the comparison of plaintiffs' fault, as recognition of a duty in this case (to compare fault) *would* effectively result in a penalty for plaintiffs, as their damages would be reduced because of their failure to fulfill that duty.  Thus, because comparison of plaintiffs' fault would impose a legal duty on plaintiffs, the preemption of any such duty by the GSA must preclude the comparison of fault.

Thus, Syngenta is left only with plaintiffs' alleged negligence in failing to prevent cross-pollination of the seed before the corn is grown (which duty would not be preempted under the Court's prior rulings).  Plaintiffs argue that summary judgment is appropriate on any such claim because of a lack of causation.  Specifically, plaintiffs argue that there is no evidence that they could in fact have prevented the cross-pollination that eventually led to their injuries.  In response, Syngenta points to its own argument that a claim based on Syngenta's alleged duty to have conducted a limited launch must fail for lack of causation in part because cross-pollination cannot be prevented.  Syngenta argues that if there is question of fact concerning cross-pollination in that context, then there must also be a question of fact in this context involving plaintiffs' own fault.  The Court rejects that argument.  In opposing summary judgment on its limited launch claim, plaintiffs cited evidence that cross-pollination could have been combatted by measures taken by Viptera growers (such as the planting of border

rows).  Syngenta has not provided any evidence that plaintiffs—who did *not* grow Viptera—could have prevented cross-pollination from Viptera growers' farms to other farms by any actions taken on plaintiffs' own farms.  Nor has Syngenta provided any evidence that it would have been reasonable for non-Viptera growers to have taken any particular measures, such that the failure to do so constituted negligence.[14]  Accordingly, the Court grants summary judgment on Syngenta's defense by which it seeks to compare the fault of plaintiffs.

### 3.   CHINA

Finally, Syngenta seeks to compare the fault of the Chinese government. Syngenta argues that China violated international treaty obligations and its own laws in delaying its approval of Viptera; enforcing certain of its regulations (requiring approval in another country before the manufacturer may apply for approval in China, imposing non-science-based requirements); issuing approvals only once per year; and rejecting U.S. corn for political or other non-science-based reasons.

As a preliminary matter, the Court rejects plaintiffs' argument that the act-of-state doctrine bars such an attempt to compare the fault of China, as the Court is not persuaded that the doctrine applies here.  The Supreme Court has held that the doctrine applies only

---

[14]As discussed above, Syngenta argued that expert testimony is required to establish negligence and causation in this case, and Syngenta has not provided any such expert testimony to support a contention that plaintiffs were at fault here.  The Court declined to impose a strict requirement of expert testimony in this case, but Syngenta has not provided evidence of *any* kind to support its contention.

"when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *See W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (emphasis in original); *see also id.* at 405 (doctrine applies only if the suit requires the court to declare invalid, and thus ineffective in this country, the official act of a foreign sovereign). In *W.S. Kirkpatrick*, the Court rejected the argument that if the plaintiff prevailed it necessarily would have proven that the foreign government's contract was unlawful; the Court held that that would still not suffice to invoke the act-of-state doctrine, as the case must turn on the validity of the acts. *See id.* at 406. In this case, Syngenta would not be required to show that any act by China violated international or its own laws; rather, to compare the fault of China, Syngenta would need only prove the breach of a duty to plaintiffs. Thus, the case does not turn on the validity of some act by China.

Plaintiffs argue that China's fault cannot be compared here because Syngenta cannot show that China owed a legal duty to plaintiffs. Syngenta asserts that China breached duties arising out of international World Trade Organization (WTO) treaties and China's own laws and regulations. More specifically, Syngenta contends in its brief that China violated those obligations in delaying its approval of Viptera; having and enforcing regulations requiring approval in another country before allowing a manufacturer to apply in China, and regulations imposing other non-science-based requirements; approving applications at only one time each year; and in rejecting U.S. corn because of political or other non-science-based reasons. Syngenta has not

explained, however, how China owed a legal duty specifically to plaintiffs.  A party's fault cannot be compared under K.S.A. § 60-258a unless that party owed a duty to the plaintiff.  *See Akins ex rel. Akins v. Hamblin*, 237 Kan. 742, 749 (1985) ("Without such a duty, a person cannot be at fault and therefore cannot . . . [have] his negligence compared.").

The Court agrees with plaintiffs that China had no legal duty to plaintiffs as a matter of law.  Syngenta has not cited any authority recognizing a sovereign's duty in tort to individual citizens of another country.  In the absence of such authority, the Court is unwilling to extend Kansas law so far as to recognize a government's duty to act for the benefit of individual non-citizens—especially with respect to that government's alleged duty not to have and enforce particular laws of its own.  Syngenta points to WTO obligations assumed by China, but those treaties were executed with other nations and were not executed for the benefit of individual citizens of other nations.  For instance, as plaintiffs note, Syngenta has not pointed to any provision of these treaties allowing for a private right of action or any other mechanism for enforcement by any party other than signatory nations.  *See Stutts v. De Dietrich Group*, 2006 WL 1867060, at *7 (E.D.N.Y. June 30, 2006) (treaties creating private rights of action are those that immediately create rights and duties of private individuals that are to be enforced by domestic tribunals, not by political branches of government); Restatement (Third) of Foreign Relations Law § 907 cmt. a (1987) ("International agreements, even those directly benefitting private persons, generally do not create private rights or provide for

a private cause of action . . .;" whether such a right is granted is a matter of interpretation of the agreement); *see also Pullen v. West*, 278 Kan. 183, 194 (2004) (a statute does not create a private right of action unless it was designed to protect a specific group of people instead of the general public and a private right of action was intended).

Syngenta argues that if it owes a legal duty to plaintiffs based on an interconnected web within the industry, so too must China, who occupies a place in that industry.  The Court has not ruled, however, that every party owes a legal duty to all other parties within the industry.  Indeed, the Court has previously rejected a similar argument by a group of plaintiffs attempting to impose a duty on grain handlers, who were farther down the supply chain from Syngenta, in the absence of a special relationship with corn growers, as recognition of such a duty would create too great a risk of open-ended liability.  *See In re Syngenta*, 2016 WL 4382772, at *5 (D. Kan. Aug. 17, 2016).  Although there is no risk of open-ended liability here, in light of China's immunity from suit, recognition of a duty as asserted against China would create the potential for defendants' liability to be lessened in every case implicating any government conduct or law.  The Court thus rejects as a matter of law Syngenta's attempt to impose on China a legal duty to U.S. corn farmers.

The Court also grants plaintiffs' motion with respect to China's comparative fault on the basis that Kansas law does not allow for the comparison of intentional conduct. The comparative fault statute refers only to the "negligence" of third parties.  *See* K.S.A. § 60-258a(c), (d).  As noted above, for purposes of applying that statute, "a party is at

fault when he or she is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which claim is made." *See Reynolds*, 273 Kan. at 269; *accord* PIK Civ. 4th § 105.01. Other than ordinary negligence, the Kansas Supreme Court has allowed application of the statute only for strict liability in tort, breach of implied warranty, and highway defects. *See M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, 687 (1984). The supreme court has not interpreted the statute to require the comparison of negligence with intentional wrongdoing. *See id.* Syngenta has not identified any authority allowing for other exceptions under Kansas law.

Syngenta argues that the Kansas rule is that the intentional acts of a third party cannot be compared with the negligent acts of a defendant whose duty it is to protect the plaintiff from the intentional acts. *See, e.g.*, *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 374-76 (1991). Syngenta argues that it had no duty to protect plaintiffs from China's dysfunctional regulatory system and that nation's violations of international and Chinese law. The Court concludes, however, that the recognition of the cited principle by Kansas courts does not provide authority that some intentional conduct may be compared under Section 60-258a. As already stated, Kansas courts have only allowed the comparison of negligence and specific other conduct not applicable here. For instance, in *Gould v. Taco Bell*, 239 Kan. 564 (1986), the Kansas Supreme Court, in relying on its reasoning from *M. Bruenger*, noted not only that the loss was caused in that case by the failure to prevent a theft, but also that the

court had never interpreted Section 60-258a to require comparison with intentional wrongdoing. *See id.* at 570-71 (citing *M. Bruenger*, 234 Kan. at 687). Thus, the general rule in Kansas does not allow for the comparison of intentional acts, and Syngenta has not identified an applicable exception to that rule for this case. *See Lynn v. Taylor*, 7 Kan. App. 2d 369, 373 (1982) (noting that there is "no authority for including an intentional tort such as fraud within the ambit of comparative fault principles").

Moreover, plaintiffs have alleged that Syngenta had a duty not to commercialize Viptera in a manner that would cause a trade disruption from the lack of approval in China, and they allege an injury caused by a breach of that duty that occurred after China rejected U.S. corn. Thus, the rejection of U.S. corn by China does fall within the scope of the alleged duty to protect against such harm. Plaintiffs need not show that the specific reason or manner of the rejection of U.S. corn was foreseeable to Syngenta for this purpose; rather it is the general duty to prevent harm that precludes comparison of third-party acts falling within the scope of that duty. *See M. Bruenger*, 234 Kan. at 687 (duty was to protect theft, regardless of the manner in which the thief caused the damage to the truck); *Gould*, 239 Kan. at 571 (duty was for safety of invitees). In this case, if Syngenta is found to have been negligent, the Court will have recognized a duty to plaintiffs that necessarily included the risk of loss of the China market due to China's rejection of U.S. corn. Accordingly, fault for the intentional acts of China in rejecting that corn may not be compared in this case.

Finally, Syngenta suggests that a jury could find that China was negligent in this

case, but it has not explained how China could have negligently rejected U.S. corn. Syngenta has not cited any evidence of negligence by China; nor has Syngenta asserted China's negligence in the pretrial order.  China's rejection of U.S. corn represents intentional conduct.

Accordingly, for this reason as well, the Court grants plaintiffs' motion with respect to this issue, and plaintiffs are awarded summary judgment on Syngenta's defense by which it seeks to compare the fault of China.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 2860) is **granted in part and denied in part**.  The motion is granted with respect to claims under the Lanham Act, and with respect to any claim of negligence in which liability is based on any alleged misrepresentation, a voluntary undertaking, a failure to warn, or a duty to recall, and defendants are awarded judgment on those claims.  The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' motion for summary judgment (Doc. # 2858) is **granted in part and denied in part**.  The motion is granted with respect to the defenses of intervening cause (as applied to Cargill and ADM and as applied to some alleged acts of China), assumption of the risk, mitigation, business and economic justification, antitrust preemption, and comparative fault, and plaintiffs are awarded judgment on those defenses.  The motion is otherwise denied.

IT IS SO ORDERED.


Dated this 5th day of April, 2017, in Kansas City, Kansas.


                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge