IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *Funk, et al. v. Syngenta Seeds, Inc., et al.*, | ) | |
| No. 16-2280-JWL | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

This single case within this MDL presently comes before the Court on the motion

to dismiss (Doc. # 2482 in the MDL docket) filed by Defendants Syngenta Crop

Protection, LLC; Syngenta Biotechnology, Inc.; Syngenta Seeds, LLC; and Syngenta

Corporation (collectively "Syngenta").[1]  For the reasons set forth below, the motion is

**granted in part and denied in part**.  The motion is granted with respect to the

following claims, which are hereby dismissed: (a) the request for a declaratory judgment

(Count I); (b) the claim under the IDCSA (Count V); (c) the negligence claim (Count

VI); (d) the contract claim based on a failure to provide first quality seed (Counts II and

III); (e) contract claims based on a failure to provide a portfolio of seeds, to the extent

based on seeds received from Syngenta before February 25, 2015 (Counts II and III); and

(f) claims for breach of the implied covenant of good faith to the extent based on the

_____

[1]The motion was not filed on behalf of two other Syngenta entities that were
named as defendants in this action, as those non-U.S. defendants had not been served at
the time the motion was filed.

theory that the breach hindered plaintiffs' own contractual performance (Count III), although plaintiffs are granted leave to amend their complaint, on or before **May 30, 2017**, to plead such claims adequately. Thus, all moving defendants other than Syngenta Seeds, LLC are hereby dismissed from this action. The motion is otherwise denied. Moreover, in light of these rulings, the remaining parties are ordered to show cause, by responses filed by **May 30, 2017**, why the Court should not suggest to the JPML that this case be remanded to its transferor court.

## I. <u>Background</u>

This MDL includes hundreds of similar suits filed against Syngenta by corn farmers. The suits generally relate to Syngenta's commercialization of genetically-modified corn seed products known as Viptera and Duracade (containing the trait MIR 162) without approval of such corn by China, an export market. Those plaintiffs, who did not use Syngenta's products, allege that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected imports of all corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that corn farmers were harmed by that market effect. The Court certified state-wide classes for claims under the law of eight different states.[2]

---

[2]The Court also certified a nationwide Lanham Act class, but it subsequently
(continued...)

The particular case within the MDL to which this order relates was brought by plaintiffs William Funk and Funk Seed, LLC (collectively "Funk"), who were seed distributors that entered into contracts with Syngenta. In Count I, Funk seeks a declaratory judgment to the effect that Noncompetition Agreements (NCAs) between the parties are unenforceable and a Master Agreement (MA) between the parties is terminated. In Count II, Funk alleges that Syngenta breached a Sales and Distribution Agreement (SDA) between the parties by (a) failing to provide Funk with "first quality seed," (b) failing to provide certain types of seeds, (c) failing to provide certain assistance to Funk, and (d) disclosing confidential information. In Count III, in the alternative to Count II, Funk alleges that Syngenta, by engaging in the same conduct at issue in Count II, breached an implied covenant of good faith and fair dealing. In Count IV, Funk alleges that Syngenta breached an express warranty in the SDA by failing to provide seed that conformed to the label description. In Count V, Funk alleges that Syngenta violated the Indiana Deceptive Consumer Sales Act (IDCSA) by making certain misrepresentations. In Count VI, Funk alleges that Syngenta was negligent in its commercialization of Viptera and Duracade.[3]

---

[2](...continued)
granted summary judgment in favor of Syngenta on the claims under that statute.

[3]The statutory and negligence claims are asserted against all defendants; the other claims are asserted solely against defendant Syngenta Seeds, LLC. In discussing a particular claim, the Court's reference to "Syngenta" includes any movant named as a defendant with respect to that claim.

## II.     Governing Standards

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.     Statutes of Limitation

### A.     *Contractual Limitation*

Syngenta argues that most of Funk's claims—all except the declaratory judgment count and contractual claim relating to Syngenta's alleged breach of confidentiality—are

4

barred by the one-year statute of limitations included in the parties' SDA. Article 10 of

the SDA (which was attached to the complaint) provides in relevant part as follows:

> **ARTICLE 10. <u>WARRANTIES</u>. SYNGENTA WARRANTS THAT ALL PRODUCTS SOLD HAVE BEEN LABELED AS REQUIRED UNDER APPLICABLE STATE AND FEDERAL SEED LAWS AND CONFORM TO DESCRIPTION ON THE LABEL WITHIN STANDARD TOLERANCES OR VARIATIONS. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WHICH ARE HEREBY EXPRESSLY DISCLAIMED. NO CLAIM SHALL BE ASSERTED AGAINST SYNGENTA UNLESS RESELLER REPORTS TO SYNGENTA, PROMPTLY AFTER DISCOVERY (NOT TO EXCEED THIRTY DAYS), ANY CONDITION THAT MIGHT LEAD TO A COMPLAINT. ALL CLAIMS MUST BE ASSERTED WITHIN ONE YEAR FROM THE DATE OF ACCEPTANCE OF THE PRODUCT. RESELLER'S EXCLUSIVE REMEDY FOR ANY CLAIM OR LOSS, INCLUDING, WITHOUT LIMITATION, CLAIMS RESULTING FROM BREACH OF WARRANTY, BREACH OF CONTRACT, TORT, STRICT LIABILITY OR NEGLIGENCE, SHALL BE LIMITED TO REPAYMENT OF THE AMOUNT OF THE PURCHASE PRICE. IN NO EVENT SHALL SYNGENTA BE LIABLE FOR ANY INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES.**

Funk has alleged that it received deliveries of seed from Syngenta between September

2013 and April 2015, and Syngenta thus argues that because Funk accepted seed more

than one year before it filed this suit on February 25, 2016, these claims are time-barred.

The Court concludes, however, that some of these claims are not subject to the

one-year limitations period contained in Article 10 of the SDA. In determining the scope

of the provision, the Court first rejects Funk's argument that it applies only to warranty

claims, as the limitation applies by its terms to "all claims." Article 10 is titled

"Warranties", but the scope of that entire article is plainly not limited to warranty claims, as Article 10 specifically refers to contract and tort claims as well.[4]  The Court next concludes that the plain meaning of Article 10 limits the reach of the one-year limitation to claims relating to the condition of the product received from Syngenta.  Article 10 first states that no "claim" may be asserted against Syngenta unless Funk reports within 30 days "any condition that might lead to a complaint;" and it then provides in the next sentence that all "claims" must be asserted within one year from the date of acceptance of the product.  In light of those two provisions, it is not reasonable to interpret the one-year limitation period as applying to any claims other than claims based on the condition of the product received from Syngenta.  *See Prior Lake State Bank v. National Surety Corp.*, 80 N.W.2d 612, 616 (Minn. 1957) (contractual provisions shortening the time for bringing an action are permitted but "are not especially favored and are construed strictly against the party invoking them").[5]  The one-year period thus applies to Funk's claims relating to Syngenta's failure to provide first quality seed (Counts II and III), Syngenta's failure to provide a certain portfolio of seeds (Counts II and III), and Syngenta's failure

_____

[4]The Court rejects Funk's argument that Article 11 of the SDA, which limits the parties' remedies, would be superfluous if Article 10 applied to claims other than warranty claims.  As Syngenta points out, Article 10 limits only Funk's remedies, while Article 11 is broader in applying to both sides.  Moreover, as discussed below, *see infra* Part IX, Article 11 reaches a broader range of claims.  Nothing in Article 11 suggests an interpretation of the one-year limitation period in a manner other than that applied by the Court.

[5]The parties agree that Funk's contract claims are governed by Minnesota law, in accordance with the parties' contractual choice-of-law provision.

to provide seeds conforming to the label (Count IV).  It does *not* apply to Funk's claims that Syngenta breached by failing to provide assistance and by disclosing confidential information, Funk's claim under the IDCSA, or Funk's negligence claim.[6]

Funk also argues that the Article 10 limitation should apply only to the signatories of the SDA—Funk Seed, LLC and Syngenta Seeds, Inc.  The claims within the scope of this provision, however, have been asserted only against Syngenta Seeds, LLC, the successor to Syngenta Seeds, Inc.  Funk argues that the limitation would not apply to Mr. Funk individually, but the Court rejects that argument, as Funk has alleged that "plaintiffs" (plural, referring to Mr. Funk and Funk Seed, LLC) entered into the SDA with Syngenta.  Thus, to the extent that Mr. Funk is able to assert a contractual claim under the SDA, he is subject to its terms.

Funk argues that the requirement that claims be "asserted" within one year does not mean that a lawsuit must be filed within that period, as a claim could be "asserted" merely by raising the issue with Syngenta.  The Court rejects that interpretation as inconsistent with the entirety of Article 10.  According to the plain terms of that article, Funk may only "assert" a claim (within one year) if it has first reported to Syngenta (within 30 days of discovery); thus, assertion of a claim for purposes of this provision requires more than merely raising the issue with Syngenta. The Court concludes that the plain meaning of the provision requires that any legal action be initiated within the one-

---

[6]Funk has not alleged that Syngenta wrongfully provided it with seeds containing MIR 162.

year period.

Finally, the Court rejects Funk's argument that the one-year limitation should not be applied because it is unreasonably short. *See id.* (parties to a contract may limit the time in which to bring an action "provided the limitation is not unreasonably short"); *see also Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 651 (Minn. 1986) (whether such a contractual limitation is reasonable is decided on a case-by-case basis). Funk argues that the period is unreasonable because it could expire before the wrong by Syngenta is discovered. That argument applies only to Funk's statutory and negligence claims, however, which the Court has ruled are not subject to this limitation. Funk has not shown that its contract and warranty claims would be subject to any discovery rule, and the condition of the seeds should be determinable at the time of receipt of those seeds. Moreover, it is not unreasonable for the one-year clock to restart for each delivery, as the condition of the seeds may vary among the different batches received. Funk has not cited any authority suggesting that one year is an unreasonably short period for the assertion of a claim based on the condition of such a product. *See Hayfield Farmers Elevator & Mercantile Co. v. New Amsterdam Casualty Co.*, 282 N.W. 265, 269 (Minn. 1938) (noting that numerous courts, including that court, have upheld limitations requiring suit within one year of the wrongful act).

Accordingly, based on the limitation in Article 10 of the SDA, the Court dismisses as time-barred any claim in Counts II and III for failure to provide certain seeds and any claim in Count IV for breach of warranty, which claims relate to seeds

received by Funk prior to February 25, 2015.

### B.  *Negligence*

Syngenta argues that Funk's negligence claim is untimely under Indiana's two-year statute of limitations, Ind. Code § 34-11-2-4.[7]  Under Indiana law, a tort claim accrues when the plaintiff knows or could discover with ordinary diligence that it has sustained injury because of the tortious conduct.  *See Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995) (citing *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 842-43 (Ind. 1992)).

Syngenta argues as a matter of law that Funk knew or should have known of its negligence claim before February 25, 2014.  Syngenta notes that China rejected the shipments of corn containing MIR 162 in November 2013, which fact was well publicized.  Any injury would have been sustained by Funk after that date, however. Moreover, Funk has not alleged that it was injured when the price of corn dropped as a result of that rejection; rather, Funk has alleged that it suffered injury when the market for Viptera and Duracade was damaged, which would not necessarily have occurred at the same time that corn prices dropped.  In its amended complaint, Funk has alleged that it first began to have problems selling Viptera and Duracade during the "2014 growing season," when growers told Funk that they would not buy the products because elevators

---

[7]In this MDL, the Court has applied the negligence law of the state of the particular plaintiff's residence.  The parties agree that Funk's negligence claim is governed by the law of Indiana, where both plaintiffs reside.

would not take that corn. Thus, accepting that allegation as true, the Court cannot say as a matter of law that Funk should have known of its injury by February 2014.[8]

Syngenta also argues that the Court should credit certain allegations in Funk's original complaint over those in the amended complaint. In its original complaint, Funk alleged that the market for Viptera had been irreparably damaged by December 2013 and that Funk "almost immediately" had problems selling Viptera and Duracade. The Court rejects this argument. First, the allegations are not necessarily inconsistent, as the Court, construing the allegations in Funk's favor, cannot conclude that "almost immediately" means that Funk suffered injury less than two months after December 2013. Moreover, even if the allegations were irreconcilable, the Court would consider the amended (superseding) allegations. Fed. R. Civ. P. 11 imposes certain obligations on attorneys in making allegations in complaints, and Syngenta may have recourse under that statute (although Syngenta has not established that any particular allegation is false here). Syngenta has not identified any authority, however, requiring this Court to disregard an allegation that conflicts with a preceding allegation.[9] Indeed, the fact of an inconsistency

_____

[8]Syngenta does not dispute Funk's statement that the growing season starts in April at the earliest.

[9]In *Bradley v. Chiron Corp.*, 136 F.3d 1317 (Fed. Cir. 1998), cited by Syngenta, the court merely upheld the district court's decision not to accept as true inconsistent allegations in an amended complaint. *See id.* at 1325-26. The district court had noted there that the amended complaint had not been filed as a matter of right, but rather leave had been granted for the amendment. *See id.* In this case, Funk amended as a matter of right.

does not mean that the earlier allegation is the true one, as a party might amend to correct a misstatement. Funk's counsel has attested to the amended allegations under Rule 11, and the Court therefore accepts them as true at this stage. Accordingly, the Court denies the motion to dismiss this claim as time-barred.[10]

## IV. **Declaratory Judgment**

In Count I of its amended complaint, Funk seeks a declaratory judgment to the effect that non-competition agreements between Syngenta and each plaintiff are unenforceable as unreasonable, and that a Master Agreement between the parties is therefore terminated (based on a provision that the Mater Agreement terminates when the non-competes do). Syngenta seeks dismissal of this count on the basis that there is no actual case or controversy here, as required by Article III of the Constitution, concerning the enforceability of the non-competes. In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court set forth the applicable standard as follows:

> Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what

---

[10]Funk also argues that the negligence limitations period may be tolled by Syngenta's fraudulent concealment. The parties have not addressed specifically the applicability of that doctrine to the negligence claim, and the Court need not address it at this time in light of its ruling that the negligence claim is not time-barred as a matter of law.

the law would be upon a hypothetical state of facts. ... Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*See id.* at 127 (internal quotations and citations and footnote omitted).

In applying that standard, a number of courts have held that, although an actual breach by the plaintiff is not required, an Article III case or controversy does not exist with respect to the enforceability of a non-competition agreement unless there has been conduct that will likely lead to litigation, such as threats of litigation by the defendant or steps taken by the plaintiff in preparation of competing in alleged violation of the agreement. For instance, in *Bruhn v. STP Corp.*, 312 F. Supp. 903 (D. Colo. 1970), the plaintiffs alleged that they desired and intended to compete in the future and that the defendant had refused to release them from the non-compete upon request. *See id.* at 905. Nevertheless, the court held that no justiciable controversy existed, as follows:

The act which would allegedly result in liability—plaintiffs' acceptance of employment in violation of the covenant—has not yet occurred. Also, none of the parties have taken steps or pursued a course of conduct which will necessarily lead to litigation in the immediate future. Plaintiffs' complaint does not allege that they have sought employment or begun preparations to sell or distribute products competitive to STP [the defendant]. It does not allege that defendant has threatened suit. Answers to interrogatories which have been filed by five of the plaintiffs indicate that they wish to sell or distribute products competitive to STP, but that none of them have any associates or business organizations with whom they plan to carry out such activities. Furthermore, none of the plaintiffs who have submitted answers to defendant's interrogatories have done anything to date regarding any such proposed activities. It is therefore clear that the plaintiffs are merely apprehensive, but have not nevertheless even begun to pursue a course of action which would lead them down the

path toward litigation.

> It is true that the defendant has refused to release plaintiffs from the terms of the covenant not to compete, but this in and of itself does not produce a case or controversy within the meaning of Article III of the U.S. Constitution. Possibly the acts of one party may crystallize the dispute sufficiently to warrant declaratory relief, but more is required than a mere refusal to release the plaintiff from the terms of a covenant not to compete. In the present dispute, there has been no threat of suit by the defendant, nor has the defendant claimed that any action heretofore taken by plaintiffs has resulted or will result in the immediate future in a breach of the covenant.

*See id.* at 906-07 (citation omitted). A number of courts have followed this reasoning by the court in *Bruhn*. *See Boudreaux v. OS Restaurant Servs., L.L.C.*, 2013 WL 5722714, at *4-6 (E.D. La. Oct. 21, 2013) (citing *Bruhn* in dismissing declaratory judgment action where complaint did not allege "either any specific threat of litigation or that [the plaintiff] has undertaken any specific course of action that will make litigation a certainty;" allegation that plaintiff's ability to support his family had been adversely affected was not sufficient); *Klosek v. American Express Co.*, 2008 WL 4057534, at *19-20 (D. Minn. Aug. 26, 2008) (citing *Bruhn*; neither the existence of a non-compete nor the expressed desire to compete in the future is sufficient to establish a controversy; there must be allegations that the plaintiff engaged in activity that violates the non-compete or that the defendant intends to enforce it), *aff'd*, 370 F. App'x 761 (8th Cir. 2010); *Lyman v. St. Jude Med. S.C., Inc.*, 423 F. Supp. 2d 902, 905-06 (E.D. Wis. 2006) (following *Bruhn*; plaintiffs did not allege that they had taken any steps to compete or that the defendant had threatened suit); *Mozdzierz Consulting, Inc. v. Mile*

*Marker, Inc.*, 2006 WL 799222, at *4 (E.D. Mich. Mar. 28, 2006) (following *Bruhn* in dismissing action where plaintiffs had not alleged that they were seeking contracts that might compete); *Weber v. Churchill Communications Corp.*, 1988 WL 10861, at *3 (S.D.N.Y. Feb. 10, 1988) (following *Bruhn* in granting summary judgment on declaratory judgment claim relating to a non-compete); *see also Cohen v. Orthalliance New Image, Inc.*, 252 F. Supp. 2d 761, 768 (N.D. Ind. 2003) (no actual controversy in absence of facts suggesting that competition was imminent). The Court is persuaded by the reasoning of these courts.[11]

In its amended complaint, Funk has alleged that after it provided notice to Syngenta of the unenforceability of the non-competition agreements, Syngenta "failed and refused to terminate" those agreements; that Syngenta "continues to attempt to enforce" the agreements; that Mr. Funk's primary business has been selling seed; and that Mr. Funk "desires to establish and operate a new seed business." As discussed in

---

[11]Funk cites *Work v. U.S. Trade, Inc.*, 747 F. Supp. 1184 (E.D. Va. 1990), in which the court, in finding an actual controversy, stated that the issue concerning a non-compete was not merely hypothetical because if the plaintiff had begun competing, the defendant may have sued. *See id.* at 1189. In that case, however, the court distinguished another case on the basis that the plaintiff in its case had alleged that the defendant had breached the agreement, which breach allegedly discharged the non-compete obligation. *See id.* at 1189 n.6. The court did not discuss *Bruhn* or its standard. *See id.* at 1189-90. Funk also cites *DeVries v. Pioneer Wireline Servs., LLC*, 2014 WL 6992266 (D. Mont. Dec. 10, 2014) (report and recommendation), *adopted*, 2015 WL 150248 (D. Mont. Jan. 12, 2015), in which the court found a justiciable controversy where the defendant had threatened to enforce a non-compete clause if the plaintiff sought to compete. *See id.* at *4-5. The court in *DeVries*, however, did not discuss *Bruhn*. The Court is persuaded by the reasoning in *Bruhn* that the mere refusal to release the plaintiff from a non-compete is not sufficient.

the cases cited above, however, neither Mr. Funk's desire to compete in the future nor Syngenta's refusal to terminate the agreements is sufficient to create an actual case or controversy here in the absence of an allegation that Mr. Funk or Funk Seed has taken some step towards competing or that Syngenta has threatened litigation.

Funk has also alleged that Syngenta has maintained that it is entitled to certain payments under the SDA and that it will attempt to collect by executing on a security interest it has under the parties' Master Agreement. Such facts, taken as true, do not create a controversy concerning the non-competition agreements, however. The SDA is independent of the non-competes. Funk seeks a declaration that the Master Agreement has been terminated, but that request is based only on the precedent termination of the non-competes. Moreover, the Master Agreement provides that certain provisions, including the provision under which Syngenta may claim a security interest, survive termination. Thus, the fact that Syngenta may seek to enforce the security interest does not create a controversy concerning the enforceability of the non-competes.[12]

Accordingly, the Court concludes that Funk has not alleged facts indicating that an actual case or controversy exists for purposes of compliance with Article III of the Constitution, and the Court therefore dismisses Count I of the amended complaint.

---

[12]Funk argues that because the SDA has been terminated, it can no longer sell Syngenta's seeds. As Syngenta points out, however, Funk may still sell Syngenta's seeds under its own Funk brand under the Master Agreement, which has not been terminated.

## V.    **Breach of Contract**

### A.    *Failure to Provide "First Quality Seed"*

Funk alleges that Syngenta breached the SDA "by repeatedly failing to provide Funk Seed with first quality seed."[13] Funk alleges that in the industry "first quality seed" means seed conforming to certain industry standards. Syngenta seeks dismissal of this claim on the basis that it had no such obligation under the SDA. The Court agrees that Funk has not alleged a plausible claim for such a breach of the SDA.

As Syngenta notes, the SDA contains no language obligating Syngenta to provide "first quality seed" or even to provide seed that meets any industry standards. Funk alleges that "[t]he effect of Articles 2, 4, 5, 6, 9, 10, and other provisions in the [SDA], along with the implied covenant of good faith and fair dealing, is, among other things, to require that Syngenta provide Funk Seed with seed that conforms to industry standards." Funk argues that trade usage and the totality of the SDA imply an obligation by Syngenta to provide first quality seed. Article 10 of the SDA, however, unambiguously provides that there are no warranties, express or implied, other than the express warranty that its products are labeled as required by law and conform to the description on the label. Funk is essentially arguing that there is an additional warranty, but all such warranties have been disclaimed (and Funk has failed to assert any claim for

---

[13]In Count II, Funk has alleged four separate breaches of the SDA. In Count III, Funk alleges, in the alternative to Count II, that Syngenta breached the SDA's implied covenant of good faith and fair dealing in the same four ways. The Court addresses each alleged breach as asserted both in Count II and Count III.

breach of an implied warranty). Funk is free to assert a claim for breach of the single express warranty (and it has done so), but it may not assert a claim for breach of any other warranty.

Moreover, the provisions of the SDA cited by Funk do not imply a contractual obligation to provide seeds that meet particular standards. Funk argues that Article 2 requires Syngenta to act in good faith to make a full portfolio of corn hybrids "of substantially similar performance to the hybrids available through any other distribution brand" available to Funk under the SDA. Funk has asserted a separate claim for breach of that provision, which the Court addresses separately. That provision does not imply any other obligation beyond its terms. Article 4 imposes obligations relating to training, forms, and assistance, but it does not imply any obligation relating to the quality of the seeds. Article 5 requires Funk to use its best efforts in promoting and selling products and to represent Syngenta and its brands in accordance with Syngenta policies (which, according to Funk, include quality mandates). This provision does not obligate Syngenta in any way, however, and Funk has not alleged that Syngenta interfered with Funk's ability to comply with Article 5. The same is true with respect to Article 6 of the SDA, which imposes minimum sales requirements on Funk, and with respect to Article 9, which imposes minimum prices to be charged by Funk. Funk also cites Article 10, but that article makes clear that all other warranties are disclaimed. Contrary to Funk's argument, neither these provisions nor the SDA as a whole is ambiguous with respect to whether it imposes an obligation on Syngenta to provide seed of a particular quality.

Rather, the SDA unambiguously provides that there is only a single warranty relating to the seeds. Thus, there is no basis to resort to trade usage to interpret any provision of the agreement.

Funk also argues that the parties' Master Agreement and an associated license agreement require Syngenta to provide first quality seed. Those agreements are separate from the SDA, however, as the SDA does not incorporate either of those agreements and contains a merger clause. Funk has not alleged a breach of the Master Agreement or any license agreement.

Finally, the Court notes that Funk has alleged that Syngenta, in correspondence with Funk, acknowledged that the SDA required it to provide first quality seed. Funk has not relied on that allegation in its brief, however. Moreover, Funk has not alleged that the parties modified the SDA through later correspondence. Nor has Funk alleged a breach of a later contract formed through that correspondence.

Accordingly, the Court concludes that Funk has not stated a plausible claim that Syngenta breached the SDA by failing to provide first quality seed, and it therefore dismisses that claim as asserted in Counts II and III of the amended complaint.[14]

---

[14]Funk notes that it has also alleged that Syngenta breached the implied covenant of good faith by failing to provide first quality seed. Under Minnesota law, that covenant serves to enforce existing duties, but it does not create new contractual duties. *See Watkins Inc. v. Chilkoot Distributing, Inc.*, 719 F.3d 987, 994 (8th Cir. 2013) (applying Minnesota law). Thus, because the SDA does not impose on Syngenta an obligation to provide first quality seed, Funk's claim in Count III for breach of the implied covenant of good faith also fails.

### B.    *Failure to Provide a Full Portolio*

As noted above, Funk also alleges that Syngenta breached Article 2.B(ii) of the SDA, which requires Syngenta to act in good faith to make available to Funk a full portfolio of corn hybrids of substantially similar performance to hybrids available through other distribution brands. Syngenta argues that Funk has failed to allege facts with sufficient detail to state a plausible claim for breach of that provision. The Court rejects this argument. In its complaint, Funk has identified the specific provision that Syngenta allegedly breached, it has provided examples of how Syngenta failed to meet that obligation, and it has specifically alleged that Syngenta acted in bad faith with respect to the provision of the portfolio of seeds. There is no basis for the Court to conclude that such a claim is not plausible. Accordingly, the Court denies the motion to dismiss this claim for breach of contract.

### C.    *Failure to Provide Assistance*

Funk also alleges that Syngenta breached Article 4(C) of the SDA, which provides that Syngenta, "[a]s deemed necessary and appropriate in its sole discretion," will offer "sales and/or technical assistance" to Funk. Funk alleges that Syngenta did not exercise that discretion in good faith. Syngenta argues that because the contract gave it discretion to offer such assistance, it cannot have breached the contract by failing to do so.

The Court rejects Syngenta's argument. This question under Minnesota law was addressed in *White Stone Partners, LP v. Piper Jaffray Companies, Inc.*, 978 F. Supp.

878 (D. Minn. 1997). In that case, the federal court noted that the Minnesota Supreme Court had not directly addressed the question, but it concluded that that court would "require a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save a contract from being held to be illusory." *See id.* at 882. The Court is persuaded by the reasoning of the *White Stone* court, which relied on relevant language from the Minnesota Supreme Court, an opinion on point from the Minnesota Court of Appeals, and federal court decisions applying the law of other jurisdictions. *See id.* at 881-84; *see also BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965-66 (D. Minn. 2007) (citing *White Stone* with approval; implied covenant of good faith prevents the party with control over some aspect in the parties' relationship from abusing its discretion in a manner that would inflict harm and undermine the purpose of the contract); *Jack v. Horman*, 2007 WL 47696, at *3 (Minn. Ct. App. Jan. 9, 2007) (unpub. op.) (party had an obligation to exercise contractual discretion in good faith).

Syngenta relies on *Residential Funding Co., LLC v. Terrace Mortgage Co.*, 725 F.3d 910 (8th Cir. 2013), in which the Eighth Circuit, applying Minnesota law, ruled that a party to a contract did not violate the implied covenant of good faith in determining in its discretion that an event of default had occurred and then acting on that determination, because the contract allowed the party to do that. *See id.* at 917-18. The court did not address, however, *White Stone* or the other cases that have considered whether a party must exercise its contractual discretion in good faith. Thus, the Court is not persuaded

that Funk may not assert a claim that Syngenta breached the SDA because it failed to exercise is discretion in good faith.[15]

Syngenta argues that a claim for breach of the implied covenant of good faith is distinct from a direct claim for breach of a term of the contract. Funk has alleged a breach of the covenant of good faith, however. Thus, regardless of how the claim is labeled, Funk has sufficiently alleged that Syngenta breached the SDA by failing to provide assistance.

Finally, Syngenta argues that Funk has not alleged sufficient facts concerning Syngenta's bad faith. Because Syngenta made that argument for the first time in its reply brief, however, the Court does not address it. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2006 WL 1007099, at *3 n.5 (D. Kan. Apr. 14, 2006) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Accordingly, the Court denies the motion to dismiss this claim for breach of contract.

D.      *Disclosure of Confidential Information*

Funk alleges that Syngenta disclosed confidential information in violation of Article 16 of the SDA. Specifically, Funk alleges, based on information and belief, that between September 2013 and April 2015, Syngenta disclosed terms of the SDA and

---

[15]In *White Stone*, the court predicted that the Minnesota Supreme Court would require good faith "if necessary to effectuate the parties' intent and to save a contract from being held illusory." *See White Stone*, 978 F. Supp. at 882. The parties have not addressed that additional requirement in their briefs; the Court therefore leaves the analysis of whether that requirement has been met here for another day.

other confidential information regarding Funk's business, including pricing and inventory information, to other Syngenta seed resellers; that Syngenta encouraged those other resellers to sell in Funk's exclusive territory; and that Funk's competitors used that information to lure Funk associates away from Funk and to compete for customers.

Syngenta argues that such allegations, based on information and belief, are not sufficient to state a claim. The Court disagrees. As the Third Circuit has noted, several federal courts of appeal accept allegations "on information and belief" when the facts at issue are peculiarly within the defendant's possession. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (citing cases). Syngenta has not identified any Tenth Circuit opinion prohibiting such pleading, and the facts concerning any disclosure of confidential information by Syngenta would be particularly in Syngenta's possession. It is true that a plaintiff may not simply allege a breach in conclusory fashion without any supporting facts, but the specificity needed depends on the type of claim. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In this case, Funk has alleged a very simple claim of a disclosure of information, and therefore less detail is required. Moreover, Funk has not merely and conclusorily alleged a breach of contract; rather, it has identified the breach of a specific contractual provision by specific conduct, including alleging facts relating to the particular information disclosed, the category of recipients of that information, and the result of that disclosure. The Court concludes that such allegations are sufficient under Fed. R. Civ. P. 8 and *Twombly* to give Syngenta fair notice of Funk's claim, and it therefore denies the motion

to dismiss this claim for breach of contract.

## E. *Breach of the Implied Covenant of Good Faith*

As noted above, Funk has alleged the same four breaches also as breaches of the SDA's implied covenant of good faith and fair dealing. That covenant, which is implied in every contract under Minnesota law, prohibits a party to the contract from unjustifiably hindering the other party's performance of the contract or frustrating performance of a condition precedent. *See In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Funk recognized that scope of the covenant in alleging in its amended complaint that the covenant prevents Syngenta from unjustifiably hindering Funk's performance under the SDA or taking advantage of the failure of a condition when Syngenta itself has frustrated performance of that condition.

Syngenta argues that Funk has failed to allege how Syngenta hindered any performance by Funk of any particular obligation under the SDA. In that regard, Syngenta notes that the SDA only required Funk to use "best efforts" to promote and sell Syngenta's products, and it argues that even if its conduct caused lower sales by Funk, Funk would still have met its contractual obligation by using best efforts. In response, Funk notes that the SDA also contained minimum sales and price provisions, and it argues that Syngenta hindered Funk's performance of those obligations.

The Court agrees with Syngenta that Funk has failed to allege that Syngenta hindered Funk's performance of any particular contractual obligations under the SDA, and it concludes that Funk has therefore failed to state a plausible claim for such a breach

of the implied covenant. Funk is granted leave to amend its complaint, however, if it can allege facts supporting a claim that Syngenta hindered its performance of particular obligations under the SDA by failing to provide a full portfolio, failing to provide assistance, or disclosing confidential information (the remaining breach-of-contract theories). Funk shall file any such amended complaint on or before **May 30, 2017**.

Moreover, the Court is not persuaded that such amendment would be futile. Syngenta argues that the SDA does not require Funk to sell at a certain price, but rather that the failure by Funk to meet that price affects the price that Funk must pay to Syngenta. If Syngenta's conduct hindered Funk's ability to charge that price, however, Syngenta would effectively have frustrated a condition in the SDA, and the covenant would still apply. Moreover, Syngenta has not addressed Funk's argument that its ability to meet minimum sales requirements has been affected.

Finally, the Court notes, based on its discussion above, *see supra* Part V.C, that this ruling does not apply to the application of the covenant to Syngenta's exercise of its discretion in deciding whether to provide assistance to Funk. Funk need only replead with respect to that alleged breach if it also seeks to allege in the alternative that Syngenta by that breach hindered Funk's performance of some contractual obligation.

## VI. Breach of Express Warranty

In Count IV of the amended complaint, Funk asserts that Syngenta breached the SDA's express warranty by failing to provide Funk with seed that conforms to the

description on the label within standard tolerances or variations. Syngenta argues that Funk's allegations are too conclusory to support this count. The Court disagrees. Again, little specificity is needed to support such a simple claim of breach. *See Robbins*, 519 F.3d at 1248. The contents of the label are known to Syngenta, Funk listed various ways in which seeds failed to conform, and Syngenta may easily inquire about other details in discovery. The Court thus denies Syngenta's motion to dismiss this claim.

## VII. IDCSA Claim

In Count V of its amended complaint, Funk has asserted claims for violation of the Indiana Deceptive Consumer Sales Act (IDCSA), which prohibits deceptive acts by a supplier "in connection with a consumer transaction." *See* Ind. Code § 24-5-0.5-3(a). Syngenta seeks dismissal of these claims for various reasons. The Court agrees with Syngenta that Funk has not stated a claim for violation of the IDCSA because Funk was not a consumer of Syngenta's seeds and the sales by Syngenta to Funk were not consumer transactions. Accordingly, the Court grants the motion and dismisses all claims under the IDCSA.[16]

As noted above, the statute requires a "consumer transaction," and the parties agree that the relevant transactions here are the sales of seeds by Syngenta to Funk. The statute defines "consumer transaction" in relevant part to mean "a sale . . . of an item of

_____

[16]In light of this ruling, the Court does not address Syngenta's other arguments for dismissal of the IDCSA claims.

personal property . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household." *See id.* § 24-5-0.5-2(a)(1). Moreover, Funk's claim is for damages under the IDCSA, and the statute provides that a plaintiff may sue for "damages actually suffered as a consumer as a result of the deceptive act." *See id.* § 24-5-0.5-4(a). "Consumer" is not separately defined in the statute.

Although there is little caselaw interpreting these provisions, it is clear that Funk was not injured as a consumer here. Funk has alleged only that it purchased Syngenta's seeds to resell them to others. Thus, because Funk itself was not using or consuming the seeds (for instance, by planting them), Funk was not acting as a consumer of the seeds under the ordinary meaning of the term "consumer". Funk notes that the statute's definition of "consumer transaction" includes agricultural purposes, and it argues that seeds are agricultural products that will be consumed by Funk's customers. As Funk concedes, however, the issue turns not on the type of item sold, but on the purpose for which the product is purchased. *See id.* §24-5-0.5-2(a)(1) (defining "consumer transaction" in terms of the purpose of the sale); *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litig.*, 2009 WL 937256, at *8 (N.D. Ill. Apr. 6, 2009) (under the terms of the IDCSA, "the controlling factor is not the type of product purchased, but the purpose for which the product was purchased"). Moreover, it is Funk's purposes that must be considered (not that of its customers), as the statute requires Funk as the plaintiff to have been damaged "as a consumer." Funk's purpose in buying Syngenta's seeds was commercial, not agricultural or personal, and thus Funk

has no standing to bring these claims under the IDCSA.

Funk has not cited any authority suggesting that the statute should not be applied in this context in accord with its plain meaning. Funk has cited to *In re Actiq Sales and Marketing Practices Litig.*, 790 F. Supp. 2d 313 (E.D. Pa. 2011), one of a few cases in which courts have held that third-party payor (TPP) insurers for prescription drugs may bring claims under the IDCSA. *See, e.g.*, *id.* at 325-26. The TPP cases are not particularly helpful here, however, because in those cases, the drugs went directly to consumers, and the plaintiff TPPs paid for those purchases by the consumers. Those cases do not provide any support for the position that purely commercial resellers, who purchase the products before selling them to end consumers, should also be considered consumers under the IDCSA.

Funk also cites the first section of the IDCSA, which requires a liberal construction of the statute. *See* Ind. Code § 24-5-0.5-1. That section actually provides, however, that the IDCSA should be liberally construed *to promote its purposes and policies*, which are identified as protecting *consumers* and relating to *consumer* sales practices. *See id.* Funk was not a consumer here; thus, there is no basis to construe the statute to protect that party. Funk's claims under the IDCSA therefore are appropriately dismissed.

## VIII.  Negligence

In Count VI, Funk asserts a claim for negligence. That claim is similar to the

negligence claims asserted by other plaintiffs in the MDL, as it is based on the manner and timing of Syngenta's commercialization of its Viptera and Duracade products. As noted above, *see supra* note 7, the parties have agreed that Funk's negligence claim is governed by Indiana law.

Syngenta argues that Funk's negligence claim is barred by the contractual economic loss doctrine (ELD). In ruling on Syngenta's motion to dismiss in the primary case in the MDL, the Court considered the stranger ELD under the laws of 22 states, including Indiana, as well as the contractual ELD for four of those states (not including Indiana). *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1193-1207 (D. Kan. 2015) (Lungstrum, J.). Thus, the Court has not yet considered the contractual ELD under Indiana law.

The Indiana Supreme Court discussed the ELD in *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150 (Ind. 2005). In that case, the court repeatedly described the ELD as prohibiting recovery in tort for purely economic loss arising from the failure of a product or service to perform as expected. *See id.* at 152-53. For purposes of the rule, purely economic losses are those that occur in the absence of personal injury or physical harm to property, including lost profits, and they are viewed as "disappointed contractual or commercial expectations." *See id.* at 153-54. "Thus, economic loss has been defined by Indiana courts as the diminution in value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *See id.* at 154 (internal quotation omitted). The

ELD under Indiana law applies even outside the context of the state's Product Liability Act and the U.C.C. *See id.* at 151. The court also discussed the purpose of the ELD:

> The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied. The buyer and seller are able to allocate these risks and price the product or service accordingly.

*See id.* at 155. Allowing a recovery in tort for economic loss would allow the buyer to circumvent the seller's limitation or exclusion of warranties. *See id.* (citing *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1075 (Ind. 1993)). "The central theory underlying 'economic loss' is that the law should permit the parties to a transaction to allocate the risk that an item sold or a service performed does not live up to expectations." *See id.*

The Indiana Supreme Court addressed the ELD again in *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010). The supreme court began by noting that under the ELD applied in Indiana cases, "the defendant is not liable under a tort theory for purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)." *See id.* at 726-27 (citation and footnote omitted).[17] The court went on to recognize the rule as stated in *Gunkel* that "contract law governs . . . purely

_____

[17]Thus, by referring in the parenthetical to a subset of ELD cases involving defective products and services, the court recognized that the doctrine is not limited to such cases under Indiana law.

economic loss arising from the failure of the product or service to perform as expected." *See id.* at 728 (quoting *Gunkel*, 822 N.E.2d at 153). The court then noted as a justification for the rule that a manufacturer cannot be liable for the level of performance of its products in the purchaser's business unless it has agreed that the product was designed to meet the purchaser's demands; and that allowing recovery in tort would allow the purchaser to circumvent the seller's limitation or exclusion of warranties. *See id.* at 729. Finally, the court concluded that the ELD "is well established in Indiana and that there are sound legal and economic justifications for it," and that it operates as a general rule to preclude recovery in tort for purely economic loss. *See id.* at 730.

The negligence claim asserted by Funk in this case falls within the scope of the ELD as articulated by the Indiana Supreme Court. First, Funk seeks to recover purely economic losses, in the sense that Funk does not seek damages for injury to any person or property. Second, Funk seeks to recover losses resulting from the failure of the product purchased from Syngenta (seeds) to perform as expected. Funk's negligence theory as alleged in its amended complaint is that because of Syngenta's commercialization of Viptera and Duracade, Funk was unable to sell Syngenta's seeds at the same prices or volume. Thus, Funk is essentially suing to recover for disappointed expectations of profits from the purchase of Syngenta's seeds. Funk is alleging that, because of Syngenta's conduct, the seeds did not work for the purpose for which they were sold to Funk, i.e, to be resold; thus, Funk's claim is for an economic loss within Indiana's ELD. *See Gunkel*, 822 N.E.2d at 154.

Funk cites the statement by the Indiana Court of Appeals that "if the plaintiff is not seeking damages involving the benefit of the bargain or other matters governed by contract and/or related principles, the economic loss doctrine does not bar a negligence action." *See KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 305 (Ind. Ct. App. 2010). That condition is met here, however, as Funk is seeking to recover its lost profits that it would have realized from its contracts with Syngenta. Moreover, in light of the parties' contractual relationship, contract principles, including the parties' ability to allocate any risk, are at issue here. Indeed, *KB Home* supports application of the ELD here. In that case, the court, in concluding that the ELD did not apply there, noted that there had been no contract between the parties for the purchase of property or a product and that the plaintiff was not seeking to circumvent any contractual or statutory limits on the nature or scope of its permissible recovery. *See id.* In this case, there is a contract between the parties for the purchase of the product from which Funk can no longer profit, and a negligence claim would allow Funk to circumvent the SDA's disclaimer of warranties and the absence of provisions that could protect Funk.

For that same reason, application of the ELD here would further the doctrine's purposes identified by the Indiana Supreme Court. Funk argues that it could not have allocated in the SDA the risk of the destruction of the U.S. corn market. Funk seeks damages to compensate for its inability to sell Viptera and Duracade at sufficient prices and in sufficient quantities, however, and the parties could have addressed such issues in the contract, by including benchmarks for Funk's sales or profits or prices or by

adjusting the price paid by Funk to Syngenta to account for a risk of low sales. Syngenta did not agree to guarantee a particular level of performance for Funk's business in reselling Syngenta's products, and under Indiana law, Syngenta therefore should not be liable in tort for such failure of performance. *See Charlier*, 929 N.E.2d at 729.[18]

The Court also rejects Funk's argument that the ELD should only affect the negligence claim as asserted by and against the parties to the SDA, plaintiff Funk Seed and Syngenta Seeds, Inc. (now defendant Syngenta Seeds, LLC). Plaintiff William Funk could only have been damaged for the inability to resell seeds in a capacity as the owner of Funk Seed under the SDA, and if he was entitled to benefit from that contract, then he should also not be able to circumvent it by asserting a tort claim for purely economic loss. Moreover, Funk has lumped all of the Syngenta defendants together in alleging conduct in support of its negligence claim, and therefore it will not be heard to argue that the related entities should not similarly be treated together for purposes of the ELD. Funk is asserting tort claims for purely economic loss against the other Syngenta defendants, and Funk could have allocated that risk in its contract with Syngenta Seeds; thus, the ELD applies to all Syngenta defendants under Indiana law.

The Court therefore concludes that Funk's negligence claims fall squarely within the scope of the ELD under Indiana law, and Funk has not argued that any recognized

---

[18]Funk also argues in its brief that it was misled in entering into the contract with Syngenta, but Funk has not asserted a claim seeking to rescind the SDA because of fraudulent inducement.

exception to that doctrine should apply here. Accordingly, the Court grants Syngenta's motion and dismisses Funk's negligence claims.[19] As a result of the dismissal of the statutory and negligence claims, all defendants other than Syngenta Seeds, LLC are dismissed from the action.

## IX.    Damages

Syngenta seeks to enforce the damage limitations in Articles 10 and 11 of the SDA, and thus it moves to dismiss any claim for damages beyond those allowed in those limitations. Article 10, which is quoted in relevant part above, *see supra* Part III.A, provides an exclusive remedy for Funk of repayment of the purchase price, and further disclaims liability of Syngenta for "incidental, special, punitive, or consequential damages." Article 11, which applies to claims by either party, disclaims "indirect, special, incidental, consequential, or punitive damages or any character, including without limitation, damages for lost profits or lost products, or any and all other commercial damages or losses even if informed of the possibility thereof in advance."

The Court first rejects Funk's argument that Article 10's exclusive remedy provision applies only to its warranty claim. As discussed above with respect to Article

---

[19]In addition, certain negligence theories asserted by Funk are preempted by the Grain Standards Act as set forth in the Court's prior orders in the MDL. *See In re Syngenta*, 2016 WL 4382772 (D. Kan. Aug. 17, 2016). The Court need not address Syngenta's argument relating to negligence liability based on misrepresentations. Nor does the Court address Syngenta's duty and proximate cause arguments, which Syngenta raised summarily in its motion in order to preserve such issues for appeal.

10's limitations period, *see supra* Part III.A, the provision's reference to claims encompasses all claims based on the condition of seeds received from Syngenta. That that interpretation also applies to the exclusive remedy and damage disclaimer provisions in Article 10 is supported by the remedy of repayment of the purchase price for seeds, as there would be no repayment price to reference for a claim not relating to particular seeds. Thus, the Court concludes that Article 10's remedy provisions apply only to Funk's warranty claim and its claim for breach of contract based on a failure to provide a full portfolio of seeds. Funk has not offered any argument why Article 11 would not apply by its terms to Funk's other contract claims (failure to provide assistance, disclosure of confidential information). The difference under the SDA, then, is that for the former two claims, Funk may seek only repayment of the purchase price, while for the latter two claims, Funk may seek only direct contractual damages and may not seek incidental or consequential damages.[20]

Funk's only other argument against application of Articles 10 and 11 to the remaining claims[21] is that those damages provisions are unconscionable pursuant to

---

[20]Because Funk's tort and statutory claims have been dismissed, Funk's requests for relief particular to those claims, including its claim for punitive damages, have also been dismissed.

[21]Funk's other arguments concerning the damage limitations, including its argument under Section 336.2-719(2), relate only to the negligence and statutory claims that have been dismissed.

Minnesota's enactment of U.C.C. § 2-719(3), Minn. Stat. § 336.2-719(3).[22]  Funk's cursory argument on that issue, however, is unconvincing.  Funk cites Article 12 of the SDA, which provides that Syngenta would not have entered into the agreement without the damage limitations, but the fact that the limitations were important to Syngenta does not mean that they may be unconscionable, and Funk has cited no authority to support the relevance of Article 12 to this inquiry.  Funk also argues that it was misled into entering into the agreement.  Funk has not asserted a fraudulent inducement claim, however, and it has not alleged that it was misled about the particular subjects of the remaining claims.[23]  Thus, the case on which Funk relies does not support Funk's argument.  *See Select Pork, Inc. v. Babcock Swine, Inc.*, 640 F.2d 147, 149 (8th Cir. 1981).

Funk also argues that it would be premature for the Court to resolve this issue under Section 2-719(3) at this time because Funk was not required to plead facts to support unconscionability in response to an affirmative defense that has not yet been pleaded by Syngenta.  There is authority to support the position that Syngenta's argument under Articles 10 and 11 represents an affirmative defense.  *See Knapp Shoes,*

---

[22]Because the parties have not addressed whether the U.C.C. would apply to Funk's claims relating to assistance and confidential information under the applicable predominance test, *see Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556 (Minn. 1987), the Court will assume that it would apply for present purposes.

[23]Funk's allegations about being misled relate to Syngenta's commercialization of Viptera and Duracade, the subject of the dismissed negligence and statutory claims.

*Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1226 (1st Cir. 1994) (damage limitation under U.C.C. § 2-719 constitutes an affirmative defense); *see also Hodgson v. Humphries*, 454 F.2d 1279, 1284 (10th Cir. 1972) (limitation of remedies under federal statute had to be pleaded as an affirmative defense under Fed. R. Civ. P. 8). Moreover, Minn. Stat. § 336.2-302(2) provides as follows:

> When it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

*See id.* Syngenta has not proffered any reason why this provision of the U.C.C. should not apply here. Thus, the Court leaves the issue of whether these damage limitations are unconscionable under Section 2-719(3) for a later time when relevant facts may be presented. The Court therefore denies Syngenta's motion to dismiss particular damage claims relating to the surviving contract and warranty claims.

## X.     Order to Show Cause

As a result of this order, Funk's only surviving claims—for breach of contract and breach of express warranty—relate to the particular contractual relationship between the parties. Thus, this case no longer shares any common theory of recovery with the other cases in the MDL. Accordingly, the remaining parties (plaintiffs and defendant Syngenta Seeds, LLC) are ordered to show cause, by responses filed by **May 30, 2017**, why the Court should not suggest to the JPML that this case be remanded to its transferor

court.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 2482 in the MDL docket) is **granted in part and denied in part**, as set forth herein.  Plaintiffs are granted leave to amend certain allegations, as set forth herein, on or before **May 30, 2017**.

IT IS FUTHER ORDERED BY THE COURT THAT the remaining parties shall show cause, by responses filed by **May 30, 2017**, why the Court should not suggest to the JPML that this case be remanded to its transferor court.

IT IS SO ORDERED.

Dated this 15th day of May, 2017, in Kansas City, Kansas.

s/ John W. Lungstrum

John W. Lungstrum

United States District Judge
