IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE SYNGENTA AG MIR 162 CORN LITIGATION, | ) ) ) | MDL No: 2591 |
| (This Document Relates to All Cases) | ) ) ) | Case No. 14-md-2591-JWL |

# **ORDER**

Plaintiffs in this multidistrict litigation have filed a motion asking the court to order Syngenta to produce approximately 440 documents that Syngenta is withholding on the grounds of attorney-client privilege and/or work-product protection (ECF No. 3109). On May 5, 2017, the undersigned U.S. Magistrate Judge, James P. O'Hara, issued an order rejecting Syngenta's arguments that plaintiffs lost the ability to challenge the privilege assertions (by either the passage of time or by agreement).[1] The court directed the parties to confer and try to reach an agreement whereby the court would review *in camera* a sample of the documents "from each category over which plaintiffs have expressed concern, such that the parties may extrapolate the court's privilege rulings on the subset of reviewed documents to all documents in the withheld categories."[2] The parties agreed to submit—and did submit—44 documents, falling into five categories, as a representative sample for the court's

---

[1] ECF No. 3136.

[2] *Id*. at 4.

*in camera* review.[3] Having carefully reviewed those documents, the undersigned sustains in part and overrules in part Syngenta's privilege assertions.

**I.     Legal Standards**

The parties cite and apply federal privilege law to the instant dispute. Because no federal claim remains in this litigation,[4] however, the court questions the applicability of federal law. When jurisdiction is based on diversity of citizenship, "state law supplies the rule of decision on privilege" by operation of Fed. R. Evid. 501.[5] "Since this is a multidistrict proceeding, the question arises as to what state's law of privilege the court should apply."[6] Because the parties seem to agree that federal common-law standards should govern the privilege determinations in this case, because "no real conflict between federal and Kansas law regarding the attorney-client privilege [exists],"[7] and because "the Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions,"[8] the court will apply federal law in reaching its determinations on

---

[3]ECF No. 3151.

[4]*See* ECF No. 3051 (dismissing claims brought under the federal Lanham Act).

[5]*Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998).

[6]*In re: Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *2 (D. Kan. July 7, 2010) (quoting *In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D. Kan. 1985)).

[7]*Id.* at *2 (quoting *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 526 at n.3 (D. Kan. 2003)).

[8]*Id.* at *2 n.6 (quoting *In re A.H. Robins Co.*, 107 F.R.D. at 8).

privilege issues.

The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[9] Although this description suggests that the privilege only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[10] "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed."[11]

Caselaw provides a wealth of guidance as to what is—and is not—protected by the attorney-client privilege. First, it is important to note that "personal, confidential, [or] private

---

[9] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[10] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (rejecting narrower view that only communications that reveal confidences from the client are protected); *see also id.* (holding that the Tenth Circuit's view "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice"); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[11] *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016) (quoting *Foster v. Hill*, 188 F.3d 1259, 1264 (10th Cir. 1999)).

information" is not necessarily privileged.[12] "As this Court has held repeatedly, 'confidential' does not equate to 'nondiscoverable' or privileged."[13] Second, it is clear that "[u]nderlying facts are not protected by the privilege."[14] "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.'"[15] Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[16] Thus, for example, this court has held that the subject matters of an in-house attorney's discussions with company executives are not privileged.[17] Fourth, where a communication contains both legal advice and business advice,

---

[12] *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[13] *Id.* (quoting *Williams v. Evogen, Inc.*, No. 12–2620, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013)).

[14] *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No, 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[15] *Id.* at *6 (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)).

[16] *Id.* (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

[17] *See, e.g., id.* at *8 (holding that revelation of in-house counsel's discussion with company executives about possible infringement by competitors did not reveal privileged information); *New Jersey*, 258 F.R.D. at 426–28 (holding that testimony stating company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

attorney-client protection only applies if the legal advice predominates over the business advice; the privilege does not apply where legal advice is merely incidental to business advice.[18] Fifth, "[d]rafts of documents to be submitted to third parties, although prepared by counsel, are not generally privileged. Submission of the document to the third party removes any cloak of privilege."[19] On the other hand, drafts of memoranda prepared for a client are protected.[20] Sixth, the attorney-client privilege does not attach to simple editing or "word-smithing" by counsel.[21]

Finally, it bears mentioning that under the eighth element, absence of waiver, the party claiming the privilege must demonstrate that "the substance of an otherwise privileged

---

[18]*See New Jersey*, 258 F.R.D. at 444; *Heartland Surgical Specialty Hosp.*, 2007 WL 2192885, at *9 ("If Vallarino was seeking mainly business advice from the attorneys, then the communications would not be privileged."); *In re Universal Serv. Fund*, 232 F.R.D. at 675 ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted); *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D. Kan. 1997) ("A distinction is made between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted).

[19]*Burton*, 170 F.R.D. at 485; *see also id.* at 489 ("While drafts prepared for a client with the purpose of obtaining legal advice may be protected by attorney-client privilege, drafts of documents to be submitted to third parties are not so protected.").

[20]*Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir. 1995).

[21]*In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. March 24, 2017) (quoting *Krueger v. Ameriprise Fin., Inc.,* No. 11-2781, 2014 WL 12597432, at *10 (D. Minn. May 7, 2014)).

communication" is not revealed to a third party.[22] The burden of showing the privilege has not been waived remains with the party claiming the privilege.[23] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[24]

The work-product privilege is governed by the uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

For documents to be protected under this doctrine, the party claiming the protection must demonstrate that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[25] The purpose of the doctrine is to allow attorneys to prepare for litigation with a 'certain degree of privacy,' and without undue

---

[22]*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

[23]*New Jersey,* 258 F.R.D. at 426; *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 621 (D. Kan. 2001).

[24]*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1186 (quoting *Ryans*, 903 F.2d at 741).

[25]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)).

interference or fear of exploitation of one's work by an adversary.[26]  Once a document is deemed initially subject to work-product protection, the parties must determine if it is nevertheless discoverable.  "The privilege derived from the work-product doctrine is not absolute," and may be waived.[27]  In contrast to the attorney-client privilege, "the party asserting waiver of work product immunity, rather than the party asserting the work product protection, [has] the burden to establish waiver."[28]

## II. Analysis

Syngenta has identified 441 withheld documents on its comprehensive privilege log.[29] It has withheld 320 of the documents in full, and 121 of the documents in part (producing redacted versions of the documents).  For purposes of their motion to compel, plaintiffs have divided the documents into five categories: (1) documents involving a third-party consulting firm called Informa Economics, Inc. ("Informa"); (2) documents involving other third parties; (3) documents for which the privilege-log description allegedly is inadequate to

---

[26]*Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

[27]*United States v. Nobles*, 422 U.S. 225, 239 (1975).

[28]*Western Res. Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, at *4 (D. Kan. Jan. 31, 2002); *see also ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 4239453, at *3 (D. Kan. Nov. 30, 2007).

[29]Plaintiffs' motion challenged Syngenta's privilege assertions over 445 documents, but Syngenta has since withdrawn its privilege claim over two documents, *see* ECF No. 3130 at 10 n.12, and plaintiffs have since withdrawn their challenges to Syngenta's privilege claim over two documents, *see* ECF No. 3135 at 5 n.5.  It also bears mentioning that the introductory chart accompanying Syngenta's *in camera* submission lists a total of 402 challenged withholdings—the cause of this number discrepancy is unclear to the court.

determine whether the privilege applies; (4) documents containing redactions which, based on the surrounding context, appear improper; and (5) documents for which the metadata allegedly does not support Syngenta's claimed basis for redaction or withholding. The parties have selected documents from each category for the court's *in camera* review. Syngenta has submitted to the court copies of the selected documents, as well as the declarations of Alan B. Nadel, its lead counsel for litigation in North America, in support of its privilege assertions.[30] Applying the legal standards set forth above, the court concludes as follows.

1. **Documents Involving Third Party Informa Economics, Inc**.

Plaintiffs challenge Syngenta's privilege assertions over documents that were generated by, or relate to an analysis generated by, Informa. For the court's review, Syngenta has submitted Informa's analysis (PRIV003591) and an e-mail to Syngenta counsel from a Syngenta employee about potentially sharing the analysis (PRIV000425).

In support of its privilege assertions, Syngenta states it hired Informa to analyze an April 2014 study published by the National Grain and Feed Association ("NGFA"). The study alleged China's rejection of U.S. corn shipments containing Viptera caused several billions of dollars of damage to the U.S. corn industry.[31] Nadel asserts that Syngenta requested the analysis to help Syngenta's legal department understand the reliability and

---

[30]ECF No. 3152.

[31]ECF No. 3130-13, May 2, 2017 Declaration of Alan B. Nadel ("Nadel Decl. 1"), at 3.

relevance of the study, such that it could "formulate Syngenta's legal strategy in response to the NGFA's allegations."[32] As Syngenta notes, this court has ruled that communications by third-party consultants "working at the direction of" attorneys, may be protected by the attorney-client privilege if the communications are "for the purpose of assisting [the] attorneys in rending legal advice."[33]

Plaintiffs argue Syngenta's privilege assertions are belied by documents showing Syngenta retained Informa to help Syngenta develop business strategy, not to provide legal advice. The court agrees. Although Nadel states in his declaration that the Informa analysis was for the purpose of formulating legal strategy, this assertion is unsupported by any documents in the record. The analysis itself contains no legal analysis. And Syngenta has submitted no documents indicating that anyone on Syngenta's legal team worked with Informa on the analysis. Rather, the record indicates Informa was contacted by T. Lynn Sandlin, a non-attorney whose signature bears the tag line "Market Insight, N.A.," to undertake the analysis.[34] In an April 16, 2014 e-mail to other non-attorney Syngenta employees, Sandlin states that she informed Informa that Syngenta "has interest in understanding the [NGFA] report in its entirety and having a global ag analyst firm review

---

[32]*Id.*

[33]*High Point SARL v. Sprint Nextel Corp.*, No. 09-269, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012) (holding documents created by "high-level," non-attorneys in party's intellectual-property-law group, who were "working at the direction of" attorneys, were privileged).

[34]ECF No. 3109-8.

the findings and in the spirit of transparency evaluate the accuracy and validity of the information."[35] The e-mail further states that Sandlin told Informa that Syngenta would like to discuss the study's "assumptions and extrapolations as soon as possible in order to prepare ourselves when they distribute their analysis."[36] A month later, on May 16, 2014, Sandlin sent an e-mail to ten non-attorneys[37] stating,

> On April 16th, Market Insight was requested to enlist a third party to complete an assessment of the NGFA analyses on Agrisure Viptera and Duracade traits. Over the past two weeks drafts of the output has been provided and reviewed by all. The final output is attached for your use and reference.
>
> The attachments are:
> - Memorandum by Informa Economics of key talking points which Syngenta can use in discussions regarding the NGFA analyses
> - Assessment of the NGFA analyses completed in detail by Informa Economics
>
> The documents are the property of Syngenta and should be used by team members specific to the Viptera and Duracade discussions. Any communications of the developed documents are to be discussed with Alan Nadel, Syngenta Legal Counsel prior to distribution.[38]

This e-mail did not state that the documents are confidential or attorney-client communications.

---

[35]*Id.*

[36]*Id.*

[37]The court has cross-referenced the names of the recipients with the list of Syngenta attorneys found in ECF No. 3152-3.

[38]ECF No. 3109-9.

Syngenta has failed to satisfy its burden of proving the applicability of the attorney-client privilege to the Informa analysis. The fact that Syngenta's "Market Insight" group, rather than legal group, appears to have sought and used the analysis suggests the analysis was commissioned and communicated primarily for business, rather than legal, purposes. The sentence in Sandlin's May 16, 2014 e-mail directing non-attorney employees to discuss distribution of the related documents with Nadel does not change the business nature of the documents. Even if the court were to find some legal purpose in the communication, the attorney-client privilege would not protect the document because the legal purpose would not predominate over the business purpose.[39] Syngenta's privilege assertion over PRIV003591 is overruled, and Syngenta shall produce this document.[40]

The second document related to the Informa analysis provided the court for *in camera* review is a May 20, 2014 e-mail to Nadel from a Syngenta non-attorney employee asking for

---

[39] *See New Jersey*, 258 F.R.D. at 444; *Heartland Surgical Specialty Hosp.*, 2007 WL 2192885, at *9 ("If Vallarino was seeking mainly business advice from the attorneys, then the communications would not be privileged."); *In re Universal Serv. Fund*, 232 F.R.D. at 675 ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted); *Burton,* 170 F.R.D. at 484 ("A distinction is made between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted).

[40] Because the court holds Syngenta failed to establish attorney-client protection over the Informa analysis, the court does not reach plaintiffs' additional argument that any applicable privilege was waived when Syngenta sent the analysis to its "Awards Team," whose purpose is to recognize Syngenta employees for their efforts on external communications about issues facing Syngenta.

Nadel's thoughts about sharing the analysis with two "key stakeholders" outside Syngenta for use in "their newsletters, etc." (PRIV000425). Syngenta argues the e-mail is privileged because it seeks Nadel's legal advice.[41] Based on the content and context of the e-mail, there is no evidence that legal, rather than business, advice was sought or given. The court holds this document deals predominantly with business information and therefore is not privileged. In addition, two non-attorneys were copied on the e-mail, a potential waiver consideration that Syngenta does not address. Syngenta's privilege assertion over PRIV00425 is overruled, and Syngenta shall produce this document.

2. **Documents Involving Other Third Parties**

Plaintiffs also challenge Syngenta's privilege assertions over documents that were shared with non-attorney third parties. These documents fall into two sub-sets.

The first sub-set of documents relate to individuals at the University of Rhode Island ("URI") and at a company called Vanasse Hangen Brustlin, Inc. ("VHB"). Syngenta asserts it engaged these individuals as consultants "to provide Syngenta with specific, scientific assistance sought by Syngenta's legal department regarding regulatory requirements."[42] Syngenta states they assisted Syngenta with regulatory filings.[43] Syngenta has submitted one document from this sub-set for the court's *in camera* review: PRIV003553.

---

[41]ECF No. 3152, May 11, 2017 Declaration of Alan B. Nadel ("Nadel Decl. 2"), at 3.

[42]ECF No. 3130-13, Nadel Decl. 1 at 3.

[43]ECF No. 3130 at 9.

PRIV003553 is an e-mail discussion (a two-e-mail string) between two Syngenta employees and Syngenta's outside legal counsel at Dorsey & Whitney LLP. The court's review of the document indicates the e-mail discussion is clearly a communication between a client and counsel, seeking and giving legal advice. To be privileged, however, the communication must also have been made in confidence.[44] Copied on the communication were three VHB employees and one URI employee. The question for the court is whether the presence of these third parties destroyed the privilege.

As a general rule, the presence of third parties breaches the confidentiality of communications between an attorney and client and waives the privilege.[45] However, "[t]he presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses 'a commonality of interest with the client.'"[46] "The presence of a third party in an e-mail transmission, for instance, will not destroy the attorney-client privilege if the third party is the attorney's or client's agent. . . ."[47]

---

[44]*New Jersey*, 258 F.R.D. at 425.

[45]*In re Qwest Commc'cns Int'l Inc.*, 450 F.3d at 1185.

[46]*High Point SARL v. Sprint Nextel Corp.*, 2012 WL 234024, at *13 (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476–77 (E.D. Pa. 2005) ("Presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses "a commonality of interest with the client.")).

[47]*A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-CV-02435-RBJ-KMT, 2012 WL 1957302, at *2 (D. Colo. May 31, 2012). *See also Steele v. First Nat'l Bank in Wichita*, No. 90–1592–B, 1992 WL 123818, at *2 (D. Kan. May 26, 1992) (holding presence of client's consultant at meeting between client and client's attorney did not result in waiver of

Syngenta has presented Nadel's declaration stating that Syngenta engaged the VHB and URI employees as consultants "to provide . . . scientific assistance sought by Syngenta's legal department regarding regulatory requirements."[48] The court has no reason to question this representation. The court finds Syngenta met its burden of demonstrating these particular third parties are Syngenta's agents for purposes of this litigation, and their presence on the e-mail communication did not destroy the attorney-client privilege applicable to PRIV003553.

The second sub-set of documents involving other third parties includes documents that plaintiffs believe are drafts of documents prepared for submission to third parties, and which Syngenta later publicly disclosed. At plaintiffs' request, Syngenta has submitted PRIV000255 as an example for the court's review.

Plaintiffs are correct that drafts of documents prepared for submission to third parties, although prepared by counsel, are not generally privileged once the draft is submitted to the third party.[49] But the court has reviewed PRIV000255 and finds that it does not fall into this

---

attorney-client privilege). The court notes that plaintiffs have presented no law to the contrary.

[48]ECF No. 3130-13, Nadel Decl. 1 at 3.

[49]*Burton,* 170 F.R.D. at 485. On the other hand, when an attorney prepares a draft document solely for a client, the attorney-client privilege attaches to the draft and remains intact even when a final version of a document is publicly disclosed. *See id.* at 489 ("While drafts prepared for a client with the purpose of obtaining legal advice may be protected by attorney-client privilege, drafts of documents to be submitted to third parties are not so protected."); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) (holding that even when a final version of a document is publicly disclosed, "the underlying privilege attached

category. PRIV000255 is a confidential e-mail communication between a few Syngenta employees conveying Syngenta's legal advice on how Syngenta should respond in a very limited way to outside inquires regarding a lawsuit against Syngenta. The court finds Syngenta's assertion of privilege over the document proper.

### 3. Challenges Arising From Privilege-Log Descriptions

Plaintiffs have identified approximately 100 entries on Syngenta's privilege logs as inadequate for plaintiffs to determine the applicability of the attorney-client privilege to withheld documents. By agreement of the parties, Syngenta has submitted ten of the underlying documents for the court's *in camera* review. Applying the legal standards set out above, the court upholds Syngenta's privilege assertions over information in PRIV000256, PRIV001154, PRIV2586, PRIV2597, PRIV2615, and PRIV2992. But the court rejects Syngenta's privilege assertions over the documents that follow.

PRIV000389. This document is an e-mail string containing three e-mails.[50] The e-

---

to drafts of the final product remains intact"), *cited in United Food & Commercial Workers Union v. Chesapeake Energy Corp.,* No. CIV-09-1114-D, 2012 WL 2370637, at *10 (W.D. Okla. June 22, 2012); *Herd ex rel. Herd v. Asarco Inc.*, No. 01-CV-891-H, 2002 WL 34584902, at *2 (N.D. Okla. April 26, 2002) ("Plaintiff's request for discovery of all drafts of documents which were ultimately disclosed to the public in final form impinges on the attorney-client privilege. The drafting process is often the type of communication at the core of the attorney-client privilege.").

[50]It is unclear to the court whether each e-mail in the string was separately logged. This is the situation for a number of documents submitted for the court's *in camera* review. As a general rule in this district, litigants must list each e-mail within a string as a separate entry on the privilege log rather than listing the e-mail string as a single entry, or risk the possibility that the privilege will be deemed waived. *See Tri-State Truck Insur., LTD v. First Nat'l Bank of Wamego*, No. 09-4158, 2011 WL 117222, at *1 (D. Kan. Jan. 13, 2011); *In re:*

mails are not privileged. Although an attorney is one of seven recipients of the e-mails, the document does not reflect legal advice nor reveal client confidences conveyed for the purpose of seeking legal advice. Syngenta's privilege assertion is overruled, and Syngenta shall produce this document.

PRIV001169. This document is a PowerPoint presentation authored by a Syngenta attorney. Pages 1-3 appear to reflect business advice; to the extent any legal advice is conveyed on these pages, it does not predominate and is merely incidental to the business advice.[51] Thus, pages 1-3 are not privileged and shall be produced. Pages 4-5, however, reflect the attorney's legal advice. Nadel's declaration asserts the advice was given in confidence and not disclosed outside Syngenta.[52] Pages 4-5 are therefore properly withheld.

---

*Motor Fuel Temperature Sales Practices Litig.*, No. 07-md-1840, 2010 WL 11431877, at *1 (D. Kan. Nov. 8, 2010) (quoting *In re Universal Services Fund*, 232 F.R.D. at 672–73). It is possible in this case that the parties' agreement on the form and content of privilege logs alleviated this requirement.

[51]*See New Jersey*, 258 F.R.D. at 444; *Heartland Surgical Specialty Hosp.*, 2007 WL 2192885, at *9 ("If Vallarino was seeking mainly business advice from the attorneys, then the communications would not be privileged."); *In re Universal Serv. Fund*, 232 F.R.D. at 675 ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted); *Burton,* 170 F.R.D. at 484 ("A distinction is made between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.") (citations omitted).

[52]ECF doc. 3152, Nadel Decl. 2 at 4.

PRIV2107/PRIV003587.[53]  This document is a copy of PRIV003591, Informa's analysis of the April 2014 NGFA study.  As discussed above, Syngenta's privilege assertion over this document is rejected.

PRIV000283.  This document is an e-mail string containing three e-mails.  The first e-mail is privileged.  It is an e-mail from a Syngenta attorney to three other Syngenta attorneys and three non-attorney employees, conveying information, legal conclusions, and legal advice about one of Syngenta's then-pending lawsuits.  The second e-mail is also privileged as it conveys legal-department strategy.  But the third e-mail in the string is from one non-attorney employee to another and contains no legal advice in its body; it generally notes it is forwarding the other two e-mails.  Syngenta is ordered to produce PRIV00283, but with the two e-mails authored by legal counsel redacted.

    4.       **Challenges To Redactions Based On Context**

Next, plaintiffs challenge the redaction of a number of documents, arguing that the context surrounding the redactions indicates the redacted information was not privileged.  By agreement of the parties, Syngenta has submitted four documents in this category for the court's *in camera* review.

PRIV000036 and PRIV000037.  These documents are copies of the same e-mail string between non-attorneys, but with two additional e-mails included in PRIV000037.  Both

---

[53]PRIV2107 was re-logged as PRIV003587 during Syngenta's process of providing supplemental privilege logs.  *See id.* at 6.

documents contain the same three redactions. The first redaction, on an e-mail dated February 16, 2015, is improper. The redacted sentence simply asks two non-attorney employees to examine and correct data slides before they are sent to an attorney for approval. This redaction does not "contain legal advice from a Syngenta attorney" as stated in Nadel's declaration. The next two redactions, on e-mails dated February 27, 2015, are proper redactions of statements relaying attorney advice and the client's response to that advice. Therefore, Syngenta shall re-produce copies of PRIV000036 and PRIV000037 with the February 16, 2015 e-mail reflected in full.

<u>PRIV000113</u>. Plaintiffs challenge the redaction of a sentence in this three-e-mail string. The redacted sentence relates legal advice and was properly withheld.

<u>PRIV000400</u>. Syngenta has not met its burden of demonstrating the attorney-client privilege attaches to the redacted information in this e-mail. The redacted information itself does not reflect attorney advice. Its indication that an attorney asked the author of the e-mail to distribute attached material simply relays an unprotected act. Moreover, the redaction of a sentence directing to whom documents could be shared was improper, as neither the sentence itself nor Nadel's declaration in support of the redaction indicates the directive came from an attorney, or, even if it did, that it was a legal, rather than a business, directive. Syngenta's assertion of privilege over the redacted material is overruled, and Syngenta shall produce the document in its entirety.

 5. **Documents For Which Metadata Allegedly Does Not Support Syngenta's Claimed Privilege**

The largest group of documents challenged by plaintiffs fall into the fifth category: documents for which plaintiffs claim the metadata attached does not support Syngenta's claimed basis for privilege. Per its agreement with plaintiffs, Syngenta has produced 26 documents in this category for the court's *in camera* review. Applying the above legal standards, the court has determined 23 of the documents are privileged and were properly withheld by Syngenta. Three documents, however, in whole or in part contain information that is not privileged, and Syngenta is ordered to produce them as follows.

PRIV001375. Syngenta has not met its burden of demonstrating the attorney-client privilege attaches to this e-mail string. The e-mails discuss internal "talking points," which appear to pertain to business, rather than legal, matters. No legal advice is conveyed in this document, and Syngenta shall produce it in its entirety.

PRIV001510. This document is an e-mail exchange in which Syngenta has redacted two paragraphs. The first redacted paragraph conveys counsel's thoughts about a current lawsuit, and is protected by the attorney-client privilege. But the second redacted paragraph simply conveys a non-legal, business directive to copy counsel and include a "privileged" notation on "all e-mail communications around China." This is not the type of information that the attorney-client privilege protects. Syngenta is ordered to re-produce the document with only the first of these paragraphs redacted.

PRIV001646. This document is a lengthy e-mail string containing 16 e-mails and 13 redacted sections. Viewing the e-mails in chronological order, the court finds the first seven

redacted sections do not request or convey legal (as opposed to general business) advice, and are therefore not protected by the attorney-client privilege. The same is true for the ninth redacted section (found in the e-mail dated October 13, 2010). The eighth redacted section is privileged in part and not privileged in part. The portion of the section directed to non-attorney Zhang Shiping from non-attorney Hu Guoqun simply asks about language translation and is not privileged. The remaining portion of the eighth redacted section, and the last four redacted sections (from e-mails dated October 14 and 15, 2010) contain privileged information and were properly withheld. Syngenta is ordered to re-produce the document with fewer redacted sections, as required by this ruling.

IT IS THEREFORE ORDERED that plaintiffs' motion to compel is granted in part and denied in part. Syngenta shall produce documents to plaintiffs as specifically ordered herein by **June 20, 2017**. Furthermore, armed with the court's rulings on the submitted representative sample of documents, Syngenta is directed to undertake another review of the documents it continues to withhold and produce to plaintiffs additional documents falling under the rubric of this order by **July 10, 2017**.

Dated June 13, 2017, at Kansas City, Kansas.

                                          s/ James P. O'Hara  
                                         James P. O'Hara  
                                         U.S. Magistrate Judge