**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re Syngenta AG MIR162<br>  Corn Litigation<br><br>This Document Relates to:<br>All Cases<br>_____ | )<br>) MDL No: 2591<br>)<br>) Case No. 14-md-2591-JWL-JPO<br>)<br>)<br>) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR CONSOLIDATION OF STATE CLASSES FOR TRIAL**

**I.   INTRODUCTION**

As requested by the Court at the June 23, 2017 status conference (*see* ECF No. 3313), Class Producer Plaintiffs ("Plaintiffs") respectfully submit this supplemental memorandum in further support of their motion (ECF No. 3081) to group the seven remaining certified State Classes (*see* ECF No. 2547, at 31-33).

At the June 23rd conference, the Court expressed a preference for having the next class trial take up claims in addition to common law negligence – namely, the common law tortious interference and statutory consumer protection causes of action. *See* Tr. at 2426:14-17 (ECF No. 3311) ("I wonder if it would be more useful to try a case that had some other wrinkle to it rather than simply trying a case that was essentially the same theories unadorned by other approaches."). The Court's preference confirms the desirability of avoiding seven serial trials in favor of combining the remaining trials into the three groups that Plaintiffs have proposed, with the Arkansas and Missouri Classes to have their claims decided in the next trial because they both assert tortious interference in addition to negligence claims. Taking up tortious interference claims in the next round makes the most sense because five other proposed state classes in the operative Master Complaint assert such a claim. Syngenta's arguments against concurrently

trying classes asserting tortious interference claims alongside those asserting only negligence have no merit.  And while it grudgingly offers in its supplemental brief (ECF No. 3314) a proposal for limited consolidated trials, its suggestion would still have this Court preside over five trials rather than the three that Plaintiffs propose, and it does not even explain why tortious interference claims should be put to the back of the line where five other proposed state classes assert such claims.

The next trial should also include the Iowa and South Dakota Classes, which assert only negligence claims, followed by a third trial that would resolve the claims of the classes (Illinois and Nebraska) that also assert a consumer protection claim,[1] leaving the Ohio Class for the final trial in light of that state's unique landscape concerning the collateral source rule.[2]

## II. ARGUMENT

### A. The Next Class Trial Should Group Together the Tortious Interference Claims

As Plaintiffs proposed in their opening papers (ECF No. 3082, at 1), the next trial should include the State Classes that assert claims for tortious interference.  Currently, this cause of action is asserted on behalf of two of the eight certified State Classes – the Arkansas Class and

---

[1] Assuming that the Court groups the four state classes for the next trial as Plaintiffs have proposed, the aggregate damages that Plaintiffs have estimated for those classes are $1.335 billion.  The estimated aggregate damages for the third class trial (of the Illinois and Nebraska Classes) are $1.417 billion, and for the Ohio Class that would be tried last they are $251 million.  Alternatively, were the Court to conclude that the next trial should not include the Iowa Class, the estimated damages of the three classes to have their claims adjudicated in the second trial (*i.e.*, of the Arkansas, Missouri, and South Dakota Classes) would drop to $531 million, resulting in the estimated damages in the third trial (*i.e.*, of the Illinois, Iowa, and Nebraska Classes) increasing to $2.221 billion by shifting the Iowa Class to that trial.

[2] By statute, Ohio has largely abrogated the common law collateral source rule that bars evidence of insurance payments resulting from the injury.  Ohio Rev. Code § 2315.20; *see Moretz v. Muakkassa*, 998 N.E.2d 479, 497 (Ohio 2013) (discussing statutory constriction of common law rule).  This raises issues unique to Ohio that may need to be handled with individual proceedings following any class trial.  Moreover, it would unfairly prejudice non-Ohio plaintiffs for whom state-law *bars* admission of such evidence under the collateral source rule.  *Cf.* ECF No. 3155, at 3 (granting motion to exclude evidence of collateral source payments as to Kansas Class).

the Missouri Class.  Producer Plaintiffs' Third Am. Class Action Master Compl., filed Sept. 19, 2016 (ECF No. 2531) ("TAC"), ¶¶ 452-59, 672-81.  Including both states in the next trial would not only promote judicial economy but, more critically, provide more far-reaching guidance in this MDL.  That is because tortious interference is asserted on behalf of no fewer than five additional proposed state classes (which, in due course, Plaintiffs will be asking the Court to certify):  Alabama (TAC ¶¶ 427-34), Indiana (TAC ¶¶ 535-42), North Dakota (TAC ¶¶ 739-46), Oklahoma (TAC ¶¶ 788-95), and Tennessee (TAC ¶¶ 820-27).

Like Arkansas and Missouri, the elements of a tortious interference claim in those five jurisdictions are exceedingly similar, and for some virtually identical.  A plaintiff must prove (1) the existence of a contractual relationship or business expectancy; (2) the interfering party's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) absence of justification; and (5) resultant damage.[3]  The cause of action itself is thus a straightforward one – and would not weigh down a concurrent trial of the negligence claims.

In opposing the grouping of Arkansas and Missouri Classes, Syngenta has predictably trotted out parade-of-horrors arguments, which it continues to press in its supplemental brief. First, it invokes nuances in tortious interference jurisprudence, contending that a consolidated trial will be unworkable because of jury confusion over such distinctions.  Specifically, Syngenta maintains that Missouri courts use a more restrictive definition of what constitutes "improper conduct" by the defendant, whereas Arkansas courts employ what it asserts is a looser test found

---

[3] *Compare Baptist Health v. Murphy*, 373 S.W.3d 269, 281 (Ark. 2010) and *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014) *with White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 11-14 (Ala. 2009); *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997) (citing cases); *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D. 1984) (citing cases); *Tuffy's, Inc. v. Okla. City*, 212 P.3d 1158, 1165-66 & n.35 (Okla. 2009); *Lee v. Strickland*, No. 03A01-9806-CH-00195, 1999 WL 233395, at *2 (Tenn. Ct. App. Apr. 16, 1999) (citing authorities).

in section 767 of the *Restatement (Second) of Torts* ("*Restatement*").  ECF No. 3133 ("Syn. Br.") at 26-27; ECF No. 3314 ("Supp. Br.") at 10.[4]

This distinction, however, is illusory.  A Missouri tortious interference plaintiff must demonstrate that the defendant employed "improper means" only where, for purposes of the absence-of-justification element, the defendant "has a legitimate economic interest in the business expectancy."  *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014); *accord Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 95 (Mo. Ct. App. 2000).  To the extent that Arkansas courts look to *Restatement* § 767 in assessing whether a defendant's conduct is "improper," it is in the context of determining whether there was an *interference*.  *E.g.*, *Baptist Health v. Murphy*, 226 S.W.3d 800, 807 (Ark. 2006); *Hunt v. Riley*, 909 S.W.2d 329, 332 (Ark. 1995).

But even assuming that there is some material distinction between Arkansas and Missouri law as to one of the tortious interference elements, Syngenta's arguments still fail.  Syngenta's implicit position is that claims involving the laws of different states cannot be tried together unless those laws are materially identical.  Its supplemental brief adheres to this theme, inasmuch as it devotes much discussion to differences in states' negligence laws.  *See* Supp. Br. at 3-10.  Juries, though, often consider claims under multiple states' laws, with state law nuances managed through appropriately-tailored jury instructions and verdict forms.[5]  And what Plaintiffs

---

[4] All page references are to ECF pagination, not to the original document.

[5] *E.g.*, *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1455, 1460 (D. Colo. 1988) ("The presentation of two representative cases for trial of common issues in multidistrict litigation does not present problems which could not be addressed through a combination of appropriate jury instructions and verdict forms."); *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 294 & n.84 (N.D. Ohio 2007) ("[C]areful trial planning with the use of jury interrogatories and special verdicts will avoid most jury-instruction complexities in multistate class actions, even when varied state laws might be applicable[.]") (quoting treatise; internal quotation marks omitted); *Green v. Beer*, No. 06 Civ. 4156 (KMW) (JCF), 2009 WL 3401256, at *8 (S.D.N.Y. Oct. 22, 2009) ("no risk of jury confusion or prejudice with respect to the possible application of multiple states'

4

have proposed here is to group just four classes (with only two of them even asserting a second cause of action) – hardly a daunting and insurmountable plethora of claims and laws.

Equally meritless is Syngenta's assertion that it will be unduly prejudiced if "inflammatory and irrelevant material" pertinent to the tortious interference claims is put before a jury that has to decide the negligence claim of a class asserting only the latter. Syn. Br. at 24-26; Supp. Br. at 7-8. What Syngenta ignores is that, even in trials of the negligence-only Iowa, South Dakota, and Ohio Classes, Plaintiffs will be entitled to introduce evidence of its wide-ranging malfeasance for punitive damages, credibility, foreseeability, and other purposes – as was the case in the Kansas trial. That aside, under Syngenta's logic, then negligence and tortious interference claims should not be heard together even for the Arkansas and Missouri Classes themselves – for fear that in deciding the negligence claim the jury will be "inflamed" by evidence relating to the tortious interference count. Erecting such an impermeable barrier to trying claims concurrently would, of course, be inefficient and absurd.

### B.  Other Arguments About State Law Differences Precluding Consolidation Fail

Syngenta's other hairsplitting about state law differences posing a bar to grouping classes for trial fares no better. These asserted differences are just as nonexistent or immaterial.

#### 1. Consumer Fraud

Syngenta argues that given that there is no right to a jury trial for the Nebraska and

---

law"; if choice-of-law rules required use of multiple states' substantive law, "appropriate jury instructions will ensure proper application of those laws to the facts underlying each claim"); *see* David F. Herr, *Annotated Manual for Complex Litigation, Fourth*, § 11.633, at 132 (rev. ed. 2017) ("Where the legal standards applicable to similar claims or defenses differ (for example, where different laws may apply to different parties), careful drafting of questions on a special verdict form can ease problems that consolidation could otherwise cause."); *cf. Sears, Roebuck & Co. v. Tyco Fire Prods. LP*, No. 08 CV 2838, 2010 WL 3274278, at *6 (N.D. Ill. Aug. 17, 2010) ("While the jury may have some difficultly in applying multiple states' laws . . . within one trial, . . . the exorbitant and unnecessary expense that would inevitably result in relitigating the same legal issues in six trials outweighs any benefit that would result in avoiding possible jury confusion."); *see also* section II.B (at pp. 9-10 & n.10), *infra*.

Illinois consumer protection claims, it would be prejudiced because a jury would nonetheless be exposed to evidence of misrepresentations in connection with the consumer protection claims of two states in Group II, and such a result would unfairly prejudice the jury against Syngenta as to Plaintiffs' negligence claims.  This argument fails because Plaintiffs are entitled to a jury trial on their consumer protection claims under the Seventh Amendment and Federal Rules 38 and 39.  *See Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 2017 WL 2389421, at *6-9 (1st Cir. 2017); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 941964, at *7-8 (N.D. Ill. Mar. 11, 2013); *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1202-06 (10th Cir. 2012).[6]  Even were Syngenta correct that Nebraska consumer protection claim could not be tried before a jury, the Court can hear evidence of misrepresentations or fraud in connection with the consumer protection claims outside the jury's presence, and therefore avoid any perceived prejudice.  *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, No. 02 C 3767, 2008 WL 169054, at *4 (N.D. Ill. Jan. 17, 2008); *THK Am., Inc. v. NSK, Ltd. & NSK Corp.,* No. 90 C 6049, 1996 WL 33398071 (N.D. Ill. Jan.9, 1996) (same).[7]

To the extent that Syngenta argues that Iowa and South Dakota should not be consolidated with Missouri and Arkansas because the latter cases, involving evidence of misrepresentations or omissions regarding the tortious interference claims, will unfairly infect the negligence claims in the former cases, Supp. Br. at 4, and that Nebraska should be heard alone for the similar reason vis-a-vis the consumer fraud and negligence claims, its claim is

---

[6] Syngenta's reliance on *Mensik* is flawed because *Mensik* involves a state court trial and thus does not implicate Rule 38, 39 or the Seventh Amendment.

[7] Syngenta's argument that MIR162's geographic-efficacy differences preclude consolidation is meritless (especially given that it did not limit sales to such areas).  Its lone expert on the subject, Mr. Milne, is precluded from testifying about efficacy outside of Missouri, where he farms.  ECF No. 3134, at 10.  Indeed, that he testified in the Kansas Class trial demonstrates that Syngenta's defense that the technology was needed does not turn on where the plaintiff farms.  Moreover, the point of Plaintiffs' evidence – other traits approved in China controlled for these same pests – is universal and not dependent on which case is being tried.

unavailing because (1) the Court has held that evidence of misrepresentations or omissions is relevant to various negligence issues in this case, including failure to warn and credibility issues, *see* May 12, 2017 Tr. 48:25-50:18 (Order on motions in limine); juries are presumed to follow instructions and a limiting instruction would sufficiently alleviate Syngenta's concerns, Reply Br. (ECF No. 3166) at 12-16, and in any event the court can hear the evidence outside the presence of the jury, *id.* at 24-25.

### 2. Negligence Issues

Grouping Iowa and South Dakota together is not problematic because of so-called "important differences" (Supp. Br. at 3-4) between their negligence laws. Syngenta argues that Iowa, but not South Dakota, adopted the *Restatement (Third) of Torts*, and as such treats whether a duty exists as a question of law. But Plaintiffs have already showed that the duty issue in the cases is a question of law for the court. Reply Br. at 20 & n.14. And South Dakota, like the others, treats it the same. *Zerfas v. AMCO Ins. Co.*, 873 N.W.2d 65, 70 (S.D. 2015); *Gunville v. United States*, 985 F. Supp. 2d 1101, 1108 (D.S.D. 2013). There thus will be no jury confusion over this issue.[8]

---

[8] Syngenta argues Iowa is unique in adopting the *Restatement*'s approach to duty, removing foreseeability as a relevant factor. That is an overstatement, as the Court has already recognized that this approach to duty precludes the finding of *no* duty based on an absence of foreseeability because it usurps the jury's role in determining foreseeability. ECF No. 1016, at 15 n.4 ("[T]he fact that the injury was foreseeable and allegedly foreseen weighs in favor of recognizing a duty of care."); *accord Thompson v. Kaczynski*, 774 N.W.2d 829, 835 (Iowa 2009) (reversing "district court [for considering] foreseeability in concluding the defendants owed *no* duty") (emphasis added). There being a duty here, Syngenta fails to explain how juries would assess foreseeability differently in Iowa than in other states. Syngenta cites *Small v. McKennan Hosp.*, 437 N.W.2d 194, 200 (S.D. 1989), but there, the jury was instructed on foreseeability in the context of an intervening criminal act. *Id.* This is in accord with the other states that recognize intervening cause as a defense. *See* Ark. Model Jury Instr., Civ. AMI 503. Second, there is no material difference in the test for proximate cause between Iowa and Arkansas, and Missouri because neither Arkansas or Missouri suggests use of the "substantial factor" test in instructing the jury, Ark. Model Jury Instr., Civ. AMI 501-03; *Hagen v. Celotex Corp.*, 816 S.W.2d 667, 673 (Mo. 1991) ("substantial factor" is a test used by the trial court to determine "whether a submissible case has been made and not a formula for instructing the jury."); MAI 19.01. Third, Syngenta argues that South Dakota applies the "substantial factor" test in assessing causation, whereas Iowa does not apply that test but

### a. Intervening Cause

Syngenta argues that the laws of Nebraska and Missouri prohibit instructing the jury on the defense of intervening cause and that these two class action cases should not be tried together. But Plaintiffs have not proposed these two states be heard together.[9]

Syngenta's argument that the Nebraska Class should not be combined with the *one* other proposed case for the third trial, the Illinois Class, because Nebraska precludes a jury instruction on intervening cause, places the burden of this issue on the plaintiff, and precludes federal jury trials on the NCPA claim, also lacks merit. Nebraska recognizes that the issue of intervening cause is subsumed within the question of proximate cause and that an intervening cause instruction is unnecessary since the substance of this issue is covered by a jury instruction on proximate cause. *See Worth v. Kolbeck*, 728 N.W.2d 282, 291-92 (Neb. 2007); *Tapp v. Blackmore Ranch, Inc.*, 575 N.W.2d 341, 349 (Neb. 1998); *Adams v. Am. Cyanamid Co.*, 498 N.W.2d 577, 585 (Neb. Ct. App. 1992); *State v. Houpt*, 2004 WL 1191035, at *11 (Neb. Ct. App. June 1, 2004). That is not a basis for jury confusion where the essence of the issue is presented in an instruction, and the absence of the instruction does not prevent the jury from

---

instead assesses foreseeability in the causation context. But this point is unavailing too because the substantial factor test is the same test as the proximate cause test in South Dakota, *Jorgenson v. Vener*, 640 N.W.2d 485, 489 (S.D. 2002); *Goebel v. Warner Transp.*, 612 N.W.2d 18, 22 (S.D. 2000), and South Dakota assesses foreseeability in the causation context, *Zerfas*, 873 N.W.2d at 70.

[9] Even if the submission of "intervening cause" jury instructions is not permitted in Missouri and Nebraska, that would "not prevent a defendant from requesting such an instruction from a federal court sitting in diversity," *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988), or from arguing that someone else is the sole cause of the Plaintiffs' injuries, *see Cook v. Cox*, 478 S.W.2d 678, 682 (Mo. 1972), or from arguing this point in a closing statement, Reply Br. at 22-23. "In diversity cases, federal law controls determinations granting or denying proposed instructions." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1332 (10th Cir. 1996). And as previously noted, the state jury instructions raised by Syngenta are not binding on this Court. Reply Br. at 20. Finally, authority suggests intervening cause can be submitted in Missouri as a so-called converse instruction. *Fowler v. Robinson*, 465 S.W.2d 5, 11 (Mo. App. 1971) ("If such an efficient intervening cause is supported by the evidence, it may be submitted in a converse instruction … and argued to the jury.").

considering the issue under the rubric of proximate cause.  *See Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1134 (10th Cir. 2009); *see also McGrath v. Wallace Murray Corp.*, 496 F.2d 299, 301 (10th Cir. 1974).  Even if the burden of establishing this issue is placed on the plaintiff in Nebraska, that is not a credible basis for jury confusion, since juries frequently apply differing standards, and jury instructions can adequately address this issue.  *See Rothstein v. Steinberg*, No. 5:08CV0673, 2008 WL 5716138, at *2 (N.D. Ohio June 9, 2008) ("juries frequently apply varying standards of proof to different claims"); *Zavala v. G.D. Searle & Co.*, No. CIV. 90-1747(PG), 1991 WL 128222, at *3 (D.P.R. June 28, 1991).  As discussed above, Plaintiffs have a right to a federal jury trial on their Nebraska and Illinois consumer fraud claims.  As such, no prejudice would flow from the jury hearing evidence on punitive damages and consumer fraud.

### 3. Punitive Damages

Syngenta contends that differing standards as to the standards for deciding punitive damages (*i.e.*, clear and convincing versus preponderance of evidence) will lead to jury confusion.  Without agreeing with its characterization of the various states' standards for punitive damages, this argument is unpersuasive.  *See Tuttle v. Sears, Roebuck & Co.*, No. 1:08 CV 333, 2009 WL 2916894, at *2 (N.D. Ohio Sept. 4, 2009) (rejecting as "unfounded" argument that jury confusion would result from applying "clear and convincing evidence" standard" for punitive damages claims and "preponderance of the evidence" standard for other claims; "juries . . . 'frequently apply varying standards of proof to different claims'"; "any potential for jury confusion could be avoided through special instructions or cautionary warnings").[10]

---

[10] *See also Whalen v. CSX Transp., Inc.*, No. 13CIV3784LGSHBP, 2016 WL 4787337, at *6 (S.D.N.Y. Sept. 14, 2016) ("Asking a jury to apply different legal standards to different claims is not unusual in this District. . . . Juries also routinely untangle legal and factual issues that are exponentially more complicated than those involved in this case. For example, in *United States v. Parse*, 789 F.3d 83, 123-24 (2d Cir. 2015), a criminal tax case, the jury was asked to consider 25 counts against one or more of five defendants, requiring 58 separate verdicts."); *Jackson v. Asplundh Constr. Corp.*, No.

Syngenta's argument concerning distinctions between Missouri and Nebraska law are irrelevant because Plaintiffs are proposing that the Nebraska Class be tried only with the Illinois Class (and possibly along with Iowa).  In arguing that Nebraska should not be combined with any other state case because it bars punitive damages awards, Syngenta claims that evidence that may "only" go to punitive damages would prejudice Syngenta.  It fails to identify such evidence, however; indeed, that same evidence would be relevant to Syngenta's state of mind, which goes to negligence issues like knowledge, foreseeability, credibility, compliance with industry standards, exercise of reasonable care, etc.  At any rate, juries are presumed to follow their instructions, are capable of handling differing standards, Reply Br. at 12-16, and proper limiting instructions will protect Syngenta's rights as to this issue,  *id*. at 26-27; *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990); *Frankum v. Boston Sci. Corp.*, 2015 WL 3832187, at *3 (W.D.N.C. June 22, 2015).  The instruction to the Kansas Class jury confirms this, inasmuch as the Court instructed that any punitive damages had to be based on the *same* conduct giving rise to Syngenta's liability in the first place.  See ECF No. 3302, at 22 (Instruction No. 19).

## III.  CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' April 19th opening and May 17th reply memoranda (ECF Nos. 3082, 3166), the Court should group the seven remaining certified State Classes for trial in the order that Plaintiffs have proposed.

---

4:15CV00714 ERW, 2016 WL 4701589, at *5 (E.D. Mo. Sept. 8, 2016) (rejecting argument that allowing Plaintiff to plead punitive damages in separate counts . . . would confuse the jury" where "there are multiple counts with multiple pleading standards. Defendants are unable to cite any authority for their position. Juries must frequently assess multiple claims regarding the same alleged conduct").

Dated:  June 30, 2017

        Respectfully submitted,

        /s/  Patrick J. Stueve
        Patrick J. Stueve—KS Bar #13847
        **STUEVE SIEGEL HANSON LLP**
        460 Nichols Road, Suite 200
        Kansas City, MO 64112
        Telephone:  (816) 714-7100
        stueve@stuevesiegel.com

        **CLASS COUNEL AND LIAISON COUNSEL FOR PLAINTIFFS**

        Don M. Downing
        **GRAY, RITTER & GRAHAM, P.C.**
        701 Market Street, Suite 800
        St. Louis, MO 63101
        Telephone:  (314) 241-5620
        ddowning@grgpc.com

        Scott Powell
        **HARE WYNN NEWELL & NEWTON**
        2025 3rd Ave. North, Suite 800
        Birmingham, AL 35203
        Telephone:  (205) 328-5330
        scott@hwnn.com

        William B. Chaney
        **GRAY REED & MCGRAW, P.C.**
        1601 Elm Street, Suite 4600
        Dallas, TX 75201
        Telephone:  (469) 320-6031
        wchaney@grayreed.com

        **CLASS COUNSEL**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Patrick J. Stueve
Co-Lead Counsel for Plaintiffs