# EXHIBIT A

2/23/2018 FINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| *IN RE SYNGENTA AG MIR 162 CORN LITIGATION* | Master File No. 2:14-MD-02591-JWL-JPO |
| THIS DOCUMENT RELATES TO: | MDL No. 2591 |
| All Actions | |

## AGRISURE VIPTERA/DURACADE CLASS SETTLEMENT AGREEMENT

2/23/2018 FINAL

# TABLE OF CONTENTS

**Page**

1.  CLASS DEFINITION ............................................................... 3

2.  OTHER DEFINITIONS ............................................................. 5

3.  SETTLEMENT TERMS ............................................................ 19

4.  SETTLEMENT ADMINISTRATION.............................................. 38

5.  EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION ............. 46

6.  RELEASES AND RESERVATIONS ................................................ 47

7.  ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES ...................... 52

8.  WALK AWAY RIGHTS AND TERMINATION OF THIS AGREEMENT ........... 56

9.  MISCELLANEOUS PROVISIONS ................................................. 58

2/23/2018 FINAL

## TABLE OF EXHIBITS

1.      List of Related Actions

2.      Claim Form

3.      Long-Form Notice

4.      Notice Plan

5.      Publication Notice

6.      Released Parties

## AGRISURE VIPTERA/DURACADE CLASS SETTLEMENT AGREEMENT

This Agreement is made and entered into as of the 26th day of February, 2018 by and among the Representative Plaintiffs, individually and as proposed representatives of all Class Members, by and through Settlement Class Counsel, Subclass Counsel, and the Plaintiffs' Negotiating Committee, and Syngenta, by and through its attorneys (collectively referred to herein as the "Parties"). The Parties intend this Agreement to resolve, discharge, and settle the Released Claims of Class Members fully, finally, and forever in accordance with the terms and conditions set forth below.

## WITNESSETH

WHEREAS, there is a consolidated and coordinated multidistrict litigation pending in the United States District Court for the District of Kansas, styled *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591 (the "MDL Actions"), composed of actions relating to Agrisure Viptera and/or Agrisure Duracade Corn Seed that Syngenta introduced and marketed in the United States;

WHEREAS, there are actions similar to the MDL Actions pending in other courts, including, without limitation, in the Fourth Judicial District Court, County of Hennepin, State of Minnesota, styled *In re Syngenta Class Action Litigation*, Court File No. 27-CV-15-12625 and *In re Syngenta Litigation*, Court File No. 27-CV-15-3785, in the United States District Court for the Southern District of Illinois, styled *In re Syngenta Actions*, No. 3:15-cv-01221 and No. 3:16-cv-01379, and in the Circuit Court of the First Judicial Circuit, Williamson County, Illinois, styled *In re Syngenta Litigation*, No. 15-L-157 (collectively, and with other actions as set forth in Exhibit 1, and similar actions, the "Related Actions");

WHEREAS, Representative Plaintiffs allege on behalf of themselves and Class Members that Syngenta prematurely commercialized and otherwise inappropriately marketed and sold

Agrisure Viptera and/or Agrisure Duracade Corn Seed, causing contamination of the United States Corn supply and significant disruption to the export of United States Corn and Corn products, and that the Representative Plaintiffs and the Class Members were harmed by the conduct alleged in the Complaint;

WHEREAS, Syngenta denies any and all Claims and has asserted various defenses that it believes are meritorious;

WHEREAS, the Parties agree that this Agreement shall not be deemed or construed as an admission or as evidence of any violation of any statute or law, or of any liability or wrongdoing by any of the Released Parties, or of the merit of any of the Claims or allegations alleged in the MDL Actions, the Related Actions, or otherwise, or the merit of any of the potential or asserted defenses to those allegations, or as a waiver of any such defenses;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the asserted and potential Claims and defenses and the alleged harm caused by Syngenta's marketing and sale of Agrisure Viptera and/or Agrisure Duracade Corn Seed and assessed the various risks of future litigation including risks from any future appeals in the MDL Actions and the Related Actions;

WHEREAS, settlement discussions began in 2016 in mediation sessions conducted by the Special Masters, including several months of extensive, arm's-length, adversarial, and, at times, contentious negotiations; ultimately, through an extended series of mediation and negotiation sessions, the Parties reached a settlement pursuant to this Agreement (the "Settlement");

WHEREAS, Settlement Class Counsel and Subclass Counsel, under the supervision of the Special Masters, conducted extensive, arm's length, adversarial, and, at times, contentious negotiations; ultimately, through an extended series of negotiation sessions, Settlement Class

Counsel and Subclass Counsel reached a settlement pursuant to this Agreement to allocate the settlement proceeds between the Subclasses as set forth in this Agreement.

WHEREAS, Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee have concluded, after extensive factual examination and investigation and after careful consideration of the circumstances, including the Claims asserted in the Complaint and in the Related Actions, and the possible legal and factual defenses thereto, that it would be in the Class Members' best interests to enter into this Agreement to avoid the uncertainties, burdens, risks, and delays inherent in litigation and subsequent appeals and to assure that the substantial benefits reflected in this Agreement are obtained for Class Members in an expeditious manner; and, further, that this Agreement is fair, reasonable, adequate, and in the best interests of the Representative Plaintiffs and the Class Members;

WHEREAS, Syngenta, despite its belief that it has strong defenses to the Claims described in this Agreement, and in the interests of its ongoing business in the Corn industry in the United States, has agreed to enter into this Agreement to reduce and avoid the further expense, burden, risks, and inconvenience of protracted litigation and subsequent appeals and to resolve finally and completely Representative Plaintiffs' and other Class Members' Claims;

NOW, THEREFORE, the Parties agree that the MDL Actions, as well as related actions pending in other jurisdictions, filed by Class Members, shall be settled, compromised, and/or dismissed with prejudice on the terms and conditions set forth in this Agreement, without expenses to Syngenta (except as provided in this Agreement), subject to the Court's approval of this Agreement as a fair, reasonable, and adequate settlement under Fed. R. Civ. P. 23(e).

## 1.   **CLASS DEFINITION**

The Parties agree and consent, for settlement purposes only, to the certification of the

following settlement class and settlement subclasses under Fed. R. Civ. P. 23(b)(3) (the "Settlement Class"):

1.1 <u>Settlement Class</u>:  Any Person in the United States that during the Class Period owned any Interest in Corn in the United States priced for sale during the Class Period <u>and</u> falls into one of the four sub-classes set forth in Section 1.2 below.

1.2 <u>Settlement Subclasses</u>:

1.2.1 <u>Subclass 1</u>:  Any Producer in the United States that during the Class Period owned any Interest in Corn in the United States priced for sale during the Class Period, excluding Producers that, at any time prior to the end of the Class Period, purchased Agrisure Viptera and/or Agrisure Duracade Corn Seed and produced Corn grown from Agrisure Viptera and/or Agrisure Duracade Corn Seed.

1.2.2 <u>Subclass 2</u>:  Any Producer in the United States that during the Class Period owned any Interest in Corn in the United States priced for sale during the Class Period and that, at any time prior to the end of the Class Period, purchased Agrisure Viptera and/or Agrisure Duracade Corn Seed and produced Corn grown from Agrisure Viptera and/or Agrisure Duracade Corn Seed.

1.2.3 <u>Subclass 3</u>:  Any Grain Handling Facility in the United States that during the Class Period owned any Interest in Corn in the United States priced for sale during the Class Period.

1.2.4 <u>Subclass 4</u>:  Any Ethanol Production Facility in the United States that during the Class Period owned any Interest in Corn in the United States

priced for sale during the Class Period.

**1.3**     Excluded from the Settlement Class are the following:  (a) the Court and its officers, employees, appointees, and relatives; (b) Syngenta and its affiliates, subsidiaries, officers, directors, employees, contractors, agents, and representatives; (c) all plaintiffs' counsel in the MDL Actions or the Related Actions; (d) government entities; (e) Opt-Outs; and (f) the Excluded Exporters.

## 2.     <u>**OTHER DEFINITIONS**</u>

As used in this Agreement and its exhibits, the following terms shall have the meanings set forth below.  Terms used in the singular shall include the plural and vice versa.

**2.1**     "Agreement" means this Agrisure Viptera/Duracade Class Settlement Agreement, together with the exhibits attached to this Agreement, which are incorporated in this Agreement by reference.

**2.2**     "Agrisure Viptera and/or Agrisure Duracade Corn Seed" means Corn seed containing Syngenta events MIR162 and/or Event 5307.

**2.3**     "Allocation Methodology" means the method of determining and calculating a Compensable Recovery Quantity relating to a Settlement Claim, authenticating Settlement Claims, allocating Gross Settlement Proceeds among the Class Members, and the timing and method of Settlement Fund distributions as set forth in Section 3.7.2.

**2.4**     "CAFA Notice" means the notice of this Settlement to be served by Syngenta upon state and federal regulatory authorities as required by Section 3 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**2.5**     "Claim" means all claims made, or which could have been made, by any Person against any of the Released Parties arising out of Syngenta's commercialization of Agrisure

Viptera and/or Agrisure Duracade Corn Seed.

**2.6**   "Claim Form" shall mean an electronic or paper document containing the information and fields substantially in the form set forth in the "Producer Claim Form," "Grain Handling Facility Claim Form," and "Ethanol Production Facility Claim Form" set forth in Exhibit 2.  The Claim Form shall be submitted under penalty of perjury, based on the Class Members' knowledge, information, and belief, to the Claims Administrator by a Class Member submitting a Settlement Claim under this Agreement.

**2.7**   "Claims Administrator" means BrownGreer PLC.  In the event that the Claims Administrator can no longer serve for any reason, Settlement Class Counsel and Syngenta shall jointly select a new Claims Administrator.  In no event shall the Claims Administrator be a Person other than one agreed upon by Settlement Class Counsel and Syngenta.

**2.8**   "Claims Administrator's Final Report" means the Claims Administrator's final report to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, Syngenta, the Special Masters, and the Court, reporting (1) the total number of Class Members that properly and timely made a Settlement Claim for compensation in connection with this Agreement; (2) the identity of each such Class Member; and (3) each such Class Member's Compensable Recovery Quantity, if any, for each of Marketing Years 2013-17.

**2.9**   "Claims Administrator's Preliminary Report" means the Claims Administrator's preliminary report to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, Syngenta, the Special Masters, and the Court reporting (1) the total number of Class Members that properly and timely made a Settlement Claim to apply for compensation in connection with this Agreement; (2) the identity of each such Class Member; and (3) each such Class Member's Compensable Recovery Quantity, if any, for each of Marketing Years 2013-17.

**2.10**   "Claims Deadline" means the final date to submit a Claim Form, which is 150 days after Settlement Class Counsel first publish the Class Notice to the Settlement Class pursuant to the Notice Plan.

**2.11**   "Class Member" means a member of the Settlement Class.

**2.12**   "Class Notice" means notice to the Class Members of this Agreement substantially in the form and following the procedures described in the Notice Plan and established by order of the Court and to be administered by Settlement Class Counsel under the direction and jurisdiction of the Court.

**2.13**   "Class Period" means September 15, 2013 through the date of the Preliminary Approval Order.

**2.14**   "Class Releasors" means all Class Members, as well as their successors, heirs, executors, trustees, administrators, assigns, predecessors, affiliates, related companies, subsidiary companies, holding companies, insurers, affiliates, current and former attorneys, and their current and former members, partners, officers, directors, agents, and employees, all in their capacity as such.  Opt-Outs and Persons specifically excluded from this Settlement as set forth in Section 1.3 above are not Class Releasors

**2.15**   "Compensable Recovery Quantity" means:

**2.15.1**  For Class Members that are Producers:  a Corn bushel for which a Producer Class Member is entitled to make a recovery under the Allocation Methodology.  A Producer's Compensable Recovery Quantity shall be determined as follows:

2.15.1.1      For any acreage reported to USDA for Form FSA 578 purposes, Form FSA 578 shall be the exclusive manner in which

acreage is determined. The Claims Administrator shall first determine the number of Corn acres reported on the Producer's Form FSA 578 in each Marketing Year, exclusive of acres reported as failed or for silage, which shall be multiplied by the Producer's share in those acres as reported on the Form FSA 578. The Claims Administrator shall then convert the Producer's acreage in each Marketing Year to bushels by (a) multiplying the Producer's acreage by the average county yield as reported by USDA NASS (or if no county yield is reported, the nearest average yield available as determined by the Claims Administrator); (b) deducting the percentage of bushels reported as "fed on farm" as reported on the Producer's Claim Form; (c) multiplying the resulting bushels in each Marketing Year according to a weighted average; and (d) summing the resulting bushels.

2.15.1.2    For any acreage not reported to USDA for Form FSA 578 purposes, but for which RMA Data is available, RMA Data shall be the exclusive manner in which acreage is determined. For this acreage, Compensable Recovery Quantity shall be determined in the same manner as that stated above except using RMA Data instead of Form FSA 578 data.

2.15.1.3    For any acreage not reported to USDA for Form FSA 578 purposes and for which RMA Data is not available (including Claims by landlords whose Interest is not reflected in Form FSA 578

or RMA Data), Compensable Recovery Quantity shall be determined in the same manner as that stated above, except using information reported on the Claim Form.

2.15.1.4    To the extent that a conflict arises because one or more landlords and one or more farmers submit Claims Forms for the same acreage, the Claims Administrator shall allocate to each Class Member a percentage of the Compensable Recovery Quantity for that acreage such that the total percentage equals 100%. Any disputes over that allocation determination shall be resolved by the Special Masters pursuant to Section 9.18.3.

**2.15.2** For Class Members that are Grain Handling Facilities: a Corn bushel for which a Grain Handling Facility Class Member is entitled to make a recovery under the Allocation Methodology. A Grain Handling Facility's Compensable Recovery Quantity shall be determined as follows:

2.15.2.1    The Claims Administrator shall (a) determine the number of Corn bushels reported as sold on the Grain Handling Facility's Claim Form in each Marketing Year; (b) multiplying the resulting bushels in each Marketing Year according to a weighted average; and (c) summing the resulting bushels.

**2.15.3** For Class Members that are Ethanol Production Facilities: a short ton of DDGs for which an Ethanol Production Facility Class Member is entitled to make a recovery under the Allocation Methodology. An Ethanol

Production Facility's Compensable Recovery Quantity shall be determined as follows:

2.15.3.1     The Claims Administrator shall (a) determine the number of short tons of DDGs reported as sold on the Ethanol Production Facility's Claim Form in each Marketing Year; (b) multiplying the resulting short tons in each Marketing Year according to a weighted average; and (c) summing the resulting short tons.

**2.16**   "Complaint" means the Third Amended Class Action Master Complaint, filed as ECF No. 2531 on the MDL No. 2591 master docket, and any amendments of that document from the time of execution of this Agreement up to and including the time the Parties submit this Agreement to the Court pursuant to Section 3.2, including a Fourth Amended Class Action Master Complaint, which Settlement Class Counsel shall seek leave from the Court to file and which shall be attached as an exhibit to the Motion for Preliminary Approval.

**2.17**   "Corn" means Corn produced in the United States, and/or DDGs resulting from that Corn, priced for sale after September 15, 2013.

**2.18**   "Court" and "MDL Court" mean the Honorable John W. Lungstrum, or if he is unavailable, another judge of the United States District Court for the District of Kansas presiding over *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591.

**2.19**   "DDGs" means Dried Distillers Grains produced by Ethanol Production Facilities as a byproduct of ethanol production and priced for sale after September 15, 2013.

**2.20**   "Escrow Account" means the escrow account to be established by orders of the Court and to be administered by the Claims Administrator under the direction and jurisdiction of the Court to hold the Gross Settlement Proceeds.  The Parties shall move the Court to establish the

Escrow Account as a "Qualified Settlement Fund" within the requirements of Treas. Reg. § 1.468(B)-1(c), and the Parties shall for all purposes treat the Escrow Account as a Qualified Settlement Fund established and operated in accordance with the requirements and purposes of that regulation.

2.21    "Ethanol Production Facility" means all ethanol plants, biorefineries, or other entities in the United States that during the Class Period produced or purchased DDGs in the United States and priced those DDGs for sale.

2.22    "Excluded Exporter" means Archer Daniels Midland Company, Bunge North America, Inc., Cargill, Incorporated, Cargill, International SA, Louis Dreyfus Company, BV, Louis Dreyfus Company, LLC, Louis Dreyfus Company Grains Merchandising, LLC, Gavilon Grain, LLC, Trans Coastal Supply Company, Inc., Agribase International Inc., or the Delong Co. Inc., and their respective parent(s) and each of their predecessors, affiliates, assigns, successors, related companies, subsidiary companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors, agents, and employees, in their capacity as such, any licensees, distributors, retailers, seed dealers, seed advisors, other resellers, and their insurers, and affiliates, in their capacity as such.  Excluded Exporter does not include, however, any Grain Handling Facilities or Ethanol Production Facilities except those operated, owned (in whole or in part, directly or indirectly), or administered by one of the entities specifically listed in this paragraph.

2.23    "Execution Date" means the date on which this Agreement is fully executed by the Parties.

2.24    "Fairness Hearing" means the hearing conducted by the Court in connection with determining the fairness, adequacy, and reasonableness of this Agreement under Fed. R. Civ. P.

23(e).  The date of the Fairness Hearing shall be communicated to Class Members in the Class Notice.

**2.25**    "Fee and Expense Applications" means the applications by Settlement Class Counsel and other counsel representing Class Members for the award of attorneys' fees, costs, and expenses to Settlement Class Counsel and other counsel who performed work for the benefit of Class Members and service awards to the Representative Plaintiffs as set forth in Section 7.2 of this Agreement.

**2.26**    "Fee and Expense Award" means an order of the Court, entered in consultation with and approved by the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois and the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota, granting, in whole or in part, the Fee and Expense Applications.

**2.27**    "Final" with respect to this Agreement means one of the following conditions has occurred:  (1) if no timely appeal of the Final Approval Order by the Court is taken, then upon expiration of the time for any Class Member to appeal the Final Approval Order; or, (2) if there are any timely appeals of the Final Approval Order, then (i) all appellate courts with jurisdiction affirm the Final Approval Order or (ii) the appeal is dismissed or denied such that the Final Approval Order is no longer subject to further appeal.

**2.28**    "Final Approval" means the Court's issuance of an order and judgment granting final approval of this Agreement pursuant to Fed. R. Civ. P. 23(e), such order and judgment granting final approval of this Agreement to be termed the Court's "Final Approval Order."  Final Approval and the Final Approval Order need not include the Fee and Expense Award.

**2.29**    "Final Effective Date" means the date upon which the Final Approval Order

approving this Agreement becomes Final.

**2.30**　"FSA" means the U.S.D.A.'s Farm Service Agency.

**2.31**　"Grain Handling Facility" means all grain elevators, grain distributors, grain transporters, or any other entities in the United States that during the Class Period (i) purchased Corn and then priced Corn in the United States for sale during the Class Period; and/or (ii) that purchased Corn and then transported, stored or otherwise handled Corn that was priced for sale during the Class Period.

**2.32**　"Gross Settlement Proceeds" means One Billion Five Hundred and Ten Million U.S. Dollars ($1,510,000,000.00).　The Gross Settlement Proceeds shall include, without limitation, any attorneys' fees or expenses awarded including but not limited to attorneys' fees or expenses awarded pursuant to the Fee and Expense Applications, as well as the held and unreimbursed expenses incurred by the Special Masters through the date of this Agreement, as contemplated by the orders appointing the Special Masters, as well as the fees and expenses of the Claims Administrator, Notice Administrator, and the Special Masters in connection with this Agreement for time expended after September 25, 2017.　Syngenta shall not, under any circumstances, be responsible for, or liable for, payment of any amount under this Agreement in excess of One Billion Five Hundred Ten Million U.S. Dollars ($1,510,000,000.00).

**2.33**　"Handwritten Signature" means the actual signature by the person whose signature is required on the document.　Unless otherwise specified in this Agreement, a document requiring a Handwritten Signature may be submitted by an actual original "wet ink" signature on hard copy, or a PDF or other electronic image of an actual signature, but cannot be submitted by an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§ 7001, et seq., the Uniform Electronic Transactions Act, or their successor acts.

**2.34**    (a)  "Interest," when used in connection with a Producer's acreage or a Producer's Compensable Recovery Quantity, means (i) the Producer's financial interest as reflected on a Form FSA 578 for Corn acreage covered by such form or, in the alternative, and only if a Producer's Corn acreage is not reported on a Form FSA 578 (ii) the Producer's financial interest as reported on USDA Risk Management Agency ("RMA") forms related to crop insurance applications, or, in the alternative, and only if a Producer's Corn acreage is not reported on a Form FSA 578 or RMA Form, (iii) a financial interest in the Corn, as reflected by other proof including, without limitation, variable rent payable to a landlord or other Person based on a share of the Corn crop or proceeds from the sale of Corn.  However, any landlord or other Person that receives only a fixed cash amount for renting the land that did not vary with the type, size of, or pricing for the Corn crop does not have an Interest in Corn.  To the extent that a conflict arises between an Interest reflected on a Form FSA 578 and a claim for Corn not reported on a Form FSA 578, the Interest reflected by the Form FSA 578 shall control.

(b)  "Interest," when used in connection with a Grain Handling Facility's Compensable Recovery Quantity, means the quantity of Corn handled by the Grain Handling Facility, otherwise known as the throughput.

(c)  "Interest," when used in connection with an Ethanol Production Facility's Compensable Recovery Quantity, means the quantity of short tons of DDGs priced for sale by an Ethanol Production Facility.

**2.35**    "Long-Form Notice" means the long-form notice to Class Members of this Agreement to be submitted to the Court for approval and, once approved by the Court, to be disseminated to Class Members pursuant to the Notice Plan.  The Long Form Notice shall be in substantially the form of the proposed Long-Form Notice attached as Exhibit 3.

**2.36**   "Marketing Year" means from September 1st to August 31st.   For example, Marketing Year 2013 refers to the period from September 1, 2013 to August 31, 2014.

**2.37**   "MDL Co-Lead Counsel" and "Litigation Class Counsel" means William B. Chaney, Don M. Downing, Scott A. Powell, and Patrick J. Stueve.

**2.38**   "Minnesota Co-Lead Litigation Class Counsel" means Daniel E. Gustafson and William R. Sieben.

**2.39**   "Minnesota Co-Lead Litigation Counsel for Individual Plaintiffs" means Frank Guerra, IV and Lewis A. Remele, Jr.

**2.40**   "Motion for Preliminary Approval" means the motion or motions filed by the Parties pursuant to Fed. R. Civ. P. 23(e) to preliminarily approve this Settlement.

**2.41**   "Non-Producer" means any Person that is an Ethanol Production Facility or Grain Handling Facility in the United States during the Class Period.

**2.42**   "Notice Administrator" means BrownGreer PLC.   In the event the Notice Administrator can no longer serve for any reason, Settlement Class Counsel and Syngenta shall jointly select a new Notice Administrator.   In no event shall the Notice Administrator be a Person other than one agreed upon by Settlement Class Counsel and Syngenta.

**2.43**   "Notice Plan" means the plan to be approved by the Court for providing Class Notice to the Settlement Class in accordance with Fed. R. Civ. P. 23(e).   The Notice Plan shall be in substantially the form of the proposed Notice Plan as set forth in Exhibit 4.

**2.44**   "Opt-Out" means any Class Member that timely and properly submits a request for exclusion from the Settlement Class in accordance with the procedures set forth in this Agreement and approved by the Court and did not timely and properly revoke its request.

**2.45**   "Opt-Out Deadline" is the last date on which a Class Member may properly and

timely request to be excluded from the Settlement Class as set forth in the table in Section 4.6.

**2.46**    "Opt-Out List" means a list compiled by the Claims Administrator of all properly and timely Opt-Outs to be provided to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, and Syngenta within thirty (30) days of the Opt-Out Deadline.

**2.47**    "Person" means a natural person, corporation, limited liability company, other company, trust, joint venture, association, partnership, or other enterprise or entity, or the legal representative of any of the foregoing.

**2.48**    "Plaintiffs' Negotiating Committee" means Clayton A. Clark, Daniel E. Gustafson, Christopher A. Seeger, and Mikal C. Watts.

**2.49**    "Preliminary Approval Order" means the order entered by the Court preliminarily approving the Settlement, conditionally (*i.e.*, provisionally) certifying the Settlement Class and Subclasses, appointing Settlement Class Counsel and Subclass Counsel, approving the Allocation Methodology, approving the Notice Plan, appointing the Special Masters, appointing the Notice Administrator, appointing the Claims Administrator, and setting a schedule for the Final Approval process.

**2.50**    "Producer" means any Person that has an Interest in Corn produced in the United States that was priced for sale during the Class Period, including any owner, operator, landlord, waterlord, tenant, or sharecropper who shares in the risk of producing Corn and who is entitled to share in the Corn crop available for marketing during the Class Period.  A landlord who receives a variable rent payable based on a share of the Corn crop or proceeds from the sale of Corn is a Producer.  A landlord who receives only a fixed cash amount for renting the land that did not vary with the size of, or pricing for, the Corn crop is not a Producer.

**2.51**    "Production Capacity" means the total annual production capability in million-

gallons (MMgal) of ethanol of an Ethanol Production Facility.

**2.52** "Publication Notice" means the part of the Notice Plan that includes a summary form of electronic and/or print notice of the proposed Settlement to be published in certain hard copy or electronic formats directed at Class Members, subject to approval of the Court, and substantially in the form attached to this Agreement as Exhibit 5.

**2.53** "Released Claims" means any and all Claims released by this Agreement as set forth in Section 6.

**2.54** "Released Parties" means Syngenta, along with its parent(s) and each of its predecessors, affiliates, assigns, successors, related companies, subsidiary companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors, agents, and employees, in their capacity as such, any licensees, distributors, retailers, seed dealers, seed advisors, other resellers, and their insurers, and affiliates, in their capacity as such.  Released Parties include, but are not limited to, the Persons listed on Exhibit 6.  The Special Masters shall also be included among the Released Parties.  The Excluded Exporters are not Released Parties.

**2.55** "Representative Plaintiffs" means collectively Mike DaVault, Bradley DaVault, and David DaVault d/b/a DaVault ArkMo Farms (Subclass 1), Steven A. Wentworth (Subclass 1), Charles B. Lex (Subclass 1), Five Star Farms (Subclass 1), Grafel entities (Beaver Creek Farms, Inc., Demmer Farms, Inc., Grafel Farms, LLC, and D. and S. Grain & Cattle Co.) (Subclass 1), David Polifka (Subclass 1), David Polifka Revocable Living Trust (Subclass 1), Bottoms Farms Partnership (Subclass 1), JPPL, Inc. (Subclass 1), NEBCO, Inc. (Subclass 1), TRIPLE BG Partnership (Subclass 1), David Schwaninger (Subclass 1), Kaffenbarger Farms, Inc. (Subclass 1), Bieber Farm (Subclass 1), Rolling Ridge Ranch, LLC (Subclass 1), Grant Annexstad (Subclass 1),

Roger Ward (Subclass 1), Leroy Edlund (Subclass 1), Charles Cobb (CE Cobb Farms) (Subclass 2), Robert & Todd Niemeyer (Custom Farm Services LLC) (Subclass 2), Marvin Miller (Subclass 2), Kruseman Fertilizer Company (Subclass 3), and Al-Corn Clean Fuel, LLC (Subclass 4).

**2.56**   "RMA Data" means data collected by various insurance entities related to crop insurance and submitted to the USDA or other government entity.

**2.57**   "Settlement Claim" means a claim made by a Class Member under this Agreement.

**2.58**   "Settlement Class Counsel" means, subject to Court approval, Daniel E. Gustafson, Christopher A. Seeger, and Patrick J. Stueve.

> **2.58.1**   "Viptera / Duracade Subclass Counsel" means, subject to Court approval, Lynn R. Johnson who is counsel for Subclass 2.

> **2.58.2**   "Grain Handling Facility Subclass Counsel" means, subject to Court approval, Kenneth A. Wexler who is counsel for Subclass 3.

> **2.58.3**   "Ethanol Production Facility Subclass Counsel" means, subject to Court approval, James E. Cecchi who is counsel for Subclass 4.

**2.59**   "Settlement Fund" means the Gross Settlement Proceeds deposited into the Escrow Account.

**2.60**   "Settlement Process" means the process set forth in this Agreement for the submission and evaluation of Claim Forms and the allocation of payments from the Settlement Fund to Class Members.

**2.61**   "Settlement Website" means the website under the Uniform Resource Locator (URL) www.CornSeedSettlement.com, which is established and maintained by Settlement Class Counsel through the Claims Administrator, as directed by the Preliminary Approval Order approved by the Court.

**2.62**    "Signature" means the actual signature by the person whose signature is required on the document.  Unless otherwise specified in this Agreement, a document requiring a Signature may be submitted by:  (i) an actual original "wet ink" signature on hard copy; (ii) a PDF or other electronic image of an actual signature; or (iii) an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§ 7001, et seq., the Uniform Electronic Transactions Act, or their successor acts.

**2.63**    "Special Masters" mean Ellen K. Reisman and Hon. Daniel Stack (ret.).

**2.64**    "Storage Capacity" means the number of Corn bushels that can be stored or transported in existing cars, trucks, bins, elevators, and similar structures owned or operated by a Grain Handling Facility.

**2.65**    "Syngenta" means Syngenta AG, Syngenta Corporation, Syngenta Crop Protection AG, Syngenta Crop Protection LLC., and Syngenta Seeds, LLC (f/k/a Syngenta Seeds, Inc.), collectively with all of their affiliates and predecessor and successor entities.

**2.66**    "United States" means the fifty (50) federated states, the District of Columbia, and all U.S. Territories.

**2.67**    "USDA" means the United States Department of Agriculture.

**3.**    **SETTLEMENT TERMS**

**3.1**    **Commitment to Support Agreement**

**3.1.1**    The Parties agree that it is in the Class Members' and their best interests to consummate this Agreement and to cooperate with each other and to take all actions reasonably necessary to obtain Court approval of this Agreement and entry of the orders of the Court and other courts that are required to implement its provisions.  The Parties also agree to support this Agreement

in accordance with and subject to the provisions of this Agreement.

**3.2     Preliminary Approval of Settlement**

3.2.1   Settlement Class Counsel shall file a Motion for Preliminary Approval and a motion for the conditional (*i.e.*, provisional) certification of the Settlement Class with the Court within fourteen (14) days after the Execution Date.

**3.3     Notice to Putative Class Members**

3.3.1   After the Court has entered the Preliminary Approval Order, notice to Class Members shall be disseminated in such form and manner as the Court shall direct.   Instructions to access the Settlement Website and electronically submit the applicable Claim Form(s) shall be included with the copy of the Class Notice disseminated to putative Class Members and posted on the Settlement Website.  A hard copy of the applicable Claim Form(s) shall be made available upon request by the Claims Administrator.

3.3.2   Settlement Class Counsel and the Notice Administrator shall be responsible for identifying names and addresses of Class Members.  Subclass Counsel and Plaintiffs' Negotiating Committee shall provide identifying names and addresses of Class Members they represent.

**3.4     Cost of Notice**

3.4.1   All costs in connection with implementing the Notice Plan shall be paid from the Settlement Fund; and, once paid shall not be refundable in the event that the Settlement does not become Final, provided, that Syngenta shall be entitled to a refund of any advancement of notice costs that are unused, if any.

**3.5     Limited Certification of Settlement Class Only**

    **3.5.1**  Syngenta conditionally agrees and consents to certification of the Settlement Class and related Subclasses for settlement purposes only, and within the context of this Agreement only.  The Parties' willingness to enter into this Agreement is not an admission as to the propriety or impropriety of any litigation class in this or any other litigation.  Except as to the particular Settlement Class and related Subclasses defined in this Agreement, and for the limited purposes of this Agreement, no Party or other litigant shall use any Party's consent to this Agreement as the basis for arguing that any litigation class in this matter may or may not be certified.

**3.6     Agreement Not Admissible**

    **3.6.1**  Except as set forth in Section 9.12, neither this Agreement nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement is intended to be or may be construed as or deemed to be evidence of an admission or concession by Syngenta of any (i) liability or wrongdoing or of the truth of any allegations in the Complaint against Syngenta, or (ii) infirmity of, or strength of any alleged defense against, the allegations in the Complaint; and neither this Agreement nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement shall be admissible in evidence for any such purpose in any proceeding.  The Parties' consent to this Settlement is contingent upon this Agreement becoming

Final.  If this Agreement, for any reason, does not become Final or is otherwise terminated, the Parties reserve their respective rights to reassert all of their claims, allegations, objections, and defenses to certification of any class for litigation purposes, and the Parties further agree that none of them shall offer this Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, as evidence in support of or opposition to a motion to certify any litigation class or for any other litigation purpose.

**3.7**   **Terms of Recovery/Consideration for Settlement Process**

**3.7.1**   Escrow Account and Settlement Fund

3.7.1.1 In full and final settlement of the Released Claims of Class Members, Syngenta agrees to fund the Gross Settlement Proceeds into the Escrow Account.  Upon the Final Effective Date of this Agreement, Syngenta shall have no right of reversion in the Gross Settlement Proceeds.  In the event, however, that this Agreement, for any reason, does not become Final, that there is no Final Effective Date, or this Agreement is otherwise terminated, Syngenta shall be entitled to a refund of the portion of the Gross Settlement Proceeds that it has deposited into the Escrow Account, minus any amounts that have then been incurred for the fees and expenses of the Claims Administrator and the Notice Administrator, as well as unreimbursed expenses of the Special Masters.

3.7.1.2 Within thirty (30) days after this Agreement has been fully executed,

Syngenta shall deposit Two Hundred Million U.S. Dollars ($200,000,000) of the Gross Settlement Proceeds into the Escrow Account, a portion of which shall be used to pay the fees and expenses of the Claims Administrator and the Notice Administrator, as well as the Class Notice as approved by the Court.

3.7.1.3 Before March 31, 2018, Syngenta shall deposit an additional Two Hundred Million U.S. Dollars ($200,000,000) of the Gross Settlement Proceeds into the Escrow Account.

3.7.1.4 Beginning with the quarter ending March 31, 2018 and until this Agreement is terminated or until Syngenta has fully deposited the Gross Settlement Proceeds into the Escrow Account, Syngenta shall produce, on request, copies of quarterly financial statements, in the form of interim consolidated financial statements, prepared in the ordinary course of business to Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee. Such financial statements shall not be disclosed to anyone other than Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee.

3.7.1.5 Within thirty (30) days after the entry of the Final Approval Order or April 1, 2019, whichever is later, Syngenta shall deposit the remainder of the Gross Settlement Proceeds into the Escrow Account.

3.7.1.6 Syngenta's deposits of the Gross Settlement Proceeds into the

Escrow Account shall constitute the Settlement Fund and the Settlement Fund shall be used for purposes of meeting the obligations under this Agreement.

3.7.1.7 Syngenta's payment of the Gross Settlement Proceeds shall relieve Syngenta of any liability with respect to the authentication of Settlement Claims, the allocation of the Gross Settlement Proceeds among the Class Members and the timing and method of Settlement Fund distributions.

3.7.1.8 No portion of the Gross Settlement Proceeds shall be distributed from the Escrow Account prior to the Final Effective Date with the exception of the fees and expenses of the Claims Administrator, the Notice Administrator, and the Special Masters.

**3.7.2**   Allocation Methodology

3.7.2.1 Payments of settlement compensation to Class Members and the relevant Subclasses shall be made from the Settlement Fund and in accordance with the following Allocation Methodology:

(a)      All costs of Settlement administration (including, but not limited to, costs related to Class Notice, the fees and expenses of the Claims Administrator, Notice Administrator, and the Special Masters), as approved by the Court, and the Fee and Expense Award and unreimbursed Special Master expenses, as approved in orders issued by the Court, shall be deducted from the Settlement Fund;

2/23/2018 FINAL

(b)     The remainder of the Settlement Fund shall be distributed to Class Members as follows:

(i)     To the members of Subclass 2 (Producers who purchased and planted Agrisure Viptera and/or Agrisure Duracade Corn Seed):  on a pro rata basis based on each Class Member's approved Compensable Recovery Quantity. The total amount of the Settlement Fund available to members of Subclass 2 shall be capped at Twenty Two Million Six Hundred Thousand U.S. Dollars ($22,600,000) or at a number below Twenty Two Million Six Hundred Thousand U.S. Dollars ($22,600,000) that ensures that the average per-bushel recovery of Subclass 2 shall not exceed the average per-bushel recovery of the members of Subclass 1.

(ii)     To the members of Subclass 3 (Grain Handling Facilities): on a pro rata basis based on each Class Member's approved Compensable Recovery Quantity.   The total amount of the Settlement Fund available to members of Subclass 3 shall be Twenty Nine Million Nine Hundred Thousand U.S. Dollars ($29,900,000).

(iii)     To the members of Subclass 4 (Ethanol Production Facilities): on a pro rata basis based on each Class Member's approved Compensable Recovery Quantity.   The total

25

amount of the Settlement Fund available to members of Subclass 4 shall be Nineteen Million Five Hundred Thousand U.S. Dollars ($19,500,000).

(iv)     To the members of Subclass 1 (Producers who did not purchase and plant Agrisure Viptera and/or Agrisure Duracade Corn Seed):  on a pro rata basis based on each Class Member's approved Compensable Recovery Quantity. The total amount of the Settlement Fund available to members of Subclass 1 shall be the remaining Settlement Funds after deduction of the amounts set forth in Section 3.7.2.1(a) and (b)(i)-(iii).

**3.7.3**   Recovery for Class Members

3.7.3.1 Class Members who are Producers must submit a Producer Claim Form, under penalty of perjury pursuant to 28 U.S.C. § 1746 that the information provided is true and correct to the best of the Class Members' knowledge, information, and belief.  The Producer Claim Form shall include a release bearing the Producer's Signature, which authorizes the U.S. Government to disclose Form FSA 578 data and RMA Data to the Claims Administrator for the 2013-2017 Marketing Years, and such government data shall be the exclusive manner in which a Producer may document an Interest in acreage, unless no Form FSA 578 data (or RMA Data if no Form FSA 578 data exists) exists.  If no Form FSA 578 data (or RMA Data if no

Form FSA 578 data exists) exists for a particular farm or farms, Class Members that are Producers must complete and submit an additional section of the Claim Form providing information that mirrors the information contained on Form FSA 578 and also declaring that no Form FSA 578 or RMA Data exists with respect to that acreage.  Class Members who are Producers and who fail to submit signed releases authorizing the government to disclose Form FSA 578 data (or RMA Data) to the Class Administrator or, for Producers for whom no Form FSA 578 data (or RMA Data) exist, or who otherwise fail to properly complete the Claim Form(s), shall have such Claim Form(s) rejected and returned for resubmission under the procedures established and agreed to by the Parties and the Claims Administrator and approved by the Court.  All disputes over the adequacy or timeliness of the Claim Forms, whether based on an initial submission or resubmission pursuant to Section 3.7.3.3, shall first be decided by the Claims Administrator.   Anyone aggrieved by the decision of the Claims Administrator may appeal that decision to the Special Masters under procedures to be established and agreed to by the Parties for such appeals, provided that the Special Masters' decision shall be final, non-appealable, and not subject to further review.

3.7.3.2 Grain Handling Facilities and Ethanol Production Facilities must submit Grain Handling Facility Claim Forms or Ethanol Production

Facility Claim Forms, respectively, under penalty of perjury pursuant to 28 U.S.C. § 1746 that the information provided is true and correct to the best of the Class Members' knowledge, information, and belief, and shall be required to produce true, accurate, and authentic business records documenting (1) Storage Capacity, if a Grain Handling Facility; (2) Production Capacity, if an Ethanol Production Facility; (3) the number of Corn bushels purchased per Marketing Year; (4) the number of Corn bushels sold per Marketing Year (if any); and (5) the number of short tons of DDGs sold per Marketing Year (if any).  The Claim Form must bear the Signature of the authorized business representative.   Class Members that are Non-Producers that fail to submit true, accurate, and authentic business records reflecting the foregoing items of information or that otherwise fail to properly complete the Claim Form(s) shall have such Claim Form(s) rejected and returned for resubmission under the procedures established and agreed to by the Parties and the Claims Administrator and approved by the Court. All disputes over the adequacy or timeliness of the Claim Forms shall first be decided by the Claims Administrator.   Anyone aggrieved by the decision of the Claims Administrator may appeal that decision to the Special Masters under procedures to be established and agreed to by the Parties for such appeals, provided

that the Special Masters' decision shall be final, non-appealable, and not subject to further review.

3.7.3.3 Rejected Claim Forms must be corrected and resubmitted within thirty (30) days after the Claims Administrator has issued notice of rejection describing the reasons why the Claim Form was rejected. If a Class Member that is required to resubmit a rejected Claim Form does not timely resubmit a corrected Claim Form, the Class Member's Settlement Claim shall be rejected. If, after a second submission, the Class Member has not provided a complete and supported Claim Form sufficient in the determination of the Claims Administrator to establish an entitlement to a recovery under this Agreement and the Allocation Methodology, as required under Section 3.7.2, and as applicable to that Class Member, the Class Member's Settlement Claim shall be rejected. Rejected Settlement Claims shall not be eligible to recover from the Settlement Fund but Class Members asserting such Settlement Claims shall otherwise be bound by this Agreement. Anyone aggrieved by the decision of the Claims Administrator may appeal that decision to the Special Masters under procedures to be established and agreed to by the Parties for such appeals, provided that the Special Masters' decision shall be final, non-appealable, and not subject to further review.

3.7.3.4 All statements made in the Claim Form are sworn statements submitted to the Claims Administrator under penalty of perjury that

the information provided is true and correct to the best of the Class Members' knowledge, information, and belief. All statements and documentary proof submitted in support of a Claim Form are subject to verification, investigation, review, and/or audit by the Claims Administrator. The Claim Form shall also specify that any documents submitted are true, accurate, and authentic copies of documents contemporaneously prepared on or about the date indicated on the document. If the Claims Administrator at any time has reason to believe that a Class Member has made an intentional misrepresentation, omission, or concealment of a material fact in the Claim Form, or has provided fraudulent proof in support of the Class Member's Settlement Claim, the Claims Administrator shall discontinue processing the Settlement Claim and report the alleged intentional misrepresentation, omission, or concealment of material fact and/or alleged fraudulent proof to the Special Masters, the Court, Settlement Class Counsel, and Syngenta. Settlement Class Counsel shall use their best efforts to obtain available USDA data in electronic format, including, without limitation, Form FSA 578 and/or RMA Data, to permit the Claims Administrator to facilitate, supplement, verify, and/or audit claims made by Class Members.

3.7.3.5 The Claims Administrator shall have the authority to modify and/or supplement the Claim Form and any other form required by this Agreement to provide for more efficient administration of the

Settlement, subject to prior written consent by Settlement Class Counsel and Syngenta, provided that no Class Member who previously completed an earlier iteration of the Claim Form shall be required to submit a new Claim Form.

### 3.7.4 Timing of Distributions to Class Members

3.7.4.1 No distributions to Class Members shall occur until after the Final Effective Date.

### 3.7.5 Costs of Settlement Administration

3.7.5.1 All costs of settlement administration shall be paid from the Settlement Fund.

## 3.8 Most Favored Nations

**3.8.1** Syngenta shall not enter into any settlement agreement (other than in the course of trial or following a verdict) relating to any Claims against Syngenta until one year after the Final Effective Date with: (a) an Opt-Out or other Person that has a potential Claim against Syngenta but is not a member of the Settlement Class; (b) on terms more favorable to such Person than the terms of this Agreement; and (c) without the prior written consent of Settlement Class Counsel, Subclass Counsel, and the Plaintiffs' Settlement Negotiation Committee, which consent shall be withheld only in good faith.  During this Most Favored Nations ("MFN") period, before executing any settlement relating to any Claims against Syngenta, Syngenta shall give no less than fourteen (14) days written notice to Settlement Class Counsel disclosing the terms of the proposed settlement.  This provision

shall not apply with respect to claims brought by Excluded Exporters.

**3.8.2**  The sole and exclusive remedy under this Agreement for any actual or alleged violation by Syngenta of the MFN in Section 3.8.1 is an injunction against Syngenta from making the allegedly more favorable payment. Under no circumstances shall monetary damages be sought against or imposed upon Syngenta for any actual or alleged violation of the MFN.

**3.8.3**  Any application asserting a violation of the MFN and seeking an injunction as described in Section 3.8.1 must be filed by Settlement Class Counsel in the Court.  If Settlement Class Counsel withhold their prior written consent as set forth in Section 3.8.1, Settlement Class Counsel may move the Court for an order enjoining Syngenta from proceeding with the settlement agreement relating to Claims that Settlement Class Counsel contend violates the MFN in Section 3.8.1.  Syngenta retains the right to respond to and contest any such application.

**3.8.4**  The Parties to this Agreement agree that Settlement Class Counsel shall be entitled to seek injunctive relief in the Court on behalf of the Settlement Class for any actual or alleged violation of the MFN without the necessity of proving actual loss or posting a bond.  Syngenta further agrees that the Settlement Class would be irreparably harmed by reason of a violation of the MFN contained in this Agreement and that any remedy at law for a breach of the MFN would be inadequate.

**3.9**  **Settlement Statistics, Preliminary Report, Final Report, and Potential Audit Process.**

3.9.1   Throughout the Settlement Process, the Claims Administrator, and the Notice Administrator, if necessary, shall compile and make available to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, Syngenta, and the Special Masters, at their request, reports containing summary statistics detailing the implementation of the Settlement Process.  Such reports shall include information regarding the status of the Settlement Process including, without limitation, the Claims Administrator's fees and expenses, the number of proper and timely Opt-Outs, the number and type of Claim Forms received, the number and type of Claim Forms fully processed, the number and type of Claims Forms in process, the number and type of Claim Forms rejected and the reason for same, the number and type of Claim Forms determined by the Claims Administrator to be deficient, and if deficient, the number to have been timely cured, and the number of payments issued pursuant to the Settlement Process.  Settlement Class Counsel or Syngenta may request an independent person, to be appointed by the Court and compensated from the Settlement Fund, to audit the work of the Claims Administrator.  This audit shall be limited to verifying the billing and/or the accuracy of the work performed by the Claims Administrator.

3.9.2   The Claims Administrator shall issue a Claims Administrator's Preliminary Report and a Claims Administrator's Final Report.   The Claims Administrator shall issue the Claims Administrator's Preliminary Report as soon as possible but no later than sixty (60) days after the Claims Deadline;

however, if the volume and timing of submissions close to the Claims Deadline warrants an extension of time to permit its review of submitted and resubmitted Claim Forms pursuant to Section 3.7.3.3, the Claims Administrator may request an extension, which must be approved by Settlement Class Counsel and Syngenta.  Based on a clearly erroneous factual determination standard, any Party may appeal within thirty (30) days after the Claims Administrator's issuance of the Preliminary Report; and within thirty (30) days after such appeal, the Special Masters shall make a final and non-appealable determination of any issues presented on appeal and report the determination to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, Syngenta, the Court, and the Claims Administrator, which reports shall be binding on the Representative Plaintiffs, Class Members, Syngenta, and the Claims Administrator.  Then, after all appeals to the Special Masters, if any, are complete, the Claims Administrator shall issue within thirty (30) days the Claims Administrator's Final Report, which shall be submitted to the Court for approval.

**3.10    No Duplicative Recovery**

**3.10.1**   Under no circumstances shall a Class Member be entitled under this Agreement to receive duplicative recovery for the same alleged Interest, injury, damages, or for any other compensation for which the Class Member or a different Class Member within the same Subclass, or an Opt-Out, has already been compensated in any action, proceeding, compromise or settlement.  Nothing herein, however, shall prevent a Class Member who

has multiple, distinct Interests, including Producer and Non-Producer Interests, from receiving non-duplicative compensation for each such Interest, pursuant to the terms of the Allocation Methodology.

**3.11   Stay and Resumption of Proceedings**

    **3.11.1** Counsel for the Parties shall (1) file a joint request, contemporaneous with the filing of the Motion for Preliminary Approval as set forth in Section 3.2.1, for a stay of all proceedings in the MDL Actions as related to the Released Parties (including requesting that any applicable courts defer all trial dates set in any of the Class Members' cases and deferring or holding in abeyance any currently pending motions and discovery), and shall (2) seek an order from the Court prohibiting the prosecution of any pending or subsequently filed litigation by Class Members, and (3) obtain a stay of any other proceedings asserting any of the Released Claims, including, without limitation, the actions listed on the attached Exhibit 1. Proceedings in the Court arising out of and relating to this Agreement, and any other proceeding necessary to effectuate this Agreement in any other action shall be excepted from the stay. In the event the Court does not give Final Approval to this Agreement, the Final Effective Date does not occur, or this Agreement is otherwise terminated, the Parties agree that all stayed proceedings shall resume in a reasonable manner.

**3.12   Entry of Final Judgment**

    **3.12.1** If the Court gives Final Approval to this Agreement following the Fairness Hearing, Settlement Class Counsel and Syngenta shall jointly request that

the Court enter a Final Approval Order, including the Court's express determination under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that orders of dismissal with respect to all Claims by Class Members be deemed as final judgments.

**3.13    Public Statements and Websites**

**3.13.1**    Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, and Syngenta and its counsel agree not to make any false or misleading statements in any form regarding the Settlement.  Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Counsel also agree to seek prior approval from Syngenta regarding any press releases, notices, or public statements about Syngenta or Agrisure Viptera, and/or Agrisure Duracade products, aside from those that describe the Settlement. Approval of such press releases, notices or any other public statements shall not be unreasonably withheld.  Nothing in this provision shall prevent Settlement Class Counsel, Subclass Counsel, or Plaintiffs' Negotiating Committee from describing their role in this litigation or from communicating privately with Class Members other than those known by Class Counsel to be previously represented by an attorney in the course of giving legal advice regarding the terms of this Agreement or otherwise in the course of their representation of the Settlement Class.  Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee shall provide counsel for Syngenta (as identified in Sections 4.4.1 and 9.11) at least four days' notice of any public filing or statement regarding Syngenta,

Agrisure Viptera, and/or Agrisure Duracade products with the exception of those that describe this Agreement and those that describe their role in this litigation or communicate privately with Class Members in the course of giving legal advice regarding the terms of this Agreement or otherwise in the course of their representation of the Settlement Class.

**3.13.2** Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee agree that as part of the Motion for Preliminary Approval, they shall seek an order directing that all websites that seek to attract, advise, inform or otherwise provide information or solicitation of any Class Member shall be taken down or modified to conform exactly to the information contained in the Court-approved Notice Plan and shall link to the Court-approved website at www.CornSeedSettlement.com.  The Parties agree also to seek similar orders, if necessary, in the Related Actions.  No false or misleading statements in any form regarding the Settlement shall be permitted.

### 3.14  CAFA Notices

**3.14.1** Within ten (10) days after submission of this Agreement to the Court, Syngenta, with the aid of the Claims Administrator, shall serve notices of the Settlement on state and federal regulatory authorities as required by Section 3 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notices").  Syngenta shall simultaneously serve copies of the CAFA Notices on Settlement Class Counsel, Subclass Counsel, and the Plaintiffs' Negotiating Committee.  In the event that a state or federal

official raises concerns about the Settlement, the Parties and their counsel agree to work together in good faith to resolve those concerns.

**3.15    Motion for Final Approval of the Settlement**

    **3.15.1**  Settlement Class Counsel shall file a motion with the Court seeking an order granting final approval of this Agreement pursuant to Fed. R. Civ. P. 23 (the "Motion for Final Approval"), together with a declaration from the Notice Administrator (with respect to the provision of the Class Notice) and from the Claims Administrator (regarding the Settlement Process), by the Motion for Final Approval Deadline as set forth in Section 4.6.1.  Settlement Class Counsel and other counsel representing Class Members shall file the Fee and Expense Applications at least thirty (30) days before the deadline to object to the Settlement or as otherwise ordered by the Court.

**4.    SETTLEMENT ADMINISTRATION**

**4.1    Claims Administrator**

    **4.1.1**  The Claims Administrator may retain claim officers, experts, and/or advisors as are reasonably necessary to carry out the duties of the Claims Administrator.  The administration of the Settlement Fund, the Settlement Process and Allocation Methodology procedures shall be subject to the Court's supervision and remain at all times under the exclusive and continuing jurisdiction of the Court.  The Claims Administrator shall issue reports as requested by Settlement Class Counsel and Syngenta regarding its activities, fees and expenses, and other procedures.  Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, or Syngenta

may raise by written objection filed with the Court any challenge to the procedures instituted by, or the fees and expenses of, the Claims Administrator with respect to the administration of the Settlement Fund. The Claims Administrator shall be responsible for disseminating information to Class Members concerning settlement procedures, among other ways, by establishing a website and a toll-free telephone number. Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Counsel, and Syngenta, and their respective agents and consultants may also disseminate information about the Settlement and the Settlement Process that is fully consistent with the Court's approved Notice Plan and Section 3.13 above and not in any way false or misleading.

**4.2    Notice**

**4.2.1**   The Notice Plan shall satisfy Rule 23 of the Federal Rules of Civil Procedure and be subject to the Court's approval.

4.2.1.1 As described in Section 3.7.1.2, Syngenta shall advance into the Escrow Account amounts sufficient to pay the costs to implement the Notice Plan.   Thereafter, Settlement Class Counsel in consultation with Syngenta and with the aid of the Notice Administrator, in accordance with Fed. R. Civ. P. 23(e), the Due Process clause of the United States Constitution, and the Preliminary Approval Order, shall provide all Class Members that can be identified by reasonable means with the best notice practicable under the circumstances.   Such notice shall include, without

limitation, direct mail notice, publication on the Settlement Website, and additional publication and other notice as set forth in the Notice Plan.

4.2.1.2 As directed by the Preliminary Approval Order, Settlement Class Counsel, through the Claims Administrator, shall establish and maintain the Settlement Website, on which at least the relevant pleadings, settlement documents, any applicable deadlines, and the Long-Form Notice shall be posted in order to provide information to the Settlement Class of the proposed Settlement. Settlement Class Counsel shall notify Syngenta's counsel of the date the Long-Form Notice shall be issued to the Settlement Class at least five (5) days prior to the date of issuance.

4.2.1.3 Settlement Class Counsel, through the Claims Administrator, also shall cause the Publication Notice to be published to the Class Members as contained in the Notice Plan and as directed by the Preliminary Approval Order.

**4.2.2**   All notice contemplated under this Agreement and the Notice Plan shall be issued and completed by the time set forth in Section 4.6, unless otherwise ordered by the Court.

**4.3**   **Opting Out of the Settlement Class**

**4.3.1**   Each Class Member may, at its option, elect to opt out of the Settlement. Any Class Member that wishes to opt out of the Settlement must do so, in writing, by mailing a request for exclusion to the Claims Administrator

signed by the Class Member (the "Opt-Out Request"). Any such request must be sent to the Claims Administrator and postmarked by the Opt-Out Deadline.

**4.3.2**   The request to opt out must:

- bear the Handwritten Signature of the Class Member seeking to opt out, or in the case of any Class Member that is a minor, incapacitated, incompetent or deceased person, or not a natural person, by any natural person who can legally bind the Class Member (except that an attorney engaged to represent the Class Member in litigation against Syngenta cannot sign for any Class Member);

- set out the Class Member's full legal name (or entity name, if applicable), valid mailing address, nine-digit social security or employer identification number (if an entity), functioning telephone number, and the address of the farm(s), whose Corn priced for sale after September 15, 2013 was allegedly impacted by Agrisure Viptera and/or Agrisure Duracade Corn Seed;

- state that the Class Member has reviewed and understood the Class Notice and chooses to be excluded from the Settlement Class and understands that, by opting out, the Class Member shall not share in any recovery obtained by judgment on behalf of the Settlement Class;

- provide the name of and contact information for the Class Member's attorney, if represented;

- indicate whether, during the Class Period, the Class Member (a) owned any Interest in Corn in the United States priced for sale after September 15, 2013, (b) was an Ethanol Production Facility, or (c) was a Grain Handling Facility;

- if during the Class Period the Class Member owned an Interest in Corn in the United States priced for sale after September 15, 2013, provide information establishing that Interest either by (a) consenting to the release of government records including Form FSA 578 and RMA Data for each year from 2013-2017 related to any Corn crop in which the Class Member has an Interest or (b) certifying by penalty of perjury, based on the Class Members' knowledge, information, and belief, the number of planted Corn acres for each calendar year from 2013-2017 and the Class

Member's share of Corn planted on those acres in which the Class Member has an Interest; and

- if a Non-Producer, identify and produce business records demonstrating (a) the number of Corn bushels purchased per Marketing Year; (b) the number of Corn bushels priced for sale after September 15, 2013 and for each Marketing Year (if any); (c) the number of short tons of DDGs priced for sale after September 15, 2013 and for each Marketing Year (if any); (d) if a Grain Handling Facility, its total Storage Capacity; or (e) if an Ethanol Production Facility, its total Production Capacity.

**4.3.3**  No person or entity or other Class Member may opt-out the Interest of, or on behalf of, any other Class Member.

**4.3.4**  All requests to opt out that fail to satisfy the requirements of this Section, as well as any additional requirements that the Court may impose, shall be void.  No class-wide, mass opt-outs, or opt-outs signed by attorneys are permitted under this Agreement.

**4.3.5**  Any Class Member that chooses to opt out of the Settlement may rescind or revoke such decision by submitting a timely revocation in writing to the Claims Administrator.  Any such revocation must be postmarked by the Opt-Out Deadline and signed by the Class Member, unless Settlement Class Counsel and Syngenta mutually agree to accept the revocation and to permit the Class Member to submit a Settlement Claim after the Opt-Out Deadline.

**4.3.6**  Any Class Member that does not properly and timely submit a request to opt out as required in this Agreement shall be deemed to have waived all rights to opt out and shall be deemed a member of the Settlement Class for all purposes under this Agreement.

**4.4**      **Objecting to the Settlement**

**4.4.1**   Any Class Member that does not timely and properly opt out of the Settlement may object to the fairness, reasonableness, or adequacy of the proposed Settlement under Federal Rule of Civil Procedure 23. Each Class Member that wishes to object to any term of this Agreement must do so, in writing, by filing a written objection with the Clerk of the Court and mailing it to Settlement Class Counsel and counsel for Syngenta at the addresses set forth below:

| *Settlement Class Counsel:* | *Counsel for Syngenta:* |
|---|---|
| Daniel E. Gustafson<br>Gustafson Gluek, PLLC<br>120 S. 6th Street, Suite 2600<br>Minneapolis, MN  55402 | Leslie M. Smith, P.C.<br>Kirkland & Ellis LLP<br>300 North LaSalle Street<br>Chicago, IL 60654 |
| Christopher A. Seeger<br>Seeger Weiss LLP<br>77 Water Street<br>New York, NY  10005 | |
| Patrick J. Stueve<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO  64112 | |

**4.4.2**   Settlement Class Counsel and/or counsel for Syngenta shall provide notice of any objections to Subclass Counsel and Plaintiffs' Negotiating Committee.

**4.4.3**   Any such objection must be postmarked by the deadline for filing objections and under the procedures established by the Court. Any such objection must (a) attach copies of any materials that shall be submitted to the Court or presented at the Fairness Hearing; (b) be personally signed by the Class

Member and, if represented, by his/her/its counsel; (c) include information or documents sufficient to show that the objector is a Class Member; and (d) clearly state in detail (i) the legal and factual ground(s) for the objection, (ii) the Class Member's name, mailing address, email address, and telephone number, (iii) if represented by counsel, such counsel's name, email address, mailing address and telephone number, and (iv) any request to present argument to the Court at the Fairness Hearing.

**4.4.4** Any objection that fails to satisfy the requirements of this Section, or that is not properly and timely submitted, shall be deemed void and waived unless otherwise ordered by the Court. The Court shall make the final determination if any objection complies with the requirements of this Section. Any Party may respond to any objection by the date as ordered by the Court.

## 4.5 Requests to Appear at Final Approval Hearing

**4.5.1** Any Class Member that wishes to appear and be heard in person or by counsel at the Fairness Hearing must make such request by notifying the Court and the Parties' respective counsel at the addresses set forth in Section 4.4.1 of this Agreement, subject to the discretion of the Court. Any such request must be filed with the Clerk of the Court and postmarked no later than thirty (30) days prior to the Fairness Hearing, or as otherwise ordered by the Court, and must state the name, address, and telephone number of the Class Member, as well as the name, address, and telephone number of the person that shall appear on his or her behalf. Any request for appearance

that fails to satisfy the requirements of this Section, or that has otherwise not been properly or timely submitted, shall be deemed ineffective and a waiver of such Class Member's rights to appear and to comment on the Settlement at the Fairness Hearing.  Only the Parties, Class Members, or their counsel may request to appear and be heard at the Fairness Hearing. Persons or entities that opt out may not request to appear and be heard at the Fairness Hearing.

**4.6      Deadlines**

**4.6.1**   Unless otherwise ordered by the Court, the following deadlines shall apply. In the case of a discrepancy between the table below and the text of this Agreement, the dates in the following table control:

| ACTION | TIMING |
|---|---|
| Filing of Motion of Preliminary Approval | 14 days after Execution Date |
| CAFA Notice Deadline | 10 days after the Motion for Preliminary Approval Is Filed |
| First Mailing of Class Notice | 10 days after issuance of the Preliminary Approval Order |
| First Installment of Gross Settlement Proceeds Paid into Escrow | 30 days after Execution Date |
| Opt-Out Deadline | 90 days after First Mailing of Class Notice |
| Opt-Out List | 30 days after the Opt-Out Deadline |

2/23/2018 FINAL

| ACTION | TIMING |
|---|---|
| Notice Completion Date | 150 days after First Mailing of Class Notice |
| Claims Deadline | 150 days after First Mailing of Class Notice |
| Syngenta Walk Away Deadline | 30 days after receipt of the Opt-Out List, unless otherwise extended |
| Motion for Final Approval Deadline | 14 days after Syngenta Walk Away Deadline |
| Fee and Expense Applications Deadline | 30 days before Objection Filing Deadline |
| Objection Filing Deadline | As determined by the Court |
| Objection Response Deadline | 30 days after Objection Filing Deadline |
| Second Installment of Gross Settlement Proceeds Paid into Escrow Account | On or before March 31, 2018 |
| Final Installment of Gross Settlement Proceeds Paid into Escrow Account | The later of April 1, 2019 or within 30 days after entry of the Final Approval Order |

**4.7     Retention of Records**

    **4.7.1**   The Claims Administrator shall retain all Claim Forms, and all records of allocation and payments under the Allocation Methodology, for a period of five (5) years from the Final Effective Date of the Agreement or as ordered by the Court.

**5.      EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION**

    **5.1     Limitation on Released Party Liability**

        **5.1.1**   No Released Party shall be subject to liability or expense of any kind to any Class Member or their respective counsel related to the Released Claims except as provided in this Agreement.

**5.2     Dismissal of Claims**

    **5.2.1**   The Parties agree that upon the Final Effective Date of this Agreement, all Released Claims shall be dismissed with prejudice in accordance with the Final Approval Order entered by the Court.

**6.     <u>RELEASES AND RESERVATIONS</u>**

**6.1     Released Claims**

    **6.1.1**   In consideration of the benefits described and the provisions contained in this Agreement, the Class Releasors promise, covenant, and agree that, upon the Final Effective Date and by operation of the Final Approval Order, the Class Releasors shall release and forever discharge the Released Parties from any liability for all claims of any nature whatsoever in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (including state consumer fraud, warranty, unjust enrichment laws, codal law, adjudication, quasi-adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other noncompensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses and/or attorneys' fees, interest, or liabilities) that have been or could have been brought in connection with the development, introduction,

production, distribution, sale, marketing, and efforts to gain regulatory approval of Agrisure Viptera and/or Agrisure Duracade Corn Seed, and including, but not limited to, any Claim based on the alleged decrease in price of Corn, soy, milo, DDGs, or any other commodity, grain re-direction costs, or any other form of alleged harm or damage, subject only to the express exceptions listed in the Reservation of Claims and Rights in Section 6.2 below.

6.1.2   All Class Releasors covenant and agree that they shall not hereafter seek to sue or otherwise establish liability against any Released Parties based, in whole or in part, on any of the Released Claims.  Each Class Releasor expressly waives and fully, finally, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims without regard to the subsequent discovery or existence of different or additional facts.  The Parties shall cooperate and assist one another in defending against and obtaining the dismissal of any claims brought by Persons seeking to assert claims released under this Agreement.

6.1.3   IN ADDITION, EACH CLASS RELEASOR HEREBY EXPRESSLY WAIVES AND RELEASES, UPON THE FINAL EFFECTIVE DATE, ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY ANY STATUTE, LAW OR PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS:

> SECTION 1542. <u>GENERAL RELEASE; EXTENT.</u> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

6.1.4   Each Class Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Section 6.1, but each Class Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Final Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of this Section 6.1 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasor also hereby expressly waives and fully, finally, and forever settles and releases any and all Released Claims it may have against the Released Parties under § 17200, et seq., of the California Business and Professions Code.

6.1.5   From and after the Final Effective Date, for the consideration provided for in this Agreement and by operation of the Final Approval Order, the Class Releasors covenant, promise, and agree that they shall not, at any time, institute, cause to be instituted, assist in instituting, or permit to be instituted

on his, her, or its behalf, or on behalf of any other individual or entity, any proceeding (1) alleging or asserting any of his or her respective Released Claims against the Released Parties in any federal court, any state court, or arbitration, regulatory agency, or any other tribunal or forum, or (2) challenging the validity of the release of claims by Class Releasors as set forth in this Section 6.1.

**6.1.6**   This Release is not intended to prevent Syngenta from exercising its rights of contribution, subrogation, or indemnity under any law.

**6.1.7**   This Release shall apply mutually as between the Released Parties and Class Releasors to the extent that any claims or defenses Syngenta might have brought against the Class Releasors for contributory or comparative fault, assumption of the risk, or similar claims for sharing or allocating fault under federal or state law shall be extinguished under this Agreement, except as set forth in Section 6.2.2.

**6.2**      **Reservation of Claims and Rights**

**6.2.1**   Released Claims shall not include (a) any claim against any person or entity that is not a Released Party, or (b) any claim to enforce the terms of this Agreement or remedy a violation or breach of this Agreement, provided that any such action shall be brought in the Court.  Released Claims also shall not include any claim against the Released Parties for bodily injury allegedly suffered in connection with Agrisure Viptera and/or Agrisure Duracade Corn Seed.

**6.2.2**   Notwithstanding Section 6.2.1, the Parties intend that this Agreement

results in the termination or bar of all claims for contribution and/or non-contractual indemnity against Syngenta and the Released Parties with respect to Claims subject to this Agreement. If Syngenta or any Released Party incurs any judgments due to a claim for contribution or non-contractual indemnification arising out of a claim brought by a Class Member against a non-Released Party, including, without limitation, any Excluded Exporter, such Class Member shall indemnify Syngenta and the Released Parties for such amount.

6.2.3   The Parties agree that this Agreement, whether or not the Final Effective Date occurs, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any Party (other than those compromised in this Agreement); shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, any liability or wrongdoing by any of the Released Parties, or of the truth of any of the claims or allegations contained in any complaint or pleading, whether in the MDL Actions, any other actions, or otherwise. The Parties expressly reserve all of their rights if this Agreement fails to become Final and effective substantially in accordance with its terms.

6.2.4   If the Court does not certify the Settlement Classes or this Agreement is not approved by the Court substantially in accordance with its terms, and does not become subject to a Final Approval Order following such approval, or the Final Approval Order does not become Final, then no class shall be deemed certified by or as a result of this Agreement, and the MDL Actions

and the Related Actions for all purposes shall revert to their status as of the date before the execution of this Agreement, and the Parties agree that all stayed proceedings shall resume in a reasonable manner.  In such event, Syngenta shall not be deemed to have consented to certification of the Settlement Classes, and shall retain all rights to oppose class certification, including, without limitation, to certification of the identical class provided for in this Agreement.  Syngenta shall also be entitled to a refund of the portion of the Gross Settlement Proceeds that it has deposited into the Escrow Account, minus any amounts that have then been incurred for the fees and expenses of the Claims Administrator and the Notice Administrator.

## 7.   **ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES**

### 7.1   **Administrative Expenses**

**7.1.1**   Other than Syngenta's own fees, costs and expenses, the Released Parties shall not be liable for any litigation fees, costs or expenses of the MDL Actions except as expressly set forth in this Agreement and as approved by the Court.

**7.1.2**   Syngenta and the Released Parties shall have no liability with respect to any disputes among plaintiffs' counsel relating to the award, allocation, or entitlement to any fees, costs, or expenses, including without limitation, any Common Benefit Fund, Joint Prosecution Agreement, or other agreements relating to pursuit of the MDL Actions or any other litigation, except that Syngenta shall comply with its obligations under the Court's existing

orders.

**7.2**     **Attorneys' Fees, Expenses, and Plaintiff Service Awards**

**7.2.1**   As part of the Settlement, Settlement Class Counsel and other counsel representing Class Members who performed work for the benefit of Class Members shall make Fee and Expense Applications to the Honorable John W. Lungstrum of the United States District Court for the District of Kansas, or the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois, or the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota for a Fee and Expense Award.  Syngenta shall have the right to object to, oppose, or support the Fee and Expense Applications submitted by Settlement Class Counsel and/or other counsel representing Class Members who performed work for the benefit of Class Members.

**7.2.2**   Any Fee and Expense Award in conjunction with this Settlement shall be issued by the Court, in consultation with and approved by the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois and the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota (or if they are unavailable, another judge from their respective courts), in a written order by the Court and shall be paid from the Settlement Fund.  The Court's Fee and Expense Award, however, as set forth above, shall be separate from its determination of whether to approve the Settlement.  In the event the Court approves the Settlement, but denies, in whole or in part, the Fee and

Expense Applications by Settlement Class Counsel and other counsel representing Class Members, the Settlement shall nevertheless be binding on the Parties.  If the Court declines to approve the Settlement, no Fee and Expense Award shall be paid.  Syngenta shall have no involvement in, nor any liability with respect to, the allocation and distribution of the Fee and Expense Award.

**7.2.3**   As set forth in Section 9.18.2, disputes arising from the Fee and Expense Award shall be subject to the jurisdiction of the Court, except that:

7.2.3.1 Matters arising from client fee contracts and referring counsel referral agreements involving the law firm of Clark, Love, & Hutson shall be subject to the jurisdiction of the Honorable David J. Herndon of the United States District Court for the Southern District of Illinois (or if he is unavailable, another judge from his respective court).  For example, Judge Herndon shall have exclusive and continuing jurisdiction to:

- Approve fee disbursements with respect to all Class Members represented by Clark, Love, & Hutson; and

- Decide disputes between counsel for various Class Members arising out of the representation of Class Members represented by Clark, Love, & Hutson.

Nothing in this Section is intended to interfere with the claims administration process or the allocation process as it relates to the national class settlement to be filed before and overseen by the

Honorable John W. Lungstrum and the United States District Court for the District of Kansas.  However, it is specifically agreed herein that any dispute as it relates to this Section 7.2.3.1 shall be under the exclusive and continuing jurisdiction of the Honorable David Herndon and the United States District Court for the Southern District of Illinois.

7.2.3.2 Matters arising from client fee contracts and referring counsel referral agreements involving Class Members with claims pending at any time in *In re Syngenta Class Action Litigation,* Court File No. 27-CV-15-12625, in the Fourth Judicial District Court, County of Hennepin, State of Minnesota (the "Minnesota Plaintiffs"), shall be subject to the jurisdiction of the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota (or if she is unavailable, another judge from her respective court).  For example, Judge Miller shall have exclusive and continuing jurisdiction to:

- Approve fee disbursements with respect to all Minnesota Plaintiffs; and

- Decide disputes between counsel for various Class Members arising out of the representation of any Minnesota Plaintiffs.

Nothing in this Section is intended to interfere with the claims administration process or the allocation process as it relates to the national class settlement to be filed before and overseen by the

Honorable John W. Lungstrum and the United States District Court for the District of Kansas.  However, it is specifically agreed herein that any dispute as it relates to this Section 7.2.3.2 shall be under the exclusive and continuing jurisdiction of the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota.

**7.2.4**   As part of the Fee and Expense Applications, Settlement Class Counsel may petition the Court for Plaintiff Service Awards for the Representative Plaintiffs and bellwether plaintiffs.  Syngenta shall have the right to object to, support, or oppose proposed Representative Plaintiffs' Service Awards. Any Representative Plaintiff Service Award shall be approved by the Court in a written order and shall be paid from the Settlement Fund.  Syngenta shall have no obligation relating to the above-referenced Representative Plaintiffs' Service Awards.

## 8.   **WALK AWAY RIGHTS AND TERMINATION OF THIS AGREEMENT**

### 8.1   **Termination**

**8.1.1**   This Agreement shall be terminated, without notice, if the Court declines to enter the Preliminary Approval Order, declines to grant Final Approval, or if such approval or other necessary orders do not become Final (as a result of reversal on appeal or otherwise).

### 8.2   **Walk Away Right**

**8.2.1**   Syngenta shall have the absolute and unconditional right, solely at its option, to terminate this Agreement (such option being referred to in this

Agreement as, the "Walk Away Right") in the event any of the triggers or thresholds described in Section 8.3.1 are exceeded.  If any of the below triggers or thresholds are exceeded, then during the period beginning upon Syngenta's receipt of the Opt-Out List and ending at midnight Central Time on the thirtieth (30th) day thereafter (such period being referred to as the "Walk Away Period" and the last day of such period being referred to in this Agreement as the "Walk Away Deadline"), Syngenta has the option to exercise its Walk Away Right.

**8.3**    **Walk Away Right Triggers and Thresholds**

    **8.3.1**    Syngenta can exercise its Walk Away Right if any of the triggers or thresholds contained in a separate agreement (to be filed under seal with the Court and to be confidential and attorney's eyes only and access limited to Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, and Syngenta) are exceeded.

  **8.4**    **Time to Exercise Walk Away Right**

    **8.4.1**    Syngenta may exercise its Walk Away Right during the Walk Away Period upon written notice to such effect delivered to the Court and Settlement Class Counsel.

    **8.4.2**    If Syngenta has a Walk Away Right, alternatively, Syngenta may, in its sole and absolute discretion, do any of the following at any time during the Walk Away Period upon written notice to such effect delivered to the Court and Settlement Class Counsel:

8.4.2.1  extend the date for the exercise of its Walk Away Right by a period of thirty (30) days; or

8.4.2.2  irrevocably waive its Walk Away Right.

**8.5      Effects of Termination**

**8.5.1**  In the event of notice of termination by Syngenta, this Agreement shall be of no further force or effect; the Parties shall jointly request the Court to vacate any order certifying the Settlement Class; and the Parties agree that all stayed proceedings shall resume in a reasonable manner.

**8.5.2**  Any term of this Agreement to the contrary notwithstanding, upon Syngenta exercising its Walk Away Right, this Agreement immediately shall terminate and (without limitation of the foregoing) Syngenta immediately shall cease to have any further financial obligations under this Agreement; provided however, that Section 3.6 shall survive such termination.

**9.      <u>MISCELLANEOUS PROVISIONS</u>**

**9.1     Recitals**

**9.1.1**  The recitals set forth prior to Section 1 of this Agreement are hereby expressly incorporated into this Agreement and made a part hereof.

**9.2     Best Efforts**

**9.2.1**  The Parties agree to use their best efforts, including all steps required by this Agreement and other efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

**9.3     Good Faith**

**9.3.1**  The Parties acknowledge that the litigation was prosecuted and defended in

good faith by Settlement Class Counsel, Subclass Counsel, Plaintiffs'
Negotiating Committee, MDL Co-Lead Counsel, Minnesota Co-Lead
Litigation Class Counsel, Minnesota Co-Lead Litigation Counsel for
Individual Plaintiffs, and counsel for Syngenta and that no Party has a basis
on which to assert a violation of Rule 11 of the Federal Rules of Civil
Procedure or any similar provision.

### 9.4     No Inducement

**9.4.1**   The Parties acknowledge, stipulate, and agree that no covenant, obligation,
condition, representation, warranty, inducement, negotiation, or
understanding concerning any part or all of the subject matter of this
Agreement has been made or relied on except as expressly set forth in this
Agreement.

### 9.5     Severability

**9.5.1**   The invalidity or unenforceability of any provision of this Agreement shall
in no way affect the validity or enforceability of any other provision.  If, in
any action before any court or other tribunal of competent jurisdiction, any
term, restriction, covenant, or promise is held to be unenforceable for any
reason, then such term, restriction, covenant, or promise shall be deemed
modified to the extent necessary to make it enforceable by such court or
other tribunal and, if it cannot be so modified, then this Agreement shall be
deemed amended to delete from this Agreement such provision or portion
adjudicated to be invalid or unenforceable, and this Agreement shall be
deemed to be in full force and effect as so modified.

**9.6**      **No Penalty or Fine**

     **9.6.1**    The Parties agree and acknowledge that no consideration, amount, or sum paid, credited, offered, or extended, or to be paid, credited, offered, or extended, by Syngenta in the performance of this Agreement constitutes a penalty, fine, or any other form of assessment for any alleged claim or offense.

**9.7**      **Receipt of Advice of Counsel**

     **9.7.1**    Representative Plaintiffs acknowledge, agree, and specifically warrant and represent that they have discussed with Settlement Class Counsel, Subclass Counsel, or the Plaintiffs' Negotiating Committee (or their designees) the portions of this Agreement relevant to them, including the release of Released Claims contained in Section 6, and received legal advice with respect to the advisability of entering into this Agreement, and the legal effect of this Agreement.

**9.8**      **Timing**

     **9.8.1**    Settlement Class Counsel and Syngenta may agree in writing to reasonable extensions of time to carry out the provisions of this Agreement.

**9.9**      **No Tax Advice**

     **9.9.1**    No opinion regarding the tax consequences of this Agreement to any individual Class Member is being given or shall be given by Syngenta or its counsel, nor is any representation or warranty in this regard made by virtue of this Agreement. Class Members must consult their own tax advisors regarding the tax consequences of the Settlement, including any payments

provided hereunder and any tax reporting obligations they may have with respect to this Agreement.  Each Class Member's tax obligations, and the determination thereof, are his, her, or its sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.  Released Parties shall have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this Agreement.  To the extent required by law, the Released Parties shall report payments made under this Agreement to the appropriate authorities.

**9.10      Notice of Breach**

**9.10.1** The waiver by any of the Parties of any provision of or breach of this Agreement, in whole or in part, by another Party shall not be deemed or construed as a waiver of any other provision of or breach of this Agreement, whether prior, subsequent, or contemporaneous, to this Agreement.  In the event that one Party to this Agreement is notified in writing by the other Party of any alleged breach of this Agreement, the allegedly-breaching Party shall have fourteen (14) days from the date of receipt of such notice to cure any such alleged breach and to notify the other Party, in writing, of the cure implemented to address the alleged breach.  If the Party asserting the breach is not satisfied with the cure, that Party shall have the right to petition the Court for relief within thirty days after receipt of notice of the cure.

**9.11      Notices**

**9.11.1** All notices, except for the notifications described in Section 9.11.2, required by this Agreement shall be sent by overnight delivery and electronic mail. Written notice to the Representative Plaintiffs or Settlement Class Counsel or Subclass Counsel must be given to Settlement Class Counsel as set forth in Section 4.4.1.  Written notice to Syngenta must be given to counsel for Syngenta as set forth in Section 4.4.1.  Notices received by Settlement Class Counsel and/or Syngenta shall be provided to Subclass Counsel and Plaintiffs' Negotiating Committee.

**9.11.2** All notifications required to be sent by the Claims Administrator under this Agreement shall be provided by a method selected by the Claims Administrator as the most efficient.  The use of electronic mail to an address supplied by counsel for the Class Member or the Class Member directly if not represented by counsel, shall be sufficient for all notifications required to be sent by the Claims Administrator.  Notice may also be served by any other reasonable method determined by the Claims Administrator.

**9.12    Enforcement**

**9.12.1** Only if this Settlement is finally approved by the Court and becomes Final, this Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted or attempted against the Released Parties in such capacity with respect to any of the Released Claims, and may be filed, offered, received into evidence, and otherwise used for such defense.  This Agreement may also be used in connection with the Parties' application for approval or enforcement of this

Agreement and all proceedings incident to this Agreement, including requests for attorneys' fees, costs, disbursements and compensation to the Settlement Classes, and any disputes arising from this Agreement.

**9.13    Authorization to Enter Agreement**

**9.13.1** The undersigned representatives of Syngenta represent that they are fully authorized to enter into and execute this Agreement on behalf of Syngenta. Settlement Class Counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee represent that they are fully authorized to conduct settlement negotiations with counsel for Syngenta on behalf of the Representative Plaintiffs and Class Members and to enter into and execute this Agreement on their behalf, subject to approval by the Court pursuant to Fed. R. Civ. P. 23.

**9.14    No Party Is the Drafter**

**9.14.1** None of the Parties to this Agreement shall be considered the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter.

**9.15    Choice of Law**

**9.15.1** This Agreement shall be governed by and interpreted in accordance with the substantive laws of the state of Delaware without regard to its choice of law or conflict of laws principles.  The Court shall maintain continuing jurisdiction over this matter in any proceeding to interpret, enforce, modify, or set aside the terms of this Agreement.

### 9.16    Computing Dates

**9.16.1** For all deadlines under this Agreement, to compute deadlines (a) exclude the day of the event that triggers the period; (b) count every calendar day, including intermediate Saturdays, Sundays and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

### 9.17    Time for Compliance

**9.17.1** If the date for performance of any act required by or under this Agreement is due to be performed on or by a Saturday, Sunday, or legal holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

### 9.18    Jurisdiction and Dispute Resolution

**9.18.1** Pursuant to the Final Approval Order, and except as provided for in Sections 7.2.3 and 9.18.2 of this Agreement, the Court shall retain continuing and exclusive jurisdiction over the Parties and their counsel, the Special Masters, the Notice Administrator, and the Claims Administrator, the Settlement Fund and the trustee of the Settlement Fund, and all Class Members with respect to the terms of this Agreement, the proper provision of all benefits thereunder, and the implementation and enforcement of its terms, conditions, and obligations.  The terms of this Agreement shall be incorporated into the Final Approval Order of the Court, which shall allow

that Final Approval Order to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to this Agreement.

**9.18.2** The Court also shall retain exclusive and continuing jurisdiction over the Fee and Expense Award; however, as set forth in Section 7.2.2 of this Agreement any Fee and Expense Award shall be issued by the Court, in consultation with and approved by the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois and the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota (or if they are unavailable, another judge from their respective courts). Moreover, as set forth in Section 7.2.3, the Court shall retain jurisdiction over any disputes arising out of or relating to the orders of the Court relating to the Fee and Expense Award, except that:

9.18.2.1    Matters arising from client fee contracts and referring counsel referral agreements involving the law firm of Clark, Love, & Hutson shall be subject to the jurisdiction of the Honorable David J. Herndon of the United States District Court for the Southern District of Illinois (or if he is unavailable, another judge from his respective court). For example, Judge Herndon shall have exclusive and continuing jurisdiction to:

- Approve fee disbursements with respect to all Class Members represented by Clark, Love, & Hutson; and

- Decide disputes between counsel for various Class Members arising out of the representation of Class Members represented by Clark, Love, & Hutson.

Nothing in this Section is intended to interfere with the claims administration process or the allocation process as it relates to the national class settlement to be filed before and overseen by the Honorable John W. Lungstrum and the United States District Court for the District of Kansas.  However, it is specifically agreed herein that any dispute as it relates to Section 9.18.2.1 shall be under the exclusive and continuing jurisdiction of the Honorable David Herndon and the United States District Court for the Southern District of Illinois.

9.18.2.2     Matters arising from client fee contracts and referring counsel referral agreements involving Class Members with claims pending at any time in *In re Syngenta Class Action Litigation,* Court File No. 27-CV-15-12625, in the Fourth Judicial District Court, County of Hennepin, State of Minnesota (the "Minnesota Plaintiffs"), shall be subject to the jurisdiction of the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota (or if she is unavailable, another judge from her respective court).  For example, Judge Miller shall have exclusive and continuing jurisdiction to:

- Approve fee disbursements with respect to all Minnesota Plaintiffs; and

- Decide disputes between counsel for various Class Members arising out of the representation of any Minnesota Plaintiffs.

Nothing in this Section is intended to interfere with the claims administration process or the allocation process as it relates to the national class settlement to be filed before and overseen by the Honorable John W. Lungstrum and the United States District Court for the District of Kansas.  However, it is specifically agreed herein that any dispute as it relates to Section 9.18.2.2 shall be under the exclusive and continuing jurisdiction of the Honorable Laurie J. Miller, of the Fourth Judicial District Court, County of Hennepin, State of Minnesota.

9.18.3   Subject to the exclusive jurisdiction of the Court as set forth in Section 9.18.1, and except as set forth in Sections 7.2.3 and 9.18.2, any dispute between any of the Parties arising out of or in any way relating to this Agreement, including, without limitation, the determination of whether this provision is applicable to a dispute, shall be determined by a binding, mandatory arbitration administered by the Special Masters (the "Arbitration").  Any party to the dispute may file an action in the Court to enforce this Arbitration provision.  If any party to such a dispute fails to submit to Arbitration following the filing, then the party to the dispute failing to submit to Arbitration shall bear the other party's reasonable costs,

including attorneys' fees, paid in connection with compelling Arbitration. The Arbitration and all related proceedings shall occur in the Special Masters' office or such other location as the Special Masters shall specify and at such times as the Special Masters shall specify.  The rules and procedures applicable to the Arbitration shall be determined by the Special Masters, provided, the Special Masters shall issue the Special Masters' Award (the "Award") within thirty (30) days after the Special Masters' receipt of a demand for Arbitration.  The Special Masters' determination with respect to the Arbitration shall be final and non-appealable.  Judgment enforcing the Special Masters' determination and Award may be entered in any court of competent jurisdiction.

**9.19    Administrative Procedures**

**9.19.1** The Claims Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein that provide further specific details about how the Settlement is to be administered, and/or other aspects of the Settlement, including, but not limited to, procedures regarding submission of documents or procedures regarding execution and signature of documents; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement, and are agreed to by the Parties and approved by the Court.

**9.20    Liability of Administrative Personnel**

**9.20.1** No Claims Administrator, Notice Administrator, Special Master, trustee of the Settlement Fund, or employee or agent thereof, shall be liable to any

Class Member or his counsel for his acts or omissions, or those of any agent or employee thereof, in connection with the Settlement except, with respect to each such Person, for such Person's own willful misconduct. Nothing in this Section confers on any Class Member or his counsel any privity of contract with, or other right to institute any action against, the Claims Administrator, Notice Administrator, Special Masters, or trustee of the Settlement Fund. In the event that the Claims Administrator, Notice Administrator, Special Masters or trustee of the Settlement Fund must comply with any discovery obligations related to its work under this Agreement, the requesting party bears the cost of complying with such discovery obligation and such work and costs are expressly excluded from this Agreement.

**9.21 Liens**

**9.21.1** If the Claims Administrator, Syngenta, Settlement Class Counsel, Subclass Counsel, Plaintiffs' Negotiating Committee, the Court, or the Special Masters receive notification of any lien asserted against any payments to be made to any Class Member, including but not limited to tax liens and child support liens, an amount sufficient for the satisfaction of such liens may be withheld from such Class Member's payments, until each such lien has been finally and completely satisfied. The Court shall have exclusive jurisdiction to decide the enforceability of any lien, except that any lien for attorneys' fees and expenses arising out of the matters falling within Sections 9.18.2.1 and 9.18.2.2 shall be subject to the exclusive jurisdiction

of the respective courts described therein.   Each Class Member will indemnify, repay and hold the Released Parties, the Claims Administrator, and the trustee of the Settlement Fund harmless from any and all such claims.

## 9.22    Amendment or Waiver

**9.22.1**  This Agreement shall not be modified in any respect except by a writing executed by all Parties to this Agreement.   The waiver of any rights conferred by this Agreement shall be effective only if made in writing by the waiving Party.   The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with this Agreement.

## 9.23    Execution in Counterparts

**9.23.1**  This Agreement may be executed in counterparts.   Facsimile or PDF signatures shall be valid signatures as of the date thereof.

## 9.24    Integrated Agreement

**9.24.1**  This Agreement, including its exhibits and the Parties' side agreement referenced in Section 8.3.1 above that is to be filed with the Court under seal, contains an entire, complete, and integrated statement of the terms agreed to by and between the Parties, and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties to this Agreement, by and through their fully authorized representatives, have executed this Agreement as of _____February 26th_____, 2018.

**FOR PLAINTIFFS**

By: _____
Name: Daniel E. Gustafson

By: _____
Name: Christopher A. Seeger

By: _____
Name: Patrick J. Stueve

By: _____
Name: Lynn R. Johnson

By: _____
Name: Kenneth A. Wexler

By: _____
Name: James E. Cecchi

By: _____
Name: Clayton A. Clark

By: _____
Name: Mikal C. Watts

By: _____
Name: William B. Chaney

By: _____
Name: Don M. Downing

By: _____
Name: Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson


By: _____
Name:  Christopher A. Seeger

By: _____
Name:  Patrick J. Stueve


By: _____
Name:  Lynn R. Johnson


By: _____
Name:  Kenneth A. Wexler


By: _____
Name:  James E. Cecchi


By: _____
Name:  Clayton A. Clark


By: _____
Name:  Mikal C. Watts


By: _____
Name:  William B. Chaney


By: _____
Name:  Don M. Downing


By: _____
Name:  Scott A. Powell

71

2/23/2018 FINAL

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson


By: _____
Name:  Christopher A. Seeger


By: _____
Name:  Patrick J. Stueve


By: _____
Name:  Lynn R. Johnson


By: _____
Name:  Kenneth A. Wexler


By: _____
Name:  James E. Cecchi


By: _____
Name:  Clayton A. Clark


By: _____
Name:  Mikal C. Watts


By: _____
Name:  William B. Chaney


By: _____
Name:  Don M. Downing


By: _____
Name:  Scott A. Powell

2/23/2018 FINAL

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson


By: _____
Name:  Christopher A. Seeger


By: _____
Name:  Patrick J. Stueve


By: _____
Name:  Lynn R. Johnson


By: _____
Name:  Kenneth A. Wexler


By: _____
Name:  James E. Cecchi


By: _____
Name:  Clayton A. Clark


By: _____
Name:  Mikal C. Watts


By: _____
Name:  William B. Chaney

By: _____
Name:  Don M. Downing


By: _____
Name:  Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson

By: _____
Name:  Christopher A. Seeger

By: _____
Name:  Patrick J. Stueve

By: _____
Name:  Lynn R. Johnson

By: _____
Name:  Kenneth A. Wexler

By: _____
Name:  James E. Cecchi

By: _____
Name:  Clayton A. Clark

By: _____
Name:  Mikal C. Watts

By: _____
Name:  William B. Chaney

By: _____
Name:  Don M. Downing

By: _____
Name:  Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson

By: _____
Name:  Christopher A. Seeger

By: _____
Name:  Patrick J. Stueve

By: _____
Name:  Lynn R. Johnson

By: _____
Name:  Kenneth A. Wexler

By: _____
Name:  James E. Cecchi

By: _____
Name:  Clayton A. Clark

By: _____
Name:  Mikal C. Watts

By: _____
Name:  William B. Chaney

By: _____
Name:  Don M. Downing

By: _____
Name:  Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson

By: _____
Name:  Christopher A. Seeger

By: _____
Name:  Patrick J. Stueve

By: _____
Name:  Lynn R. Johnson

By: _____
Name:  Kenneth A. Wexler

By: _____
Name:  James E. Cecchi

By: _____
Name:  Clayton A. Clark

By: _____
Name:  Mikal C. Watts

By: _____
Name:  William B. Chaney

By: _____
Name:  Don M. Downing

By: _____
Name:  Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson


By: _____
Name:  Christopher A. Seeger


By: _____
Name:  Patrick J. Stueve


By: _____
Name:  Lynn R. Johnson


By: _____
Name:  Kenneth A. Wexler


By: _____
Name:  James E. Cecchi


By: _____
Name:  Clayton A. Clark


By: _____
Name:  Mikal C. Watts


By: _____
Name:  William B. Chaney


By: _____
Name:  Don M. Downing


By: _____
Name:  Scott A. Powell

2/23/2018 FINAL

## FOR PLAINTIFFS

By: _____
Name:  Daniel E. Gustafson


By: _____
Name:  Christopher A. Seeger


By: _____
Name:  Patrick J. Stueve


By: _____
Name:  Lynn R. Johnson


By: _____
Name:  Kenneth A. Wexler


By: _____
Name:  James E. Cecchi


By: _____
Name:  Clayton A. Clark


By: _____
Name:  Mikal C. Watts


By: _____
Name:  William B. Chaney


By: _____
Name:  Don M. Downing


By: _____
Name:  Scott A. Powell

**FOR PLAINTIFFS**

By: _____
Name:  Daniel E. Gustafson

By: _____
Name:  Christopher A. Seeger

By: _____
Name:  Patrick J. Stueve

By: _____
Name:  Lynn R. Johnson

By: _____
Name:  Kenneth A. Wexler

By: _____
Name:  James E. Cecchi

By: _____
Name:  Clayton A. Clark

By: _____          2-23.18, 7:15 p.m.
Name:  Mikal C. Watts

By: _____
Name:  William B. Chaney

By: _____
Name:  Don M. Downing

By: _____
Name:  Scott A. Powell

2/23/2018 FINAL

**FOR SYNGENTA**

By: _____
Name:  Leslie M. Smith, P.C.


By: _____
Name:  Syngenta AG

René Röthlisberger
Head Group Taxation

Markus Widmer
Corporate Counsel


By: _____
Name:  Syngenta Crop Protection AG

René Röthlisberger
Head Group Taxation

Markus Widmer
Corporate Counsel


By: _____
Name:  Syngenta Corporation


By: _____
Name:  Syngenta Crop Protection, LLC


By: _____
Name:  Syngenta Seeds, LLC

2/23/2018 FINAL

**FOR SYNGENTA**

By: _____
Name:  Leslie M. Smith, P.C.


By: _____
Name:  Syngenta AG


By: _____
Name:  Syngenta Crop Protection AG

By: _____
Name:  Syngenta Corporation

By: _____
Name:  Syngenta Crop Protection, LLC

By: _____
Name:  Syngenta Seeds, LLC

72