# EXHIBIT B



**IN THE COURT OF COMMON PLEAS OF SENECA COUNTY, OHIO**

| | |
|---|---|
| Fostoria Ethanol, LLC d/b/a Poet Biorefining-Fostoria<br>Plaintiff, | Case No. 15 CV 0323 |
| vs. | Judge Steve C. Shuff |
| Syngenta Seeds, Inc., et al.<br>Defendants. | |



## JUDGMENT ENTRY

This matter comes before the court upon consideration of the Motion to Dismiss Plaintiff's Amended Complaint, filed by Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Crop Protection, LLC, and Syngenta Biotechnology, Inc. (collectively, "Syngenta") on February 29, 2016, Plaintiff's Response to the Motion to Dismiss, filed on March 25, 2016, Syngenta's Reply in Support of Motion to Dismiss, filed on April 28, 2016, Syngenta AG and Syngenta Crop Protection Ag's Joinder in the Motion to Dismiss, filed on October 20, 2016, Plaintiff's Response to the Joinder, filed on October 25, 2016, Syngenta's Notice of Supplemental Authority in Support of the Motion to Dismiss, filed on November 1, 2016, and Plaintiff's Response in Opposition to the Notice of Supplemental Authority, filed on November 10, 2016. The court has considered the filings, law, and arguments of the parties. For the reasons set forth below, the court finds the Motion to Dismiss Plaintiff's Amended Complaint, filed by Syngenta on February 29, 2016 well-taken and it is hereby **GRANTED**.

1

## I. Relevant Facts

Plaintiff owns and operates a biorefinery in Fostoria, Ohio which produces ethanol. Ethanol is a biofuel made from corn. A co-product of the production of ethanol is distiller's grains, and one type of distiller's grains is distiller's dried grains with solubles, otherwise known as "DDGS."

Distiller's grains and DDGS are commonly traded commodities, and Plaintiff sells its distiller's grains and DDGS domestically through a broker.

China is a major export market for United States corn and DDGS, however China requires new genetically modified seeds to be planted in China and generate crops before those seeds are eligible to be imported into China. Plaintiff has never exported United States corn, distiller's grains, or DDGS to China.

Syngenta collectively develops and produces agricultural seeds, including "Viptera" and "Duracade" varieties of corn, which are genetically modified. Viptera contains a genetically modified trait known as "MIR 162" and Duracade contains a genetically modified trait known as "Event 5307."

In 2010, the United States Department of Agriculture and the United States Environmental Protection Agency granted registration approval for Syngenta's Viptera corn, and Syngenta began marketing, distributing and selling Viptera corn.

At the time Syngenta began distributing Viptera corn in the United States, Viptera had not yet received approval by foreign markets.

Corn replicates by cross-pollination, and because of this, it was foreseeable that Viptera would cross-pollinate to other corns.

Viptera did cross-pollinate with other corns, and in December 2013, China first discovered that shipments of DDGS from the United States contained Viptera. As a result, China began diligently inspecting shipments

2

of DDGS from the United States, and rejecting any shipments that contained Viptera, which caused the price of DDGS to fall. Before the discovery by China of Viptera in the DDGS, the United States Department of Agriculture had forecast that China would triple its import of DDGS.

In 2014, Syngenta began marketing Duracade, which is another genetically modified corn seed, which had been deregulated by the USDA in February, 2013. China and several other countries had not yet approved Duracade at the time Syngenta began marketing it in the United States.

In December, 2014, China approved Viptera for import, however the price of DDGS was greatly diminished as a result of the time during which China rejected imports because of its discovery of Viptera.

Plaintiff alleges that Syngenta violated the legal standards of the marketplace and was negligent by marketing and distributing its genetically modified corn seeds in the United States when Syngenta knew that China and other export markets had not yet approved such seeds for import. As a result, Plaintiff alleges that it, and a class consisting of all individuals and entities similarly situated, and specifically "[a]ll ethanol plants, biorefineries or other entities in the State of Ohio who since January 1, 2013, purchased U.S. commodity corn on a commercial basis for the production of ethanol and sold distiller's grains or DDGS to third parties" suffered damages, and are entitled to recovery by Syngenta.

## II. Motion to Dismiss

Syngenta moves to dismiss the Amended Complaint, arguing that it fails to state a claim upon which relief may be granted. Specifically, Syngenta argues:

1. Plaintiff's claims are barred by the Economic Loss Doctrine, which prohibits the recovery of economic loss due to another's negligence.
2. Any claim that Syngenta had a duty to segregate Viptera is preempted by The Grain Standards Act.
3. Syngenta did not have a duty to control the conduct of others to segregate Viptera from the corn supply.
4. As a matter of law, Syngenta had no duty to refrain from selling Viptera.
5. The claim for Res Ipsa Loquitur fails as a matter of law.
6. The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") preempts any failure-to-warn theory of liability.
7. All claims must be dismissed to the extent they rely on Event 5307/Duracade.
8. Plaintiff's claim for punitive damages must fail because Plaintiff's claim for negligence fails.

Plaintiff opposes the Motion to Dismiss, arguing:

1. The Economic Loss Doctrine does not bar Plaintiff's claims, because Plaintiffs have alleged breaches of non-contractual duties.
2. The Grain Standards Act does not preempt Plaintiff's Claims
3. Syngenta owed Plaintiff a duty of reasonable care.
4. Plaintiff's claim for Res Ipsa Loquitur is viable under Ohio law.
5. FIFRA does not preempt Plaintiff's claims.
6. Plaintiff properly asserts claims based on Duracade.
7. Plaintiff properly and sufficiently pled punitive damages.

4

### III. Law

Rule 12(B)(6) of the Ohio Rules of Civil Procedure allows a party to seek dismissal of a claim for relief for failing to properly state a claim upon which relief may be granted. "In order to sustain dismissal of a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." LeRoy, et al. v. Allen, Yurasek & Merklin, et al., 114 Ohio St.3d 323, 326, 872 N.E.2d 254, 2007-Ohio-3608, citing Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268.

"The allegations of the complaint must be construed as true." Id., citing Maitland v. Ford Motor Co., 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11.

"Furthermore, the complaint's material allegations and any reasonable inferences drawn therefrom must be construed in the nonmoving party's favor. Id., citing Kenty v. Transamerica Premium Ins. Co., (1995), 72 Ohio St.3d 415, 418, 650 N.E.2d 863.

"It is well settled that the elements of an ordinary negligence are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) damages resulting proximately therefrom." MacDonald v. Webb Insurance Agency, Inc., 49 N.E.3d 807, 812 (Ohio App. 3 Dist. 2015), citing Hartings v. Xu, 3d Dist. Mercer No. 10-13-11, 2014-Ohio-1794, 2014 WL 1692792, ¶ 72.

"[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Company, et al., 42 Ohio

5

St.3d 40, 44, 537 N.E.2d 624 (1989), citing <u>Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.</u> (Iowa 1984), 345 N.W.2d 124, 126.

"[E]conomic losses are intangible losses that do not arise from tangible physical harm to persons or property." <u>Federal Insurance Company, et al. v. Fredericks, Inc., et al.</u>, 29 N.E.3d 313, 320 (Ohio App. 2 Dist.), 2015-Ohio-694, citation omitted.

"[W]here only economic losses are asserted, damages may be recovered only in contract; there can be no recovery in negligence due to the lack of physical harm to persons and tangible things." <u>Id.</u>, citation omitted.

"[N]egligence has proved to be among the least fruitful avenues for recovery of economic loss." <u>Chemtrol</u>, supra, at 44, citation omitted.

"[W]here there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule * * * that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." <u>Chemtrol</u>, supra, at 44-45, citation omitted.

"In negligence, the law imposes upon the manufacturer of a product the duty of reasonable care. That duty protects the consumer from physical injury, whether to person or property. However, the law of negligence does not extend the manufacturer's duty so far as to protect the consumer's economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties." <u>Chemtrol</u>, supra, at 45.

6

## IV. Analysis

This court is tasked with examining the voluminous filings of each of the parties and the relevant law in relation to the allegations in the Amended Complaint. The question before the court is whether, in construing the allegations in Plaintiff's Amended Complaint as true, and drawing reasonable inferences to be made from those allegations in favor of Plaintiff, Plaintiff states a cause of action against Syngenta that is cognizable under Ohio law. This court finds that it does not.

The parties have each referenced this court to numerous other court opinions from different jurisdictions, and even different countries. This court, however, must apply Ohio law as it has been interpreted by the Ohio Third District Court of Appeals and the Supreme Court of Ohio. While reference to other courts' opinions and rulings may be helpful in applying the law, this court specifically notes that none of those interpretations are binding upon this court.

The court will first address the issue of whether Syngenta owes a duty to Plaintiff. The court finds that Syngenta does owe a duty of reasonable care to Plaintiff and others to protect against *physical harm* from the intended use of its products. See Chemtrol, supra. There has been no case from any court in Ohio presented to this Court to show that Syngenta's duty should extend to economic harm caused by the intended use of its products, and this court declines to invent such a duty.

The court further notes that the creation of such a duty would be unduly burdensome upon manufacturers such as Syngenta and others, and against public policy.

Plaintiff argues that the class of parties entitled to compensation from Syngenta is foreseeable and not so far-removed as to be unduly

7

burdensome. This court disagrees. If Plaintiff and others in the alleged class can argue that Syngenta owes them a duty as parties who have not purchased corn directly from Syngenta, but use corn affected by Syngenta, where does such liability end? If the market price of DDGS drops because of China's failure to approve a new product, and as a result Plaintiff and others are entitled to damages, what about those in the transportation industry who lose profits because of less product being shipped to China? What about the brokers of the products themselves who have a vested interest in the further demand of the product they are selling? What about the manufacturers of the parts on the ships, trains and trucks whose products are not used as much due to decreased demand of DDGS? Should liability also extend to these parties, and if so, where should the line of liability be drawn?

This court finds that attempting to draw such liability is not supported by Ohio law, nor is a theory of such liability consistent with the free market concepts used in the United States of America.

Syngenta sold a product in the United States of America that was authorized for sale in the United States of America by the appropriate regulatory bodies. This court is not persuaded by any reasoning which determines that progress and development in agriculture within the United States of America should be delayed or put on hold until the government of China, or any other foreign government so approves of a product. Such an interpretation is against public policy.

This court further notes that the damages Plaintiff alleges it suffered due to the natural laws of supply and demand were foreseeable to Plaintiff as a result of regular market activity. Plaintiff voluntarily chose to participate in the free market of ethanol production in the United States of

8

America; a market that is a necessary partner of the corn industry. Further, it is a market that is the subject of ongoing advancements in genetically modified seeds and crops.

Plaintiff also explains in its Amended Complaint the process by which corn can easily cross-pollinate. See Plaintiff's Amended Complaint, ¶ 26. Further, Plaintiff admits that the market for DDGS is heavily reliant on exports to foreign countries, and that those countries often have a delayed period of approval for new genetically modified food products, even going so far as to state that China, a major market for DDGS, "has long been resistant to new genetically modified crops . . ." See Plaintiff's Amended Complaint, ¶ 19. It is also clear that the appropriate regulatory agencies did not place any stipulations upon Syngenta to refrain from distributing or selling its product in the United States of America until other foreign markets had approved it as well.

This court finds that a policy which requires genetically modified crop manufacturers to shield others, including those within Plaintiff's alleged class, from damages they suffer in the free market in which they voluntarily chose to participate would not be proper. In introducing new products into a huge international market, Syngenta does not owe a duty to such market participants to shield them from economic losses suffered as that market shifts and adjusts in accordance with those new technologies.

This court cannot fathom nor has it been shown any binding court precedent in support of an interpretation of American tort law that places a duty upon parties acting within the United States of America that is dependent upon the approval of a foreign government of advances in any type of technology, manufacturing, or agriculture. Such an interpretation of law works to inhibit advances in such technologies within the United States

9

of America by having a chilling effect on those parties investing time and resources into their creation, and can ultimately slow the progress of such markets in the long term.

Having found that Syngenta owes a limited duty to consumers to protect from physical damage resulting from the intended uses of its products, the court must now consider whether Plaintiff alleges in its Amended Complaint a cause of action sufficient to show the breach of that duty.

In a clear attempt to shield its Amended Complaint from application of the Economic Loss Doctrine, Plaintiff generally notes that it has suffered "property damage" as a result of Syngenta's actions. See Plaintiff's Amended Complaint, ¶¶ 11, 54. However, Plaintiff's mere addition of the words "property damage" in its Amended Complaint is not enough, even when construing the allegations as true, to adequately state a claim for such damage.

Plaintiff's Amended Complaint alleges that it has suffered actual economic harm as a result of the loss in market price for DDGS. Further, and as noted by Judge Lungstrum in In Re: Syngenta AG MIR 162 Corn Litigation, in The United States District Court for the District of Kansas, Case Number 14-md-2591-JWL, Plaintiff cannot plausibly claim that all members of the class suffered property damage, nor does Plaintiff attempt to do so. In ¶ 41 of Plaintiff's Amended Complaint, when describing the class to which it alleges it belongs, Plaintiff does not reference at all any "property damage" but rather specifically references damages sustained as a result of the failure of the Chinese market to approve Viptera and/or Duracade corn/DDGS for import for a period of time.

This court therefore finds Plaintiff in this case is requesting recovery in negligence based upon claims of purely economic loss. The economic loss doctrine, as discussed above, bars such claims.

Because Plaintiff has not properly stated a claim upon which relief can be granted under a theory of negligence, Plaintiff's claim for recovery under the theory of Res Ipsa Loquitur and its claim for punitive damages fail as a matter of law.

### V. Conclusion

For the reasons stated above, Motion to Dismiss Plaintiff's Amended Complaint, filed by Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Crop Protection, LLC, and Syngenta Biotechnology, Inc. (collectively, "Syngenta") on February 29, 2016 is found well-taken and is hereby **GRANTED**. The Amended Class Action Complaint, filed on December 18, 2015 is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____
**JUDGE STEVE C. SHUFF**

**TO THE PARTIES: THIS IS A FINAL APPEALABLE ORDER PURSUANT TO OHIO CIVIL RULE 54.**

11

**To the Clerk:** Please send copies of this Judgment Entry by regular United States mail to the following:

1. Andrew P. George, P.O. Box 36, Lebanon, OH 45036;

2. Martin J. Phipps, Barry Deacon, Jason A. Milne & Meagan M. Talafuse, 102 9th Street, San Antonio, TX 78215;

3. Clayton A. Clark, Scott A. Love & William W. Lundquist, 440 Louisiana Street, Ste. 1600, Houston, TX 77002;

4. David S. Frederick, Sean A. Lev, Matthew M. Duffy & Joshua Hafenbrack, 1615 M Street NW, Ste. 400, Washington, DC 20036;

5. Peter J. Flowers & Brian J. Perkins, 3 North Second Street, Ste. 300, St. Charles, IL 60174;

6. Michael K. Johnson, 33 S. Sixth Street, Ste. 4530, Minneapolis, MN 55402;

7. Jeffrey A. Lipps & Joel E. Sechler, 280 Plaza, Ste. 1300, 280 N. High Street, Columbus, OH 43215;

8. Michael D. Jones, Edwin John U, Patrick F. Philbin & Ragan Naresh, 655 Fifteenth Street, NW, Washington, DC 20005-5793;

9. Thomas P. SHult & Ryan C. Hudson, 2600 Grand Boulevard, Ste. 1200, Kansas City, MO 64108.

*FILED COMMON PLEAS COURT SENECA COUNTY, OHIO 2017 JUN 28 AM 9:56 JEAN A. ECKELBERRY CLERK*

12