# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE SYNGENTA AG MIR162 § | |
| CORN LITIGATION § | No. 2:14-MD-02591-JWL-JPO |
| § | |
| THIS DOCUMENT RELATES TO: § | MDL No. 2591 |
| § | |
| ALL CASES § | |

### TOUPS/COFFMAN PLAINTIFFS' RESPONSE IN OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AGREEMENT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Toups/Coffman Plaintiffs respectfully file this Response in Opposition to Class Counsel's Motion for Preliminary Approval of the Proposed Class Settlement Agreement (Doc. #3506).

## INTRODUCTION

On September 25, 2017, the Plaintiffs' Negotiating Committee (PNC), on behalf of all Plaintiffs, and Syngenta signed a detailed Settlement Term Sheet ("STS") (Exhibit A), settling this sprawling litigation for $1.51 billion ("Syngenta Settlement").

The STS calls for a separate Class Plaintiffs Settlement Agreement and a separate Individual Plaintiffs[1] Settlement Agreement allocating and distributing the $1.51 billion to the two plaintiff groups. Under the STS, the Parties agreed that going forward, this Court has jurisdiction over Class Plaintiffs, Class Counsel, and Class Plaintiffs' portion of the Syngenta Settlement. The Parties also agreed that going forward, the 23rd District Court of Brazoria County, Texas (the

---

[1] The terms "Class Plaintiffs" and "Individual Plaintiffs," as intended and defined in the STS, are used throughout this Response in the manner intended by the Parties in the STS. Class Plaintiffs are U.S. corn producers represented by Class Counsel. Individual Plaintiffs are U.S. corn producers represented by private counsel. Toups/Coffman Plaintiffs are Individual Plaintiffs.

1

"Individual Plaintiff Court") (*id*., § 2(dd)) has jurisdiction over Individual Plaintiffs, Individual Plaintiffs' Counsel, and Individual Plaintiffs' portion of the Syngenta Settlement—regardless of any subsequently filed class-related motions, including the pending Motion for Preliminary Approval. The STS also required the Parties to draft formal settlement documents governing the allocation and distribution of the Syngenta Settlement consistent with the terms of the STS.

After signing the STS, the PNC, supposedly on behalf of all Plaintiffs, deliberated in secret. Their secrecy violated the PNC Appointment Order. After five months of secret deliberations, their work product is the proposed Class Settlement Agreement (Doc. #3507-2). The PNC, however, did not produce a similar separate document regarding the Individual Plaintiffs' portion of the Syngenta Settlement. Rather, the PNC proposes to include the Individual Plaintiffs in the proposed Class Settlement Agreement even though most of the Individual Plaintiffs opted out of the class action long ago. The proposed "one size fits all" Class Settlement Agreement violates the STS and is defective in many ways. Moreover, per the Parties' explicit agreement in the STS, this Court does not have going forward jurisdiction over Individual Plaintiffs, Individual Plaintiffs' Counsel, and the Individual Plaintiffs' portion of the Syngenta Settlement.

Accordingly, the Court should reject the proposed Class Settlement Agreement as currently written and deny the Motion for Preliminary Approval,[2] enforce the STS, and direct Class Counsel and the PNC to reform the proposed Class Settlement Agreement to exclude Toups/Coffman Plaintiffs and all other Individual Plaintiffs. This will allow Individual Plaintiffs to consummate and distribute Individual Plaintiffs' portion of the Syngenta Settlement in the Individual Plaintiff Court in a manner consistent with the terms of the STS.

---

2   Toups/Coffman Plaintiffs specifically do not oppose the $1.51 billion settlement amount.

## FACTUAL NARRATIVE

### I. The PNC failed to comply with the PNC Appointment Order.

On August 8, 2017, the Court appointed the PNC, composed of Christopher A. Seeger, Daniel E. Gustafson, Mikal Watts, and Clayton A. Clark. Doc. #3366 ("PNC Appointment Order") (Exhibit B). Messrs. Seeger and Gustafson were ostensibly selected to represent Class Plaintiffs in settlement negotiations, and Messrs. Watts and Clark were ostensibly selected to represent the Individual Plaintiffs—although the tenor of the Order is for the PNC to fairly represent the interests of all Plaintiffs. The PNC Appointment Order directs the PNC to "confer with other Plaintiffs' counsel in the actions described above about such negotiations, and shall participate in such negotiations on their behalf." *Id.* at 2-3. The PNC Appointment Order further states that the Court anticipates the PNC "will communicate with their co-counsel regarding settlement negotiations so that producer plaintiffs' interests are appropriately represented." *Id*.

Notwithstanding the PNC Appointment Order, at the direction of Special Master Ellen K. Reisman, the PNC conducted their negotiations in secret. Decl. of Mitchell A. Toups (Toups Decl.) (Exhibit E); Decl. of Richard L. Coffman (Coffman Decl.) (Exhibit F). It is undisputed (and indisputable) that at no time after their appointment did the PNC confer substantively with Toups/Coffman Plaintiffs' Counsel about such negotiations, participate in such negotiations on their behalf, or communicate substantive information to Toups/Coffman Plaintiffs' Counsel regarding settlement negotiations to insure that Toups/Coffman Plaintiffs' interests were appropriately represented. *Id*. In fact, at Ms. Reisman's direction, the opposite occurred.[3] *Id*.

---

[3] Toups/Coffman Plaintiffs incorporate, by reference, their allegations in, and supporting declarations and documents to, their Motion to Delay Consideration (Doc. #3499) pertaining to the PNC's failure to comply with the PNC Appointment Order at the direction of Ms. Reisman. Notably, nowhere in Class Counsel's response (Doc. #3510) do the PNC members or Ms. Reisman deny this indisputable fact.

## II. The PNC also failed to comply with the Settlement Term Sheet (STS) requirement of separate settlements for Class Plaintiffs and Individual Plaintiffs.

On September 25, 2017, the PNC, on behalf of all Plaintiffs, and Syngenta signed the comprehensive STS (Exhibit A).[4] Prior to signing the STS, the PNC did not circulate a draft of it or confer with Toups/Coffman Plaintiffs' Counsel about it. Toups Dec.; Coffman Dec. Nor did the PNC, at Ms. Reisman's direction, circulate the STS after it was signed—even after Toups/Coffman Plaintiffs' Counsel repeatedly requested it. *Id.*; *see also e.g.*, February 19, 2018 email exchange between Mitch Toups and PNC member Mikal Watts (Exhibit C) ("we on the Plaintiffs' Settlement Negotiation Committee are not allowed to disclose the details" and "I'm sorry I am not at liberty to disclose more information [at] this time.").[5]

The detailed STS is a classic example of how a settlement is properly allocated and distributed in litigation where there is a class action component and a large number of individual opt-out plaintiffs, such as in this case. It is precisely what Toups/Coffman Plaintiffs Counsel and

---

[4] Toups/Coffman Plaintiffs did not obtain a copy of the STS until after Class Counsel filed the pending Motion for Preliminary Approval of Proposed Class Settlement Agreement.

[5] As a preview of coming arguments, in their response to Toups/Coffman Plaintiffs' Motion to Delay Consideration of the Class Settlement Agreement ("Motion to Delay Consideration") (Doc. #3499), Class Counsel argue that if Toups/Coffman Plaintiffs "were dissatisfied over the PNC's composition or sufficiency of its representation, or over the then-ongoing settlement negotiation process itself, Coffman and Toups could and should have raised a complaint at the time." Doc. #3510 at 6. In other words, according to Class Counsel, Toups/Coffman Plaintiffs should have known that the PNC would violate the PNC Appointment Order and their duties to all Plaintiffs, and mistrusted the PNC sooner.

Notably, nowhere in their response (Doc. #3510) do Class Counsel and Ms. Reisman deny that the PNC violated the PNC Appointment Order or that Ms. Reisman directed them to do so. Moreover, if the Special Master directs the PNC not to disclose substantive information about the Syngenta Settlement to all Plaintiffs and their counsel, while, at the same time, arguing that she herself is not required to do so (Doc. #3510 at 5-6), how are Plaintiffs and their counsel supposed to obtain information to which they are entitled under the PNC Appointment Order?

other Individual Plaintiffs' Counsel were requesting. The fact that the PNC and Syngenta negotiated it and signed off on its terms makes perfect sense. The approximate 100,000 Individual Plaintiffs that hired private counsel and filed individual lawsuits drove the settlement negotiations since there was no longer the possibility of a national class (its only legal claim under the Lanham Act has been dismissed), and only nine state class actions had been certified.

Among other things, the STS contemplates two groups of plaintiffs—Class Plaintiffs and Individual Plaintiffs—and requires, among other things, (i) separate settlement agreements for both plaintiff groups (*id.*, §§ 2(r), 2(ff), 3, 4(a), 4(b)); (ii) an allocation of the Gross Settlement Proceeds between the two plaintiff groups and the creation of separate Qualified Settlement Funds (QSFs) (*id.*, §§ 2(c), 2(d), 2(q), 2(ee), 3, 4(d)(xiii)); (iii) a separate Class Plaintiffs Court (this Court) and an Individual Plaintiff Court (*i.e.*, the 23rd Judicial District Court, Brazoria County, Texas) to oversee the separate settlements (*id.*, §§ 2(a), 2(c), 2(d), 2(p), 2(dd), 4(d)(vi))); and (iv) separate special masters for the two plaintiff groups (*id.*, §§ 2(s), 2(gg)).

In fact, the STS *specifically excludes* Individual Plaintiffs from the Class Plaintiffs Settlement, and *specifically stipulates* jurisdiction over Individual Plaintiffs, Individual Plaintiffs' Counsel, and Individual Plaintiffs' portion of the Syngenta Settlement in the Individual Plaintiff Court—regardless of any subsequently filed class-related motions, including the pending Motion for Preliminary Approval. *Id.*, § 4(d)(vxiii).

In preparation for sending class notice, the STS first calls for the creation of Registration Lists submitted by Individual Plaintiffs' Counsel who desire to exclude their clients from the Class Settlement and include them within the Individual Plaintiffs Settlement Agreement. (*id.*, § 2(rr)). Individual Plaintiffs appearing on a Registration List are referred to as "Eligible Individual Plaintiffs." *Id.*, § 2(v).

Per the STS, once the Registration Lists are established, Class Counsel are allowed to send settlement class notice only to Class Plaintiffs (*i.e.*, all Plaintiffs not appearing on the Registration Lists). *Id.*, §§ 2(ll), 4(d)(iv), 4(d)(v).

Regarding claims, the STS requires the (i) Class Plaintiffs and Individual Plaintiffs to file separate claim forms with a Claim Administrator under their respective settlement agreements (*id.*, § 4(d)(ix)); and (ii) Class Plaintiffs' and Individual Plaintiffs' claim forms must be supported by FSA Forms 578 or comparable information submitted to the Claim Administrator at the same time Class Plaintiffs and Individual Plaintiffs submit their claim forms (*id.*, § 2(f)).

The STS also allocates $10 million for administering the Class Plaintiffs Settlement Agreement and the Individual Plaintiffs Settlement Agreement, including, without limitation:

> [T]he Claim Administrator's reimbursement to Individual Plaintiffs' Counsel for the costs, labor and otherwise properly documented expenses of complying with PFS Orders, Opt-Out Orders entered prior to this STS by the Kansas MDL, obtaining FSA 578s and comparable information pursuant to orders entered by the Kansas MDL, the Minnesota MDL and other jurisdictions, the fees of the Claim Administrator, the Indvidual Plaintiff Special Master, and the Class Plaintiff Special Master for time expended after this STS is signed.

*Id.*, § 2(aa).

Finally, and most important, the Parties agreed "to negotiate in good faith to finalize formal settlement documents consistent with [the] STS." *Id.*, § 1(a). That, however, did not happen. None of the above-referenced provisions are in the proposed Class Settlement Agreement nor referenced in the Motion for Preliminary before the Court. Rather, under the proposed Class Settlement Agreement, all U.S. corn producers are treated as members of a new putative national

settlement class regardless of whether they previously opted out of the national class certified in 2017—which, in fact, is now but an empty shell.[6]

There is no Individual Plaintiff Settlement Agreement. There is no Individual Plaintiff QSF established. There are no Registration Lists. The $10 million reimbursement fund disappeared.

So what happened? How did the global settlement of this sprawling litigation morph from the classic and imminently workable two-settlement deal required by the STS into the onerous "one size fits all" proposed Class Settlement Agreement? Why would Messrs. Watts and Clark abandon the favorable settlement terms for Individual Plaintiffs embodied in the STS, settle their clients through a tortured class action settlement distribution mechanism, and cede control over Individual Plaintiffs' recoveries to Class Counsel? It makes no practical or legal sense. The answer is most certainly money. Perhaps there is a side deal guaranteeing certain lawyers a certain amount of attorneys' fees.[7]

But one thing's for sure. Messrs. Watts and Clark were granted special concessions in the proposed Class Settlement Agreement. For example, all matters pertaining to client fee contracts and referring counsel referral agreements in Mr. Clark's cases will be handled by Judge Herndon in the Southern District of Illinois (*id*., § 7.2.3.1), and all matters pertaining to client fee contracts and referring counsel referral agreements in the Minnesota cases (most of which are Mr. Watts' cases) will be handled by Judge Miller in the Minnesota state court (*id*., § 7.2.3.2). Why are

---

[6] The previously certified national class is an empty shell because the Lanham Act claim, the only legal claim certified in the national class, was dismissed shortly after the national class was certified. Ergo, the proposed national settlement class is not certifiable as a matter of law.

[7] *See, e.g*., January 11, 2018 email from John Cracken to PNC member Mikal Watts (Exhibit D). Toups/Coffman Plaintiffs understand Mr. Cracken participated in the post-STS PNC negotiations in Mr. Watts' stead when Mr. Watts could not attend. The percentages in the email appear to reference attorney fee splits between the PNC members.

7

Messrs. Watts' and Clark's clients/contracts singled out for special treatment? Why, for example, aren't matters pertaining to client fee contracts and referring counsel referral agreements in Toups/Coffman Plaintiffs' cases, if any, handled by the courts in which they are filed (*i.e.*, this Court for the Toups/Coffman Plaintiffs in the MDL proceeding and the state court in Williamson County, Illinois for the Toups/Coffman Plaintiffs filed there)?[8]

Time will tell whether there are secret side deals and other concessions (both written and unwritten) received by any of the PNC as *quid pro quo* for not following through with the requirements of the STS, abandoning their clients' rights, abandoning the other Individual Plaintiffs' rights, violating the PNC Appointment Order, supporting the proposed Class Settlement Agreement—all to the detriment of Individual Plaintiffs and the judicial process.

**THE TOUPS/COFFMAN PLAINTIFFS**

Toups/Coffman Plaintiffs' Counsel first got involved in this litigation in 2014. Toups Dec.; Coffman Dec. Since that time, they have spent countless hours meeting with U.S. corn producers in the fields, in barns, across the hoods of trucks, in restaurants, in barber shops, and around kitchen tables to discuss the Syngenta MIR 162 litigation and answer their questions. *Id*. Toups/Coffman Plaintiffs' Counsel and their staffs also have communicated with numerous corn producers via telephone and email (many were surprised and delighted that counsel actually took their calls and responded to their emails when other lawyers didn't). *Id*. Toups/Coffman Plaintiffs' Counsel regularly update their clients (and non-clients) about the litigation via letters, cards, emails, and posts through their dedicated case website, www.corncasesettlement.com. *Id*.

---

[8] Notably, the proposed Class Settlement Agreement is silent regarding how private lawyers representing Individual Plaintiffs will be paid under their contracts. Nor may their contracts be trumped. *See, e.g., US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (confirming "if the agreement governs, the agreement governs").

Equally as important, from the beginning of their involvement in the litigation, Toups/Coffman Plaintiffs' Counsel and their staffs have worked long hours with their clients and their clients' local FSA offices to secure their clients' 2013-2017 Form 578s and other supporting documents as required by the Court at the outset of the litigation. *Id*. Toups/Coffman Plaintiffs filed their first case in April 2015. *Id*. They have filed many cases since. *Id*. The Toups/Coffman Plaintiff group comprises over 9000 individual corn producer plaintiffs in forty-four states farming approximately 2.9 million acres of corn on the average during each year in the damages period. *Id*.

On information and belief, the Toups/Coffman Plaintiffs comprise the most Individual Plaintiffs in the federal MDL proceeding. *Id*. The Toups/Coffman Plaintiffs also produced 15 of the 48 bellwether plaintiffs in the federal MDL proceeding, all of whom, with the assistance of Toups/Coffman Plaintiffs' counsel, participated in the full discovery process supporting the litigation, including responding to written discovery and sitting for their depositions. *Id*.

## OPPOSITION TO THE PROPOSED CLASS SETTLEMENT AGREEMENT

### I. As of September 25, 2017, this Court does not have jurisdiction over Individual Plaintiffs.

First and foremost, Toups/Coffman Plaintiffs oppose the proposed Class Settlement Agreement and their inclusion in it because, respectfully, as of September 25, 2017—the date the STS was signed by the CEOs of Defendants Syngenta AG and Syngenta Seeds, Inc., Syngenta's Counsel, all PNC members, Ms. Reisman (Court-Appointed Settlement Master), and the Hon. Daniel J. Stack (Court-Appointed Special Master)—this Court does not have jurisdiction over Individual Plaintiffs. The STS is clear on this point.

Pursuant to § 4(xvii), as of September 25, 2017, the Individual Plaintiff Court, not this Court, has exclusive and continuing jurisdiction over Individual Plaintiffs, Individual Plaintiffs'

9

Counsel, and all aspects of the Individual Plaintiffs' portion of the Syngenta Settlement. *See* Exhibit A. This is true regardless of what Class Counsel and Class Plaintiffs subsequently do (and have done):

> Nothing in this STS or the Settlement Agreements *or the filing of subsequent settlement class certification motions* will subject Individual Plaintiffs Counsel, the Individual Plaintiffs or the Individual Opt Outs, or their respective counsel *to the jurisdiction of any federal court* in connection with the Individual Plaintiffs' Claims, the Individual Opt Outs' Claims, the Settlement Agreements, the Individual Plaintiff QSF, or with respect to fees contracted to be paid to Individual Plaintiffs Counsel or other lawyers providing a timely Registration List by the Registration Deadline.

*Id*., § 4(xviii) (emphasis added). This Court, therefore, does not have jurisdiction over Individual Plaintiffs, their Counsel, and the Individual Plaintiffs' portion of the Syngenta Settlement.[9]

Moreover, the proposed Class Settlement Agreement contemplates that all corn producers who do not affirmatively opt out of the proposed settlement class will be bound by its terms, even if such producers are Individual Plaintiffs who previously excluded themselves from the national litigation class or one of the eight statewide classes. *See, e.g.*, Long-Form Notice at 7 (Doc. #3507-5; Class Settlement Agreement at 3-5 (Doc. #3507-2) (defining Settlement Class without excluding prior opt outs).

By crafting the proposed Class Settlement Agreement in this fashion, Class Counsel ask the Court to invalidate—without cause—all previous opt-out decisions by Individual Plaintiffs who purposefully excluded themselves from the litigation classes so they could pursue their individual cases. Voiding their opt-out decisions in one fell swoop by approving the proposed Class Settlement Agreement would, in effect, erroneously create a presumption of their consent to a settlement agreement in litigation from which they have already excluded themselves. Not to

---

[9] Nor does the proposed Class Settlement Agreement state that it supersedes the STS, but even if the proposed Class Settlemjent Agreement stated that it did, only that portion of the STS pertaining to the Class Plaintiff Settlement Agreement would be superseded.

mention that by opting out at class certification, Individual Plaintiffs have expressly revoked any consent to be represented by Class Counsel—meaning that neither Class Counsel nor the PNC had any authority to settle their claims against Syngenta.

Individual Plaintiffs who opted out at class certification also are not "class members" as contemplated by the plain language of FED. R. CIV. P. 23(e), nor were their claims part of a "certified class" when the proposed settlement was reached. Rule 23(e) governing class settlements clearly states that "[t]he claims…of a *certified class* may be settled, voluntarily dismissed, or compromised only with the Court's approval." (emphasis added). Rule 23(e)(4) further states that "[i]f the class action was previously certified under Rule 23(b)(3)," as is the case here, "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual *class members who had an earlier opportunity to request exclusion but did not do so*." (emphasis added).

Thus, Individual Plaintiffs who previously excluded themselves from the litigation classes were not "class members" at the time the litigation settled, nor were their claims part of a "certified class" as contemplated by Rule 23. These Individual Plaintiffs, therefore, cannot be forcibly shoehorned back into the settlement class as contemplated by the proposed Class Settlement Agreement.

Furthermore, Individual Plaintiffs—not Class Counsel—should control the resolution of their claims. That's why Individual Plaintiffs opted-out of the class, hired their own lawyers, and filed their own cases. Individual Plaintiff settlements do not require court approval. Nor are Individual Plaintiff settlement payments potentially delayed for years by class action administration or appeals, or even worse, reversed on appeal. All of these bad outcomes could happen to

Individual Plaintiffs if they are included in the proposed Class Settlement Agreement, so why should they be forced to give up their rights and go backwards?

For all of these reasons, the proposed Class Action Agreement should be reformed to exclude Toups/Coffman Plaintiffs and the other Individual Plaintiffs so they may proceed to consummate and distribute Individual Plaintiffs' portion of the Syngenta Settlement in the Individual Plaintiff Court in a manner consistent with the terms of the STS.

## II. The proposed Class Settlement Agreement is defective.

Notwithstanding the Court's lack of jurisdiction over Individual Plaintiffs, Toups/Coffman Plaintiffs oppose Class Counsel's Motion for Preliminary Approval of the Class Settlement Agreement (and the proposed Class Settlement Agreement) for the following additional fundamental reasons:[10]

**1. Class Counsel have not conducted a choice of law analysis confirming certification of a nationwide settlement class.** At the request of Class Counsel, the Court previously certified eight state-only classes for litigation purposes (plus the Minnesota class). While each of these classes were certified on negligence counts, some of the states had additional certified claims, *e.g.*, tortious interference in Arkansas and Missouri, and state-specific unfair practices claims in Illinois and Nebraska.

---

[10] This is not an exhaustive list of defects. There may be more. The proposed Class Settlement Agreement is not the typical class action settlement document. It is contorted in many ways in order to shoehorn the Individual Plaintiffs back into the class. It is also either silent or vague on several points, perhaps intentionally. Toups/Coffman Plaintiffs reserve the right to supplement this list of reasons for opposing the proposed Class Settlement Agreement as it unfolds depending, of course, on the Court's decision whether to exclude them from the proposed Class Settlement Agreement, so they may proceed to consummate and distribute Individual Plaintiffs' portion of the Syngenta Settlement in the Individual Plaintiff Court.

Under the proposed Class Settlement Agreement, these state-only distinctions will disappear and collapse into a nationwide class and mandatory nationwide subclass membership, all determined under a Delaware choice of law provision. *See* Doc. #3507-2 at 4-5; 63. But Class Counsel has not performed or presented a choice of law analysis for such a broad stroke certification, instead declaring that because the Court found the litigation classes satisfied FED. R. CIV. P. 23 (a)(2) commonality and (b)(3) predominance, the Court "should do so again for the Settlement Class." *Id.* at 42; 49. But without more, this would be reversible error.

As the Ninth Circuit recently opined in reversing a nationwide class settlement in *In Re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018), district courts must conduct a choice of law analysis even in the settlement context. *Id.* at 702 (highlighting the *Amchem* warning that district courts must apply "heightened attention" in scrutinizing settlement classes). This warning is particularly apt here where Class Counsel implicitly concedes that no nationwide litigation class could be obtained when they opted for discreet single state classes and a nationwide class solely on a Lanham Act claim that has since been dismissed.

The proposed Class Settlement Agreement aims to compromise classes with valuable and varying claims arising solely under state law by ignoring these distinctions. The end result is that regardless of whether a corn producer has a negligence claim, a tortious interference claim, or an unfair practices claim, Class Counsel treat all such producers the same, combine them with producers in other states (who may or may not have a better or worse claim), and establish Delaware law as the controlling substantive law—without any choice of law analysis or analysis of the value of corn producer claims in one jurisdiction as opposed to another. This Court's prior certification of separate statewide classes does not provide a blank check for compromising producer claims under any standard.

13

**2. The proposed Class Settlement Agreement puts Individual Plaintiffs at an unfair economic disadvantage.** Under the proposed Class Settlement Agreement, the recoveries of all Individual Plaintiffs would be burdened by the full amount of any fee award to Class Counsel *plus* the attorneys' fees owed to their private lawyers under their contracts. As a result, Individual Plaintiffs will receive a smaller net recovery than Class Plaintiffs even though they have filed individual cases and done the hard work of completing Plaintiff Fact Sheets and obtaining their FSA Forms 578 and other supporting documentation. The proposed Class Settlement Agreement puts Individual Plaintiffs at an unfair economic disadvantage.

As such, the proposed Class Settlement Agreement also would pit Individual Plaintiffs against their private counsel—which is precisely what Class Counsel seeks to achieve. The practical result of the proposed Class Settlement Agreement will be a multitude of attorneys' fee liens which, in turn, will further delay the settlement distribution and cause unnecessary case administration and increased administrative costs. The litigation could go on for years.[11]

**3. The one-third attorneys' fee award sought by Class Counsel is exorbitant for a mega-fund case settlement.** Syngenta has agreed, in principal, to settle the litigation for $1.51 billion. In a recent declaration filed in support of class counsel's fee application in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179

---

[11] For a real-time example of the impending administrative nightmare that will be created by the proposed Class Settlement Agreement, please review the docket in *In re National Football League Players' Concussion Injury Litigation*; MDL No. 2323 (E.D. Pa.), a class action settlement disaster. In the *NFL Concussion Injury* case, hundreds (if not thousands) of attorneys' fee liens have been filed and co-counsel have turned on lead counsel for the less than transparent manner in which he has conducted the litigation. The *NFL Concussion Injury* case will go on for years. The proposed Class Settlement Jpent Agreement is eerily similar to the structure of the *NFL Concussion Injury* case settlement.

14

("*Deepwater Horizon*"), Prof. Brian T. Fitzpatrick, a recognized expert in the area, identified 21 common fund class action settlements of $1 billion or more.

According to Prof. Fitzpatrick's analysis, the average attorneys' fee percentage of these mega-fund cases is 9.92% (total) and 10.97% (cash settlements); the median average attorneys' fee percentage is 7.40% (total) and 7.50% (cash settlement).

Empirical studies have shown that settlement size has a statistically significant, but inverse, relationship with the fee percentage awarded—*i.e.*, that federal courts award lower percentages in cases where the settlements are large. *See* Brian T. Fitzpatrick, *Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 833, 842-44 (2010) "*Empirical Study*"). This is consistent with Eisenberg's 2017 study. Fitzpatrick's *Empirical Study* examined every class action settlement approved by a federal court during 2006-2007. There are nine settlements in his dataset of $1 billion or more; the mean and median fee percentage in these cases are 13.7% and 9.5% respectively. *See id.* at 839.

Professor Fitzpatrick's declaration in the *Deepwater Horizon* matter recommended that class counsel receive $555.2 million in fees from a settlement of $13 billion, or less than 4.3% of the common fund. This award is consistent with the fee percentage recommended in *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed.) at 36 ("In such [mega-fund] cases, you should be looking at a percentage of recovery far less than the typical range and perhaps as low as 4%."). The one-third attorneys' fee award sought by Class Counsel is exorbitant for this mega-fund case settlement.

**4. The proposed settlement claims procedure will unnecessarily suppress the filing of claims and increase administrative costs.** The proposed Class Settlement Agreement requires a claimant's handwritten "wet ink" signature on his or her claim form. But there is no credible

15

reason why corn producers' claim forms cannot be submitted by their lawyers without the necessity of their clients' handwritten signatures. Private lawyers for corn producers have the necessary information to complete and submit their clients' claim forms since the Court has required the corn producers to obtain and submit their FSA Forms 578 and other supporting documentation from the get go under threat of dismissal with prejudice. Toups/Coffman Plaintiffs' Counsel, for example, have worked hard to obtain their clients' FSA Forms 578 and other supporting documentation, and are in a position to prepare and submit their clients' claim forms—especially since their clients are now back in the fields thanks to the settlement roll-out being unnecessarily delayed.

There also is no credible reason why corn producers should be precluded from submitting their FSA Forms 578 with their claim forms—especially since they were required to obtain them by the Court—rather than risking the FSA not delivering the correct information or delivering it on a timely basis. Allowing claimants to submit their FSA Forms 578 and other supporting documents with their claim forms also will obviate the need to pay the FSA for the information a second time, thereby reducing settlement administrative costs, increasing the money available for distribution to corn producers, and speed up the settlement distribution process.

**5. The proposed Class Settlement Agreement opt-out provisions are too onerous.**

"There should be no unnecessary hurdles that make it difficult for Class Plaintiffs to exercise their rights to opt out, object, submit a claim, or make an appearance." Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (the "FJC Checklist"), Major Checkpoints, at 1 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited March 19, 2018). Accordingly, the following FAQ appears under the heading "Notice Documents" in the FJC Checklist:

16

> "*Are there no burdensome hurdles in the way of responding and exercising rights?*
>
> Watch for notice language that restricts the free exercise of rights, such as onerous requirements to submit a "satisfactory" objection or opt-out request.

*Id.* at 5 (italics in original).

Stated simply, the proposed Class Settlement Agreement opt-out provisions fail the FJC Checklist mandate in that they "make it difficult for class members to exercise their rights to opt out" and "restricts the free exercise of rights, such as onerous requirements to submit a 'satisfactory' . . . opt-out request." Moreover, the proposed Class Settlement Agreement and the Long Form Class Notice ("Class Notice") (Doc. #3507-5) conflict; the Class Notice imposes additional burdensome requirements not found in the proposed Class Settlement Agreement.

Section 4.3.4 of the proposed Class Settlement Agreement provides: "No class-wide, mass opt-outs, or opt-outs signed by attorneys are permitted under this Agreement." A similar prohibition was one of the factors that caused the court to reject preliminary approval of a class settlement in *Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11CV3041 DMS (BLM), 2014 WL 12789177, at *6 (S.D. Cal. Feb. 3, 2014). Even matters as mundane as requiring opt-outs to mail their opt-out forms by certified mail have drawn courts' attention. *See In re ABMD Ltd.*, 439 B.R. 475, 490 (Bankr. S.D. Ohio 2010).

In *McClintic v. Lithia Motors, Inc.*, No. C11–859RAJ, 2012 WL 112211 (W.D. Wash. 2012), the Court denied the motion for preliminary approval, criticizing the onerous opt-out provisions:

> The parties do not make it as easy for class members to opt out of the settlement. To opt out, one must print a form from the settlement website and mail it at his or her own expense to the settlement administrator. It would be simple, for example, to add the option to opt out to the same postage-prepaid card containing the claim form. The parties make it even harder to object to the settlement. They propose to require objectors to pay to mail their objections to class counsel, Lithia's counsel, and the court. There is no obvious reason that the parties could not designate a single recipient for objections, and then distribute the objections to the parties and the court after the objection deadline. *One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible,*

17

*whether class members wish to make a claim, opt out, or object.*

*Id.* at * 6 (emphasis added).

By any objective standard, the proposed Class Settlement Agreement fails the mass opt-out provision disallowed in *Newman* and the easy participation standard of *McClintic* and the Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide." And, as stated above, the Class Settlement Agreement also does not take into consideration the approximate 100,000 Individual Farmers that have already opted out of the class action and filed individual cases.

**6. Class Counsel's request for the unilateral power to control and edit all websites about the Syngenta Corn Litigation other than their website, www.cornseedsettlement.com, violates the right of free speech.** In Section 3.13.2 of the proposed Class Settlement Agreement, Class Counsel requests an order that all websites about the Syngenta Corn Litigation must conform to their website, www.cornseedsettlement.com. But such an order would effectively grant Class Counsel the unilateral power to control and edit other counsels' websites. Without more, this would be a *per se* violation of the right of free speech. Nor has Class Counsel submitted any evidence of any website containing false or misleading statements about the Syngenta Corn Litigation requiring that they be vested with such unilateral authority.

***

All of the above issues are serious issues that arise solely because Class Counsel attempts to shoehorn the Individual Plaintiffs into the proposed "one size fits all," contorted Class Settlement Agreement—even though most of them have already opted out of the class action. If, however, the Court simply enforces the STS requiring separate settlements administered by separate courts for Class Plaintiffs and Individual Plaintiffs, all of these issues will go away (at least with respect

to Individual Plaintiffs).  This proposed Class Settlement is neither fair nor reasonable for all the reasons stated above.

Accordingly, Toups/Coffman Plaintiffs respectfully request the Court to (i) reject the proposed Class Settlement Agreement as currently written and deny the Motion for Preliminary Approval, (ii) deny the filing of the Fourth Amended Class Action Complaint (Doc. 3505) to the extent it is inconsistent with the STS (iii) enforce the STS, (iv) direct Class Counsel and the PNC to reform the proposed Class Settlement Agreement to exclude Toups/Coffman Plaintiffs and all other Individual Plaintiffs, so they may proceed to consummate and distribute Individual Plaintiffs' portion of the Syngenta Settlement in the 23rd District Court of Brazoria County, Texas, in a manner consistent with the terms of the STS, and (v) grant Toups/Coffman Plaintiffs and all other Individual Plaintiffs such other and further relief to which they are justly entitled.

Date: March 26, 2018

                                      Respectfully submitted,

                                      By: /s/ Mitchell A. Toups
                                      Mitchell A. Toups
                                      **WELLER, GREEN TOUPS & TERRELL, LLP**
                                      2615 Calder Ave., Suite 400
                                      Beaumont, TX 77702
                                      Telephone: (409) 838- 0101
                                      Facsimile: (409) 838- 6780
                                      Email: matoups@wgttlaw.com

                                      Richard L. Coffman
                                      **THE COFFMAN LAW FIRM**
                                      First City Building
                                      505 Orleans St., Fifth Floor
                                      Beaumont, TX 77701
                                      Telephone: (409) 833-7700
                                      Facsimile: (866) 835-8250
                                      Email: rcoffman@coffmanlawfirm.com

                                      **ATTORNEYS FOR THE TOUPS/COFFMAN PLAINTIFFS**

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the Toups/Coffman Plaintiffs' Response in Opposition to Class Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement Agreement was served on all counsel of record, via the Court's electronic filing system, on March 26, 2018.

                                                    /s/ *Mitchell A. Toups*
                                                    Mitchell A. Toups