IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162    )    MDL No. 2591
CORN LITIGATION,         )
               )    Case No. 14-md-2591-JWL
This Document Relates to All Cases Except:   )
               )
   *Louis Dreyfus Co. Grains*     )
   *Merchandising LLC v. Syngenta AG,*   )
   *et al.*, No. 16-2788        )
               )
   *Trans Coastal Supply Co., Inc. v.*    )
   *Syngenta AG, et al.*, No. 14-2637    )
               )
   *The Delong Co., Inc. v. Syngenta AG,*   )
   *et al.*, No. 17-2614        )
               )
   *Agribase Int'l Inc. v. Syngenta AG,*    )
   *et al.*, No. 15-2279        )
               )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the following motions:  plaintiffs' motion

for preliminary settlement approval (Doc. # 3506); the motion by the Toups/Coffman

plaintiffs ("Toups") to delay preliminary approval and for other relief (Doc. # 3499)[1]; a

joint motion by plaintiffs and Syngenta[2] for leave to file the parties "walk away agreement"

under seal (Doc. # 3508); and a joint motion for a stay of the MDL actions and an injunction

against related actions against Syngenta (Doc. # 3512).  On April 5, 2018, after the motions

---

[1] The Hossley-Embrey plaintiffs joined in this motion and in Toups's opposition to
the other motions ruled herein.

[2] The Court refers to defendants in this MDL collectively as "Syngenta".

had been fully briefed, the Court conducted a hearing on these four motions. For the reasons set forth below and on the record of that hearing, the Court **grants** the motion for preliminary approval and the related joint motions, and it will issue separate orders setting forth the granted relief as requested by plaintiffs. The Court **denies** the motion filed by the Toups plaintiffs.

## I.   Motion for Preliminary Approval of Settlement (Doc. # 3506); Toups's Motion for Delay (Doc. # 3499)

### A.   *Background*

In 2016, this Court and several others with related cases appointed a special master for purposes of settlement. On August 9, 2017, this Court appointed a Plaintiffs' Settlement Negotiation Committee ("PNC") to work towards a settlement with Syngenta. In appointing the members of the PNC, the Court sought to "balance[] the goals of representing the interests of different groups of producer plaintiffs while maintaining a workably sized group to conduct settlement negotiations." On September 25, 2017, the PNC executed a term sheet with Syngenta providing for a total settlement amount of $1.51 billion. Over the next several months, with the help of the special master and with oversight by the various courts, the PNC negotiated with Syngenta the terms of a final settlement agreement ("the Agreement"), which the parties executed on February 26, 2018.

The Agreement's terms include the following: In exchange for releases of claims based on the sale and marketing of Viptera and Duracade, Syngenta will pay a total of $1.51 billion, with two initial deposits totaling $400 million and the remainder deposited

within 30 days after final court approval (or by April 1, 2019, if later).  Syngenta has no right of reversion of any of that amount.  The Agreement is contingent on certification of a nationwide settlement class, consisting of four subclasses generally consisting of corn producers who did not purchase Viptera or Duracade; corn producers who did purchase one of those products; grain handling facilities (except for certain excluded exporters); and ethanol producers.  The Agreement sets out the allocation of the settlement fund among the members of the four subclasses; a claims procedure; an opt-out procedure; and a notice plan.

After execution of the Agreement and with leave of the Court, plaintiffs filed a fourth amended master class action complaint.  By that complaint, plaintiffs seek certification of the same nationwide class and subclasses, asserting class claims based on the federal Lanham Act and certain Minnesota statutes.  In addition and in the alternative, plaintiffs also assert negligence and other state-law causes of action, on behalf of statewide classes, under the laws of various states.

Through appointed lead counsel, plaintiffs now move for preliminary approval of the Agreement and for the following additional relief:  provisional certification of settlement class and subclasses; appointment of representative plaintiffs for the subclasses; appointment of class counsel; preliminary approval of settlement and claims procedures and the notice plan, and permission to disseminate the notice; appointment of the notice and claims administrator; appointment of special masters to oversee the settlement and claims procedures; and the imposition of particular deadlines and a setting for the hearing on final approval of the settlement.

3

Prior to plaintiffs' filing of the motion for preliminary settlement approval, Toups filed a motion seeking the following relief:  delay of consideration of the motion for preliminary approval; appointment to the PNC; and discovery of the term sheet and other information.  Toups claims in the motion to represent over 9,000 individual producer plaintiffs and to have filed the most individual producer cases in the federal MDL.  Toups also filed a response in opposition to the motion for preliminary approval (in which the Hossley-Embry plaintiffs joined).  No other party has opposed the motion for preliminary approval.

> B.    *Preliminary Approval Standards*

Under Rule 23, a class action settlement may be approved by the Court only upon a finding that it is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2).

> In deciding whether to approve a class settlement, a district court considers whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*See Tenille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (internal quotation and citation omitted).

Another judge in this district has set forth the standards for preliminary approval, relying in part on the *Newberg* treatise on class actions:

> Because preliminary approval is just the first step of the approval process, courts apply a less stringent standard than that at final approval.  District courts have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time.  The general rule is that a court will grant preliminary approval where the proposed

settlement is neither illegal nor collusive and is within the range of possible approval. While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.

*See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 WL 1645798, at *4 (D. Kan. Apr. 14, 2015) (internal quotations and citations omitted) (citing, *inter alia*, William B. Rubenstein, *Newberg on Class Actions* § 13.10 (5th ed.)). The Court agrees that those standards should govern consideration of the pending motion.

The Court concludes that the standards for preliminary approval of the settlement have been met easily in this case. There is no suggestion of illegality or collusion here. The settlement negotiation was overseen by special masters, who have confirmed that the parties negotiated at arm's length. This litigation has been hotly contested in this Court and in other courts by experienced and expert counsel with significant resources, which litigation included discovery, dispositive and other substantive motions, and one class action trial in this Court (and the start to another trial in Minnesota). The factual issues remain disputed and contested, and important legal issues remain disputed (including, on appeal, the existence of a legal duty, issues of causation, and issues of damages). The amount of the settlement ($1.51 billion) is very large in an absolute sense, and it represents a significant percentage of the actual nationwide damages alleged by the MDL plaintiffs' experts.[3] Although the plaintiffs prevailed in the first trial that verdict is subject to posttrial review and appeal, and given the disputed nature of the factual and legal issues, other

---

[3] For instance, the jury awarded the Kansas class of non-purchaser producers $217,700,000, based on the experts' testimony, and plaintiffs' counsel have estimated Kansas corn production at roughly ten percent of the total U.S. production.

plaintiffs face a significant risk of little or no recovery in future trials; therefore, it is reasonable to believe that the immediate recovery of such a substantial sum is more valuable than the mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future.  Counsel for plaintiffs and for Syngenta believe the settlement to be fair.  Thus, the settlement is clearly within the range of settlements that could be approved by the Court.

Plaintiffs also seek in this motion provisional certification of the settlement class and subclasses.  In order for such classes to be certified, the usual requirements of Rule 23 must be met, except that trial management issues need not be considered.  *See Nieberding*, 2015 WL 164798, at *2 (citing authorities).  Although generally the requirements of the rule (including avoiding overbroad class definitions) must be given "undiluted, even heightened" attention in the settlement context, such heightened scrutiny is unnecessary if a class had already been certified before settlement.  *See id.* at *2-3 (citing authorities).  In this case, the Court previously certified a nationwide Lanham Act class and statewide classes asserting negligence and other state-law claims.  The proposed settlement classes go beyond those previously-certified classes, but the proposed classes are not overbroad, as each subclass group has asserted related claims against Syngenta.

For the same reasons stated by plaintiffs in their supporting brief, the Court concludes that the requirements of Rule 23 are satisfied here for each of the proposed subclasses (producers who did not purchase Viptera or Duracade, producers who did, grain handlers, ethanol producers).  The class members are numerous--corn producers number in the thousands, and plaintiffs estimate there to be over 1,500 grain handlers and over 180

ethanol producers. The same common questions of fact and law identified by the Court in its previous certification order may be found here as well, and the proposed plaintiff representatives are typical and adequate. As confirmed by the trial of the Kansas class claims, the common questions predominate, and class treatment is superior to individual treatment (especially in this settlement context).

### C.  *Alleged Violation of the PNC Appointment Order*

In his motion, Toups has requested that the Court delay consideration of preliminary approval, appoint a representative to the PNC, and compel the production of certain documents and information, including the settlement term sheet, drafts of the settlement agreement, and any side deals. This motion was filed before plaintiffs filed the motion for preliminary approval, however, and Toups has now abandoned these particular requests for relief---in his reply brief and orally at the hearing, Toups requested only that preliminary settlement approval be denied and that the term sheet be enforced by the Court. Moreover, Toups has not shown that he is entitled to the relief sought in the motion. First, Toups's arguments against the settlement have been considered in the context of the preliminary approval motion; thus, there is no basis to delay that consideration. Second, Toups seeks appointment to the PNC, but that group's work has been completed, and Toups has not renewed that request in his reply or at the hearing. Toups does not argue that there should be more negotiating, but only argues that the term sheet (instead of the Agreement) should be enforced. Moreover, the Court appointed the members of the PNC; the PNC included attorneys to represent the interests of those, like Toups, with individual plaintiff clients; and the PNC was successful, negotiating a $1.51 billion settlement (a settlement

7

amount of which Toups expressly approves). Thus, there is no basis to add a representative to the now-unnecessary PNC. Third, there is no basis to order the production of documents. Toups has now received a copy of the term sheet; confidentiality in the negotiating process was important to the success of that process; Toups has not established the relevance of any prior drafts of the Agreement; and there is no evidence of any collusion in the negotiation.

Toups's primary argument is that he could not obtain information from the special master and PNC, and that the PNC therefore violated the provision in the Court's appointment order that required it to confer with other plaintiffs' counsel to ensure adequate representation of their interests. Again, however, confidentiality was important and reasonable to achieve a successful negotiation, and the Court did not intend by its order that the PNC provide all other plaintiffs' counsel with details concerning the particular terms being negotiated. In addition, the Court agrees with plaintiffs that Toups should have raised any such issue with the Court as soon as his requests for information were rebuffed and this grievance therefore arose.

Finally, even if there were a technical violation of the Court's appointment order because of a failure to confer, Toups has not explained why such a violation would justify denial of preliminary approval of the proposed settlement in the absence of some prejudice, namely a deficiency in the eventual settlement agreement. Toups's particular objections to the settlement agreement are addressed and rejected below.

D.   *Breach of the Term Sheet and Jurisdiction Over Individual Plaintiffs*

Toups argues that the Agreement violates the earlier term sheet executed by the negotiating parties. Toups thus appears to argue that the settlement should not be approved for that reason. Toups points in particular to the term sheet's two-pronged settlement structure, which contemplated separate settlement agreements (with separate claims procedures and separate administering courts) for class action plaintiffs and so-called individual plaintiffs. Toups notes that the term sheet provided that the parties would negotiate in good faith to finalize formal settlement documents "consistent with this Term Sheet," and he argues that because the final Agreement is not consistent with the term sheet's two-pronged approach, the term sheet's consistency provision was violated.

The Court rejects this argument. The non-binding nature of the term sheet is clear from its terms. The term sheet explicitly provided that it "must be superseded by more definitive written settlement agreements ('Agreements') executed by all Parties, which shall control over, supersede, and replace this Term Sheet," and that "[f]inal settlement is contingent upon agreement on all terms and conditions in, and execution of, the Agreements." Counsel did agree in the term sheet to negotiate in good faith the two separate agreements, and the parties agreed to execute two agreements, but those agreements "shall not be binding" until court approval. Moreover, the term sheet provided: "In the event the Parties are unable to timely agree to settlement agreements that are satisfactory to Defendant and the Plaintiffs' Negotiating Committee, either party shall have the option to terminate this settlement." This language underscores the non-binding nature of this document. The preliminary and non-binding nature of the term sheet is further demonstrated by the absence of many material terms, including the fundamental matter of

the allocation of the settlement amount among the different kinds of plaintiffs. *See, e.g.,* *Phillips & Easton Supply Co., Inc. v. Eleanor Int'l, Inc.*, 212 Kan. 730, 734 (1973) (under Kansas law, a binding contract requires a meeting of minds on all essential terms, and an agreement to make a contract in the future is generally not binding "unless all the essential terms and conditions are agreed upon and nothing essential to complete it is left to future negotiations").[4]   In sum, the Court concludes that the term sheet was not a binding agreement and was superseded by the eventual Agreement.[5]   Thus, the fact that the term sheet contemplated a different final structure does not provide a basis to deny preliminary approval.

Toups suggests that having a two-pronged settlement structure would be superior, at least for individual plaintiffs.  Toups has not established, however, that the Agreement's one-prong approach is patently unreasonable or unfair.  Plaintiffs have reasonably argued that a single-prong approach made the most sense to the negotiating parties because the final settlement quite reasonably gives the same recovery to all producers (whether or not they have filed individual suits), and plaintiffs dispute that the alternative approach would save in administrative costs.  The structure of the Agreement falls within the range of acceptable structures and thus meets the standard for preliminary approval at this stage.

---

[4] Kansas law is cited as exemplary of black-letter contract law applied throughout the United States.

[5] Of course, even if the term sheet were an enforceable agreement when viewed in isolation, it is black-letter law that parties to a contract are always free mutually to modify, rescind, or replace their existing agreement.

Toups also argues that the Court lacks jurisdiction over the individual plaintiffs. As a general matter, reasonable opt out procedures comport with due process, and a court may therefore exercise jurisdiction over absent class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Toups seems to argue that the term sheet divested this Court of jurisdiction over individual plaintiffs by virtue of its provisions establishing that this Court would have exclusive and continuing jurisdiction over the class settlement while a Texas state court would have exclusive and continuing jurisdiction over the individual plaintiffs and their settlement. Again, however, the term sheet is not a binding agreement, and it was superseded at any rate by the final Agreement. The term sheet did not divest this Court of its jurisdiction over individual plaintiffs, which arises from the new class definitions.

Toups also suggests that that Court does not have jurisdiction over plaintiffs who previously opted out, although he has not cited any authority for that proposition. A newly amended master complaint has been filed, with new class definitions, and if the Court certifies a class that includes a plaintiff, that plaintiff is subject to the class action procedure. Toups argues that previous opt-outs should not have to opt out again, but such a requirement is reasonable because it allows such plaintiffs a second chance to participate in the class. Rule 23 provides that a court may deny a settlement that does not provide an additional opt-out period (to allow those who declined to opt out before to do so at settlement). *See* Fed. R. Civ. P. 23(e)(4). Similarly, it is reasonable to give previous opt-outs the chance to reconsider now that there is the opportunity to participate in an actual settlement. Such an opportunity is especially important in light of the possible incentive

11

of some plaintiffs' counsel to encourage clients to opt out. Finally, in the end, there can be no prejudice, as any dissatisfied class member will be able to opt out of the settlement class. Thus, Toups has not established a basis to deny preliminary approval.

### E.   *Nationwide Settlement Class and Lack of Choice-of-Law Analysis*

Toups argues that preliminary approval should be denied and a nationwide class should not be certified because plaintiffs have not conducted a choice-of-law analysis comparing the law of the various states of class members' residence. Toups relies solely on a recent Ninth Circuit case, *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). In that case, the court held that the district court had abused its discretion in certifying a nationwide settlement class without conducting a choice-of-law analysis. The district court had previously denied certification prior to settlement. The plaintiffs had asserted claims under California law, and the Ninth Circuit held that the district court should have determined either that California law could apply to non-California residents or that differences in the law of the various applicable states would not predominate. The court rejected the district court's conclusion that such an analysis was unnecessary for purposes of a settlement class. *See id.*

The *Hyundai* case does not provide a basis for denial of preliminary approval here. The main point of that case is that the requirements of Rule 23, including the predominance requirement, must be satisfied. In this case, there are no material differences in applicable state law because, as set forth in the recently-filed amended master complaint, nationwide class claims are asserted under the federal Lanham Act and Minnesota statutes. Thus, the

sole case cited by Toups does not provide a basis to find a lack of predominance in the present case.

Toups argues that plaintiffs "implicitly concede[] that no nationwide litigation class could be obtained when they opted for discreet [*sic*] single state classes and a nationwide class solely on a Lanham Act claim that has since been dismissed." Thus, Toups appears to suggest (without citation to authority) that a nationwide Lanham Act class could not be certified now because the Court granted summary judgment in favor of Syngenta against the previously-certified nationwide Lanham Act class. As plaintiffs note, however, the merits of a particular claim are irrelevant to the class certification issue. *See Finberg v. Sullivan*, 634 F.2d 50, 64 (3rd Cir. 1980) (citing cases). In *Finberg*, for example, the court held that a claim's lack of merit did not provide a basis for denial of class certification for that claim, including because the claim's merit could be litigated on appeal. *See id.* In this case, the Court rejected the Lanham Act claim at summary judgment for lack of sufficient evidence, but plaintiffs would be entitled to appeal that ruling and the procedural rulings that led to it. The question for class certification purposes is whether the Rule 23 requirements, including predominance, have been met. The Court answered that question in the affirmative when it originally certified a nationwide Lanham Act claim, and Toups has not suggested any reason why such a claim is not amenable to class treatment at this time. Nor has Toups addressed the nationwide class claim under the Minnesota statutes,

13

and, again, the fact that the Court rejected such claims as asserted by non-Minnesota residents is immaterial to the question of class certification.[6]

The Court concludes that the requirements for certification of a nationwide settlement class have been satisfied here. Therefore, it grants the motion for certification, the terms of which will be set forth in the Court's separate order concerning preliminary approval.

### F.   *Fairness to Individual Plaintiffs*

Toups also opposes preliminary approval on the basis of his argument that the settlement would result in an unfair economic disadvantage to the "individual plaintiffs" group, because those plaintiffs who filed their own lawsuits will have their recovery reduced not only by an award of class-wide attorney fees (paid from the settlement fund), but also by their attorney fee obligations to their own attorneys who filed their individual suits. Toups argues that such plaintiffs have had to do more work in filing their own cases, completing Plaintiff Fact Sheets, and obtaining Form 578s and other documents.

The Court rejects this argument. Many class members who did not file individual suits may have retained counsel, and the amount of work performed by attorneys for individual plaintiffs will have varied greatly. Therefore, it could certainly be reasonable (within the range of reasonable settlements) to treat all class members the same for purposes of recovery, whether or not they filed their own suits. In addition, any such

---

[6] Indeed, in the Minnesota state-court MDL, the court disagreed, ruling that some non-residents *could* assert claims under the Minnesota statutes.

argument may be made as an objection to final approval or in connection with attorney fee applications.

G.   <u>Amount of Attorney Fees</u>

The proposed class notice states that settlement class counsel will seek "up to one-third of the settlement fund" for fees and expenses, and Toups argues that an award of fees of one-third of the fund would be too high. The Court agrees with plaintiffs, however, that an argument concerning the possible fee award, which will be determined separately by the Court at a future time after the filing of a particularized request, is premature, and does not provide a basis for denial of preliminary approval.

H.   <u>Claims Procedure</u>

Toups argues that preliminary approval should be denied because of the proposed claims process. Specifically, Toups argues that the process will suppress the filing of claims and increase administrative costs for two reasons: because a "wet ink" signature is required by each claimant, and a claimant's attorney should be permitted to submit the form; and because claimants need not submit their own Form 578s, which creates a risk of incorrect information from the USDA and which may result in unnecessary administrative costs in obtaining Form 578s for farmers whose attorneys have already obtained those forms.

The Court rejects this argument. Toups is mistaken in arguing that the Agreement requires a "wet ink" signature, as it provides also for electronic signature. Moreover, claimants are *relieved* of a burden (which will encourage *greater* participation) by not having to submit their own Form 578s (unless necessary to their claims). Finally, although

15

Toups does not raise the issue, the Court concludes that the requirement of a signature by the claimant (and not merely by her attorney) is reasonable.

> I.    *Opt-Out Procedure*

Toups objects to preliminary approval on the basis that the opt-out procedure is too onerous. Toups does not explain how it is too onerous, however, except by reference to the prohibitions against mass opt-outs and opt-outs submitted by attorneys instead of the class members themselves. The Court has already rejected this argument once, in approving class notice previously. At that time, the Court stated:

> [T]he Court finds that the requirement, to which some objections were made, that the putative class members who wish to opt out of the class must personally sign a statement to that effect, either individually or on behalf of an affected entity, is permissible, indeed commonplace, in litigation of this kind, and that it is prudent to include it in this case. The record reflects strongly held disagreements between counsel for some putative class members and the court's appointed leadership counsel about how litigation against the Syngenta defendants should be handled. Moreover, economic incentives exist for counsel who are not part of the leadership to procure opt outs in order to pursue a course in which those counsel might be better situated to earn a fee. Much information has been disseminated to putative class members in an effort to influence their decisions, some of which is at least arguably inaccurate, which reflects those counsels' zeal. To ensure that those who actually may possess a potential claim are in fact the decision-makers, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt out.

(Citation omitted.) The same rationale holds now, and the Court thus finds that it is reasonable and appropriate, especially in this case, to require those opting out to sign the forms.

Toups also makes reference again to the requirement that previous opt-outs do so again. As discussed above, it is reasonable to give the previous opt-outs the opportunity to reconsider and to participate in the settlement class.

### J.    *Editorial Control Over Websites*

Finally, Toups objects to the following provision in the settlement agreement:

> Settlement Class counsel, Subclass Counsel, and Plaintiffs' Negotiating Committee agree that as part of the Motion for Preliminary Approval, they shall seek an order directing that all websites that seek to attract, advise, inform or otherwise provide information or solicitation of any Class Member shall be taken down or modified to conform exactly to the information contained in the Court-approved Notice Plan and shall link to the Court-approved website at www.CornSeedSettlement.com. The Parties agree also to seek similar orders, if necessary, in the Related Actions. No false or misleading statements in any form regarding the Settlement shall be permitted.

Toups argues that this provision gives plaintiffs the unilateral power to control and edit websites in violation of the First Amendment, and that there is no evidence of false or misleading statements on websites.

The Court concludes that this objection is premature and does not provide a basis for denial of preliminary approval. This provision merely directs counsel to seek orders from the Court, and the Court will ultimately decide if any such requests have merit. No such request has yet been made by plaintiffs' counsel, however.

In summary, the proposed settlement falls within the range of reasonable settlements that the Court could approve at a final settlement hearing, and the Court finds Toups's objections to preliminary approval to lack merit. Accordingly, the Court grants the motion

for preliminary approval, the specific terms of which shall be set forth in the Court's separate order.

### K.  *Notice and Other Relief Requested*

No party has objected to plaintiffs' proposed notice plan or the content of the proposed notices.  The notice plan is extensive, calling for notice (and reminders) not only by direct mail, but also through press releases, media advertisements, industry publications, an internet website, a toll-free telephone number, and social media.  The Court has reviewed the content of the written notices, and it finds those notices (which Syngenta approved in the Agreement) to be fair and adequate.  The Court requires only one addition to the long-form notice attached as Exhibit 3 to the Agreement—the answer to Question 30 should include the following sentence at the end:  "Moreover, even if you have sent in a written objection, the Court may still decline to allow you to speak at the Fairness Hearing."

Plaintiffs have established that their proposed administrator is sufficiently experienced and can meet the demands of the notice and claims processes, and the Court therefore grants the request for that appointment.  The Court concludes that plaintiffs' proposed schedule, modified at the motion hearing, is reasonable, and the proposed dates will be incorporated in the Court's separate order.  The Court also grants plaintiffs' requests for appointment of the class counsel, class representatives, and special masters, as set forth in the Court's separate order.

## II.    Joint Motion to Stay and Enjoin (Doc. # 3512)

Plaintiffs and Syngenta jointly move to stay the MDL litigation, vacate all deadlines, and "enjoin all putative Settlement Class members from pursuing any related claims against Syngenta pending completion of the final approval process by the Court."

Toups has opposed this motion (and the Hossley-Embry plaintiffs have joined that opposition) on the basis of his arguments that preliminary approval should be denied and that, under the governing term sheet, the Texas state court will have jurisdiction over matters involving individual plaintiffs. The Court has rejected those arguments, however, and Toups has not identified any additional reason why this motion should not be granted in the event that preliminary approval is granted. No other party has opposed this motion.

The Court agrees that, once preliminary approval is granted, litigation in this MDL should be stayed with all deadlines vacated. The Court further agrees that litigation of related claims should be enjoined as requested by plaintiffs. Accordingly, the Court grants this motion, and the terms of the stay and injunction shall be set forth in a separate order issued by the Court.

## III.    Joint Motion to File Walk Away Agreement Under Seal (Doc. # 3508)

Plaintiffs and Syngenta jointly move for leave to file under seal (with restricted access) the walk away agreement that is part of the settlement agreement (which agreement sets thresholds for opt-outs that allow Syngenta to walk away from the settlement Agreement). Toups opposes the motion (and the Hossley-Embry plaintiffs join) as premature until there is a settlement agreement worthy of approval. The Court

preliminarily approves the settlement; accordingly, the Court grants this motion, and leave shall be granted by separate order of the Court.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for preliminary settlement approval and related relief (Doc. # 3506) is **granted**, and the Court will issue a separate order setting forth the particular terms of relief.

IT IS FURTHER ORDERED BY THE COURT THAT the motion by the Toups/Coffman plaintiffs for certain relief (Doc. # 3499), joined by the Hossley-Embry plaintiffs, is hereby **denied**.

IT IS FURTHER ORDERED THAT the parties' joint motion for a stay and injunction (Doc. # 3512) is hereby **granted**, and the Court will issue a separate order setting forth the particular terms of relief.

IT IS FURTHER ORDERED THAT the parties' joint motion for leave to file the walk away agreement under seal (Doc. # 3508) is hereby **granted**, and the Court will issue a separate order setting forth the particular terms of relief.

IT IS SO ORDERED.

Dated this 10th day of April, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge