## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, | ) ) ) | MDL No. 2591 |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates to All Cases <u>Except</u>: | ) ) | |
| *Louis Dreyfus Co. Grains Merchandising LLC v. Syngenta AG, et al.*, No. 16-2788 | ) ) ) ) | |
| *Trans Coastal Supply Co., Inc. v. Syngenta AG, et al.*, No. 14-2637 | ) ) ) | |
| *The Delong Co., Inc. v. Syngenta AG, et al.*, No. 17-2614 | ) ) ) | |
| *Agribase Int'l Inc. v. Syngenta AG, et al.*, No. 15-2279 | ) ) ) ) | |

## <u>MEMORANDUM AND ORDER</u>

In this multi-district litigation (MDL), by Memorandum and Order of December 7, 2018, after a hearing conducted on November 15, 2018, the Court granted final approval of a settlement agreement resolving claims against Syngenta[1] and certified a settlement class. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.). At that time, the Court also awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33, *see id.* at *11-16, which fees compensated for work for the benefit for the settlement class and which also were

---

[1] The Court refers to defendants in the MDL collectively as "Syngenta".

"intended to account for all contingent fee recoveries from payments to class members from the settlement fund," *see id.* at *11, 15. On November 15, 2018, after the final approval hearing (at which the Court had announced its intention to award one third of the settlement fund for attorney fees), the Court appointed Ellen Reisman as special master, pursuant to Fed. R. Civ. P. 23(h)(4), to review pending applications and to issue a report and recommendation "concerning the Court's initial allocation of its attorney fee award from the settlement fund; the reimbursement of expenses from the fund; and the Court's approval of any requests for service awards." The master filed her report and recommendation (R&R) on November 21, 2018 (Doc. # 3816). Pursuant to the Court's order, various attorneys filed timely objections to the R&R, and on December 17, 2018, the Court conducted a hearing on the R&R and the objections thereto. Also participating at the hearing were the Hon. David Herndon of the United States District Court for the Southern District of Illinois and the Hon. Laurie Miller of the District Court of Hennepin County, Minnesota.

As required by the settlement agreement, the Court has consulted with Judge Herndon and Judge Miller, and they have approved the rulings contained herein regarding the initial allocation of fees, expenses, and service awards, as evidenced by their signatures below. As more fully set forth below, the Court adopts the R&R in large part. The Court concludes that the pool for individually retained private attorneys (IRPAs) should be increased from the recommended percentage to 12 percent of the total fee award, and that the other three pools should be reduced slightly (Kansas pool to 49 percent, Minnesota pool to 23.5 percent, Illinois pool to 15.5 percent) to accommodate the IRPA increase. The

remaining modifications are set forth in more detail below. The following objections are thus **sustained in part** to the extent that the Court has altered the master's recommendations concerning the IRPA pool: Bassford Remele, P.A. (Doc. # 3823); Hossley-Embry (Doc. # 3825); Paul Byrd Law Firm, PLLC (Doc. # 3826); Toups / Coffman (Doc. # 3827); Clark / Phipps Group (Doc. # 3832); The Hecker Law Group (Doc. # 3833); Watts Guerra LLP (Doc. # 3836); Shields Law Group, LLC (Doc. # 3840); and Kirk Law Firm (Doc. # 3842). Those objections are otherwise **overruled**. The objection by Heninger Garrison Davis, LLC (Doc. # 3835) is **overruled** in its entirety. Johnson Becker, PLLC's request for clarification (Doc. # 3838) is **granted**, as set forth below.[2]

## I.     Report and Recommendation and Objections Thereto

In the R&R, the special master summarizes the history of this litigation against Syngenta, which took place primarily on three fronts: in the federal court MDL in the District of Kansas, in the consolidated Minnesota state court proceeding, and in federal court in the Southern District of Illinois. As a part of that summary, the R&R contains the master's findings regarding the relative contributions to the ultimate settlement of the

---

[2] Objectors Rademacher and Roberts, who objected to final approval of the settlement, have filed a notice of appeal. They purport to appeal from the Court's rulings from the final approval hearing and any subsequent orders regarding the settlement, attorney fees, expenses, awards, objections, and appeal bonds. Of course, the Court's awards of attorney fees are not final, and to the extent that there is an appealable judgment concerning approval of the settlement, the awards discussed herein are collateral matters that may yet be addressed by the Court despite the notice of appeal. *See McKissick v. Yuen*, 618 F.3d 1177, 1197 (10th Cir. 2010). These appellant objectors have not argued that the Court may not proceed with the instant rulings.

attorneys litigating on those three fronts, based in large part on the master's experience overseeing and facilitating settlement negotiations and implementation of the final settlement.

The master recommends a framework for allocating the $503,333,333.33 award of attorney fees to all attorneys whose efforts contributed to the settlement class's ultimate recovery, as follows. All attorneys who have filed fee applications are assigned to one of three common benefit pools – Kansas MDL, Minnesota state court, and Illinois federal court – based primarily on where they performed their common benefit work. Specified percentages of the total fee award are then allocated to those three pools, reflecting the relative contributions to the settlement class recovery by the attorneys in those pools (with further allocation within those three pools to be made in a subsequent procedure by the three courts separately). The master recommends the following such allocations: 50 percent to the Kansas pool, 24 percent to the Minnesota pool, and 16 percent to the Illinois pool. The master also recommends that the remaining 10 percent of the total fee award be allocated to a pool for individually retained private attorneys (IRPAs), who would share that allocation *pro rata* based on the ultimate recoveries by their claimant clients, subject to a 10 percent cap. These fee awards from the three common benefit pools and the IRPA pool would represent the entire amount paid to any attorneys for contingent fees with respect to this litigation, notwithstanding any client contracts or other agreements.

The master further recommends that certain standards be adopted for the approval of reasonable attorney expenses, which will be paid separately from the settlement fund (and not from the one-third attorney fee award). The master recommends that she make

final expense determinations after receiving and reviewing additional documentation. The master also recommends the approval of the service awards requested on behalf of various plaintiffs.

Ten objections to the R&R were filed by various attorneys, and those objections may be summarized as follows. Toups / Coffman argues that the entire allocation to attorneys should not be undertaken until claimant recoveries are known and that the allocation should be accomplished in one phase. Heninger Garrison Davis argues that the Illinois percentage should be increased. Clark / Phipps argues that the Illinois percentage is too small, that the Heninger group should not be placed in the Illinois pool, and that the IRPA percentage should be increased. Bassford Remele argues that some of the Illinois allocation should be shifted to the IRPA pool. Watts Guerra objects to the recommended framework and alternatively argues that the Minnesota and IRPA percentages should be increased. Hossley-Embry argues that common-benefit time should be broadly construed and that either the IRPA pool allocation should be increased or client contingent fee contracts should be honored. Paul Byrd, Hecker Law Group, Shields Law Group, and Kirk Law Firm argue that the IRPA percentage is too low or that client contracts should be honored.

Finally, Johnson Becker filed a request for clarification of the R&R with respect to allocations for attorneys who performed common benefit work in more than one jurisdiction.

## II. **Allocation of Attorney Fees**

### A. *Applicable Legal Authority*

The Court referred to the special master the issues addressed in the R&R pursuant to Rule 23, which allows for such a referral as provided in Rule 54, which in turn directs the Court to Rule 53. *See* Fed. R. Civ. P. 23(h)(4), 54(d)(2)(D). Rule 53 sets the Court's standard of review: in the absence of a stipulation by the parties, the Court reviews de novo all objections to the special master's factual findings and legal conclusions.

In its final approval order, the Court discussed its authority to award attorney fees from the settlement fund. *See In re Syngenta*, 2018 WL 6436074, at *11. Specifically, the Court noted that in a class action, pursuant to Fed. R. Civ. P. 23(h), it may award fees as authorized by law, and that the settlement agreement and the common fund doctrine authorized an award of reasonable fees in this case for all work that contributed to the settlement, in an amount warranted by consideration of the so-called *Johnson* factors. *See id.* at *11-12.

In her report, the special master has recommended an approach that would award fees to class counsel, designated lead counsel, other attorneys who performed work that benefited the entire litigation, and attorneys who filed cases on behalf of individual clients. The master states that her approach in this hybrid case involving a class settlement of litigation involving class and individual claims is derived from that used by the Tenth Circuit in *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), and by the Eastern District of Pennsylvania in *In re National Football League Players' Concussion Injury Litigation (NFL)*, 2018 WL 1658808 (E.D Pa. Apr. 5, 2018), *appeals filed* (3d Cir.). The Court agrees

that an award of fees from the settlement fund to both attorneys who performed common benefit work and attorneys who filed individual cases is permitted under Tenth Circuit law. *See Gottlieb*, 43 F.3d at 489 (requiring fee awards both to class counsel and to other individual counsel). No attorney has argued, either in applying for fees or in objecting to the R&R, that the Court may not adopt such an approach.

The special master also recommends that the Court effectively modify individual contingent fee contracts relating to this litigation to limit any contingent recovery by attorneys to the fees awarded and allocated by the Court in this order. After a thorough discussion of the law, the master concludes that the Court has the authority to impose such a limitation. Significantly, although Watts Guerra and a few other attorney applicants questioned whether the Court has such authority in their briefs in support of their fee applications, no attorney has objected to this conclusion in the R&R.[3] The Court is persuaded by the master's analysis in the R&R, and it agrees that it possesses the requisite authority to modify contingent fee contracts.

More specifically, because the Court has certified a nationwide settlement class, with adequate class notice and an opportunity to opt out, the requirements of due process are satisfied here, and the Court may exercise personal jurisdiction over class members and their counsel. *See In re Diet Drugs Products Liability Litig.*, 282 F.3d 220, 230-31 (3d Cir.

---

[3] In one footnote in its objection to the R&R, Watts Guerra takes issue with the master's conclusion that federal law governs whether the Court may exercise its inherent authority to modify contingent fee contracts. Watts Guerra does not directly argue in the objection, however, that this Court lacks the necessary authority. It instead directs its arguments in the objection to the amount of the IRPA allocation.

2002). Moreover, the settlement agreement authorizes the Court's continuing jurisdiction over the settlement and settlement fund, and the All Writs Act, 28 U.S.C. § 1651, grants the Court authority to issue orders necessary to aid that jurisdiction. *See Diet Drugs*, 282 F.3d at 233-39.

The Court also concludes that it has the legal and equitable authority to determine the reasonableness of and modify contingent fee contracts relating to this litigation and settlement class. As more fully set forth in the master's legal analysis in the R&R, the Court may exercise its inherent authority to supervise attorneys appearing before it, to act as a fiduciary for and protect the interests of the settlement class members, and to ensure that the integrity of the judicial process is not undermined by the recovery of unreasonable attorney fees. In mass actions, courts have routinely reviewed and capped attorney fees. *See In re World Trade Center Disaster Site Litig.*, 754 F.3d 114, 126 (2d Cir. 2014). The special master cites a number of such cases in her R&R. *See* Report and Recommendation of Nov. 21, 2018 (Doc. # 3816) at 46-54. In *NFL*, the court adopted the conclusion of Professor William B. Rubinstein, who had submitted an expert report, that a court presiding over a class action or MDL has the authority to review individual fee awards and to impose a cap on contingent fees. *See NFL*, 2018 WL 1658808, at *2. The special master in the present case also relied on Professor Rubinstein's report in *NFL*, and that report cites a number of cases supporting his conclusion that "there is no doubt that [the *NFL* court] possesses the authority to assess the reasonableness of each class member's contingent fee contract with his individually retained attorney." *See* Expert Report of Professor William B. Rubinstein (Doc. # 9526) at 14-19, *In re NFL*, No. 12-md-2323 (E.D. Pa.). Similarly,

in the present action, Professor Robert H. Klonoff has submitted an expert declaration in which he cites legal authority and concludes that the Court has the authority to review the reasonableness of contingent fees and impose caps. *See* Supplemental Declaration of Professor Robert H. Klonoff (Doc. # 3693-4) at 5-13. The Court is confident that it does possess the authority to limit contingent fee recoveries by IRPAs in this case, as many courts have done in other mass actions.

A few points merit comment concerning the Court's authority to regulate contingent fee recovery in this case. As the master points out in the R&R, the settlement agreement, in granting the Court jurisdiction over attorney fee liens, contemplated judicial review of attorneys' contingent fee arrangements. Thus, the Court's authority to act also arises from the settlement agreement. *See, e.g.*, *In re Vioxx Products Liability Litig.*, 574 F. Supp. 2d 606, 614 (E.D. La. 2008) (settlement agreement granted court express authority to review contingent fee contracts for reasonableness).

The Court notes that Watts Guerra supported its fee application with an expert report by five law professors who were "doubtful that any inherent authority to rewrite fee agreements exists here." *See* Report of Miller, et al. (Doc. # 3580-2) at 18. The Court rejects that argument. Those professors support that statement only by citing to one state court case from Texas (because Watts Guerra's fee contracts are governed by Texas law), two Minnesota state court cases, and cases from the Supreme Court noting that courts should exercise their inherent power with discretion; those cases do not create any doubt about the Court's authority in this regard, however. The Supreme Court has not indicated that a court may not exercise its inherent authority in this way, and federal courts have

routinely concluded that they may do so. As Professor Klonoff points out, the cited state court cases do not actually support the position that a court may not exercise its inherent authority to interfere with attorney fee contracts. *See* Klonoff Report, *supra*, at 10-11.[4] Moreover, this Court necessarily applies federal law, not state law, in exercising its inherent authority in this way. *See Dunn v. H.K Porter Co.*, 602 F.2d 1105, 1110 n.8 (3d Cir. 1979) (federal law applies to court's act in supervising members of its bar and in meeting obligations of Fed. R. Civ. P. 23).[5]

In overseeing the conduct of the attorneys that practice before it, this Court has adopted the Kansas Rules of Professional Conduct. *See* D. Kan. Rule 86.1(a). Those rules require attorney fees to be reasonable, and they authorize courts to modify unreasonable

---

[4] In the Texas case, the court discussed a general rule favoring the enforcement of fee agreements, but it noted a number of exceptions that would apply here, including class actions, common funds, and breach of fiduciary duty. *See In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 436-39 (Tex. Ct. App. 2000). In one cited Minnesota case, the court actually noted that an unreasonable contingent fee contract may not be valid. *See Holt v. Swenson*, 90 N.W.2d 724, 727-28 (Minn. 1958). In the other Minnesota case, the court did exercise its inherent authority to review attorney fees. *See Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 140-42 (Minn. 1999). The five professors have not cited any case in which a court held that it may not exercise its inherent authority in this manner.

[5] Watts Guerra states in a footnote in its objection to the R&R that the special master erred in concluding that federal law applies in this context. Watts Guerra argues that the Tenth Circuit held otherwise in *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2017), *cert. denied*, 2018 WL 4283334 (U.S. Nov. 13, 2018). In that case, however, the court merely held that in a diversity case involving a common-fund fee award, state law provides the method for determining the amount of the award. The court did *not* hold that a federal court may not exercise its inherent authority to limit contingent fees. Moreover, the present case is not properly considered a diversity case for purposes of the *Erie* doctrine because the settlement class was certified on the basis of claims under the federal Lanham Act.

fee contracts. *See* Kan. Rules Prof. Conduct 1.5(a), (e). Those rules thus support the Court's exercise of authority here.

Watts Guerra's five professors also cite to the Restatement (Third) of the Law Governing Lawyers, in arguing that Watts Guerra's contingent fee contracts did not become unreasonable because of an uncontemplated change in circumstances. *See* Report of Miller, et al., *supra*, at 19-21. The Restatement states unequivocally, however, that a lawyer may not charge an unreasonable fee. *See* Restatement (Third) of the Law Governing Lawyers § 34. The master concluded in the R&R that it would be unreasonable for IRPAs to collect on their contingent fee contracts without limitation in this case, and as discussed below, the Court agrees.[6]

Finally, the Court rejects Watts Guerra's argument that the Rules Enabling Act prohibits Fed. R. Civ. P. 23 from abrogating contract rights under state law. Rule 23 does not authorize the Court's action here; rather, Rule 23 provides that a court may award fees as authorized by law, and the limitation of contingent fee recovery in this case is authorized by the Court's inherent authority and the settlement agreement itself.

> B. *General Approach*

The Court adopts the special master's general approach to the allocation of the attorney fee award, by which the award is first allocated among the three common benefit pools and the IRPA pool. The Court agrees with the master that this is the most reasonable

---

[6] Professor Klonoff notes that one of the five professors, Brian Fitzpatrick, has previously written that federal courts have long believed that they have inherent power to regulate contingent fees. *See* Klonoff Report, *supra*, at 10.

and appropriate way to allocate the fee award, for the reasons set forth in the R&R, particularly given the hybrid nature of this litigation, which involved both class and individual claims. Creation of the IRPA pool allows the Court to recognize the contribution to the ultimate recovery made by the very existence of the huge number of individual claims, while at the same time limiting fees for those attorneys to a reasonable amount. Creation of the three common benefit pools allows for a reasonable allocation of the remainder of the fee award based on the attorneys' relative contributions to the recovery, including the actual litigation of the claims against Syngenta and the negotiation and defense of the settlement. Although there was overlap among jurisdictions, particularly because of the great of amount of coordination among plaintiffs' counsel, the fact that the litigation took place primarily on the three discrete jurisdictional fronts allows the remainder to be divided reasonably into the three pools based on a comparison of the relative contributions to the recovery by the attorneys placed in those pools. This framework further allows the court most familiar with the work on a particular front to allocate fees to particular attorneys and firms within that court's common benefit pool. Although the task of allocation is necessarily a difficult one, the framework recommended by the special master most ably facilitates a reasonable allocation.

Accordingly, the Court rejects Watts Guerra's argument in favor of a direct award to it of a fixed percentage of the attorney fee award. Similarly, the Court rejects the argument by Toups / Coffman in favor of a single-stage approach undertaken after the claimants' recoveries are determined. No other attorney has objected to the recommended

two-stage approach, and the Court is persuaded that the attorney fee award may be allocated reasonably and appropriately among the pools at this time.[7]

        *C.*        <u>*IRPA Pool*</u>

      1.      First, the Court agrees with the special master that it is appropriate to include an allocation to an IRPA pool from the total award of fees, for the reasons set forth in the R&R. The sheer number of individual suits filed against Syngenta created enormous pressure on Syngenta, and thus the mere existence of the IRPAs and their clients contributed in a meaningful way to the ultimate resolution that benefits the entire settlement class. That contribution merits an award from the common fund. The Court finds persuasive these other reasons cited by the master in her R&R: payment of IRPA fees from the attorney fee award is a concept reflected in the settlement agreement; such a payment is necessary to achieve the settlement's principle of providing similar recoveries to similarly-situated plaintiffs (regardless of whether they retained their own counsel); and that principle and its implementation were essential to achieving the settlement (including because mass opt-outs could have doomed the settlement otherwise).

      2.      The Court generally agrees with the special master concerning the relative contribution to the settlement class's recovery by the IRPAs. The Court (after a de novo

---

[7] In its objection, Toups / Coffman does not take issue with any other recommendation in the R&R, as it states that it cannot know whether it objects to its ultimate award of fees until that award has been determined. Of course, it will have another opportunity to object once its common benefit pool allocation is proposed in the next phase. Toups / Coffman does object to the R&R's negative characterization of some of its conduct in this litigation, but any such objection is overruled, as the Court has not considered such conduct in determining these allocations.

review) adopts the factual findings in the R&R concerning the relative weight of the contributions by IRPAs and by attorneys performing common benefit work. Those findings are persuasive in light of Ms. Reisman's experience as special master over a long period of time overseeing negotiation and all other aspects of the settlement through final approval.

As a preliminary matter, the Court rejects some objectors' arguments that any award to IRPAs should be governed by joint prosecution agreements (JPAs) executed among some plaintiffs' attorneys or Common Benefit Orders (CBOs) issued by the courts. The R&R and the briefs of the MDL leadership address this issue at some length, and the Court agrees with their analysis. The JPAs do not govern for a number of reasons. First, the Court is not bound by a private agreement among attorneys. Second, the JPAs address the issue of fees that might be recovered in multiple separation litigations, and by their terms they do not apply to the present situation involving a nationwide settlement class. Third, the settlement agreement, which contemplates attorney fee determinations by the Court, expressly supersedes all other agreements. Similarly, the CBOs addressed the issue of assessments in the event of individual recoveries, and they do not apply to this recovery by a settlement class. For instance, this Court's CBO of July 27, 2015, expressly states that no such assessments will be made in the event of a class recovery, in which event fees will be awarded by the Court. Thus, the Court is not bound by and gives no weight to the percentages contained in the JPAs and CBOs, which were intended for and addressed different circumstances. Any such objection to the R&R is hereby overruled.

Many objectors argue that IRPAs did enough work to justify a larger IRPA pool allocation than that recommended in the R&R. In particular, they take issue with the master's statement that "[m]ost IRPAs did little more than recruit clients and in some cases fill out PFSs [plaintiff fact sheets]." For instance, these objectors argue that the task of filling out PFSs, as ordered by the courts, involved a significant amount of work; that they devoted significant time communicating with their clients; that some IRPAs undertook their own investigations; and that they shepherded their clients through the claims process.

The Court agrees with the special master, however, that the *relative* contribution to the ultimate recovery, based on the mere existence of individual claims (the basis for any common fund allocation to the IRPA pool), is small when compared to the pools allocated to attorneys who performed work that benefitted the entire settlement class, and that such contribution is appropriately rewarded with an approximate contingent fee award of 10 percent. The time and expense incurred by IRPAs in recruiting clients does not contribute to the ultimate recovery and does not justify an increased contingent fee. The completion of PFSs is akin to the mere filing of individual complaints, and as addressed below, significant labor in completing PFSs may also warrant consideration for allocation from the three common benefit pools. These objectors stress their efforts at client communications, but the Court is not persuaded that post-retention communications with farmers is substantially more onerous than client communications in any other mass action involving consumers. Indeed, other than for purposes of completing PFSs, which the Court has already addressed, additional substantial communication was unnecessary unless a plaintiff was chosen as a bellwether plaintiff or was otherwise involved in discovery – in

which case, the attorney might seek fees from the common benefits pools. Finally, the claims process (which allowed for claims to be made online based on data provided by the government) was intended and proved to be quite simple and streamlined, as evidenced by the fact that more than half of the claimants were not represented by individual counsel. The key here is that the IRPAs were relieved of having to do any work to advance their clients' lawsuits or to add value to their claims. Again, if any attorney did engage in such work that could be said to benefit the overall litigation and recovery, the attorney's recovery would not necessarily be limited to the IRPA pool, as the attorney could also seek an allocation of fees from the common benefit pools.[8] Thus, the recommendation for an approximate contingent fee award of 10 percent for IRPAs who performed no common benefit work is reasonable and appropriate.

3. Watts Guerra and other objectors argue that such an IRPA pool allocation would be unprecedented, in the sense that larger effective contingent fee percentages have been permitted in other cases involving such caps, in which IRPAs shared total fees with common benefit counsel on a more equal basis than that recommended in the R&R. The present case must be decided on its particular facts, however, and as MDL leadership has explained in its briefs, the other cases cited by objectors may be distinguished on the basis of their unique facts and circumstances.

---

[8] In fact, some of the attorneys objecting to the IRPA pool percentage will also receive a large award of common benefit fees, which will substantially increase their effective contingent fee recovery.

For instance, the *NFL* case may be distinguished on a number of bases. That case settled relatively early, while the motion to dismiss was pending and prior to discovery or class certification or trial. Because the case involved personal injuries, class certification might have been problematic, which means that individual cases created more pressure on the defendant there than in the present case. Class counsel requested fees only in the amount of 11 percent of the settlement fund, and the court granted that request. The settlement was a claims-made settlement, which meant that the creation of the settlement fund itself depended on the claims process, which was complex in the sense that each claim required a medical diagnosis. *See generally NFL*, 2018 WL 1635648 (E.D. Pa. Apr. 5, 2018), *appeals filed* (3d Cir.); *NFL*, 2018 WL 1658808. For all these reasons, then, a lesser common benefit fee award and a greater IRPA contingent fee recovery was more appropriate in *NFL* than in this case.

*Vioxx* was also a personal injury case, and because there was no class settlement, plaintiffs were required to engage in a complicated opt-in process. In addition, by its terms the settlement could only proceed if at least 85 percent of eligible plaintiffs filed claims; thus, as in *NFL*, the claims process was key to the creation of the settlement fund. Indeed, the court in *Vioxx* noted that the settlement would not have been possible without the contribution of the individual contract attorneys. *See generally In re Vioxx Products Liability Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2009); *Vioxx*, 760 F. Supp. 2d 640 (E.D. La. 2010). In the present case, the claims process was simple and was not vital to the creation of the settlement fund, and class actions drove the litigation against Syngenta.

In the *Deepwater Horizon* case, common benefit counsel received all of the fees that they requested, and the court did not make any allocation between common benefit counsel and IRPAs. In addition, the court's contingent fee cap was 25 percent, but it made clear that IRPAs could charge only reasonable fees, which might be less than 25 percent in many cases in that litigation. *See In re Oil Spill by the Oil Rig Deepwater Horizon*, 2012 WL 2236737 (E.D. La. June 15, 2012). The Court has considered the particular circumstances of the present case and determined that the total amount of reasonable fees does not exceed the amount allocated to the IRPA pool, particularly because attorneys may also recover additional fees from the common benefit pools for work that actually benefited the entire settlement class.

In *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, an initial settlement was reached prior to the initial case management conference in the MDL, and common benefit counsel were awarded fees in the amount set forth in the settlement agreement. *See* 268 F. Supp. 2d 907 (N.D. Ohio 2003). Thus, it is not surprising that the common benefit counsel in that case received a lower fee award, as measured against the IRPAs' ultimate recovery, than in the present case, in which common benefit counsel drove the litigation over several years and in one case obtained a favorable verdict.

Finally, Watts Guerra claims that the present case most resembles the *Drywall* case, in which the fees recovered by common benefit counsel and IRPAs resulted in a 52/48 percent split of total fees recovered. That case too may be distinguished from the present litigation. In that case, it appears that common benefit counsel assisted individual counsel but did not necessarily dominate the litigation as in the present case. *See In re Chinese-*

*Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La. Jan. 31, 2018), Order and Reasons Setting Common Benefit Fees. Moreover, IRPAs were necessarily more involved in *Drywall* because they were required to oversee the remediation that constituted much of the relief achieved in the settlement.

The present case must be decided on its particular facts. The Court is persuaded that an approximate 10 percent contingent fee is reasonable and appropriate in this case for IRPAs who did not perform work (in addition to filing a case) that benefited the entire settlement class.

4. Watts Guerra argues that the R&R's math is wrong and that the IRPA pool allocation actually results in a contingent fee closer to 7 percent. In the R&R, the master reasons that an IRPA pool allocation of 10 percent of the total fee award approximates a 10 percent contingent fee as follows: approximately 950M may be available for distribution to the settlement class; less than 48 percent of claimants are represented by counsel; application of that same percentage to claimant bushels means that approximately 456M will be recovered by IRPA clients; and a 10 percent contingent fee would account for 45.6M of the 50.3M IRPA pool, with some leeway to accommodate a larger actual recovery by IRPA claimants.

Watts Guerra argues that this approach improperly uses the claimants' *net* recovery of 950M, and that use of the *gross* recovery of 1.51B yields a contingent fee of approximately 7 percent (which it argues is far too low a percentage). Of course, it is not unreasonable to use the plaintiffs' actual recovery (approximately 950M), which accounts for a method in which all costs and expenses (in this case, expenses paid in the form of a

fee award to other attorneys whose work led to the recovery) are deducted before the contingent fee percentage is applied to the resulting net amount. Indeed, as MDL leadership points out, Watts Guerra's own fee contracts require it to pay any expenses out of its own fee share. Here too the IRPAs have effectively been given a larger contingent fee percentage, but that gross award is decreased to account for the payment of common benefit fees.

In the end, of course, this is a matter of semantics, as the key is the amount that will reasonably compensate IRPAs for having asserted individual claims. The Court agrees with the special master that an effective 10 percent contingent fee for IRPAs (as determined on the basis of the clients' actual distribution from the settlement fund) is appropriate here.

The Court does agree with Watts Guerra and Toups / Coffman, however, that, for a different reason, the 10 percent allocation to the IRPA pool will likely fall short of an effective 10 percent contingent fee. These objectors argue that if 48 percent of claimants were represented by individual counsel, the eventual recovery by those represented claimants will likely prove to be a much higher percentage of the total recovery by all claimants, for the reason that the larger farming operations (with more bushels and thus with a larger recovery) are more likely to have retained counsel at a higher rate than farmers with smaller yields.[9] The Court agrees that it is likely that represented claimants will

---

[9] For example, Watts Guerra notes that at one time it was estimated that its clients represented 39 percent of all claims but also represented 49 percent of the corn harvest. In addition, a recent report by the claims administrator reveals that within subclass I, whose members will receive the largest recovery, approximately 54 percent of claimants are represented by counsel.

recover more than 50 percent of the total recovery by all claimants. Accordingly, in order to achieve a likely effective contingent fee closer to 10 percent, the Court increases the allocation recommended in the R&R by two points, and it allocates 12 percent of the total fee award to the IRPA pool.

In addition, in light of this modification, the Court does not accept the special master's recommendation that recovery by IRPAs be capped at 10 percent of their clients' recovery with distribution of any residual amount in the IRPA to attorneys performing common benefit work. The Court concludes that 12 percent of the total fee award represents a reasonable total amount of fees awarded to IRPAs (in addition to any awards from the common benefit pools), and thus the entire 12 percent allocated to the IRPA pool shall be distributed to IRPAs on a *pro rata* basis tied to the recovery by IRPA clients. Thus, effective contingent fees for IRPAs are not capped at at any particular percentage, but rather are limited only by the size of the IRPA pool. Hossley-Embry's objection relating to the recommended distribution of an IRPA residuum is thus sustained. Moreover, any objection to the amount recommended for allocation to the IRPA pool is hereby granted to the extent of these modifications by the Court to the master's recommended allocation.

5. The Court does intend that its fee award from the settlement fund cover all fees recovered by attorneys on contingent fee contracts relating to claims included in this settlement. As discussed above, this Court has the authority and duty to determine the amount of reasonable fees paid to attorneys from the settlement fund, and because any further contingent fee payments would necessarily come from proceeds from the settlement fund, the Court can and does prohibit any such additional payments. To be clear, any

attorney representing a client on a contingent fee basis relating to claims covered in this settlement may recover attorney fees only from the pools created by this order, allocated from the Court's total one-third fee award, and that attorney may *not* recover any additional fees from the client's recovery based on any contingent-fee contract. An attorney may not recover more than a reasonable fee, and the Court has determined that awards from these pools provide a reasonable fee to all attorneys involved in the settled claims; thus, attorneys' recovery of contingent attorney fees must be so limited.

6.      No attorney has objected to the master's recommendation that "any IRPA making a claim for fees be required to produce, for review by the Special Master, a retainer agreement and/or a power of attorney from the Class Member on whose behalf the IRPA is claiming before it can be paid." The Court concludes that such a requirement is reasonable, and it therefore adopts it as recommended.

7.      The Court rejects the special master's recommendation for a limited right of appeal to the master if an IRPA believes that a fee award is insufficient based on "unique and exceptional circumstances." The Court is not persuaded that such an exception (which the master indicates would be exceedingly narrow) is necessary. Again, IRPAs are eligible to receive allocations of fees from the common benefit pools, and if an IRPA actually performed an extraordinarily atypical amount of substantive work to litigate these claims, such work is more properly compensated by an award from the other pools, to the extent such work benefitted the settlement class (and thus was reasonably performed in light of and despite the work on similar cases being performed by other attorneys – particularly Kansas and Minnesota lead counsel – in this mass action). Similarly, if an IRPA incurred

expenses in litigating the claims, such expenses may be recovered separately (even, as discussed below, if the IRPA has not previously filed an application for fees or expenses). No other circumstance would justify an larger award of reasonable fees from the IRPA pool, and the Court therefore declines to create any such exception while allocating to the IRPA pool.

8.     The Court adopts the special master's recommendation to reopen the application period so that IRPAs who have not yet filed an application for attorney fees may still seek an award of fees from the IRPA pool.  It is true that the Court, in its preliminary approval order, stated that any person seeking attorney fees, expenses, or service awards from the settlement fund was required to file a motion by a particular deadline.  That order did not necessarily make clear, however, that recovery on contingent-fee client contracts would be prohibited and that the Court's application process constituted the sole avenue for recovery of any contingent fee whatsoever.  Any such lack of clarity was exacerbated by language in the long-form class notice approved by the Court, which advised only that if a class member previously hired an attorney but wished to remain in the settlement class, the member should discuss the issue of attorney fees with his or her lawyer; and that if the class member chose to hire a lawyer at that point, he or she would be responsible for the lawyer's fees and expenses.  Thus, because it is prohibiting the recovery of any contingent attorney fees beyond those awarded by the Court from the allocation pools, the Court deems it appropriate to allow IRPAs an additional opportunity to request a fee award.  Such an accommodation should practically eliminate the possibility that an attorney is unfairly left without any fee.  On the other hand, the Court's previous

order provided sufficient notice of the requirement of a motion by any attorney claiming fees for common benefit work; therefore, the recovery by new applicants is limited to recovery from the IRPA pool.

In addition, although the master's recommendation does not appear to extend so far, the Court will permit any new applicants also to seek an award of reasonable expenses, which application will be considered with all other expense requests. As discussed above, allowing all IRPAs the opportunity to recover their reasonably-incurred expenses bolsters their effective contingent-fee recovery and eliminates the need for an extraordinary-circumstances exception. In light of the class notice's statement that members would be responsible for fees charged by newly-retained counsel, however, the Court will not allow fees to be awarded from the IRPA pool to – or contingent fees to be recovered by – any IRPA retained only after the Court's preliminary approval of the settlement; any such fee would not be reasonable in light of the simple claims process.

Accordingly, any attorney who represented a settlement class claimant with respect to the claims covered by this settlement, prior to preliminary approval of the settlement, and who is not included in any fee or expense application previously submitted, may file in this Court, on or before **January 18, 2018**, a petition for an award from the IRPA pool or for an award of expenses. The petition should include a list of all claimants represented by that attorney. Moreover, in seeking an award of reasonable expenses, the applicant should be guided by the expense standards adopted by the Court herein. The applicant must also comply with any requirement of the special master (such as the requirement that

a retainer agreement be provided) relating to claims from the IRPA pool or claims for expenses.

9.    Finally, the Court adopts the master's recommendation (and overrules any objection thereto) that specific awards from the IRPA pool be administered by this Court, in consultation with the Minnesota state court and the Illinois federal court, regardless of where an IRPA's cases were filed.  As noted by the special master, such an arrangement allows for a consistent distribution of fee awards from the IRPA pool.

Watts Guerra objects to this delegation to the MDL court, based on the settlement agreement's provision that "[m]atters arising from client fee contracts and referring counsel referral agreements" involving the Clark law firm or involving Minnesota state court plaintiffs shall be subject to the jurisdiction of the Illinois federal court and the Minnesota state court respectively.  To the extent that this order (which allocates to the IRPA pool and prohibits any additional contingent fee recovery) involves a matter arising from client fee contracts or referral agreements, any jurisdictional requirement in the settlement agreement has been satisfied, as the other two courts expressly approve this order.  Any further dispute – for instance, concerning the proper calculation of the IRPA award – would arise from this Court's allocation order (which provides the basis for any recovery of IRPA fees), and thus would not arise from client fee contracts (which no longer may serve as the basis for fees).  Therefore, the settlement agreement does not prohibit the exercise of jurisdiction by this Court over any future disputes concerning awards from the IRPA pool.

The Court adopts the following procedure for distribution from the IRPA pool. Once the amount of each claimant's recovery from the settlement fund has been

determined, the claims administrator, with oversight by the special master, shall calculate the *pro rata* IRPA award to be made from the IRPA pool to each attorney who has applied for a fee award, and the amount of an attorney's proposed IRPA fee award shall be communicated to that attorney, who shall have the opportunity to object to the calculation by the administrator. After the administrator has attempted to resolve any objection, the master shall file a report and recommendation concerning the proposed distribution of the IRPA pool to particular attorneys or law firms, in which the master shall note any outstanding objections and her recommendations concerning those objections. Objections to that report and recommendation may be filed within 14 days, and the Court will then resolve any such renewed objections.

<em>D.     <u>Three Common Benefit Pools</u></em>

1. The Court next turns to the special master's recommendations concerning allocation from the total attorney fee award to the three common benefit pools. In the R&R, the master assigns each attorney fee applicant to one of three pools, and she recommends allocating 50, 24, and 16 percent to the Kansas MDL, Minnesota state court, and Illinois federal court pools respectively.

2. The Court adopts the recommendation concerning the assignment of attorneys and law firms and attorney groups to the three pools, as set forth in Exhibit 2 to the R&R. No firm objected to its own placement within one of the three pools. Clark / Phipps objects to the placement of Heninger Garrison Davis (HGD) within the Illinois pool, but the Court overrules that objection, which Clark / Phipps has asserted in an effort to increase its own eventual allocation. Although HGD performed common benefit work

approved by the Kansas MDL leadership, it litigated one of the major consolidated cases in Illinois federal court. Accordingly, it is reasonable and appropriate to assign HGD to the Illinois pool. Moreover, the particular placement of HGD is not particularly prejudicial to any attorney, as the allocation among the three pools by the Court (and by the master) accounts for the placement of HGD within the Illinois pool (which is to say that if the objection were sustained and HGD were placed elsewhere, the Court would then make a different allocation among the three pools).

The Court also clarifies that each applicant will eventually receive an award of fees based on its common benefit work anywhere, performed with respect to cases in any jurisdiction, regardless of the particular pool into which the applicant is placed. Each applicant is placed into a single pool so that all of its common benefit contributions may be considered by a single court in the next phase. Thus, the Court grants the request by Johnson Becker for clarification on this point.[10]

3.      Only the Clark / Phipps group, the HGD group, and one other smaller firm (the Eiland firm) have been placed in the Illinois pool. Both Clark / Phipps and HGD argue that the R&R undervalues these attorneys' contributions to the ultimate recovery and thus that the Illinois pool allocation should be increased from the master's recommended

---

[10] It was noted at the hearing that the R&R inadvertently places the Paul firm in both the Kansas and Minnesota pools. It was further revealed, however, that that firm is perhaps unique with respect to the amount of approved common benefit work performed in both jurisdictions, and that Kansas and Minnesota leadership have anticipated a common benefit award for that firm from both pools. Thus, the Court will not alter the placement in two pools of this one firm, with the assumption that eventual allocations will mindfully ensure a fair recovery by the firm.

allocation of 16 percent of the total fee award (with Clark / Phipps arguing that this is particularly so if HGD is placed in this pool). At the same time, Bassford Remele argues that the R&R *overvalues* the contributions of those in the Illinois pool. Watts Guerra also would reduce the Illinois share, as would some objectors who seek an increased share for the IRPA pool.

The Court adopts the master's recommendations concerning the relative contributions of the Illinois pool constituents and the relative percentage allocations among the three pools, and the Court therefore overrules all objections concerning the proper allocation to the Illinois pool. The Court concludes that the master's allocation is reasonable for all of the reasons stated by her, including a consideration of the applicable *Johnson* factors. The Court agrees that the cases in Illinois provided a valuable third front in the overall litigation against Syngenta, which created additional pressure on Syngenta to resolve the litigation. In particular, the two main cases in Illinois federal court (*Poletti* and *Tweet*) involved briefing and discovery on behalf of thousands of plaintiffs, whose counsel obtained favorable rulings on issues such as the Illinois court's jurisdiction and application of the economic loss doctrine. In addition, as noted, HGD performed work with the MDL leadership to benefit the overall litigation, and the Clark / Phipps group also filed hundreds of other cases in various courts. Mr. Clark also played an important role in helping to negotiate the settlement. Thus, the contributions of the Illinois firms were not trivial or insignificant, and a substantial allocation is warranted.

At the same time, however, the Court agrees with the special master that those contributions were outstripped to a considerable degree by the contributions made by the

constituents of the other two pools. For instance, unlike their peers in Kansas and Minnesota, the Illinois attorneys did not try (or begin the trial of) any of their cases against Syngenta. Clark / Phipps and HGD did secure some important rulings from the Illinois federal court, but for the most part those rulings followed similar rulings after litigation of the same issues in this Court and the Minnesota court, which allowed the Illinois attorneys to rely to a great extent on work that had already been performed by other attorneys. The successful resolution of this litigation was most driven by the successes achieved in the Kansas MDL (including a favorable trial verdict and the specter of additional class trials to come) and the massive consolidated action in Minnesota; Illinois provided an additional front, but that front clearly ranked third in the pecking order. Moreover, it must be noted (especially when considering any sort of lodestar crosscheck) that much of the work by Clark / Phipps on behalf of ethanol plants and against other members of the grain trade ultimately proved unsuccessful, which defeats bolstered Syngenta's position and thus did not contribute to achievement of the settlement. These factors support an allocation to the Illinois pool that is much lower than the allocations to the other two pools.

These competing points must be weighed, and the Court concludes that the special master strikes a reasonable balance in her allocation to the Illinois pool relative to the allocations to the other pools. Moreover, as the special master notes, her relative allocations are somewhat supported by the post-settlement fee-sharing agreement involving Kansas leadership, Minnesota leadership, and Clark / Phipps, as the history of that agreement suggests that those signatories themselves considered the relative

contribution on the Illinois front to be less than that on the Minnesota front and far less than that on the Kansas front.

4.      Minnesota leadership did not object to the special master's allocations to the three common benefit pools.  Only Watts Guerra has objected to the Minnesota pool allocation; it argues that that allocation is too small and should be closer to the Kansas allocation.  The Court overrules that objection, and it adopts the R&R's reasonable allocation among the three common benefit pools.

As discussed in the R&R, the contribution to the ultimate settlement class recovery by attorneys in the Minnesota pool was significant, but that contribution did not approach that made by the attorneys in the Kansas pool, especially in litigating the MDL.  In Minnesota, two trials were started, but only in the Kansas MDL did plaintiffs obtain a verdict against Syngenta.  The MDL drove the entire litigation against Syngenta, and for the most part the MDL proceeded on an earlier track than the Minnesota consolidated litigation.  Plaintiffs' counsel in the MDL achieved the first major rulings on dispositive motions; they took the lead on investigation and discovery, including retaining and preparing and attacking experts; and they won the certification of eight statewide classes.  MDL counsel also successfully opposed Syngenta's attempt to create federal jurisdiction under the federal common law of foreign relations, which victory ultimately allowed the multiple fronts to be maintained.  Syngenta's greatest exposure came from the MDL, in which it had already suffered one adverse class action verdict, trials for the other seven certified classes had been scheduled (in which Syngenta would again face the possibility of punitive damage awards), and certification of at least 12 other statewide classes loomed.

30

In addition, as discussed in the R&R, Chris Seeger, who is included as a member of the Kansas pool, contributed more than any other attorney in accomplishing the settlement of the litigation. Finally, as noted above, the fee-sharing agreement shows that the Kansas and Minnesota leadership both believed that the Kansas attorneys should receive a significantly greater award of fees than the Minnesota attorneys. The Court concludes that the master's relative allocation to the Minnesota pools is reasonable and should be adopted.

5.     That leaves the allocation to the Kansas pool. Other than Watts Guerra, as discussed, no attorney has objected to an allocation by which the Kansas pool receives a far greater percentage of the total attorney fee award than the other two common benefit pools. For the reasons already discussed, the attorneys in the Kansas pool easily contributed the most to the class settlement, and those attorneys therefore deserve the lion's share of the fee award. The master's allocation to the Kansas pool is reasonable, and the Court adopts the master's relative allocations.

6.     The Court has already concluded that the allocation to the IRPA pool should be increased from the 10 percent recommended by the master to 12 percent of the total attorney fee award. That two-percent increase requires a reduction in the percentages allocated to the three common benefit pools. Taking one percent from the Kansas pool and 0.5 percent each from the Minnesota and Illinois pools accomplishes that reduction in a fairly proportional manner. Accordingly, the Court allocates the total fee award among the four pools as follows:

$60,400,000.00         (12%)         IRPA pool
$246,633,333,33        (49%)         Kansas MDL common benefit pool
$118,283.333.33        (23.5%)       Minnesota state court common benefit pool

| $78,016,666.67 | (15.5%) | Illinois federal court common benefit pool |

| $503,333,333.33 | (100%) | Total attorney fee award |

7.     In the R&R, the special master has not attempted to define the scope of the common benefit work that will be compensated from the three common benefit pools in the next phase of allocation, except that the master has made clear her recommendation that such work should not be limited merely to work approved and audited by Kansas or Minnesota leadership pursuant to CBOs entered by the courts.  The Court adopts that recommendation, and it agrees that the three common benefit pools shall be allocated among particular attorneys based on any work that benefitted the settlement class, whether or not such work was performed pursuant to any CBO.  It is this understanding of common benefit work that the Court has applied in allocating percentages of the total attorney fee award to the three common benefit pools.[11]  No objector has argued in favor of a narrower scope of common benefit time for purposes of allocation from the three common benefit pools.

Moreover, although allocation from the three common benefit pools will take place in the next phase, the Court deems it appropriate to make a few remarks concerning how the three courts will consider certain types of work in making that allocation, with the intent that such considerations be consistent across the three pools.  First, the courts will consider as common benefit work any work, either in litigating the claims or in pursuing the

---

[11] In the same way, when the Court refers to "common benefit" pools or work in this order, this broader meaning is intended.

settlement with Syngenta, that contributed to the settlement and the ultimate recovery by the settlement class, thereby benefitting the entire settlement class. Second, as mentioned above, the courts do not consider work performed in recruiting clients to have inured to the common benefit of the settlement class. Third, work performed for particular individual clients may still be considered common benefit work if that work provided a benefit to the entire settlement class. For instance, many objectors have argued that work to complete and submit plaintiff fact sheets (PFSs) pursuant to court orders should be considered common benefit work for purposes of allocation from the common benefit pools. The courts agree that work completing a significant number of PFSs that were actually submitted to courts or Syngenta could benefit the entire settlement class. In considering such work (and other work), however, the courts will be mindful that the work would not reasonably have been undertaken at the highest attorney rate, for instance because much of the work could reasonably have been completed by lesser-experienced attorneys or even by paralegals or other staff. The same would be true, for example, for work drafting identical complaints (after drafting the first one) for multiple plaintiffs, or work submitting claims (in light of the ease of doing so). In short, although much work may qualify as common benefit work if sufficiently impactful or if on behalf of a large number of plaintiffs, not all common benefit work will be weighed equally in the allocation from the common benefit pools.

8.      The Court hereby extends the appointment of Ms. Reisman as special master to oversee the distribution of attorney fees, expenses, and service awards by the administrator as finally allocated by the courts, until that distribution has been completed.

9.     No objection has been lodged to the master's recommendation that the Kansas MDL court, the Minnesota state court, and the Illinois federal court be responsible for the allocation to attorneys in the next phase from the Kansas, Minnesota, and Illinois common benefit pools respectively.   That approach reasonably comports with the settlement agreement and the understanding of counsel.   Moreover, each court is most familiar with the litigation in the cases before it, and thus is in the best position to determine a reasonable allocation from its particular pool to the applicants assigned to that pool.  Each court will enter an order establishing a process by which to accomplish its assigned allocation.

### III.   **Expenses**

By their fee and expense applications, attorneys have requested a total of $48,842,866.12 in expenses, and although the special master has not recommended approval of any particular requests, she has made various recommendations in her R&R concerning expenses, to which no attorney has objected.   The Court therefore adopts those recommendations, which the Court concludes are reasonable and appropriate.

First, the Court shall award reimbursement of reasonable expenses from the settlement fund, separate from the one-third award of attorney fees.

Second, the Court orders that the standards and limitations contained at pages 12 through 14 of the Court's CBO of July 27, 2015, shall apply here and govern the Court's determination of reasonable expenses that may be reimbursed from the settlement fund. Those standards set limits for travel expenses (airfare, hotel, meals, cash outlays, car rental,

mileage) and other expenses (telephone charges, shipping, postage, fax and photocopy, computer research). Such limitations are typically applied by courts and by business clients, and because they were announced in the CBO at an early stage of the litigation, it is appropriate that they govern here. The Court notes (as does the special master) that items not included in the CBO (such as advertising and expenses for recruiting or entertainment) generally constitute firm overhead, and items properly considered overhead will not be reimbursed as reasonable expenses.

Third, the special master shall perform an additional review of expenses, and she may require the submission by applicants of supplemental documentation (particularly with respect to miscellaneous expenses, air travel, and meal expenses). Upon completion of that review, the master shall file a further report and recommendation concerning awards for reimbursement of expenses from the settlement fund.

Fourth, the Court intends that attorneys representing individual clients on a contingent fee basis shall recover expenses only as awarded by the Court. Thus, such attorneys shall be prohibited from collecting any other expenses from their clients related to this representation under any contingent fee contract. As with fees, this will ensure that awards are reasonable and that the settlement class members recover from the settlement fund on equal terms (whether or not they retained counsel). In light of this prohibition, the Court deems it appropriate to reopen the period for applications for reimbursement of reasonable expenses. The same procedure and deadline set out above with respect to new

IRPA pool fee applications shall also apply with respect to new requests for reimbursement of expenses. *See supra* Part II.C.8.[12]

Fifth and finally, any awards of reasonable expenses from the settlement fund shall be made by this Court, as presumed by the special master in the R&R. It is reasonable for a single court to award all expenses, so that the standards may be applied consistently to all expense applications, and no attorney has argued to the contrary.

## IV.    Service Awards

The settlement agreement provides that firms may petition the Court for service awards for representative and bellwether plaintiffs in recognition of their service to the settlement class. In the R&R, the special master concludes that all of the requested service awards are reasonable, and she recommends that the Court grant those requests. No party has objected to that recommendation. The Court agrees that the requested awards are reasonable and appropriate. The Court therefore adopts the master's recommendation, grants the requests, and approves service awards in the total amount of $2,782,500, in the amounts and to the recipients set forth in Exhibit 3 to the R&R.

IT IS THEREFORE ORDERED BY THE COURT THAT the special master's Report and Recommendation (Doc. # 3816) is hereby adopted in part as set forth herein.

---

[12] For this reason, and because the master has not yet recommended particular expense awards, the Court declines to adopt the master's recommendation that it approve expenses in this order up to a maximum amount represented by the total of the initial expense applications.

The following objections are **sustained in part** to the extent that the Court has altered the master's recommendations concerning the IRPA pool: Bassford Remele, P.A. (Doc. # 3823); Hossley-Embry (Doc. # 3825); Paul Byrd Law Firm, PLLC (Doc. # 3826); Toups / Coffman (Doc. # 3827); Clark / Phipps Group (Doc. # 3832); The Hecker Law Group (Doc. # 3833); Watts Guerra LLP (Doc. # 3836); Shields Law Group, LLC (Doc. # 3840); and Kirk Law Firm (Doc. # 3842). Those objections are otherwise **overruled**. The objection by Heninger Garrison Davis, LLC (Doc. # 3835) is **overruled** in its entirety.

IT IS FURTHER ORDERED BY THE COURT THAT Johnson Becker, PLLC's request for clarification (Doc. # 3838) is **granted**, as set forth herein.

IT IS FURTHER ORDERED THAT the special master shall file a further report and recommendation concerning awards for reimbursement of expenses from the settlement fund.

IT IS SO ORDERED.

Dated this 31st day of December, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

Upon consultation, approved by:

s/ David R. Herndon
David R. Herndon
District Judge
United States District Court
   for the Southern District of Illinois


s/ Laurie J. Miller
Laurie J. Miller
District Judge
District Court of Hennepin County,
   Minnesota