IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, <br><br> This Document Relates to All Cases <u>Except</u>: <br><br> *Louis Dreyfus Co. Grains Merchandising LLC v. Syngenta AG, et al.*, No. 16-2788 <br><br> *Trans Coastal Supply Co., Inc. v. Syngenta AG, et al.*, No. 14-2637 <br><br> *The Delong Co., Inc. v. Syngenta AG, et al.*, No. 17-2614 <br><br> *Agribase Int'l Inc. v. Syngenta AG, et al.*, No. 15-2279 | MDL No. 2591 <br><br> Case No. 14-md-2591-JWL |

## **MEMORANDUM AND ORDER**

This multi-district litigation (MDL) comes before the Court upon the Report and Recommendation (R&R) by Kansas MDL Co-Lead Counsel ("CLC") concerning the allocation of the Kansas portion of the Court's total attorney fee award (Doc. # 4079).[1] The Court received responses from two groups of plaintiff attorneys objecting to the recommended allocation: Mitchell Toups, Richard Coffman, and their associated counsel

---

[1] The Court ordered CLC to file a "report and recommendation," using that term to describe CLC's proposed allocation, and when the Court refers to the R&R in this order, it is merely referring to that document filed by CLC. The Court does not intend by any such reference to invoke Fed. R. Civ. P. 53 or any other rule.

("Toups") (Doc. # 4098); and Hossley Embrey, LLP and their associated counsel ("Hossley") (Doc. # 4099). The Court concludes that the CLC's recommended allocation among the attorneys assigned to this attorney fee pool is fair and reasonable and appropriate, and the Court therefore awards attorney fees from the Kansas MDL common benefit pool to particular attorneys as set forth in Schedule 2 of the R&R, which has been incorporated into this Order as Attachment A. Accordingly, the Court overrules the objections asserted by Toups and Hossley.

**I.     Background**

By Memorandum and Order of December 7, 2018, the Court granted final approval of a settlement agreement resolving claims against Syngenta[2] and certified a settlement class. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.). At that time, the Court also awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33, *see id.* at *11-16, which fees compensated for work for the benefit for the settlement class and which also were "intended to account for all contingent fee recoveries from payments to class members from the settlement fund," *see id.* at *11, 15.

By Memorandum and Order of December 31, 2018, the Court ruled on objections and adopted in large part a report and recommendation by the special master concerning the initial allocation of attorney fees. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018

---

[2] The Court refers to defendants in the MDL collectively as "Syngenta".

WL 6839380 (D. Kan. Dec. 31, 2018) (Lungstrum, J.). The Court used a framework for allocating the total fee award to all attorneys whose efforts contributed to the settlement class's ultimate recovery, recommended by the special master, as follows:

> All attorneys who have filed fee applications are assigned to one of three common benefit pools – Kansas MDL, Minnesota state court, and Illinois federal court – based primarily on where they performed their common benefit work. Specified percentages of the total fee award are then allocated to those three pools, reflecting the relative contributions to the settlement class recovery by the attorneys in those pools (with further allocation within those three pools to be made in a subsequent procedure by the three courts separately).

*See id.* at *2. The Court also allocated a portion of the total fee award to a pool for individually-retained private attorneys (IRPAs), who would share that portion *pro rata* based on the ultimate recoveries by their claimant clients. *See id.* The Court adopted the master's recommendations concerning which attorneys were assigned to which common-benefit pools, *see id.* at *12, and it proceeded to allocate the total fee award among the four pools as follows: $246,633,333.33 (49 percent) to the Kansas MDL common benefit pool; $118,283,333.33 (23.5 percent) to the Minnesota state court common benefit pool; $78,016,666.67 (15.5 percent to the Illinois federal court common benefit pool; and $60,400,000.00 (12 percent) to the IRPA pool. *See id.* at *13. Finally, the Court adopted the master's recommendation that each of the three courts be responsible for the further allocation among attorneys of the portion of the fee award allocated to its common benefit pool (with this Court, in consultation with the other courts, responsible for the administration of awards from the IRPA pool). *See id.* at *11, 15. The Court consulted with the judges overseeing the related litigation in Minnesota and Illinois, and all three

3

judges expressly approved of this framework and initial allocation of fees and all other rulings contained in the Memorandum and Order. *See id.* at *1.

Finally, the three judges agreed that the three common benefit pools would be allocated among particular attorneys based on any work that benefitted the settlement class, whether or not such work was performed pursuant to any common benefit order issued by a court. *See id.* at *14. The judges agreed on certain guidelines concerning the final allocation of fees from the common benefit pools, as follows:

> [A]lthough allocation from the three common benefit pools will take place in the next phase, the Court deems it appropriate to make a few remarks concerning how the three courts will consider certain types of work in making that allocation, with the intent that such considerations be consistent across the three pools. First, the courts will consider as common benefit work any work, either in litigating the claims or in pursuing the settlement with Syngenta, that contributed to the settlement and the ultimate recovery by the settlement class, thereby benefitting the entire settlement class. Second, as mentioned above, the courts do not consider work performed in recruiting clients to have inured to the common benefit of the settlement class. Third, work performed for particular individual clients may still be considered common benefit work if that work provided a benefit to the entire settlement class. For instance, many objectors have argued that work to complete and submit plaintiff fact sheets (PFSs) pursuant to court orders should be considered common benefit work for purposes of allocation from the common benefit pools. The courts agree that work completing a significant number of PFSs that were actually submitted to courts or Syngenta could benefit the entire settlement class. In considering such work (and other work), however, the courts will be mindful that the work would not reasonably have been undertaken at the highest attorney rate, for instance because much of the work could reasonably have been completed by lesser-experienced attorneys or even by paralegals or other staff. The same would be true, for example, for work drafting identical complaints (after drafting the first one) for multiple plaintiffs, or work submitting claims (in light of the ease of doing so). In short, although much work may qualify as common benefit work if sufficiently impactful or if on behalf of a large number of plaintiffs, not all common benefit work will be weighed equally in the allocation from the common benefit pools.

4

*See id.*

Also by Order of December 31, 2018 (Doc. # 3883), the Court designated CLC to recommend the further allocation of the Kansas MDL common benefit pool among the attorneys assigned to that pool. The Court stated that CLC, in making that determination, should comply with the strictures and principles set forth in the allocation order concerning common benefit work, and should discuss their proposed division with the attorneys in the pool and attempt to resolve any disputes. On February 1, 2019, as ordered by the Court, CLC filed the instant R&R by which they have recommended particular fee awards from the Kansas pool to particular law firms and attorney groups.

## II.     CLC's Recommended Allocation

CLC undertook the further allocation of the Kansas common benefit pool amount ($246,633,333.33) among the 64 firms and attorney groups assigned to that pool (listed on Schedule 1 of the R&R).[3] Five of those firms made only expense fund contributions and do not seek recovery of attorney fees from the Kansas pool. CLC recommends allocation among the other 59 firms as set forth in Schedule 2 of the R&R.

In making its recommendation, CLC has divided the firms into six tiers. <u>Tier 1</u> consists of the four MDL Co-Lead firms and the Seeger Weiss firm. CLC proposes applying a multiplier of 3.14 to the lodestar for the four firms' work performed prior to their initial attorney fee petition, and a multiplier of 0.9 for work performed since the initial

---

[3] Sixty-three firms were assigned to the Kansas pool in various orders, and CLC agreed to include one additional firm.

5

petition, which yields overall multipliers ranging from 2.97 to 3.09. CLC also proposes allocating ten percent of the Kansas pool amount to Seeger Weiss, in accordance with a fee-sharing agreement, based on that firm's work as settlement counsel; that allocation would result in a multiplier of 3.125 for that firm. In total, CLC recommends that $214,895,659.86 be allocated to the firms in Tier 1 (112,377.1 hours, $70,772,240.10 lodestar).

Tier 2 consists of six firms, all involved since the beginning of the litigation, whose work focused on litigation of the class and bellwether cases. Some of these firms also participated in legal briefing, expert discovery, and the Kansas trial, although to a lesser extent than the Tier 1 firms. CLC thus proposes that these firms receive the second-highest multipliers among the tiers, ranging from 2.0 to 2.5, depending on those firms' particular contributions. The proposed allocations within this tier total $21,026,771.70 (23,532.6 hours, $9,597,912.80 lodestar), and each firm in this tier has agreed to CLC's recommendations.

Tier 3 consists of five firms that performed substantive legal work on class and bellwether plaintiff claims, four of which served on the Court-appointed Executive Committee. CLC proposes multipliers of 1.6 for one firm and 1.3 for the other firms in this tier. The proposed allocations within this tier total $5,939,040.00 (5,170 hours, $2,472,629.50 lodestar), and each firm in this tier has agreed to CLC's recommendations.

Tier 4 consists of 32 firms. Twenty-nine of those firms represented individual bellwether plaintiffs or class representatives or filed class-action lawsuits in various states to protect against the running of statutes of limitation. The other three firms represented

non-producer class representatives or bellwether plaintiffs. CLC proposes a multiplier of 1.25 for most of these firms, with a 1.5 multiplier for one firm and a 1.0 multiplier for four firms. The proposed allocations within this tier total $2,546,876.50 (6,296.3 hours, $1,993,073.50 lodestar). Twenty-nine of these firms have agreed to CLC's recommendations. Hossley did not agree with its proposed allocation and has filed an objection to the R&R. Toups did not agree, but in its filed objection to the R&R, it objects only with respect to its Tier 5 allocation. The Law Offices of James S. Rogers did not agree, but it has not filed any objection to the R&R.[4]

Tier 5 consists of nine firms that filed individual cases for plaintiffs who were not part of the MDL bellwether discovery pool. (CLC proposes that two of these firms, Toups and Hossley, also receive allocations in Tier 4.) CLC proposes allocating to these firms their lodestar amount for drafting complaints and $600 for each plaintiff fact sheet (PFS) prepared by the firm that was actually filed or submitted to Syngenta. The proposed allocations within this tier total $1,821,136.50. Seven of these firms have agreed with CLC's recommendations; Toups and Hossley did not agree and have filed objections to the R&R.

Finally, a sixth tier consists of the three firms that served as counsel for settlement subclasses 2, 3, and 4. CLC proposes a 1.5 multiplier for these firms, for a total allocation

---

[4] As set forth in the R&R, the Rogers firm filed a class action on behalf of Washington farmers after a tentative settlement had been announced, and CLC recommends allocating to that firm its lodestar amount for time spent drafting the complaint (6.9 hours, $5,175 lodestar).

7

to these firms of $403,848.75 (346.5 hours, $269,332.50 lodestar). These firms have agreed with this recommendation.

Five firms (two in Tier 2, three in Tier 4) are also entitled to seek fees from the Minnesota common benefit pool. CLC has ensured that work submitted for allocation from this pool is exclusive of work submitted for allocation from the Minnesota pool.

### III. Analysis

#### A. *Adoption of CLC's Recommended Allocation*

The Court concludes that the further allocation recommended by CLC for the Kansas common benefit pool amount is fair, reasonable, and appropriate. The Court therefore will follow CLC's recommended allocations, and it orders that the fees for this pool be awarded in accordance with the amounts set forth in Schedule 2 of the R&R, which has been incorporated into this Order as Attachment A.

As a preliminary matter, the Court notes that it designated to CLC the task of proposing an allocation of the Kansas pool because those attorneys took the lead and performed the great majority of the substantive work on behalf of plaintiffs in this litigation, and thus they are in the best position to judge the relative contributions by the petitioning attorneys to the settlement and the benefit of the settlement class. *See Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 90 (2d Cir. 2010) ("Since lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions, it is neither unusual nor inappropriate for courts to consider lead counsel's proposed allocation of attorneys fees . . . ."). At the same time, however, the Court

appreciates that an inherent conflict exists, in that any undercompensation of non-lead counsel would increase CLC's own share of the fee pool. *See id.* Thus, while the Court has considered CLC's explanations for its recommended allocations, the Court emphasizes that it has exercised its independent judgment to ensure a fair allocation of common benefit fees from this pool. *See id.*

The Court concludes, however, that CLC has done an excellent job in making its recommendations. The Court agrees with CLC's framework, as the division of the firms into tiers allows for similar treatment (by multiplier) of firms that made relatively equal contributions to the settlement class. Although CLC has exercised some judgment in placing firms within the tiers, it has kept its recommendations as objective as possible, ignoring subjective considerations such as whether a firm's fee submissions were timely, whether a firm kept contemporaneous time records, and whether a firm's conduct actually hindered the eventual settlement. No firm has objected to the tier or tiers into which it was placed. In addition, most of the common benefit time rewarded here was submitted under the Court's Common Benefit Orders (CBOs), and such time was audited by CLC throughout the litigation to ensure compliance and accuracy with respect to the lodestars. CLC has explained in its R&R the reasons for its specific treatment of each firm placed in Tiers 1, 2, or 3. CLC has properly weighed each firm's contribution to the overall benefit of the settlement class, in accordance with the common benefit guidelines set forth in the Court's initial allocation order, and the Court agrees with CLC's conclusions concerning which work should be compensated from this common benefit pool. Finally, the

reasonableness and fairness of CLC's proposed allocations are supported by the fact that only two firms have lodged objections.

Specifically, the Court concludes that CLC's recommended multipliers are fair and reasonable, and it will apply those same multipliers in making the specific awards. The Tier 1 firms performed the great bulk of the work litigating the claims in the MDL, and that work made the greatest impact in achieving an excellent result, despite the uncertain merits of the claims. As explained in the Court's previous order, such work justified a total fee award of one third of the total settlement amount. Moreover, the firms in this tier invested the most time and expense to the litigation, and thus bore the greatest risk. These attorneys were proficient and experienced, they took the lead in litigating all substantive issues, and they won a plaintiffs' verdict at trial. The Seeger Weiss firm led the settlement negotiation efforts on behalf of plaintiffs. As noted in the Court's fee award order, a multiplier of 3 is well within the range allowed in other cases involving large settlements, and such a multiplier is appropriate in this case for the firms within Tier 1.

Similarly, the multipliers recommended for the firms within Tier 2 and Tier 3 and for subclass counsel are appropriate in light of those firms' substantive work that contributed (for the reasons stated by CLC in the R&R) to the benefits enjoyed by the settlement class. The lower Tier 4 multipliers (which still exceed 1 for almost all firms) also yield appropriate compensation for firms whose common benefit work was limited to assisting with discovery involving their bellwether clients or representing non-producers (whose claims represent a relatively small portion of the settlement).

Finally, the Court agrees with CLC's recommendations concerning the allocation to firms in Tier 5. These firms did not perform any particular substantive work to advance the litigation on behalf of plaintiffs other than filing and maintaining individual lawsuits against Syngenta. The mere fact that such individual suits had been filed (with the threat of opt-outs) did contribute to the overall benefit of the settlement class, and that contribution justified an award of fees to IRPAs. *See In re Syngenta*, 2018 WL 6839380, at *6. Thus, an attorney's contribution in having an individual client and filing an individual lawsuit will be compensated by an award from the IRPA pool. As the Court stated in its allocation order, work completing a significant number of PFSs that were actually served on Syngenta and work drafting complaints for multiple plaintiffs could benefit the entire settlement class and thus could reasonably be compensated from the common benefit pools. *See id.* at *14. For that reason, the Court agrees with CLC's recommendation that Tier 5 attorneys who did not perform particular legal work that benefitted the entire settlement class should receive an allocation from the Kansas common benefit pool only for such work preparing served PFSs and drafting complaints. Although the Court noted that such work would not be weighed as equal to other common benefit work, CLC has been fairly generous is recommending that Tier 5 attorneys receive their entire requested lodestar amounts for work drafting complaints, and the Court agrees that such allocations are appropriate. The Court also noted that PFS work could reasonably have been performed at a lower attorney rate or even at a paralegal or staff rate, *see id.*, and it agrees with CLC that a flat rate of $600 per PFS is appropriate for this work that was mostly clerical in nature.

11

### B. *Objections by Toups*

CLC recommends that the Toups group collectively receive a total of $236,571.88 in fees (using a 1.25 multiplier) for Tier 4 work. CLC further recommends that Toups receive $909,050.00 under Tier 5, consisting of $387,050 for drafting individual complaints and $522,000 for preparing 870 PFSs that were served on Syngenta. Thus, CLC recommends a total award to Toups from this pool of $1,145,621.88 (which does not include amounts that Toups will receive from the IRPA pool). Toups did not agree to CLC's proposed allocations, and it filed a response and objections to the R&R. Toups states in that response that although its 1.25 multiplier is low, CLC's Tier 4 recommendations "are not worth quibbling over at this juncture." Thus, Toups objects only to its recommended Tier 5 allocation. The Court overrules Toups's objections, which the Court specifically addresses below.

1. Toups revives various old arguments (largely by cutting and pasting from its previous briefs), including the following: (1) that the Court should not prohibit Toups's collection of fees under its contingent fee contracts with clients; (2) that the Court should not use the four-pool framework, but should instead base fee awards solely on the number of bushels produced by claimant clients; and (3) that a one-third fee award is too high for a mega-fund settlement. In renewing those arguments, however, Toups has not bothered to explain how the Court erred in previously rejecting them or even to address the Court's reasoning on those points. Accordingly, those objections are summarily denied. The Court rests on its previously-stated rationales, including its conclusions that attorney fees should be allocated first and foremost by reference to the work that most contributed to the

outcome and that a fee award at the top of the range of awards in similar cases is appropriate in this case.

2. Toups also complains that CLC has a conflict of interest in recommending an allocation between itself and the other firms assigned to the pool. As stated above, however, the Court has exercised its independent judgment to ensure that the allocation is fair and reasonable.

3. Toups argues that it should receive its entire lodestar of $25.17 million that it incurred representing its individual clients (which is exclusive of the common benefit work for which it received compensation in Tier 4). Toups argues that the IRPAs and the threat of individual opt-outs drove the settlement. As noted above, the Court previously concluded that the number of individual cases did contribute to the outcome here, and the Court allocated fees to the IRPA pool for that reason, but that contribution was greatly outweighed by the common benefit work performed by various attorneys in actually litigating the claims against Syngenta. Toups argues that it spent thousands of hours working for their clients, including communicating with the clients, obtaining FSA forms and other documents, monitoring the litigation, filing suits, preparing PFSs, and submitting claims. Along with the other Tier 5 firms, Toups is being compensated for drafting complaints (in the lodestar amount) and for preparing PFSs. Toups has not explained, however, how the other work contributed to the settlement and thus inured to the benefit of the entire settlement class. The Court considers such work part and parcel to the representation (or recruitment) of individual clients; to the extent that the sheer number of such clients contributed to the favorable outcome, Toups will be compensated from the

13

IRPA pool. The Court concludes that the allocation from the Kansas common benefit pool to such attorneys is properly limited to work preparing a significant number of served PFSs and a significant number of complaints. Thus, the Court concludes that Toups is not entitled to recover its entire $25.17 million lodestar from this pool.

4. Finally, Toups argues that its total allocation is unfair in light of the Court's previous allocation of approximately $78 million to the Illinois common benefit pool. Toups notes that although its clients submitted almost half as many claims as the Illinois pool firms' clients, and although its lodestar was almost half the total lodestar of the Illinois pool firms, Toups's allocation from the Kansas pool will be only a tiny percentage of the amount of the Illinois pool. This comparison is not apt, however. As set forth in the Court's initial allocation order, the Illinois pool firms not only established a valuable third litigation front in the battle against Syngenta, they also performed substantive work litigating the claims in Illinois. Toups has not shown that it performed substantial legal work litigating claims in any of the consolidated proceedings (and it is being compensated within Tier 4 for any common benefit work in the MDL). Accordingly, the Court concludes that CLC's recommended allocation will properly compensate Toups for its common benefit work.[5]

C. *Objections by Hossley*

Hossley represented clients that filed individual lawsuits against Syngenta. CLC recommends that Hossley receive a total of $95,250 in fees (using a 1.25 multiplier) for

---

[5] In its response to the R&R, Toups did not make any specific argument challenging its rate of compensation for drafting complaints or for preparing PFSs.

Tier 4 work. CLC further recommends that Hossley receive $578,450 under Tier 5, consisting of $189,050 for drafting individual complaints and $389,400 for preparing 649 PFSs. Thus, CLC recommends a total award to Hossley from this pool of $673,700 (which does not include amounts that Hossley will receive from the IRPA pool). Hossley did not agree to CLC's proposed allocations, and it filed a response and objections to the R&R. The Court overrules Hossley's objections, which the Court specifically addresses below.

1. Like Toups, Hossley notes CLC's inherent conflict of interest, and it urges the Court to ensure a fair allocation. As stated above, the Court appreciates that obligation and has exercised its independent judgment in this matter.

2. Hossley wonders whether CLC, in recommending an allocation, penalized Hossley for failing to keep contemporaneous time records or for making late fee submissions. It is clear from the R&R, and CLC confirms in its reply brief, that CLC did not rely on such considerations, but rather treated Hossley like the other firms assigned to Tier 4 or Tier 5. Thus, Hossley will be compensated for its Tier 4 work with a 1.25 multiplier applied to its requested lodestar amount, and it will receive a Tier 5 award based on its lodestar amount for drafting complaints and $600 for preparing each PFS.

3. Hossley objects to the recommended rate of $600 for each PFS prepared and submitted to Syngenta. CLC has based its $600 figure on a maximum of two attorney hours (at a $300 hourly rate) per PFS, based on the experience of three firms that actually maintained contemporaneous time records. Hossley argues that two hours per PFS is too low, and that it should instead be compensated its lodestar amount for the approximately seven hours it spent on each PFS.

15

The Court rejects this argument by Hossley. First, Hossley's lodestar estimates (it did not keep contemporaneous records for the most part) are suspect for the reasons explained by CLC in its reply brief. For instance, Hossley argues that for its 200 Iowa cases, its associated counsel did keep contemporaneous records, and that attorney states in his declaration that he spent over two hours on each PFS. That statement, however, is not consistent with the attorney's other statements that in each case he met with the client for an average of one hour, placed calls to FSA offices to obtain records, and then spent an average of one half hour meeting with the client again – a call to FSA on behalf of one client would not reasonably have taken over 30 minutes. In addition, much of the work described by Hossley consists of communicating with the client and obtaining and organizing documents. Such work would be required to represent the individual clients, whether or not PFSs were prepared, and such work is therefore more appropriately compensated by an award from the IRPA pool. Finally, as the Court stated in its initial allocation order, PFS preparation time is reasonably compensated at a lower attorney rate or even at a paralegal or staff rate, which means that a $600 award might translate to three or four or five hours per PFS. Again, the preparation of PFSs contributed to the favorable outcome to a relatively small extent, and a rate of $600 per PFS – a rate that reasonably approximates the lodestar for that task – is reasonable and appropriate for the allocation of fees to Tier 5 firms.

4. Hossley also complains about its recommended Tier 4 allocation. First, it argues that it should not have received a lower multiplier (1.25) than that received by two firms in Tier 2 who received multipliers of 2.5 and 2.2. In the R&R, CLC has justified the

16

multiplier recommended for each Tier 2 firm by reference to the significant work performed to advance the litigation. The Court agrees with CLC that the work performed by the Tier 2 firms contributed more to the common benefit of the settlement class than the Tier 4 work performed by Hossley. Moreover, as CLC has noted, those firms made substantial financial contributions to the litigation. Hossley argues that it too incurred expenses, but the Tier 2 firms faced a greater financial risk, and a higher multiplier is also justified for that reason.

Hossley notes that although its own lodestar rate averaged out to $345 per hour for its Tier 4 work, at least one Tier 4 firm received an award based on an average lodestar rate of $810 per hour. Hossley requests an award also based on an $810 lodestar rate. In petitioning for a fee award, however, Hossley stated that its lodestar for its 221 hours of common benefit work was $76,200, and giving Hossley the benefit of the doubt, the Court presumes that that amount is accurate and is not inflated or overstated. CLC has recommended that Hossley's own lodestar calculation be used in compensating for its Tier 4 work (with another 25 percent added on). Hossley cannot now be heard to argue that its attorneys' time was actually more valuable than previously stated. The Court therefore concludes that the recommended allocation to Hossley for its Tier 4 work is reasonable and appropriate.

IT IS THEREFORE ORDERED BY THE COURT THAT the Report and Recommendation by the Kansas MDL Co-Lead Counsel (Doc. # 4079) is hereby adopted as the Court's own allocation of the Kansas MDL common benefit pool of attorney fees,

and fees are hereby awarded to particular attorneys in accordance with Schedule 2 of the Report and Recommendation, which has been incorporated into this Order as Attachment A.  The objections to the Report and Recommendation by the Toups/Coffman Plaintiffs' Counsel (Doc. # 4098) and by Hossley Embrey, LLP (Doc. # 4099) are hereby overruled in their entirety.

IT IS SO ORDERED.

Dated this 20th day of March, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge