IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162 ) MDL No. 2591
CORN LITIGATION, )
) Case No. 14-md-2591-JWL
This Document Relates to All Cases <u>Except</u>: )
)
    *Louis Dreyfus Co. Grains* )
    *Merchandising LLC v. Syngenta AG,* )
    *et al.*, No. 16-2788 )
)
    *Trans Coastal Supply Co., Inc. v.* )
    *Syngenta AG, et al.*, No. 14-2637 )
)
    *The Delong Co., Inc. v. Syngenta AG,* )
    *et al.*, No. 17-2614 )
)
    *Agribase Int'l Inc. v. Syngenta AG,* )
    *et al.*, No. 15-2279 )
)
    *Kellogg, et al., v. Watts Guerra, LLP,* )
    *et al.*, No. 18-2408 )
_____)

## **MEMORANDUM AND ORDER**

This matter arising from multi-district litigation (MDL) comes before the Court upon the Minnesota court's order concerning the allocation of the Minnesota portion of the Court's total attorney fee award (Doc. # 4178). Four groups of plaintiffs' attorneys have responded to the Minnesota court's allocation: Yira Law Office, Ltd. (Doc. # 4183); Johnson Becker, PLLC (Doc. # 4184); Shields Law Group, LLC (Doc. # 4185); and Toups/Coffman Plaintiffs' Counsel (Doc. # 4192). The Court concludes that there is no basis to disturb the Minnesota court's allocation among the attorneys assigned to the

Minnesota attorney fee pool, and the Court therefore awards attorney fees from the Minnesota state court common benefit pool to particular attorneys as set forth in Schedule A to the Minnesota order, which is incorporated into this Order as Attachment A. Accordingly, the Court overrules the objections and denies the motions for reconsideration filed by the four respondents listed above.

I. **Background**

By Memorandum and Order of December 7, 2018, the Court granted final approval of a settlement agreement resolving claims against Syngenta[1] and certified a settlement class. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.). At that time, the Court also awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33, *see id.* at *11-16, which fees compensated for work for the benefit for the settlement class and which also were "intended to account for all contingent fee recoveries from payments to class members from the settlement fund," *see id.* at *11, 15.

By Memorandum and Order of December 31, 2018, the Court ruled on objections and adopted in large part a report and recommendation by the special master concerning the initial allocation of attorney fees. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018) (Lungstrum, J.). The Court used a framework for

---

[1] The Court refers to defendants in the MDL collectively as "Syngenta".

allocating the total fee award to all attorneys whose efforts contributed to the settlement class's ultimate recovery, recommended by the special master, as follows:

> All attorneys who have filed fee applications are assigned to one of three common benefit pools – Kansas MDL, Minnesota state court, and Illinois federal court – based primarily on where they performed their common benefit work. Specified percentages of the total fee award are then allocated to those three pools, reflecting the relative contributions to the settlement class recovery by the attorneys in those pools (with further allocation within those three pools to be made in a subsequent procedure by the three courts separately).

*See id.* at *2. The Court also allocated a portion of the total fee award to a pool for individually-retained private attorneys (IRPAs), who would share that portion *pro rata* based on the ultimate recoveries by their claimant clients. *See id.* The Court adopted the master's recommendations concerning which attorneys were assigned to which common-benefit pools, *see id.* at *12, and it proceeded to allocate the total fee award among the four pools as follows: $246,633,333.33 (49 percent) to the Kansas MDL common benefit pool; $118,283,333.33 (23.5 percent) to the Minnesota state court common benefit pool; $78,016,666.67 (15.5 percent) to the Illinois federal court common benefit pool; and $60,400,000.00 (12 percent) to the IRPA pool. *See id.* at *13. Finally, the Court adopted the master's recommendation that each of the three courts be responsible for the further allocation among attorneys of the portion of the fee award allocated to its common benefit pool (with this Court, in consultation with the other courts, responsible for the administration of awards from the IRPA pool). *See id.* at *11, 15. The Court consulted with the judges overseeing the related litigation in Minnesota and Illinois, and all three

judges expressly approved of this framework and initial allocation of fees and all other rulings contained in the Memorandum and Order. *See id.* at *1.

Finally, the three judges agreed that the three common benefit pools would be allocated among particular attorneys based on any work that benefitted the settlement class, whether or not such work was performed pursuant to any common benefit order issued by a court. *See id.* at *14. The judges agreed on certain guidelines concerning the final allocation of fees from the common benefit pools, as follows:

> [A]lthough allocation from the three common benefit pools will take place in the next phase, the Court deems it appropriate to make a few remarks concerning how the three courts will consider certain types of work in making that allocation, with the intent that such considerations be consistent across the three pools. First, the courts will consider as common benefit work any work, either in litigating the claims or in pursuing the settlement with Syngenta, that contributed to the settlement and the ultimate recovery by the settlement class, thereby benefitting the entire settlement class. Second, as mentioned above, the courts do not consider work performed in recruiting clients to have inured to the common benefit of the settlement class. Third, work performed for particular individual clients may still be considered common benefit work if that work provided a benefit to the entire settlement class. For instance, many objectors have argued that work to complete and submit plaintiff fact sheets (PFSs) pursuant to court orders should be considered common benefit work for purposes of allocation from the common benefit pools. The courts agree that work completing a significant number of PFSs that were actually submitted to courts or Syngenta could benefit the entire settlement class. In considering such work (and other work), however, the courts will be mindful that the work would not reasonably have been undertaken at the highest attorney rate, for instance because much of the work could reasonably have been completed by lesser-experienced attorneys or even by paralegals or other staff. The same would be true, for example, for work drafting identical complaints (after drafting the first one) for multiple plaintiffs, or work submitting claims (in light of the ease of doing so). In short, although much work may qualify as common benefit work if sufficiently impactful or if on behalf of a large number of plaintiffs, not all common benefit work will be weighed equally in the allocation from the common benefit pools.

4

*See id.*

Thus, the Hon. Laurie J. Miller, of the District Court of Hennipin County, Minnesota, who presided over the related Minnesota state-court litigation, was responsible for allocating attorney fees from the Minnesota state court common benefit pool to attorneys assigned to that pool. On January 3, 2019, the Minnesota court set a schedule and designated Co-Lead Counsel ("CLC") from the Minnesota state-court litigation to report and make recommendations concerning that allocation. CLC did make such recommendations, and any objections thereto were briefed. Subsequently, by order of May 29, 2019, the Minnesota Court adopted the report and recommendation in part and modified it in part, and it ordered allocations to specific firms in Schedule A to the order.

By Memorandum and Order of April 2, 2019 (Doc. # 4134), this Court granted in part a motion by certain plaintiffs' counsel for a determination that all final fee allocations would ultimately emanate from this Court. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1454012 (D. Kan. Apr. 2, 2019) (Lungstrum, J.). The Court ruled that the class settlement agreement in this litigation gave the Court exclusive jurisdiction over the settlement fund and the allocation and distribution of attorney fees from that fund (with exceptions not relevant here). *See id.* at *2. Thus, the Court ruled that the allocation rulings by the Minnesota and Illinois courts should be filed in this Court, and that the Court would then issue final allocation orders and authorize the disbursement of funds to attorneys. *See id.* at *3. The Court also ruled that attorneys would have an opportunity to litigate whether this Court should adopt the other courts' allocations without alteration. *See id.* at *3-4. The Court proceeded to circumscribe the scope of its review as follows:

> The Court does intend, however, to defer to the reasoning of the other courts in making their allocations of the Minnesota and Illinois pools. As stated in the initial allocation order, those courts were tasked with the responsibility of making those allocations because they are in the best position to understand the relative contributions of the attorneys assigned to those pools to the ultimate outcome of the litigation against Syngenta. Thus, this Court will not entertain objections to specific allocations based on the judgment of those courts. Rather, attorneys will only be permitted to raise structural or procedural issues that are not dependent on any understanding or judgment of the relative contributions of the attorneys in that pool.

*See id.* at * 4. The Court elaborated further in a footnote:

> Thus, to state the most extreme example, an attorney could object to this Court on the basis of a fraud in the proceedings in the other court. The possibility of such an objection, however unlikely, requires that this Court at least provide a mechanism by which it could be raised. On the other hand, the Court would not entertain an objection based on the argument that the objector's contribution to the settlement class should have been given more value.

*See id.* at *4 n.4. The Court then set deadlines for objections to another court's allocation and responses thereto. *See id.* Finally, in its Memorandum and Order, the Court noted that it had consulted with the Minnesota and Illinois judges, who expressly approved of the rulings contained therein. *See id.* at *1 n.2.

After the Minnesota allocation order was filed in this Court, timely objections were filed by Yira Law Office, Ltd. ("Yira"); Johnson Becker, PLLC ("Johnson Becker"); and Shields Law Group, LLC ("SLG"). Minnesota CLC filed a brief in response to those objections. Toups/Coffman Plaintiffs' Counsel ("Toups/Coffman") also filed a response (at the deadline for responses to objections), in which it adopted the arguments made in the three objections. The Court now considers those objections.

## II. Yira Objection

Yira purports to object to "structural and procedural" problems in the Minnesota order. Specifically, Yira argues that its work on PFSs should have been compensated on an hourly lodestar basis instead of on a flat-fee basis; that it will not be compensated at all for completing PFSs for other attorneys; that others will unfairly receive greater PFS compensation through expense reimbursements; and that the Minnesota court should not have denied common benefit fees for work prior to the August 2015 appointment of lead counsel in Minnesota. These are not structural issues within the intended scope of the Court's review of the other court's allocation orders, however. Rather, Yira complains that its work should have been given more value as common benefit work and compensated at a higher level. Indeed, in its order, the Minnesota court specifically addressed and rejected these arguments concerning compensation of PFS work on a flat-fee basis and the recommendation that work performed prior to appointment of lead counsel should not be considered for the common benefit. Thus, these decisions by the Minnesota court were not arbitrary. In accordance with its prior order concerning the scope of its review, the Court will defer to the judgment of the Minnesota court concerning the value of Yira's contribution to the ultimate result in this litigation and the benefit of the settlement class, and the Court therefore overrules Yira's objections.

## III. SLG Objection and Motion for Reconsideration

SLG states that it does not challenge the judgment of the Minnesota court in making this allocation, and it concedes that its "objection" is more akin to a motion for

reconsideration. SLG seeks reconsideration of this Court's December 2018 order in which it adopted the four-pool allocation structure. SLG argues that the use of that structure led to inequitable results (which had to occur before it knew to object, according to SLG). Specifically, SLG argues that it is unfair that certain firms in the Illinois federal court common benefit pool will be better compensated (according to the Illinois special master's report and recommendation concerning allocation of the Illinois pool, on which the Illinois court has not yet ruled), based on a comparison of the number of corn producers represented by the firms and the number of common benefit hours claimed. SLG questions why it should matter where a firm filed its cases or performed its work.

The Court rejects this argument. First, SLG's argument comes far too late. *See* D. Kan. Rule 7.3(b) (14-day deadline for a motion for reconsideration of a non-dispositive order). Any such objection to the four-pool structure should have been raised in an objection to the special master's report and recommendation in which the structure was proposed.[2] The lack of timeliness in making this argument is prejudicial, as the allocation process for each pool is well underway (and has been completed for the Kansas MDL pool). SLG states that it had to "play the game and see the result" before it could offer its "critique", and it likens the end results of the allocations to new evidence that could justify reconsideration. SLG was not permitted to have it both ways, however – it could not simply

---

[2] SLG filed an objection to that report and recommendation, in which it argued that the IRPA pool allocation was insufficient and that PFS work should be adequately compensated across all jurisdictions. It did not argue that the four-pool structure itself would lead to inequitable results. SLG's present argument is not based on the rate of compensation for PFS work.

go along with the Court's approach and roll the dice hoping for a good result, and then complain about the approach if ultimately dissatisfied with the outcome.

Moreover, SLG has not persuaded the Court that the four-pool structure should not have been adopted. Again, SLG is complaining solely about the end result as it affects a few firms, but it has not explained why the use of the four-pool structure was legally deficient or even why its use was not superior to some other method of allocation. Nor has SLG addressed the reasons given by the Court for adopting that method of allocation. As explained the Court's prior order, the litigation on the three distinct fronts contributed to the ultimate class benefit in different ways, and the allocation of fees to the different pools would allow the courts most familiar with firms' work to allocate fees within the pools. SLG's work is not directly comparable to the work by the Illinois firms because the work on the Illinois front contributed to the settlement in a different way than SLG's work. For these reasons, the Court is not persuaded that it must start all over with a different allocation methodology. The Court overrules SLG's objection and denies its motion for reconsideration.

**IV.    Johnson Becker Objection and Motion for Reconsideration**

In its December 2018 Memorandum and Order, the Court adopted the special master's proposed assignment of firms to the three common benefit pools, including the assignment of Johnson Becker to the Minnesota pool. In its objection, Johnson Becker notes that it filed cases and performed work in both Minnesota and Illinois, and it complains about the Minnesota court's valuation of its common benefit work performed on cases filed

in Illinois. Relying on the pending report and recommendation regarding allocation of the Illinois common benefit pool, Johnson Becker argues that it would receive a much greater fee award for its Illinois common benefit work if it had been placed in the Illinois pool for purposes of that work or if the Minnesota court had employed the Illinois special master's methodology in evaluating the Illinois work.

First, the Court overrules this objection to the extent that Johnson Becker argues that the Minnesota court should have applied the Illinois master's methodology to Johnson Becker's Illinois work. The Minnesota court expressly declined to apply a different methodology solely for Johnson Becker's Illinois work, and the Court defers to the judgment of the Minnesota court with respect to the evaluation of this firm's common benefit work. Johnson Becker even conceded in its objection that this ruling by the Minnesota court makes sense based on that judge's unfamiliarity with the Illinois litigation.

Johnson Becker mainly argues that it should have been placed in both the Minnesota and Illinois pools, with each court allocating fees for work performed on cases in its jurisdiction. By that argument, Johnson Becker essentially seeks reconsideration of the Court's order assigning it only to the Minnesota pool. That argument is rejected as untimely, however. *See* D. Kan. Rule 7.3(b) (imposing 14-day deadline for a motion to reconsider a non-dispositive ruling). After the special master filed her report and recommendation that included the assignment of Johnson Becker to the Minnesota pool, Johnson Becker filed a "Request for Clarification." In that filing, Johnson Becker noted that it had performed work in both Minnesota and Illinois, and it requested that it be assigned to both pools. In the alternative, Johnson Becker asked the Court to clarify

10

whether it would also be compensated for its Illinois common benefit work from the Minnesota pool.

At the hearing on the report and recommendation, the special master addressed Johnson Becker's request for clarification. She stated that although a number of firms did work in more than one jurisdiction, it made the most sense to assign each firm only to one pool (with only one exception), and that she intended in her recommendation that each firm would be compensated from its pool for all of its common benefit work, wherever performed. Later at the hearing, Johnson Becker's counsel stated that the special master's explanation had clarified the issue and had addressed the firm's concern concerning whether its Illinois time would compensated after placement in the Minnesota pool. He also noted that the firm had had concerns about one court evaluating work performed in another court and about its Illinois time being evaluated by Minnesota counsel who had been adverse in some respects to the Illinois litigation; counsel stated, however, that he now knew that the firm would be treated fairly by Minnesota counsel and the Minnesota court regarding its Illinois time. Johnson Becker's counsel concluded as follows: "So, Your Honors, what we really came for today was to get that clarification. I think we've received it." Having received its requested clarification and assurance, Johnson Becker did not make any argument at the hearing that it should be placed in both the Minnesota and Illinois pools.

In its December 2018 Memorandum and Order, the Court adopted the special master's assignment of firms to the three common benefit pools, and thus it did not grant

11

Johnson Becker's request to be placed in two pools. Regarding Johnson Becker's request for clarification, the Court stated as follows:

> The Court also clarifies that each applicant will eventually receive an award of fees based on its common benefit work anywhere, performed with respect to cases in any jurisdiction, regardless of the particular pool into which the applicant is placed. Each applicant is placed into a single pool so that all of its common benefit contributions may be considered by a single court in the next phase. Thus, the Court grants the request by Johnson Becker for clarification on this point.

*See Syngenta*, 2018 WL 6839380, at *12. The Court also stated the following in a footnote:

> It was noted at the hearing that the R&R inadvertently places the Paul firm in both the Kansas and Minnesota pools. It was further revealed, however, that that firm is perhaps unique with respect to the amount of approved common benefit work performed in both jurisdictions, and that Kansas and Minnesota leadership have anticipated a common benefit award for that firm from both pools. Thus, the Court will not alter the placement in two pools of this one firm, with the assumption that eventual allocations will mindfully ensure a fair recovery by the firm.

*See id.* at *12 n.10. Johnson Becker did not seek reconsideration of the Court's decision to assign it only to the Minnesota pool. In its subsequent Order of January 9, 2019, the Court noted that in fact six additional firms had been assigned by the special master to both the Kansas and Minnesota pools because they had performed audited common benefit work in both jurisdictions. Thus, with the consent of the Kansas and Minnesota leadership (which were designated by this Court and the Minnesota court to undertake initial allocations from their respective pools), the Court ordered that those firms would remain in both pools. Johnson Becker did not renew its request to be placed in two pools in light of this order.

Thus, Johnson Becker effectively abandoned any request to be placed into both the Minnesota and Illinois common benefit pools. It accepted the assignment only to the Minnesota pool, while expressing its confidence that it would be treated fairly with respect to its Illinois time. Like SLG, Johnson Becker effectively gambled that it would be satisfied with its fee award under the procedure set by the Court, and it may not now attack the process as unfair. Again, the fact that a firm is unhappy with the result does not mean that the process was legally deficient or even that the process could have been improved. The decision to assign most firms to single pools was reasoned, not arbitrary, and the fact that the Kansas and Minnesota litigations involved audited common benefit time distinguishes Johnson Becker (with work in Kansas and Illinois) from the seven firms that were assigned to the Kansas and Minnesota pools.

In addition, in its objection, Johnson Becker has not explained why the Court's decision to place it in only the Minnesota pool was erroneous, other than by reference to the end result (which is only presumed, since the Illinois court has not yet ruled). The assignment might have worked in Johnson Becker's favor, as the Minnesota court could have awarded more in fees for the Illinois work than the Illinois court would have. Indeed, in its order, the Minnesota court stated that it was not persuaded that Johnson Becker would have fared better in the Illinois pool.

The Court also rejects Johnson Becker's argument that its assignment only to the Minnesota pool resulted in a violation of its due process rights. For the reasons set forth in Minnesota CLC's response brief, Johnson Becker has not established that it had a protected property interest in an attorney fee award of any specific amount or in the

application of any particular methodology. As noted above, Johnson Becker was not the victim of any purely arbitrary decision. Moreover, Johnson Becker was not denied fees without adequate process. Johnson Becker had multiple opportunities to request placement also in the Illinois pool, but it abandoned any such request. Johnson Becker was also afforded ample process with respect to the Minnesota allocation, as it made multiple submissions to Minnesota CLC prior to its recommendation and submitted multiple briefs to the Minnesota court before it issued its allocation order.

Finally, the Court does not agree with Johnson Becker that its objection is easily remedied. Johnson Becker argues that the Illinois special master could simply include its Illinois time in his allocation. The special master has already issued his recommendations, however, and the interested parties have begun to litigate the review of those recommendations in the Illinois court. The entire process would need to be restarted to accommodate Johnson Becker's request. The potential for that very prejudice required Johnson Becker to assert any objection to its pool assignment at the appropriate time, before the respective allocation processes were undertaken.

Accordingly, the Court overrules Johnson Becker's objection and denies any motion for reconsideration of its prior order by which it assigned firms to common benefit pools.

### V. Toups/Coffman Response

On June 26, 2019, the deadline for responses to objections to the Minnesota order, Toups/Coffman filed a response in which it purports to adopt the arguments regarding structural and procedural defects made by the other three objectors. The Court overrules

14

any such objection by Toups/Coffman for multiple reasons. First, any objection was due two weeks earlier. Second, Toups/Coffman was assigned to the Kansas MDL common benefit pool, and the Minnesota court therefore did not consider Toups/Coffman's entitlement to fees; thus, Toups/Coffman has no standing to object to this Court's adoption of the Minnesota court's allocation of the Minnesota pool. Moreover, the issues raised in the Yira and Johnson Becker objections do not affect Toups/Coffman's application for fees in any way. Toups/Coffman has had ample opportunity to object at every stage of the fee-award process, and the Court overruled Toups/Coffman's objections in its allocation of fees from the Kansas MDL pool. Finally, the Court has rejected the arguments of the other objectors, and it therefore overrules Toups/Coffman's untimely objection on the merits as well.

IT IS THEREFORE ORDERED BY THE COURT THAT the Minnesota state court common benefit pool of attorney fees shall be allocated and fees are hereby awarded to particular attorneys in accordance with Schedule A of the Minnesota Order (Doc. # 4178), which has been incorporated into this Order as Attachment A. The Court hereby overrules the objections to the Minnesota Order filed by Yira Law Office, Ltd. (Doc. # 4183); Johnson Becker, PLLC (Doc. # 4184); Shields Law Group, LLC (Doc. # 4185); and Toups/Coffman Plaintiffs' Counsel (Doc. # 4192).

IT IS SO ORDERED.

Dated this 16th day of July, 2019, in Kansas City, Kansas.

                                                    s/ John W. Lungstrum
                                                    John W. Lungstrum
                                                    United States District Judge