IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, | MDL No. 2591 |
| | Case No. 14-md-2591-JWL |
| This Document Relates to All Cases <u>Except</u>: | |
| *Louis Dreyfus Co. Grains Merchandising LLC v. Syngenta AG, et al.*, No. 16-2788 | |
| *Trans Coastal Supply Co., Inc. v. Syngenta AG, et al.*, No. 14-2637 | |
| *The Delong Co., Inc. v. Syngenta AG, et al.*, No. 17-2614 | |
| *Agribase Int'l Inc. v. Syngenta AG, et al.*, No. 15-9900 | |
| *Kellogg, et al., v. Watts Guerra, LLP, et al.*, No. 18-2408 | |

## **MEMORANDUM AND ORDER**

This matter arising from multi-district litigation (MDL) comes before the Court upon the report and recommendation (R&R) of the special master concerning awards of expenses (Doc. # 4145). As more fully set forth below, the Court rules on objections to the report and recommendation as follows: the objection of Meshbesher & Spence, Ltd. (Doc. # 4170) is **sustained**; and the objections of Paul Byrd Law Firm, PLLC (Doc. ## 4172, 4174) and Shields Law Group, LLC (Doc. # 4175) are **overruled**. The Court adopts the special master's recommendations as set forth her R&R and her response to the

objections, and the Court awards expenses to attorneys as set forth in the special master's Amended Exhibit E (Doc. # 4189-1), which is incorporated into this order as Attachment A.

I. **Background**

On April 10, 2018, the Court granted preliminary approval of a settlement agreement resolving claims against Syngenta[1] and certified a settlement class. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) (Lungstrum, J.). On that date, the Court also set a deadline for any motion seeking attorney fees or expenses from the settlement fund. The Court subsequently appointed a special master, who issued a Report and Recommendation on November 21, 2018, concerning awards of attorney fees and expenses.

By Memorandum and Order of December 7, 2018, the Court granted final approval of the settlement. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.). At that time, the Court also awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33, *see id.* at *11-16, which fees compensated for work for the benefit for the settlement class and which also were "intended to account for all contingent fee recoveries from payments to class members from the settlement fund," *see id.* at *11, 15.

---

[1] The Court refers to defendants in the MDL collectively as "Syngenta".

By Memorandum and Order of December 31, 2018, the Court ruled on objections and adopted in large part the special master's report and recommendation concerning the initial allocation of attorney fees, including the method of allocating fees from four pools. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018) (Lungstrum, J.). The Court declined to adopt the master's recommendation that total expenses be approved up to a maximum amount represented by the total of the initial expense applications. *See id.* at \*15, n.12. The Court did adopt other recommendations concerning expenses (to which no attorney had objected) as follows:

> First, the Court shall award reimbursement of reasonable expenses from the settlement fund, separate from the one-third award of attorney fees.

> Second, the Court orders that the standards and limitations contained at pages 12 through 14 of the Court's CBO [Common Benefit Order] of July 27, 2015, shall apply here and govern the Court's determination of reasonable expenses that may be reimbursed from the settlement fund. Those standards set limits for travel expenses (airfare, hotel, meals, cash outlays, car rental, mileage) and other expenses (telephone charges, shipping, postage, fax and photocopy, computer research). Such limitations are typically applied by courts and by business clients, and because they were announced in the CBO at an early stage of the litigation, it is appropriate that they govern here. The Court notes (as does the special master) that items not included in the CBO (such as advertising and expenses for recruiting or entertainment) generally constitute firm overhead, and items properly considered overhead will not be reimbursed as reasonable expenses.

> Third, the special master shall perform an additional review of expenses, and she may require the submission by applicants of supplemental documentation (particularly with respect to miscellaneous expenses, air travel, and meal expenses). Upon completion of that review, the master shall file a further report and recommendation concerning awards for reimbursement of expenses from the settlement fund.

> Fourth, the Court intends that attorneys representing individual clients on a contingent fee basis shall recover expenses only as awarded by the Court. Thus, such attorneys shall be prohibited from collecting any other

3

expenses from their clients related to this representation under any contingent fee contract. As with fees, this will ensure that awards are reasonable and that the settlement class members recover from the settlement fund on equal terms (whether or not they retained counsel). In light of this prohibition, the Court deems it appropriate to reopen the period for applications for reimbursement of reasonable expenses. The same procedure and deadline set out above with respect to new IRPA pool fee applications shall also apply with respect to new requests for reimbursement of expenses. *See supra* Part II.C.8.

Fifth and finally, any awards of reasonable expenses from the settlement fund shall be made by this Court, as presumed by the special master in the R&R. It is reasonable for a single court to award all expenses, so that the standards may be applied consistently to all expense applications, and no attorney has argued to the contrary.

*See id.* at *15 (footnote omitted).

On April 19, 2019, after a long process in which the special master solicited and reviewed the original and additional expense applications and supporting material and followed up with applicants as necessary, the special master issued her report and recommendation, in which the master has recommended specific awards of expenses to attorneys and attorney groups. Objections were received from three firms: Meshbesher & Spence, Ltd. ("Meshbesher"); Paul Byrd Law Firm, PLLC ("PBLF"); and Shields Law Group, LLC ("SLG").

## II. <u>Approval and Adoption of Award Recommendations</u>

The Court has previously noted its authority to award attorney fees and expenses from the settlement fund in this case. *See Syngenta*, 2018 WL 6436074, at *11 (citing authorities). By Order of November 15, 2018, pursuant to Fed. R. Civ. P. 23(h)(4), the Court appointed the special master to review applications for fees and expenses and to issue

a report and recommendation (Doc. # 3812). Rule 23 allows a court to refer the issue of fee awards and non-taxable costs to a special master as provided in Rule 54, which in turn directs to Rule 53. S*ee* Fed. R. Civ. P. 23(h)(4), 54(d)(2)(D). Rule 53 provides that, absent the parties' stipulation, a court reviews de novo any objection to a special master's factual findings and legal conclusions. *See* Fed. R. Civ. P. 53(f)(3), (4).

As set forth in her R&R, the special master engaged in a lengthy process to make her recommendations concerning awards of reasonable expenses. Applicants were required to file applications and complete standardized forms. As noted above, the Court reopened the application process in its initial allocation order, and in its Order of January 4, 2019 (Doc. # 3886), the Court required applicants to complete a form spreadsheet with itemized information. At that time, the Court also allowed applicants the opportunity to revise their previously-submitted applications to reduce or remove expenses to conform to the CBO's standards and limitations, although applicants were not permitted to add new expenses. The special master consulted with the Kansas and Minnesota leadership, who had previously considered expenses under their respective CBOs; she contacted applicants for additional information – multiple times when necessary – when submissions were insufficient to support the requests; and she granted any requests for additional time in which to submit information. Thus, each applicant had ample and sufficient opportunity to support its claim for an award of expenses.

In making her recommendations, the special master did not deny any request because the applicant failed to submit information in the proper format, although she properly required at least that the applicant have filed an application with one of the three

5

courts, treating that application's request as the maximum possible award, in accordance with the Court's orders. She did deny or limit expense awards if applicants did not submit sufficient information to support requests, although as concluded above, each applicant had a full and fair opportunity to perfect its application. She accepted representations concerning expense claims as true in the absence of a reason to do otherwise, and she purported to err on the side of allowing expenses. She applied a comprehensive level of scrutiny to the requests, although she admittedly did not drill down to a level that would not be considered cost-effective. It is clear that the special master attempted to follow the guidance provided in the Court's orders in exercising her judgment with respect to the requests for expenses. By the conclusion of the submission process, applicants were requesting awards totaling approximately $43 million, and in her R&R the special master recommends awards to specific firms totaling $31,297,117.70.

With one modification as set forth below, the Court adopts the special master's recommendations as set forth in the R&R and its schedules, and it awards reasonable expenses to attorneys as set forth therein. The special master's review was quite thorough. She properly afforded the applicants every opportunity to support their requests, and she applied the Court's principles and her judgment in an appropriate and reasoned manner. The fairness of her recommendations is supported by the fact that although over 240 firms or groups submitted applications, only three have filed objections to the R&R. The Court concludes that those recommendations provide for reasonable awards of expenses incurred in this litigation.

### III. Meshbesher Objection

According to the R&R, Meshbesher sought $36,578.52, but the special master recommended an award of only $11,956.13. Meshbesher objects, arguing that it did support the request for the larger amount, but that a formatting error caused its submitted spreadsheet to ignore some line items and thus incorrectly to produce a mathematical total in the smaller amount. The special master agrees that Meshbesher should receive the larger amount, she recommends an award in the requested amount, and she has submitted revised schedules to her R&R to reflect the proper treatment of Meshbesher's application.[2] Accordingly, the Court sustains this objection, and it awards expenses to Meshbesher in the amount of $36,578.52, as set forth in the revised schedule that has been incorporated in this order.

### IV. PBLF Objections

#### A. *Objection Concerning Temporary Employees*

In its final spreadsheet, PBLF claimed expenses in the amount of $539,603.02, including $381,903.84 in the category of "Expert/Consultant Fees Not Included in Common Benefit," but the special master has recommended a total award to PBLF of $328,305.16, including $194,414.69 for expert/consultant expenses. PBLF objects with

---

[2] The Court appreciates the special master's diligence in subsequently going back to make sure that this type of error did not afflict any other applicant's spreadsheet.

respect to the recommended denial of expert/consultant expenses for paying 29 workers a total of $187,037.11.[3]

In addressing expenses in its allocation order, the Court stated that items properly considered overhead would not be considered reasonable expenses. *See Syngenta*, 2018 WL 6839380, at *15. In her R&R, the special master described her consideration of this category of expert/consulting fees as follows:

> **Expert/Consulting Fees.** As a general rule, I recommended approval of expenses for "experts" retained by law firm groups who were described as assisting in getting information from existing clients and/or the FSA in order to complete PFSs, respond to discovery, fill out opt out forms from the certified litigation class, or apply for settlement benefits. . . . I also generally recommended acceptance of charges for contract employees, including contract attorneys, who were described as doing similar work (*e.g.*, assisting with client PFSs [plaintiff fact sheets] or discovery or responding to telephone inquiries) or were involved in assisting at meetings reported to be with existing clients. I did not, however, recommend acceptance of requests for reimbursement of hourly rates or salaries for law firm employees who performed such tasks, believing that those costs are subsumed in attorneys' fees awards, and should not be reimbursed as expenses. . . .

PBLF states that it does not object to the special master's methodology, in which she drew this distinction between "contract employees" and "law firm employees."

PBLF does object to the characterization of these 29 workers as firm employees. PBLF argues that its payments to these workers are not properly considered overhead of the firm. PBLF points to the facts that these workers were hired only for the duration of this litigation, worked on no other firm matters (with only minor exceptions), had their own workspace, and were paid an hourly wage without benefits. PBLF argues that the fact that

---

[3] The special master effectively recommended denial of $187,489.15 in expenses in this category. It is not clear why PBLF objects with respect to a slightly lesser amount.

8

four other associated firms shared in the cost of paying these employees demonstrates that this was not part of the firm's regular overhead. PBLF concedes that it issued W-2s for these workers (instead of 1099s used for independent contractors), based on the level of control the firm exerted over the workers, but it argues that such treatment for tax purposes does not mean that these costs are properly considered overhead.

The Court rejects this argument. As noted above, PBLF does not object to the special master's methodology, and the Court agrees that it is proper to make this basic distinction between contract workers and firm employees. As noted by the special master in her R&R, the reason for the distinction is that work by firm employees is more properly considered in the context of an application for reasonable attorney fees. Thus, the Court's primary consideration in considering this particular work is whether the work is more properly considered as attorney fee work or an expense. To put it more simply, the key is whether the firm did the work in-house, with its own employees, or whether the firm shopped the work out to an outside party or parties. In this sense, it does not matter whether the workers were paid hourly or given a salary, or whether they were hired on a temporary or permanent basis. In this case, PBLF chose to hire these workers and pay them directly as employees, exerting a level of control sufficient to demand treatment as employees for tax purposes. Thus, these workers are reasonably treated as firm employees and not as contract workers in this context, and any reimbursement for this time should have come

through the attorney fee award process.[4] Accordingly, the Court overrules this objection by PBLF.

### B. *Motion for Reconsideration to Allow New Expenses*

PBLF has also objected to the R&R in the form of a motion for reconsideration (Doc. # 4174). PBLF states in its motion that it only realized that it could have sought expenses relating to the settlement claims process after it reviewed the R&R, in which the special master discusses expert/consulting fees for particular tasks, including seeking settlement benefits. PBLF thus seeks to amend its application to seek an additional $31,549.75 in expenses incurred in the claims process.

The Court in its discretion denies this request to reopen the expense application process to allow a new claim by PBLF. All applicants were provided a sufficient opportunity in which to make their expense requests. Most importantly, PBLF has not explained how it was misled in any way, or why it reasonably believed that this particular category of costs would not be reimbursed. In fact, neither the Court nor the special master made any pronouncements excluding expenses relating to the settlement process. PBLF could have requested any expenses that it desired (subject to the Court's guidance concerning permissible expenses), and it chose not to submit these expenses. It would be

---

[4] Indeed, in its submitted spreadsheet, PBLF described these workers as having performed specific and other tasks necessary to complete PFSs, and PBLF has been awarded attorney fees in the amount of $707,925.61 specifically for work on 2,347 PFSs. *See* Memorandum and Order of July 16, 2019, Att. A at 1. That award, on a flat-fee basis, was intended to compensate the firm for all work performed on those PFSs by firm employees (whether temporary or permanent).

10

unfair to the integrity of the process to allow PBLF to make a new claim at this time.[5] The Court therefore overrules this objection.

### V. **SLG Objection and Motion to Amend**

SLG has filed an objection to the R&R and "corresponding motion" to amend its application for expenses. SLG seeks to add a claim for $59,092.08 for payment to certain contract workers (who worked on PFSs and settlement claims); and a claim for $40,053.51 for telephone charges incurred communicating with clients regarding PFSs and the settlement claims process. SLG originally included such expenses in its filed application, but it later abandoned and withdrew such expenses in submitting its detailed spreadsheet based on a "mistaken belief" that they constituted impermissible "overhead" expenses.

First, the Court rejects this request with respect to the telephone charges. After reviewing the Court's orders, SLG decided that these expenses were properly considered part of the firm's overhead. SLG has not explained why it made that determination or why that determination was erroneous.[6] Nor has SLG provided any detail concerning those charges or explained why they should be considered discrete expenses related to this

---

[5] In addition, the majority share of the new expenses comprises payments to temporary workers. In PBLF's supporting declaration, these "temporary workers" are described in the same way that the firm described the 29 workers addressed above – they were "hired" to be "temporary workers," not "full-time, permanent employees;" they worked only on this litigation; and they were paid on any hourly basis, without benefits. There is no assertion that PBLF paid an outside entity for this work. Accordingly, for the same reasons discussed above, such workers would be considered law firm employees (not contract workers), whose time should be compensated only through the attorney fee award process.

[6] SLG has not addressed the telephone charges at all in its reply brief.

11

litigation instead of ordinary firm overhead. Accordingly, SLG has not shown that these charges should be reimbursed as expenses, and the Court declines in its discretion to reopen the application process to allow SLG to assert this claim that it previously abandoned.

The Court next addresses the new claim for expenses for contract workers. As explained in its reply brief, SLG withdrew this expense claim because it was instead including such work in its attorney fee application and did not want to "double-dip". After the special master issued her R&R, SLG realized that it could have been awarded expenses for its contract workers. Moreover, argues SLG, such an award would not constitute double-dipping because the Minnesota court declined to award firms their lodestar amount in attorney fees for work on PFSs.

The Court rejects the request to submit this new claim for expenses. SLG voluntarily chose to submit this incurred cost in its fee application instead of in its expense application. As noted above with respect to PBLF's objection, there was no reason to believe that such charges for contract workers could not support an award of expenses. SLG may not try the other route simply because it is unhappy with the result of the route that it did choose. Moreover, the fee award that SLG received for PFS work ($643,980.05 for 2,135 PFSs) was intended to provide reasonable compensation to SLG for the PFS work that it submitted in its fee application, and thus the specter of double-dipping remains. Accordingly, the Court in its discretion declines to reopen the process to allow SLG to submit this new claim at this time, and SLG's objection to the R&R is hereby overruled (and its motion to amend denied).

IT IS THEREFORE ORDERED BY THE COURT THAT the special master's report and recommendation concerning expense awards is hereby adopted as modified herein, and expenses are hereby awarded to particular attorneys in accordance with the special master's Amended Exhibit E (Doc. # 4189-1), which is incorporated into this order as Attachment A. The Court **sustains** the objection of Meshbesher & Spence, Ltd. (Doc. # 4170), and it **overrules** the objections of Paul Byrd Law Firm, PLLC (Doc. ## 4172, 4174) and Shields Law Group, LLC (Doc. # 4175).

IT IS SO ORDERED.

Dated this 19th day of July, 2019, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge