IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, <br><br>This Document Relates to All Cases <u>Except</u>: <br><br>*Trans Coastal Supply Co., Inc. v. Syngenta AG, et al.*, No. 14-2637 <br><br>*The Delong Co., Inc. v. Syngenta AG, et al.*, No. 17-2614 <br><br>*Agribase Int'l Inc. v. Syngenta AG, et al.*, No. 15-9900 <br><br>*Kellogg, et al., v. Watts Guerra, LLP, et al.*, No. 18-2408 | MDL No. 2591 <br><br>Case No. 14-md-2591-JWL |

## **MEMORANDUM AND ORDER**

This matter arising from multi-district litigation (MDL) comes before the Court upon the Illinois court's order concerning the further allocation of the portion of the total attorney fee award that the Court previously allocated to the Illinois federal court common benefit pool (Doc. # 4227-1). Five groups of plaintiffs' attorneys have responded to the Illinois court's allocation: The Clark/Phipps Group ("Clark") (Doc. # 4245); O'Hanlon Demerath & Castillo and Demerath Law Office ("Demerath") (Doc. # 4246); The Law Offices of A. Craig Eiland ("Eiland") (Doc. # 4247); Watts Guerra LLP ("Watts") (Doc. # 4241); and Toups/Coffman Plaintiffs' Counsel ("Toups") (Doc. # 4259). The Court concludes that there is no basis to disturb the Illinois court's allocation among the attorneys

assigned to the Illinois attorney fee pool who applied for an award of common benefit fees, and the Court therefore awards attorney fees from the Illinois federal court common benefit pool to particular attorney groups as set forth herein. Accordingly, the Court overrules the objections and denies the motions for reconsideration filed by the respondents listed above.

I.  **Background**

By Memorandum and Order of December 7, 2018, the Court granted final approval of a settlement agreement resolving claims against Syngenta[1] and certified a settlement class. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.). At that time, the Court also awarded total attorney fees in the amount of one third of the settlement fund, or $503,333,333.33, *see id.* at *11-16, which fees compensated for work for the benefit for the settlement class and which also were "intended to account for all contingent fee recoveries from payments to class members from the settlement fund," *see id.* at *11, 15.

By Memorandum and Order of December 31, 2018, the Court ruled on objections and adopted in large part a report and recommendation by the special master concerning the initial allocation of attorney fees. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018) (Lungstrum, J.). The Court used a framework for allocating the total fee award to all attorneys whose efforts contributed to the settlement class's ultimate recovery, recommended by the special master, as follows:

---

[1] The Court refers to defendants in the MDL collectively as "Syngenta".

> All attorneys who have filed fee applications are assigned to one of three common benefit pools – Kansas MDL, Minnesota state court, and Illinois federal court – based primarily on where they performed their common benefit work. Specified percentages of the total fee award are then allocated to those three pools, reflecting the relative contributions to the settlement class recovery by the attorneys in those pools (with further allocation within those three pools to be made in a subsequent procedure by the three courts separately).

*See id.* at *2. The Court also allocated a portion of the total fee award to a pool for individually-retained private attorneys (IRPAs), who would share that portion *pro rata* based on the ultimate recoveries by their claimant clients. *See id.* The Court adopted the master's recommendations concerning which attorneys were assigned to which common-benefit pools, *see id.* at *12, and it proceeded to allocate the total fee award among the four pools as follows: $246,633,333.33 (49 percent) to the Kansas MDL common benefit pool; $118,283,333.33 (23.5 percent) to the Minnesota state court common benefit pool; $78,016,666.67 (15.5 percent) to the Illinois federal court common benefit pool; and $60,400,000.00 (12 percent) to the IRPA pool. *See id.* at *13. Finally, the Court adopted the master's recommendation that each of the three courts be responsible for the further allocation among attorneys of the portion of the fee award allocated to its common benefit pool (with this Court, in consultation with the other courts, responsible for the administration of awards from the IRPA pool). *See id.* at *11, 15. The Court consulted with the judges overseeing the related litigation in Minnesota and Illinois, and all three judges expressly approved of this framework and initial allocation of fees and all other rulings contained in the Memorandum and Order. *See id.* at *1.

Finally, the three judges agreed that the three common benefit pools would be allocated among particular attorneys based on any work that benefitted the settlement class, whether or not such work was performed pursuant to any common benefit order issued by a court. *See id.* at \*14. The judges agreed on certain guidelines concerning the final allocation of fees from the common benefit pools, as follows:

> [A]lthough allocation from the three common benefit pools will take place in the next phase, the Court deems it appropriate to make a few remarks concerning how the three courts will consider certain types of work in making that allocation, with the intent that such considerations be consistent across the three pools. First, the courts will consider as common benefit work any work, either in litigating the claims or in pursuing the settlement with Syngenta, that contributed to the settlement and the ultimate recovery by the settlement class, thereby benefitting the entire settlement class. Second, as mentioned above, the courts do not consider work performed in recruiting clients to have inured to the common benefit of the settlement class. Third, work performed for particular individual clients may still be considered common benefit work if that work provided a benefit to the entire settlement class. For instance, many objectors have argued that work to complete and submit plaintiff fact sheets (PFSs) pursuant to court orders should be considered common benefit work for purposes of allocation from the common benefit pools. The courts agree that work completing a significant number of PFSs that were actually submitted to courts or Syngenta could benefit the entire settlement class. In considering such work (and other work), however, the courts will be mindful that the work would not reasonably have been undertaken at the highest attorney rate, for instance because much of the work could reasonably have been completed by lesser-experienced attorneys or even by paralegals or other staff. The same would be true, for example, for work drafting identical complaints (after drafting the first one) for multiple plaintiffs, or work submitting claims (in light of the ease of doing so). In short, although much work may qualify as common benefit work if sufficiently impactful or if on behalf of a large number of plaintiffs, not all common benefit work will be weighed equally in the allocation from the common benefit pools.

*See id.*

4

Thus, the Hon. David Herndon, of the United States District Court for the Southern District of Illinois, who presided over the related Illinois federal-court litigation, was initially responsible for allocating attorney fees from the Illinois federal court common benefit pool to attorneys assigned to that pool. Judge Herndon had already appointed the Hon. Daniel Stack (a retired judge who had served as a special master for settlement purposes) as a special master pursuant to Fed. R. Civ. P. 53(c) to make a recommendation concerning any allocation of attorney fees by that court. In January 2019, however, Judge Herndon retired, and on January 9, 2019, the Illinois federal cases were reassigned to the Hon. Nancy J. Rosenstengel – who thus assumed the responsibility for making the allocation of fees from the Illinois federal court common benefit pool.

On March 26, 2019, Judge Stack issued his report and recommendation ("R&R") concerning the allocation from the Illinois pool. In addition to performing a subjective analysis of the relative contributions of the Illinois pool applicants to the common benefit of the settlement class, Judge Stack also performed a quantitative analysis, in which he considered the applicants' relative common-benefit hours claimed, expenses, client acquisition costs, and number of claimants. Judge Stack recommended the following allocations by percentage of the Illinois pool: Clark – 79 percent; Conmy Feste – 0 percent (denial of application for common benefit fees); Eiland – 4 percent; Heninger Garrison Davis Group – 12.4 percent; Demerath – 2 percent; and Onder – 2.6 percent. The Heninger Garrison Davis Group ("Garrison") and Onder filed objections to the R&R, and responses were filed by Clark, Eiland, and Demerath, as well as by Judge Stack (whose response included a declaration by Judge Herndon). On August 19, 2019, the Illinois court (Judge

5

Rosenstengel) issued a memorandum and order ("the Illinois Order"), in which it conducted a *de novo* review of the allocation of the Illinois pool. The court criticized portions of Judge Stack's analysis, performed its own analysis of the relative contributions of the applicants, and allocated fees as follows: Clark – 49 percent; Conmy Feste – 0 percent (denial of application for common benefit fees); Eiland – 3 percent; Garrison – 43.4 percent; Demerath – 1 percent; and Onder – 3.6 percent.

By Memorandum and Order of April 2, 2019 (Doc. # 4134), this Court granted in part a motion by certain plaintiffs' counsel (including Clayton Clark on behalf of the firm of Clark, Love & Hutson, lead counsel in one of the Illinois federal cases) for a determination that all final fee allocations would ultimately emanate from this Court. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1454012 (D. Kan. Apr. 2, 2019) (Lungstrum, J.). The Court ruled that the class settlement agreement in this litigation gave the Court exclusive jurisdiction over the settlement fund and the allocation and distribution of attorney fees from that fund (with exceptions not relevant here). *See id.* at *2. Thus, the Court ruled that the allocation rulings by the Minnesota and Illinois courts should be filed in this Court, and that the Court would then issue final allocation orders and authorize the disbursement of funds to attorneys. *See id.* at *3. The Court also ruled that attorneys would have an opportunity to litigate whether this Court should adopt the other courts' allocations without alteration. *See id.* at *3-4. The Court proceeded to circumscribe the scope of its review as follows:

> The Court does intend, however, to defer to the reasoning of the other courts in making their allocations of the Minnesota and Illinois pools. As stated in the initial allocation order, those courts were tasked with the

6

responsibility of making those allocations because they are in the best position to understand the relative contributions of the attorneys assigned to those pools to the ultimate outcome of the litigation against Syngenta. Thus, this Court will not entertain objections to specific allocations based on the judgment of those courts. Rather, attorneys will only be permitted to raise structural or procedural issues that are not dependent on any understanding or judgment of the relative contributions of the attorneys in that pool.

*See id.* at * 4. The Court elaborated further in a footnote:

> Thus, to state the most extreme example, an attorney could object to this Court on the basis of a fraud in the proceedings in the other court. The possibility of such an objection, however unlikely, requires that this Court at least provide a mechanism by which it could be raised. On the other hand, the Court would not entertain an objection based on the argument that the objector's contribution to the settlement class should have been given more value.

*See id.* at *4 n.4. The Court then set deadlines for objections to another court's allocation and responses thereto. *See id.* Finally, in its Memorandum and Order, the Court noted that it had consulted with the Minnesota and Illinois judges, who expressly approved of the rulings contained therein. *See id.* at *1 n.2.

After the Illinois allocation order was filed in this Court, Clark filed a timely objection to that order, in which Eiland and Demerath joined. Watts filed an objection that it alternatively denoted a motion for reconsideration. Toups subsequently filed a response to Watts's objection, in which Toups asserted additional arguments in support of that objection. The Court now considers those objections.

In addition, by Order of November 18, 2019 (Doc. # 4273), the Court granted settlement class counsel's motion to approve disbursements for certain expenses incurred in the administration of the settlement fund and the claims process. In that motion, counsel requested that Judge Stack be reimbursed for his services, with the entire amount of

$218,906.98 paid from the Illinois federal court common benefit pool. No party or counsel objected to that request, which the Court granted. Accordingly, with that deduction, the Illinois pool to be allocated and awarded to attorneys now comprises $77,797,759.69.

## II. Clark Objection

Clark first argues that, despite its previous order, this Court should not limit the scope of its review of the Illinois Order to structural and procedural issues, but should instead exercise its own judgment (although that argument is somewhat at odds with its argument that the Court should adopt Judge Stack's R&R). In contending that the Court should not defer to the Illinois court's judgment, Clark argues that the rationale of having the allocation made by the court most familiar with those litigants' work is not furthered here because Judge Rosenstengel did not preside over the Illinois cases until after the settlement was complete.

The Court rejects this argument. The reassignment to a new judge does not represent a new issue or a changed circumstance. At the time of this Court's allocation order on December 31, 2018, Judge Herndon's retirement was imminent and expected; and at the time of this Court's order of April 2, 2019, in which the Court limited objections to structural and procedural issues, Judge Rosenstengel had already been presiding over the Illinois cases for nearly three months (and Judge Stack had already issued his R&R). Thus, the governing framework that includes deference to the Illinois court was adopted with the

understanding that a new Illinois judge would be determining the allocation from the Illinois pool.

Clark is essentially seeking reconsideration of the Court's orders establishing that framework, but any such argument is untimely. *See* D. Kan. Rule 7.3(b) (14-day deadline for a motion for reconsideration of a non-dispositive ruling). Clark was obliged to lodge any such objection before the process advanced in Illinois, instead of waiting to see how the Illinois court would rule. As the Court noted in its December 31 order, no attorney objected to the master's recommendation that the various courts be responsible for the allocations from the common benefit pools. *See Syngenta*, 2018 WL 6839380, at *15. Moreover, not only did Clark fail to lodge a timely objection, it waived this argument by moving (along with other lead plaintiffs' counsel) on February 27, 2019, for a ruling that this Court would issue the final judgment concerning fee awards from each pool *by adopting the allocations by the other courts without entertaining further objections from the relevant law firms*.[2] Indeed, in that motion, Clark and the other attorneys argued in a footnote that "[n]o one has standing to insist on a different procedure now," in light of the lack of any objection to the master's recommendation before the December 31 order.

Nor does the Court agree that the procedure and the scope of the Court's review should be altered now. The procedure was adopted not only because the individual courts

---

[2] It is true that Clayton Clark filed that motion on behalf of his firm (Clark, Love & Hutson G.P.) and not on behalf of the other attorneys in the Clark/Phipps Group. The Court notes, however, that Clark's argument in this objection concerning its contributions relies heavily on Mr. Clark's personal participation in the settlement of the litigation. Thus, Mr. Clark's prior motion for an order seeking a blanket adoption of Judge Rosenstengel's allocation must be given significance.

9

were better placed to make the allocations, but also because such an approach "reasonably comports with the settlement agreement and the understanding of counsel" at that time. *See id.* Clark has not argued that the procedure and scope of review adopted by the Court violates the law, or falls outside of the Court's discretion in awarding fees, or is not a reasonable way to perform the allocation. Therefore, the Court will, in accordance with its previous orders, limit its review of the Illinois order to structural and procedural issues raised in objections, and it will not consider objections based solely on arguments that the Illinois court should have exercised its judgment differently concerning the relative contributions to the overall benefit of the settlement class by the attorneys assigned to the Illinois federal court common benefit pool.

Although Clark attempts to couch its objections as structural or procedural issues, the Court does not agree that Clark's objections raise any such issues concerning the Illinois Order. Clark argues that the Illinois court's criticism of Judge Stack's subjective analysis reveals that the court improperly refused to consider any work on behalf of ethanol plants as common benefit work. Clark argues that the Illinois court was wrong in stating that Judge's Stack evaluation of Clark's overall contributions was "largely" based on ethanol work; that although this Court noted that the ethanol work was detrimental in some respects in the December 31 order, the Court did not state that such work had *no* common benefit value; that its work did contribute to the overall litigation, as special master

Reisman noted in her report; and that any settlement had to include an ethanol subclass.[3] This is not a structural flaw, however. The Illinois court criticized the R&R's failure to appreciate that some of the common benefit work claimed by Clark did not result in an overall benefit to the settlement class, and the court considered that lack of benefit in performing its own subjective evaluation of Clark's common benefit contribution. Thus, the Illinois court exercised its judgment in weighing Clark's contribution, and a challenge to that conclusion is beyond the proper scope of this Court's review.

Clark next argues that the Illinois court refused to consider relevant information concerning the number of Clark's claimants and the amount of its expenses for the litigation (which far exceeded those for the other applicants in the Illinois pool). Clark concedes that the Illinois court acknowledged that such factors could be relevant, but it argues that the court erred in its criticism that Judge Stack placed "undue weight" on those factors. Clark notes the instruction in the December 31 order that work on individual cases could be considered for the common benefit if the attorney represented a large number of plaintiffs. Again, however, the Court does not agree that the Illinois Order suffers from a structural flaw in this regard. The Illinois court did not dismiss such factors out of hand – it noted that they could be relevant – but the court concluded in its discretion that the R&R had overvalued those factors. The court reasonably noted that such factors do not

---

[3] Clark notes that this Court already "punished" Clark once for this detrimental effect in the allocation to the Illinois pool, and that it would be unfair to "punish" Clark twice by also reducing its allocation from that pool for the same reason. The Court does not agree that Clark is being punished twice unfairly; rather, each court properly refused to assign as much common benefit value to that work that did not advance plaintiffs' cause in the overall litigation against Syngenta.

11

necessarily reflect whether work is actually for the common benefit, and that overvaluing those factors creates a risk of rewarding marketing efforts instead. The court also explicitly considered Clark's high level of commitment to the litigation, its filing and litigation of hundreds of cases, and its importance to the settlement. Thus, the Illinois court did not refuse to consider relevant factors such as the number of claimants and expenses. Clark's objection is to the Illinois court's judgment in weighing the value to be afforded such factors, and thus the objection does not provide a basis for disturbing the Illinois court's allocation.

Clark also takes issue with the Illinois court's criticism that Judge Stack, in conducting his quantitative analysis, placed three of his data points (number of claimants, expenses, client acquisition costs) on "equal footing" with his fourth data point (number of hours expended). That interpretation of the R&R was quite reasonable, however, as Judge Stack did create an average percentage for each applicant that weighed the four data points equally. Again, the challenge is to the Illinois court's judgment in weighing factors, not to a structural flaw.

Clark argues that the Illinois court unfairly criticized the R&R with respect to the hours claimed by Clark. Clark argues that it supported its figures with sworn declarations; that it provided summaries, as requested; that the Illinois court was only speculating that Clark's hours were "grossly excessive;" and that the court ignored issues with another applicant's hours. The Illinois court's skepticism of the R&R's analysis was not unfounded, however. Clark does not challenge the Illinois court's statement that the R&R erroneously included some 13,000 hours in Clark's total. The court reasonably pointed out

12

that the R&R did not break down or analyze Clark's total-hours figure, but appeared to accept the figure at face value, despite the facts that many hours were attributed to anonymous employees, Clark did not have contemporaneous time records, and Clark was claiming nearly as many hours (approximately 128,000) as the total claimed by 49 firms in the MDL pool (under 143,000). The primary criticism was that the R&R did not consider the type of work represented by the claimed hours, and the Illinois court proceeded to break down the hours in that way. The court then stated that it would give little weight to some work (claims processing, plaintiff fact sheets), less weight to non-attorney hours, less (but some) weight to client communications, and less weight overall to a total number of hours that appeared to be "grossly excessive." These are judgment calls, in which the court decided how to weigh Clark's relative contributions, and they do not represent a structural flaw requiring modification.

It is worth noting at this point that Clark's primary criticism is the Illinois court's own criticism and partial rejection of the R&R, which Clark argues should be adopted by this Court. With respect to the number of hours, however, the Illinois court's criticism was intended to explain why it did not give weight to that data point used by Judge Stack. It appeared to the court that Judge Stack had not applied a sufficiently rigorous review of the hours claimed by Clark, and that Judge Stack had not differentiated those hours by the type of work. The key point is that the Illinois court was charged with making its own *de novo* allocation, *see* Fed. R. Civ. P. 53(f)(3), and thus its criticism or even outright rejection of recommendations or analyses in the R&R does not constitute a structural flaw. This Court

13

will not review the Illinois court's conclusions based on its judgment concerning how to weigh the type or amount of common benefit work claimed.

Clark makes a few additional objections. Clark argues that the Illinois court's rejection of a declaration by Judge Herndon as improper calls into question the entire process for this allocation. The Illinois court's decision to rely solely on the arguments of the applicants does not make the process unreasonable, however, and it was not a structural flaw that somehow infected the entire process. Clark argues that the award to Garrison, another applicant, was unreasonable when the two groups' contributions are compared, but that judgment by the Illinois court is beyond the purview of this Court under the framework previously adopted. Finally, Clark argues that the Illinois court did not consider all of its contributions to the ultimate outcome; again, however, that is not a structural flaw, and the fact that the court did not list every specific contribution does not mean that the court did not discharge its duty to consider Clark's overall contribution.

The Illinois court allocated a substantial portion of the Illinois fee pool to Clark (who will also receive a sizable award from the IRPA pool), and Clark has not identified a structural or procedural flaw in that allocation; thus, there is no basis for this Court to refuse to accept that allocation. Again, Clark attacks the Illinois court's criticisms of the R&R, but under its *de novo* review, the court could have refused to consider the R&R at all. Clark was required to show a flaw in the Illinois court's own allocation, not merely in its rejection of a proposed allocation. Clark has not provided a basis not to defer; rather, it challenges only the Illinois court's exercise of its judgment in weighing Clark's relative common

benefit contributions. Accordingly, the Court will adopt the Illinois court's allocation, and Clark's objection is hereby overruled.

### III. <u>Demerath Joinder</u>

Demerath filed a timely joinder in Clark's objection to the Illinois Order. In that joinder, Demerath notes that its attorneys were uniquely situated, as corn farmers, themselves, to contribute in the litigation; that they filed some of the first lawsuits filed in Nebraska; and that they represented thousands of farmers. Demerath argues that this Court should adopt the R&R (which recommended allocation of 2 percent of the pool to Demerath) instead of the Illinois Order (which allocated one percent to Demerath).

To the extent that Demerath joins the objection of Clark, that objection is overruled for the same reasons set forth above. Moreover, Demerath has not addressed the Illinois court's specific reasoning concerning Demerath's contributions, and thus Demerath has not explained how that allocation does not fall within the proper judgment of that court (to which this Court must defer). Indeed, the Illinois court noted that Demerath had filed early cases in Nebraska, but it also reasonably noted that the attorneys' background as farmers did not necessarily inure to the benefit of the settlement class. The court properly considered the type of work for which Demerath claimed common benefit fees, and she applied this Court's guidance in affording less weight to non-attorney hours, claims work, and client communications. Demerath has not identified a basis to disturb the judgment of the Illinois court, and its objection is therefore overruled in its entirety.

15

## IV. **Eiland Joinder**

The ruling is the same with respect to Eiland, who joins the Clark objection and seeks adoption of the R&R's allocation (4 percent to Eiland) instead of the Illinois Order (3 percent). The joinder is overruled for the same reasons that apply to Clark, and Eiland has not addressed the Illinois Order's specific discussion of Eiland. The Illinois court acknowledged Eiland's contributions as set forth in the R&R, but it proceeded to break down the hours claimed, and it chose to give less weight to work relating to fact sheets, client communications, claims, and administration. Eiland has not identified a proper basis to disturb the Illinois court's allocation, and the Court therefore overrules Eiland's objection in its entirety.

## V. **Watts Objection**

In its objection, Watts concedes that it offers no challenge to the particular allocation by the Illinois court of the Illinois fee pool. Rather, Watts states that it seeks to address the implications of the Illinois court's allocation on larger issues. Specifically, Watts argues that the Illinois court's questioning of Clark's claimed hours and appreciation of the deleterious effect of some of Clark's work on the entire litigation – issues that Watts raised in objecting to special master Reisman's recommended allocation among the pools – show that the Court allocated too much to the Illinois pool, at the expense of the Minnesota and IRPA pools; and that the Illinois pool should be reduced to 7.5 percent of the entire fee award.

This is essentially a motion to reconsider the Court's prior allocation among the pools (as Watts acknowledges by alternatively titling its filing as a motion for reconsideration), but it comes far too late. The Court considered Watts's arguments concerning the allocation among pools, and Watts did not file a timely motion to reconsider after the Court's December 31 allocation order. There is no basis for relief under Rule 60(b) here.

Moreover, even if presented with a timely motion, the Court would not reconsider its prior allocation. Although the Court did consider the total hours claimed by the applicants, the primary consideration for the Court was the relative contributions to the common benefit by the litigation on the three fronts (MDL, Minnesota, Illinois). *See Syngenta*, 2018 WL 6839380, at *12-13. In addition, the Court considered Clark's lack of success with the ethanol suits in making its allocation, *see id.* at *13, so that fact does not provide a basis to alter that allocation, in which the Illinois pool received less than one third of the amount allocated to the Kansas MDL pool. Watts has not explained how the Court erred in weighing the relative contributions of the litigation on the three fronts. Accordingly, the Court overrules Watts' objection (and denies any motion for reconsideration).

### VI. Toups Response

At the deadline for responses to objections to the Illinois Order, Toups filed a document purporting to be a response to Watts' objection. In that filing, however, Toups agreed with Watts' objection and added its own arguments seeking relief from the Court.

17

Thus, in actuality, Toups filed an objection or a motion for reconsideration of prior rulings. Either way, Toups's filing is untimely, as objections were due two weeks earlier, and a motion for reconsideration of the Court's December 31 allocation was due in January.[4]

The objection is also overruled on its merits. To the extent that Toups joins Watts's objection, it is overruled for the same reasons set forth above with respect to Watts. Toups also argues that its own award from the Kansas pool was unfair in light of the allocations made to particular firms in the Illinois pool. The Court has already rejected the same argument, however, in its orders concerning the Kansas and Minnesota pool allocations. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5-6 (D. Kan. Mar. 20, 2019) (Lungstrum, J.); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3202256, at *6 (D. Kan. July 16, 2019) (Lungstrum, J.). Toups has not bothered to address the Court's reasoning, but instead merely repeats its old arguments. Thus, Toups has not presented any reason for the Court to change its prior rulings concerning Toups's fee award. The Court overrules Toups's objection.

## VII. Awards of Attorney Fees from Illinois Pool

---

[4] Toups has chosen to ignore the Court's order of July 19, 2019, in which the Court adopted the Minnesota court's allocation of fees from the Minnesota pool. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3202256 (D. Kan. July 16, 2019) (Lungstrum, J.). After the Minnesota court issued its allocation, Toups filed a document at the deadline for responses to objections, but it adopted arguments by other objectors (instead of opposing the objectors). *See id.* at *6. The Court ruled that the objection was untimely and that Toups (placed in the Kansas pool) had no standing to object to the Minnesota pool allocation. The Court is dismayed that it must make the same ruling again to reject the same arguments by Toups.

For the reasons stated herein, the Court adopts the Illinois court's allocation from the Illinois federal court common benefit pool, as follows:

| | |
|---|---|
| Clark/Phipps Group | 49.0 % |
| Garrison Group | 43.4 % |
| Onder Law, LLC | 3.6 % |
| Law Offices of A. Craig Eiland | 3.0 % |
| Demerath Group | 1.0 % |
| Conmy Feste, Ltd. | 0.0 % (application denied) |

The Court awarded a total of $78,016,666.67 to this pool, although after deduction for payment of Judge Stack's services, the pool now comprises $77,797,759.69. The Court awards fees from that pool as follows:

| | |
|---|---|
| Clark/Phipps Group | $ 38,120,902.25 |
| Garrison Group | $ 33,764,227.70 |
| Onder Law, LLC | $ 2,800,719.35 |
| Law Offices of A. Craig Eiland | $ 2,333,932.79 |
| Demerath Group | $    777,977.60 |
| TOTAL | $ 77,797,759.69 |

IT IS THEREFORE ORDERED BY THE COURT THAT the Illinois federal court common benefit pool of attorney fees shall be allocated and fees are hereby awarded to particular attorneys as set forth herein. The Court hereby overrules the objections to the Illinois Order filed by The Clark/Phipps Group (Doc. # 4245); O'Hanlon Demerath & Castillo and Demerath Law Office (Doc. # 4246); The Law Offices of A. Craig Eiland (Doc. # 4247); Watts Guerra LLP (Doc. # 4241); and Toups/Coffman Plaintiffs' Counsel (Doc. # 4259).

IT IS SO ORDERED.

Dated this 19th day of November, 2019, in Kansas City, Kansas.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge