IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162 ) MDL No. 2591
CORN LITIGATION )
) Case No. 14-md-2591-JWL
This Document Relates To: )
)
*Kellogg, et al. v. Watts Guerra, LLP, et al.*, )
No. 18-2408-JWL )
_____)

# **MEMORANDUM AND ORDER**

On August 13, 2019, the Court ruled on motions to dismiss filed by most defendants. This matter now comes before the Court on the motion by those defendants for reconsideration of that order (Doc. # 229).[1] For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to plaintiffs' claim for aiding and abetting a breach of fiduciary duty (Count XIII), and that claim is hereby dismissed. The motion is otherwise denied.

In addition, plaintiffs have moved for reconsideration of that order and for other relief (Doc. # 227). That motion too is **granted in part and denied in part**. The motion is granted with respect to plaintiffs' request for correction concerning whether a particular defendant has been served. The motion is otherwise denied.

---

[1] Defendant Givens Law, LLC has not appeared in the action, and no proof of service has been filed for that defendant. Defendant Cross Law Firm, LLC, has not appeared, but plaintiffs have filed a notice indicating service on that defendant. Defendants' present motion is purportedly filed on behalf of "all Defendants," but no signature block is included for attorneys for either the Givens firm or the Cross firm.

I.  **Background**

This action has been transferred into multi-district litigation (MDL), over which this Court presides, involving claims by farmers and others in the corn industry against various related entities known collectively as Syngenta. On December 7, 2018, the Court certified a settlement class and approved a global settlement[2] of claims against Syngenta, including claims that had been pending in the MDL, in a similar consolidated proceeding in Minnesota state court, and in federal court in Illinois. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *appeals filed*. The Court also awarded one third of the settlement fund as attorney fees. *See id.* On December 31, 2018, the Court allocated the attorney fee award among various pools of attorneys (with further allocation within the pools to be completed by the three courts). *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018), *appeals filed*. In so doing, the Court allocated a portion of the fee award to a pool to compensate individually-retained private attorneys (IRPAs), and it held that any attorney representing a client on a contingent fee basis relating to the settled claims could recover attorney fees only from the Court's fee award and the allocation pools. *See id.*

Watts Guerra and various associated counsel filed individual lawsuits against Syngenta in Minnesota state court on behalf of a large number of clients. Those clients were generally excluded from the litigation classes certified in the MDL and in Minnesota

---

[2] The settlement did not include claims against Syngenta by a few grain handlers and exporters, but did include all claims by corn producers (except for claims asserted by those who opted out of the settlement class).

state court. Watts Guerra agreed to the settlement, however, and its clients were included in the settlement class. Watts Guerra and associated counsel have been awarded attorney fees from the Minnesota pool allocation, *see In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3203356 (D. Kan. July 16, 2019), and they seek further awards of fees from the IRPA pool allocation.

In the present suit (*Kellogg*), plaintiffs are six sets of corn growers who were formerly represented by Watts Guerra and associated counsel in the Syngenta litigation. Plaintiffs have asserted claims against those attorneys, including claims under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, Minnesota statutes, and Minnesota common law. Plaintiffs also seek to assert claims on behalf of a class of approximately 60,000 farmers who signed retainer agreements with defendants relating to the Syngenta litigation. In general, plaintiffs allege that defendants engaged in a fraudulent scheme to maximize their attorney fees, in which defendants pursued individual lawsuits while misrepresenting or failing to disclose the possibility and benefits of participating in class actions.

On March 1, 2019, the Court dismissed this action in its entirety for lack of standing. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 1002352 (D. Kan. Mar. 1, 2019). On May 21, 2019, however, the Court reconsidered that decision, and it vacated the dismissal with respect to plaintiffs' state-law claims, while reaffirming its dismissal of plaintiffs' claims under federal law for lack of standing. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 2184863 (D. Kan. May 21, 2019). On August 13, 2019, the Court issued a Memorandum and Order in which it addressed defendants' additional

arguments for dismissal of plaintiffs' state-law claims. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 3801719 (D. Kan. Aug. 13, 2019). The Court dismissed all claims except plaintiffs' claim for breach of fiduciary duty (Count VIII) and their claim for aiding and abetting such a breach (Count XIII). *See id.* In that order, the Court also denied the following requests by plaintiffs: for certification of a question to the Minnesota Supreme Court; for entry of final judgment on the federal claims under Rule 54(b); for certification for interlocutory appeal from the dismissal of the federal claims; to vacate the dismissal of the federal claims; for recusal; and for suggestion of remand. *See id.* Both sides have now filed motions seeking relief with respect to this latest order.

## II. Standard for Reconsideration

The parties once again disagree about the proper bases for their motions. Plaintiffs challenge dispositive rulings (rulings dismissing claims), and D. Kan. R. 7.3(a) demands that a motion for reconsideration of such a ruling be brought under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60 (whether or not a judgment has been issued). The Tenth Circuit has instructed that the timing of the motion for reconsideration effectively determines the applicable rule. *See Van Skiver v. United States*, 952 F.2d 1241, 1244-45 (10th Cir. 1991). Plaintiffs have filed their motion in a timely fashion after the Court issued its August 13 order. Accordingly, the Court will consider plaintiffs' motion under Rule 59(e).

Defendants cite Rule 59(e) as the basis for their motion, but they challenge non-dispositive rulings (rulings in which the Court declined to dismiss claims). Thus, the Court will consider defendants' motion pursuant to D. Kan. Rule 7.3(b).

Regardless of the rules cited, the Court in its discretion will consider each motion on the merits, as it has done previously in this case, so that each side may have a full opportunity to argue its positions. Grounds warranting reconsideration include a change in controlling law, newly-available evidence, and the need to correct clear error or prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (standard under Rule 59(e)); D. Kan. Rule 7.3(b). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *See Servants of Paraclete*, 204 F.3d at 1012. It is generally not appropriate on a motion for reconsideration "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *See id.*

### III.  Plaintiffs' Motion

#### A.  Request for Correction

Plaintiffs first request correction of a statement by the Court in its August 13 order. Defendants do not oppose this request, which the Court grants.

In its March 1 order, the Court noted that defendant Cross Law Firm, LLC had not appeared and that no proof of service had been filed for that defendant. The Court repeated that note in its August 13 order. In fact, however, on March 27, 2019, plaintiffs filed an affidavit stating that service on that defendant was effected in July 2018. Thus, the Court agrees with plaintiffs, and the record reflects, that this defendant has been served.

#### B.  Civil Conspiracy Claim

Plaintiffs next seek reconsideration of the Court's dismissal of the conspiracy claim (Count XIV) to the extent based on an underlying breach of fiduciary duty. In its dismissal order, the Court dismissed this claim with the fraud-based claims, on the basis that such claims failed because plaintiffs could not show a pecuniary loss as a matter of law. *See Kellogg*, 2019 WL 3801719, at *2-3. The Court agrees with plaintiffs, however, that the conspiracy claim was based not only on an underlying claim of fraud, but also on an underlying claim of breach of fiduciary duty (the only primary claim that withstood dismissal).

Nevertheless, the Court concludes that this claim should remain dismissed, as the Court agrees with defendants that the absence of any pecuniary loss also dooms the claim to the extent based on an underlying breach of fiduciary duty. *Harding v. Ohio Casualty Insurance Co. of Hamilton, Ohio*, 41 N.W.2d 818 (Minn. 1950), is the case most often cited for Minnesota law on civil conspiracy. In that case, the court noted that conspiracy liability must be based on an underlying tort. *See id.* at 824-25. The court also stated that "[t]he true office of allegations of conspiracy is to show facts for vicarious liability of defendants for acts committed by others, joinder of joint tortfeasors, and aggravation of damages." *See id.* at 825 (citations omitted); *see also, e.g.*, *Bank of Montreal v. Avalon Capital Group, Inc.*, 743 F. Supp. 2d 1021, 1033 (D. Minn. 2010) ("Under Minnesota law, a civil conspiracy claim is merely a vehicle for asserting joint and several liability . . . .") (internal quotation omitted). In this case, there is no liability for actual damages; rather, plaintiffs' claim for breach of fiduciary duty arises only under the *Perl* cases, for forfeiture of attorney fees (the sole injury for which plaintiffs can meet the requirements of standing).

6

Thus, there cannot be joint and several liability here – there are no damages for some conspirator to pay (or contribute to) based on a breach by an attorney in a fiduciary relationship with a particular plaintiff.[3] Accordingly, there is no basis for a conspiracy claim in this case, in which actual damages are absent. The Court therefore denies the motion for reconsideration of the dismissal of the conspiracy claim in its entirety.

### C. *Fraud-Based Claims*

Plaintiffs seek reconsideration of the Court's dismissal of their fraud-based claims (Counts IX, X, XI, XIV). In its order, the Court noted that these claims under Minnesota law require proof of pecuniary loss – a statement of the law that plaintiffs did not dispute. *See Kellogg*, 2019 WL 3801719, at *2. Because plaintiffs cannot show pecuniary loss on the facts as alleged, the Court dismissed these claims. *See id.* at *2-3.

In arguing the instant motion, plaintiffs still do not dispute that these claims require proof pecuniary loss under Minnesota law. Moreover, they repeatedly confirm in their most recent briefs that that do not allege that they suffered any actual loss with respect to the transactions at issue. Accordingly, there is no basis for reconsideration of the Court's dismissal of these claims.

Plaintiffs do insist that they suffered "monetary damage" in the form of the compensation that the attorneys should forfeit. They cite *Perl II* to support such an argument, but in that case the court merely held that a forfeiture of fees did constitute

---

[3] The cases cited by plaintiffs, consisting almost entirely of cases from the Tenth Circuit under Kansas law, involved claims of actual damages, and did not involve a *Perl*-type claim for forfeiture only.

7

"money damages" for purposes of an insurance policy. *See Perl v. St. Paul Fire and Marine Ins. Co. (Perl II)*, 345 N.W.2d 209, 211-13 (Minn. 1984). The court in *Perl II* did not suggest that fraud claims do not require proof of an actual pecuniary loss. *See id.* Indeed, in the *Perl* cases, all fraud claims were dismissed because of the absence of actual loss. *See Rice v. Perl (Perl I)*, 320 N.W.2d 407, 410 (Minn. 1982). Plaintiffs insist that they be permitted to pursue their claim for forfeiture of fees, but they may seek such a remedy based on their surviving claim under *Perl* for breach of fiduciary duty. The Court denies plaintiffs' motion as it relates to these fraud-based claims.

### D. RICO Claims

Plaintiffs seek reconsideration of the Court's statement in its dismissal order that plaintiffs have not plausibly alleged an injury to "business or property" as required for a claim under RICO. *See Kellogg*, 2019 WL 3801719, at *7. In its May 21 order, in which the Court reaffirmed its ruling that the RICO claims failed for lack of constitutional standing, the Court further noted that plaintiff had not identified any injury to satisfy RICO's particular standing requirement of an injury to "business or property." *See Kellogg*, 2019 WL 2184863, at *4 (citing 18 U.S.C. § 1964(c)). In its August 13 order, the Court again noted that deficiency in denying plaintiffs' request for certification for interlocutory appeal from the dismissal of the RICO claims. *See Kellogg*, 2019 WL 3801719, at *7.

There is no basis for reconsideration of the Court's statements regarding this requirement of RICO, as plaintiffs have conceded that they did not suffer pecuniary loss in this case. Plaintiffs' only argument on this point is that the Court's award of attorney fees

8

in the *Syngenta* litigation came from a settlement fund belonging to the settlement class (and thus to these plaintiffs). Plaintiffs have not explained, however, how they will receive any less money from the settlement fund because of defendants' conduct. In essence, plaintiffs are continuing to argue the standing issue with respect to these claims, which the Court considered previously. The Court reaffirms that ruling once again, and it therefore denies the motion for reconsideration with respect to the RICO claims.

### E. *Minnesota Statutory Claims*

#### 1. PUBLIC BENEFIT

Plaintiffs seek reconsideration of the Court's dismissal of the Minnesota statutory claims (Counts IV, V, VI). The Court dismissed those claims on the basis of its ruling that the claims did not serve the public benefit, and thus plaintiffs could not pursue a private action under Minn. Stat. § 8.31. *See Kellogg*, 2019 WL 3801719, at *3-4.

Plaintiffs argue that the Court erred in ruling that a claim for injunctive relief was required before these statutory claims could serve the public benefit. The Court imposed no such requirement, however; rather, the Court considered and weighed the lack of a claim for meaningful injunctive relief in this case. *See id.* The Court certainly did not state that a claim solely for damages could not serve the public benefit for purposes of this inquiry. *See id.* Specifically, the Court noted that plaintiffs in this case seek only to remedy past wrongs, and they do not seek to enjoin continuing misrepresentations or deceptions by defendants (who are no longer soliciting clients for the Syngenta litigation). *See id.* at *4.

Plaintiffs also argue that it is sufficient under Minnesota law that they have alleged deceptive advertisements to the public, but the Minnesota Supreme Court made no such

9

rule in the cases on which plaintiffs rely. *See Curtis v. Altria Group, Inc.*, 813 N.W.2d 891, 900-01 (Minn. 2012); *Collins v. Minnesota Sch. of Bus., Inc.*, 655 N.W.2d 320, 329-30 (Minn. 2003). In its August 13 order, the Court relied on its analysis in the *Syngenta* litigation of the public-benefit requirement. *See Kellogg*, 2019 WL 3801719, at *3-4 (citing *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1229-31 (D. Kan. 2015) (Lungstrum, J.)). In *Syngenta*, the Court addressed and distinguished the Minnesota Supreme Court's opinion in *Collins*; the Court noted that while *Collins* involved misrepresentations to the public at large, *Syngenta* involved misstatements directed at most to a specific industry, and that this factor therefore weighed against a finding of a public benefit. *See Syngenta*, 131 F. Supp. 3d at 1230-31.

In *Curtis*, the supreme court declined to address the issue, and it just assumed for the purpose of its ruling that there was a public benefit in that case. *See Curtis*, 813 N.W.2d at 901 n.6. The Minnesota Court of Appeals, in finding a public benefit in *Curtis*, relied on the fact that the alleged misrepresentations were made to the public at large over a long period of time, affecting hundreds of thousands of consumers in Minnesota. *See Curtis v. Altria Group, Inc.*, 792 N.W.2d 836, 850 (Minn. Ct. App. 2010), *rev'd on other grounds*, 813 N.W.2d 891 (Minn. 2012). That court generally refused to apply any hard-and-fast rules in conducting the public-benefit analysis. *See id.* at 851.

In the present action, the Court noted that Minnesota courts had not set forth a concrete test for determining whether a claim serves a public benefit under Section 8.31, and thus it proceeded to weigh the factors most often considered by those courts. *See Kellogg*, 2019 WL 3801719, at *3-4. The Court concluded that the fact that the alleged

misrepresentations were made only to a specific group within a specific industry, and not to the public at large, weighed against plaintiffs in this case. *See id.* at *4. Plaintiffs have not shown that Minnesota law compels a different result. Accordingly, the Court rejects the bases for reconsideration argued by plaintiffs, and it denies the motion as it relates to the Minnesota statutory claims.

## 2. CERTIFICATION TO MINNESOTA SUPREME COURT

Plaintiffs also request that the Court certify a question to the Minnesota Supreme Court concerning whether plaintiffs' claims in this case serve a public benefit. Under Minnesota law, the Minnesota Supreme Court may answer a question of law certified to it by another court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." *See* Minn. Stat. § 480.065, subd. 3. The Court pays heed to the following standard for certification set by the Tenth Circuit:

> Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves. While we apply judgment and restraint before certifying, however, we will nonetheless employ the device in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance.

*See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (citations omitted).

Minnesota caselaw provides sufficient guidance for application in this case of the public-benefit requirement. Minnesota cases have not announced a bright-line test, and this Court has properly considered the factors considered by Minnesota courts. The

11

Minnesota Supreme Court has had opportunities to refine the existing test, but it has chosen not to do so. The Court is not uncomfortable applying the guidance already given by Minnesota courts, and thus it declines in its discretion to certify a question to the Minnesota Supreme Court. Plaintiffs' motion is denied in this respect.

### F. *Recusal*

Finally, plaintiffs request that the Court vacate its prior dismissal orders, recuse itself, and allow the case to be stayed until it may be remanded to the transferor court. Plaintiffs argue that the Court has a conflict because it is a witness concerning misrepresentations made by defendants. The Court has already rejected this argument. *See Kellogg*, 2019 WL 3801719, at *7. Plaintiffs argue that the Court gained the relevant information in a different case and therefore from an extrajudicial source. The Tenth Circuit has held however, that the applicable statute does not apply to knowledge obtained "in the course of related judicial proceedings." *See United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987) (cited in *Kellogg*, 2019 WL 3801719, at *7). Because the *Syngenta* litigation is a related proceeding, the Court cannot be a witness in this way, and there is no conflict requiring recusal.

Plaintiffs also suggest that the Court should recuse because of bias. There is no actual bias against plaintiffs, however. Plaintiffs suggest an appearance of bias, but they have identified no basis for that suggestion other than the fact that the Court has issued rulings with which they disagree.[4] Accordingly, the Court does not agree that there is an

---

[4] Of course, the Court also reconsidered its original standing ruling and revived plaintiffs' state-law claims.

objective appearance of impermissible bias here, and it therefore declines to recuse. Plaintiffs' motion is denied as it relates to this request.

## IV. **Defendants' Motion**

### A. *Waiver of Objection*

In seeking reconsideration of the Court's August 13 order, in which the Court refused to dismiss plaintiffs' claim for breach of fiduciary duty, defendants again argue that plaintiffs have waived any such claim. The Court previously rejected this argument as follows:

> The Court also rejects defendants' argument that plaintiffs have waived these claims by failing to object in the MDL with respect to awards of attorney fees. The Court agrees with the MDL Panel that plaintiffs' claims are separate from that fee process. Plaintiffs are seeking a forfeiture of fees awarded to defendants, and there was no mechanism for plaintiffs to assert such a claim in that process.

*See Kellogg*, 2019 WL 3801719, at *5.

Relying on two cases, defendants essentially argue issue preclusion – that the issue of their competence as attorneys was necessarily decided in the *Syngenta* litigation, when the Court approved the settlement and awarded attorney fees to counsel, including defendants, without objection by these plaintiffs. In the cited cases, the courts ruled that claims attacking attorneys' performance represented impermissible collateral attacks on settlement approvals and attorney fee awards. *See Wyly v. Weiss*, 697 F.3d 131, 139-44 (2d Cir. 2012); *Koehler v. Brody*, 483 F.3d 590, 597-99 (8th Cir. 2007). Those cases are distinguishable from the present case, however.

First, in those cases, the class members' attacks on the attorneys' performance were based on the settlement achieved by those attorneys. In the present case, plaintiffs have not complained about the terms of the settlement with Syngenta or defendants' conduct in securing or agreeing to that settlement; rather, they complain about conduct during the course of the underlying litigation. Thus, when the Court approved the settlement and awarded fees, its findings were limited to the adequacy of that settlement and the adequacy of the attorneys' representation of the settlement class in procuring that settlement.

Second, the cited cases involved claims that the attorneys' performance breached the applicable standard of care. In the present case, the surviving claim (under *Perl*) involves allegations that the attorneys breached duties of loyalty, such that the attorneys should forfeit their fees. In approving the settlement and awarding fees, the Court may have necessarily found that attorneys for farmers in the underlying litigation deserved fees (for work benefitting the settlement class) and were adequate with respect to procuring this settlement; the Court did not find – and was not necessarily required to find – that attorneys never breached any duty of loyalty while representing farmers throughout the entire course of the underlying litigation.

Accordingly, there is no basis for application of issue preclusion in this case. The Court again rules that plaintiffs did not waive their breach claim by failing to object in the settlement proceedings, and it therefore denies defendants' motion to this extent.

### B. *Aiding-and-Abetting Claim*

Defendants also seek reconsideration of the Court's ruling in the August 13 order that allowed plaintiffs' aiding-and-abetting claim (Count XIII) to survive to the extent

based on plaintiffs' underlying claim of breach of fiduciary duty under *Perl*. *See Kellogg*, 2019 WL 3801719, at \*5. Defendants argue that that claim should be dismissed because of the absence of any pecuniary loss here.

In its August 13 order, the Court dismissed the aiding-and-abetting claim to the extent based on fraud, along with the other fraud-based claims, because of the absence of any pecuniary loss, but it did not consider that argument as applied to the claim based on an underlying breach of fiduciary duty. *See Kellogg*, 2019 WL 3801719, at \*3, 5. The Court construed defendants' argument in that way because defendants addressed this claim in the sections of their briefs in which they challenged the fraud-based claims. Upon further consideration, however, it does appear that defendants also challenged this claim on the same basis to the extent based on a breach of fiduciary duty. The Court thus considers that argument at this time.

Defendants argue that any aiding-and-abetting claim must be supported by a showing of pecuniary loss. In responding to defendants' motion, plaintiffs have not addressed this argument. Thus, the Court agrees with defendants that, by failing to oppose dismissal, plaintiffs have effectively abandoned this claim.

Moreover, the Court concludes that defendants' argument also succeeds on its merits, for essentially the same reasons cited above with respect to plaintiffs' conspiracy claim. The Minnesota Supreme Court, in recognizing a claim for aiding and abetting another's tortious conduct, noted that such a claim allows for joint and several liability for the injury resulting from the underlying tort. *See Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 185-86 (Minn. 1999). Thus, it would not be enough for plaintiffs to show

that certain defendants aided a breach of fiduciary duty; plaintiffs would also need actual damages as a basis to seek the joint liability of those defendants. *See In re Senior Cottages of Am., LLC*, 438 B.R. 414, 426 (Bankr. D. Minn. 2010) (rejecting claim of aiding and abetting breach of fiduciary duty because of an absence of actual damages). In this case, plaintiffs concede that they have not suffered pecuniary loss, and thus there is no basis for a claim, such as aiding and abetting (or civil conspiracy), the purpose of which is to allow for joint liability for damages. Accordingly, the Court grants defendants' motion to this extent, and the Court dismisses plaintiffs' aiding-and-abetting claim in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by certain defendants for reconsideration of the Court's Order of August 13, 2019 (Doc. # 229), is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiffs' claim for aiding and abetting a breach of fiduciary duty (Count XIII), and that claim is hereby dismissed. The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' motion for reconsideration of the Court's Order of August 13, 2019, and for other relief (Doc. # 227) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiffs' request for correction concerning whether a particular defendant has been served. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 18th day of December, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge