IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 ) | MDL No. 2591 |
| CORN LITIGATION ) | |
| ) | Case No. 14-md-2591-JWL |
| This Document Relates To: ) | |
| ) | |
| *Kellogg, et al. v. Watts Guerra, LLP, et al.*, ) | |
| No. 18-2408-JWL ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiffs' motion for recusal (Doc. # 278). By that motion, plaintiffs also request that the Court vacate previous orders and suggest remand to the MDL transferor court. For the reasons set forth below, the Court **denies** the motion.

### I. Request for Stay

While the instant motion was pending, plaintiffs filed yet another motion in which they also ask the Court to recuse and to vacate orders (Doc. # 319). In that motion, plaintiffs additionally request a stay of proceedings in this Court during the pendency of plaintiffs' latest direct appeal and their petition for mandamus to the Tenth Circuit. The Court declines to stay this matter and will proceed to decide this motion.

As the Tenth Circuit has already ruled and as this Court has repeatedly held, the Court retains jurisdiction over this matter because the case is not yet final. Plaintiffs have not argued that their mandamus petition automatically robs this Court of jurisdiction. *See,*

*e.g.*, *Moore v. Busby*, 92 F. App'x 699, 702 (10th Cir. 2004) (unpub. op.) (rejecting argument that a mandamus proceeding divests the district court of jurisdiction in the absence of a stay). Moreover, the Court concludes in its discretion that a stay is not warranted and that the case should proceed.

As the Court has previously noted, the litigation of this case has been delayed far too long, and any stay to allow for proceedings in the Tenth Circuit must now come from the Circuit itself. In addition, plaintiffs rely on their new expert report in seeking mandamus, and this Court has not yet had the opportunity to consider that report.[1] Accordingly, it is appropriate for this Court to address that report in the first instance and thus to rule on this motion.[2]

**II.     Basis for the Motion**

Plaintiffs cite Fed. R. Civ. P. 60 as the basis for the instant motion. Plaintiffs have not shown a proper basis from that rule, however, for their relitigation of the recusal issue. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 3801719, at * 7 (D. Kan. Aug. 13, 2019) (Lungstrum, J.) (rejecting argument that recusal is warranted); *Kellogg*, 2019 WL 6894675, at *6 (D. Kan. Dec. 18, 2019) (Lungstrum, J.) (again rejecting recusal argument). Plaintiffs do not address the issue concerning Rule 60 in their reply, even though defendants devoted most of their response brief to it. In addition, a motion for

---

[1] In fact, plaintiffs have requested that the Tenth Circuit abate proceedings in their latest appeal to allow this Court first to consider the recusal issue and the expert report.
[2] The Court will consider the latest motion in its entirety once it has been fully briefed.

reconsideration of the Court's prior recusal rulings under D. Kan. 7.3(b) could be denied as untimely.

Nevertheless, even though the Court has twice rejected plaintiffs' recusal arguments, and the motion could be denied on a procedural basis, the Court prefers to address the merits of plaintiffs' motion. As it has stated before, the Court is intent on giving the parties every opportunity to argue their positions, *see Kellogg*, 2019 WL 6894675, at *2, and this motion adds a new element, namely an expert report. While that report may not constitute newly-discovered evidence, it does provide a sufficient reason to address this issue again.

### III. <u>Merits of the Motion for Recusal</u>

Plaintiffs have now supported their request for recusal with an expert report by Richard Painter, a law school professor, who opines that the Court should recuse. Prof. Painter discusses recusal to satisfy constitutional due process and recusal under 28 U.S.C. § 455. He states that he does not opine on ultimate questions of law, including whether due process requires recusal here. Prof. Painter nevertheless states in his report that the undersigned judge's "participation in this case will destroy the due process rights of the parties." Prof. Painter also opines that various bases for mandatory recusal under Section 455 have been met. Accordingly, the Court will consider the concerns raised by Prof. Painter. In doing so, the Court notes that the moving party bears a heavy burden to show a basis for recusal supported by relevant facts. *See Burke v. Regalado*, 935 F.3d 960, 1054

(10th Cir. 2019). Rumor, speculation, and opinions are not sufficient bases for recusal. *See Cauthon v. Rogers*, 116 F.3d 1334, 1336 (10th Cir. 1997).

The Court first considers the issue of recusal to satisfy due process. Prof. Painter cites four cases from the Supreme Court concerning recusal, although in none did that Court address the circumstances present in this case. In *In re Murchison*, 349 U.S. 133 (1955), the Court held that a judge who had acted as a "one-man grand jury" could not also preside over the contempt hearing for charges arising out of the grand jury process without violating due process. *See id.* In *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), the Court held that although not every attack on a judge disqualifies him from presiding over the resulting contempt proceeding, that case involved highly personal aspersions and "fighting words" directed at the judge, and due process therefore required a judge other than the one reviled by the contemnor. *See id.* at 465-66.

In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Court held that due process had been violated when an appellate judge participated in an appeal involving a company whose executives had made significant financial contributions to the judge's campaign for election. *See id.* The Court noted and applied its previously-stated objective standard requiring recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *See id.* at 872 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The Court began its analysis by stating that although due process requires a fair trial in a fair tribunal, "most matters relating to judicial disqualification do not rise to a constitutional level." *See id.* at 876 (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)). The Court proceeded to discuss two instances in

4

which it had required recusal: when the judge has a financial interest in the outcome of a case; and in the criminal contempt context, when the judge has participated in the earlier proceeding, as in *Murchison* and *Mayberry*. *See id.* at 877-81. The Court also noted that because of the difficulties in inquiring into actual bias, an objective standard applies. *See id.* at 883-84. Finally, in deciding that the circumstances before it required recusal, the Court stressed that it was an "exceptional case," involving "extreme facts" and an "extraordinary situation." *See id.* at 884, 886-87, 887.

Most recently, in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), the Supreme Court held that due process required the recusal of an appellate-court justice in a case in which the justice had been the district attorney who had approved the decision to seek the death penalty for that defendant. *See id.* The Court applied the same objective standard from its previous cases, which requires recusal when the likelihood of bias is "too high to be constitutionally tolerable." *See id.* at 1903 (internal quotations and citations omitted). The Court noted that its precedents did not set forth a specific test, but it concluded that there was "an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision involving the defendant's case." *See id.* at 1905.

These cases involved circumstances that differ greatly from the circumstances present in this case, and thus they provide very little support for plaintiffs' request for recusal. Certainly, the cases establish that an objective standard applies, although there is no specific test under due process. The cases also make clear that not every instance of personal interest rises to a constitutional level; rather, the circumstances must be extreme,

5

exceptional, extraordinary. The Supreme Court has found such extreme circumstances in cases involving a direct and significant financial interest, but no such financial interest is alleged here. The Supreme Court has also found such circumstances in criminal cases in which the judge was involved in the charged conduct or in prosecuting the defendant. This is a civil case, however, and no person's liberty is stake. Finally, as the Court will discuss further, the present case does not involve extreme circumstances that create a reasonable and significant likelihood of actual bias that is too great to be constitutionally tolerable. Accordingly, due process does not require recusal in this case.

As set forth in the expert report's summary, a primary basis for Prof. Painter's opinion is plaintiffs' allegation that the undersigned "breached his fiduciary duty to the individual corn growers (approximately 60,000) who were automatically opted-out of the Syngenta class pursuant to his order because [he], among other things, did not address factual evidence that the defendants were colluding with class counsel and exchanging money and favors while ignoring the best interest of their individual clients and class members." The relevant history of the underlying Syngenta MDL litigation, however, belies the suggestion that the Court breached any duty to these plaintiffs.

It became clear during the proceedings to appoint lead MDL plaintiffs' counsel, very soon after the creation of the MDL, that the various plaintiffs' attorneys were divided concerning whether the claims against Syngenta were best litigated as a class action or in a large number of individual actions. The Court concluded that it was in the best interests of all plaintiffs to allow both approaches to proceed, at least that stage, and thus the Court, in appointing lead counsel and members of the plaintiffs' executive committee, included

representatives of both camps. *See* Order Concerning Appointment of Counsel (Jan. 22, 2015) (MDL Doc. # 67).

Shortly thereafter, the Court heard arguments concerning a common benefit order (CBO), intended to address assessments for expenses for work undertaken on behalf of all those asserting claims against Syngenta, which MDL lead counsel proposed after conferring with Syngenta and various plaintiffs' counsel. The resulting order (MDL Doc. # 936) contained provisions that specifically favored certain plaintiffs' counsel, including the Watts firm (defendant in the present action, hereafter "Watts"), pursuant to a joint-prosecution agreement (JPA) between Watts and MDL lead counsel. The Court concluded that unique considerations justified the JPA with Watts that included preferential CBO terms. Specifically, the Court noted that the particular terms were not unreasonable and benefitted the litigation of the MDL, particularly because the JPA allowed for the participation of a group with a large number of cases (Watts) that may not otherwise be subject to *any* assessment (because those cases were pending in state court, outside the MDL). *See* Memorandum and Order of May 8, 2015 (MDL Doc. # 403). The Court also made the point, both in its written opinion and at hearings, that it was not approving the JPA, as there was no basis for its involvement in private contractual relationships, but that it was merely approving terms in the CBO that resulted from the JPA. *See id.* Thus, the fact that the JPA allowed for favorable CBO treatment did not create any suspicion of misconduct by Watts with respect to its clients.

Plaintiffs complain in the present case that they were excluded from the certified class by virtue of the class definition, as a result of the JPA between Watts and MDL lead

counsel. Indeed, lead MDL counsel sought certification of a class that did not include Watts's clients for whom individual suits against Syngenta had been filed in Minnesota state court. Thus, until a settlement class was requested and certified, plaintiffs were not members of the putative or certified class. Again, these plaintiffs were represented by counsel and had their own individual cases pending in a different forum, outside the scope of the MDL and the reach of this Court. A district court does have a duty to protect absent class members from unfair or unreasonable terms to which they may become bound by a judgment. These plaintiffs were not members of the class, however, and thus they needed no such protection from unfair terms, and they remained free to pursue their own cases against Syngenta. Neither Prof. Painter nor plaintiffs have cited any authority to support the claim that this Court owed a duty to such plaintiffs who had filed cases outside the MDL.

Moreover, although a district court has the power to modify a class definition (for instance, to make sure that the class is sufficiently discernable), it has no duty or obligation to do so. For instance, in *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993), the Second Circuit held that a district court is empowered by Fed. R. Civ. P. 23(c) to carve out an appropriate class or subclasses, but the district court is not obligated to implement the rule on its own initiative. *See id.* at 14-15. The Second Circuit cited *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), in which the Supreme Court stated that the party, not the court, had the burden of constructing appropriate subclasses in that case. *See id.* at 407-08 (cited in *Lundquist*, 993 F.2d at 14-15). In *Bertulli v. Independent Association of Continental Pilots*, 242 F.3d 290

(5th Cir. 2001), a party had argued that a class definition was underinclusive, but the Fifth Circuit (citing *Lundquist* and Rule 23(c)(5)) stated that a district court may choose one possible class definition over another to ensure that Rule 23 is best satisfied. *See id.* at 296 & n.24. The Fifth Circuit further noted that persons left out of the class definition remained free to assert their rights as they saw fit. *See id.* at 296 n.25.

Finally, the exclusion of Watts's clients from the class definition (to which no party objected at the class certification stage) served the best interests of all plaintiffs in the litigation against Syngenta. Watts had indicated that its clients intended to opt out of any certified class that included them; thus, it was far more efficient not to certify a class that would impose such a significant burden to effect those opt-outs (and thus increase the risk that a party who wished to opt out would fail to do so). More importantly, the construction of the class again meant that the litigation against Syngenta could proceed on two separate tracks, thereby more efficiently allowing counsel in all cases to proceed against Syngenta as they best saw fit. As the Court has discussed in the context of fee awards, the litigation on multiple fronts added to Syngenta's defense burden and thus created more pressure on Syngenta to settle all claims by producers. Of course, once such a settlement had been reached, plaintiffs in this case were included in the settlement class, with the right to opt out as desired.

Throughout these proceedings at the CBO and class certification stages, the Court was never given a reasonable basis to question whether Watts or its associated counsel were being disloyal to their clients or whether those attorneys were lying to or misleading the clients or the Court with respect to the JPA or the approach to class certification.

9

Neither Prof. Painter nor plaintiffs have identified any such basis. Accordingly, Prof. Painter's reliance on a theory that the Court breached a fiduciary duty to plaintiffs is misguided.

As a separate basis for concern, Prof. Painter argues that the Court is a fact witness, specifically concerning statements that defendant attorneys may have made to the Court *ex parte*. This is pure speculation, however, as neither Prof. Painter nor plaintiffs have cited evidence that any such *ex parte* communications occurred. In fact, beyond the bare submission of agreements for the Court's consideration *in camera*, **the Court did not have any *ex parte* communications with defendants or any other counsel regarding joint-prosecution agreements or any party's position concerning class certification**. There is certainly no basis for Prof. Painter's hypothesis that the Court was told by someone that defendants had lied to or misled their clients, and yet did nothing to address such misconduct; plaintiffs have not made such a factual allegation, and any argument to that effect by defendants would be patently frivolous. Accordingly, this speculation does not provide a reasonable basis for believing that the undersigned judge is biased or has a conflict, and thus it does not provide a basis for recusal to satisfy due process. *See Cauthon*, 116 F.3d at 1336 (mere speculation is not sufficient to support recusal).

In addition, the undersigned will have no occasion to decide what defendants actually told the Court – any such communications are contained in the public record, and because a remand to the MDL transferor court would precede any trial, the merits of plaintiffs' claims will not be tried in this Court. Thus, there is no likelihood that the

undersigned would become a fact witness, even if there were no privilege for information obtained during the course of related litigation (as discussed below).[3]

Prof. Painter also appears to suggest that the Court will be required to testify concerning the impact of defendants' misrepresentations to the Court, including whether the Court relied on those misrepresentations. Neither Prof. Painter nor plaintiffs, however, have shown why any such impact would be relevant here. Plaintiffs claim that defendants breached duties to them; whether some conduct before the Court constitutes a breach by defendants will not depend on the Court's reaction (which is a matter of public record at any rate).

Accordingly, there is no reasonable basis to believe that the Court has a conflict of interest or harbors some actual bias against plaintiffs. This is not a case involving extreme circumstances that implicate due process. Recusal is not required by the Constitution here, and there is no reasonable basis for recusal even if not required.

Prof. Painter also opines that three bases for mandatory recusal under 28 U.S.C. § 455 are satisfied here, but the Court does not agree. For the reasons discussed above, the Court does not have personal knowledge of disputed evidentiary facts and is not likely to be a material witness. *See id.* § 455(b)(1), (5)(iv). Moreover, as the Court has already twice ruled, those provisions of Section 455 do not apply to knowledge obtained in the course of related judicial proceedings. *See Kellogg*, 2019 WL 3801719, at *7 (citing

---

[3] In their mandamus petition, plaintiffs state that the JPA was presented to the Court in sealed class certification filings. The content of documents filed under seal, however, would still be determined from the documents themselves, and thus there would be no need for testimony from the undersigned.

11

*United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987)); *Kellogg*, 2019 WL 6894675, at *6 (citing *Page*). Prof. Painter has not directly addressed these prior rulings or *Page*. Prof. Painter stresses that the present case is separate from the underlying Syngenta litigation, but the cases are unquestionably related, as evidenced by the fact that the Judicial Panel on Multidistrict Litigation transferred this case to the undersigned on that basis. In addition, as discussed above, there is no reasonable basis to question the impartiality of the undersigned in this matter. *See* 28 U.S.C. § 455(a).

In previously rejecting plaintiffs' request for recusal, the Court noted that plaintiffs had identified no basis for finding an appearance of bias here other than the fact that the Court had issued rulings with which they did not agree. *See Kellogg*, 2019 WL 6894675, at *6. That ground is insufficient. *See United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993) (adverse rulings do not provide a basis for disqualification of a judge). Indeed, the timing of plaintiffs' recusal motions strongly suggests that plaintiffs actually object to the undersigned's continued involvement in this case because of adverse rulings by the Court. The purported bases for recusal cited by plaintiffs in their motions and by Prof. Painter in his report have been known to plaintiffs since the time the case was transferred into the MDL in early 2018. Nevertheless, plaintiffs did not raise any such concern in proceedings before the MDL Panel or in early proceedings before this Court (although they did repeatedly express their respect and admiration for the undersigned). Plaintiffs did not argue any of these issues relating to a conflict or the Court's position as a fact witness until June 27, 2019 (in a motion for certification for interlocutory appeal, in which plaintiffs also sought a suggestion of remand) – after the Court had issued its rulings that resulted in the

dismissal of most of plaintiffs' claims. Plaintiffs did not move for recusal until September 10, 2019 (the first of multiple recusal motions).

As the Tenth Circuit has recognized on more than one occasion, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *See David v. City of County of Denver*, 101 F.3d 1344, 1351 (10th Cir. 1996) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). There is no basis for recusal here. Plaintiffs opposed transfer to this MDL, which was their right. They have consistently sought to return to their home forum, which is understandable. But, as noted, they did not raise the question of a conflict of interest or the need for this Court to recuse until after they had received adverse rulings. That is telling. They have built an argument based on speculation and faulty reason, bolstered by an expert report that adds little to the analysis. Once again, this Court finds it must deny their motion to recuse. Plaintiffs' additional requests for orders to be vacated and for a suggestion of remand to their preferred forum are based on their arguments for recusal. Therefore, the Court denies the instant motion in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for recusal and for other relief (Doc. # 278) is hereby **denied**.

IT IS SO ORDERED.

Dated this 3rd day of April, 2020, in Kansas City, Kansas.

                                      s/ John W. Lungstrum
                                      John W. Lungstrum
                                      United States District Judge