# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE SYNGENTA AG MIR162 ) | |
| CORN LITIGATION ) | Master File No. 2:14-MD-02591-JWL-JPO |
| ) | |
| THIS DOCUMENT RELATES TO: ) | MDL No. 2591 |
| ) | |
| ALL CASES <u>EXCEPT</u>: ) | |
| ) | |
| *Louis Dreyfus Company Grains* ) | |
| *Merchandising LLC v. Syngenta AG, et al.,* ) | |
| No.: 16-2788-JWL-JPO ) | |
| ) | |
| *Trans Coastal Supply Company, Inc. v* ) | |
| *Syngenta AG, et al.,* ) | |
| No.: 2:14-cv-02637-JWL-JPO ) | |
| ) | |
| *The Delong Co., Inc. v. Syngenta AG, et al.,* ) | |
| No.: 2:17-cv-02614-JWL-JPO ) | |
| ) | |
| *Agribase International Inc. v. Syngenta* ) | |
| *AG, et al.,* No.: 2:15-cv-02279-JWL-JPO ) | |
| ) | |

**SHIELDS LAW GROUP, LLC'S REPLY TO SETTLEMENT CLASS COUNSEL, KANSAS CO-LEAD COUNSEL, AND MINNESOTA CO-LEAD COUNSEL'S JOINT OPPOSITION TO SHIELDS LAW GROUP, LLC'S MOTION TO SUPPLEMENT THE <u>RECORD REGARDING ITS IRPA APPLICATION (DKT. 4441)</u>**

Comes now Shields Law Group, LLC ("SLG") and in reply to Settlement Class Counsel, Kansas Co-Lead Counsel, and Minnesota Co-Lead Counsel's Joint Opposition to Shields Law Group, LLC's Motion to Supplement the Record Regarding its IRPA Application (Dkt. 4441), states:

1. In her November 21, 2018 Report & Recommendation to this Court, "[t]he Special Master also recommends that any IRPA making a claim for fees be required to produce, for review by the Special Master, a retainer agreement and/or a *power of attorney* from the Class Member on whose behalf the IRPA is claiming *before it can be paid."* (emphasis added). Dkt. 3816, p. 69.

2. A power of attorney is defined as "[a]n instrument granting someone authority to act as agent or attorney-in-fact for the grantor. An ordinary power of attorney is revocable and automatically terminates upon the death or incapacity of the principal." Black's Law Dictionary (11th ed. 2019).

3. Following this rationale, in its Memorandum and Order of December 31, 2018, "[t]he Court concludes that such a requirement is reasonable, and it therefore adopts it as recommended." Dkt. 3882, p. 22. Retainer agreements and/or powers of attorney are therefore allowed.

4. On January 4, 2019, the Court provided additional insight into its ruling: "The Court is requiring completion and submission of this Excel spreadsheet with unique claimant identifying information to the Claims Administrator through the secure website portal to facilitate review of the submissions and *calculation of the IRPA pool award for applicants* (emphasis added)." Dkt. 3886, p. 3. The same rationale was stated for the need to file a retainer agreement or power of attorney: "[t]he Claims Administrator will retain the data submitted pursuant to paragraphs 2 and 3 as confidential and make it available only to the special master and Court in order to facilitate review of the submissions and *calculation of the IRPA pool award for applicants.*" *Id,* p. 3.

5. SLG complied with the Court's Orders and timely filed its IRPA Application and retainer agreements on 100% of its then identified Claimant Identification Numbers located within its law firm portal at www.cornseedsettlement.com.

6. SLG's motion now before the Court is not seeking leave to file a *new* application. It is simply seeking supplementation of SLG's previously filed, timely Application. Nowhere did the Court state supplementation would not be allowed for *later identified* Claimant Identification

2

Numbers. Nor was it implied that failure to include *later identified* Claimant Identification Numbers (numbers which SLG had no way to know even existed in January 2019) would be grounds for leadership to abscond with credit for fees – IRPA fees otherwise due to the law firm representing the individual clients (i.e., SLG).

7.     No calculation of the IRPA pool award for applicants has occurred. Nevertheless, leadership claims, without a scintilla of proof, that other IRPA applicants will be prejudiced. In reality, because the IRPA pool is fixed at $60 Million and IRPA's are to be paid in proportion to their clients' recoveries, if this Court denies SLG's motion to supplement, other IRPA applicants will actually benefit, not be prejudiced. This would occur because the payments associated with SLG's later identified ninety-six Claimant Identification Numbers will not be credited to SLG, thereby increasing, however slightly, the award of each other IRPA applicant. In contrast, SLG will be prejudiced in the amount of approximately $40,000 or $50,000 in lost IRPA fees on its clients' *later identified* 3.5 million bushels of corn. These *later identified* Claimant Identification Numbers were not known to SLG on January 18, 2019, as the Settlement Administrator added them to SLG's portal after that date. More important for this discussion, the numbers were later identified *only after* SLG's Clients directed the Settlement Administrator to mark SLG as their counsel. (*See discussion infra*). Contrary to the suggestion in the opposition's response, SLG was not being "intentionally vague" on the issue. SLG did not have the clients' Tax Identification Numbers. If SLG had those numbers, SLG would have filed them along with the 68 other Tax Identification Numbers SLG filed in its initial IRPA Application.

8. The ninety-six *newly identified* Claimant Identification Numbers on which SLG wishes to supplement were not available to SLG in January 2019, simply because our clients for one reason or the other did not mark SLG as their counsel on their filed Claim Form. Just so the Court is keenly aware, for SLG to be later marked as counsel and, more importantly, to be marked as the clients' counsel on their issued Notice of Determination, one of two things had to occur after January 18, 2019. SLG's client either had to 1) subsequently submit the AR-01 Request for Change in Representation Status form instructing the Settlement Administrator to mark SLG as their counsel; or 2) SLG's client had to subsequently submit an Amended Claim Form wherein he/she indicated that SLG represented their interests. Either way, on each of these *later identified* Claimant Identification Numbers, the Client had to voluntarily execute a written instrument *after* January 18, 2019 notifying the Settlement Administrator that SLG is their attorney-in-fact. Both type of filings by SLG's Clients, done after January 18, 2019, are in effect a power of attorney. Both the AR-01 Request for Change in Representation Status form and Amended Claim Form were required to be in writing and signed by the Client, same as a power of attorney. Both instruments further have the legal effect of directing the Settlement Administrator to deal with SLG as their attorney on issues related to their claim. This is precisely why the Settlement Administrator subsequently dealt with SLG on these ninety-six Claim Forms, including providing copies of each clients' subsequently issued Notice of Determination to SLG. Without the Clients' subsequently filed power of attorney, SLG would not be privy to the issued Notices of Determination.

9. Despite SLG's Clients' voluntary, written averments under oath to the Settlement Administrator that SLG is their counsel, leadership asks this Court to turn a blind eye to what has

transpired since January 2019 – the Clients indicating their election of counsel in their *de facto* powers of attorney. Given the Settlement Administrator has already marked SLG as counsel on each of the ninety-six issued Notices of Determination, it is only logical that the Settlement Administrator can credit SLG with these clients' payments in the *calculation of the IRPA pool award for applicants*. Contrary to leadership's baseless assertions, there is simply no evidence that permitting SLG's motion will either "prolong the determination and increase the cost of the IRPA process." It has already been done.

10. What leadership is advocating for is that the Settlement Administrator calculate its IRPA award on payments it *knows* not to be 100% reflective of SLG's clients' payments from the Settlement Fund. Such a result is contrary to the Settlement Agreement as well as the Court's Order and would be clear error. A district court "abuse[s] its discretion when it [gives] no weight" to "plainly legitimate" considerations, *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1284 (11th Cir. 2015), or "ignores . . . relevant evidence," *Arlook ex. rel. N.L.R.B. v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992). *See also NSK Ltd. v. United States*, 390 F.3d 1352, 1357-58 (Fed. Cir. 2004) (vacating decision based on "internally inconsistent" rationale). For these reasons, SLG's supplementation will not "threaten to upset the process so that other firms can submit clients that they neglected to submit initially." No other firms have sought this remedy, and if they did, this argument would not be grounds to deny it. In essence, if the problem is as big as leadership infers it might be, then that is yet another glaring problem with the allocation process the Court should address separately.

11. Leadership references SLG's failure to seek an extension, but this is not an extension. SLG timely filed its IRPA Application and retainer agreements. SLG covered all of its then-known, then-identified, Claimant Identification Numbers as provided by the Settlement Administrator. For known clients where the Claimant Identification Number was not known, SLG filed under a Tax Identification Number, if it was provided by the Client. Yet, this process still does not allow for coverage in the situations set forth in SLG's Motion -- where Clients filed multiple claim forms under several Tax Identification Numbers and did not mark SLG as counsel on all of the claim forms. For example, SLG timely filed a retainer agreement for its client Steve R using the Claimant Identification Number provided by the Settlement Administrator only to later learn that the Client had two more Claimant Identification Numbers, one of which ended up providing the basis for his Notice of Determination. This is not SLG's fault. SLG could not have known additional Claimant Identification Numbers existed as of January 18, 2019. It is not prejudicial to anyone to give SLG credit for these later identified Claimant Identification Numbers now that the Clients have filed their powers of attorney indicating SLG is their counsel of record. There is no "excusable neglect" to reference because there was no "neglect" in the first place. SLG could not have foreseen in January 2019 that its Clients would contact SLG after-the-fact and, after asking for SLG's help regarding their claim forms, that SLG would learn the clients had filed multiple claim forms. These Clients followed the process and later added SLG as their counsel to their claims by filing their powers of attorney, after which SLG helped them clean up errors with their claim forms. That is not "neglect." It is doing one's job as an attorney and following the process. Helping Clients correct Claim Forms

and later asking the Court to allow supplementation in response to the situation that developed is all that SLG seeks.

12. As for timing, leadership makes a big deal out of the fact that 19 months has passed since the Court's Orders. This argument suggests SLG should have filed at least 96 separate Motions to Supplement. That would not be efficient for SLG, the Settlement Administrator, or the Court. Filing 96 separate Motions would not have benefitted the Settlement Administrator in calculating the IRPA award because the IRPA award has not yet been calculated. Only after the last known Notice of Determination was issued to SLG's clients on July 28, 2020 did SLG have the complete data set which allowed for a full and comprehensive cross check of how many Claimant Identification Numbers were identified by the Settlement Administrator to SLG, how many clients were involved, the extent of the bushels and compensation at play, etc. If it was a negligible amount, SLG did not intend to make an issue of it. But 3.5 million bushels is significant, thus the reason for SLG's current motion to supplement the record.

13. Leadership's opposition is simply untenable. Their reference to *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380 (1993), and the Tenth Circuit's four factors this Court should allegedly consider, establish as much:

a) *The danger of prejudice to the non-moving party.* As referenced, no prejudice will occur to the other IRPA applicants. The Settlement Administrator has not yet calculated any IRPA percentages, the Special Master and Court have not yet issued any recommendations or IRPA awards, and multiple appeals regarding fee allocation Orders are currently before the Tenth Circuit Court of Appeals. Unless the Settlement Administrator has some unknown, undisclosed difficulty in

7

simply crediting SLG for its clients' bushels and corresponding payments on the ninety-six later identified Notices of Determination, there is simply no harm or prejudice to anyone in allowing SLG's supplementation. To the contrary, it will base the Court's prospective IRPA award on the best and most accurate information and not on information the Settlement Administrator or Court knows to be incorrect.

b) *The length of delay and its potential impact on judicial proceedings.* SLG had to wait until Notices of Determination were completed for all of its clients which did not occur until July 28, 2020. SLG's filing has not delayed the proceedings and there will be no delay caused by this Court simply directing that SLG be credited with these ninety-six Clients' Notices of Determination. It's simple math as the Settlement Administrator has already marked SLG as IRPA counsel on these Clients' bushels and corresponding payments.

c) *The reason for the delay including whether it was within the reasonable control of the movant.* SLG has absolutely no control over when the Settlement Administrator issued its Clients' Notices of Determination. SLG is concerned with getting credited with its Clients' bushels and corresponding payments as noted on their Notices of Determination so that an accurate IRPA award can be determined. As noted in its Motion, SLG did not receive the last Notice of Determination until July 28, 2020. A cross-check of the data was then immediately performed, the current motion was prepared, leadership was asked if it opposed the request which it did, and the current Motion was then filed seeking leave of Court to supplement the record. Filing a Motion to Supplement any earlier risked missing bushels and/or continuous motion practice before the Court.

d) *Whether the movant acted in good faith.* SLG notes, as set forth in more detail in SLG's recently filed Objections to and Motion for Reconsideration of the Four Pot Allocation Process (Dkt. 4445), that its attorneys have been working diligently since the approval of the settlement to aid hundreds of its clients with errors the clients made on their settlement Claim Forms, responding to Notices of Rejection issued on their settlement Claim Forms, helping clients with filing and correcting their W9's and/or Amended Claim Forms, and aiding clients with the filing of over fifty Appeals to the Special Master regarding errors on their settlement Claim Forms. Not only did SLG have to wait until the Settlement Administrator issued all of its clients' Notices of Determination to know the full extent of the issue, but SLG was also putting the interests of its clients in getting their respective Claim Forms corrected ahead of SLG's financial interest of being prospectively paid. To follow leadership's suggestion and have filed 96 separate motions piece meal would only have diverted SLG's limited time from helping its clients through a critical period in the settlement claim process.

## Conclusion

The undersigned counsel each have practiced law for twenty-five years, and this is the first time we have witnessed opposing counsel advocate to a Court that fees earned by licensed colleagues be denied. Not only is leadership's opposition untenable, but it flies in the face of the Clients' written and signed declarations to the Settlement Administrator and thus this Court that SLG is their counsel and who filed their lawsuits. SLG's Clients' subsequent written filings clearly constitute powers of attorney and SLG should accordingly be credited with its Clients' payments as designated in their

issued Notices of Determination.1 These 96 *later identified* Claimant Identification Numbers are just that: later identified. SLG should not be punished because it was simply doing its job helping these Clients through the settlement claim process.

For these reasons, SLG prays this Court grant its motion to supplement, accept SLG's clients' subsequent written instruments designating SLG as their counsel as their power of attorney, direct the Settlement Administrator and Special Master to give credit to SLG for the bushels and payments attributed to its clients' Notices of Determination issued on said 96 Claimant Identification Numbers, and Order that said supplementation be utilized in the calculation of the IRPA pool award for applicants, including SLG, and any other relief the Court deems just and equitable under the circumstances.

Respectfully Submitted,

/s/ *Spencer Shields*

Spencer C. Shields MO48347   KS17819
James T. Yoakum                      KS17435
Shields Law Group, LLC
Telephone: (913) 393-2080
Telephone: (816) 421-0800
Facsimile:  1-877—247-9844
scs0303@gmail.com

---

1 SLG too would seek further clarification from the Court regarding Claimant ID# P769492249 for which the Settlement Administrator copied SLG with Notice of Determination. Producer H was not a client of SLG until after the settlement preliminary approval on 4/10/18; however, he contacted SLG for advice regarding the settlement process in September 2018 and later engaged SLG to assist him with the filing of his pending Appeal before the Special Master regarding the Viptera/Duracade error he made on his Claim Form. Unfortunately, the Court has not allowed for seeking an IRPA fee or fee appeal in this circumstance. See Dkt. 3882, Pg. 22, Para. 7 rejecting the special master's recommendation for a limited right of appeal to the master for a fee based on "unique and exceptional circumstances."

## CERTIFICATE OF SERVICE

      I hereby certify on this 14th day of September, 2020 that a true and correct copy of the foregoing was served upon all parties of record via the Court's ECF system.

                                      */s/ Spencer C. Shields*

                                      Spencer C. Shields     KS Bar No. 17819