# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE SYNGENTA AG MIR162 CORN LITIGATION** | Master File No. 2:14-MD-02591-JWL-JPO |
| **THIS DOCUMENT RELATES TO ALL CASES <u>EXCEPT</u>:** | MDL No. 2591 |
| *The Delong Co., Inc. v. Syngenta AG, et al.*, No. 2:17-cv-02614-JWL-JPO | |
| *Heartland Corn Prods. v. Syngenta Seeds, LLC, et al.*, No. 20-cv-2168-JWL-JPO | |

### DECLARATION OF BRADLEY T. WILDERS
### OF STUEVE SIEGEL HANSON LLP

I, Bradley T. Wilders, declare as follows pursuant to 28 U.S.C. §1746:

1. I am a partner of Stueve Siegel Hanson LLP ("Stueve Siegel Hanson") and counsel for the Plaintiffs in this multidistrict litigation ("MDL") and for the Kansas MDL Co-Lead Counsel and the Representative Plaintiffs in the appeals brought from the Court's orders allocating the aggregate attorney's fees and reimbursement of expenses in this MDL. My partner, Patrick J. Stueve, is one of the three Court-appointed Settlement Class Counsel.

2. I make this declaration based on my personal knowledge and if called to testify to the contents hereof, I could and would competently do so.

3. Although the Claims Administrator and Special Master continue to work on processing the applications from individually retained private attorneys ("IRPAs") for fees from the IRPA Pool, the Claims Administrator has nearly completed processing the underlying claims by class members. According to the current data provided to me by the Claims Administrator, the

1

following law firms represent claimants with the following total share of the compensable recovery quantity (CRQ) upon which the settlement fund will be distributed.[1]

| | CRQ Totals | | | |
|---|---|---|---|---|
| - | **Subclass 1** | **Subclass 2** | **Subclass 3** | **Subclass 4** |
| **Paul Byrd Law Firm PLLC** | 79,483,325.94 | 7,486,367.04 | 1,787,111.48 | - |
| **Hossley-Embry LLP** | 43,258,186.59 | 6,100,092.11 | - | - |
| **Shields Law Group** | 108,768,691.20 | 16,040,914.24 | 56,395,023.74 | - |
| **Toups/Coffman Counsel** | 219,747,502.04 | 59,077,330.58 | 27,301,312.64 | - |
| Grand Total | 7,027,988,293.42 | 1,097,421,098.89 | 5,633,569,488.07 | 22,025,519.04 |

4. In their pending appeals, Toups, Hossley, Byrd, and Shields have asked the Tenth Circuit to require the Court to award them one-third of their clients' gross recovery under the settlement. Applying the share of CRQ per subclass for those firms, and their identifiable referral counsel, to the gross settlement fund by subclass, one-third of their clients' gross recovery would be approximately $31.54 million. Although the Kansas MDL Co-Lead Counsel and Settlement Class Counsel believe their appeals have no merit, if these firms were to prevail and obtain a reversal, the appellees have preserved many arguments on potential remand, including that these firms should pay, at minimum, 11 percent of their clients' gross recovery into the common benefit funds. That deduction alone would reduce these four firms' fees to approximately $21.13 million. These four firms collectively have already been awarded $3.94 million from the Common Benefit Pools and are entitled to a share of the IRPA pool that, based on the CRQ values reported above, I estimate is approximately 9.61% of the IRPA pool, or $5.80 million. Subtracting these amounts

---

[1] This data is not based on the IRPA applications themselves but, rather, on the law firms reported by the claimant on his or her claim form or by subsequent designation by the claimant through the procedures established by the Claims Administrator. The actual IRPA awards, and the assignment of valid claimants to IRPAs, will be made by the Special Master based on the IRPA applications and evidence submitted therewith, pursuant to the Court's order. These calculations were produced for estimation purposes only.

shows that, at most, on remand, their award of attorney's fees would increase by $11.38 million (and likely much less than that).

5. Alternative to their argument that they should be awarded one-third of their clients' gross recovery, Toups and Hossley argue that they should have been awarded approximately $27 million in claimed lodestar from the Common Benefit Pools. Although we believe this figure is grossly inflated, does not reflect the value of work that benefitted the class, and is untethered to any realistic appellate or remand outcome, if successful, it would increase the total fees to these four firms by another $13.73 million. This is estimated by calculating the difference between the claim for $27 million and the same firms' share of the $11.38 million calculated above. Notably, this is likely an overstatement because if the Tenth Circuit agreed that Toups and Hossley were entitled to their claimed lodestars, it would likely also have rejected the appeals by Shields and Byrd, which are based on a different and divergent claim of error, or if those appeals were successful, the amount available in the Common Benefit Pools, from which any lodestar would be compensated, would have been reduced. In other words, these estimates are inflated because the arguments necessary to produce these sums are mutually exclusive.

6. Two other appellants, The Law Offices of A. Craig Eiland, PC and O'Hanlon Demerath & Castillo, PC, have asked that the Tenth Circuit require the Court to adopt Special Master Daniel E. Stack's recommended fee award to them (which amounts were $3.12 million and $1.56 million, respectively), which is about $1.56 million more than those firms were already awarded from the Illinois Common Benefit Pool. Again, appellees strongly believe these appeals are without merit.

7. Johnson Becker, PLLC has asked the Tenth Circuit to reverse on account of it having filed cases in Illinois as well as Minnesota, and argues that it would have received $2.6

million more if it had been awarded fees under the methodology allegedly applied by the Illinois court. Again, appellees strongly believe these appeals are without merit.

8. Although Kansas Co-Lead and Settlement Class Counsel do not believe that any of the appeals (or the pending motions for reconsideration) have merit or are even remotely likely to be successful, I have been asked to estimate the total amount by which the remaining appellants—assuming the Settlement Agreement with Watts Guerra Group is approved—might be awarded if their arguments are successful. I estimate that this amount is less than $29.27 million, which is the sum of the $11.38 million calculated in paragraph 4, the $13.73 million calculated in paragraph 5, the $1.56 million calculated in paragraph 6, and the $2.60 million calculated in paragraph 7. I believe these are a very generous estimates to the appellants because even if the orders are reversed, I believe it is very likely that there will be no fee increase to these appellants. In fact, some of these firms may see their fees decreased on remand based on arguments we intend to make if there is a reversal as preserved through our contingent cross appeal.

9. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of November, 2020, in Kansas City, Missouri.

*/s/ Bradley T. Wilders*
Bradley T. Wilders