IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, | MDL No. 2591 |
| | Case No. 14-md-2591-JWL |
| This Document Relates to All Cases <u>Except</u>: | |
| *The Delong Co., Inc. v. Syngenta AG, et al.*, No. 17-2614 | |
| *Heartland Corn Prods. v. Syngenta Seeds, LLC, et al.*, No. 20-2168 | |

## **MEMORANDUM AND ORDER**

This matter arising from multi-district litigation (MDL) comes before the Court on the motions by Hossley-Embry, LLP ("Hossley") (Doc. # 4442); Paul Byrd Law Firm, PLLC ("Byrd") (Doc. # 4443); and Shields Law Group, LLC ("Shields") (Doc. # 4445) for reconsideration of the Court's order by which it allocated its prior attorney fee award to four pools and limited attorneys' recovery of contingent fees to those awarded by the Court.[1] By separate motion (Doc. # 4444), Byrd also seeks reconsideration of the Court's order awarding fees to firms from the Minnesota common benefit pool. For the reasons set forth below, the Court **denies** the motions.

---

[1] In response to the motions, Watts Guerra LLP ("Watts") filed a brief in which it purports to join the motions partially, to the extent that it agrees that the claims process has required significant work by attorneys. Watts does not request any particular relief, however. Watts also states in that brief that the Court lacks jurisdiction to grant the relief requested by movants.

I. **Background**

By Memorandum and Order of December 7, 2018, the Court granted final approval of a settlement agreement resolving claims against the Syngenta defendants, and it awarded one third of the settlement fund as attorney fees. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6436074 (D. Kan. Dec. 7, 2018) (Lungstrum, J.).

By Memorandum and Order of December 31, 2018, the Court allocated the attorney fee award among four pools: the Kansas MDL common benefit pool; the Minnesota state court common benefit pool; the Illinois federal court common benefit pool; and a pool for individually-retained private attorneys (IRPAs), who would share that portion *pro rata* based on the ultimate recoveries by their claimant clients. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018) (Lungstrum, J.). The Court also ruled that attorneys could not recover additional fees from any client's recovery based on a contingent-fee contract. *See id.* at *10. By separate orders, the Court subsequently awarded fees from the three common benefit pools to particular law firms. The Court has not yet awarded fees from the IRPA pool. Various firms, including Hossley, Byrd, and Shields, have filed appeals to the Tenth Circuit Court of Appeals from the Court's fee orders.

By their present motions, which were filed between September 11 and September 14, 2020, Hossley, Byrd, and Shields (collectively "movants") seek reconsideration of the Court's order by which it allocated fees among the four pools. Movants argue that since the date of that order they have performed substantial work on behalf their clients in the claims process, including work attempting to cure claims rejected as deficient and assisting

appeals of final rejections. Movants further argue that because the Court did not anticipate or consider such work in making its allocation to the IRPA pool, the Court should reconsider the amount of that allocation. Movants do not suggest an additional amount that should be added to the IRPA pool, but they do argue that they should be permitted to recover their contractual contingent fees from clients.

By separate motion, Byrd seeks reconsideration of the Court's order awarding fees from the Minnesota common benefit pool. Byrd appears to take issue with the multiplier that was applied to its common-benefit lodestar and the amount awarded for work completing plaintiff fact sheets (PFSs). Byrd does not request an additional award in a specific amount, but instead asks that the Court permit the parties to brief the issue fully.

Settlement class counsel, Kansas MDL co-lead counsel, and Minnesota state-court litigation co-lead counsel (collectively "CLC") have filed a brief in opposition to the motions. Movants have filed a joint reply brief.

## II.     Jurisdiction

CLC argue that this Court lacks jurisdiction to grant these motions because movants (and others) have filed appeals from the same orders, involving the same allocation and awards, as those of which movants seek reconsideration.[2] The Court agrees.

In their motions, in arguing that the Court does have jurisdiction to reconsider its prior orders, movants cite a statement by this Court in its allocation order of December 31,

---

[2] In its brief, Watts also asserts that the Court lacks jurisdiction to reconsider these orders.

2018. There, however, the Court merely noted that an appeal by objectors to the final settlement approval did not prohibit the attorney fee allocation because attorney fee awards were not yet final and the allocation was collateral to the settlement approval. *See Syngenta*, 2018 WL 6839380, at *1 n.2 (citing *McKissick v. Yuen*, 618 F.3d 1177, 1197 (10th Cir. 2010)). Thus, the Court only explained why it had jurisdiction to address a collateral attorney fee issue despite an appeal regarding the settlement approval. It did not suggest that it could retain jurisdiction in a situation in which the very issues to be addressed are already the subject of an appeal.

Movants also cite *McKissick*, the case cited by this Court in the allocation order, but that case is also unhelpful here. In *McKissick*, the Tenth Circuit noted the general rule that "when a litigant files a notice of appeal, the district court loses jurisdiction over the case, save for *collateral matters not involved in the appeal*." *See McKissick*, 618 F.3d at 1196 (emphasis added, internal quotation omitted). In holding that the issue of attorney fees is collateral to a final judgment, the court noted the Supreme Court's rule that a district court retains jurisdiction over an "unresolved" issue of attorney fees. *See id.* 1196-97 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988)). Thus, the Tenth Circuit in *McKissick* did not authorize a district court's jurisdiction over an issue that is *not* unresolved and that *is* involved in the appeal.

Finally, Byrd cites a case stating the general rule that a district court is free to revisit its interlocutory issues prior to entry of a final judgment. That authority, however, does not address the present situation in which the district court is asked to revisit the same

4

orders and issues already on appeal. *See Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1181 n.8 (10th Cir. 2008).

The rule applicable here is that the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *See Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir. 1990) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The rule applies whether or not the appeal is interlocutory. *See id.* at 575-76; *see also* 16A Chas. A. Wright, et al., *Federal Practice and Procedure* § 3949.1 (5th ed. 2020) (authority over matters encompassed in the appeal is transferred, and the district court lacks power to act concerning such matters; "[a]n interlocutory appeal ordinarily suspends the power of the district court to modify the order subject to appeal").

Movants have not cited any authority that would allow the Court to address an issue already on appeal, and after CLC cited the applicable rule in their response, movants did not address this jurisdictional issue in their reply brief.[3] Thus, movants have not provided a proper basis for the Court's exercise of jurisdiction to grant their motions.

Apparently, in the pending appeals before the Tenth Circuit, some parties have disputed the finality of the Court's fee allocation and award orders in light of the fact that the Court has not yet awarded fees from the IRPA pool. It is true that an appeal from a non-appealable order does not necessarily divest the district court of jurisdiction. *See In*

---

[3] In a later brief, in which they oppose a motion for an indicative ruling concerning approval of a settlement of Watts's appeal, these movants again argue that this Court has jurisdiction to reconsider its prior orders that are now on appeal, but they do not cite any additional authority to support that position.

*re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2020 WL 4333559, at *5 (D. Kan. July 28, 2020) (Lungstrum, J.) (citing *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340-41 (10th Cir. 1976)).  Movants have not argued, however, that the Court's prior orders were not appealable – indeed, they themselves filed appeals from those orders.  Moreover, the Court has previously stated that the finality of its orders for purposes of appeal presents an issue for the Tenth Circuit to resolve.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 14554012, at *3 (D. Kan. Apr. 2, 2019) (Lungstrum, J.).  At any rate, it is not clear that the Court's prior orders are not appealable, and if that issue is in doubt, the district court may decline to act until disposition of the appeal.  *See Arthur Andersen*, 546 F.2d at 341; *see also* 16A Wright, et al. § 3439.1 (appeal from a *clearly* non-appealable order does not divest the district court of jurisdiction).  Thus, the Court concludes that it lacks jurisdiction to grant the motions at issue.

Despite this conclusion concerning the lack of jurisdiction, the Court will briefly address the instant motions.  Movants have not indicated whether they have brought their reconsideration motions under Fed. R. Civ. P. 60 or a different rule, but the Tenth Circuit has stated that even if a district court lacks jurisdiction to grant a Rule 60 motion because of a pending appeal, it may still consider and *deny* the motion.  *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002) (citing *Aldrich Enters., Inc. v. United States*, 938, 1134, 1143 (10th Cir. 1991)).  In addition, Watts suggests in its brief that the Court could issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1, and the Court therefore addresses the motions to make clear that it would not grant them even if the issues were remanded for consideration.

### III. Timeliness of the Motions

As an initial matter, the motions would be denied as untimely. With respect to the Court's allocation order, issued nearly two years ago, the issues raised by movants were known to them or should have been known to them well before now. Movants should have anticipated at the time of the order that some additional work would be required in the claims process, which included provisions for rejections to be cured and eventually appealed. If movants are presently arguing that the Court mistakenly anticipated no such work in making its allocation, such argument could and should have been raised immediately after the order was issued. *See* D. Kan. Rule 7.3 (motion to reconsider a non-dispositive order must be filed within 14 days after the order; motion to reconsider a dispositive order must be brought under Rule 59 or Rule 60); Fed. R. Civ. P. 59(e) (motion to alter or amend a judgment must be brought within 28 days); Fed. R. Civ. P. 60(c)(1) (motion for relief from a judgment or order must be brought within a reasonable time and, in the case of mistake or newly-discovered evidence, at least within one year). If instead movants are arguing that the amount and scope of the additional work in the claims process was not apparent, movants knew of that issue long ago. Movants cite the special master's requests for their help curing deficient claims, but those requests date back to mid-2019. Movants describe additional work undertaken throughout 2019, and appeals from final rejections began many months ago. Movants have failed to address the timeliness issue at all in their reply brief, and thus they have not explained why these motions could not have been brought much sooner. These motions, filed this late, after their appeals of the same orders have been pending for some time, are not timely.

The untimeliness of Byrd's motion for reconsideration of the Court's award of fees from the Minnesota common benefit pool is even more clearly untimely. Because of the process adopted by the multiple courts involved, which included a recommendation to and ruling by the Minnesota state court (with only procedural objections allowed to this Court before issuance of the final award), Byrd was obliged to raise any issue concerning its award from the Minnesota pool to the Minnesota court, either before or immediately after that court's ruling. Certainly, if Byrd believed that that court's award (which this Court adopted) was insufficient, it needed to raise the issue with that court at that time. Instead, Byrd declined to object to Minnesota CLC's recommended award; and after it was awarded even more than the recommended amount by the Minnesota court, it declined to file any motion for reconsideration or any objection before this Court adopted and finalized the Minnesota court's award. By failing to object in accordance with the Court's process, Byrd waived its present objection to the award. Finally, Byrd in its motion compares its award to awards from the Illinois and Kansas pools; but even if Byrd was entitled to wait for those awards before objecting, its motion still comes far too late, as the Court's award from the Kansas pool preceded the Court's July 2019 award from the Minnesota pool, and the Court awarded fees from the Illinois pool in November 2019. The Court would therefore deny this motion as untimely.

## IV. Merits of Arguments for Reconsideration

### A. Order Allocating Fees to Pools and Limiting Contingent Fees

The instant motions also fail on their merits. There is no basis for the Court's reconsideration of the order by which it allocated fees to the four pools and limited the recovery of contractual contingent fees. Movants are mistaken in asserting that the Court did not anticipate that there would be any additional work by IRPAs in the claims process. Movants cite the Court's statement in its allocation order that "the IRPAs were relieved of having to do any work to advance their clients' lawsuits or to add value to their claims." *See Syngenta*, 2018 WL 6839380, at *7. The Court was referring to a lack of work to add value to their clients' *legal* claims, which were resolved by the approval of the settlement. The Court did not rely for its allocation on any belief that IRPAs would not be required to perform some work for their clients in the claims process. The Court did anticipate that some such work would be required in a process that allowed for initial rejections to be cured and final rejections to be appealed to the master. Thus, this argument by movants does not provide a basis for altering the Court's prior conclusion concerning the IRPAs' relative contribution (measured against the contributions of other attorneys) to plaintiffs' success in this litigation.

Movants also challenge the Court's statement in the allocation order that the claims process "proved to be quite simple and streamlined," *see id.*, but the Court stands by that assessment. Given the size and scope of the settlement, the process *has* proven to be relatively straightforward, including for the reasons stated in the allocation order. *See id.* (noting that claims could be made online based on data provided by the government and

9

that more than half of claimants were not represented by individual counsel).  As CLC make clear in their brief (and movants have not disputed these figures), the program was immensely successful, with 88 percent of claims accepted without additional information being supplied; with the great majority of deficiencies easily cured, involving only a missing identification number or signature or answer; and with a present deficiency rate (with appeals ongoing) of only 2 percent.  Thus, the Court did not base its allocation on any mistaken idea concerning the ease of the claims process.

In addition, movants' submissions do not allow the Court to judge the ultimate fairness of their total fee awards in light of the additional work they insist they have performed in the claims process.  First, movants did not provide any estimates of their total fee awards.  They have not disputed CLC's estimates, however, which are as follows:  for Shields, almost $2.2 million in fees (MN and IRPA pools), and 2,677 claims by clients; for Byrd, over $2.4 million in fees (MN and IRPA pools), 1,975 claims; for Hossley, over $1 million in fees (KS and IRPA pools), 831 claims.  Moreover, those figures include the small percentage of unsuccessful claims, on which recovery was denied (although appeals are still pending).  Even with those figures, however, the Court cannot make the necessary calculations because movants have not provided lodestar figures for the additional work they claim to have performed, for which they seek additional compensation.  Rather, by their separate motions (which are largely identical), each firm claims to have spent "thousands" of additional hours, with no documentation or suggestion of contemporaneous timekeeping.  Even if those claims are true, with each firm working 2,000 additional hours in the claims process, movants' total awards would not necessarily be unfair, given the

substantial amounts of their expected total fee awards. The fact of such additional work would not alter the Court's overall calculus in allocating fees among the four pools, by which it compared the IRPAs' contribution to the overall success of the litigation with the contributions of other attorneys who performed substantive work for the common benefit of all plaintiffs (and who also would have performed work in the claims process).

The Court also agrees, for the reasons set forth by CLC in their brief, that each movant's vague claim of having spent "thousands" of additional hours in the claims process is questionable at best.[4] Moreover, as CLC points out, some of movants' additional work must have been of their own making, as they previously claimed to have reviewed their clients' initial claims submissions, yet still had to perform work to cure relatively simple mistakes involving missing information.

Accordingly, there is no basis for the Court to conclude that it erred in its allocation among the four pools. Nor is the Court persuaded that the award to the IRPA pool was not sufficient in light of the work performed by those attorneys, including during the claims process. Thus, there is no basis to undo the Court's previous limitation on the recovery of contractual contingent fees from clients' recoveries. For those reasons, the Court would deny on the merits the three motions for reconsideration of the Court's allocation order.

### B. *Order Awarding Fees from the Minnesota Fee Pool*

In its separate motion for reconsideration of the Court's award from the Minnesota common benefit pool, Byrd appears to argue that its award was not high enough in light of

---

[4] Movants' claims are undermined by Watts's estimate that it worked an average of 21 minutes per claim for clients in the claims process.

the amount that it fronted for the litigation in its common-benefit assessment. Byrd compares its award with two others who paid similar or smaller assessments. As CLC point out, however, the amount of that assessment (Byrd has not disputed that that assessment is to be returned to it separate from the award) is irrelevant, as the award was properly based on the actual work performed by Byrd that benefitted the entire litigation. Byrd has not offered any specific reason why its award (to which it had no objection at the time) was not sufficient in light of its common-benefit work, relative to the work of the other firms receiving awards from that pool.

Byrd also notes that the rate at which PFS work was compensated from that pool differed from the rate used in the Kansas and Illinois pool awards. Each pool's awards, however, were determined from a consideration of the relative importance of common-benefit contributions with respect to litigation on that particular front, and thus the rates would not necessarily be the same for each pool. Byrd offers no specific explanation why the Minnesota PFS rate was unfair.[5]

Accordingly, the Court would deny on the merits Byrd's motion for reconsideration of the Court's order awarding fees from the Minnesota pool.

IT IS THEREFORE ORDERED BY THE COURT THAT the motions by Hossley-Embry, LLP (Doc. # 4442); Paul Byrd Law Firm, PLLC (Doc. ## 4443, 4444); and Shields

---

[5] Byrd's invitation to the Court to read its appellate briefs is not a sufficient substitute for making particular arguments for reconsideration.

Law Group, LLC (Doc. # 4445) for reconsideration of the Court's prior orders are hereby **denied**.

IT IS SO ORDERED.

Dated this 2nd day of December, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge