**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE SYNGENTA AG MIR162 CORN LITIGATION** | **Master File No. 2:14-MD-02591-JWL-JPO** |
| **THIS DOCUMENT RELATES TO ALL CASES EXCEPT:** | **MDL No. 2591** |
| *Heartland Corn Prods. v. Syngenta Seeds, LLC, et al., No. 20-cv-2168-JWL-JPO* | |

**Report and Recommendation
of Special Master Ellen Reisman
Regarding Allocation of Attorneys' Fees
Among Individually Retained Private Attorneys (IRPA)**

May 14, 2021

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ....................................................................................... 1

    I.   IRPA SUBMISSION REQUIREMENTS ........................................................... 6

    II.  REVIEW OF IRPA SUBMISSIONS ............................................................... 7

    III.  INITIAL IRPA AWARD DETERMINATIONS AND NOTIFICATION OF IRPAS .... 13

    IV.  REVIEW OF IRPA APPEALS FROM INITIAL DETERMINATIONS ........................ 16

        A.  Proper Association Of IRPA Submission With Claim ............................................... 17

        B.  Undated Retainer Agreements ................................................................................... 19

        C.  Unsigned Retainer Agreements ................................................................................. 21

        D.  Other Issues Relating To Competing Firms With Complete Retainer Agreements ... 21

    V.   RECOMMENDATIONS REGARDING IRPA AWARDS ............................................. 23

        A.  Recommended Awards ............................................................................................... 23

        B.  Objections ................................................................................................................. 25

        C.  Recommendations Regarding IRPA Award Payment Process ................................... 28

CONCLUSION.................................................................................................................... 29

List of Exhibits................................................................................................................. 31

## INTRODUCTION AND SUMMARY

Federal Rule of Civil Procedure 23(h) authorizes courts that have certified class actions to "award reasonable attorney's fees . . . that are authorized by law."[1]  Section 7.2.1 of the Court-approved Syngenta Class Action Settlement Agreement provides that "Settlement Class Counsel and other counsel representing Class Members who performed work for the benefit of Class Members shall make Fee and Expense Applications" to be paid from the Gross Settlement Proceeds.[2]

In its Memorandum and Order approving the class action settlement of this case, the Court applied the *Johnson* factors and awarded one-third of the Gross Settlement Proceeds of $1.51 billion as attorneys' fees (hereinafter, the "Attorneys' Fee Award").[3]  The Court extended my appointment as Special Master and directed me to submit a Report and Recommendation regarding the allocation of the Attorneys' Fee Award.[4]  That Report and Recommendation was submitted on November 21, 2018.[5]  Among its recommendations was that a portion of the Attorneys' Fee Award be allocated to be awarded to individually retained private attorneys ("IRPAs") *pro rata* based upon the recovery by their individual clients as a proportion of the amount recovered by all claimants represented by IRPAs.[6]

---

[1] Fed. R. Civ. P. 23(h).  *See also In re Syngenta AG MIR 162 Corn Litigation*, 357 F. Supp. 3d 1094, 1110 (D. Kan. 2018).

[2] Settlement Agreement § 7.2.1, ECF No. 3507-02, filed Mar. 12, 2018.  Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

[3] *In re Syngenta AG MIR 162 Corn Litigation*, 357 F. Supp. 3d at 1110-12 (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988); *Johnson v. Georgia Hwy. Expr., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

[4] *See* Order Appointing Special Master, ECF No. 3812, entered Nov. 15, 2018; Notice of Hearing, ECF No. 3813, entered Nov. 15, 2018.

[5] Report and Recommendation of Special Master Ellen Reisman Regarding Attorneys' Fees, Expenses, and Service Awards, ECF No. 3816, filed Nov. 21, 2018.

[6] *Id.* at 67.

After hearing objections to the Report and Recommendation and consulting with the Hon. David Herndon of the United States District Court for the Southern District of Illinois (now retired) and the Hon. Laurie Miller of the District Court of Hennepin County, Minnesota, the Court issued a Memorandum and Order on December 31, 2018, that "adopt[ed] the [Report and Recommendation] in large part," including the recommendation for an IRPA pool to be allocated *pro rata* based on IRPA client recoveries under the Settlement.[7]  The Court "conclude[d] that the pool for individually retained private attorneys (IRPAs) should be . . . 12 percent of the total fee award."[8]  Pursuant to that ruling, the Court allocated $60,400,000.00 of the Attorneys' Fee Award to the IRPA pool.[9]

The Court also established a process by which allocations from the IRPA pool would be determined.  First, the Court "adopt[ed] the special master's recommendation to reopen the application period so that IRPAs who ha[d] not yet filed an application for attorneys' fees [could] still seek an award of fees from the IRPA pool," in order to ensure that all IRPAs had a full and fair opportunity to seek attorneys' fees.[10]  Second, the Court "adopt[ed] the master's recommendation . . . that specific awards from the IRPA pool be administered by this Court, in consultation with the Minnesota state court and the Illinois federal court, regardless of where an IRPA's cases were filed," thereby "allow[ing] for a consistent distribution of fee awards from the IRPA pool."[11]

---

[7] Memorandum and Order, ECF No. 3882, entered Dec. 31, 2018 ("December 2018 Fee and Expense Order") at 2, 21.

[8] *Id.* at 2.  *See also id.* at 11-26 (adopting Special Master's recommendation for establishment of an IRPA pool in addition to three other common benefit pools for the Kansas Multidistrict Litigation, Minnesota state court, and Illinois federal court).

[9] *Id.* at 31.

[10] *Id.* at 23.

[11] *Id.* at 25.

Third, the Court set forth the method for calculating IRPA awards from the $60.4 million IRPA pool.  These IRPA pool allocations could be made only after "the amount of each claimant's recovery from the settlement fund has been determined."[12]  Once all settlement claimants' recoveries[13] are determined, each particular settlement claimant's proportionate share of the total amount to be paid to all claimants for which IRPA applications were made and accepted can then be calculated.  That same percentage can then be used to calculate, for each accepted IRPA application in respect of a particular settlement claim, "the *pro rata* IRPA award to be made from the IRPA pool."[14]

Fourth, the Court provided IRPAs with two opportunities to appeal or object to their IRPA pool allocation.  After being informed of the preliminary IRPA pool allocations, an IRPA could "object to the calculation" prior to the issuance of a report and recommendation by the Special Master "concerning the proposed distribution of the IRPA pool to particular attorneys or law firms."[15]  As described below, an appeals process was put in place by the Claims Administrator and myself to afford this opportunity to all IRPAs who had sought awards.  That process resulted in the final recommendations contained herein.  The Court further provided that objections to the report and recommendation "may be filed within 14 days, and the Court will then resolve any such renewed objections."[16]

Pursuant to the Court's directive, this Report and Recommendation ("Report") contains my final recommendations with respect to the allocation of the IRPA pool after consideration of

---

[12] *Id.* at 25-26.
[13] The recovery from the settlement fund for each settlement claim found to be compensable is sometimes referred to by the Claims Administrator and herein as that settlement claim's "Total Award Amount".
[14] *Id.* at 26.
[15] *Id.*
[16] *Id.*

the IRPA applications and the appeals that were made of my preliminary IRPA pool allocations. This Report describes the process and principles used to review and make recommendations regarding IRPA applications and to resolve appeals.  It is organized as follows:

1.  Section I reviews the requirements established by the Court for IRPA fee applications.[17]

2.  Section II describes the process by which the IRPA applications were reviewed and evaluated, including the decision principles used in circumstances where multiple IRPAs made competing applications in respect of the same settlement claim.

3.  Section III describes the process by which law firms making IRPA applications were notified of my preliminary IRPA determinations and provided with an opportunity to appeal, setting forth their objections to those preliminary IRPA determinations.

4.  Section IV discusses the review of the appeals that were received.

5.  Section V sets forth the final recommended IRPA awards and recommendations regarding the payment process.

Additionally, there are three exhibits that contain detailed data regarding the recommendations contained herein.  Exhibit 1 summarizes the recommendations with respect to each firm that submitted an IRPA application on its own behalf or on behalf of itself and

---

[17] Order Regarding IRPA Applications and Expense Applications, ECF No. 3886, entered Jan. 4, 2019 (hereafter, "IRPA Application Order").

affiliated firms.[18]  For each such IRPA Submitting Firm, Exhibit 1 reflects (1) the total number of IRPA Submissions[19]; (2) the number of IRPA Submissions recommended for rejection; (3) the number of IRPA Submissions recommended for acceptance; (4) the sum of all Total Award Amounts for settlement claims associated with the IRPA Submissions recommended for acceptance; and (5) the recommended total IRPA award to that IRPA Submitting Firm.  Exhibits 2 and 3 set forth at a more granular level the recommendations with respect to each individual IRPA Submission, including with respect to any appeals from the preliminary determinations of IRPA awards.[20]

As discussed below, the vast majority (nearly 95%) of IRPA Submissions are recommended for acceptance.  Only a small number (approximately 5%) of IRPA Submissions are recommended for rejection, and the majority (approximately 80%) of those IRPA Submissions that are recommended for rejection were not the subject of an appeal by an IRPA Submitting Firm of my preliminary determinations.  Thus, only approximately 1% of IRPA Submissions are recommended for rejection and were appealed from the preliminary

---

[18] A law firm making an IRPA application on its own behalf or on behalf of itself and affiliated firms is designated as an "IRPA Submitting Firm".  The documentation submitted to the Claims Administrator in support of its IRPA application for an individual settlement claim is referred to as an "IRPA Submission".

[19] The exhibits include those IRPA Submissions made by an IRPA Submitting Firm that could be associated with a person or entity that made a claim for settlement benefits and appeared in the Claims Administrator's database.  There were persons or entities for whom an IRPA Submitting Firm submitted a retainer agreement or who were included on an IRPA claimant list that could not be matched with a settlement claim in the Claims Portal.  The exhibits also document any appeals by IRPA Submitting Firms involving documentation submitted to the Claims Administrator that did not match a settlement claim.

[20] The data contained in Exhibits 2 and 3 that pertain to particular IRPA Submitting Firms are being sent directly to each of those firms via email from the Claims Administrator.  The data provided to the IRPA Submitting Firms also include confidential claims identification information which is not appropriate to include on a public record.

determinations of IRPA awards.  The reasons why these IRPA Submissions are recommended for rejection are set forth below and in Exhibit 3.  The relevant numbers are as follows:

- Total IRPA Submissions:  114,060

- Total IRPA Submissions recommended for acceptance:  108,307

  - Total IRPA Submissions recommended for IRPA award:  93,421
  - Total IRPA Submissions recommended for acceptance but no IRPA award because underlying settlement claim received no compensation: 14,886

- Total IRPA Submissions recommended for rejection: 5,753

  - Total IRPA Submissions recommended for rejection where there was no appeal by any firm or other data update:  4,587
  - Total IRPA Submissions recommended for rejection where there was an appeal by a firm or other data update:  1,166

## I.       IRPA SUBMISSION REQUIREMENTS

The Court's January 4, 2019 IRPA Application Order required attorneys seeking IRPA awards to submit documentation establishing that the attorney "represented a settlement class claimant with respect to the claims covered by the settlement, prior to the preliminary approval of the settlement on April 10, 2018."[21]  All attorneys seeking IRPA awards were required to submit supporting documentation "regardless of whether or not the attorney has previously been included in a petition for an award of fees for common benefit work."[22]  They were required to "submit to the Claims Administrator . . .  a retainer agreement (or, if no retainer agreement exists, a power of attorney) for each claimant."[23]  This was to be done "electronically by

---

[21] *Id.* at 2.

[22] *Id.* (emphasis in original).

[23] *Id.* at 3.  The requirement for a retainer agreement reflected the requirements of applicable attorney ethics rules, which generally require that contingent fee representation agreements such as those asserted by the IRPAs must be memorialized in a written retainer agreement.  *See*, *e.g.*, Kansas Rule of Professional Conduct Rule 1.5(b), (d); Minnesota Rules of Professional Conduct,

uploading the documents to individual claims or through bulk upload via the applicant's Law

Firm Portal following the instructions available on the Corn Seed Settlement Program

website."[24]  The Claims Administrator established and encouraged firms to use an FTP site

permitting uploads in groups of 500.  To facilitate the Claims Administrator's ability to link

retainer agreements to the appropriate settlement claims, IRPAs also were to "submit to the

Claims Administrator" the following information:  "the attorney making the petition for an

award from the IRPA pool, each claimant represented by that attorney, and the unique claimant

identification number assigned to each such claimant by the Claims Administrator" or, if that

unique claimant identification number was unknown, "all digits of the claimant's Social Security

Number or (if an entity) Tax Identification Number."[25]  Attorneys seeking IRPA awards were

required to complete their submissions by January 18, 2019.[26]  Ninety firms made IRPA

Submissions on behalf of themselves or on behalf of themselves and their affiliated counsel.

## II.     REVIEW OF IRPA SUBMISSIONS

The Claims Administrator first attempted to associate the documentation for each IRPA

Submission with an individual settlement claim in the Settlement Claims Portal ("Claims

Portal").  Where the IRPA Submission provided a unique claimant identification number that

matched a claim in the Claims Portal, this was readily accomplished.  Where the IRPA

---

Rules 1.5(b), (c); Illinois Rules of Professional Conduct Rule 1.5(b), (c); Texas Disciplinary
Rules of Professional Conduct Rule 1.4(c), (f), (g) & cmt. 2.
[24] IRPA Application Order, ECF No. 3886, at 3.
[25] *Id.* at 2.
[26] *Id.* at 1.  Simultaneously with its filing of an IRPA petition by the January 18, 2019 deadline,
Watts Guerra LLP, which stated that it represented over 50,000 class members, moved for an
extension of time to provide additional information and file an amended petition.  ECF Nos.
4035, 4036, filed Jan. 18, 2019.  The Court granted the motion and directed Watts Guerra to
"submit the required information to the Claims Administrator on or before March 4, 2019."  ECF
No. 4045, entered Jan. 22, 2019.

Submission did not provide a claimant identification number, but instead provided a Social Security Number ("SSN") or Taxpayer Identification Number ("TIN"), the Claims Administrator identified any claim(s) matching the SSN or TIN and associated the IRPA Submission with those claims.  Where, however, no unique claimant identification number, SSN, or TIN were provided or the provided unique claimant identification number, SSN, or TIN was incomplete or did not match any settlement claim in the Claims Portal, it was quite difficult to associate an IRPA Submission with a settlement claim.[27]

For IRPA Submissions where a matching settlement claim in the Claims Portal could be identified, the next step was to review the supporting documentation.  The Claims Administrator reviewed the documentation and coded, with respect to each IRPA Submission, (1) which IRPA Submitting Firm made the IRPA Submission, (2) whether a complete, legible retainer agreement or power of attorney had been provided with the IRPA Submission, (3) whether the document was signed, and (4) the date, if any, on the document.

The coded data for all IRPA Submissions were then used to categorize each IRPA Submission based on (1) whether the IRPA Submitting Firm had provided a complete and legible retainer agreement or power of attorney executed by or on behalf of the claimant; (2) whether the retainer agreement or power of attorney was dated on or before April 10, 2018, and (3) whether other competing IRPA Submissions sought an IRPA award in respect of the same settlement claim.  IRPA Submissions that were identified as having provided a complete and legible

---

[27] Where no match to a settlement claim was possible because no unique claimant identification number, SSN, or TIN was provided or the provided unique claimant identification number, SSN, or TIN was incomplete, the Claims Administrator and Special Master attempted to match the IRPA Submission using other information available in the retainer agreement or other documents submitted by the IRPA Submitting Firm.  This task, however, was challenging due to the significant number of settlement claims in the Claims Portal and the lack of unique identifiers. As a result, relatively few additional matches were made through this process.

retainer agreement or power of attorney executed by or behalf of the claimant and dated on or before April 10, 2018, and for which there was no competing IRPA Submission were accepted by the Special Master after conducting a sampling of the IRPA Submissions in this category to test the accuracy of the coding by the Claims Administrator.

IRPA Submissions that were coded by the Claims Administrator as not providing a complete and legible retainer agreement or power of attorney executed by or on behalf of the claimant and/or dated on or before April 10, 2018 were subjected to additional review by the Special Master.[28]  Where the Special Master agreed with the Claims Administrator's coding that indicated an IRPA Submission was deficient, the preliminary recommendation was rejection of the IRPA Submission, and a rejection reason was given for each such IRPA Submission.[29] Where the Special Master disagreed with the Claims Administrator's coding of the IRPA Submission as deficient and instead found that the IRPA Submission in fact met the Court's requirements and there was no competing IRPA Submission, the preliminary recommendation was acceptance of the application for an IRPA award.

---

[28] I, along with a small team at Reisman Karron Greene LLP, performed the review of IRPA Submissions and appeals.

[29] The potential rejection reasons where the primary reason for rejection was a deficiency in the documentation submitted were as follows:
- Law Firm did not submit any document
- Law firm submitted a document but did not submit a complete and legible retainer agreement or POA
- Retainer Agreement or POA is undated
- Retainer Agreement or POA is unsigned
- Retainer Agreement or POA is unsigned and undated
- Retainer Agreement or POA Signature Date after 4/10/18

IRPA Submissions could be deficient in more than one respect; however, only the primary rejection reason for each rejected IRPA Submission was provided in the Claims Portal.

Where there were competing IRPA Submissions by multiple IRPA Submitting Firms for a single settlement claim, a decision was made that only one IRPA Submitting Firm should receive an IRPA award.[30]  The alternative of splitting an IRPA award among competing IRPA Submitting Firms was considered but rejected.  Attempting to split awards would have made evaluation of IRPA Submissions vastly more complicated and also made administration of IRPA pool payments more cumbersome.  Further, allocation of a single IRPA award among multiple firms would have required additional information, including the amount and nature of work done by each firm and the agreements (if any) among the competing firms.

For those IRPA Submissions where the coding done by the Claims Administrator indicated that competing IRPA Submissions made for a particular settlement claim appeared to satisfy the documentation criteria, all of the documents submitted by the IRPA Submitting Firms and available as part of that settlement claim in the Claims Portal were reviewed by the Special Master's office.  The following decision principles were applied to determine which IRPA Submitting Firm should be recommended for an IRPA award with respect to a particular settlement claim:

1. If the Special Master determined that none of the competing IRPA Submissions satisfied the requirements for an IRPA award in respect of a settlement claim, all were rejected and each IRPA Submission was assigned one of the rejection reasons set forth in footnote 29.

---

[30] The existence of some competing IRPA Submissions is not surprising.  It is common in mass torts for some plaintiffs, who generally are not experienced litigants, to sign up with more than one law firm in response to different advertisements or other recruitment efforts.

2. If the Special Master determined that only one of the competing IRPA Submissions satisfied the requirements for an IRPA award in respect of a settlement claim, that IRPA Submission was accepted and the other deficient IRPA Submissions were rejected and assigned one of the rejection reasons set forth in footnote 29.

3. Where more than one of the competing IRPA Submissions satisfied the requirements for a valid IRPA Submission in respect of a settlement claim, the following principles were applied:

   a. If the IRPA Submitting Firm (or one of its affiliated firms) was the currently designated law firm for the settlement claim in the Claims Portal, then the IRPA award was assigned to that IRPA Submitting Firm. The rationale for using the currently listed law firm in the Claims Portal as the "tie breaker" is that the designation of the firm in the Claims Portal is the best available evidence of the claimant's current understanding of which law firm represents it. Claimants were permitted to designate on their claim forms whether they had hired a law firm and could also submit "Request for Change in Representation Status" forms to notify the Claims Administrator that they had changed law firms, hired a new law firm, or removed representation and wished to proceed through the settlement process without counsel.[31] The Settlement Agreement requires that claim

---

[31] Where the Settlement Program received more than one such form designating an attorney or law firm for a settlement claim and the forms designated different attorneys or firms, the form last executed by the claimant as part of that settlement claim would be used to determine the current attorney or firm in the Claims Portal because it represented the claimant's most recent assertion regarding representation.

forms be submitted and signed under penalties of perjury by claimants, not their counsel.[32]  Thus, the Claims Portal information reflects an affirmative sworn assertion by a claimant as to what law firm (if any) is counsel with respect to that settlement claim.[33]

b. If no IRPA Submitting Firm (or affiliated firm) was listed in the Claims Portal for that settlement claim, then the IRPA award was assigned to the IRPA Submitting Firm that submitted the earliest dated retainer agreement or power of attorney that was signed by or on behalf of the claimant.  The rationale for this approach is that it identifies the firm that first brought the claimant into the litigation, which (i) gave the claimant the opportunity to recover, and (ii) added the weight of that claim to the litigation and subsequent settlement discussions.[34]

Once this review process was completed, all IRPA Submissions that could be associated with settlement claims in the Settlement Program were either preliminarily rejected and assigned

---

[32] *See* Settlement Agreement §§ 2.6, 3.7.3, ECF No. 3507-2, filed March 12, 2018; *see also, e.g.*, Producer Claim Form §§ III ("Your lawyer cannot sign and submit the Claim Form for you."), VII, Instructions § IV ("Your lawyer cannot sign and submit the Claim Form for you."), copy available at https://www.cornseedsettlement.com/Docs/Producer%20Claim%20Form.pdf.

[33] An exception to this general principle involved a circumstance on appeal that is discussed further in footnote 54 below.

[34] IRPA Submissions that appeared to satisfy the requirements for a valid IRPA Submission in respect of a settlement claim, but that were rejected in favor of a competing IRPA Submission were assigned the rejection reason "Other Law Firm Awarded IRPA Claim."  For a small number of IRPA Submissions, the competing IRPA Submitting Firms submitted identical retainer agreements that listed both IRPA Submitting Firms as co-counsel for the claimant.  In those instances, the assigned rejection reason was "Working with Affiliated Firm Accepted for this Claim."

a rejection reason or preliminarily accepted as the only IRPA Submission for a particular
settlement claim.

### III.   INITIAL IRPA AWARD DETERMINATIONS AND NOTIFICATION OF IRPAS

The process for evaluating and determining Total Award Amounts for settlement claims
was substantially completed in late 2020.  On November 25, 2020, Class Counsel filed an
Unopposed Motion For Disbursement Of Funds To Pay Class Members, in which they advised
the Court that "[f]inal, non-appealable determinations have been made with respect to 196,149
claims, which constitutes nearly 99% of the 198,189 claims" under review.[35]  The motion sought
authorization to pay those finally determined claims.[36]  The Court granted the motion on
December 14, 2020.[37]  Thereafter, the Claims Administrator initiated those payments and
continues to make payments for settlement claims on a rolling basis as open issues with the
claims are resolved.

With the substantial completion of determining Total Award Amounts for settlement
claims in late 2020, the IRPA allocation methodology could be applied to estimate the IRPA
awards for particular IRPA Submissions.[38]  The Court has allocated $60,400,000 to the IRPA

---

[35] Unopposed Motion For Disbursement Of Funds To Pay Class Members, ECF No. 4498, at 1-
2, filed Nov. 25, 2020.
[36] *Id.* at 2-3; Exh. 1 (Declaration of William G. Atkinson), ECF No. 4498-1, filed Nov. 25, 2020.
[37] Order Granting Unopposed Motion For Disbursement Of Funds To Pay Class Members, ECF
No. 4523, entered Dec. 14, 2020.
[38] As indicated in the February 10, 2021 letter sent to IRPA Submitting Firms (the "IRPA
Determination Letter") and discussed below, the IRPA allocation methodology could not be
finalized until all Total Award Amounts were finalized, but the calculation of estimated awards
was done in February 2021 using the data available at that time, in order to expedite the IRPA
appeals process.  *See* Exhibit 4 (Form of IRPA Determination Letter) at 3.  As discussed in more
detail below, the February 2021 estimate that each dollar of a settlement claim's Total Award
Amount where an IRPA Submission has been accepted would result in approximately $0.10
towards an IRPA award for an IRPA Submitting Firm was accurate.  As a result of the IRPA
appeals process and continued finalization of other settlement data, the exact amount of this per

compensation pool. The IRPA Award that results for a particular accepted IRPA Submission is calculated *pro rata* based on the underlying settlement claim's proportionate share of the sum of the Total Award Amounts for all settlement claims for which IRPA Submissions have been accepted. In other words, the Total Award Amount (if any)[39] for a particular settlement claim associated with an accepted IRPA Submission is divided by the sum of all Total Award Awards for all settlements claims for which an IRPA Submission is accepted. The resulting percentage would then be applied to the IRPA pool to calculate the IRPA award for that IRPA Submission.

On February 10, 2021, IRPA Submitting Firms received the IRPA Determination Letter advising them of the Special Master's preliminary determinations that had been made with respect to their IRPA Submissions and the estimated IRPA award (if any) in respect of each settlement claim associated with their accepted IRPA Submissions.[40] The IRPA Determination Letter further advised recipients of the procedure and deadline for appealing and objecting to the recommendations as to their IRPA Submissions.[41] A copy of the letter also was sent to all other

---

dollar share has been reduced by less than two-tenths of a cent since the calculation done for the IRPA Determination Letter in February 2021.

[39] Some settlement claims were determined not to qualify for any Total Award Amount. For example, some claims were closed as duplicates of other claims (typically where a claimant initiated multiple claims) or withdrawn by the claimant; some claimants received Notices of Final Rejection; and some claimants received Notices of Determination that resulted in no compensation. Thus, while the IRPA Submission on its face was adequate, IRPA awards could not be made with respect to settlement claims that were not themselves payable.

[40] *See* Exhibit 4. As the letter explained, the final amount of each IRPA award was subject to change to the extent any claimant Total Award Amount might be updated or any objections to an IRPA award might be accepted and result in revised IRPA awards. *See* Exhibit 4 at 3.

[41] *See id.* at 3-5. The IRPA Determination Letter provided a February 24, 2021 deadline for appeal of the Special Master's preliminary IRPA determinations. *See id.* at 4. Thereafter, because of the significant weather-related issues occurring in much of the country, the deadline was extended until March 10, 2021. Corn Seed Settlement Website, Settlement Updates 2/19/2021 Program Update –IRPA Appeals Deadline, <https://www.cornseedsettlement.com/Index.aspx> IRPAs who had received an IRPA Determination Letter were notified of the extension by email. *See infra* § IV.B (describing process).

counsel who are signatories on the IRPA Submitting Firm's related motion for IRPA award filed with the Court.[42]

The IRPA Submission Results Report provided to each IRPA Submitting Firm as an attachment to the IRPA Determination Letter contained an IRPA Submission Accepted Sheet identifying the IRPA Submissions accepted for that IRPA Submitting Firm and, for each such IRPA Submission, the Total Award Amount (if any) of the underlying settlement claim and the preliminary recommended IRPA award (if any) in respect of that settlement claim.  It also provided the total potential IRPA award that would be recommended for such IRPA Submitting Firm, subject to the following contingencies that could affect final IRPA awards: (1) changes or updates to any Total Award Amounts, which in fact occurred as a small number of appeals by settlement claimants that had been under review at that time were resolved; (2) whether all listed settlement claims ultimately could satisfy the requirements for payment of their Total Award Amount[43]; and (3) changes in IRPA awards and reallocation of the IRPA pool as a result of the IRPA appeals process (described below).  The IRPA Submission Results Report for each IRPA Submitting Firm also contained an IRPA Submission Rejected Sheet listing the IRPA Submissions for such firm that had been matched to a settlement claim in the Claims Portal but recommended for rejection, and the reason for rejection of each such IRPA Submission.[44]

---

[42] *See* Exhibit 4 at 1-2 & n. 1.

[43] These requirements include, among others, providing documentation of identity and representative capacity and providing a valid W-9 Form.  *See* Exhibit 4 at 3, n.4.  Until a claimant satisfies these requirements, the settlement claim cannot be paid under the Settlement and therefore no IRPA award can be paid.

[44] Each IRPA Submission preliminarily recommended for rejection was assigned one of the rejection reasons set forth above in footnotes 29 and 34.

## IV.    REVIEW OF IRPA APPEALS FROM INITIAL DETERMINATIONS

Approximately 2,800 timely IRPA appeals were filed.  As a result of these IRPA appeals, as well as some data corrections the Claims Administrator made during the IRPA appeal review process, 108,307 IRPA Submissions are now recommended for acceptance and 5,753 are recommended for rejection.  Exhibit 2 to this Report identifies individually the IRPA Submissions recommended for acceptance, and Exhibit 3 to this Report identifies individually the IRPA Submissions recommended for rejection.  These exhibits identify for each IRPA Submission:

- the IRPA Submitting Firm;

- the Total Award Amount (if any) of the underlying settlement claim;

- the recommended IRPA Award (if any) for the IRPA Submitting Firm in respect of the underlying settlement claim; the final recommended disposition of the IRPA Submission;

- if the IRPA Submission is recommended for rejection, the basis for the rejection;

- whether the IRPA Submission was the subject of additional review since the IRPA Determination Letter due to a data update or appeal by the IRPA Submitting Firm or competing firm, and the basis of any appeal decision;

- the IRPA Submitting Firm recommended to receive an IRPA Award allocation for the settlement claim (if any); and

- the IRPA Submission ID for that recommended IRPA award allocation (if any).[45]

---

[45] Exhibits 2 and 3 are organized first by whether the IRPA Submission was the subject of an appeal or data update after the preliminary determinations, then alphabetically by IRPA

To arrive at these final recommendations, all information and documentation submitted by IRPA Submitting Firms making appeals were reviewed and subjected to the same decision principles as applied in the initial review.  As previously discussed in this Report, those decision principles were objective, neutral, and best suited to meet the requirements set out in the Court's IRPA Application Order, and they are administratively workable.

While any additional documentation submitted with an appeal was reviewed, the IRPA Determination Letter made clear that new retainer agreements and powers of attorney submitted for the first time would not be accepted because the deadline for IRPA submissions had passed.

Exhibits 2 and 3 contain the final recommendations as to each individual IRPA Submission that was appealed or affected by an appeal of a competing IRPA Submission and the specific basis for the decision as to each such IRPA Submission.  Because there were some categories of objections that were raised most frequently during the appeals process, below is a discussion of how such objections were addressed.

### A.      Proper Association Of IRPA Submission With Claim

Some IRPA appeals related to the failure to associate an IRPA Submission and its supporting materials with a settlement claim in the Claims Portal.  A review of appeals revealed that, in some instances, documentation that was part of an initial IRPA Submission had not been associated with the correct claim (or any claim at all), either because the IRPA Submitting Firm

---

Submitting Firm, and then by IRPA Submission ID.  Accordingly, rows 1 through 105,727 of Exhibit 2 are IRPA Submissions that are recommended for acceptance and where there was no appeal by any firm or data update; and rows 105,728 through 108,307 of Exhibit 2 are IRPA Submissions that are recommended for acceptance and where there was an appeal or data update. Rows 1 through 4,587 of Exhibit 3 are IRPA Submissions that are recommended for rejection and where there was no appeal by any firm or data update; and rows 4,588 through 5,753 of Exhibit 3 are IRPA Submissions that are recommended for rejection and where there was an appeal by a firm or other data update.

had made an error in naming and identifying the documentation submitted (*e.g.*, an IRPA

Submitting Firm made a typographical error when naming a retainer agreement with the unique

claimant identification number, resulting in the Claims Administrator being unable to identify

the settlement claim with which the retainer agreement should be affiliated), or because of data

entry issues during the IRPA Submission intake and review process.

Where an appeal identified such an error in failing to associate an IRPA Submission with

a settlement claim, that error was corrected, the materials were properly associated with the

settlement claim, and the IRPA Submission and any competing IRPA Submissions for that

settlement claim then were re-reviewed *de novo*.  Additional quality assurance review was

performed by the Claims Administrator as a result of issues raised during the appeals process;

this data clean-up process also resulted in additional  IRPA Submissions and related

documentation being associated with settlement claims, and a *de novo* review of those IRPA

Submissions.  If an IRPA Submission now satisfied the criteria for acceptance (described above)

and there was no competing IRPA Submission with respect to the settlement claim, the IRPA

Submission was then recommended to be accepted for an IRPA award.[46]  To the extent the

newly associated IRPA Submission was a competing IRPA Submission with another IRPA

Submission, the decision principles regarding competing IRPA Submissions were applied

consistently with their application in the initial round of review.[47]  Thus, in some cases involving

now-competing IRPA Submissions, the appeal did not result in any change in determination

because the IRPA Submission that previously was accepted in respect of the settlement claim

prevailed under the competing IRPA Submission decision principles.  In other cases, however,

---

[46] To the extent a particular settlement claim had not previously been included among the
settlement claims associated with successful IRPA Submissions, it has been included now.
[47] *See supra* § II, p. 10-12.

the appeal resulted in the newly associated IRPA Submission being recommended to receive an IRPA award in respect of the settlement claim instead of the prior IRPA Submitting Firm, whose IRPA Submission now would be rejected.[48]

### B. Undated Retainer Agreements

Of the IRPA Submissions preliminarily recommended for rejection, more than 2,000 were rejected because the retainer agreement or power of attorney was signed but undated and, therefore, the IRPA Submission did not establish retention of the IRPA Submitting Firm prior to April 10, 2018. Several IRPA Submitting Firms appealed and sought to provide evidence of retention prior to April 10, 2018, including metadata associated with the retainer agreement, filed complaints, plaintiff fact sheets, and correspondence between lawyers and their clients.

I concluded that if the IRPA Submitting Firm had provided an undated retainer agreement or power of attorney and could provide evidence establishing that the claimant had retained the firm prior to April 10, 2018, such evidence should be considered. At my request the Claims Administrator sent an email on or about February 24, 2021 to all the recipients of IRPA Determination Letters stating that:

---

[48] A small number of appeals involved circumstances where an IRPA Submitting Firm argued that a particular retainer agreement that had been timely provided to the Claims Administrator should have been associated with multiple settlement claims. Such appeals arose out of the fact that many farmers operate multiple farms, farm with various family members, own various farming entities, and thus submitted settlement claims for each separate individual, farm, or entity with an Interest in Corn, as required by the Settlement Agreement. And, it was not uncommon for a single retainer agreement to have been entered into on behalf of more than one individual or entity. In these circumstances, I granted the appeals and allowed such retainer agreements to be associated with settlement claims of related entities where (1) the retainer agreement had been timely submitted to the Claims Administrator; (2) it was clear from the retainer agreement that it was executed by an appropriate person with respect to the particular settlement claim; and (3) it would not create a competing IRPA Submission with another IRPA Submission that had been recommended for acceptance.

> In the course of reviewing IRPA appeals, we understand that some firms that submitted signed but undated IRPA retainer agreements may have other documentary evidence of their retention by particular claimants prior to 4/10/18.  If that is the case, you should upload any such documentary evidence along with your appeal.  The Special Master will review and consider such evidence in deciding those appeals.  As a reminder, March 10 is the deadline for appeals.

To the extent that review of the evidence submitted regarding date of retention resulted in a circumstance where two (or more) IRPA Submissions existed with respect to a single settlement claim, it was necessary to determine which competing IRPA Submission would prevail.  In considering such competing IRPA Submissions, I applied the same decision principles as previously discussed, with the modification that if one competing IRPA Submission had a fully complete signed and dated retainer agreement or power of attorney, that IRPA Submission prevailed over any competing IRPA Submission(s) with an undated signed retainer agreement, even if the evidence submitted on appeal indicated that the firm likely had been retained prior to April 10, 2018.  I concluded that, as between the competing IRPA Submissions, the signed, dated retainer agreement (which reflected the practice of the majority of submitting IRPAs) generally represented the best, clearest evidence of the date of execution and retention.

Ultimately, more than 1,000 IRPA Submissions that were initially rejected for providing a signed but undated retainer agreement or power of attorney filed appeals with supporting documentation; most such appeals were granted.[49]

---

[49]  Appeals involving IRPA Submissions where the accompanying retainer agreements were dated _after_ April 10, 2018 were denied, even where the appealing IRPA Submitting Firm submitted additional evidence seeking to establish retention and legal work on behalf of a client prior to that retainer agreement date.  I concluded that, in light of the Court's Order Regarding IRPA Applications and Expense Applications and applicable ethics rules regarding retainer letters in contingent fee cases, the date on the retainer agreement should govern and such appeals should be denied.

### C.      Unsigned Retainer Agreements

In the initial review process, we rejected all IRPA Submissions where the retainer agreement was unsigned or was signed by someone other than the claimant whose name appeared in the Claims Portal and on the claim form.  Some IRPA Submitting Firms appealed this determination, asserting that handwritten information on a retainer agreement or intake form, purportedly entered by the claimant, should suffice even where an actual signature was lacking. I disagree and recommend rejection of such appeals.  There was no way to verify that the handwriting was that of the claimant.  Moreover, a completely blank signature line seemed to be dispositive.

Similarly, where the retainer agreement was signed by someone other than the claimant whose name appeared on the Claims Portal and the claim form, the IRPA Submission has been recommended for rejection.  Appeals involving attempts to argue that a retainer agreement signed by a spouse, sibling, or business partner should be accepted have been recommended for rejection except where there was evidence that the signer was acting as an authorized representative.

### D.      Other Issues Relating To Competing Firms With Complete Retainer Agreements

A number of appeals objected to my proposed resolution of competing IRPA Submissions on a variety of grounds.  Some challenged the use of any decision principles to allocate to one IRPA Submission in respect of any one settlement claim rather than splitting an IRPA award for a single settlement claim among multiple law firms; I recommend rejection of those appeals for the reasons stated above in section II.

Some IRPA Submitting Firms whose IRPA Submissions were rejected in favor of a competing IRPA Submission filed appeals asserting that the decision should turn solely on whether the claimant designated a particular law firm on a claim form with a handwritten "wet ink signature." They argued that, since the Court required "wet ink signatures" on Class Member opt-out forms, a wet ink signature on a claim form designating a law firm should be dispositive in the IRPA context, regardless of the retainer agreements or other documentation provided with IRPA Submissions.

I recommend rejection of this proposed principle and denial of these appeals. The opt-out process is not analogous to the settlement claim process and the IRPA fee application process. At the time of the opt-outs, the Court's announced requirement of a handwritten "wet ink signature" by an opt-out was intended to provide maximum protection to potential class members whose decision to opt out could very substantially affect their legal rights.[50] The "wet ink signature" requirement provided some assurance that such opt-outs would only be executed after the potential Class Member personally had a full opportunity to consider this important question. Permitting electronic signatures would have provided less assurance of such personal control of the opt-out decision by potential Class Members. In particular, there was a risk that some lawyers who disfavored a class action approach to the litigation might seek to file mass opt-outs using electronic signatures based on their interpretation of their authority under their retainer agreements or powers of attorney. The announced requirement of a handwritten, wet ink signature provided assurance that all potential Class Members, whether represented or not, would exercise their opt-out rights only after personally evaluating the pros and cons of doing so.[51]

---

[50] *See* Memorandum and Order, ECF No. 3531, entered April 10, 2018, at 16; Long-Form Notice, ECF No. 3507-5, filed March 12, 2018, at 16.
[51] *Id.*

None of these considerations applies in the settlement claim context. First, and most significantly, because IRPA fees are coming from the IRPA pool, which is separate from the funds used to pay settlement claims, allocation of the IRPA pool cannot result in the relinquishment of any Class Member's rights, so there is no concern here about protecting those Class Members' rights.[52] Second, electronic signatures are well-accepted signature methods in a variety of contexts, including executing mortgage documents and other financial transactions. Indeed, the claims process under the Settlement not only permits but encourages electronic claim form submission and signature as the preferred method of submission.[53] Third, in many instances, although a claim form designating a particular law firm might have been submitted with an electronic-signature, that IRPA Submission would also be supported with a retainer agreement that included the claimant's wet-ink signature.[54]

## V.     RECOMMENDATIONS REGARDING IRPA AWARDS

### A.     Recommended Awards

After decisions were reached on all IRPA Submissions affected by the appeals process, recommended awards from the IRPA pool were re-calculated using the methodology described

---

[52] *See* December 2018 Fee and Expense Order at 21 (providing that attorney compensation is exclusively from the Court-ordered fee award and prohibiting "any further contingent fee payments").

[53] *See, e.g.,* Cornseedsettlement.com, Producer Claim Form at 1, https://www.cornseedsettlement.com/Docs/Producer%20Claim%20Form.pdf; Frequently Asked Questions Nos. 3, 7, https://www.cornseedsettlement.com/Docs/FAQs.pdf.

[54] In a small number of appeals, I did not rely on electronically executed claim forms designating counsel because the Claims Administrator had identified those electronic claim forms as submitted from an IP address that submitted a high volume of claim forms designating the same counsel. In those appeals, I concluded that this and other evidence of a violation of the requirement that the claimant – not their attorney – submit the claim form indicated that the designation of counsel did not evidence the claimant's intent.

previously.[55]  This was necessary for two reasons.  First, since the issuance of the IRPA

Determination Letters containing preliminary recommendations, the Claims Administrator has

finalized processing of additional settlement claims.  Thus, to the extent those newly-resolved

settlement claims were associated with IRPA Submissions recommended for an award, those

settlement claims and their final Total Award Amounts now had to be included in the IRPA pool

calculation.  Second, to the extent the determinations made during the appeals process affected

which IRPA Submissions were recommended for awards, and/or the settlement claim(s)

associated with the accepted IRPA Submissions, the IRPA pool calculation had to take account

of that information.

An additional approximately 1,700 IRPA Submissions are now recommended for

acceptance, resulting in a total of 108,307 IRPA Submissions recommended for acceptance.  The

sum of the Total Award Amounts for settlement claims underlying accepted IRPA Submissions

increased by more than $11.7 million, resulting in a sum of $607,981,931.21 for the Total Award

Amounts for settlement claims underlying accepted IRPA Submissions.  The result of this effort

is a relatively minimal change in the total recommended IRPA award for each IRPA Submitting

Firm; for the majority of IRPA Submitting Firms, the total recommended IRPA award amount

has changed less than $1,000.00 since those firms were informed of preliminary

recommendations in February 2021.  Of note, the recommended IRPA awards for the majority of

---

[55] *See supra* § III, p. 13-14.  The re-calculation was completed using updated settlement claims
determination data and IRPA Submission data as of May 3, 2021.  As payment and processing of
settlement claims are finalized, it is likely that there will be some additional changes to a small
number of settlement claim determinations.  Given the relatively small number of settlement
claims that would be implicated, any such changes would have a negligible impact on IRPA
awards.  Therefore, I do not recommend that the allocation of the IRPA pool be delayed pending
any such adjustments.

IRPA Submitting Firms have been reduced as a result of the appeals process; this even includes some IRPA Submitting Firms that had appeals granted.  This results from the fact that the amount in the IRPA pool is fixed, and to the extent more IRPA Submissions are recommended for acceptance, the *pro rata* allocation for each accepted IRPA Submission is necessarily reduced.[56]

The Recommended Firm IRPA Award associated with each IRPA Submitting Firm on Exhibit 1 reflects the maximum amount recommended to be awarded to the firm and its associated firms, assuming that all settlement claims associated with the firm(s) actually are paid their Total Settlement Award after satisfying the payment requirements.[57]  An IRPA Submitting Firm will not be paid an IRPA award in respect of a particular settlement claim until the settlement claim has actually been paid.

### B.    Objections

The data contained in Exhibits 2 and 3 demonstrate that my recommendations regarding IRPA Submissions fall into three general categories:  1) 108,307 IRPA Submissions on Exhibit 2 that are recommended for acceptance; 2) 4,587 IRPA Submissions on rows 1 through 4,587 of Exhibit 3 that are recommended for rejection and where there was no appeal by any firm or other data update that could have impacted the recommendation status since the IRPA Determination Letter; and 3) 1,166 IRPA Submissions on rows 4,588 through 5,753 of Exhibit 3 that are

---

[56] Each dollar of a settlement claim's Total Award Amount where an IRPA Submission has been recommended for acceptance results in approximately $0.10 towards an IRPA award for an IRPA Submitting Firm.  The exact amount of this per dollar share has been reduced by less than two-tenths of a cent since the calculation done for the IRPA Determination Letter in February 2021.  (The IRPA award is, of course, in addition to any common benefit award fees an IRPA attorney may have been awarded separately from the Kansas, Minnesota, and Illinois allocations.)

[57] *See supra* n. 43.

recommended for rejection and where there was an appeal by a firm or other data update that could have impacted the recommendation status since the IRPA Determination Letter.

My recommendations as to each of these 3 categories are as follows:

1. I recommend that the Court accept the IRPA Submissions in Category 1 above. Those IRPA Submissions falling in Category 1 have been recommended for acceptance, whether before or after an appeal, and should have no reason to raise any objections with the Court.

2. The IRPA Submitting Firms with IRPA Submissions in Category 2 were made aware of the recommendation that these IRPA Submissions be rejected in February 2021. There were no appeals or data updates affecting these IRPA Submissions, so by definition the firms involved did not avail themselves of the opportunity to raise objections during the appeals process in February and March 2021 that has been described herein. As noted above, the Court's December 2018 Fee and Expense Order provided that the Court would address "renewed objections."[58] Accordingly, I recommend that IRPA Submissions in this Category not be permitted now to raise new objections. I further recommend that the Court reject the IRPA Submissions in Category 2.

3. The IRPA Submissions in Category 3 represent a number of possible scenarios: some are ones where a recommended preliminary rejection was appealed by the firm and the appeal denied; some are ones that had been preliminarily recommended to be accepted and then due to an appeal by a competing IRPA Submitting Firm or a data correction moved to a final recommendation of

---

[58] December 2018 Fee and Expense Order at 26.

rejection; others were a combination of these scenarios or slight variations of them.  All of the IRPA Submissions in this very small group have now been recommended for rejection because of the application of the decision principles described herein.  This is the group from which I believe renewed objections could potentially be made consistent with the Court's December 2018 Fee and Expense Order; however, I recommend that the Court deny any such objections. The neutral principles that were applied to all IRPA Submissions were applied to these submissions too, and while an IRPA Submitting Firm might be disappointed in a particular result, it has not been treated any differently as to these submissions from how all other IRPA Submissions have been considered.

If any objections were to be granted by the Court, they would potentially impact multiple IRPA Submissions in various ways.  First, were the Court to alter any of the decision principles in response to an objection, the new decision principle would need to be applied to all similarly situated IRPA Submissions.  Second, were an objection involving a competing IRPA Submission to be granted, a previously accepted IRPA Submission would become rejected.  Finally, to change any one of the recommendations likely would require a complete recalculation of all IRPA awards because the *pro rata* shares would be different for all accepted IRPA Submissions.

In the event the Court concludes that any recommendation as to acceptance or rejection of an IRPA Submission should be overturned as a result of an objection, I recommend that the Court remand the matter to the Claims Administrator and Special Master (i) to provide revised recommendations as to acceptance or rejection of all IRPA Submissions and (ii) to perform a re-calculation of all IRPA pool awards to take account of the determinations as revised by the Court.

### C.      Recommendations Regarding IRPA Award Payment Process

The fact that many IRPA Submissions were made by one IRPA Submitting Firm on behalf of itself and other associated law firms requires an IRPA payment mechanism that will facilitate authorized IRPA payments being received by the law firm who represented the relevant claim.  The IRPA Submitting Firms and their associated firms on behalf of which they filed are in the best position to know how the IRPA awards in respect of IRPA Submissions by the IRPA Submitting Firm should properly be distributed.  For that reason, and for administrative simplicity and to avoid needless expense that would be borne either by the Class or by all IRPAs, the Claims Administrator and Special Master recommend the following process for distribution of IRPA awards:

1. Each IRPA Submitting Firm must log on to its Law Firm Portal to designate payment instructions using the Payment Election Form and to submit a W-9 Form.  Both of these forms are available under the Firm Administration menu on the Law Firm Portal.

2. To the extent an IRPA Submitting Firm has co-counsel who are signatories on the related motion for IRPA award filed with the Court, each such co-counsel must certify in writing to the Claims Administrator that they consent to the payment instructions designated by the IRPA Submitting Firm.

3. Each IRPA Submitting Firm and their co-counsel who are signatories on the related motion for IRPA award filed with the Court, must certify in writing to the Claims Administrator that they have reached agreement regarding the appropriate allocation of the IRPA award with all co-counsel and/or referring counsel on whose behalf the IRPA Submitting Firm made IRPA Submissions.

4.  Satisfaction of all of these steps shall be a prerequisite to payment of any IRPA award for an IRPA Submitting Firm.  The Claims Administrator will pay IRPA awards using the payment instructions submitted by the IRPA Submitting Firm on a rolling basis as the underlying settlement claims satisfy the requirements for payment of their Total Award Amounts.  The Claims Administrator will issue the IRPA Submitting Firm a Form 1099 for the total of IRPA award payments made to that IRPA Submitting Firm, if the total exceeds $600 for any calendar year.

## CONCLUSION

For all the reasons set forth above, and as described in more detail in the Exhibits to this Report and Recommendation, I recommend that the Court enter an order:

1.  Allocating the IRPA pool of the Attorneys Fee Award as set forth on Exhibit 1;

2.  Overruling all objections to the recommended IRPA pool allocations and any objections to the methodology employed to reach those allocations or and the recommended rejections and to any other aspect of this Report;

3.  Requiring each IRPA Submitting Firm to utilize its Law Firm Portal to designate payment instructions using the Payment Election Form and to submit a W-9 Form;

4.  Requiring that, to the extent an IRPA Submitting Firm has co-counsel who are signatories on the related motion for IRPA award filed with the Court, each such co-counsel certify in writing to the Claims Administrator that they consent to the payment instructions designated by the IRPA Submitting Firm;

5.  Requiring each IRPA Submitting Firm and their co-counsel who are signatories on the related motion for IRPA award filed with the Court, to certify in writing to the Claims Administrator that they have reached agreement regarding the appropriate

allocation of the IRPA award with all co-counsel and/or referring counsel on whose behalf the IRPA Submitting Firm made IRPA Submissions;

6. Requiring that satisfaction of all of these steps shall be a prerequisite to payment of any IRPA award for an IRPA Submitting Firm and that the Claims Administrator pay IRPA awards using the payment instructions submitted by the IRPA Submitting Firm on a rolling basis as the underlying settlement claims satisfy the requirements for payment of their Total Award Amounts.

Respectfully submitted,

__/s/*Ellen Reisman*_____
Ellen K. Reisman
REISMAN KARRON GREENE LLP
1725 DeSales Street NW, Suite 501
Washington, D.C. 20036
202-695-7712
Ellen.Reisman@rkgattorneys.com

30

**LIST OF EXHIBITS**

1.      Summary of IRPA Recommendations

2.      IRPA Submissions Recommended for Acceptance

3.      IRPA Submissions Recommended for Rejection

4.      IRPA Determination Letter