IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, | ) ) ) | MDL No. 2591 |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates to All Cases <u>Except</u>: | ) ) | |
| *Crumley Roberts, LLP, et al. v Heninger Garrison Davis LLC, et al.,* No. 21-2261 | ) ) ) ) ) | |

**MEMORANDUM AND ORDER**

This matter arising from multi-district litigation (MDL) comes before the Court on the motion by settlement class counsel and other leadership counsel (collectively, "movants") for disbursement of funds to pay a second portion of the Court's attorney fee awards (Doc. # 4706). For the reasons set forth below, the motion is **granted**, and the additional funds shall be disbursed as requested by movants.

**I.   Background**

By Memorandum and Order of December 7, 2018, the Court granted final approval of a settlement agreement resolving claims against the Syngenta defendants, and it awarded one third of the settlement fund as attorney fees. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018). By Memorandum and Order of December 31, 2018, the Court allocated the attorney fee award among four pools: the Kansas MDL common-benefit pool; the Minnesota state court common-benefit pool; the Illinois federal

court common-benefit pool; and a pool for individually-retained private attorneys (IRPAs), who would share that portion *pro rata* based on the ultimate recoveries by their claimant clients. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018). The Court also ruled that attorneys could not recover additional fees from any client's recovery based on a contingent-fee contract. *See id.* at *10. By separate orders, the Court subsequently awarded fees from the three common-benefit pools and the IRPA pool to particular law firms, and also awarded expenses to particular firms. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813 (D. Kan. Mar. 20, 2019) (Kansas pool); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3202256 (D. Kan. July 16, 2019) (Minnesota pool); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 6134520 (D. Kan. Nov. 19, 2019) (Illinois pool); *In re Syngenta AG MIR 162 Corn Litig.*, 2021 WL 2283769 (D. Kan. June 4, 2021) (IRPA pool); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3251526 (D. Kan. July 19, 2019) (expenses). In addition, on January 5, 2021, the Court issued an order, after its indicative ruling and a limited remand from the Tenth Circuit, by which it modified the eventual distribution of awards from the common-benefit pools for the sole purpose of effecting a settlement of appeals brought by the Watts Guerra firm and associated counsel. *See In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 7344684 (D. Kan. Dec. 14, 2020) (indicative ruling).

By Memorandum and Order of January 12, 2021, the Court granted a motion by settlement class counsel for a partial disbursement of the attorney fee and expense awards. *See In re Syngenta AG MIR 162 Corn Litig.*, 2021 WL 102819 (D. Kan. Jan. 12, 2021). Specifically, the Court approved distribution, on a *pro rata* basis, of $412,714,426.35 in

attorney fees, representing the remainder of the awards from the three common-benefit pools,[1] less a $30,000,000 holdback to cover possible additional awards to firms that appealed the fee and expense orders; and distribution of all of the Court's expense awards, in the total amount of $31,321,740.09. *See id.* The Court also adopted settlement class counsel's proposal that to be eligible to receive a distribution, a firm had to sign an agreement promising to return any portion that would need to be clawed back to satisfy an additional award to an appellant firm, with the Court retaining jurisdiction to enforce such agreements. *See id.* The Court denied class counsel's request that the Court's eventual awards from the IRPA pool be distributed within fourteen days of those awards. *See id.* at *6.

In approving the partial distribution over the objections of four groups of attorneys, the Court first concluded that the pending appeals from the attorney fee award orders did not divest it of its jurisdiction to enforce its orders. *See id.* at *2 (citing cases). The Court then noted that the objectors in essence sought a stay of the Court's fee and expense orders pending appeal,[2] and it proceeded to find that the most critical factors for evaluating such a stay request – "whether the stay applicant has made a strong showing of a likelihood of success on the merits and whether the applicant will be irreparably harmed absent a stay" – did not weigh in favor of a stay. *See id.* at *3 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). With respect to the objectors' likelihood of success on appeal, the Court noted

---

[1] The Court had previously authorized one disbursement from the Illinois pool to pay a special master.
[2] Both this Court and the Tenth Circuit had already denied requests by the objectors for a stay of the ruling on the motion for a partial disbursement of fees.

that multiple judges and special masters had considered the fee awards to the objectors while rejecting the same objections; and that the Court had exercised considerable discretion with respect to the fee awards. *See id.* With respect to the irreparable harm factor, the Court noted that the objectors offered only speculation that the $30 million holdback amount would prove insufficient or that the Court would be unable to claw back distributions (by enforcement of the required clawback agreements) if necessary. *See id.* at *3-4. The Court further noted that courts routinely allow the immediate payment of attorney fees, and it found that the balance of harms weighed against a stay, as firms would be harmed by any unnecessary delay in receiving compensation for their work. *See id.* *4.

By opinion of February 28, 2023, the Tenth Circuit resolved most of the pending appeals by affirming this Court's allocation of the total fee award among the four pools; its awards from the three common-benefit pools; its awards of expenses; and its effective abrogation of contingent-fee contracts in favor of capped IRPA awards. *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126 (10th Cir. 2023). The Tenth Circuit concluded that it had jurisdiction to consider the appeals' challenges to all orders issued by this Court prior to the June 2021 IRPA allocation order. The Tenth Circuit further explained in a footnote that by its opinion it was only resolving appeals addressing this Court's orders before June 2021, and that it had abated any appeals filed with respect to the IRPA allocation order.

In all, the Tenth Circuit abated seven appeals (six by firms challenging the awards, one cross-appeal by firms defending the awards). After its February 2023 opinion, the appellants in the abated appeals sought to end the abatement, class and leadership counsel

4

responded that the appeals should be dismissed, and the Tenth Circuit then ordered the appellants to explain why the appeals were not now moot in light of its opinion. The Toups-Coffman group of appellants agreed that their appeals were moot, and those appeals were dismissed. Three other groups of appellants – Shields Law Group, LLC ("Shields"), Paul Byrd Law Firm, PLLC ("Byrd"), and Hossley-Embry, LLP ("Hossley") (collectively "objectors"), which parties opposed the prior motion for partial disbursement and oppose the present motion – filed responses arguing that the appeals are not moot. The Tenth Circuit has not yet ruled on that issue, and the appeals by Shields, Byrd, and Hossley remain abated.

Movants now request another distribution of the Court's fee awards. Specifically, movants seek distribution of the $30 million holdback from the prior disbursement from the common-benefit pools; and distribution of all of the awards from the IRPA pool. Movants do *not* presently seek distribution of (1) $2,267,237.49 from the common-benefit pools that remains in escrow because certain firms failed to execute the clawback agreements as required under the Court's prior disbursement order; and (2) over $10.4 million in interest that has accumulated on the escrowed fees since funding of the settlement.[3] In conjunction with that request, movants again propose that a firm's receipt of funds be conditioned on the firm's execution of a clawback agreement, over which the Court would retain jurisdiction.

---

[3] The Court has not yet issued any order concerning how or to whom the interest shall be distributed.

## II.     Analysis

As a preliminary matter, the Court concludes, as it did in its prior disbursement order, that it has jurisdiction to grant the requested relief under an exception to the rule that appeals usually divest a district court of jurisdiction, which exception allows a district court to enforce its orders despite the pendency of appeals. *See In re Syngenta*, 2021 WL 102819, at *2 (citing cases). Thus, objectors' abated appeals do not prevent this Court from enforcing its attorney fee award orders by distributing those funds. Objectors have not disputed that the Court has jurisdiction to make the disbursements.

With respect to the merits of the motion, objectors (i.e., Shields, Byrd, and Hossley) argue against a further disbursement by relying on the same primary argument that they cited in opposition to the first disbursement, which also justified the prior $30 million holdback – namely, that appeals remain pending, including from the Court's IRPA award order. Objectors also point to their arguments in opposition to the prior motion, without repeating those arguments or addressing the Court's rejection of those arguments in the prior order.[4] Objectors have not directly addressed the stay factors considered by the Court in its prior order; nor have objectors argued that a different standard should be applied here. The Court concludes again, however, that the stay standard provides the most appropriate

---

[4] Objectors also suggest that the undisbursed funds could be used to effect a settlement of their appeals, just as certain firms paid Watts Guerra to settle that party's appeals. The Court takes movants at their word, however, that there will be no such settlement in light of the Tenth Circuit's affirmance of the fee award structure, the allocation among the four pools, and the awards from the common-benefit pools.

standard here, as objectors effectively seek a stay of the Court's fee award orders pending appeals.

With respect to objectors' likelihood of success on the merits of their pending appeals, the Court first rejects objectors' rank speculation that the appeals "clearly have merit" because the Tenth Circuit has not yet dismissed the appeals as moot. Movants argue that the likelihood that objectors obtain relief in the form of additional fees has substantially decreased (or has been entirely eliminated) since the time of the Court's prior disbursement order. With respect to distribution of the $30 million holdback from the common-benefit pools, movants note that the allocation to those pools and the awards from those pools have now been affirmed. With respect to distribution of the IRPA pool, movants note that the Court's allocation to that pool has been affirmed. Although the Tenth Circuit has not addressed the Court's order making specific awards from that pool, movants correctly note that objectors did not preserve (by raising in this Court) any specific objection to the IRPA award report and recommendation that the Court adopted. Objectors have not explained why they are not in a worse position now concerning the state of their appeals.

In their response to the present motion, objectors have identified only two arguments that they claim have merit in the pending appeals. First, objectors argue that this Court improperly reallocated approximately $7 million from the common-benefit pools to the IRPA pool without required findings under Rule 23(h) when it approved the Watts Guerra settlement. Objectors further argue that that purported reallocation rendered the Tenth Circuit's affirmance of the original allocations merely "advisory". This Court has already rejected this argument, however, on multiple occasions and in the strongest terms. In

issuing its indicative ruling approving the settlement, the Court noted that because objectors' fee awards would not be affected (as the payment to Watts Guerra was being made only by certain firms who agreed to the settlement), objectors lacked standing to object to the settlement. *See In re Syngenta*, 2020 WL 7344684, at *1. Moreover, the Court stressed that in approving the settlement and ordering that certain funds should be paid from the common-benefit pools to Watts Guerra instead of the agreeing firms, it was not reconsidering or modifying its prior findings and conclusions concerning the reasonableness of the Court's prior allocations and awards – and in fact, was reaffirming them. *See id.* at *1-2. Instead, it was merely modifying prior orders as necessary to change the distribution of money to give effect to the private settlement agreement involving Watts Guerra. *See id.* at *2. Subsequently, in denying objectors' motion for a stay of the Court's ruling on the first disbursement motion, the Court again rejected this argument, including in the following footnote:

> In addition, as the Court will explain further in ruling on the disbursement motion, Shields [i.e., objectors] appears to have willfully misrepresented what the Court did in the indicative ruling. The Court made clear in that ruling that it was not disturbing its findings regarding the reasonable allocations and awards of attorney fees (thus obviating the need for additional findings under Rule 23(h) beyond those explaining the altered distribution) and that it was merely agreeing to alter the distribution of fees from the claims administrator in accordance with the private settlement agreement for the sake of efficiency.

*See In re Syngenta*, 2020 WL 7828765, at *2 n.5. Finally, the Court rejected this same argument for the third time in its partial disbursement order (calling the argument "frivolous"), as follows:

> Shields [i.e., objectors] also argues that the Court should not presently disburse fees because it refused in its indicative ruling and final order to comply with Fed. R. Civ. P. 23(h), which requires a court awarding fees under Rule 23 to find facts and state legal conclusions. *See id.* Shields has not shown a violation of that rule, however. The Court's fee awards in this case have been amply supported by factual findings. As explained by the Court in making its indicative ruling, the Court did not disturb its fee awards, but rather it altered the eventual distribution of those awards by the administrator to effect the Watts Guerra settlement, for the sake of efficiency. The Court did not make any substantive modification of its prior fee awards; nor did it indicate or imply that its original allocations and awards were not reasonable or appropriate, as Shields has erroneously suggested. The Court fully explained its intent and action in its prior orders, and there is no basis to suggest that the Watts Guerra settlement is improper or should not be given effect on this basis.
>
> Shields further argues that the Court should not have allowed counsel to dictate by agreement the Court's fee awards. This argument too lacks merit, as the Watts Guerra agreement did not influence any finding by the Court concerning the amount of a reasonable fee award, as discussed above. The parties settled their dispute on appeal, as they were entitled to do.
>
> Shields argues that the agreement sanctioned by the Court adds $7 million to the IRPA pool, but that only Watts Guerra may receive that amount, with other firms denied the opportunity to share in that addition to the pool. That argument is frivolous, based on a blatant misreading of the agreement. The agreement and the Court's orders make clear that the only modifications are to the common benefit pools, not the IRPA pool, and the agreement provides that Watts Guerra shall treat the additional funds *as if they had come from the IRPA pool for the purpose of distributing those [funds] to associated counsel*.

*See In re Syngenta*, 2021 WL 102819, at *5 (emphasis in original). In addition, although the Tenth Circuit did not address this argument by objectors specifically, it did note that "[b]y design, the Watts Guerra Settlement would *not* affect the fee awards of firms that were not party to the agreement." *See In re Syngenta*, 61 F.4th at 1169 (emphasis in original).

9

In opposing the present motion and in doubling down (quadrupling down?) on this argument, objectors have not addressed their lack of standing to object to the Court's approval of the Watts Guerra settlement (or the manner in which it effected the settlement payment); nor have objectors addressed the Court's prior rulings or explained how the Court erred in rejecting this argument. Simply stated, this argument remains frivolous. Accordingly, objectors have not shown any likelihood that this argument will succeed on appeal.

For their second argument remaining on appeal, objectors cite their claim that their post-settlement legal work was not sufficiently compensated in the Court's fee orders. Objectors do not appear to have mentioned this argument in arguing to the Tenth Circuit that their appeals should not be deemed moot. They attempt to relate this argument to their Watts Guerra settlement objection, however, by positing that Watts Guerra was granted that settlement payment because of its own post-settlement work; there is no basis for any such supposition, however, as Watts Guerra raised many other issues in their appeals.

Objectors made this same argument to this Court (as they must have, in order to pursue the issue on appeal), but the Court rejected it on multiple grounds in its December 2020 denial of objectors' motion to reconsider the Court's fee allocations. *See In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 7056073, at *3-5 (D. Kan. Dec. 2, 2020). First, the Court concluded that the motions, which were filed more than 20 months after the Court's fee allocation order, were clearly untimely. *See id.* at *3-4. Second, the Court flatly rejected objectors' argument that it had not anticipated how much post-settlement work would be required when it made its allocation to the IRPA pool, as follows:

10

The instant motions also fail on their merits. There is no basis for the Court's reconsideration of the order by which it allocated fees to the four pools and limited the recovery of contractual contingent fees. [Objectors] are mistaken in asserting that the Court did not anticipate that there would be any additional work by IRPAs in the claims process. [Objectors] cite the Court's statement in its allocation order that "the IRPAs were relieved of having to do any work to advance their clients' lawsuits or to add value to their claims." *See Syngenta*, 2018 WL 6839380, at *7. The Court was referring to a lack of work to add value to their clients' *legal* claims, which were resolved by the approval of the settlement. The Court did not rely for its allocation on any belief that IRPAs would not be required to perform some work for their clients in the claims process. The Court did anticipate that some such work would be required in a process that allowed for initial rejections to be cured and final rejections to be appealed to the master. Thus, this argument by [objectors] does not provide a basis for altering the Court's prior conclusion concerning the IRPAs' relative contribution (measured against the contributions of other attorneys) to plaintiffs' success in this litigation.

[Objectors] also challenge the Court's statement in the allocation order that the claims process "proved to be quite simple and streamlined," *see id.*, but the Court stands by that assessment. Given the size and scope of the settlement, the process *has* proven to be relatively straightforward, including for the reasons stated in the allocation order. *See id.* (noting that claims could be made online based on data provided by the government and that more than half of claimants were not represented by individual counsel). As CLC make clear in their brief (and [objectors] have not disputed these figures), the program was immensely successful, with 88 percent of claims accepted without additional information being supplied; with the great majority of deficiencies easily cured, involving only a missing identification number or signature or answer; and with a present deficiency rate (with appeals ongoing) of only 2 percent. Thus, the Court did not base its allocation on any mistaken idea concerning the ease of the claims process.

*See id.* at *4. Third, the Court concluded for various reasons that objectors' submissions did not allow the Court to judge "the ultimate fairness of their total fee awards in light of the additional work they insist they have performed in the claims process." *See id.* at 4-5.[5]

In addition, the Tenth Circuit signaled that this argument lacks merit when it denied objectors' motion to supplement their appellate briefs to raise the issue and challenge this Court's denial of the motions for reconsideration. *See In re Syngenta*, 61 F.4th at 1223-24. First, the Tenth Circuit concluded that objectors had effectively waived the argument by failing to include it in their initial appellate briefs. *See id.* at 1223. Second, the court called the argument "meritless and irrelevant" in addressing the merits of the argument, as follows:

> Finally, we note that [objectors'] complaint about the district court's purported failure to account for the extra hours individually retained private attorneys would need to expend are irrelevant to the overall fee allocation framework. As the district court made clear on numerous occasions, and as we have elucidated here in parts of this opinion, the overall fee allocation framework, including the specific fee allocation to the IRPA pool, was predicated on the contributions specific attorneys or groups of attorneys made *toward the Settlement*. This was a central facet of the court's overarching "reasonableness" inquiry. [Objectors] have not explained, either before the district court or before us, how these alleged hours more recently expended relate *at all* to "reasonableness" and why the Kansas district court's failure to anticipate such hours – even if that were true – would undermine its allocation decisions.
>
> At bottom, [objectors] could have and should have included these arguments in their opening briefs. They cannot do so now by inaccurately claiming they pertain to "unanticipated" developments. And beyond their tardiness, these arguments are meritless and irrelevant to our review, and they

---

[5] The Court also found that objectors' "vague claim of having spent 'thousands' of additional hours in the claims process is questionable at best." *See id.* at *5 (footnote omitted).

>do nothing to cast doubt on the Kansas district court's fee allocation decisions.

See id. at 1223-24 (emphasis in original).

Objectors have not explained how they could succeed in light of both courts' findings of untimeliness in raising the argument. Nor have they explained how they could succeed in continuing to assert this argument on appeal in light of the courts' rejections of both the premise of the argument (i.e., that this Court did not anticipate the scope of post-settlement work) and its merits (i.e., objectors' entitlement to additional fees and the relevancy of the issue to the reasonableness of the fee allocations). Accordingly, objectors have not shown any likelihood of succeeding on appeal on this issue.

In its prior disbursement order, the Court concluded that objectors had failed to make the requisite strong showing of a likelihood of success on appeal. Since that opinion, any likelihood has now been severely diminished, if not eliminated. Accordingly, the Court finds that this factor weighs strongly against the requested stay of enforcement of the Court's fee orders.

Nor have objectors shown the requisite irreparable harm from the absence of a stay. Objectors' only argument possibly related to this factor is that the Court should not give up the $30 million holdback that was intended to protect against further fee awards resulting from successful appeals. As movants note, however, there remains over $10 million in interest that may serve the same purpose, and objectors have not even attempted to demonstrate that such an amount is insufficient for that purpose or that their appeals place more than that amount at issue. Nor have objectors explained why the proposed

13

clawback agreement requirement, which adds an additional layer of protection, is not sufficient. As they argued before, objectors suggest only that funds might not be able to be clawed back as necessary; however, as the Tenth Circuit noted in denying objectors' motion for a stay of the Court's ruling on the prior disbursement motion, such a concern represents "purely speculative harm" that "does not amount to irreparable injury." *See* Order, *In re Syngenta*, at 2 (10th Cir. Jan. 6, 2021) (Exhibit 2 to the instant motion, Doc. # 4706-3) (quoting *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

For these reasons, the Court finds that there is no reason to stay its further enforcement of its attorney fee award orders. Accordingly, the Court grants the motion for further disbursement of the attorney fee funds, as requested by movants, and it approves the requirement that firms execute the proposed clawback agreement as a condition of receiving such funds.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion for disbursement of funds to pay an additional portion of the Court's attorney fee awards (Doc. # 4706) is hereby **granted**. Settlement class counsel shall cause to be distributed, in accordance with this order and the Court's prior orders, the $30,000,000.00 from the common-benefit pools that was held back from the prior distribution of the common-benefit awards, and the $60,400,000.00 in fees from the IRPA pool.

IT IS SO ORDERED.

Dated this 13th day of December, 2023, in Kansas City, Kansas.

                                                                    <u>s/ John W. Lungstrum</u>
                                                                    John W. Lungstrum
                                                                    United States District Judge