IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: Syngenta AG MIR162
    Corn Litigation             § Master File No. 2:14-MD-02591-JWL-JPL
                                       § MDL No. 2591

MOTION TO ENFORCE FINAL ORDER AND JUDGMENT AND BRIEF IN
<u>SUPPORT THEREOF</u>

i

After years of litigation in which this Court analyzed multiple rounds of certification arguments, dispositive motions, and arguments about the appointment of Co-Lead Counsel and issued hundreds of detailed, well-reasoned orders, the Court approved a class-action Settlement that created a $1.51 billion fund, from which payments issued to the Settlement Class and to their counsel. To protect the Settlement and all of the Court's orders pertaining to it (such as the award and disbursement of attorneys' fees), the Court enjoined all Settlement Class members and their counsel from filing or prosecuting lawsuits that interfere with this Court's orders. (ECF No. 3850, ¶ 19).

Now, two members of the Settlement Class have filed and are prosecuting a putative class-action lawsuit in the Northern District of Ohio, in direct violation of this Court's order. *See Niekamp et al v. Watts Guerra et al*, Case No. 3:23-2289 (the *Niekamp* action); *see also* **Exhibit A** (*Niekamp* First Am. Compl.). That lawsuit, which names Co-Lead Plaintiffs' Counsel as defendants, seeks disgorgement of hundreds of millions of attorneys' fees this Court awarded— and the Tenth Circuit affirmed.[1] Moreover, it also interferes with various related orders with which the Court enjoined Settlement Class members and their counsel from interfering.

In approving the Settlement in the underlying litigation, the Court enjoined all Settlement Class members and their counsel "from filing, commencing, prosecuting . . . participating as plaintiffs . . . or class members in any other lawsuit or proceeding in any jurisdiction any claims or causes of action that interfere with the Orders and Judgments entered in this action related to the Settlement and/or award or allocation of attorneys' fees, costs, or expenses . . ." ECF No. 3850,

---

[1] This story should seem familiar to the Court; the *Niekamp* action is nearly identical to *Kellogg et al v. Watts Guerra,* Case No. 18-2408-JWL (the *Kellogg* action), which the Court dismissed—and the Tenth Circuit also affirmed. The only differences are: (1) it was filed *after* the Court approved the class Settlement; and (2) it includes additional defendants, including the court-appointed Co-Lead Plaintiffs' Counsel and two of the lawyers appointed Settlement Class Counsel.

1

¶ 19 (the "MDL Injunction"). The Plaintiffs in the *Niekamp* action all participated in the Settlement, and therefore they (and their current counsel, Douglas Nill) are in express violation of this injunction.

**Requested Relief:** Co-Lead Counsel therefore respectfully request that the Court enforce its injunction with respect to the parties (and their counsel) and order them to dismiss the *Niekamp* action. In addition, Co-Lead Counsel also request that the Court award attorneys' fees for the costs associated with this violation.

## I.  RELEVANT BACKGROUND

### A.  From the Beginning, this Court Promoted Accommodation of Producers Who Sought Class Treatment and Those Who Sought to Bring Individual Actions.

At the inception of the MDL, numerous lawyers seeking appointment to lead the litigation for the plaintiffs aired their disagreement regarding whether the litigation should proceed as a class action or individually, as well as which approach, strategically, would be the most beneficial for corn farmers ("producers"). *See* ECF No. 67 at 2. On January 22, 2015, in appointing Co-Lead Counsel, the Court "was especially impressed by the extent to which [they] had thought through the matter of advancing the interests of diverse groups of plaintiffs and built a team which takes those interests into account." *Id.* (including "plaintiffs in this case [who] desire to proceed by individual actions[,] … [o]thers [who] prefer the certification of one or more classes … [and s]till others [who] seek or will seek remand to state court."). Even as far back as that order, the Court rejected the assertion that there was "an *inherent conflict involved in appointing a leadership team which includes advocates of both class and of individual actions*." *Id.* (emphasis added).

Recognizing, as the Court found, that there was a significant contingent of plaintiffs seeking to proceed on an individual basis, Co-Lead Counsel negotiated and entered into a joint prosecution agreement ("JPA") with Watts Guerra LLP, a law firm representing a significant

2

number of individual producers with cases filed in Minnesota state court. *See* Am. & Restated JPA, ECF No. 3611-1. The stated purpose of the JPA was to "foster from the outset a spirit of cooperation between Federal MDL Leadership" and Watts, to "resolve all potential common benefit disputes," to "work together … in the prosecution of the Syngenta Claims" and to "share their respective work product … in furtherance of the interests of all Producers and Non-Producers who possess Syngenta Claims." *Id.* at 2, 4. In that regard, the JPA covered the following areas:

1) Common benefit assessments, meaning an agreement concerning attorney fee and costs assessments to be paid on individual case judgments and settlements in exchange for access to MDL work product;

2) Remand of the Minnesota state court cases;

3) The use of Syngenta Work Product by and among the signatories;

4) Trials including the proposed order and schedule thereof;

5) The proposed relationship between the MDL and Minnesota state court; and,

6) Class certification of the federal MDL putative classes.

*See, e.g.,* Am. & Restated Joint Prosecution Agr. (JPA), ECF No. 3611-1.

Co-Lead Plaintiffs' Counsel filed a motion to have the JPA approved by the Court; the Court declined to approve the private agreement in full, as there was no live controversy before it, ECF No. 403 at 16-17, but the Court noted that it had "reviewed the agreements *in camera*" and was "*satisfied that the agreements do not provide a basis to conclude that [the MDL's Co-Lead Counsel] are not adequately representing all plaintiffs*." *Id.* at 17 (emphasis added). Certain aspects of the JPA (i.e., the common-benefit assessments) were, however, later incorporated into the Court's common benefit order. *See* ECF No. 936.

Following litigation regarding removal, the Minnesota cases continued against Syngenta in consolidated proceedings before the Minnesota state court. ECF No. 1273-1 at 2. On August 5, 2015, in appointing plaintiffs' leadership there, including Watts Guerra, that court stated "it intends

3

to coordinate" with this Court during the litigation. ECF No. 1273-3 at 7. It also specifically considered the issue of coordination and Watts's agreement to the JPA. *Id.* at 8 ("The parties' characterization of the JPA are quite divergent. [One group of leadership applicants] views the JPA as evidence of their commitment and ability to work well with the MDL team, which will reduce duplication and promote efficiency. [Another group] argues that the JPA causes the attorneys to lose their independence and compromises their ability to represent Minnesota interests."). In evaluating the JPA, the Minnesota state court "agree[d] that the leadership team in this matter will need to find a balance between coordinating with the MDL and prosecuting the claims based on the individual circumstances of the litigation." *Id.* *"The JPA, however, does not compromise the lawyers' ability to maintain this balance." Id.* (emphasis added)

To facilitate this coordination, leadership counsel in both jurisdictions agreed and proposed a Coordination Order consistent with terms of the JPA (ECF No. 1083), which was largely entered (*see* ECF No. 1099; ECF No. 1273-1). In entering that order in the MDL, the Magistrate Judge in this Court continued "to encourage coordination with courts presiding over Related Actions to coordinate discovery activities and pretrial activities … to produce substantial savings in judicial resources." *Id.* at 2.

Ultimately, as the Court knows, the litigation proceeded on parallel tracks in both jurisdictions—with Co-Lead Counsel advancing claims of both class and individual plaintiffs through a bellwether process. *See In re Syngenta AG MIR Corn Litig.*, 61 F.4th 1126, 1138-40 (10th Cir. 2023). After a nationwide and six state-law litigation classes were certified, one completed trial, and the start of two trials (including the trial of an individual plaintiff), the parties executed a class-action Settlement, and notice was issued to each Settlement Class member. *Id.* at

1139-40. The Court granted final approval on December 7, 2018, in which it also "awarded one third of the settlement fund as attorney fees." ECF No. 4713; *see* ECF No. 3849.

In a following order, on December 31, 2018, the Court allocated and awarded attorneys' fees, adopting in large part the recommendations of the special master and holding that any fees owed to lawyers retained by class members to prosecute individual lawsuits would be made from its fee award (and not the contracts). *See* ECF No. 3882 at 7-8; *see also* ECF No. 4176 at 13 n. 8 ("such awards are *in lieu of* any recovery under contingent fee contracts, which may not be enforced"). At the same time, the Court agreed with the special master that the individual lawsuits were valuable in contributing "to the ultimate recovery made by the very existence of the huge number of individual claims[.]" *Id.* at 12 ("while at the same time limiting fees for those attorneys to a reasonable amount."). The Tenth Circuit later affirmed this and related subsequent orders. *In re Syngenta*, 61 F.4th at 1190.

In awarding and allocating attorney's fees, the special master and the Court considered the JPAs extensively. ECF No. 3882 at 14 (rejecting argument "that any award to [retained attorneys] should be governed by the joint prosecution agreements"); ECF No. 3816 at 63-67 (discussing JPAs in regard to fee award, and concluding that the JPA was not meant to address a scenario in which "clients elect to participate in a federal settlement class[.]"). The Tenth Circuit generally agreed with that conclusion as well, characterizing the JPAs as an agreement that Watts, and other signatories would "refrain from opposing class certification" in exchange for exclusion of their clients from any litigation class pursued by the MDL's Co-Lead Counsel. *In re Syngenta*, 61 F.4th at 1202-3.

5

### B. The *Kellogg* Action Is Filed Shortly after the Court Preliminarily Approves the Syngenta MDL Settlement

As the Settlement process above was unfolding, Settlement Class members (led by counsel Douglas Nill) were already plotting to wrest away control over the attorneys' fees this Court awarded. Two weeks after the Court gave preliminary approval to the Settlement, the *Kellogg* action was filed in the District of Minnesota and was subsequently transferred to the MDL. *Kellogg et al v. Watts Guerra*, Case No. 18-2408-JWL, ECF No. 1. In that case, certain former Watts Guerra clients alleged claims for common-law fraud, violation of Racketeer Influenced and Corrupt Practices Act (RICO), and breach of fiduciary duty under Minnesota law based on Watts Guerra's decisions to "exclude" them from the MDL and Minnesota litigation classes. In several orders, the Court dismissed each of the claims. On March 1, 2019, the Court dismissed claims that the lawyers engaged in common-law fraud and violated RICO for lack of Article III standing because there was no economic injury to the plaintiffs by their purported exclusion from any litigation class, as they recovered fully and participated in the subsequent Settlement class action. *In re Syngenta AG MIR 162,* No. 14-MD-2591-JWL, 2019 WL 1002352 at *2-4 (D. Kan. Mar. 1, 2019). Likewise, the Court dismissed the claims for violation of the Minnesota consumer-protection statute on the merits. *In re Syngenta AG MIR 162,* No. 14-MD-2591-JWL, 2019 WL 3801719 at *3-4 (D. Kan. Aug. 13, 2019).

Eventually, the Court also resolved the breach-of-fiduciary-duty claims in two parts. First, as to the seven law firms who (like Co-Lead Counsel) had no direct attorney-client relationship with the named plaintiffs, the Court dismissed those claims on the merits. *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1264 (10th Cir. 2022) (summarizing *Kellogg* history), cert. denied, 143 S. Ct. 1022 (2023). Second, as to Watts Guerra (the plaintiffs' actual attorneys) the Court ultimately dismissed the remaining claim as a sanction for plaintiffs and their counsel having "repeatedly

6

[and] obstinately refus[ing] to accept the Court's rulings or to comply with its orders, even after warnings that continued noncompliance could result in dismissal." *Id*.

### C. The Court Approves the Settlement and Enjoins Subsequent Litigation.

During the pendency of the *Kellogg* action, the Court granted final approval of the Settlement and entered its fee orders. In approving the Settlement, the Court enjoined all Settlement Class members and their counsel "from filing, commencing, prosecuting … participating as plaintiffs … or class members in any other lawsuit or proceeding in any jurisdiction any claims or causes of action that interfere with the Orders and Judgments entered in this action related to the Settlement and/or award or allocation of attorneys' fees, costs, or expenses…" *Id*., ¶ 19 (the "MDL Injunction"). The *Niekamp* plaintiffs, like the *Kellogg* plaintiffs, participated fully in the settlement.

### D. The Tenth Circuit Affirms the Dismissal of the *Kellogg* Action.

On July 26, 2022, the Tenth Circuit affirmed the Court's dismissal of the *Kellogg* action in full. *Kellogg*, 41 F.4th at 1271. With respect to the RICO and common-law fraud claims, the Tenth Circuit found that the plaintiffs did not have a cognizable injury because they had participated in the Settlement class. As the court held,

> [T]he Kellogg farmers' alleged economic injury vanished when the district court prohibited the Kellogg farmers' former attorneys from enforcing the contingency-fee agreements and allowed the Kellogg farmers to participate in the class settlement on an equal basis with all other corn producers. With the disappearance of an economic injury, the RICO and common-law fraud claims became moot.

*Id*. at 1260. The Tenth Circuit also affirmed the Court's dismissal of the seven firms who did not have a direct client relationship with plaintiffs. As the Tenth Circuit held, under Minnesota law,

> an attorney bears no fiduciary duty to a non-client. S*ee McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008). And the Kellogg farmers were not clients of these seven law firms. So these law firms had owed no fiduciary duty to the Kellogg farmers, and the district court properly granted judgment on the pleadings to the seven law firms.

7

*Id*. at 1270.[2]

        **E.**    **The *Niekamp* Action Is the Same as the *Kellogg* Action the Court Already Dismissed.**

Nearly a year after the dismissal of *Kellogg* was affirmed by the Tenth Circuit—and four-and-a-half years after the Court enjoined further litigation that interferes with the Settlement, the fee awards, and all related orders—*Niekamp* plaintiffs' counsel sent a letter to several of the *Niekamp* defendants offering to the settle the claims of certain unnamed *new* plaintiffs that he claimed were members of the putative *Kellogg* class. ("Because the *Kellogg, et al.* lawsuit was dismissed by the Syngenta MDL district court before class certification, it is only a dismissal of the claims in the amended complaint by the six named plaintiffs."). **Exhibit C**.

In exchange for a "confidential resolution of the lawsuit claims as an individual plaintiff case," counsel demanded reimbursement of the attorney fees purportedly attributable to the mystery plaintiffs' claims in the MDL totaling $80,178.27, *id.* at 10, and, in addition, his own "lodestar attorney fees **incurred in the *Kellogg* litigation** and the preparation of the Proposed Complaint[3] and memoranda," which he represented "exceed[ed] [a whopping] $11.08 million." *Id.* at 11. His request to settle the claims of unknown plaintiffs in exchange for not filing another lawsuit, and ***over $11 million to Mr. Nill personally***, was declined. **Exh. C**.

On November 28, 2023, he filed a new lawsuit, revealing that the unknown new plaintiffs were actually only two—the *Niekamp* plaintiffs. The *Niekamp* plaintiffs were members of the

---

[2] The Tenth Circuit also affirmed (1) the Court's repeated and consistent denial of *Kellogg* plaintiffs' motions to recuse the presiding judge as biased (or as a witness or as a person defrauded by the defendants through presentation of the JPAs) based on his having presided over the *Syngenta* litigation, and (2) the sanction of dismissal. *Id.* at 1255, 1257, 1265-66

[3] The Proposed Complaint attached to his letter identified the six *Kellogg* plaintiffs as plaintiffs in his new, proposed class action with the names and number of new plaintiffs redacted. In response to the letter, it was pointed out that filing a new complaint on behalf of the *Kellogg* plaintiffs, whose claims had been dismissed, was sanctionable. **Exhibit D**.

putative class in *Kellogg* and now seek to represent the very same "60,000 corn growers" as part of a new putative class (**Exhibit A**, *generally*). As in *Kellogg*, the *Niekamp* plaintiffs are suing Watts Guerra and many of the same lawyers who represented injured farmers on their claims against Syngenta, alleging (again) that they engaged in fraud, consumer-protection violations, and breach of a fiduciary duty by soliciting and representing farmers on their Syngenta claims by pursuing individual claims instead of originally joining a purportedly better class action. (*Id*.). And as in *Kellogg*, the *Niekamp* plaintiffs allege their former Syngenta counsel entered into a RICO "enterprise" with MDL and Minnesota leadership counsel (and this Court), which claims this Court previously dismissed.

In the lawsuit, *Niekamp* Plaintiffs request "a forfeiture of Defendants' compensation or claimed compensation for Farmers' claims against Syngenta." **Exh. A**, ¶ 376. Despite claiming their fees were over $80,000 in his settlement demand, as to the two *Niekamp* plaintiffs themselves, plaintiffs admit their fees under the *Syngenta* class action Settlement total no more than $1,761.04 and $7,456.71, respectively. **Exh. A, ¶¶** 60, 70. Further, in addition to challenging the legality of the JPA, claiming it created an irreconcilable conflict of interest, and alleging that the filing of individual lawsuits was detrimental (as opposed to beneficial) to the achievement of the Settlement, the *Niekamp* plaintiffs allege they possess "due process rights and property interests in the causes of action in this lawsuit," which entitle them to forfeiture of the "entire portion of th[e] $101 million held in the Syngenta MDL common fund that is claimed by the Defendants as their attorney fee award in the Syngenta litigation." *Id.* at ¶¶ 49, 56, 256. They characterize the fee award itself as "disputed … funds" under various ethical rules and state that the "mere assertion of a claim in [their] lawsuit . . . is enough to prevent the Defendants from collecting the disputed attorney fees." *Id.* at ¶ 49. And they have demanded that Settlement Class Counsel violate the

9

Court's order requiring disbursement of the attorney fees. **Exhibit B** (letter from Nill to Stueve Siegel).

## II.  ARGUMENT

This case is exactly what the Court's injunction was designed to stop. If disgruntled attorneys—and their clients who participated fully in the Settlement—could launch collateral attacks on not only the Settlement and the fee award, both approved by the Court and affirmed by the Tenth Circuit, but also on the Court's supervision and oversight of Co-Lead Counsel's decision to support both class *and* individual lawsuits against Syngenta, litigation would never end. The Court should therefore exercise its exclusive power to enjoin the *Niekamp* plaintiffs (and their counsel) from proceeding with the *Niekamp* action and award fees and costs to Co-Lead Counsel for the costs caused by this violation.

### A.  The Court Has Exclusive Jurisdiction to Enforce its Final Order and Judgment and the MDL Injunction.

"Once a federal district court has dismissed a case pursuant to a settlement agreement, it retains ancillary jurisdiction to enforce the settlement agreement if the order of dismissal shows an intent to retain jurisdiction or the settlement agreement is incorporated into the order of dismissal." *Kendall State Bank v. Archway Ins. Servs., LLC*, No. CV 10-2617-KHV, 2015 WL 12733382, at *3 (D. Kan. June 23, 2015) (citing *McKay v. United States*, 207 F. App'x 892, 894 (10th Cir. 2006)). Further, "[i]f the order of dismissal states that the court retains jurisdiction over the settlement agreement, a breach of the agreement violates the order, and the court has ancillary jurisdiction to enforce the agreement." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

In issuing its Final Order and Judgment, the Court expressly ruled it maintained "**exclusive and continuing jurisdiction**" to "interpret, implement, administer, and enforce the Settlement

10

Agreement, to **distribute, allocate, and decide any disputes among counsel related to attorneys' fees, costs and expenses**, and to implement and complete the claims administration and distribution process." ECF No. 3850 at ¶ 20 (emphasis added). Further, the Court stated that "in accordance with section 9.18.1 of the Settlement Agreement, the terms of the Settlement Agreement shall serve as an enforceable injunction for purposes of the Court's continuing jurisdiction." *Id*. at ¶ 14.

Simply put, this Court retains *exclusive* jurisdiction to the extent any future action seeks to disrupt or interfere with the terms of the Settlement Agreement or the courts related orders. The *Niekamp* action, and the actions of their counsel, does that.

### B.   The Court's Final Order Enjoined Lawsuits Like *Niekamp*.

In issuing its Final Order and Judgment following approval of the Settlement, this Court made it clear the settling class members and their counsel are prohibited from taking any action (including the filing of future lawsuits) that interfere with the Court's well-thought out settlement and attorneys' fees and related orders. ECF No. 3850, ¶ 19. Specifically, the Court expressly enjoined the Settlement Class members and their counsel from:

> Filing, commencing, prosecuting, continuing to prosecute, supporting, intervening in, or participating as plaintiffs, claimants, or class members in any **other lawsuit or proceeding in any jurisdiction** any claims or causes of action that interfere with the Orders and Judgments entered in this action related to the Settlement and/or award **or allocation of attorneys' fees, costs, or expenses**, subject only to the express exceptions listed in the Settlement Agreement's Reservation of Claims and Rights in section 6.2.

*Id*. at ¶ 19 (emphasis added).[4]

---

[4] The Court, of course, has the power to enjoin related proceedings in other courts, including other federal district courts. *See, e.g., Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 844 (6th Cir. 2009); *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003); see 28 U.S.C. § 1651. That is especially true where the plaintiffs in the related proceeding agreed in the settlement agreement to be bound by an anti-suit injunction. *Lorillard*, 589 F.3d at 846; *Class Plaintiffs v.*

11

Here, it is undisputed the *Niekamp* plaintiffs are "Settlement Class members," each receiving thousands of dollars pursuant to the Settlement. **Exh. A**, ¶ 19 ("Farmers . . . were allowed back into the Syngenta MDL settlement class.") It is undisputed that Douglas Nill is their counsel. It is undisputed they seek to represent a putative class of other Settlement Class members, who also received relief pursuant to the Settlement. *Id*. It is undisputed that they disagree with the lawfulness of *this Court's* order certifying the nationwide and six state-law litigation classes without including the two *Niekamp* plaintiffs in the class definition and giving them an individual opportunity to opt out. *Id*. at ¶¶ 56, 66. And it is undisputed that the *Niekamp* lawsuit itself seeks to litigate the value of the individual lawsuits to the achievement of the Settlement. *Id*. at ¶ 376.

Thus, the only question for this Court is whether the *Niekamp* action or related conduct "interfere[s] with the Orders and Judgments" entered by this Court "related to the Settlement and/or award or allocation of attorneys' fees, costs, or expenses." This answer is clear on the undisputed facts. In point of fact, *Niekamp* Plaintiffs seek to call into the question the lawfulness and appropriateness of **all the orders** relating to and resulting in the Settlement itself, including the initial appointment order governing the desire of some plaintiffs to proceed individually instead of as part of a class action; the order finding the JPA did not call into question Co-Lead Counsel's adequacy; the order granting coordination between Minnesota individual cases and the MDL relating to the same; the order certifying the litigation classes and adopting the class definitions proposed by Co-Lead Counsel (which did not include them); the orders approving the Settlement that folded them back into the certified classes; and the orders awarding and allocating attorneys' fees, which expressly considered the impact of (and ultimately disregarded) the JPAs now under attack by the *Niekamp* Action.

---

*City of Seattle*, 955 F.2d 1268, 1281 (9th Cir. 1992).

### C. The *Niekamp* Action Seeks to Interfere with This Court's Orders on Settlement and Attorneys' Fees.

The *Niekamp* plaintiffs and their counsel do not hide their goal of interfering with this Court's orders, including the Order and Judgment related to the Settlement and award and allocation of attorneys' fees. To the contrary, they expressly seek ***forfeiture*** of the attorneys' fees and expenses awarded to defendants, including Co-Lead Counsel and two of the Settlement Class Counsel, in the *Syngenta* MDL: "Farmers request a forfeiture of Defendants' compensation or claimed compensation for Farmers' claims against Syngenta…" **Exh. A**, ¶ 376.

More notably, the *Niekamp* plaintiffs have *explicitly* premised their claims on Co-Lead and Settlement Class Counsel's compliance with this Court's orders disbursing the attorney's fees, asserting that they breached their fiduciary duties by distributing the awards *specifically* ordered by this Court. *Id*. ¶¶ 48-51; *see* ECF Nos. 4555-56, 4713 (governing disbursements). In fact, a recent letter from *Niekamp* plaintiff's counsel to one of the *Niekamp* Defendants demanded: (1) identification of the bank account holding the $101 million in "disputed funds"; (2) an accounting of such funds; (3) confirmation that the entire $101 million will remain in the bank account until the disposition of the *Niekamp* action; (4) complete record(s) of any transfers of the $101 million. **Exh. B** at pp. 2-3. By demanding that Settlement Class Counsel (including Stueve and Gustafson) refuse to distribute settlement funds, the *Niekamp* plaintiffs are demanding that counsel act directly contrary to movants' court-ordered obligations.

Furthermore, if it is not yet clear, the relief *Niekamp* Plaintiffs seek *is to directly interfere* with the Court's award and allocation of attorneys' fees. As explained above, attorneys' fee awards were made from the common fund and were not based on *any* individual attorney-client relationship or agreement or other retainer agreement between them and *Niekamp* plaintiffs, or between Watts and *Niekamp* plaintiffs. These awards were based on the work counsel performed

13

for the benefit of the Settlement Class members. *See* ECF No. 3849 at 24 ("The [Settlement] Agreement here expressly contemplates an award of attorney fees and expenses to counsel who performed work for the benefit of the settlement class members. Fees are also authorized under the common fund doctrine."). Demanding that Co-Lead Counsel forfeit their fee awards interferes with this conclusion because *Niekamp* Plaintiffs' claims are premised on the allegation that MDL and Minnesota Co-Lead Counsel received attorneys' fees as a result of the alleged unlawful JPA and individual retainer agreements. Again, however, the Court *already* considered and rejected application of the JPA and individual retainer agreements in making its fee awards.

This lawsuit—and the demand that *Niekamp* defendants act directly contrary to the Court's orders—are exactly the type of actions this Court enjoined Settlement Class members from filing. And now is the time to enjoin this action from going any further. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150-51 (2009) ("where the plain terms of a court order unambiguously apply…they are entitled to their effect" regardless of extrinsic evidence). In other words, where, as here, the Court's Final Order and Judgment contains a plain, unambiguous injunction, the Court need not concern itself with "factfinding" and can instead act to enforce its order. *Id*. *See also Einsel v. Einsel*, 374 P.3d 612, 619 (Kan. 2016) (same, declining to consider "equitable factors" raised by party seeking an interpretation in conflict with the four corners of the agreement).

Indeed, the damage of allowing the *Niekamp* action to proceed is obvious. Mr. Nill has demonstrated that even if the identical *Niekamp* claims are dismissed on the grounds that *Kellogg* was dismissed, he intends to locate and file new actions from among the 60,000 plaintiffs that retained Watts. Thus, he attempts to avoid the effect of collateral estoppel and res judicata by filing, and losing, serial lawsuits, until the movants concede to his demand for over $11 million in

supposed attorneys' fees he expended failing to prosecute the *Kellogg* case. **Only this court can put an end to his misconduct by enforcing the clear MDL Injunction**.

The Court's Order is clear – no Settlement Class member (including the *Niekamp* plaintiffs – and the putative class) may prosecute or file any action that interferes with the Court's Settlement Order, its award and allocation of attorneys' fees, or related orders. By its plain text, the *Niekamp* lawsuit seeks to do exactly that. This Court should accordingly take action and enforce its prior Order.

### III.     CONCLUSION

It is difficult to imagine a stronger case for enforcing the Court's injunction. The issues raised in the *Kellogg* action have already been resolved by the Court and the Tenth Circuit. But unlike *Kellogg*, the *Niekamp* action was filed more than four years after the Court enjoined such lawsuits. If matters like the *Niekamp* action were allowed to proceed, hard won settlements like the settlement of the underlying Syngenta MDL would be subject to ceaseless lawsuits from disgruntled attorneys. Fortunately, in entering the final settlement order and enjoining further lawsuits, the Court has already resolved the fate of the *Niekamp* action.

The Court should therefore enforce its injunction, award attorneys' fees, and send a strong message to end these collateral attacks on the settlement of the Syngenta litigation.

Date: January 26, 2024                    Respectfully submitted,

                                          *s/ Douglas Dalgleish*
Douglas Dalgleish (D. Kan. # 22328)
Courtney J. Harrison (D. Kan. # 27553)
**STINSON LLP**
1201 Walnut Street, Suite 2900
Kansas City, MO 64105
Telephone: (816) 842-8600
Doug.Dalgleish@stinson.com
Courtney.Harrison@stinson.com

ATTORNEYS FOR STUEVE SIEGEL HANSON LLP and GRAY, RITTER & GRAHAM

-&-

**FAEGRE DRINKER BIDDLE & REATH LLP**

s/ *John W. Ursu*
John W. Ursu (MN #32257X)
Jeffrey P. Justman (MN #0390413)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
P: (612) 766-7000
F: (612) 766-1600
john.ursu@faegredrinker.com
jeff.justman@faegredrinker.com

ATTORNEYS FOR HARE WYNN NEWELL & NEWTON and GRAY REED & MCGRAW, PC

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of January, 2024, the foregoing was served on all counsel of record via the Court's electronic filing system.

                                              */s/ Douglas R. Dalgleish*
                                              Attorney for Stueve Siegel Hanson LLP and Gray, Ritter & Graham