# EXHIBIT "C"



| | | |
|---|---|---|
| Telephone: 612.573.3669 | Cell: 612.718.1018 | Email: dnill@farmlaw.com |
| Toll Free: 866.573.3669 | Fax: 612.355.2210 | Online: www.farmlaw.com |

**FarmLaw**
DOUGLAS J. NILL, PLLC

1850 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402

May 16, 2023

Christopher L. Goodman, Esq.                    cgoodman@thompsoncoe.com
Thompson, Coe, Cousins & Irons, LLP
408 St. Peter St., # 510
St. Paul, MN 55102

Patrick J. Stueve, Esq.                         stueve@stuevesiegel.com
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112

Daniel E. Gustafson, Esq.                       dgustafson@gustafsongluek.com
Gustafson Gluek, PLLC
2600 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN 55402

Lewis A. Remele, Jr., Esq.                      lremele@bassford.com
Bassford Remele, PA
Fifth Street Towers
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254

Robert K. Shelquist, Esq.                       rkshelquist@locklaw.com
Lockridge Grindal Nauen, PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2159

Re:    _____, et al. v. Watts Guerra LLP, et al.

**SUBMITTED UNDER RULE 408 OF THE FEDERAL AND MINNESOTA
RULES OF EVIDENCE FOR THE PURPOSE OF SETTLEMENT
AND COMPROMISE**

1

Dear Counsel:

I write this letter in the spirit of settlement and compromise.

As addressed in the petition for a writ of certiorari to the U.S. Supreme Court in *Kellogg, et al. v. Watts Guerra LLP, et al.*, Docket No. 22-651, lawyers cannot privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action, and thereby deprive the clients and absent class members of the individual notice and opt-out procedures enshrined in Rule 23. Thus, the joint prosecution agreements that excluded 60,000 corn growers ("Farmers") from the Syngenta MDL class proceedings without Farmers' knowledge and informed consent, were a breach of the Defendants' fiduciary obligations to Farmers and a fraud of omission as a matter of law.

Because the *Kellogg, et al.* lawsuit was dismissed by the Syngenta MDL district court before class certification, it is only a dismissal of the claims in the amended complaint by the six named plaintiffs. There are 60,000 corn growers who are putative class plaintiffs in the *Kellogg* lawsuit who were victimized by the Watts Guerra LLP, et al. scheme of racketeering and a breach of fiduciary obligations through deceit.

Attached for your review are a draft caption, table of contents, and summary of claim for a prospective Class Action Complaint For Declaratory And Injunctive Relief And Damages ("Proposed Complaint"), a memorandum in support of motions for a declaratory and summary judgment that lawyers cannot privately contract clients and absent class members out of a Rule 23 class action, and a proposed settlement agreement.

We are sending the attached documents as a courtesy, and as a vehicle for a fair and confidential resolution of the lawsuit claims as an individual plaintiff case. The requested terms are (1) reimbursement of the attorney fees paid by the named plaintiffs in the Proposed Complaint to their lawyers in the Syngenta MDL settlement proceedings, *see Perl v. St. Paul Fire and Marine Ins. Co.*, 345 N.W.2d 209, 212-213(Minn. 1984) (*Perl II*) (attorneys' fees claimed by lawyers who breach fiduciary obligations through deceit are "money damages" to clients), and (2) payment of my lodestar attorney fees incurred in the *Kellogg* litigation and the preparation of the Proposed Complaint and memoranda. *See Jones v. Monsanto Co.,* 38 F.4th 693, 700 (8th Cir. 2022) (fee award can include time spent on separate litigation "if the effort resulted in work product that was actually used in the instant case, the time spent was inextricably linked to issues raised in the instant case, and the plaintiff was not otherwise compensated for counsel's work in the ancillary proceeding.").

If a settlement is not reached, my clients, named and individual putative class plaintiffs in the *Kellogg* lawsuit, have authorized me to file a lawsuit. The lawsuit will name each of you, individually, and your law firms as Defendants.

**1.      No res judicata or collateral estoppel.**

The *Kellogg, et al.* lawsuit was not certified as a class action before the lawsuit claims were dismissed against the six named plaintiffs under Fed. R. Civ. P. 12, and is not res judicata or collateral estoppel to the same claims by corn growers who were not named plaintiffs in the *Kellogg* lawsuit. *Smith v. Bayer Corp.*, 564 U.S. 299, 131 S. Ct. 2368, 2379-80 (2011) (unnamed member of putative class is not bound by any judgment in that litigation); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (absent class members are not bound by merits judgment against named class plaintiffs without class certification notice and opportunity to opt-out).[1]

In addition, the Watts Guerra LLP racketeering scheme, with MDL and Minnesota Class Counsel, Bassford Remele PA, and Lockridge Grindal Nauen PLLP as participants through the unlawful and concealed joint prosecution agreements, *see, e.g.*, *Expert Report of Richard Painter*, D. Kan. No. 2:18-CV-02408-JWL-JPO, ECF No. 279-2, at ¶¶ 23-33, and *Affidavit Identifying Expert* (Richard W. Painter), ECF No. 322, at ¶¶ 30-35, presents continuing misconduct since the *Kellogg* amended complaint was filed on November 13, 2018, such as the misappropriation of disputed funds that occurred after disbursements of fees and expenses by the MDL district court on January 12, 2021, and June 4, 2021. *In re Copeland*, 505 N.W.2d 606, 608-09 (Minn. 1993) ("'[M]isappropriation occurs whenever funds belonging to a client are not kept in trust and are used for any purpose other than that specified by the client,' … *even where the attorney did not intend to embezzle the funds*.") (quoting *In re Isaacs*, 451 N.W.2d 209, 211 (Minn. 1990) (emphasis added). Upon information and belief, your respective firms, under your direction, either misappropriated disputed funds or aided and abetted the misappropriation of disputed funds. *Rucker v. Schmidt*, 794 N.W.2d 114, 120 (Minn. 2011) (a lawyer "has a duty not only to the client, but also to 'the public as an officer of the court in the administration of justice.'"); ABA Model Rule 1.2(d) states: "A lawyer shall not … assist a client, in conduct that the lawyer knows is criminal or fraudulent, … ."). A breach of your fiduciary obligations to the *Kellogg, et al.* named and putative class plaintiffs through deceit, as a result of the misappropriation of disputed funds, has been established as a matter of law. *See Kellogg, et al.*, Tenth Circuit Nos. 20-3172 and 20-3257 (Plaintiffs' June 7, 2021 and Sept. 29, 2021 motions for judicial notice of indisputable facts); *see*

---

[1]  The Tenth Circuit acknowledged the 60,000 putative class Plaintiffs in the *Kellogg* lawsuit have an actionable claim for a breach of fiduciary duty. *See Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1264 (10th Cir. 2022) ("the [district court] did not find … that attorneys [had] never breached any duty of loyalty while representing farmers throughout the entire course of the underlying litigation … so *breach of a duty of loyalty could trigger an award to the Kellogg farmers*.") (citing *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984) (*Perl II*). (Emphasis added).

*generally Notice Of Property Interests And Disputed Funds[]*, D. Kan. No. 2:14-MD-02591-JWL-JPO, ECF No. 4500.

## 2. Claims to include breach of fiduciary obligations through deceit and aiding and abetting the breach of fiduciary obligations and fraud.

The lawsuit will assert federal statutory claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*., Minnesota statutory claims under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01, et al., and the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, misappropriation of disputed funds, conversion, unjust enrichment, aiding and abetting the breach of fiduciary obligations and fraud, and civil conspiracy.

The Plaintiff class will be comprised of the 60,000 corn growers across the United States who signed 40 percent contingent fee contracts with Watts Guerra LLP and conspirators to pursue individual lawsuits in Minnesota state courts. The Defendants will be law firms and lawyers who: (1) participated in the Watts Guerra LLP racketeering scheme, *see Notice Of Property Interests And Disputed Funds[]*, D. Kan. No. 2:14-MD-02591-JWL-JPO, ECF No. 4500, pp. 9-19, and *Affidavit Identifying Expert*, ECF No. 322; (2) violated Minnesota and Kansas professional conduct mandates to hold Syngenta MDL fee and expense awards in escrow as disputed funds and misappropriated plaintiffs' property; and (3) aided and abetted Defendants who violated Minnesota and Kansas professional conduct mandates to hold disputed funds in escrow and misappropriated plaintiffs' property.

## 3. No statute of limitations.

As addressed in ¶¶ 44-54 of the summary of claim for the Proposed Complaint, the class action tolling doctrine in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) and *China Agritech, Inc. v. Resh*, 584 U.S. ___, ___, 138 S. Ct. 1800, 1804 (2018), does not impede a follow-on class action lawsuit by putative class plaintiffs in the *Kellogg* lawsuit in federal or state court. The *American Pipe* tolling doctrine as addressed in *American Pipe*, and the limit on follow-on class action lawsuits imposed by *China Agritech*, only apply to a "follow-on class action … after the denial of class certification in an earlier class action." 138 S. Ct. at 1804. The *Kellogg* lawsuit was dismissed for reasons separate and apart from the propriety of class certification.

In addition, the *American Pipe* tolling doctrine, and the limit on follow-on class action lawsuits imposed by *China Agritech*, only apply to federal claims with an applicable statute of limitations. There is no statute of limitations for the disgorgement of legal fees procured through racketeering. *See In re Nat'l Prescription Opiate Litig.*, MDL 2804,

4

No. 1:17-MD-2804, ECF No. 2568, slip op. at 11 (N.D. Ohio, Sept. 4, 2019) ("Plaintiffs' RICO claims for equitable relief, like those brought under the Clayton Act and like public nuisance claims, are exempt from the operation of a limitations period.").

For state claims, Minnesota recognizes equitable tolling where the factual predicate for the cause of action is concealed through a fraud of omission. To this day, the signatories on the joint prosecution agreements have never disclosed the agreements and the terms of the agreements to the 60,000 corn growers who were excluded from the class proceedings without their knowledge and informed consent. And Minnesota courts recognize the continuing violations doctrine and class action tolling.

4.  **No transfer because the Syngenta MDL district court judge is an enterprise in the Watts Guerra LLP racketeering scheme.**

This new lawsuit cannot be transferred by the MDL Panel to the Syngenta MDL. Beyond the plain language of 28 U.S.C. § 1407(a), this lawsuit cannot be transferred because the Syngenta MDL district court judge has an untenable conflict of interest that mandates his disqualification under 28 U.S.C. § 455(a) ("bias or partiality"), § 455(b)(1) ("personal knowledge of disputed evidentiary facts concerning the proceeding"), and § 455(b)(5)(iv) ("likely to be a material witness in the proceeding"). As recognized in the summary of claim for the Proposed Complaint at ¶¶ 1-37 and as set forth in Count III of the Proposed Complaint, Civil RICO, 18 U.S.C. § 1962(c), the Hon. John W. Lungstrum, the presiding district court judge in the Syngenta MDL, and the Hon. Thomas M. Sipkins, the presiding judge in the Minnesota individual and class proceedings at the time of class certification, constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (the "District Court Enterprise").

Because an "enterprise" is merely the vehicle through which illegal activity is pursued, not the bad actor itself, even victims can constitute an "enterprise." *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 & n.5 (1994). In this case, the members of the District Court Enterprise share the common purpose of either being deceived by the Defendants through the language of the joint prosecution agreements and oral statements to allow the automatic opt-outs, a fraud upon the court and an obstruction of justice, 18 U.S.C. §§ 1503, 1512(c)(2), or inadvertently facilitating the Watts Guerra LLP racketeering scheme by allowing the private contract opt-outs. *See Expert Report of Richard Painter*, Feb. 1, 2020, App.272, ¶¶ 23-33 ("there is strong evidence" the lawyers "lied" to the district court judge to get the judge to approve the automatic opt-outs from class proceedings for the 60,000 *Kellogg, et al.* putative class plaintiffs).

5.  **Motion for class certification.**

The named and putative class plaintiffs, upon commencement of the action, will file a motion in the District of Minnesota for class certification. *See City of Farmington Hills*

*Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, Civ. No. 10-4372 (Frank, J.) (D. Minn. March 27, 2012) (certifying class action with non-Minnesota class members under Minnesota breach of fiduciary duty law when Wells Fargo entered into the same contract with each putative class member and concealed the effects of mismanagement from each class member); *Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986) (*Perl III*) (Rule 23 class action is "ideally suited" for claims by plaintiffs against defendants, a lawyer and his law firm, alleging precisely the same breach of fiduciary duty).

**6.    Motion for declaratory and summary judgment targeting signatories on the unlawful and concealed joint prosecution agreements.**

The named and putative class plaintiffs, upon commencement of the action, will file a motion requesting declaratory rulings and judgments on the liability and fee forfeiture claims as a matter of law. The motion will target the law firms that are signatories on the joint prosecution agreements. There is no legal authority allowing lawyers to privately contract clients and absent class members out of class litigation proceedings and Fed. R. Civ. P. 23 protections. *Shutts*, 472 U.S. at 812 ("[W]e hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (citing Newberg & Conte, *Newberg on Class Actions* § 16.16 (3d ed. 1992) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision of each class member and may not be usurped by the class representative or class counsel."). The *Hanlon* court stated:

> There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights *en masse*, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members.

*Id.* at 1024 (emphasis added) (citing *Eisen*, 417 U.S. at 173-177); *see also also Bennett v. Boyd Biloxi*, Civ. No. 14-0330, slip op. at p. 6 (S.D. Ala. July 8, 2016) (the lawyers who seek to intentionally exclude absent class members from class certification notice "identify no authority empowering the Court to exclude particular class members from the class simply by saying they are excluded … ."

Moreover, the factual record is clear. The Watts Guerra LLP, et al. Defendants did not even acknowledge the unlawful joint prosecution agreements to Farmers until *16 months* had passed and then only an ambiguous reference with no discussion of terms and

litigation options. And Defendants did more than just opt-out their already signed clients. Defendants advertised and solicited and signed Farmers to contingent fee contracts – Farmers who were putative members of the Syngenta MDL and Minnesota class actions – long *after* Defendants had already opted those very Farmers out of the class proceedings without their knowledge and informed consent.

Defendants' exclusion of their 60,000 corn grower clients from the MDL class proceedings through concealed agreements prohibited by law, is an epic breach of fiduciary obligations and a fraud of omission, and violates fiduciary obligations and professional responsibility mandates that clients "shall" be reasonably informed of litigation options and consent to the selected option. Minn. R. Prof. Conduct 1.4 and 1.0(f).

Through the joint prosecution agreements, the Syngenta MDL and Minnesota class counsel conspired with the Watts Guerra group of Defendants who solicited corn growers through deceit and secretly traded their legal rights to participate in the Syngenta MDL and Minnesota class proceedings for money and favors. The Syngenta MDL and Minnesota class counsel placed their self-dealing financial interests above the due process rights and interests of 60,000 corn growers across the United States. Prof. Painter's comprehensive opinion that the MDL and Minnesota class counsel are liable for a breach of fiduciary obligations and deceit, *Expert Report of Richard Painter*, ECF No. 279-2, at ¶¶ 23-33, and *Affidavit Identifying Expert*, ECF No. 322, at ¶¶ 30-35, is entirely consistent with federal jurisprudence that absent class members have property rights in the cause of action that commence upon the filing of the complaint, *Shutts*, 472 U.S. at 807 ("[A] chose in action is a constitutionally recognized property interest … ."), and class counsel owe fiduciary obligations to absent class members that commence upon filing of the class complaint and requests to be appointed class counsel. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (breach of fiduciary duty for class counsel to bind putative class members to a stipulation that harms the interests of absent class members); *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2019) (class counsel owe fiduciary obligations to absent class members); *In re General Motors Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 778,801 (3d Cir. 1995) ("[C]lass attorneys … owe the entire class a fiduciary duty once the class complaint is filed."); *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978) ("[b]y the very act of filing a class action, the class representatives assume responsibilities to members of the class."); American Law Institute, *Principles of the Law of Aggregate Litig.* § 1.05, *cmt.* F (2010) (fiduciary duty "forbids a lead lawyer from advancing his or her own interests by acting to the detriment of the persons on whose behalf the lead lawyer is empowered to act.").

The language in the joint prosecution agreements that class counsel would not contest the Watts Guerra LLP, et al. 40 percent contingent fee contracts with individual farmers in exchange for a share of the farmer's recovery from Syngenta is the height of collusion at

the expense of absent class members. *See, e.g.*, *Kellogg, et al*. Amended Complaint, D. Kan. No. 2:18-CV-02408-JWL-JPO, ECF No. 121, at ¶ 224 (directing MDL class counsel to "refrain from interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients.") (JPA at p. 14 ¶ iii). *Dennis v. Kellogg Co.*, 697 F.3d, 858, 864 (9th Cir. 2012) (where class counsel negotiates [an agreement affecting absent class members] before the class is even certified, courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel has allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.").

Thus, in summary, the Watts Guerra LLP, et al. Defendants and MDL and Minnesota class counsel privately contracted, through an exchange of money and favors between the lawyers, to deprive 60,000 corn growers of their procedural and substantive rights under the Due Process Clause of the Fifth Amendment. The Defendants concealed those private contracts from the corn growers, while never disclosing to the corn growers that they were putative members of class actions consolidated in the Syngenta MDL, and did not need to retain individual lawyers through 40 percent contingent fee contracts to litigate individual claims. The Defendants' breach of fiduciary obligations through unlawful contracts of collusion and deceit is willful and malicious misconduct. The U.S. Supreme Court legal standards and the plain language of Rule 23, and the undisputable facts will compel judgments for the plaintiffs that Defendants' joint prosecution agreements were a breach of fiduciary obligations and a fraud of omission, and that the Defendants must forfeit their entire fee awards in the MDL settlement proceedings to the plaintiffs, as a matter of law.[2]

**7.     Motion for declaratory and summary judgment for misappropriation of disputed funds.**

As for the misappropriation claims, there is indisputable evidence that named and unnamed Defendants in the *Kellogg* lawsuit, identified in the *Notice Of Property Interests And Disputed Funds[]*, filed in the Syngenta MDL on Dec. 4, 2020, ECF No. 4500, violated Minn. R. Prof. Conduct 1.7, 1.8, 1.9 and 1.15(b) and Kan. R. Prof. Conduct 1.7, 1.8, 1.9 and 1.15(c) mandates and took disputed funds. Indeed, Farmers have presented substantial evidence that some of those disputed funds were paid to third-party litigation funders. *See Kellogg, et al.* June 7, 2021, motion for judicial notice of indisputable facts,

---

[2] The Tenth Circuit opinion that lawyers can "consent" to privately contract clients and absent class members out of a Fed. R. Civ. P. 23 class action, *Kellogg*, 41 F.4th at 1257, n. 5, and thereby deprive the clients and absent class members of the individual notice and opt-out procedures enshrined in Rule 23, conflicts with decades of the U.S. Supreme Court's jurisprudence, the authoritative decisions of other federal courts, and the explicit language of Rule 23.

Tenth Circuit File Nos. 20-3172 and 20-3257, that show that Defendants violated Minnesota and Kansas professional conduct mandates and misappropriated disputed funds – the $119 million Minnesota fee pool distribution to the *Kellogg, et al.* Defendants by the MDL district court on January 7, 2021; *see also Kellogg, et al.* Sept. 29, 2021, motion for judicial notice of indisputable facts, Tenth Circuit File Nos. 20-3172 and 20-3257, that show that Watts Guerra LLP, Mikal C. Watts, and Francisco Guerra violated Minnesota and Kansas professional conduct mandates and misappropriated disputed funds – the $30 million IRPA fee pool distribution to Watts Guerra LLP by the MDL district court on June 4, 2021.[3]

The named and putative class Plaintiffs will request a forfeiture of fees and expenses and monetary damages to the extent that Defendants have claimed and received an award of fees and expenses in the Syngenta MDL settlement proceedings, as occurred with January 7, 2021, and June 4, 2021 distributions of fee and expense awards by the MDL district court to the Defendants, all available prejudgment and post-judgment interest, and treble the forfeited compensation and monetary damage, jointly and severally, pursuant to 18 U.S.C. § 1964(c) and Minn. Stat. §§ 481.071 and 481.07 (Misconduct by Attorneys and Penalties for Deceit or Collusion).

As you know, the Syngenta MDL court awarded $503.33 million in attorneys' fees in the MDL settlement proceedings and created four pools: the Kansas pool ($246.6 million); Minnesota pool ($118.30 million); Illinois pool ($78.0 million); and the pool for individually retained private attorneys with contingent fee contracts ("IRPA pool")

---

[3] The *Kellogg* plaintiffs asked the district court, and then the Tenth Circuit, Nos. 20-3172 and 20-3257, to apply the Minnesota and Kansas professional conduct mandates as substantive law under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), and direct that disputed funds be held in escrow until the *Kellogg* lawsuit is "finally resolved." Minn. R. Prof. Conduct 1.15(b); Kan. R. Prof. Conduct 1.15(c) (same). The district court and the Tenth Circuit did not grant Farmers' motions but did not address the Minnesota and Kansas professional conduct mandates. The district court and the Tenth Circuit did not authorize the Defendants to violate Minn. R. Prof. Conduct 1.15(b) and Kan. R. Prof. Conduct 1.15(c). Because of a lawyer's duty of loyalty to a client, the *Kellogg* plaintiffs' mere assertion of a claim was enough to prevent the Defendants from collecting the disputed attorney fees). *See In re Haar*, 667 A.2d 1350, 1353 (D.C. 1995) ("There is no requirement that the dispute be genuine, serious, or bona fide, … The lawyer may not take possession of property the ownership of which is disputed by the client until it is absolutely clear that the dispute with the client has been finally resolved."); *see also* Affidavit Identifying Expert (Richard W. Painter), No. 20-3172, App.302, at ¶ 36 ("Defendants … have ethical obligations … that extend to all named and putative class plaintiffs [in the *Kellogg* lawsuit] to hold their attorney fee and expense awards in escrow as disputed funds pending a final resolution, *through trial and any possible appeals*, of Plaintiffs' claims in this lawsuit."). (Emphasis added).

9

($60.40 million). D. Kan. No. 2:14-MD-02591-JWL-JPO, ECF No. 3850, Dec. 7, 2018; ECF No. 3882, Dec. 31, 2018.

Of the $503.33 million, the fee and expense awards to the law firms identified as Defendants in the *Notice Of Property Interests And Disputed Funds[]*, ECF No. 4500, upon information and belief, total at least $403,208,217. The named and putative class plaintiffs will thus request monetary damages from the Defendants, jointly and severally, in excess of $403 million, and treble damages in excess of $1.20 billion. 18 U.S.C. § 1964(a) (Civil remedies) (*divestiture of interest* in racketeering enterprise); *Perl III*, 387 N.W.2d at 417 ("[W]e reaffirm that cases of actual fraud or bad faith result in total fee forfeiture."); *Perl II*, 345 N.W.2d at 212 ("the client is deemed injured even if no actual loss results"); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (*Perl I*) ("an attorney … who breaches his duty to his client forfeits his right to compensation"); *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) (attorney must forfeit his compensation when that compensation is earned in violation of obligations owed to a client).

Beyond the mandatory treble damage awards for racketeering and a breach of fiduciary obligations through deceit, there will be a request for punitive damages for (1) the willful and malicious misconduct by the Defendants, (2) the misappropriation of the named and putative class Plaintiffs' property – disputed funds – when the *Kellogg* lawsuit was a live controversy in the Tenth Circuit and the U.S. Supreme Court, Minn. R. Prof. Conduct 1.15(b) ("disputed … funds" must be held in a bank trust account until the dispute is "finally resolved"), and (3) a disregard of the *Kellogg, et al.* Plaintiffs' many letter requests through the undersigned to Watts Guerra LLP, the director of the racketeering enterprise, to resolve the *Kellogg* lawsuit claims through mediation. Minn. R. Prof. Conduct 1.15, Comment [3] ("The disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for *prompt resolution of the dispute*, such as arbitration."). (Emphasis added).

8.    **Calculations for settlement.**

a.    The attorney fees to be reimbursed to the named plaintiffs in the Proposed Complaint are $80,178.27; and

b.    Payment of Douglas J. Nill's lodestar attorney fees incurred in the *Kellogg* litigation and the preparation of the Proposed Complaint and memoranda.

The settlement payments can be shared by each of you, for each of your firms are jointly and severally liable.

If this case is litigated, I will request an award of all of my lodestar fees incurred in the *Kellogg* litigation and this Proposed Complaint litigation at $900 per hour with a 2.66 multiple for the risk, the same hourly rate and risk multiplier awarded to the Minnesota

lawyers who are the Defendants in this lawsuit. Through the current date, my lodestar fees exceed $11.08 million.

My clients are willing to use a mediator to assist in resolving the claims.

I request a response to this letter by May 31, 2023.

Sincerely,

Douglas J. Nill
Douglas J. Nill, PLLC
d/b/a FarmLaw
1850 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402

Enclosures
Cc:     Clients