IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: Syngenta AG MIR162 | § | Master File No. 2:14-MD-02591-JWL-JPL |
| Corn Litigation | § | MDL No. 2591 |

**KANSAS CO-LEAD COUNSEL'S REPLY TO
PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE, ECF NO. 4726,
AND DEFENDANTS' MOTION TO ENFORCE, ECF NO. 4718**

**INTRODUCTION**

There is only one way to prevent Douglas Nill from filing more lawsuits related to the Syngenta MDL: enforce the injunction. The Court need look no further than Plaintiffs' response for good reasons to do so. First, Plaintiffs do not even try to answer the question the Court ordered them to answer: Why should Kansas Co-Leads' motion not be granted as uncontested? (*See* ECF No. 4726 at 3.) Second, even if Plaintiffs had complied, the response fails on the merits because (a) the *Niekamp* lawsuit is not, as it pertains to any defendant who did not have an attorney-client relationship with the *Niekamp* plaintiffs, "an independent legal malpractice-fee forfeiture lawsuit" (ECF No. 4727 at 2), and (b) the *Niekamp* lawsuit so plainly violates the Court's injunction that, if the injunction did not apply in this case, it would have no meaning at all. The Court should therefore grant Kansas Co-Leads' motion to enforce and award fees and costs. Otherwise, one thing is assured: Nill, who appears to lack other demands on his time, will keep filing lawsuits like *Kellogg* and *Niekamp* until the last dog dies. But there is another way.

**ARGUMENT**

The Court should enforce its injunction. Plaintiffs cannot satisfy the District of Kansas's standard for late-filed responses, a point Plaintiffs do not argue. Moreover, while Nill filed *Kellogg* before the Court entered the injunction—and the issue was not raised there—*Niekamp* violates it, most directly as the injunction applies to defendants like Kansas Co-Leads who were not Plaintiffs' attorneys.

**I.     The Court Should Grant the Motion as Uncontested.**

In its show-cause order, the Court ordered Plaintiffs to explain "why the instant

1

motion by Kansas Co-Lead Counsel (Doc. # 4718) should not be granted as uncontested." (ECF No. 4726 at 3.) Plaintiffs did not answer that question, likely because they could not meet the District's excusable-neglect standard. "In determining whether neglect [of a deadline] is excusable, the court should consider . . . the reason for the delay . . . [and] whether the movant acted in good faith." *Porter v. W. Side Rest.,* 2014 WL 5430249, at *1 (D. Kan. Oct. 24, 2014). "Perhaps the single most important factor in determining whether neglect is excusable is fault in the delay." *Id.* Here, the delay was *not* a good-faith error. Instead, Nill chose to ignore the deadline and even bragged about that choice to another federal judge. (ECF No. 4726 at 2, n.1.) That is not excusable neglect. It is willful disobedience. The motion should be treated as uncontested and granted as a matter of course.

## II.     In Any Event, Plaintiffs' Response Fails on the Merits.

The motion also succeeds on the merits. Kansas Co-Lead's discharge of their court-appointed duties did not create an attorney-client relationship with Plaintiffs such as to create a malpractice claim, which Nill assumes would avoid the injunction, and *Niekamp* is squarely within that injunction's scope.

### A.     Kansas Co-Leads Did Not Represent Plaintiffs.

The premise of Plaintiffs' response is that malpractice claims are not enjoined. The Court has never held this, but even assuming it to be true, *Niekamp* still runs afoul of the injunction as it relates to Kansas Co-Leads and other defendants who did not have an attorney-client relationship with Plaintiffs. In general, to bring a legal malpractice claim, a plaintiff must establish an attorney-client relationship with the defendant. *See, e.g., Ryan*

*Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 242 (Minn. 2016) ("To prevail in an action for legal malpractice the plaintiff must show . . . the existence of an attorney-client relationship."). As the Court observed in *Kellogg*, "the lack of such a relationship dooms plaintiffs' [breach-of-fiduciary duty] claim." *In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 1676487, at *2 (D. Kan. Apr. 6, 2020).

This should be especially here, where the fiduciary duty allegations against Kansas Co-Leads relate to duties owed to Plaintiffs as members of a putative class. In such circumstances, the duties run to the class as a whole and not to individual class members. *See Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020); *see also* ABA Formal Op. 07-445 (April 11, 2007) (explaining an attorney-client relationship "does not begin until the class has been certified and the time for opting out by a potential member of the class has expired"). Any other holding would create "potential ethical conflicts for the attorney and compromise the attorney-client relationship, with its attendant duties of confidentiality, loyalty, and care." *In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 1676487, at *2 (D. Kan. Apr. 6, 2020) (quoting *McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008)). That's why the Court, as affirmed by the Tenth Circuit, found in *Kellogg* that similar allegations "do not support extending the cause of action to non-clients." *Id.*, *aff'd sub nom. Kellogg v. Watts Guerra LLP*, 41 F.4th 1246 (10th Cir. 2022).[1] That holding should apply with equal force here.

---

[1] In *Kellogg*, the Court rightly declined to apply the "narrow exception" that permits "a third party to pursue a legal malpractice action if the party was a direct and intended beneficiary of the attorney's services" despite allegations that "all defendants were partners in a joint venture." *Id.* To Kansas Co-Leads' knowledge, no court has ever recognized a malpractice claim—especially without an economic injury—by a plaintiff whose only

3

At its heart, *Niekamp's* claims against Kansas Co-Lead and Settlement Class Counsel rest on their role as counsel appointed by the Court in the *Syngenta* MDL and are a collateral attack on the Court's orders. Through *Niekamp*, Nill contends that the Court erred and that Kansas Co-Leads should have prioritized the interests of the *Niekamp* plaintiffs over the certified class members. But that seeks to interfere with the Court's orders by collaterally attacking: the Court's findings of Kansas Co-Lead (and later Settlement Class) Counsel's adequacy to represent the plaintiffs in the MDL and the certified classes (*cf.* Am. Compl. ¶ 227 (alleging the Court "violate[d] Rule 23 by allowing" certification without their inclusion)); the Court's finding that existence of *Niekamp* plaintiffs' individual lawsuits benefited the classes and contributed to creating the settlement (*cf. id.* ¶ 304 (alleging that non-inclusion in the litigation class was not in their "best interests")), and the Court's award of fees to Kansas Co-lead and Settlement Class Counsel for that work—all of which the injunction squarely prohibits.

Thus, as it pertains to Kansas Co-Leads and other defendants without an attorney-client relationship with Plaintiffs, *Niekamp* is not "an independent legal malpractice-fee forfeiture lawsuit" (ECF No. 4727 at 2), but rather a collateral attack to be enjoined.

### B.   *Niekamp* Is Within the Scope of the Injunction.

In resolving the Syngenta MDL, the Court enjoined settlement class members and

---

relationship with the attorney was as a member of a putative class, and this court should not be the first. *See Doe v. Golden & Walters, PLLC*, No. 2017-CA-001337-MR, 2019 WL 489111 (Ky. Ct. App. Feb. 8, 2019) (holding that attorneys were not obligated "to protect the interests of the absent members of a putative class of alleged victims that [was never] certified by any court and with whom they never had the slightest contact"); *see also* ABA Formal Op. 07-445.

their counsel from asserting "any other lawsuit" that "interfere[s] with the Orders and Judgments entered in this action related to the Settlement and/or award or allocation of attorneys' fees." That's exactly what *Niekamp* does. In addition to collaterally attacking the findings that led to those orders, as noted, *Niekamp* seeks (not just fee forfeiture) but "to prevent the Defendants from *collecting the disputed attorney fee.*" (Am. Compl. ¶ 49 (emphasis added)). That conflicts with MDL counsel's duties to comply with this Court's fee award, allocation, and distribution orders. *See also id.* ¶¶ 24, 26, 48 (laying claim to "at least $100,675,529.61 ("$101 million") in attorney fee funds . . . held in . . . the Syngenta MDL common fund bank account"), 50 (demanding an accounting). *Niekamp* does not "set forth claims in a manner sufficiently detached" from the Court's orders and fee awards "to avoid the permanent injunction." *Lorillard v. Chester*, 589 F.3d 835, 851 (6th Cir. 2009) (cleaned up).

## CONCLUSION

From Kansas Co-Lead's perspective, the Syngenta MDL was successfully litigated and resolved. There is no more pertinent evidence of this fact than the amount of time Douglas Nill has devoted to asserting fringe legal theories to secure a large chunk of the fee awards that his clients failed to object to in the MDL. Between *Kellogg* and *Niekamp*, Douglas Nill has represented a grand total of 12 of Watts Guerra's 60,000 clients. He therefore has another 59,988 chances to treat the Syngenta MDL—and the lawyers who litigated it—like a piñata to hit with lawsuit after lawsuit until money comes out. But the Court has the power to stop it. Settlement should equal closure, and nobody needs to move on from the Syngenta MDL more than Douglas Nill. The Court should enforce its injunction.

5

Date: March 5, 2024                           Respectfully submitted,


                                              **FAEGRE DRINKER BIDDLE & REATH LLP**

                                              *s/ John W. Ursu*
                                              John W. Ursu (MN #32257X)
                                              Jeffrey P. Justman (MN #0390413)
                                              2200 Wells Fargo Center
                                              90 South Seventh Street
                                              Minneapolis, MN 55402-3901
                                              P: (612) 766-7000
                                              F: (612) 766-1600
                                              john.ursu@faegredrinker.com
                                              jeff.justman@faegredrinker.com

                                              ATTORNEYS FOR HARE WYNN NEWELL &
                                              NEWTON and GRAY REED & MCGRAW, PC

                                              -&-

                                              **STINSON LLP**

                                              *s/ Douglas Dalgleish*
                                              Douglas Dalgleish (MO 35203)
                                              Courtney J. Harrison (MO 69121)
                                              1201 Walnut Street, Suite 2900
                                              Kansas City, MO 64105
                                              Telephone: (816) 842-8600
                                              Doug.Dalgleish@stinson.com
                                              Courtney.Harrison@stinson.com


                                              ATTORNEYS FOR DEFENDANT STUEVE SIEGEL
                                              HANSON LLP and GRAY, RITTER & GRAHAM

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 5th day of March 2024, the foregoing was served on all counsel of record via the Court's electronic filing system.

/s/ John W. Ursu
ATTORNEY FOR HARE WYNN
NEWELL & NEWTON and GRAY REED
& MCGRAW, PC