IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION, | ) ) ) ) | MDL No. 2591 <br><br> Case No. 14-md-2591-JWL |

### MEMORANDUM AND ORDER

In this matter arising from multi-district litigation (MDL), Settlement Class Counsel have filed a motion to distribute unallocated funds from the Qualified Settlement Fund (Doc. # 4774). No responses to the motion were filed. The Court conducted an in-person hearing on the motion on June 25, 2025, which included discussion of issues identified in the Court's order setting the hearing. As more fully set forth below, the Court **grants** the motion.

### I.  Background

This motion concerns the remaining funds in the Qualified Settlement Fund (QSF) that were originally allocated for distribution to class members pursuant to the settlement reached in this MDL.[1] As detailed in a declaration from the claims administrator, $959,249,554.59 has been paid out on 246,182 claims, leaving a total of $3,319,523.78 remaining unallocated as of the date this motion was filed.

---

[1] There are also funds remaining in the QSF consisting of fees and expenses paid pursuant to a Common Benefit Order and interest. Counsel anticipate filing motions in the near future to distribute those funds, and resolution of those motions should bring proceedings in the MDL to an end.

## II.    <u>Distribution to Claims Administrator</u>

As a preliminary matter, the Court addresses Counsel's request to pay a portion of the remaining funds to the claims administrator, Brown Greer, for work that it has performed for which it has not been compensated. The settlement agreement in this case did not limit the claims administrator's fees, but determining the amount of the net fund to be distributed to class claimants required the administrator's fees to be estimated. The administrator reached an agreement with Counsel that its fees and expenses would not exceed $33,500,000, and the administrator did not submit invoices after it hit that cap. Nevertheless, the administrator has informed Counsel that its additional work beyond the cap totals unpaid fees and expenses of $2,634,938.40. Counsel recommend paying one-half of that amount to the administrator from the remaining funds.

The Court agrees with that recommendation, and it therefore orders payment of $1,317,469.20 to the claims administrator from the remaining funds. Such a payment allows the administrator to be compensated for additional work that was not anticipated at the time of the original estimate, for instance because of the eventual scope of the appeals in this case and the need to construct a particular online portal. At the same time, a limited payment for less than all work performed maintains the integrity of the agreement for payment for anticipated work. In addition, Counsel confirmed at the hearing on the motion that the recommended payment was negotiated with the administrator, who agreed that a one-half payment would be fair. Finally, no party (including the administrator) registered any opposition to this recommendation. Accordingly, the Court grants this portion of the motion.

### III. *Cy Pres* Distribution

#### A. *Whether* Cy Pres *Distribution is Appropriate*

Counsel recommend a *cy pres* distribution of the remaining funds subject to this motion, which total $2,002,054.58 as of the date of the motion. As Counsel note, "[t]here are four ways in which courts have distributed unclaimed funds of this sort: *Pro rata* distribution to the class members, reversion to the defendant, escheat to the government, and *cy pres* distribution." *See Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 706 (8th Cir. 1997) (citing 2 Newberg & Conte, *Newberg on Class Actions* § 10.15 at 10-38, 10-39).

The Court agrees with Counsel that reversion to the Syngenta defendants is not appropriate here. Defendants did not retain any such right in the settlement agreement; nor have they requested reversion in response to the pending motion or otherwise opposed a *cy pres* distribution. Moreover, as one court stated, "[r]eversion risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172 (3rd Cir. 2013). Thus, the Court concludes that reversion is not preferable to the other options for distribution of the remaining funds in this case.

Nor is escheat preferable here. "Escheat to the state preserves the deterrent effect of class actions, but it benefits the community at large rather than those harmed by the defendant's conduct." *See id.* "*Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent class members who have not received individual distributions." *See*

*id.* It is for these reasons that the use of *cy pres* awards to third-party charities has greatly increased in class actions in recent years. *See id.*

Finally, the Court is persuaded that a further distribution to the class would not be economically viable in this case. *See In re Motor Fuel Temp. Sales Practices Litig.*, 2012 WL 5876558, at *5-6 (D. Kan. Nov. 20, 2012) (*cy pres* distribution is appropriate if further distributions to the class would not be economically viable) (citing American Law Institute, *Principles of the Law of Aggregate Litigation* (ALI Principles) § 3.07); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2013 WL 2476587, at *2 (D. Kan. June 7, 2013) (Lungstrum, J.) (hereafter, *USF*). According to evidence from the claims administrator, another distribution would cost over $300,000 and would keep the claims process open much longer; and the additional distributions would amount to less than $9.00 per claimant on average, with most distributions under $5.00, with the likelihood that many checks in such small amounts would go uncashed. No claimant has responded to the present motion to request a further distribution. Therefore, the Court in its discretion orders *cy pres* distribution of the remaining unallocated funds subject to this motion.

      B.    <u>Recipients</u>

This Court has previously applied the "reasonable approximation" test, which requires *cy pres* recipients to have interests that reasonably approximate those pursued by the class. *See USF*, 2013 WL 2476587, at *3; *see also In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 33-34 (1st Cir. 2012) (cited in *USF*) (noting that caselaw and ALI Principles support adoption of that test) (citing ALI Principles § 3.07(c)). The Court

4

agrees with Counsel that the appropriate interest here is the benefit of farmers, particularly corn farmers who constituted the overwhelming majority of the settlement class.

Counsel recommend distributions to two recipients. The Court approves of that approach, which will allow for diverse efforts to benefit the class while ensuring that each award remains large enough to allow the recipient to serve the interests of the class most effectively. *See USF*, 2013 WL 2476587, at *4. The Court further approves Counsel's request for *cy pres* distributions to one organization that provides direct aid to farmers and to one legal aid organization. *See id.* at *3 (the Court appropriately limits its consideration only to those organizations suggested by the parties). Finally, the Court approves Counsel's recommendation that each of the two selected organizations receive one-half of the remaining funds.

Counsel recommend Farm Rescue, a 501(c)(3) organization, as the farm aid recipient, and the Court approves that selection. Counsel have explained that in identifying recipients they sought to confirm that there were no potential conflicts of interest, and they therefore rejected national corn farmers organizations that have accepted significant donations from or have had any relationship with any parties (or counsel or the litigation). Counsel further sought a farm aid organization that primarily provides services to farmers without engaging in other activities such as lobbying. Farm Rescue meets these requirements; it is highly rated; it caters to farmers in the corn belt; and the great majority of its aid recipients are corn farmers. The Court applauds the care with which Counsel made this selection, and it approves Farm Rescue as the *cy pres* recipient for the reasons cited by Counsel.

Counsel has recommended Kansas Legal Services (KLS), also a 501(c)(3) organization, as the legal aid recipient. KLS satisfies Counsel's selection criteria identified above, and the Court approves the selection of that organization for a *cy pres* award. Although KLS operates only in Kansas, choosing an organization with a geographical scope more limited than that of the class is not necessarily inappropriate in this case, in which the class has already received significant distributions. *See In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 625 (N.D. Ohio 2016). Moreover, a distribution to an organization serving the forum state is appropriate in this case, as this Court expended resources to conduct proceedings in the MDL over the course of more than ten years, including the only trial in the MDL, in which a verdict was obtained in favor of a class of Kansas farmers; and the Court's familiarity with this local organization gives it more confidence that the recipient will put any award to an appropriate use to benefit the interests of the class. *See id.* The Court has also received assurance from KLS that it will use any award to undertake a significant expansion of services to farmers and in rural areas, including expansion of its partnership with Kansas Agricultural Mediation Services, and with the goal of serving as a model for other legal aid organizations serving farmers in rural areas. The Court reiterates to KLS in this Order that a *cy pres* award must be used to benefit the interests of farmers. *See USF*, 2013 WL 2476587, at *5.

Accordingly, the Court orders a *cy pres* distribution of the remaining QSF funds subject to this motion, with one-half of those funds awarded to Farm Rescue, and one-half of those funds awarded to Kansas Legal Services; and the Court grants the motion to that extent.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by Settlement Class Counsel to distribute certain remaining funds (Doc. # 4774) is hereby **granted** as set forth herein.

IT IS SO ORDERED.

Dated this 30th day of June, 2025, in Kansas City, Kansas.

      /s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge